USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 21 2012

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA        :    INDICTMENT

         - v. -                 :    12 CRIM 973

MATHEW MARTOMA,                 :

         Defendant.             :
- - - - - - - - - - - - - - - - X
```

### COUNT ONE

(Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

**Relevant Entities and Individuals**

1. At all relevant times, MATHEW MARTOMA, the defendant, was a portfolio manager specializing in health care sector investments for a division of a privately held group of affiliated hedge funds and associated fund advisers (the "Hedge Fund"). The Hedge Fund's written policy forbade MARTOMA from trading securities based on material non-public information ("Inside Information"), and specifically warned against obtaining Inside Information from "doctors conducting clinical trials."

2. At all relevant times, Elan Corporation, plc ("Elan") was a corporation headquartered in Dublin, Ireland. Elan's stock traded on the New York Stock Exchange ("NYSE")

JUDGE GARDEPHE

through the issuance of American Depository Receipts (or "ADRs") under the ticker symbol "ELN."

3. At all relevant times, Wyeth was a Delaware corporation headquartered in New Jersey. Wyeth's common stock was registered with the SEC and listed on the NYSE under the ticker symbol "WYE."

4. At all relevant times, Elan and Wyeth were partners in connection with the phase II clinical trial of an experimental Alzheimer's disease drug known as bapineuzumab (the "Drug Trial").

5. At all relevant times, an individual referred to as the Cooperating Witness, or CW, a co-conspirator not named as a defendant herein, was an Alzheimer's disease expert who served as a professor of neurology at a leading medical school. The CW also worked as a paid consultant to Elan and served as the chair of the Safety Monitoring Committee ("SMC") in connection with the Drug Trial. Elan expressly forbade members of the SMC from disclosing "any and all data, safety, efficacy, or otherwise" about the Drug Trial before the data was released to the public.

6. At all relevant times, the "Expert Networking Firm" was a Manhattan-based business that arranged paid consultations between financial industry clients and experts in various fields. The Hedge Fund paid the Expert Networking Firm

2

substantial fees for access to certain health care experts, including the CW.  The Expert Networking Firm expressly advised its experts, including the CW, and employees of its financial industry clients, including MATHEW MARTOMA, the defendant, that experts "participating in clinical trials may not discuss the patient experience or trial results not yet in the public domain."

### The Insider Trading Scheme

7.   From in or about 2006 through on or about July 29, 2008, MATHEW MARTOMA, the defendant, participated in an insider trading scheme centered around obtaining confidential data about the Drug Trial before it was made public, and then buying or selling stock in Elan and Wyeth depending in part on whether he viewed the data as positive or negative.

8.   To effectuate the scheme, MATHEW MARTOMA, the defendant, arranged for approximately 42 consultations with the CW through the Expert Networking Firm.  In these paid consultations, through an exploitation of MARTOMA's personal and financial relationship with the CW, MARTOMA sought and obtained from the CW Inside Information about the Drug Trial.  In particular, MARTOMA and the CW arranged for consultations through the Expert Networking Firm to take place shortly after

3

Elan had presented confidential data to the CW at Safety Monitoring Committee meetings. In the consultations following SMC meetings, the CW provided MARTOMA with confidential safety data that had been disclosed to members of the SMC by Elan. Based in part on this Inside Information, MARTOMA bought shares of Elan and Wyeth stock for his own portfolio and recommended that the founder and principal owner of the Hedge Fund (the "Hedge Fund Owner") buy additional shares for the Hedge Fund, which the Hedge Fund Owner did.

        9. In or around early July 2008, Elan and Wyeth formally selected the CW to present publicly the final results of the Drug Trial at an Alzheimer's disease conference on July 29, 2008 (the "Public Announcement"). In order to prepare the CW to make the presentation, Elan provided the CW with detailed confidential data about the closely-guarded and still-secret results of the Drug Trial during meetings on or about July 15, 2008 and July 16, 2008. On or about July 17, 2008, the CW received an e-mail from Elan labeled "Confidential, Do Not Distribute," which attached a 24-slide PowerPoint presentation for the CW to display during the Public Announcement. Approximately one half-hour after receiving this e-mail from Elan, the CW and MATHEW MARTOMA, the defendant, spoke by telephone for approximately one hour and 45 minutes about the

4

confidential data that the CW had just received from Elan.  The CW also sent MARTOMA the confidential presentation slides he had received from Elan.

10.   The final results of the Drug Trial were negative, raising significant questions about whether the drug had any meaningful effect on the treatment of Alzheimer's disease.  Accordingly, after receiving the negative confidential data from the CW, MATHEW MARTOMA, the defendant, through a recommendation to the Hedge Fund Owner, caused the Hedge Fund to sell virtually all of its approximately $700 million worth of Elan and Wyeth stock prior to the Public Announcement.  In addition, the Hedge Fund engaged in "short sales" and various options trades designed to profit if the price of Elan and Wyeth securities were to fall after the Public Announcement.

