**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

v.

MATHEW MARTOMA,

      Defendant.

Criminal Case No.: 12 Cr. 973 (PGG)

**DEFENDANT MATHEW MARTOMA'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION FOR A BILL OF PARTICULARS**

GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
John O. Farley (JF4402)
Daniel P. Roeser (DR2380)
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Roberto M. Braceras (RB2470)
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Defendant Mathew Martoma*

April 29, 2013

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................3

FACTUAL BACKGROUND ................................................................................................4

ARGUMENT .........................................................................................................................8

    THE GOVERNMENT SHOULD PROVIDE A BILL OF PARTICULARS APPRISING
    MATHEW MARTOMA OF ALL CHARGES AGAINST HIM. ...............................................8

        A.    The Government Should Provide Particulars As To The Nature And Timing Of
            Mr. Martoma's Alleged Receipt Of, And Trading On, Inside Information.................10

        B.    The Government Should Identify All Known Co-Conspirators. ................................14

CONCLUSION.....................................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*United States v. Bin Laden,*
   92 F. Supp. 2d 225 (S.D.N.Y. 2000)...........................................................................8, 9, 15-16

*United States v. Bortnovsky,*
   820 F.2d 572 (2d Cir. 1987)...................................................................................8, 9, 10, 13

*United States v. Contorinis,*
   09 Cr. 1083 (RJS), 2010 U.S. Dist. Lexis 74739 (S.D.N.Y. May 5, 2010)...........................12

*United States v. Davidoff,*
   845 F.2d 1151 (2d Cir. 1988)...................................................................................................9

*United States v. Feola,*
   651 F. Supp. 1068 (S.D.N.Y. 1987).......................................................................................16

*United States v. Lino,*
   No. 00 CR. 632(WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001)............................................9

*United States v. Nacchio,*
   05 Cr. 545, 2006 WL 2475282 (D. Colo. Aug. 25, 2006).....................................................12

*United States v. Nachamie,*
   91 F. Supp. 2d 565 (S.D.N.Y. 2000)...........................................................................8, 10, 15

*United States v. Rajaratnam,*
   No. 09 Cr. 1184(RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ..................9, 11, 12, 13

Defendant Mathew Martoma respectfully submits this memorandum of law in support of his motion for an order requiring the Government to provide a bill of particulars that would identify and allege: (1) the specific substance of the alleged inside information and the dates on which Mr. Martoma allegedly received such information; (2) the manner in which the one specific instance of supposed information alleged in the Indictment was purportedly sent to Mr. Martoma; (3) Mr. Martoma's alleged trading—or the trading that he recommended—based on the purported inside information; and (4) all alleged co-conspirators.

## **INTRODUCTION**

The Indictment in this case alleges that Mr. Martoma, *over the course of nearly **two years***, received inside information pertaining to an experimental Alzheimer's disease drug from an Alzheimer's disease expert and subsequently traded, or recommended trading, at least in part on the basis of that information. The Government has publicly described this case, which allegedly involves more than $275 million in profits and avoided losses, as the "most lucrative" insider trading scheme ever alleged, "on a scale that has no historical precedent."[1]  While the Government has gone to the press to characterize this case as large and important, it has failed to particularize the most important allegations in any insider trading case, namely, the substance of the inside information and the date it was shared. To the contrary, the Government has attempted to draw a negative inference out of the entirely routine industry practice of consulting with experts, without any allegations describing the specific inside information that was exchanged.

---

[1]  Press Release, The United States Attorney's Office for the Southern District of New York, "Statement Of Manhattan U.S. Attorney Preet Bharara On The Charges Against Former Hedge Fund Portfolio Manager Mathew Martoma For Most Lucrative Insider Trading Scheme Ever Charged" (Nov. 20, 2012), *available at* http://www.justice.gov/usao/nys/pressreleases/November12/MartomaStatementPR.php, attached as Ex. A to the Declaration of Richard M. Strassberg dated April 29, 2013 ("Strassberg Decl.").

