# EXHIBIT E



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 15, 2013

**Via Electronic Mail**
Nathaniel Marmur, Esq.
Stillman & Friedman, P.C.
425 Park Avenue
New York, NY 10022

    Re:    United States v. Martoma, 12 Cr. 793 (PGG)

Dear Mr. Marmur:

    The Government writes in response to your letter of February 22, 2013 (the "February 22 Letter") requesting a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. Without conceding that the defense is entitled to additional particulars, the Government voluntarily provides at this time the following information in response to the February 22 Letter.[1]

### 1. The Inside Information

    Several of the requests in the February 22 Letter seek additional information about the nature of the material non-public information charged in Counts One, Two and Three of the Indictment (the "Inside Information"). The Government provides the defendant with the following summary as to the nature of the Inside Information and its disclosure to the defendant:

    As alleged in the Indictment, the Inside Information at issue in Counts One, Two and Three is confidential and non-public information about the Phase II clinical trial of bapineuzumab jointly conducted by Elan and Wyeth (the "Drug Trial"). The Inside Information was obtained by Dr. Gilman in connection with (1) his chairmanship of the Drug Trial's Safety Monitoring Committee ("SMC") and (2) his role in announcing the results of the Drug Trial to the public on behalf of Elan and Wyeth on July 29, 2008 (the "Public Announcement").

---

[1]     This information is based on the current state of the Government's investigation, which is ongoing, and review of the evidence, including inferences drawn from that evidence. In the event that further collection, review or analysis of evidence causes the Government to amend its position with respect to the factual disclosures in this letter, or to determine that the disclosure of additional particulars is appropriate, the the Government will provide notice to the defense at that time.

In connection with his chairmanship of the SMC, Dr. Gilman participated in semi-regular meetings of the SMC, including – as alleged in paragraph 23 of the criminal complaint – meetings on or about November 21, 2006, February 8, 2007, October 9, 2007, March 18, 2008 and July 11, 2008. Members of the SMC, including Dr. Gilman, typically received presentations from Elan and Wyeth in advance of these meetings. The matters discussed at the meetings were documented in meeting minutes. The Government has provided all such presentations and meeting minutes in its possession to the defense in discovery. As these presentations and meeting minutes reflect, the SMC was provided with confidential information about the ongoing progress of the Drug Trial, including information about trial design, trial progress and trial safety. The trial safety information disclosed to the SMC included detail about the occurrence and non-occurrence of "serious adverse events" in both drug and placebo populations.

Beginning in late 2006 or early 2007 Dr. Gilman began routinely sharing with Martoma information he learned in connection with his chairmanship of the SMC, including the content of presentations provided to the SMC about the Drug Trial. Martoma and Dr. Gilman arranged for consultations to take place shortly after SMC meetings occurred. As detailed in paragraph 23 of the criminal complaint, Martoma consulted with Dr. Gilman on or about the following occasions after the occurrence of SMC meetings: November 22, 2006, February 9, 2007, October 9, 2007, March 18, 2008, July 13, 2008.

In connection with his role in presenting the full results of the Drug Trial to the public on July 29, 2008, Dr. Gilman obtained Inside Information from Elan and Wyeth about the safety and efficacy results of the Drug Trial, principally during a two-day "unblinding" meeting on July 15, 2007 and July 16, 2007. Dr. Gilman then provided Martoma with Inside Information about the results of the Drug Trial, including by providing Martoma with the contents of a draft PowerPoint presentation announcing the results of the Drug Trial.

### 2. Nature Of Benefit To Tippee

The February 22 Letter seeks information about the benefits afforded to Dr. Gilman by providing Inside Information to Martoma. The Government alleges that Dr. Gilman directly and indirectly benefited by providing Inside Information to Martoma through (1) financial payments made by the Gerson Lehrman Group to Gilman for consultations with Martoma and (2) the development of a perceived friendship with Martoma.

### 3. Trades Charged In Substantive Counts

Elan

With respect to Count Two, the Government intends to prove that the following trades in Elan securities were based in whole or in part on Inside Information:

At the end of the day on Friday, July 18, 2008, CR Intrinsic held approximately 10,560,250 shares of Elan equity securities in portfolios over which Martoma or Steve Cohen had trading authority (the "July 18 Elan Position"). By the time the Drug Trial results were announced after

the market closed on July 29, 2008, CR Intrinsic and its affiliates had sold the entirety of the July 18 Elan Position, shorted Elan stock by an additional approximately 4,525,104 shares, and entered into options contracts which would profit if the price of Elan stock decreased following the Public Announcement. The Government alleges that the above trades were undertaken in whole or in part based on Inside Information. Detailed records as to these trades have been produced in discovery at SAC_ELAN00000001 and SAC_ELAN1800712.

<u>Wyeth</u>

With respect to Count Three, the Government intends to prove that the following trades in Wyeth securities were based in whole or in part on Inside Information.

At the end of the day on Friday, July 18, 2008, CR Intrinsic held approximately 7,043,700 shares of Wyeth equity securities in portfolios over which Martoma or Steve Cohen had trading authority (the "July 18 Wyeth Position").[2] By the time the Drug Trial results were announced after the market closed on July 29, 2008, CR Intrinsic and its affiliates had sold the entirety of the July 18 Wyeth Position and had shorted Wyeth stock by an additional approximately 3,250,000 shares. The Government alleges that the above trades were undertaken in whole or in part based on Inside Information. Detailed records as to these trades have been produced in discovery SAC_ELAN00000001 and SAC_ELAN1800712.

Sincerely,

PREET BHARARA
United States Attorney

By: _____
Arlo Devlin-Brown
Assistant United States Attorney
(212) 637-2506

---

[2] The term "July 18 Wyeth Position" excludes two positions that, based on the present investigation, do not appear to have been established or controlled by Martoma: (1) a 12 million share derivative contract linked to the performance of Wyeth securities and (2) 400,000 shares of Wyeth held by another portfolio manager.