UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA :

-v.- :

MATHEW MARTOMA, :

Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

12 Cr. 973 (PGG)

**GOVERNMENT'S OPPOSITION TO DEFENDANT MATHEW MARTOMA'S MOTION FOR A BILL OF PARTICULARS**

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States
of America

ARLO DEVLIN-BROWN
Assistant United States Attorney

- Of Counsel

# TABLE OF CONTENTS

Page

BACKGROUND ....................................................................................................1

APPLICABLE LAW ............................................................................................5

ARGUMENT ......................................................................................................6

A. The Government Has Already Provided Ample Specificity With Respect To The Inside Information (Def. Req. 1) And Trades Based On Inside Information (Def. Req. 3)....................................................8

B. The Defendant's Request (#2) For The Precise Method Through Which Certain Inside Information Was Communicated Is Unwarranted ..........................12

C. The Government Will Voluntarily Identify Known Co-Conspirators (Def. Req. 4) No Later Than July 31, 2013 ..........................................................13

CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

Page

## Cases

*S.E.C.* v. *Obus*, 693 F.2d 276 (2d Cir. 2012) ..........11

*United States* v. *Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) ..........5

*United States* v. *Cephas*, 937 F.2d 816 (2d Cir. 1991) ..........6, 12

*United States* v. *Chen*, 378 F.3d 151 (2d Cir. 2004) ..........5

*United States* v. *Feola*, 651 F. Supp. 1068 (S.D.N.Y. 1987) ..........6, 10, 13

*United States* v. *Fleishman*, 11 Cr. 32 (JSR) ..........14-15

*United States* v. *Gottlieb*, 493 F.2d 987 (2d Cir. 1974) ..........5

*United States* v. *Giordano*, 693 F.2d 245 (2d Cir. 1982) ..........10

*United States* v. *Gupta*, 2012 WL 1066804 (S.D.N.Y. 2012) ..........13

*United States* v. *Henry*, 824 F. Supp. 351 (S.D.N.Y. 1994) ..........14

*United States* v. *Jimenez*, 824 F. Supp. 351 (S.D.N.Y. 1993) ..........10

*United States* v. *Lauersen*, 1999 WL 440619 (S.D.N.Y. 1999) ..........10

*United States* v. *Leighton*, 265 F. Supp. 27 (S.D.N.Y.) ..........6

*United States* v. *Love*, 859 F. Supp. 725 (S.D.N.Y. 1994) ..........6

*United States* v. *Mitlof*, 165 F. Supp. 2d 558, (S.D.N.Y. 2001) ..........6

*United States* v. *Payden*, 613 F. Supp. 800 (S.D.N.Y. 1985) ..........10

*United States* v. *Rajaratnam*, 2010 WL 2788168 (S.D.N.Y. 2010) ..........*passim*

*United States* v. *Rosa*, 17 F.3d 1531 (2d Cir. 1994) ..........10

*United States* v. *Royer*, 549 F.2d 886 (2d Cir. 2008) ..........11

*United States* v. *Salazar*, 485 F.2d 1272 (2d Cir. 1973) ..........5

*United States* v. *Samsonov*, 2009 WL 176721 (S.D.N.Y. 2009) ..........14

*United States* v. *Shellef*, 507 F.3d 82 (2d Cir. 2007) ....................................................9

*United States* v. *Sindone*, 2002 WL 48604 (S.D.N.Y. 2002) ....................................................5

*United States* v. *Teicher*, 987 F.2d 112 (2d Cir. 1993) ....................................................11

*United States* v. *Torres*, 901 F.2d 205 (2d Cir. 1991) ....................................................5

*United States* v. *Triana-Mateus*, 2002 WL 562649 (S.D.N.Y. 2002) ....................................................6

*United States* v. *Walsh*, 194 F.3d 37 (2d Cir. 1999) ....................................................6

*Wong Tai* v. *United States*, 273 U.S. 77 (1927) ....................................................5

The Government respectfully submits this opposition to the motion of Mathew Martoma ("the defendant") for a bill of particulars identifying (1) the "specific substance of the alleged inside information" and the dates on which it was provided to the defendant ("Request 1"); (2) "the manner" in which a copy of a PowerPoint presentation containing inside information was made available to Martoma ("Request 2"); (3) the identification of all trades based on the inside information ("Request 3") and (4) the identify of all alleged co-conspirators ("Request 4").

