UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATHEW MARTOMA,<br><br>Defendant. | Criminal Case No.: 12 Cr. 973 (PGG) |

**DEFENDANT MATHEW MARTOMA'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL THE PRODUCTION OF CERTAIN DOCUMENTS WITHHELD BY THE GOVERNMENT OR THE UNIVERSITY OF MICHIGAN**

GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
John O. Farley (JF4402)
Daniel P. Roeser (DR2380)
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Roberto M. Braceras (RB2470)
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Defendant Mathew Martoma*

June 21, 2013

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ...........................................................................................................................5

I.  NEITHER THE GOVERNMENT NOR THE UNIVERSITY OF MICHIGAN HAS
    STANDING TO ASSERT DR. GILMAN'S ATTORNEY-CLIENT PRIVILEGE. ................5

II. NONE OF THE DOCUMENTS ON DR. GILMAN'S ELECTRONIC MEDIA IS
    PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE....................................................6

   A.  The Documents On Dr. Gilman's Electronic Media Were Never Privileged Because
       Dr. Gilman Could Not Have Held A Reasonable Expectation Of Privacy With
       Respect To Such Documents. ...............................................................................8

   B.  Dr. Gilman Waived Any Claim Of Attorney-Client Privilege Over Documents On
       The Laptop Image When He Provided Them To The Government. ...............................13

   C.  Dr. Gilman Waived Any Claim Of Attorney-Client Privilege Over Documents On
       The Rest Of His Electronic Media When He Provided Them To The University of
       Michigan. ..........................................................................................................14

CONCLUSION.........................................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aventa Learning, Inc. v. K12, Inc.*,
    830 F. Supp. 2d 1083 (W.D. Wash. 2011)................................................................16

*Baker v. Dorfman*,
    232 F.3d 121 (2d Cir. 2000)................................................................................5

*Henderson v. United States*,
    815 F.2d 1189 (8th Cir. 1987) ...........................................................................6

*In re Horowitz*,
    482 F.2d 72 (2d Cir. 1973), *cert. denied* 414 U.S. 867 (1973)................................5, 7, 15, 16

*Ratliff v. Davis Polk & Wardwell*,
    354 F.3d 165 (2d Cir. 2003)............................................................................4, 13

*In re Reserve Fund Sec. & Derivative Litig.*,
    275 F.R.D. 154 (S.D.N.Y. 2011) (Gardephe, J.) ........................................... passim

*In re Sarrio, S.A.*,
    119 F.3d 143 (2d Cir. 1997)........................................................................... passim

*Spanierman Gallery, Profit Sharing Plan v. Merritt*,
    No. 00 Civ. 5712(LTS)(THK), 2003 WL 22909160 (S.D.N.Y. Dec. 9, 2003)................13, 14

*In re Subpoenas Duces Tecum*,
    738 F.2d 1367 (D.C. Cir. 1984) ........................................................................13

*United States v. Finazzo*,
    No. 10-CR-457 (RMM)(RML), 2013 WL 619572 (E.D.N.Y. Feb. 19, 2013)................10, 12

*United States v. Mejia*,
    655 F.3d 126 (2d Cir. 2011)............................................................................7, 8

*United States v. Nachamie*,
    91 F. Supp. 2d 552 (S.D.N.Y. 2000)...................................................................6

*United States v. Ortega*,
    150 F.3d 937 (8th Cir. 1998), *cert. denied*, 525 U.S. 1087 (1999).......................2, 6

*United States v. Plache*,
    913 F.2d 1375 (9th Cir. 1990) ...........................................................................5

*United States v. Smith*,
  454 F.3d 707 (7th Cir. 2006) ................................................................................2, 6

*United States v. White*,
  743 F.2d 488 (7th Cir. 1984) ....................................................................................6

*In re von Bulow*,
  828 F.2d 94 (2d Cir. 1987).........................................................................................5

Defendant Mathew Martoma respectfully submits this memorandum of law in support of his Motion to Compel the Production of Certain Documents Withheld by the Government or the University of Michigan.  Specifically, this Court should order the production of all documents that the Government or the University of Michigan seeks to withhold on the basis of a claim of Dr. Sidney Gilman's attorney-client privilege.

