USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 2 2 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :        INDICTMENT

        - v. -                    :
                                           S1 12 Cr. 973 (PGG)
MATHEW MARTOMA,                   :

        Defendant.                :

- - - - - - - - - - - - - - - X

## COUNT ONE

(Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### Relevant Entities and Individuals

1.   At all relevant times, MATHEW MARTOMA, the
defendant, was a portfolio manager specializing in health care
sector investments for a division of a privately held group of
affiliated hedge funds and associated fund advisers referred to
herein as the SAC Hedge Fund.  The SAC Hedge Fund's written
policy forbade MARTOMA from trading securities based on material
non-public information ("Inside Information"), and specifically
warned against obtaining Inside Information from "doctors
conducting clinical trials."

2.   At all relevant times, Elan Corporation, plc
("Elan") was a corporation headquartered in Dublin, Ireland.
Elan's stock traded on the New York Stock Exchange ("NYSE")

through the issuance of American Depository Receipts (or "ADRs")
under the ticker symbol "ELN."

3.    At all relevant times, Wyeth was a Delaware
corporation headquartered in New Jersey.  Wyeth's common stock
was registered with the U.S. Securities and Exchange Commission
("SEC") and listed on the NYSE under the ticker symbol "WYE."

4.    At all relevant times, Elan and Wyeth were
partners in connection with the phase II clinical trial of an
experimental Alzheimer's disease drug known as bapineuzumab (the
"Drug Trial").

5.    At all relevant times, an individual referred to
as Doctor-1, a co-conspirator not named as a defendant herein,
was an Alzheimer's disease expert who served as a professor of
neurology at a leading medical school.  Doctor-1 also worked as
a paid consultant to Elan and served as the chair of the Safety
Monitoring Committee ("SMC") in connection with the Drug Trial.
Elan expressly forbade members of the SMC from disclosing "any
and all data, safety, efficacy, or otherwise" about the Drug
Trial before the data was released to the public.

6.    At all relevant times, an individual referred to
as Doctor-2, a co-conspirator not named as a defendant herein,
was a medical doctor engaged by Elan as a clinical investigator
for the Drug Trial.  In this capacity, Doctor-2 treated

2

Alzheimer's disease patients with bapineuzumab pursuant to a confidential protocol developed by Elan.  Doctor-2 then provided medical data to Elan relating to the mental and physical condition of the patients after treatment.  At all relevant times, Elan expressly forbade its clinical investigators from disclosing information about their work on the Drug Trial to third parties including, specifically, "hedge fund employees" and "investors."

7.   At all relevant times, the "Expert Networking Firm" was a Manhattan-based business that arranged paid consultations between financial industry clients and experts in various fields.  The SAC Hedge Fund paid the Expert Networking Firm substantial fees for access to certain health care experts, including Doctor-1.  The Expert Networking Firm expressly advised its experts, including Doctor-1, and employees of its financial industry clients, including MATHEW MARTOMA, the defendant, that experts "participating in clinical trials may not discuss the patient experience or trial results not yet in the public domain."

### The Insider Trading Scheme

8.   From in or about the summer of 2006 through on or about July 29, 2008, MATHEW MARTOMA, the defendant, participated

in an insider trading scheme centered around obtaining and trading on confidential data about the Drug Trial before it was made public at an Alzheimer's disease conference on July 29, 2008 at approximately 4:00 p.m. (the "Public Announcement").

9.    To effectuate the scheme, MATHEW MARTOMA, the defendant, sought out doctors involved in the Drug Trial in order to obtain confidential information about the ongoing trial.  For example, on or about August 30, 2006, shortly after beginning his employment with the SAC Hedge Fund, Martoma e-mailed the Expert Networking Firm a list of over 20 doctors serving as clinical investigators on the Drug Trial and asked the Expert Networking Firm to attempt to arrange consultations with all of the identified doctors.  An employee of the Expert Networking Firm replied to MARTOMA the next day that the nine clinical investigators who had responded to the Expert Networking Firm's inquiry had all declined the proposed consultation due to a "conflict of interest."  Notwithstanding this impediment, Martoma was ultimately able to arrange – both through the Expert Networking Firm and other channels – paid consultations with multiple doctors with access to confidential information about the Drug Trial, including Doctor-1 and Doctor-2.

