STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        -against-

MATHEW MARTOMA,

                   Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 23, 2013

**MEMORANDUM
OPINION & ORDER**

12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Defendant Mathew Martoma has moved to compel the Government and/or the University of Michigan to produce certain documents associated with Dr. Sidney Gilman, a cooperating witness. (Dkt. No. 35) These materials have been withheld on the basis of a claim of attorney-client privilege. The Government has opposed Defendant's motion. (Dkt. No. 44) Dr. Gilman has moved to intervene to oppose Defendant's motion, and he seeks a protective order barring the production of the allegedly privileged materials. (Dkt. No. 46) For the reasons stated below, the Court concludes that the Government lacks standing to oppose Defendant's motion, and grants Dr. Gilman's motion to intervene. The merits of Defendant's motion to compel and Dr. Gilman's motion for a protective order will be addressed in a separate order.

**BACKGROUND**

        Defendant Martoma is charged with one count of conspiracy to commit securities fraud and two substantive counts of securities fraud. (Dkt. No. 7 (Indictment)) The Indictment alleges that Martoma traded securities on the basis of inside information received from a cooperating witness – Dr. Gilman. (Indictment ¶¶ 7-10, 17, 19; see Gilman Br. (Dkt. No. 47) at 1) At the time of the alleged conspiracy, Dr. Gilman was employed by the University of Michigan. (See Gilman Decl. (Dkt. No. 48) ¶ 1) The University had provided Dr. Gilman with

certain electronic equipment, including a laptop computer, desktop computer, iPhone, iPad, and five external flash drives.  (Id.; Strassberg Decl. (Dkt. No. 37), Ex. A (June 13, 2013 Def. Ltr. to Court) at 1-2 & n.1)

In August 2012, in advance of a proffer session with the Government, Dr. Gilman permitted the FBI to make a forensic image of the hard drive of the laptop computer provided by the University.  (Devlin-Brown Decl. (Dkt. No. 45) ¶ 2)  Before the hard drive was copied, Dr. Gilman's counsel and the Government acknowledged that it contained potential "confidential information."  (Id., Ex. A (Aug. 15, 2012 Gov't & Def. emails))  At some point after Defendant was indicted and requested that the Government produce a copy of the imaged hard drive, Dr. Gilman's counsel informed the Government that some of the documents on the hard drive appeared to be privileged.[1]  (Id. ¶ 4; Gov't Br. (Dkt. No. 44) at 5)

In November 2012, after Dr. Gilman resigned from the University of Michigan, the University requested that Dr. Gilman return all of the electronic devices that it had issued to him.  (See id., Ex. C (Nov. 28, 2012 Gilman Ltr. to U. Mich.))  When he returned the devices to the University, Dr. Gilman asserted that in doing so, "neither [he] nor any other privilege holder waives any applicable privilege(s)."  (Id.)

The Government later provided the imaged hard drive to the University for purposes of decryption (Strassberg Decl., Ex. A (June 13, 2013 Def. Ltr. to Court) at 1-2), so that the Government could satisfy its discovery and disclosure obligations to the Defendant.  See Fed.

---

[1]  It is not clear when Dr. Gilman first asserted that his laptop computer contained communications protected by the attorney-client privilege.  The Government made no reference to any privilege issues when advising the Court of its discovery plan at the Defendant's arraignment on January 3, 2013.  (See Jan. 3, 2013 Tr.)  In a February 13, 2013 letter, however, the Government informed Defendant that it did not intend to produce any privileged documents from the imaged hard drive.  (Strassberg Reply Decl., Ex. E (Feb. 13, 2013 Gov't Ltr.))  The Court was first made aware of the potential attorney-client privilege issue at a status conference on March 5, 2013.  (See Mar. 5, 2013 Tr. 5, 14-16)

R. Crim P. 16; <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  The University also agreed to search and produce documents from certain other electronic devices that Dr. Gilman had returned to the University.[2]  (<u>Id.</u>)  Although the University takes no position regarding Dr. Gilman's assertion of privilege, it has agreed not to produce any potentially privileged documents until the Court resolves the privilege issue.[3]  (<u>Id.</u>; July 3, 2013 Def. Ltr. to Court (Dkt. No. 42); Strassberg Reply Decl. (Dkt. No. 57), Ex. A (July 22, 2013 U. Mich. Ltr. to Court) at 1)

On June 21, 2013, Defendant moved to compel the Government and/or the University to produce the documents withheld on the basis of Dr. Gilman's assertion of attorney-client privilege.  (Dkt. No. 35)  On July 12, 2013, the Government filed an opposition to Defendant's motion.  (Dkt. No. 44)  On July 17, 2013, Dr. Gilman moved to intervene to oppose Defendant's motion, and for a protective order barring the production of the allegedly privileged communications.  (Dkt. No. 46)  On July 26, 2013, Defendant filed a reply to the submissions from the Government and Dr. Gilman.  (Dkt. No. 55)

<u>**DISCUSSION**</u>

## I.   THE GOVERNMENT LACKS STANDING TO ASSERT <u>DR. GILMAN'S ATTORNEY-CLIENT PRIVILEGE</u>

The attorney-client privilege "can be asserted only by the client (or one authorized to do so on the client's behalf)."  <u>In re Sarrio, S.A.</u>, 119 F.3d 143, 147 (2d Cir. 1997); <u>see also In</u>