11.   Following the Public Announcement, shares of Elan stock lost approximately 42% of their value and shares of Wyeth stock fell approximately 12%. The Hedge Fund's combined profits and avoided losses through its sale of Elan and Wyeth stock and related options activity between July 21, 2008 and the Public Announcement is estimated to be approximately $276 million.  As a consequence of this illegal scheme, MARTOMA himself received a bonus of approximately $9.3 million.

## Statutory Allegations

12.  From in or about 2006 through on or about July 29, 2008, in the Southern District of New York and elsewhere, MATHEW MARTOMA, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

13.  It was a part and object of the conspiracy that MATHEW MARTOMA, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which

operated and would operate as a fraud and deceit upon the purchaser and seller, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Means And Methods Of The Conspiracy

14.   Among the means and methods by which the conspirators, including MATHEW MARTOMA, the defendant, would and did carry out the conspiracy were the following:

   a.   The CW misappropriated Inside Information about the Drug Trial in violation of (a) fiduciary and other duties of trust and confidence owed by the CW to Elan, (b) expectations of confidentiality regarding Elan information, and (c) policies of Elan regarding the use and safekeeping of Inside Information.

   b.   MARTOMA obtained the Inside Information about the Drug Trial from the CW through an exploitation of his personal and financial relationship with the CW.

   c.   MARTOMA used the Inside Information about the Drug Trial to engage in securities transactions, and thereby profited from the Inside Information.

### Overt Acts

15.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed by MATHEW MARTOMA, the defendant, among

others, in the Southern District of New York and elsewhere:

  a. On or about October 16, 2006, MARTOMA met the CW in Manhattan.

  b. On or about October 9, 2007, MARTOMA spoke with the CW through a consultation arranged by the Manhattan-based Expert Networking Firm and obtained confidential safety data about the Drug Trial.

  c. On or about July 17, 2008, MARTOMA obtained confidential final results of the Drug Trial from the CW.

  d. On or about July 20, 2008, MARTOMA spoke by telephone with the Hedge Fund Owner and recommended selling Elan and Wyeth securities before the Public Announcement.

  e. On or about July 21, 2008, MARTOMA and the Hedge Fund Owner instructed a Hedge Fund trader to begin selling the Hedge Fund's entire position in Elan securities, which are traded on the NYSE in Manhattan, New York.

(Title 18, United States Code, Section 371.)

## COUNT TWO

(Securities Fraud - Elan)

The Grand Jury further charges:

16. The allegations contained in paragraphs 1 through 11, 14, and 15 are repeated and realleged as though fully set forth herein.

17. In or about July 2008, in the Southern District of New York and elsewhere, MATHEW MARTOMA, the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, before Elan and Wyeth publicly disclosed the final results of an Alzheimer's disease drug trial on July 29, 2008, MARTOMA obtained material, nonpublic information about the results and, based in whole or in part on that information, caused the Hedge Fund to sell common stock of Elan, short Elan stock, and enter into options transactions relating to Elan.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNT THREE

(Securities Fraud - Wyeth)

The Grand Jury further charges:

18. The allegations contained in paragraphs 1 through 11, 14, and 15 are repeated and realleged as though fully set forth herein.

19. In or about July 2008, in the Southern District of New York and elsewhere, MATHEW MARTOMA, the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, before Elan and Wyeth publicly disclosed the final results of an Alzheimer's disease drug trial on July 29, 2008, MARTOMA obtained material,

nonpublic information about the results and based in whole or in part on that information, caused the Hedge Fund to sell common stock of Wyeth and short Wyeth stock.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

20.  As a result of committing one or more of the foregoing securities fraud offenses alleged in Counts One, Two and Three of this Indictment, MATHEW MARTOMA, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses, including but not limited to a sum of money in United States currency which was derived from proceeds traceable to the commission of the securities fraud offenses.

### Substitute Assets Provision

21.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

11

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C);
Title 28, United States Code, Section 2461(c); and Title 15,
United States Code, Sections 78j(b) and 78ff; and Title 17, Code
of Federal Regulations, Section 240.10b-5.)

12/21/12 /s/ Brendan McCarthy
Foreperson

/s/ Preet Bharara
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MATHEW MARTOMA,

Defendant.

INDICTMENT

(18 U.S.C. §§ 2, 371; Title 15, United
States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations,
Section 240.10b-5)

PREET BHARARA
United States Attorney.

A TRUE BILL

_12/21/12_   _Brendan McCarthy_
            Foreperson.

12/21/12
- File Indictment
- Case assigned to Judge Gardephe

Judge Netburn
USMJ