Notably, the Government has not provided specific or particularized allegations as to (i) the substance of the alleged inside information and the dates on which Mr. Martoma allegedly received this information, (ii) the manner in which the Indictment's one specific allegation of information was allegedly sent to Mr. Martoma, (iii) the specific trades that were made based on such information, or (iv) the alleged co-conspirators.  The Government's allegations leave Mr. Martoma to guess at the most important aspects of the charges against him.

Much is at stake for Mr. Martoma in this case.  The Government should provide this basic information necessary for Mr. Martoma to defend against the charges laid against him. Mr. Martoma, therefore, respectfully requests that the Court direct the Government to respond with the limited particulars relating to the charges in the Indictment, so that he can adequately prepare for trial.

## FACTUAL BACKGROUND

The Indictment alleges that, from in or about 2006 through on or about July 29, 2008, Mr. Martoma participated in an "insider trading scheme" that obtained confidential information about the phase II clinical trial, jointly conducted by Elan Corporation, plc ("Elan") and Wyeth, involving an experimental Alzheimer's disease drug known as bapineuzumab (the "Drug Trial"). (Indictment ¶¶ 4, 7.)  More specifically, the Indictment alleges that Mr. Martoma "sought and obtained" confidential information from an unindicted co-conspirator, an Alzheimer's disease expert who worked as a paid consultant to Elan and served as the chair of the Safety Monitoring Committee ("SMC") in connection with the Drug Trial (the "Cooperating Witness"). (Indictment ¶¶ 5, 8.)  The Cooperating Witness allegedly provided Mr. Martoma with ostensibly positive "confidential safety data" regarding the Drug Trial that had been disclosed to him during SMC meetings, during the course of "approximately 42 consultations" that occurred "shortly after" SMC meetings from 2006 through July 2008.  (Indictment ¶¶ 7, 8.)  There are, however,

*no* allegations that Mr. Martoma ever traded at or around the time of these SMC meetings.  Nor is there any allegation that safety information alone would provide a sufficiently relevant or material basis upon which to trade.

In addition, and perhaps most important to the Government, the Indictment alleges that the Cooperating Witness provided Mr. Martoma with "negative confidential information" concerning the final results of the Drug Trial during a telephone call on or about July 17, 2008, and by means of "confidential presentation slides" that the Cooperating Witness allegedly "sent" to Mr. Martoma.  (Indictment ¶¶ 9, 10, 15c.)  The Indictment alleges that Mr. Martoma traded, or recommended that others trade, in Elan and Wyeth after he received these slides.

On its surface, the Indictment appears to tell a standard story of insider trading, but it does so through inferences and innuendo that paint a false picture of innocent and ordinary expert consultations.

The Government's failure to particularize the timing and nature of the exchange of inside information impermissibly shifts the burden to Mr. Martoma to prove the legality of ***all*** his interactions with the Cooperating Witness as well as all trading in Elan and Wyeth that either he or the hedge fund engaged in—for the entire two-year period.   Without further details, Mr. Martoma has the burden to defend all his expert consultations, despite the undisputed fact that it is commonplace for investment analysts such as Mr. Martoma to consult industry experts such as the Cooperating Witness, and that information that the experts provide may be the basis for trades.   In fact, public officials and regulatory agencies have acknowledged the legitimacy of such expert consultations within the hedge fund community.[2]  Yet through the smoke of general

---

[2]       *See, e.g.*, Press Conference, The United States Attorney for the Southern District of New York, "*U.S. v. Samir Barai, et. al.*, Prepared Remarks For U.S. Attorney Preet Bharara" (Feb. 8, 2011), *available at* http://www.justice.gov/usao/nys/pressreleases/pcremarks/baraisamiretalremarks.html ("Now, let me make something crystal clear. There is nothing inherently wrong or bad about hedge funds or expert networking

allegations concerning this routine industry practice of expert consultations, the Government attempts to vilify Mr. Martoma.