The defendant's motion should be denied in its entirety as the Government has already more than satisfied its obligation to provide sufficient specificity. With respect to Request 1 and Request 3, the Government has provided the defense with very specific detail about the inside information and trades charged in the two substantive counts and more than sufficient information about the related conspiracy count. Request 2, relating to the "manner" in which a particular document was provided to the defendant, seeks evidentiary detail far beyond the appropriate contours of a bill of particulars. Finally, with respect to Request 4, the Government has reached an agreement with the defendant to voluntarily identify individuals known to be co-conspirators on or before July 31, 2013, and proposes to disclose any additional co-conspirators identified after July 31, 2013 no later than 30 days prior to trial.

**BACKGROUND**

On November 20, 2012 the defendant was arrested on the basis of a detailed 21-page criminal complaint (the "Complaint," attached hereto as Exhibit A). On December 21, 2012, a grand jury returned a 12-page speaking indictment (the "Indictment") charging the defendant with two counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5, and one count of conspiracy, in violation of 18 U.S.C. § 371, with all charges based on the same conduct underlying the Complaint. The Indictment's two substantive securities

fraud counts alleged that in July 2008 the defendant sold and caused to be sold shares of Elan and Wyeth securities respectively following the defendant's receipt of material non-public information ("MNPI") about the results of the Phase II clinical trial of the Alzheimer's Disease drug bapineuzumab (the "Drug Trial") from a doctor participating in the Drug Trial (the "CW"). The conspiracy count alleged that the defendant's corrupt relationship with the CW had begun well over a year before the public announcement of the Drug Trial results, with the CW first sharing safety data from the Drug Trial and ultimately sharing with the defendant the Drug Trial results in July 2008, as charged in the substantive counts of the Indictment.

The Indictment itself provided substantial additional detail about the offenses charged. With respect to the conduct forming the basis of the two substantive counts, the Indictment alleged that "on or about July 15, 2008 and July 16, 2008" Elan "provided the CW with detailed confidential data about the closely-guarded and still-secret results of the Drug Trial" in order to prepare the CW "to present publicly the final results of the Drug Trial at an Alzheimer's disease conference on July 29, 2008." *Id.* ¶ 9. Then, "[o]n or about July 17, 2008, the CW received an e-mail from Elan" attaching a "24-slide PowerPoint presentation for the CW to display during the Public Announcement." *Id.* "Approximately one half-hour after receiving this e-mail" the CW and defendant "spoke by phone for approximately one hour and 45 minutes about the confidential data" the CW had just received, with the CW also sending the defendant a copy of the slide presentation. *Id.* "After receiving the negative confidential data from the CW" the defendant, "through a recommendation to the Hedge Fund Owner, caused the Hedge Fund to sell virtually all of its approximately $700 million worth of Elan and Wyeth stock prior to the Public Announcement" and engage in short sales and options trades which would profit if Elan and Wyeth shares decreased in value following the Public Announcement. *Id.* ¶¶ 10, 11.

The Indictment's conspiracy count incorporated the same July 2008 conduct constituting the substantive securities fraud counts while further alleging with respect to the conspiracy count that in the approximately two years prior to the public announcement the defendant had consulted with the CW "shortly after Elan had presented confidential information to the CW" at Safety Monitoring Committee ("SMC") meetings and that, in the course of these consultations, "the CW provided MARTOMA with confidential safety data that had been disclosed to members of the SMC by Elan." *Id.* ¶ 8. The Indictment further alleged that the defendant bought shares of Elan and Wyeth stock (and caused the owner of the Hedge Fund to do as well) "based in part on this Inside Information." *Id.*

The Complaint provided substantial additional detail beyond that contained in the Indictment. The Complaint, for example, identified five particular consultations between the defendant and the CW arranged to occur after SMC meetings (Complaint ¶ 23), identified specific e-mails between the CW and the defendant in which SMC schedules or data were discussed (*Id.* ¶¶ 24-25), identified particular information gleaned from SMC meetings that the CW provided to Martoma (*Id.* ¶ 25(c)), and provided substantial detail about the CW learning the final results of the Drug Trial on July 15, 2008 and July 16, 2008 and communicating the results to Martoma on July 17, 2008 (*Id.* ¶¶ 32-33). In addition, over the course of two pages, the Complaint provided a detailed chronology of steps taken by the defendant and others after the defendant learned the Drug Trial results from the CW to sell Elan and Wyeth securities. *Id.* ¶¶ 34-35.