## PRELIMINARY STATEMENT

Mr. Martoma seeks the production of documents withheld on the basis of a claim of Dr. Gilman's attorney-client privilege months after Dr. Gilman disclosed those documents (1) to the Government in the midst of negotiating his non-prosecution agreement and (2) to the University of Michigan after he had resigned.  The Government and the University of Michigan both lack standing to assert Dr. Gilman's attorney-client privilege and, in any event, any claim of attorney-client privilege fails under the black-letter law of the Second Circuit.

As Mr. Martoma explained in his letter to the Court dated June 13, 2013, the University of Michigan has agreed to produce documents to both the Government and Mr. Martoma from the following electronic media (collectively, "Dr. Gilman's Electronic Media"):  (1) an image of a laptop computer issued by the University of Michigan that Dr. Gilman used and provided to the Government (the "Laptop Image"), (2) the laptop computer issued by the University of Michigan to Dr. Gilman and later returned to the University of Michigan, (3) a desktop computer issued by the University of Michigan to Dr. Gilman and later returned to the University of Michigan, and (4) five flash or "thumb" drives issued by the University of Michigan to Dr. Gilman and later

returned to the University of Michigan.[1]  There remains a dispute between Mr. Martoma and the Government as to whether any documents on Dr. Gilman's Electronic Media may be withheld on the basis of a claim of Dr. Gilman's attorney-client privilege and, therefore, the parties have agreed that the University of Michigan need not produce any documents subject to such a claim of privilege until this Court resolves the dispute.[2]  For the following separate and independent reasons, this Court should order the production of all documents on Dr. Gilman's Electronic Media that the Government or any party seeks to withhold on the basis of a claim of Dr. Gilman's attorney-client privilege.

*First*, both the Government and the University of Michigan lack standing to assert Dr. Gilman's attorney-client privilege over any of the documents on Dr. Gilman's Electronic Media and, as a result, may not oppose the production of those documents on the basis of Dr. Gilman's attorney-client privilege.  Under binding Second Circuit precedent, the attorney-client privilege "belongs solely to the client" and "can be asserted ***only by the client*** (or one authorized to do so on the client's behalf)."  *In re Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (citing cases) (emphasis added).  Courts have held repeatedly that the Government may not assert the attorney-client privilege on behalf of a witness or potential witness because the "attorney-client privilege belonged solely to [the witness] and not to the government."  *United States v. Smith*, 454 F.3d 707, 713 (7th Cir. 2006); *accord United States v. Ortega*, 150 F.3d 937, 942 (8th Cir.

---

[1]    Letter from Richard M. Strassberg to Hon. Paul G. Gardephe, at 1-2 (June 13, 2013) (on file with the Court, Docket No. 34), attached as Ex. A to the Declaration of Richard M. Strassberg dated June 21, 2013 ("Strassberg Decl.").  The University of Michigan has informed Mr. Martoma and the Government that it also issued an iPad and an iPhone to Dr. Gilman that Dr. Gilman later returned to the University but that the University does not currently have the technological capabilities to search the iPad or iPhone.  Accordingly, Mr. Martoma has requested that the University of Michigan copy and produce the contents of the iPad and iPhone in full.  The University of Michigan has not yet agreed to Mr. Martoma's request.  (*See id.*, at 2 n.1.)

[2]    (*See id.*, at 3.)

2

1998), *cert. denied*, 525 U.S. 1087 (1999). The same is true of third parties such as the University of Michigan. *See, e.g., In re Sarrio*, 119 F.3d at 147-48.

*Second*, even if the Government or the University of Michigan could assert Dr. Gilman's attorney-client privilege (and they cannot), neither can satisfy the burden of showing that the documents on Dr. Gilman's Electronic Media are in fact protected by Dr. Gilman's attorney-client privilege for at least the following reasons:

**The documents on Dr. Gilman's Electronic Media were never subject to the attorney-client privilege, because Dr. Gilman could not have held a reasonable expectation of privacy with respect to documents stored on the University of Michigan's property.** The University of Michigan expressly warned that it "cannot guarantee the privacy of any *records*, including the *personal records*, of any University employee."[3] Moreover, the University of Michigan expressly reserved the right to "access or monitor the content of *personal records*" – including the personal records on Dr. Gilman's Electronic Media – "[w]hen there is reasonable cause to believe that the employee has engaged in misconduct and may have used University resources improperly."[4] Further, the University of Michigan's policy made clear that, under certain circumstances, third parties have a right of access to employee's documents, including personal records.[5] Finally, the University of Michigan notified Dr. Gilman of its use and monitoring policies by (among other things) posting the policies on its website, and Dr. Gilman should have been aware of such policies. Therefore, as this Court recently ruled, Dr. Gilman could not have

---

[3]    University of Michigan, *U-M Standard Practice Guide* ("*U-M SPG*"), *Privacy and the Need to Monitor and Access Records*, § 601.11, at Part II (issued Sept. 7, 2004), available at http://spg.umich.edu/policy/601.11, attached as Ex. B to the Strassberg Decl. (italics in original).

[4]    (*See id.*, at Part III.A.1.b.3 (italics in original).)

[5]    (*See id.*, at Part II.)

held a reasonable expectation of privacy with respect to documents on his Electronic Media. *See, e.g.*, *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 159 (S.D.N.Y. 2011) (Gardephe, J.).

      **Even if the documents on Dr. Gilman's Electronic Media were protected by the attorney-client privilege at some point (and they were not), Dr. Gilman waived any claim of attorney-client privilege over the documents on the Laptop Image when he provided them to the Government.** The Government concedes that "counsel for [Dr. Gilman] allowed the FBI to make a forensic image of [Dr. Gilman]'s laptop hard drive on or about August 16, 2012," at the Government's request.[6] As the Government admits:

> This is a computer that the doctor involved with this case when he started cooperating with the government in approximately August of last year he had a lap top with him.  In an effort basically [to] freeze the evidence, because he continued to use this lap top for his work, he arranged for the FBI to on consent make an image of the computer, the hard drive.[7]

      Time and again, courts have held that the voluntary disclosure of documents to the Government waives any applicable attorney-client *privilege* over those documents.  *E.g.*, *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003).

      **Dr. Gilman likewise waived any claim of attorney-client privilege over the documents on the rest of his Electronic Media when he provided them to the University of Michigan.** Dr. Gilman provided the rest of his **Electronic** Media to the University of Michigan after he formally

---

[6]    Letter from Arlo Devlin-Brown, Assistant United States Attorney, to Hon. Paul G. Gardephe, at 1 (May 28, 2013) (on file with the Court, Docket No. 30), attached as Ex. C to the Strassberg Decl.

[7]    Transcript of Court Conference at 12:11-12:17, United States v. Martoma, No. 12 Cr. 973 (PGG) (S.D.N.Y. March 5, 2013), attached as Ex. D to the Strassberg Decl. (excerpt).

resigned from the University on November 27, 2012.[8]  Under Second Circuit law, the voluntary disclosure of documents to a third party such as the University of Michigan waives any applicable attorney-client privilege over those documents.  *E.g., In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973), *cert. denied* 414 U.S. 867 (1973).

For the foregoing reasons, Mr. Martoma respectfully requests that this Court order the production of all documents on Dr. Gilman's Electronic Media that any party seeks to withhold on the basis of a claim of Dr. Gilman's attorney-client privilege.

## ARGUMENT

## I.   NEITHER THE GOVERNMENT NOR THE UNIVERSITY OF MICHIGAN HAS STANDING TO ASSERT DR. GILMAN'S ATTORNEY-CLIENT PRIVILEGE.

Neither the Government nor the University of Michigan has standing to assert Dr. Gilman's attorney-client privilege and, therefore, neither may withhold documents on the basis of such a purported privilege.   Under binding Second Circuit precedent, the attorney-client privilege "belongs solely to the client" and "can be asserted ***only by the client*** (or one authorized to do so on the client's behalf)."   *In re Sarrio*, 119 F.3d at 147 (citing cases) (emphasis added); *see also Baker v. Dorfman*, 232 F.3d 121, 123 (2d Cir. 2000) ("the attorney-client privilege belongs solely to the client" (internal quotation marks omitted)); *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987) (same).[9]  Therefore, only Dr. Gilman – not the Government or the University of Michigan – may assert any attorney-client privilege over the documents at issue.