10.   In particular, between approximately August 2006

4

and July 2008, MATHEW MARTOMA, the defendant, arranged for approximately 42 consultations with Doctor-1 through the Expert Networking Firm.  During these paid consultations, through an exploitation of MARTOMA's personal and financial relationship with Doctor-1, MARTOMA sought and obtained from Doctor-1 Inside Information about the Drug Trial.  In particular, MARTOMA and Doctor-1 arranged for consultations through the Expert Networking Firm to take place shortly after Elan had presented confidential data to Doctor-1 at SMC meetings.  During the consultations following SMC meetings, Doctor-1 provided MARTOMA with confidential safety data that had been disclosed to members of the SMC by Elan.  Based in part on this Inside Information, MARTOMA bought shares of Elan and Wyeth stock for his own portfolio and recommended that the founder and principal owner of the SAC Hedge Fund (the "SAC Owner") buy additional shares for the SAC Hedge Fund, which the SAC Owner did.

        11.  In addition, MATHEW MARTOMA, the defendant, arranged for several paid consultations with Doctor-2 through a financial services firm that provided expert networking services to the SAC Hedge Fund.  In connection with certain of these consultations, Doctor-2 provided confidential information about the Drug Trial and other Alzheimer's disease drug trials to MARTOMA with the expectation that Martoma would assist Doctor-2

in obtaining additional clinical trial business.

12.   In or around early July 2008, Elan and Wyeth formally selected Doctor-1 to present publicly the final results of the Drug Trial.  The final results of the Drug Trial were negative, raising significant questions about whether the drug had any meaningful effect on the treatment of Alzheimer's disease.  In order to prepare Doctor-1 to make the presentation, during meetings on or about July 15, 2008 and July 16, 2008, Elan provided Doctor-1 with detailed confidential data about the closely-guarded and still-secret results of the Drug Trial.

13.   Doctor-1 first provided the final results of the Drug Trial to MATHEW MARTOMA, the defendant, shortly after receiving the confidential data from Elan.  On the afternoon of July 17, 2008, Doctor-1 received an e-mail from Elan labeled "Confidential, Do Not Distribute," which attached a 24-slide PowerPoint presentation for Doctor-1 to display during the Public Announcement.  Doctor-1 and MARTOMA spoke by telephone that same afternoon for approximately one hour and 45 minutes about the confidential data that Doctor-1 had just received from Elan.  Later that evening, MARTOMA spoke to Doctor-1 again and arranged to travel to Doctor-1's office in Ann Arbor, Michigan for an in-person meeting.  On or about Saturday, July 19, 2008, MARTOMA traveled round-trip by plane from New York City to

6

Detroit to meet personally with Doctor-1 in his office.

14.   On the morning of Sunday, July 20, 2008, after receiving the negative confidential information about the Drug Trial results from Doctor-1, MATHEW MARTOMA, the defendant, spoke to the SAC Owner and recommended the sale of Elan and Wyeth stock prior to the Public Announcement.  Beginning on or about Monday, July 21, 2008, the SAC Hedge Fund sold virtually all of its approximately $700 million worth of Elan and Wyeth stock prior to the Public Announcement.  In addition, the SAC Hedge Fund engaged in "short sales" and various options trades designed to profit if the price of Elan and Wyeth securities were to fall after the Public Announcement.

15.   Following the Public Announcement, shares of Elan stock lost approximately 42% of their value and shares of Wyeth stock fell approximately 12%.  The SAC Hedge Fund's combined profits and avoided losses through its sale of Elan and Wyeth stock and related options activity between July 21, 2008 and the Public Announcement is estimated to be approximately $276 million.  As a consequence of this illegal scheme, MATHEW MARTOMA, the defendant, received a bonus of approximately $9.3 million.

## Statutory Allegations

16.   From in or about the summer of 2006 through on or

7

about July 29, 2008, in the Southern District of New York and elsewhere, MATHEW MARTOMA, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

17.   It was a part and object of the conspiracy that MATHEW MARTOMA, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon the

purchaser and seller, all in violation of Title 15, United
States Code, Sections 78j(b) and 78ff, and Title 17, Code of
Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

## Means And Methods Of The Conspiracy

18.   Among the means and methods by which the
conspirators, including MATHEW MARTOMA, the defendant, would and
did carry out the conspiracy were the following:

a.   Doctor-1 and Doctor-2 misappropriated and
disclosed Inside Information about the Drug Trial in violation
of (a) fiduciary and other duties of trust and confidence owed
by Doctor-1 and Doctor-2 to Elan, (b) expectations of
confidentiality regarding Elan information, and (c) policies of
Elan regarding the use and safekeeping of Inside Information.

b.   MARTOMA obtained the Inside Information about the
Drug Trial from Doctor-1 and Doctor-2 through an exploitation of
his personal and financial relationships with Doctor-1 and
Doctor-2.

c.   MARTOMA used the Inside Information about the
Drug Trial to engage in securities transactions, and thereby
profited and caused the SAC Hedge Fund to profit from the Inside
Information.