---

[2]  The University has not agreed to produce documents from Dr. Gilman's iPhone and iPad, representing that it does not have the technological capacity to search those devices.  (Strassberg Decl., Ex. A (June 13, 2013 Def. Ltr. to Court) at 2 n.1)
[3]  The parties, Dr. Gilman, and the University have agreed that the document searches and production will be conducted by a third-party vendor hired by Defendant, but potentially privileged documents will not be produced to Defendant until after the privilege issue is resolved.  (July 3, 2013 Def. Ltr. to Court)

re von Bulow, 828 F.2d 94, 100 (2d Cir. 1987) (attorney-client privilege "belongs solely to the client").

The Government contends, however, that it has standing because it has "a legitimate and compelling interest in acting ethically and consistently with the rules of professional conduct in not releasing to the defendant (or reviewing itself) documents over which a witness has made a non-frivolous claim of privilege."  (Gov't Br. 8)  While the Government may have an ethical obligation to bring the privilege issue to the Court's attention, that obligation does not confer standing on the Government to assert privilege on Dr. Gilman's behalf under the circumstances of this case.  See United States v. Smith, 454 F.3d 707, 713 (7th Cir. 2006) ("Although the government did not act inappropriately in bringing the privilege issue to the court's attention, this was not a proper basis for a government objection to the defense questioning of [the witness].") (emphasis omitted); United States v. White, 743 F.2d 488, 494 (7th Cir. 1984) ("The Government, however, cannot appeal based upon the inadequate protection of someone else's privilege.  In so saying, we are not unmindful of the duty of every lawyer to bring to the attention of the trial court possible ethical problems in the case; nor do we find fault with the Government for having done so in this case.").

The Government is not authorized to assert Dr. Gilman's privilege merely because he has expressed a desire to preserve the confidentiality of the communications at issue. Indeed, Dr. Gilman has filed a motion to intervene, stating that "because [he] is the privilege holder, his interests are not adequately represented by the other parties in this matter."  (Gilman Br. 6)  The Government acknowledges that Dr. Gilman's motion is necessary "to avoid any issue with respect to standing[,] and because Dr. Gilman is in a better position to address the particular arguments advanced by the [D]efendant."  (Gov't Br. 8)  Given that Dr. Gilman has moved to

intervene to assert his rights, and has not authorized the Government to assert those rights on his behalf, the Government does not have standing to assert Dr. Gilman's privilege here.[4]  See Smith, 454 F.3d at 713 (7th Cir. 2006) (Government could not object to witness's testimony that would reveal witness's communications with his attorney because "attorney-client privilege belonged solely to [witness] and not to the government"); United States v. Ortega, 150 F.3d 937, 942 (8th Cir. 1998) (same).

## II.  DR. GILMAN'S MOTION TO INTERVENE WILL BE GRANTED

"The Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case." United States v. Aref, 533 F.3d 72, 81 (2d Cir. 2008); see also In re New York Times Co., 708 F. Supp. 603, 604 (S.D.N.Y. 1989) (Federal Rule of Civil Procedure 24, which allows for intervention in civil cases, "has no applicability to criminal cases").  Nevertheless, "it is settled law that persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings and seek protective orders . . . ." United States v. RMI Co., 599 F.2d 1183, 1186 (3d Cir. 1979) (citing, inter alia, United States v. Nixon, 418 U.S. 683, 688 (1974)); United States v. Crawford Enters., Inc., 735 F.2d 174, 176 (5th Cir. 1984) (same).  A third-party's reasonable assertion of privilege with respect to

---

[4]  The cases cited by the Government are not to the contrary.  See United States v. Barnes, No. 04 Cr. 186 (SCR), 2008 WL 9359654, at *1 (S.D.N.Y. Apr. 2, 2008) ("Because the [subpoenaed third-party] has requested that the Government intervene on its behalf, the United States Attorney's Office has standing to challenge the subpoena."); United States v. Nektalov, No. 03 Cr. 828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004) (same); United States v. Jasper, No. 00 Cr. 825 (PKL), 2003 WL 1107526, at *1 (S.D.N.Y. Mar. 13, 2003) (government had standing to move to quash subpoena served on third-party where representative of third-party "appeared at a hearing in this Court to indicate the [third-party's] intention to join in the government's motion"); United States v. Chen De Yian, No. 94 Cr. 719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995) (holding that government had standing to move to quash subpoena when subpoenaed third-party "forwarded any material responsive to the subpoena to the United States Attorney's Office, [and] [i]n so doing, . . . in effect requested that the United States Attorney's Office represent it and any governmental interest implicated by the . . . subpoena").

documents to be produced in a criminal action is sufficient grounds on which to grant the third-party's motion to intervene and to consider the merits of that party's application. Accordingly, Dr. Gilman's motion to intervene will be granted.

## CONCLUSION

For the reasons stated above, the Government lacks standing to oppose Defendant's motion to compel. Dr. Gilman's motion to intervene to oppose Defendant's motion to compel is granted.

Dated: New York, New York
August 23, 2013

SO ORDERED.

Paul G. Gardephe
United States District Judge