The Government cannot deny that Mr. Martoma's general practice of consulting with the Cooperating Witness was legitimate and, moreover, that Mr. Martoma likely received a great deal of legitimate information from the Cooperating Witness. The Government also cannot deny that Mr. Martoma and others at the hedge fund where he worked and throughout the financial industry regularly traded on the basis of this exact type of information—which also was legitimate. Thus, the Government must particularize its allegations with respect to when the Cooperating Witness allegedly provided inside information to Mr. Martoma, what that information actually was, when Mr. Martoma traded on it, and what other individuals were involved in this alleged conspiracy.

While the Indictment is vague throughout, Mr. Martoma's request for particulars is narrowly focused on four areas:

(1)   The Indictment fails to specify the *substance of the actual inside information* and the actual *dates* on which Mr. Martoma allegedly received inside information. The Indictment alleges that 42 consultations took place "shortly after" SMC meetings—but provides the date of only one such consultation: October 9, 2007. (*See* Indictment ¶¶ 8, 15b.) When Mr. Martoma asked for particularized information regarding the date, time and nature of which of the 42 consultations allegedly involved the exchange of inside information, the Government suggested only *five* consultations. (*See* Strassberg Decl. Exs. D, E; *see also* Crim. Compl. ¶ 23 (listing the same five dates).) Although the Government has provided no information as to the remaining 37 consultations alleged in the Indictment, it nevertheless has refused to rule out any of the 42 consultations as potentially improper.

---

firms or aggressive market research, for that matter. Nothing at all."), attached as Ex. B to the Strassberg Decl.; Press Release, The United States Securities and Exchange Commission, "SEC Brings Expert Network Insider Trading Charges" (Feb. 3, 2011), *available at* http://www.sec.gov/news/press/2011/2011-38.htm (acknowledging that "it's legal to obtain expert advice and analysis through expert networking arrangements"), attached as Ex. C to the Strassberg Decl.

Notably, the hedge fund's employees apparently participated in more than 7,500 expert health care consultations through the company that retained the Cooperating Witness. Mr. Martoma's 42 consultations would have represented only 0.6% of the total of such consultations.

(2)     The Indictment alleges that Mr. Martoma received inside information when the Cooperating Witness "sent" confidential presentation slides to him.  (*See* Indictment ¶ 9.)  Yet the Government has not alleged how or when those presentation slides were "sent" to Mr. Martoma.  Indeed, what little information the Government has provided is contradictory:  The Criminal Complaint alleges that the Cooperating Witness "sent" the presentation to Mr. Martoma "and provided [him] with the password for the document so that he would be able to open it"—implying that the presentation slides were sent to Mr. Martoma via e-mail.  (Crim. Compl. ¶ 33d.)  In the Indictment, however, the allegations are reduced to the bare assertion that these slides were "sent," with no indication as to whether the Government intends to prove that they were sent by e-mail or in some other manner.  ***This information is particularly critical as the Government in discovery has been unable to identify any e-mail or other communication purporting to send Mr. Martoma either the presentation slides referenced in the Indictment or a password to open such slides***.  Notably, in response to Mr. Martoma's request for information concerning the presentation slides, the Government was silent.  (*See* Strassberg Decl. Ex. E.)

(3)     The Indictment alleges that Mr. Martoma traded, or recommended that the hedge fund trade, in Elan and Wyeth at least in part based on inside information that the Cooperating Witness allegedly provided to him over the course of the *entire* two-year period—in or about 2006 through in or about July 29, 2008.  (*See* Indictment ¶¶ 7-11; *see also* Crim. Compl. ¶¶ 26-27.)  Yet the Government has provided information with respect to trading only within a limited time period in *July 2008*—ignoring almost all of that two-year period.  In response to Mr. Martoma's request for more specific allegations as to the trading, the Government only provided dates of trading that occurred between July 18, 2008 and July 29, 2008—again, without ruling out any prior date or earlier trade.  (*See* Strassberg Decl. Exs. D, E.)  The Government also has failed to provide sufficient information regarding the details of these allegedly unlawful trades, including the amount of shares bought or sold, the price of the purchase or sale, and Mr. Martoma's alleged involvement in such trades.