On January 7, 2013 and January 15, 2013 the Government produced, with few exceptions, substantially all of the Rule 16 discovery then in its possession relating to the charges

contained in the Indictment.[1] This material – which included among other things large, electronically searchable databases from the Hedge Fund, Elan and the Expert Networking Firm – provided significant additional detail about the charges. For example, the discovery material reflected dates on which the defendant and the CW met or were scheduled to meet, dates of Drug Trial SMC meetings, and the contents of confidential data presentations made by Elan to members of the SMC in connection with these meetings. The discovery also included e-mails (to the extent retained by Hedge Fund and other parties) reflecting communications between the defendant, CW and others about the Drug Trial and complete detailed records of trading in Elan and Wyeth securities by the defendant and others at the Hedge Fund.

The Government provided additional specificity as to the Indictment in a letter dated March 15, 2013 (the "March 15 Letter"), attached as Exhibit E to the defendant's instant motion. Responding to defense requests seeking additional detail about the nature of the Inside Information, the March 15 Letter directed the defense to discovery for records reflecting items discussed during five particular SMC meetings (such as presentations made to the SMC, and meeting minutes) and reiterated the dates of defendant-CW consultations that took place shortly after the SMC meetings. March 15 Letter at 2. The Government further wrote that "[b]eginning in late 2006 or early 2007 [the CW] began routinely sharing with Martoma information he learned in connection with his chairmanship of the SMC, including the content of presentations provided to the SMC about the Drug Trial." *Id.* With respect to the defendant's request for

---

[1] Following the Indictment, the Government has received additional discovery from third parties, which it has produced to the defense. The majority of this additional material consists of additional e-mails produced to the Government by the Hedge Fund, including <u>all</u> preserved e-mails sent from or received by Martoma during his employment at the Hedge Fund (as opposed to e-mails that the Hedge Fund had identified as responsive to particular Government requests relating to the charged conduct, which had already been produced and provided in discovery). While these additional materials are voluminous, they are electronically searchable and of far less overall relevance than the core materials produced in January.

particularity regarding trading, the March 15 Letter offered further detail about the trades charged in the substantive counts. For example, the Government identified the positions in Elan and Wyeth securities held at the time the defendant received inside information about the Drug Trial results and identified particular documents in discovery reflecting the trades liquidating those positions between July 21, 2008 and the July 29, 2008 public announcement.

**APPLICABLE LAW**

Rule 7(f) of the Federal Rules of Criminal Procedure permits the Court to direct the Government to file a bill of particulars in appropriate circumstances. But a bill of particulars is not a general investigatory tool for the defense. *United States* v. *Salazar*, 485 F.2d 1272, 1277-78 (2d Cir. 1973). Nor is it a device to compel disclosure of the Government's evidence or its legal theory prior to trial. *United States* v. *Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974). "[T]he government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away. . . . " *United States v. Sindone*, 2002 WL 48604, at *1 (S.D.N.Y. 2002).

Instead, the sole function of a bill of particulars is to furnish facts that are necessary to apprise a defendant of the charges against him with sufficient precision to "prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). *Accord Wong Tai* v. *United States*, 273 U.S. 77, 80-82 (1927); *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1991); *United States* v. *Salazar*, 485 F.2d at 1278. For that reason, "a bill of particulars should be required only where the charges of an indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States* v. *Torres*, 901 F.2d at 234. Furthermore, "a bill of particulars is not necessary where the government has made

sufficient disclosures concerning its evidence and witnesses by other means." *United States* v. *Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (affirming denial of request for a bill of particulars where the Government adequately informed the defendant of the nature of the charges against him through discovery).