---

[8]   Drew Armstrong, *Michigan Professor Tied to Insider Trading Case Resigns*, Bloomberg (Nov. 30, 2012), available at http://www.bloomberg.com/news/2012-11-29/michigan-professor-tied-to-insider-trading-case-resigns.html, attached as Ex. E to the Strassberg Decl.  (*See also* Strassberg Decl. Ex. A.)

[9]   As the Second Circuit observed in *In re Sarrio*, 119 F.3d at 147-48, other courts have reached the same conclusion.  *See United States v. Plache*, 913 F.2d 1375, 1381 (9th Cir. 1990) ("Because the privilege was held by the corporation, any right to assert the attorney-client privilege on behalf of the corporation passed" to the court-appointed receiver, and the

Indeed, courts have held repeatedly that the Government may not assert the attorney-client privilege on behalf of a witness or potential witness because the "attorney-client privilege belonged solely to [the witness] and not to the government." *Smith*, 454 F.3d at 713 (holding that the Government could not object to cross-examination questions on the basis of a witness's attorney-client privilege) (citing cases); *Ortega*, 150 F.3d at 942 (finding that "the AUSA had no standing to raise an objection" on the basis of a witness's attorney-client privilege); *United States v. White*, 743 F.2d 488, 494 (7th Cir. 1984) (holding that the Government "lacks standing to bring an appeal based upon the [witness's] attorney-client privilege," because "[t]hat privilege belongs solely to [the witness], and not at all to the Government").[10]  The same is true of third parties such as the University of Michigan.  *See, e.g., In re Sarrio*, 119 F.3d at 147-48.

In short, both the Government and the University of Michigan lack standing to assert Dr. Gilman's attorney-client privilege over any of the documents on Dr. Gilman's Electronic Media and, as a result, may not oppose the production of those documents on the basis of a claim of Dr. Gilman's attorney-client privilege.

## II.   NONE OF THE DOCUMENTS ON DR. GILMAN'S ELECTRONIC MEDIA IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

Even if the Government or the University of Michigan could assert Dr. Gilman's attorney-client privilege (and they cannot), neither can satisfy its burden of showing that the

---

defendant ex-officer of the corporation lacked standing to assert the corporation's privilege.); *Henderson v. United States*, 815 F.2d 1189, 1192 (8th Cir. 1987) (finding that the defendant lacked standing to object to testimony of the former attorney of his girlfriend on the basis of the attorney-client privilege, which "belongs to and exists solely for the benefit of the client").

[10]   Not surprisingly, the Government's standing to act on behalf of its witnesses is similarly restricted in other contexts.  *See, e.g.*, *United States v. Nachamie*, 91 F. Supp. 2d 552, 560-61 (S.D.N.Y. 2000) (holding that the Government lacks standing to quash Rule 17(c) subpoenas issued to its witnesses or potential witnesses because "the Government's interests and that of its witnesses are not identical and it would therefore be inappropriate for the Government's attorney to act as counsel to its witnesses").

documents on Dr. Gilman's Electronic Media are in fact protected by Dr. Gilman's attorney-client privilege.  Indeed, Dr. Gilman himself could not satisfy this burden because the documents were never protected by the attorney-client privilege and, in any event, Dr. Gilman waived such a privilege when he provided his Electronic Media to third parties on more than one occasion.

As the Second Circuit has made clear, the attorney-client privilege protects only those communications "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citation omitted).  It is "vital to a claim of privilege that the communications between client and attorney were made in confidence and ***have been maintained in confidence***."  *Id.* at 134 (quoting *In re Horowitz*, 482 F.2d at 81) (emphasis added).  As this Court has explained, communications are confidential only when the client-employee has "a reasonable expectation of privacy."  *In re Reserve Fund*, 275 F.R.D. at 159 (citing cases).

Consistent with these principles, and because the attorney-client privilege "runs counter to the ordinary judicial interest in the disclosure of all relevant evidence," the Second Circuit has long since held that the voluntary disclosure of confidential material to a third party results in the forfeiture of any applicable attorney-client privilege: "We deem it clear that subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege."  *In re Horowitz*, 482 F.2d at 81; *accord In re Sarrio*, 119 F.3d at 147 ("[I]f a client-witness waives its right to conceal matters it confided to its attorney, a party against whom the evidence is offered has no right to insist that the privilege nevertheless be observed.").