## Overt Acts

19.   In furtherance of the conspiracy and to effect

the illegal object thereof, the following overt acts, among
others, were committed by MATHEW MARTOMA, the defendant, among
others, in the Southern District of New York and elsewhere:

      a.   On or about August 30, 2006, MARTOMA e-
mailed the Manhattan-based Expert Networking Firm to request
consultations with over 20 Drug Trial clinical investigators.

      b.   On or about October 9, 2007, MARTOMA spoke
with Doctor-1 through a consultation arranged by the Expert
Networking Firm and obtained confidential safety data about the
Drug Trial.

      c.   On or about May 29, 2008, MARTOMA arranged a
future meeting to occur with Doctor-2 on the evening of July 28,
2008, immediately after Doctor-2 was scheduled to be briefed
about the final Drug Trial results and one day in advance of the
Public Announcement.

      d.   On or about July 17, 2008, MARTOMA obtained
confidential final results of the Drug Trial from Doctor-1.

      e.   On or about July 20, 2008, MARTOMA spoke by
telephone with the SAC Hedge Fund Owner and recommended selling
Elan and Wyeth securities before the Public Announcement.

      f.   On or about July 21, 2008, MARTOMA and the
SAC Hedge Fund Owner instructed a SAC Hedge Fund trader to begin
selling the SAC Hedge Fund's entire position in Elan securities,

which are traded on the NYSE in Manhattan, New York.

(Title 18, United States Code, Section 371.)

## COUNT TWO

(Securities Fraud - Elan)

The Grand Jury further charges:

20.   The allegations contained in paragraphs 1 through 15, 18, and 19 are repeated and realleged as though fully set forth herein.

21.   In or about July 2008, in the Southern District of New York and elsewhere, MATHEW MARTOMA, the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, before Elan and Wyeth

11

publicly disclosed the final results of an Alzheimer's disease drug trial on July 29, 2008, MARTOMA obtained material, nonpublic information about the results and, based in whole or in part on that information, caused the SAC Hedge Fund to sell common stock of Elan, short Elan stock, and enter into options transactions relating to Elan.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2 and Title 18, United States Code, Section 2.)

## COUNT THREE

(Securities Fraud - Wyeth)

The Grand Jury further charges:

22.   The allegations contained in paragraphs 1 through 15, 18, and 19 are repeated and realleged as though fully set forth herein.

23.   In or about July 2008, in the Southern District of New York and elsewhere, MATHEW MARTOMA, the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to

12

defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, before Elan and Wyeth publicly disclosed the final results of an Alzheimer's disease drug trial on July 29, 2008, MARTOMA obtained material, nonpublic information about the results, and based in whole or in part on that information, caused the SAC Hedge Fund to sell common stock of Wyeth and short Wyeth stock.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5 &
240.10b5-2; and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

24.   As a result of committing one or more of the foregoing conspiracy and securities fraud offenses alleged in Counts One, Two and Three of this Indictment, MATHEW MARTOMA, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses, including

but not limited to a sum of money of at least $9,300,000 in
United States currency representing the proceeds obtained as a
result of the charged offenses alleged in this Indictment, and
all right, title and interest in the following specific
property:

a.   the real property and appurtenances, with
all improvements and attachments thereon, located at 2464 W.
Maya Palm Drive, Boca Raton, Florida, more particularly
described as Parcel ID 06-43-47-29-10-005-0020;

b.   up to $3,246,320.62 in funds on deposit in
account number 1512369446 at American Express Bank, held in the
name of Mathew C. Martoma;

c.   up to $245,000 in funds on deposit in
account number 146674626 at ING Direct, held in the name of
Rosemary Martoma; and

d.   up to $934,897.77 in funds or other assets
in account number 88047594915 at Vanguard, held in the name of
Mathew and Rosemary Martoma Foundation.

## Substitute Assets Provision

25.   If any of the above-described forfeitable
property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due

14

diligence;

        b.  has been transferred or sold to, or deposited with, a third party;

        c.  has been placed beyond the jurisdiction of the court;

        d.  has been substantially diminished in value; or

        e.  has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

        (Title 18, United States Code, Section 981(a)(1)(C);
Title 28, United States Code, Section 2461(c); and Title 15,
United States Code, Sections 78j(b) and 78ff; and Title 17, Code
of Federal Regulations, Sections 240.10b-5 & 10b5-2.)

_____
Foreperson

_____
PREET BHARARA
United States Attorney

15

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

### MATHEW MARTOMA,

Defendant.

### INDICTMENT

(18 U.S.C. §§ 2, 371; Title 15, United
States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations,
Section 240.10b-5)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

Foreperson.

8/12/13