(4)     The Indictment alleges that Mr. Martoma participated in a conspiracy with various other individuals in addition to the Cooperating Witness, including individuals who directed and engaged in trading allegedly based on Mr. Martoma's recommendation.  (*See* Indictment ¶¶ 12-14 (discussing "others known and unknown" and multiple "conspirators").)  Yet the Government has not disclosed the identities of such other individuals.  (*See* Strassberg Decl. Ex. E.)

The Government's obligation to provide information sufficient for Mr. Martoma to prepare for trial is not satisfied by the Indictment's vague allegations.  Mr. Martoma is

hamstrung in his ability to defend against the material, non-public nature of the inside information that he allegedly received and traded on when he does not know either the content of the alleged inside information, when he allegedly received it, or when he allegedly traded (or recommended that others trade) on the basis of such information.  Mr. Martoma respectfully submits that this request is narrowly tailored to address only those allegations for which more information is necessary to prepare a defense in this case, and he respectfully asks that the Court order the Government to provide this important information.

## ARGUMENT

### THE GOVERNMENT SHOULD PROVIDE A BILL OF PARTICULARS APPRISING MATHEW MARTOMA OF ALL CHARGES AGAINST HIM.

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (quotation omitted).  The decision to order the filing of a bill of particulars rests within the sound discretion of the district court. *Bortnovsky*, 820 F.2d at 574; *United States v. Nachamie*, 91 F. Supp. 2d 565, 570 (S.D.N.Y. 2000).  "In exercising that discretion, the court must examine the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery—and determine whether, in light of the charges that the defendant is required to answer, the filing of a particulars is warranted."  *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000).

Where, as here, the Government has failed to provide sufficient information with respect to the fundamental charges—information as central as (1) the nature of the inside information

that Mr. Martoma allegedly received and when he allegedly received such information, (2) the trading based on such information, and (3) the identity of the individuals with whom he allegedly conspired—a bill of particulars is necessary.  *See, e.g.*, *Bortnovsky*, 820 F.2d at 574 (holding that the district court abused its discretion in denying appellants' motion for a bill or particulars because portions of the indictment lacked specificity); *United States v. Rajaratnam*, No. 09 Cr. 1184(RJH), 2010 WL 2788168, at *1 (S.D.N.Y. July 13, 2010) (holding that, while not a matter of right, a bill of particulars is required "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused") (quotation omitted).  Indeed, a bill of particulars is especially warranted "in complex conspiracy cases like this one, [because] the potential for unfair surprise and the difficulty in preparing a defense are amplified."  *Rajaratnam*, 2010 WL 2788168 at *2.

The Government cannot meet its obligation to identify the specific charges against Mr. Martoma by referring him to the over 4 million pages of documents that have been produced to date in discovery.  *See*, *e.g.*, *Bortnovsky*, 820 F.2d at 575 (stating that the Government does not meet its obligation to provide particulars by referring defense counsel to "mountains of documents" without guidance); *United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988) ("Equally inadequate to furnish notice was the turnover in advance of trial of some 6,000 pages of material concerning wiretap applications and transcripts of wiretapped conversations."); *United States v. Lino,* No. 00 CR. 632(WHP), 2001 WL 8356, at *4 (S.D.N.Y. Jan. 2, 2001) ("'It is no solution to rely solely on the quantity of information disclosed by the [G]overnment; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars.'" (quoting *Bin Laden*, 92 F. Supp. at 234)).  The Government cannot avoid the filing of a bill of particulars by doing what it has done here—namely, alleging general, long-ranging

conduct and then putting the onus on Mr. Martoma to hunt for his supposed wrongdoing in order to defend against it.

Mr. Martoma is entitled to know the specifics and particulars of the charges against him; without such knowledge, he cannot adequately defend himself.   Mr. Martoma therefore respectfully requests that the Court order the Government to provide the following particulars to Mr. Martoma.

### A.        The Government Should Provide Particulars As To The Nature And Timing Of Mr. Martoma's Alleged Receipt Of, And Trading On, Inside Information.