Finally, the Government cannot be compelled to provide a bill of particulars disclosing such things as the precise manner in which the defendant or his co-conspirators committed the crimes charged or the evidence the Government will offer to prove the charges at trial. *See United States* v. *Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (collecting cases); *United States* v. *Cephas*, 937 F.2d 816, 834 (2d Cir. 1991) (the Government is not required to "particularize all of its evidence"); *United States* v. *Triana-Mateus*, 2002 WL 562649, at *5 (S.D.N.Y. 2002) ("'[T]the Government is not required to provide information that would, in effect, give the defendant a preview of the Government's case before trial.'") (citations omitted). "That the requested information would be useful to the defendant is not enough; if the defendant has been given adequate notice of the charges against him, the Government need not be required to disclose additional details about its case." *United States* v. *Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987). Thus the ultimate test must be "whether the information sought is *necessary* not whether it is *helpful*." *United States* v. *Love*, 859 F. Supp. 725, 738 (S.D.N.Y. 1994) (emphasis in original), *aff'd*, 41 F.3d 1501 (2d Cir.); *United States* v. *Leighton*, 265 F. Supp. 27, 35 (S.D.N.Y.), *aff'd*, 386 F.2d 822 (2d Cir. 1967).

**ARGUMENT**

In an effort to demonstrate the need for additional particulars, the defendant quotes multiple press statements that have identified this case as the "most lucrative" insider trading scheme ever charged due to alleged profits and avoided losses "on a scale that has no historical

precedent." (Def. Mem. at 3). But the amount of money involved in the scheme says nothing about its *complexity*. Nor does the amount of money say anything about whether the detail already provided is sufficient to advise the defendant of what he is accused of doing.[2]

On these criteria – the only factors that matter in assessing whether particulars are warranted – the defendant's argument fails. This is a one defendant case, involving trades in two securities, both relating to the outcome of a single event: the public announcement of the Drug Trial results on July 29, 2008. The two substantive insider trading counts are narrowly drawn and easily understood, alleging that the CW learned the results of the Drug Trial on two days in July, first shared the results of the Drug Trial with the defendant the very next day, and that the defendant and his employer thereafter sold Elan and Wyeth securities over seven trading days prior to the public announcement. The single conspiracy count is rooted in the same conduct, stretching back in time to late 2006 because it was approximately then when the defendant first began receiving from the CW confidential information about the Drug Trial, giving rise to a corrupt relationship that provided Martoma with modest advantages as he developed a long position in Elan and Wyeth and that paid its full dividends when the CW obtained, and then shared, the results of the Drug Trial approximately two weeks prior to the July 29, 2008 announcement.

The straightforward nature of the charges has been made all the more so by the Government's prior disclosures. The charges are contained in a "speaking" indictment, that

[2] The defendant's heavy reliance on Judge Holwell's decision in *United States v. Rajaratnam*, 2010 WL 2788168 (S.D.N.Y. 2010) to support the need for particularization only helps to prove the Government's point. While the instant case is substantial in terms of the amounts at stake, the specific allegations – relating to trading in *two* securities in connection with a single event – are far simpler than in the *Rajaratnam* case, which alleged insider trading "spanning six years and involving dozens of stocks, dozens of co-conspirators, and a total of seven conspiracies as charged in the indictment." *Id.* at *2.

follows a detailed complaint of 21 single-spaced pages, and that have been further explicated in the Government's March 15 Letter. There are several million pages of electronically-searchable discovery which, though no panacea where an indictment is devoid of any meaningful specificity, is a valuable resource in light of detailed allegations in the Indictment and Complaint that provide a roadmap to framing electronic discovery search queries. In short, the defendant is on ample notice of the charges and has more than enough information about them to prepare his defense.

**A. The Government Has Already Provided Ample Specificity With Respect To The Inside Information (Def. Req. 1) And Trades Based On Inside Information (Def. Req. 3)**

The defendant argues broadly that the Government has failed to particularize the inside information or trades based on that information, supposedly thereby leaving the defendant with "the burden to defend all his expert consultations, despite the undisputed fact that it is commonplace for investment analysts such as Mr. Martoma to consult industry experts such as the Cooperating Witness, and that the information that the experts provide may be the basis for trades." (Def. Mem. at 5). The reality, though, is that the defendant has more than sufficient notice of the inside information he is alleged to have received and the trading based on that information.