As the party (inappropriately) asserting Dr. Gilman's attorney-client privilege, the Government (and the University of Michigan) "bears the burden of establishing its essential elements," *Mejia*, 655 F.3d at 132, but the Government (and the University of Michigan) cannot carry that burden for at least three separate and independent reasons. *First*, none of the documents on Dr. Gilman's Electronic Media was ever subject to the attorney-client privilege, because Dr. Gilman could not have held a reasonable expectation of privacy with respect to documents stored on the University of Michigan's property. *Second*, even if the documents were privileged (and they were not), Dr. Gilman forfeited any claim of attorney-client privilege over any documents on the Laptop Image when he voluntarily provided those documents to the Government. *Third*, Dr. Gilman likewise forfeited any claim of attorney-client privilege over any documents on the rest of his Electronic Media when he voluntarily provided those documents to the University of Michigan.

Therefore, this Court should order the production of all documents on Dr. Gilman's Electronic Media that the Government or any party seeks to withhold on the basis of a claim of Dr. Gilman's attorney-client privilege.

> **A.   The Documents On Dr. Gilman's Electronic Media Were Never Privileged Because Dr. Gilman Could Not Have Held A Reasonable Expectation Of Privacy With Respect To Such Documents.**

First and foremost, none of the documents on Dr. Gilman's Electronic Media were ever protected by the attorney-client privilege, because Dr. Gilman could not have held a reasonable expectation of privacy with respect to documents stored on the University of Michigan's property. All of Dr. Gilman's Electronic Media were furnished to Dr. Gilman by the University of Michigan. Therefore, documents on those Electronic Media can be protected by Dr. Gilman's attorney-client privilege only if Dr. Gilman had a "reasonable expectation of privacy" with respect to those documents. *See, e.g.*, *In re Reserve Fund*, 275 F.R.D. at 159. As this Court has

recently explained, the question is whether Dr. Gilman "was on actual or constructive notice that these communications could be read or otherwise monitored by third parties."  *Id.* (internal quotation marks omitted).  If Dr. Gilman was on actual or constructive notice that the documents could be reviewed by third parties, then he could have no expectation of privacy and the materials would never be deemed privileged.  To answer the question, this Court has considered the following factors: "(1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?"  *Id.* at 159-60 (internal quotation marks omitted).  As the University of Michigan's policies make clear, each of these factors shows that Dr. Gilman was on notice that the documents on his Electronic Media could be read or otherwise monitored by the University of Michigan and, as a result, Dr. Gilman could not have held a reasonable expectation of privacy with respect to any of those documents.

      *First*, although the University of Michigan privacy policy acknowledges that it "permits some latitude for employees . . . to conduct personal matters at their work sites," the policy expressly warns that "the University of Michigan cannot guarantee the privacy of any *records*, including the *personal records*, of any University employee."  (*See* Strassberg Decl. Ex. B, at Part I, Part II.)[11]  That is not surprising.  The University of Michigan's property – which

---

[11]  The *U-M SPG* defines a *record* as "any document, file, computer program, database, image, recording, or other means of expressing fixed information that is created, received, used, or maintained within the scope of University business or employment at the University or that resides on University-controlled premises or property."  (*See* Strassberg Decl. Ex. B, at Part VI.A.)  A *personal record* is "a *record* that is created, received, used, or maintained by an employee for a purpose not related in any way to his or her work for the University."  (*See id.*, at Part VI.F (italics in original).)