Courts in this Circuit have routinely held that the Government must provide a defendant with specific information about the allegedly criminal conduct that forms the basis of the charges against him, including specific dates and details about the allegedly unlawful activity.  Where the Government has failed to provide this information, a bill of particulars is warranted.  *See, e.g.*, *Bortnovsky*, 820 F.2d at 574-75 (reversing district court's refusal to grant a bill of particulars where the indictment failed to specify the dates of the alleged burglaries that formed the basis of false claims for burglary losses, because without such particulars the defense was "left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated as staged," which impermissibly shifted the burden of proof to the defendants); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) (ordering a bill of particulars specifying, *inter alia*, the identity and details of allegedly false claims submitted as part of the conspiracy and the allegedly false documents used in the conspiracy, where the defendants were charged with conspiracy to commit Medicare fraud related to 2,000 claims and the Government had "not yet informed the defendant which of these claims were false and in what way they were false").

The requirement that the Government must provide specific information about the alleged criminal conduct applies with even greater force in the insider trading context, in which allegations are dependent on complex factual questions concerning, *inter alia*, what the alleged inside information was, whether it was material and non-public at the time it was disclosed to the tippee, and whether the trades at issue were made on the basis of that information.   This is emphasized in a recent decision in the insider trading case *United States v. Rajaratnam*, in which the Court granted, in part, the defendants' motions for a bill of particulars because allegations with respect to the purported exchange of inside information were not specific enough to satisfy the Government's obligation.   No. 09 Cr. 1184(RJH), 2010 WL 2788168, at *1 (S.D.N.Y. July 13, 2010).   The court ruled that such particularization is especially critical in an insider trading conspiracy case, explaining:

> [T]his is an insider trading conspiracy case, which means the government must prove that the defendants conspired to acquire material nonpublic information.   The merits of such a charge depend heavily on the facts and context.   A defendant might argue that the information he sought to obtain was not material, or that it was already public at the time he tried to get it.   But he can only do that if he knows what the information *is* and when it was conveyed.

*Id.* at *2 (emphasis in original).

Consistent with this concern, the *Rajaratnam* court ordered the Government to provide particularized information regarding "the **substance** of the information provided" and "the **date(s)** on which it was conveyed."   *Id.* at *4-9 (emphasis added).[3]   Other courts have likewise

---

[3]   In *Rajaratnam*, the Government attempted to distinguish its conspiracy charges from the substantive counts by arguing the conspiracy charges did "not necessarily require proof of the existence of inside information—only of a conspiracy to obtain the inside information."  2010 WL 2788168, at *3 n.3.  However, the court stated:

> [T]o the extent the [G]overnment seeks to prove the existence of the conspiracy by showing that the defendants received inside information, the defendants may defend against it by showing that they knew the information to be public or obviously immaterial.  Defendants can only prepare this defense if they know more about the nature of the information.  For the same

required that the Government provide particulars regarding the inside information that a defendant allegedly received.  *See, e.g.*, *United States v. Contorinis*, 09 Cr. 1083 (RJS), 2010 U.S. Dist. Lexis 74739, *1 (S.D.N.Y. May 5, 2010) (directing the Government to "submit a bill of particulars with respect to the material, non-public information allegedly disclosed in connection with" a specified transaction); *United States v. Nacchio*, 05 Cr. 545, 2006 WL 2475282, at *3, *5-9 (D. Colo. Aug. 25, 2006) (discussing how the court previously granted a defense request for particulars and "ordered the Government . . . to identify 'all material nonpublic information that the Government claims [defendant] was aware of between December 4, 2000 and September 10, 2001.'").

Here, just as in *Rajaratnam*, a bill of particulars is warranted because the Government has failed adequately to apprise Mr. Martoma of the inside information that he is alleged to have received and when he is alleged to have received it—including the dates of the consultations that the Government alleges resulted in the exchange of inside information, the specific content of this alleged inside information and the date and method by which Mr. Martoma was allegedly "sent" the confidential presentation slides.  Without knowing the particulars about the alleged inside information that the Cooperating Witness allegedly provided to Mr. Martoma, Mr. Martoma cannot fairly defend himself against the charges.