The first flaw in the defendant's analysis is the failure to distinguish between the substantive counts and the conspiracy count. With respect to the substantive counts, the defendant lacks any colorable argument: the Indictment itself specifically identifies the alleged inside information (the results of the Drug Trial disclosed to the CW on July 15 and July 16, 2008, as further reflected in a draft PowerPoint presentation sent by Elan to the CW on July 17, 2008), and specifically alleges that this inside information was promptly shared by the CW with

the defendant after its receipt, including in a specifically identified phone conversation on July 17, 2008. The Indictment further identifies sales by the Hedge Fund of Elan and Wyeth securities between July 17, 2008 and the public announcement on July 29, 2008 based on this inside information. Hedge Fund business records reflecting these sales (including whether they were made in the defendant's portfolio or portfolios controlled by the owner of the Hedge Fund) have been provided, and the Complaint provides a detailed chronology of steps taken by the defendant after receiving the Drug Trial results that caused these sales.

With respect to the conspiracy count, the defendant's argument that he is forced to guess about the material non-public information provided is similarly unsupported. As an initial matter, the conspiracy count incorporates the clear allegations of the substantive counts discussed above. In addition, the Indictment, Complaint and March 15 Letter make plain precisely what is alleged to have occurred during the conspiracy beyond the conduct reflected in the substantive counts. In particular, the conspiracy count alleges that the CW learned confidential information about the Drug Trial in connection with SMC meetings (the substance of which is contained in SMC materials produced in discovery) and – beginning in late 2006 or early 2007 – started, as a matter of routine course, passing on to the defendant what he had learned during the meetings shortly after he had learned it. Accordingly, the touchstone from *Rajaratnam* cited by the defendant here – that a defendant be provided with sufficient specificity so that he can "argue that the information he sought to obtain was not material, or that it was already public at the time he tried to get it," 2010 WL 2788168 at *2 (quoted at Def. Mem. at 11) – is easily satisfied.[3] The defendant knows what the information at issue is from having access

[3] Notably, though, if the defendant *sought* material non-public information but got something that happened to already be public or non-material, that would be insufficient to defeat a conspiracy charge. "'[T]he illegality of [a conspiracy] does not depend upon the achievement of its goal' and it therefore 'does not matter that the ends of the conspiracy were

to the SMC materials and knows with fair approximation when the information was transmitted to the defendant based on the Government's allegation that the CW would routinely share the information shortly after learning it (with still further detail available from Expert Networking Firm records, calendar entries, phone records and e-mails reflecting when CW-defendant meetings actually occurred).

The defendant's claim that he is entitled to still more detail – including a listing of the "specific inside information" and the "specific dates on which such information is alleged to have been shared" over the entire course of the conspiracy (Def. Mem. at 13) – lacks any support. "[A]s a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial. *United States* v. *Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987); *United States* v. *Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (requests for "the 'whens' 'wheres' and 'with whoms' of acts and participation in the charged conspiracy . . . are routinely denied."). Moreover, a direction to the Government to itemize precisely what was said during each and every one of the dozens of official and informal consultations between the defendant and CW would improperly "obligate[] the Government to manufacture specificity where none exists." *Rajaratnam*, 2010 WL 2788168 at *9. Such minute particularization would also inappropriately "lock the Government into its proof in advance of trial," *United States* v. *Lauersen*, 1999 WL 440619 at *3 (S.D.N.Y. 1999) when further clarity as to what was likely said during particular meetings or calls may emerge in the course of trial preparation. *See also United States* v. *Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985) (noting that when considering requests for a bill of particulars, courts "must be cognizant of the fact that a bill of

---

from the beginning unattainable.'" *United States* v. *Shellef*, 507 F.3d 82, 105 (2d Cir. 2007) (quoting *United States* v. *g*, 693 F.2d 245, 249 (2d Cir. 1982)); *see also United States* v. *Rosa*, 17 F.3d 1531, 1543 (2d Cir. 1994) ("What matters in a conspiracy prosecution is whether the defendants agreed to commit the underlying offense, not whether their conduct would actually have constituted that offense.").

particulars confines the government's evidence at trial to the particulars furnished, [and] [t]hus the court is required to balance restricting the government's proof against protecting defendants from surprise").