includes Dr. Gilman's Electronic Media – is "purchased to support the mission of the University and is *not intended to support the personal use by faculty, staff, students or visitors*." University of Michigan, *U-M SPG, Acquisition, Use and Disposition of Property (Exclusive of Real Property)* § 520.01, at Part III.B (issued June 7, 2005), available at http://spg.umich.edu/policy/520.01, attached as Ex. F to the Strassberg Decl. (emphasis added) (stating that only "[l]imited personal use of property may be deemed acceptable").  The University of Michigan's policy also makes clear that laptops, iPads, and cell phones "remain the property of the University and should be returned . . . when no longer needed by employees or when employees leave . . . ."  University of Michigan, *U-M SPG, Tech Tools: Cell Phones and Portable Electronic Resources*, § 514.04, at Part II.B.2.a, Part III.A.2.a (issued on May 31, 2012), available at http://spg.umich.edu/policy/514.04, attached as Ex. G to the Strassberg Decl. Under these policies, Dr. Gilman had no reasonable expectation of privacy in the documents on his Electronic Media, which were the exclusive property of the University of Michigan.  *See In re Reserve Fund*, 275 F.R.D. at 163 (citing cases); *see also United States v. Finazzo*, No. 10-CR-457 (RMM)(RML), 2013 WL 619572, at *8 (E.D.N.Y. Feb. 19, 2013) (finding that an employer's policy limiting personal use weighs against finding a reasonable expectation of privacy, because "where a third party can dictate the means of communication, an employee is less reasonable in believing it secure") (citing cases) (internal quotation marks omitted).

*Second*, the University of Michigan retains the right to "access or monitor all records" (including personal records) on Dr. Gilman's Electronic Media.  Although the University of Michigan states that it "respects the privacy of its employees and seeks to foster a climate free from arbitrary or capricious monitoring of employees and the records they create, use or control," the very next sentence of the policy alerts employees that "[n]onetheless, the University

must, at times, access *records* or monitor *record systems* that are under the control of its employees"—explicitly including any *personal records* that may be located in the same place. (*See* Strassberg Decl. Ex. B, at Part I (italics in original).)   Likewise, while the University generally "will not access or monitor the content of *personal records*" or "monitor the *personal records* . . . content of *record systems*," it expressly reserves the right to do so in various circumstances—including "[w]hen there is reasonable cause to believe that the employee has engaged in misconduct and may have used University resources improperly," as is the case here. (*See* Strassberg Decl. Ex. B, at Part III.A.1.b.3 (italics in original).)[12]   The University of Michigan's policy also alerts employees that the University is required by law to access, monitor, and disclose records or record systems in various circumstances.  (*See* Strassberg Decl. Ex. B, at Part III.A.1.a.2.)  Indeed, the University of Michigan's policy explicitly warns:  "There are many laws that govern the maintenance and disclosure of *records*.  Federal and state laws, for example, require the University to: . . . disclose *records* . . . and/or monitor *record systems*."  (*See* Strassberg Decl. Ex. B, at Part II (italics in original).)[13]   As this Court recently explained, "[w]here an employer reserves the right to access or inspect an employee's email or work computer, courts often find that the employee has no reasonable expectation of privacy."  *In re Reserve Fund*, 275 F.R.D. at 163 (citing cases); *see also Finazzo*, 2013 WL 619572, at *9

---

[12]   The University of Michigan's policy also expressly grants the University of Michigan broad authority to investigate misconduct, including specifically the "abuse of confidentiality."  University of Michigan, *U-M SPG, Policy Statement on the Integrity of Scholarship and Procedures for Investigating Allegations of Misconduct in the Pursuit of Scholarship [sic] and Research*, § 303.03, at Part I.E (issued July 1, 1994), available at http://spg.umich.edu/policy/303.03, attached as Ex. H to the Strassberg Decl.

[13]   The *U-M SPG* defines *record systems* as "ways of storing, disseminating, or organizing *records*.  They include, but are not limited to, computers, computing networks, telephones lines, voice mail, fax machines, filing cabinets, etc. which are University property or which are controlled by the University."  (*See* Strassberg Decl. Ex. B, at Part VI.B (italics in original).)

(E.D.N.Y. Feb. 19, 2013) ("Most courts have concluded such reservation of the right to review destroys any reasonable expectation of privacy, whether or not the employer routinely reviews." (citing cases)).

*Third*, the University of Michigan makes clear that, under certain circumstances, third parties have a right of access to employee's documents, including personal records. The University of Michigan's policy alerts employees that many laws "govern the maintenance and disclosure of records" and expressly warns that federal and state laws require the University to "disclose *records*" and "monitor *record systems*." (*See* Strassberg Decl. Ex. B, at Part II (italics in original).) This policy "provides clear notice" to employees that their communications may be disclosed to third parties. *In re Reserve Fund*, 275 F.R.D. at 164.