Likewise, the Government cannot allege that Mr. Martoma conspired to commit insider trading and engaged in securities fraud with respect to trades that occurred over the course of two years, without providing sufficient information about the trades to allow Mr. Martoma the opportunity to defend against such charges.  Mr. Martoma cannot be required to prove the

---

reason, it matters when the information was conveyed; information about an upcoming acquisition may be material and nonpublic on one day, and public the next.

*Id.*

legality of any and all trading in either Elan or Wyeth that either he or the Hedge Fund engaged in over this two year period.  And he cannot be forced to research and defend 42 consultations over nearly the same two-year period, particularly where the Government itself concedes that many, if not most, of such consultations were completely legitimate.  *See Rajaratnam*, 2010 WL 2788168, at *9, n.4 ("The government has acknowledged its obligation to provide the defendants with the trades that Counts 18 and 19 [the substantive counts] allege Rajaratnam to have made.").[4]  In short, absent particulars, the Government improperly shifts the burden to Mr. Martoma to investigate and assemble the Government case against which he must build his defense.  *See Bortnovsky*, 820 F.2d 572 at 574-75 (holding that defendants were "hindered in their defense" by the district court's failure to compel the Government to reveal the dates of fake burglaries and the identity of three allegedly fraudulent documents, and that as a result "the burden of proof impermissibly was shifted to appellants").

Accordingly, Mr. Martoma respectfully requests that the Court order the Government to disclose the following in a bill of particulars:

(1)    The specific inside information that Mr. Martoma allegedly obtained from the Cooperating Witness, in each instance that the Government alleges that Mr. Martoma obtained such information, and the specific dates on which such information is alleged to have been shared;

(2)    The means by which the Cooperating Witness "sent" Mr. Martoma the confidential presentation slides, including:

---

[4]    The *Rajaratnam* court did not require further particularization of the Government's statement that "the trades at issue in those counts include all trades in ATI executed between March 7, 2006 to July 24, 2006, and all trades in Intel executed between April 9, 2007 and April 17, 2007," noting that greater particularization was also not likely possible.  2010 WL 2788168, at *9 n.4.  In the instant case, however, the Government has not stated that it intends to prove that *all* trades in Elan and Wyeth that were executed by either Mr. Martoma or the Hedge Fund were made on the basis of inside information.  Moreover, such a broad statement—even if the Government were to make it—would still not be proper in this case under the reasoning of *Rajaratnam*.  In that case, the time periods at issue were a two-week span and, at the longest, a four-month span.  In the instant case, the Government has referenced trading over a much longer period encompassing two years.  In addition, the trades at issue in *Rajaratnam* were all allegedly trades that the defendant himself made, whereas in the instant case, the Government has alleged trading undertaken by the hedge fund, not Mr. Martoma.

(i)      the date and time that the slides were allegedly sent;

(ii)     the method by which the slides were allegedly sent;

(iii)    any circumstances related to Mr. Martoma's ability to review the slides, including whether the slides were transmitted electronically with a password or encryption key for accessing the slides; and

(3)    The specific purchases of, sales of, or other trades involving Elan and/or Wyeth that Mr. Martoma allegedly made, or directed others to make, on the basis of the inside information that the Cooperating Witness allegedly provided to him, including:

(i)      the date of each purchase, sale, or other trade;

(ii)     the number and type of shares purchased or sold, or the type of other trade;

(iii)    the price of each purchase, sale, or other trade; and

(iv)     with respect to purchases, sales, or other trades entered into by anyone other than Mr. Martoma, information as to how Mr. Martoma allegedly recommended or caused each purchase, sale, or other trade.

**B.     The Government Should Identify All Known Co-Conspirators.**

The Indictment is replete with vague references to unidentified persons that were allegedly participants in the conspiracy.  *See, e.g.*, Indictment ¶ 12 ("[T]he defendant, and *others known and unknown*, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States . . . .); ¶ 13 ("[T]he defendant, and *others known and unknown*, willfully and knowingly . . . would and did use and employ . . . manipulative and deceptive devices and contrivances in violation of . . . Section 240.10b-5 . . . .); ¶ 14 ("Among the means and methods by which the *conspirators*, including . . . the defendant, would and did carry out the conspiracy . . . .").  The identities of any persons with whom Mr. Martoma allegedly conspired to break the law are intrinsic to the charges against him; the Government should identify all persons whom it intends to identify as co-conspirators at trial.