Finally, "the defendant[] [is] not entitled to an itemization of the trades at issue in the conspiracy counts." *Rajaratnam*, 2010 WL 2788168 at *9. The defendant seeks extraordinary detail about each such trade during the conspiracy – including the date, number and type of shares, price of each share, and how the defendant caused anyone else at the Hedge Fund to execute the trade (Def. Mem. at 14) – but cites "no case in which a court has ordered such particularization" and the Government, like the Court in *Rajaratnam*, "is aware of no such case." *Id*. Such particularization of trading is not required because a conspiracy count – unlike a substantive count – does not require proof of *any* trading, only an agreement to conduct such trading. Of course proof that the July 2008 trading alleged in the substantive accounts occurred is *evidence* in support of the conspiracy count, but neither the proof of this or any other trading is required sustain a conviction for conspiracy. Furthermore, with respect to trading based on the defendant's receipt from the CW of SMC data during the course of the conspiracy (as opposed to the Drug Trial results themselves, in July 2008), the Government does not intend to focus on particular trades made following particular SMC data disclosures. Although, as a formal matter, all Elan and Wyeth trades undertaken while the defendant was in "knowing possession" of material non-public information are proscribed,[4] the Government expects the evidence to be that

---

[4] All trades – even any based on legitimate considerations – constitute insider trading provided that the defendant was in "knowing possession" of material non-public information obtained from the CW's breach of duty at the time the trades were made. *United States* v. *Royer*, 549 F.d 886 (2d Cir. 2008) ("We . . . adhere to the knowing possession standard articulated in *Teicher*."); *United States* v. *Teicher*, 987 F.2d 112, 121 (2d Cir. 1993) ("It strains reason to argue that an arbitrageur, who traded while possessing information he knew to be fraudulently obtained, knew to be material, knew to be nonpublic, — and who did not act in good faith in doing so — did not also trade on the basis of that information."). *See also*, *S.E.C.*

the SMC data from the CW was valuable not primarily for the short-term trading in Elan and Wyeth stock but for giving the defendant an edge in his longer term plan to amass a considerable position in the securities in advance of the announcement of the Drug Trial results.[5] Accordingly, the defendant's request for a detailed accounting of all trading alleged to have occurred in furtherance of the conspiracy should be denied.

**B. The Defendant's Request (#2) For The Precise Method Through Which Certain Inside Information Was Communicated Is Unwarranted**

The defendant's third request – seeking a litany of additional detail about what already is a specific allegation in the Indictment – can be easily rejected. Pointing to the Indictment's allegation that one means by which the CW shared with the defendant the contents of a draft PowerPoint presentation was that he "sent" the defendant the document, the defendant pushes for granular specifics, including "(i) the date and time the slides were allegedly sent; (ii) the method by which the slides were allegedly sent [and]; (iii) any circumstances related to Mr. Martoma's ability to review the slides, including whether the slides were transmitted electronically with a password or encryption key for accessing the slides." (Def. Mem. at 14).

This request for what amounts to an itemization of evidence supporting the allegation that the slides were sent to the defendant flies in the face of clear authority that the Government is not

---

v. *Obus*, 693 F.3d 276, 285 and 293 (2d Cir. 2012) (rejecting as irrelevant arguments advanced by defendant that other reasons existed for trades following the alleged disclosure to the defendant of MNPI on the grounds that, under *Teicher*, the defendant had a duty to abstain from all trading).