*Fourth*, the University of Michigan notifies all employees (including Dr. Gilman) of its use and monitoring policies by (among other things) posting the policies on its website; thus, Dr. Gilman should have been aware of such policies. The relevant sections of the University of Michigan's policies, which on their face apply to all University employees, are publicly available on the University's website. (*See* Strassberg Decl. Exs. B, F-H (citing publicly-available internet webpages).) In addition, Dr. Gilman should have been aware at the time he communicated with counsel that the University of Michigan could access and monitor his personal records on his Electronic Media because (among other things) the University had "reasonable cause to believe that [Dr. Gilman] ha[d] engaged in misconduct." (*See* Strassberg Decl. Ex. B, at Part III.A.1.b.3.) Therefore, because Dr. Gilman was undoubtedly on notice of the University of Michigan's use and monitoring policies, he could not have held a reasonable expectation of privacy with respect to documents on his Electronic Media. *See In re Reserve Fund*, 275 F.R.D. at 159.

12

Accordingly, Mr. Martoma respectfully requests that this Court order the production of all documents on Dr. Gilman's Electronic Media that the Government or any party seeks to withhold on the basis of a claim of Dr. Gilman's attorney-client privilege.

**B.      Dr. Gilman Waived Any Claim Of Attorney-Client Privilege Over Documents On The Laptop Image When He Provided Them To The Government.**

Even if the documents stored on Dr. Gilman's Electronic Media were protected by the attorney-client privilege at some point (and they were not), Dr. Gilman's knowing and voluntary disclosure to the Government of all documents on the Laptop Image waived any claim of attorney-client privilege over those documents.  Time and again, courts have held that the voluntary disclosure of documents to the Government waives any applicable attorney-client privilege over those documents.  *See, e.g.*, *Ratliff*, 354 F.3d at 170 (holding that any claim of attorney-client privilege over the documents at issue was waived when the client's attorney provided the documents to the SEC); *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1370 (D.C. Cir. 1984) ("Tesoro willingly sacrificed its attorney-client confidentiality by voluntarily disclosing material [to the SEC] in an effort to convince . . . the SEC[] that a formal investigation or enforcement action was not warranted."); *Spanierman Gallery, Profit Sharing Plan v. Merritt*, No. 00 Civ. 5712(LTS)(THK), 2003 WL 22909160, at *2-3 (S.D.N.Y. Dec. 9, 2003) (holding that the defendant's attorney-client privilege was waived when the defendant and her attorneys produced otherwise privileged information to the FBI in the context of an FBI investigation).

Dr. Gilman's production to the Government of all documents on the Laptop Image "leaves little question that the privilege has been waived," as the production was voluntary and Dr. Gilman "took no precautions to preserve the privilege when the documents were produced to the FBI," such as labeling the documents "confidential" or "privileged" or obtaining the Government's agreement that the documents would be treated as privileged and confidential.

*Spanierman*, 2003 WL 22909160, at *3.   In the months of correspondence between the Government and Mr. Martoma over the Laptop Image, the Government has never stated that Dr. Gilman's disclosure of all documents on the Laptop Image – in the midst of negotiating his non-prosecution agreement – was anything other than knowing, voluntary, and complete.   The Government has never indicated that Dr. Gilman at any point attempted to withhold any documents on a claim of privilege or even insisted on confidentiality protections.   (*See* Strassberg Decl., at ¶ 12.)   Dr. Gilman also does not appear to consider any documents on the Laptop Image to be privileged.   Dr. Gilman provided the Laptop Image to the Government on August 16, 2012, and Mr. Martoma first raised the issue of a waiver of any claim of Dr. Gilman's attorney-client privilege on February 8, 2013.   Tellingly, in the ***months*** that have followed, the Government has never said that Dr. Gilman attempted to recover any supposedly privileged documents on the Laptop Image or assert any privilege over them.   (*See* Strassberg Decl., at ¶ 12.)

Accordingly, Mr. Martoma respectfully requests that this Court order the production of all documents on the Laptop Image that the Government or any party seeks to withhold on the basis of a claim of Dr. Gilman's attorney-client privilege.

### C. Dr. Gilman Waived Any Claim Of Attorney-Client Privilege Over Documents On The Rest Of His Electronic Media When He Provided Them To The University of Michigan.