14

In *Nachamie*, Judge Scheindlin articulated several factors that a court should consider in examining this particular issue, all of which weigh in favor of requiring the Government to identify the co-conspirators in the instant case:   (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation.  *Nachamie,* 91 F. Supp. 2d at 572.  Judge Scheindlin explained the decision-making process that a court should undertake in determining whether the Government must identify alleged co-conspirators in a bill of particulars:

> If there are a large number of co-conspirators and a long-running conspiracy, a defendant is more likely to be surprised by the identity of other co-conspirators, whom he may have never met.  If the Government has failed to provide adequate notice of the particulars, or if the discovery has been voluminous, identification of known unindicted co-conspirators will help a defendant focus his investigation and prepare for trial.   On the other hand, considering the potential danger to the co-conspirators and the risk of compromising continuing investigation allows a court to balance a defendant's need for the information against legitimate law enforcement concerns.

*Id.* at 572-73.

Applying that rationale to the facts of the case before her, Judge Scheindlin found that a bill of particulars was necessary, because there were a large number of co-conspirators (eight defendants and an unknown number of unindicted co-conspirators), the alleged conspiracy spanned more than three years, the Government produced  a "substantial number of documents" (more than 200,000 pages), and there was "no legitimate concern that disclosing the names of unindicted co-conspirators [would] endanger those individuals or compromise the Government's investigation."  *Id.* at 573; *see also, e.g.*, *Bin Laden*, 92 F. Supp. 2d at 240-42 (requiring the Government to disclose all unindicted co-conspirators to whom the Government will refer at trial

where the alleged conspiracy continued for a number of years and involved a large number of co-conspirators, and discovery was "extremely voluminous"); *United States v. Feola*, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987) (granting motion for a bill of particulars specifying "the names of all persons whom the Government will claim at trial were co-conspirators").

Here, as in *Nachamie*, (i) the Government has alleged an unknown number of unidentified co-conspirators; (ii) the charged conspiracy is alleged to be long-running (*i.e.*, two years); (iii) the Government has produced voluminous pretrial disclosure, including more than 4 million pages of documents, and (iv) there is no danger posed by identifying the alleged co-conspirators. And here, as in *Nachamie*, the Government should be required to provide a bill of particulars as to the unidentified co-conspirators in the Indictment. Accordingly, Mr. Martoma respectfully requests that the Court order the Government to disclose the identities of all known individuals whom it intends to argue at trial were co-conspirators.

## CONCLUSION

For the aforementioned reasons, Mr. Martoma respectfully requests that the Court order the Government to provide a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) that identifies: (1) the specific substance of the inside information and the dates on which Mr. Martoma allegedly received such inside information; (2) the circumstances and timing as to how the presentation was "sent" to Mr. Martoma (if at all); (3) Mr. Martoma's alleged trading—or the trading that he recommended—based on the inside information; and (4) all of the alleged co-conspirators.

Dated: April 29, 2013                       Respectfully submitted,
       New York, NY

                                            GOODWIN PROCTER LLP

                                            By: /s/ Richard M. Strassberg
                                                Richard M. Strassberg (RS5141)
                                                (rstrassberg@goodwinprocter.com)

John O. Farley (JF4402)
  (jfarley@goodwinprocter.com)
Daniel P. Roeser (DR2380)
  (droeser@goodwinprocter.com)

The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone:  (212) 813-8800
Facsimile:  (212) 355-3333

Roberto M. Braceras (RB2470)
  (rbraceras@goodwinprocter.com)
53 State Street
Boston, Massachusetts 02109
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231

*Attorneys for Defendant Mathew Martoma*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2013, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices. I also certify that I have caused copies of the aforementioned document to be served via first class mail, postage prepaid, upon all non-CM/ECF participants.

/s/ Richard M. Strassberg
Richard M. Strassberg (RS5141)