[5] Specifically, the SMC data provided the defendant with, among other things, visibility into the safety of the drug, into side effects that could be positively associated with efficacy, and into trial participation data that could be used in handicapping the likelihood of a statistically significant result. Perhaps most importantly, the defendant's continuing access to the CW, as chair of the SMC, allowed the development of a long position while minimizing the risk that the defendant would be blind-sided by a bad news announcement, such as the trial being terminated early due to serious safety problems, or – just as is alleged to have occurred – detailed Drug Trial results likely to fall short of investor expectations.

required to "particularize all of its evidence." *United States v. Cephas*, 973. F.2d 816, 834 (2d Cir. 1991). "It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." *United States* v. *Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987). *See also United States v. Gupta*, 2012 WL 1066804 at *3 (S.D.N.Y. 2012) (rejecting request for particulars on specific details of alleged trades on the grounds that "none of these requests for what is highly specific evidentiary detail is appropriate for a bill of particulars").

Here, the Indictment plainly alleges that (1) the CW learned the confidential Drug Trial results on July 15 and July 16, 2008 and (2) that the CW then first shared these same Drug Trial results on July 17, 2008. As if this were not enough, the Indictment further alleges that the "Drug Trial results" were reflected in a PowerPoint presentation (produced in discovery) received by the CW from Elan on July 17, 2008 and that the CW conveyed this information to the defendant through at least two means, including a phone call on July 17, 2008 and by sending him a copy of the presentation.[6] The defendant, in short, knows what he is being accused of with substantial precision already.

### C. The Government Will Voluntarily Identify Known Co-Conspirators (Def. Req. 4) No Later Than July 31, 2013

With respect to the defendant's request for identification of co-conspirators, the Government will voluntarily identify all known co-conspirators on or before July 31, 2013. In

[6] The defendant's observation that there is no document produced in discovery constituting a record of how the PowerPoint document was transmitted from the CW to the defendant (Def. Mem. at 7) is beside the point. Of course such a document would provide a higher degree of detail about how the defendant received the PowerPoint from the CW. But the Government has no such document at present. If such a document is later obtained, the Government will produce it promptly in discovery.

recent consultations with the Government, the defendant has indicated that disclosure of known co-conspirators by this date is satisfactory.

A disagreement remains, however, as to whether the Government should be entitled to refer at trial to any additional co-conspirators the Government in good faith only identifies as such after July 31, 2013. The Government proposes to disclose any co-conspirators identified after this date no later than 30 days prior to trial. The defendant does not agree with this approach towards any further disclosures.

The Government submits that its proposal is reasonable and supported by precedent in recent insider trading cases. While the Government is willing to provide particulars identifying all known co-conspirators by July 31, 2013, a bill of particulars "must not be misused . . . to foreclose the Government from using proof it may develop as the trial approaches." *United States* v. *Samsonov*, 2009 WL 176721 at *3 (S.D.N.Y. 2009); *United States* v. *Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (a bill of particulars should not "restrict unduly the Government's ability to present its case."). Accordingly, to the extent that new evidence or new evidentiary analysis results in the identification of more co-conspirators following July 31, 2013, the Government should not be barred from offering this additional proof. This is particularly true because the Government's proposal to make such additional notifications, if any, no later than 30 days prior to trial would provide the defendant with sufficient notice and would afford the Court an opportunity to address any legal issues relating to additional co-conspirators, such as the admissibility of co-conspirator statements under the Federal Rules of Evidence.

The Government submits that this schedule is reasonable in light of the fact that the Court has not yet set a trial date in this matter as well as disclosure orders in other recent insider trading cases. *See United States v. Gupta,* 11 Cr. 907 (JSR) (first bill of particulars due two months prior

to trial, with any co-conspirators identified after that date to be disclosed no later than three weeks prior to trial); *United Sates v. Fleishman,* 11 Cr. 32 (JSR) (first bill of particulars due six weeks before trial and a final bill of particulars two weeks before trial); *United States v. Rajaratnam,* 09 Cr. 1184 (RJH) (in a case involving over 35 stocks, the Government provided its last bill of particulars six weeks before trial). Accordingly, the Government requests that the Court adopt the Government's proposed schedule with respect to the disclosure of any co-conspirators identified after July 31, 2013.

**CONCLUSION**

For the reasons set forth above, the Government respectfully submits that the defendant's motion should be denied in its entirety.

Dated: May 13, 2013
New York, New York

Respectfully submitted,

PREET BHARARA
United States Attorney

By: __________/s/________________
Arlo Devlin-Brown
Assistant United States Attorney
Tel. No.: (212) 637-2506