Likewise, even if the documents stored on Dr. Gilman's Electronic Media were protected by the attorney-client privilege at some point (and they were not), Dr. Gilman's knowing and voluntary disclosure to the University of Michigan of all documents on the rest of his Electronic Media also waived any claim of attorney-client privilege over those documents.   Forty years ago, the Second Circuit held that, where a client "treats the communications between [the client] and counsel on the same basis as all other records," which a third party has "a free run to look at," the

14

disclosure of potentially privileged communications to that third party destroys any applicable privilege. *In re Horowitz*, 482 F.2d at 82. As the Second Circuit explained: "It is not asking too much to insist that if a client wishes to preserve the privilege . . ., he must take some affirmative action to preserve confidentiality." *Id.* Indeed, "[i]t is difficult to be persuaded that the documents were intended to remain confidential in the light of the fact that they were indiscriminately mingled with the other routine documents" and no effort was made to protect their confidentiality. *Id.* (internal quotation marks omitted).

Dr. Gilman resigned from the University of Michigan on November 27, 2012, less than a week after he entered into a non-prosecution agreement. (*See* Strassberg Decl. Ex. E.) At some later time – when Dr. Gilman was no longer employed by the University of Michigan and the University had already publicly announced that it was "carefully reviewing all of Dr. Gilman's activities while a faculty member at [the] University" – Dr. Gilman, while represented by counsel, apparently provided his laptop, desktop, flash drives, iPad, and iPhone to the University of Michigan. University of Michigan Health System, *UMHS Statement Regarding Federal Investigation Involving Dr. Sid Gilman* (Nov. 21, 2012), available at http://www.uofmhealth.org/news/archive/201211/umhs-statement-regarding-federal-investigation-involving-dr, attached as Ex. I to the Strassberg Decl.; (*see also* Strassberg Decl. Ex. A). Any potentially privileged documents "were indiscriminately mingled with the other routine documents" on Dr. Gilman's Electronic Media, and the Government has not even suggested (much less demonstrated) that any effort was made to protect the confidentiality of such documents. (*See* Strassberg Decl., at ¶ 12.) Therefore, any claim of Dr. Gilman's attorney-client privilege over any documents on his Electronic Media has been waived. *In re Horowitz*, 482 F.2d at 82; *accord Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1106-07 (W.D.

Wash. 2011) (holding that a former employee waived any applicable privilege over materials on his laptop when he "relinquished the laptop" to the former employer "without asserting privilege or taking any precautions to protect the privacy of materials that he had saved on the laptop").

Accordingly, Mr. Martoma respectfully requests that this Court order the production of all documents on Dr. Gilman's Electronic Media provided to the University of Michigan that the Government or any party seeks to withhold on the basis of a claim of Dr. Gilman's attorney-client privilege.

## CONCLUSION

For the foregoing reasons, Mr. Martoma respectfully requests that the Court grant his Motion to Compel the Production of Certain Documents Withheld by the Government or the University of Michigan, and order the production of all documents on Dr. Gilman's Electronic Media that the Government or any party seeks to withhold on the basis of a claim of Dr. Gilman's attorney-client privilege.

Dated: June 21, 2013
      New York, NY

                    Respectfully submitted,

                    GOODWIN PROCTER LLP

                    By: /s/ Richard M. Strassberg
                        Richard M. Strassberg (RS5141)
                         (rstrassberg@goodwinprocter.com)
                        John O. Farley (JF4402)
                         (jfarley@goodwinprocter.com)
                        Daniel P. Roeser (DR2380)
                         (droeser@goodwinprocter.com)

                    The New York Times Building
                    620 Eighth Avenue
                    New York, New York 10018
                    Telephone:  (212) 813-8800

Roberto M. Braceras (RB2470)
 (rbraceras@goodwinprocter.com)
53 State Street
Boston, Massachusetts 02109
Telephone:  (617) 570-1000

*Attorneys for Defendant Mathew Martoma*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2013, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.   I also certify that I have caused copies of the aforementioned document to be served via first class mail, postage prepaid, upon all non-CM/ECF participants.

/s/ Richard M. Strassberg
Richard M. Strassberg (RS5141)