# BRACEWELL
# &GIULIANI

Texas
New York
Washington, DC
Connecticut
Seattle
Dubai
London

Marc L. Mukasey
Partner

212.508.6134 Office
800.404.3970 Fax

Marc.Mukasey@bgllp.com

Bracewell & Giuliani LLP
1251 Avenue of the Americas
49th Floor
New York, New York
10020-1100

September 4, 2013

By Fax Number 212.805.7986

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/24/13

      Re:    *United States v. Martoma*, 12 Cr. 973 (PGG)

Dear Judge Gardephe:

We respectfully submit this letter to the Court on behalf of Sidney Gilman, M.D., third-party intervenor, to supplement our previous submission and inform the Court of additional facts relevant to Dr. Gilman's Motion for a Protective Order [Dkt. No. 46].

In June 2012, while Dr. Gilman was cooperating with the U.S. Attorney's Office (USAO) and SEC's investigation, the SEC served the University of Michigan (the "University") with a subpoena for limited categories of materials, which was subsequently narrowed substantially. In the ongoing course of Dr. Gilman's cooperation with the USAO and SEC, including proffers, interviews, communications with counsel and Dr. Gilman's production of materials and information, Dr. Gilman, through his counsel, made clear his intention not to waive any privileged or protected work product communication and confirmed the understanding that no such information was being requested or sought. The working understanding reflects standard procedure for the USAO and SEC. For example, the United States Attorney's Manual affirms the Justice Department's "understand[ing] that the attorney-client privilege and attorney work product protection are essential and long-recognized components of the American legal system" and "serve an extremely important function in the American legal system." *See* USAM 9-28.710 (attached hereto as Exhibit A).

In accordance with honoring and adhering to those principles, Justice Department policy mandates that "prosecutors should not ask for such waivers and are directed not to do so." *Id.* Similarly, the SEC Enforcement Manual makes clear the SEC's recognition of and adherence to the principles that shield attorney-client communications and attorney work product. *See* SEC Enf. Man. 3.2.1, 4.1.1, 4.1.2, 4.3 (attached hereto as Exhibit B). The Enforcement Manual states that parties' obligations to comply with subpoenas for documents

#4363062.4

BRACEWELL
&GIULIANI

The Honorable Paul G. Gardephe
September 4, 2013
Page 2

extends to "relevant, non-privileged information and documents." *Id.* at 4.3. Moreover, the Manual underscores the critical importance of these long-honored protections and emphasizes the mandatory policy prohibiting SEC staff from seeking waivers absent authorization at the highest levels of the SEC Enforcement Division. **"The staff should not ask a party to waive the attorney-client privilege or work product protection without prior approval of the Director or Deputy Director."** *Id.*, 4.3. (Bold emphasis in original.) In the instant matter, the SEC letter transmitting its subpoena to the University acknowledges that it was not seeking privileged attorney-client materials and makes clear its expectation that such materials and protected attorney work product will be withheld and adequately identified. *See* Letter from SEC to the University of Michigan, dated June 1, 2012, at 2, with subpoena attached (attached hereto as Exhibit C).

In discharging its obligations to comply with the SEC subpoena, the University demonstrated exceptional deference to Dr. Gilman's privacy. Its deferential position was especially evident with respect to Dr. Gilman's electronic communications and documents that Dr. Gilman created, sent or received through, or that were maintained on, equipment and devices that the University issued to him (including desktop computer, laptop and thumb drives). In mid-June 2012, Dr. Gilman's counsel received and reviewed the several search terms (agreed to by the SEC and the University) that the University's IT Department would apply to Dr. Gilman's electronic files to identify responsive emails "sent to, from, or copied to Dr. Sidney Gilman [ ] from June 1, 2008 through July 31, 2008." *See* University of Michigan Letter to SEC, dated July 17, 2012 at 1-2 (referencing a June 15, 2012 email from the SEC) (attached hereto as Exhibit D).[1]  With a single exception, the search terms consisted entirely of domain names and email addresses, and none of the terms refers to the Bracewell & Giuliani LLP law firm or any Bracewell lawyer.

In advance of the University's first production to the SEC, Dr. Gilman's counsel reviewed the narrowly-tailored search terms used to identify Dr. Gilman's email communications responsive to the subpoena. Based on the review, the terms did not appear by design or effect as if they would generate privileged communications or protected attorney work product involving Dr. Gilman or his attorneys. In addition, Dr. Gilman's counsel understood that with respect to the University's identification of Dr. Gilman's emails and other electronic records the University would not access the documents to read or review them. Instead, the University would identify and produce responsive emails by relying on its IT Department to retrieve responsive emails by running electronic searches with the agreed-

---

[1]  The University's first production of documents to the SEC, on June 29, 2012, did not include Dr. Gilman's electronic communications. *See* Letter from the University to the SEC, dated June 29, 2012 (attached hereto as Exhibit E).

BRACEWELL
&GIULIANI

The Honorable Paul G. Gardephe
September 4, 2013
Page 3

upon terms. The results of IT's application would be sent on disk to the University's Office
of General Counsel for transmission to the SEC.

On or about June 25, 2012, at the University's request, Dr. Gilman provided the
University with several electronic devices that the University had issued to him, including a
laptop and certain thumb/flash drives, with the understanding that the University would
adhere to the protocol described above in responding to the SEC's subpoena. (The
University did not request that Dr. Gilman produce the desktop computer it had issued to
him. However, Dr. Gilman, through his counsel, understood that the University would apply
the same search methods and protocol for the desktop computer as for the other electronic
devices.)

On or about June 27, 2012, the University returned the laptop and drives to Dr.
Gilman. On or about July 12, 2012, before its production of responsive Gilman-related
emails to the SEC on July 17, 2012, the University provided Dr. Gilman's counsel with
copies of emails its IT Department identified as responsive so that they could be reviewed
before their production. Consistent with the understanding that the University was not
reviewing Dr. Gilman's electronic communications, Dr. Gilman's counsel undertook the
review. No privileged communication or protected attorney work product was identified.

Dr. Gilman repeatedly has asserted his right to preserve confidentiality, privilege and
attorney work product protection. At no time did Dr. Gilman ever intend to waive privilege
or other protected communications in connection with the USAO's and SEC's investigations.
At no time was he asked to waive such rights. The conduct of the USAO and SEC, including
the SEC's issuance of its narrowly tailored subpoena (subsequently further restricted),
supports and is consistent with the government's ongoing recognition of Dr. Gilman's
privileged and protected communications. Moreover, the University has demonstrated
extraordinary deference to Dr. Gilman's privacy and autonomy with respect to his electronic
communications and records on its equipment and devices. Indeed, the University's blinded
process of producing Dr. Gilman's emails in response to the SEC subpoena (including its

#4363062.4

BRACEWELL
&GIULIANI

The Honorable Paul G. Gardephe
September 4, 2013
Page 4

pre-production submission to counsel) strongly reaffirms Dr. Gilman's reasonable
expectation of privacy in his electronic communications and further supports a protective
order to safeguard Dr. Gilman's privileged and protected communications.

Respectfully submitted,

Bracewell & Giuliani LLP

Marc L. Mukasey

cc:     Roberto Braceras, Esq. (counsel for Defendant Mathew Martoma)
        Richard Strassberg, Esq. (counsel for Defendant Mathew Martoma)
        (by email)
        AUSA Arlo Devlin-Brown
        (by email)

#4363062.4

# EXHIBIT A

Bracewell

08/04/2013 3:31:51 PM   PAGE   7/036   Fax Server

United States Attorneys' Manual

US Attorneys >
**USAM**



title 1  Organization and Functions
title 2  Appeals
title 3  EOUSA
title 4  Civil
title 5  ENRD
title 6  Tax
title 7  Antitrust
title 8  Civil Rights
title 9  Criminal

# United States Attorneys' Manual

Resource Manuals

Index

Search

This is the current and official copy of the
*United States Attorneys' Manual* (USAM). The
USAM was comprehensively revised in 1997.
Changes or additions since 1997 are noted at
the end of affected sections.

# 9-28.000
# PRINCIPLES OF FEDERAL PROSECUTION OF BUSINESS ORGANIZATIONS [FN1]

9-28.100  Duties of Federal Prosecutors and Duties of Corporate Leaders

9-28.200  General Considerations of Corporate Liability

9-28.300  Factors to Be Considered

9-28.400  Special Policy Concerns

9-28.500  Pervasiveness of Wrongdoing Within the Corporation

9-28.600  The Corporation's Past History

9-28.700  The Value of Cooperation

9-28.710  Attorney-Client and Work Product Protections

9-28.720  Cooperation: Disclosing the Relevant Facts

9-28.730  Obstructing the Investigation

9-28.740  Offering Cooperation: No Entitlement to Immunity

9-28.750  Qualifying for Immunity, Amnesty, or Reduced Sanctions Through Voluntary Disclosures

9-28.760  Oversight Concerning Demands for Waivers of Attorney-Client Privilege or Work Product By Corporations Contrary to This Policy

9-28.800  Corporate Compliance Programs

9-28.900  Restitution and Remediation

9-28.1000  Collateral Consequences

9-28.1100  Other Civil or Regulatory Alternatives

9-28.1200  Selecting Charges

9-28.1300  Plea Agreements with Corporations

## 9-28.710  Attorney-Client and Work Product Protections

The attorney-client privilege and the attorney work product protection serve an extremely important function in the American legal system. The attorney-client privilege is one of the oldest and most sacrosanct privileges under the law. *See Upjohn v. United States*, 449 U.S. 383, 389 (1981). As the Supreme Court has stated, "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The value of promoting a corporation's ability to seek frank and comprehensive legal advice is particularly important in the contemporary global business environment, where corporations often face complex and dynamic legal and regulatory obligations imposed by the federal government and also by states and foreign governments. The work product doctrine serves similarly important goals.

For these reasons, waiving the attorney-client and work product protections has never been a prerequisite under the Department's prosecution guidelines for a corporation to be viewed as cooperative. Nonetheless, a wide range of commentators and members of the American legal community and criminal justice system have asserted that the Department's policies have been used, either wittingly or unwittingly, to coerce business entities into waiving attorney-client privilege and work-product protection. Everyone agrees that a corporation may freely waive its own privileges if it chooses to do so; indeed, such waivers occur routinely when corporations are victimized by their employees or others, conduct an internal investigation, and then disclose the details of the investigation to law enforcement officials in an effort to seek prosecution of the offenders. However, the contention, from a broad array of voices, is that the Department's position on attorney-client privilege and work product protection waivers has promoted an environment in which those protections are being unfairly eroded to the detriment of all.

The Department understands that the attorney-client privilege and attorney work product protection are essential and long- recognized components of the American legal system. What the government seeks and needs to advance its legitimate (indeed, essential) law enforcement mission is not waiver of those protections, but rather the facts known to the corporation about the putative criminal misconduct under review. In addition, while a corporation remains free to convey non-factual or "core" attorney-client communications or work product—if and only if the corporation voluntarily chooses to do so—prosecutors should not ask for such waivers and are directed not to do so. The critical factor is whether the corporation has provided the facts about the events, as explained further herein.

[new August 2008]

# EXHIBIT B

# Securities and Exchange Commission
## Division of Enforcement



## Enforcement Manual

Office of Chief Counsel

*November 1, 2012*

- Under the "government compulsion" prong, coercive influence or significant encouragement by the state can convert private conduct into state action.

After a witness asserts the Fifth Amendment privilege during investigative testimony and declines to respond to potentially incriminating questions, the issue may arise if the same witness is then summoned to testify about the same or related conduct by a private entity. When providing testimony to a private entity, asserting the Fifth Amendment may result in consequences other than the ability to draw an adverse inference at trial.

Basic Guidelines:

When staff is aware that a private entity is investigating conduct that is the same or related to the conduct involved in the staff's investigation, staff should keep the following guidelines in mind:

- In fact and appearance, the SEC and the private entity's investigations should be parallel and should not be conducted jointly. Staff should make investigative decisions independent of any parallel investigation that is being conducted by a private entity.

- Do not take any investigative step principally for the benefit of the private entity's investigation or suggest investigative steps to the private entity.

- In SEC investigations in which a witness has asserted or indicated an intention to assert the Fifth Amendment in testimony, do not suggest any line of questioning to the private entity conducting a parallel investigation, and do not provide to the private entity any document or other evidence for use in questioning a witness other than pursuant to an approved access request.

Further Information:

Staff should consult with OCC staff concerning any questions relating to the State Actor Doctrine.

### 3.2 Documents and Other Materials

#### 3.2.1 Privileges and Privacy Acts

In connection with any request for document production, staff must comply with the Privacy Act of 1974 ("Privacy Act"), the Right to Financial Privacy Act of 1978 ("RFPA"), and the Electronic Communications Privacy Act of 1986 ("ECPA") and the rules regarding the assertion of privileges, contacting witness's counsel, parallel proceedings, and ongoing litigation. Those rules and statutes are discussed in Section 4 of the Manual.

[ATTORNEY'S FULL NAME]
Counsel to [NAME OF WITNESS]

### 4. Privileges and Protections

#### 4.1 Assertion of Privileges

##### 4.1.1 Attorney-Client Privilege

Basics:

- The attorney-client privilege protects from disclosure confidential communications between attorney and client made when the client is seeking legal advice. The purpose of the privilege is to encourage free and candid communication between attorney and client.

- Elements necessary to establish the attorney-client privilege:

  o it is a communication

  o the communication was made in confidence

  o the communication was to an attorney

  o the communication was by a client

  o the communication was for the purpose of seeking or obtaining primarily legal advice

  o the privilege was not waived

Considerations:

- Circumstances when the attorney-client privilege is usually unavailable include:

  o When the privilege has been waived: The privilege belongs solely to the client and may only be waived by that client. A client waives the privilege by knowingly sharing the substance of a privileged communication between the client and the attorney with parties outside the privileged relationship. With respect to corporations, management has the authority to waive the privilege.

  o When the party asserting the privilege asserts a defense of advice-of-counsel: If a party asserts an advice-of-counsel defense, the party must waive the privilege, including testifying or producing documents, to the extent necessary to enable the staff to evaluate the validity of the defense. To assert a valid advice-of-counsel defense, courts have held that the defendant must establish

86

that he or she (1) made complete disclosure to counsel; (2) requested counsel's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied in good faith on that advice.

- Information that typically does not involve a confidential communication and therefore is not privileged include:

  o identity of the client

  o existence of the attorney-client relationship

  o general reason why the attorney was retained

  o fee arrangement between attorney and client

  o billing statements

- Crime-fraud exception to attorney-client privilege: Most courts require the party wishing to invoke the crime-fraud exception to demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and the communications in question were in furtherance of the crime or fraud. This burden is normally not met by showing that the communications in question might provide evidence of a crime or fraud but rather that the communication itself was in furtherance of the crime or fraud and was intended to facilitate or conceal the crime or fraud.

- Corporations asserting the attorney-client privilege: The attorney-client privilege can be asserted by a corporation to protect communications between corporate employees and in-house counsel. Courts have held that to assert the attorney-client privilege, a corporation must show that the communication came from a person who was employed with the corporation at the time of the communication, the employee was seeking legal advice from an attorney, and the communication was made within the scope of the employee's duties.

- Questions to consider asking to test the assertion of the attorney-client privilege include:

  o Who prepared the document?

  o Who sent the document?

  o To whom was the document sent?

  o What was the date of the communication?

  o What was the date on the document? What date was the document prepared,

sent, or received?

o   Who are the attorney and client involved?

o   What was the nature of the document (*i.e.*, memorandum, letter, telegram, etc., and generic subject matter)?

o   Who are parties indicated on the document through carbon copy notations or otherwise who were to receive the document, and all parties that in fact received or saw the document?

o   Who was present during the communication?

o   Who are the parties to whom the substance of the communication was conveyed?

o   Would all of the communication, if disclosed to the staff, reveal or tend to reveal a communication from a client (made with the intention of confidentiality) to his or her attorney in connection with clients seeking legal services or legal advice at a time when the attorney was retained by that client?

o   Would any segregable part of that communication not reveal or tend not to reveal such a confidential communication?

o   Did a retention agreement between the attorney and client exist and if so, what is the date of such agreement?

o   During what period of time did the attorney-client relationship exist?

o   Was a legal fee charged the client by the attorney in connection with the matter involving the communication, and if so, how much, and how, when and by whom was it paid?  If no fee was charged, was one discussed?

o   What was the general nature of legal services rendered, and during what time period were they rendered?

o   Did the communication primarily involve a business dealing between the attorney and client?

o   Did the communication involve the client's seeking business advice?

o   Was the communication a grant of authority or instruction for the attorney to act upon?

88

### 4.1.1.1 Multiple Representations

Basics:

It is not unusual for counsel to represent more than one party (employees of the same company, for example).[6] Representing more than one party in an investigation does not necessarily present a conflict of interest, although it may heighten the potential for a conflict of interest.

Considerations:

When an attorney represents multiple parties, staff in testimony typically informs the party of what is contained in Form 1662, which states that:

> "You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours."

### 4.1.2   Attorney Work Product Doctrine

Basics:

- A party or the representing attorney may refuse to provide information on the basis that the information requested is protected by the attorney work product doctrine. If the documents or information requested were prepared in anticipation of litigation or for trial, or directly related to preparation for trial, then the work product doctrine generally applies and the party seeking discovery has the burden of proving substantial need and undue hardship. For material to be prepared in "anticipation of litigation," the prospect of litigation must be identifiable, although litigation need not have already commenced.

- Elements of the doctrine as set forth in Federal Rule of Civil Procedure 26(b)(3) are the following:

  o   documents and tangible things

  o   prepared in anticipation of litigation or for trial

---

[6] Counsel is not precluded from representing more than one witness in the same investigation absent a showing that such representation will obstruct or impede the investigation. *See SEC v. Csapo*, 533 F.2d 7 (D.D.C. 1976); *see also SEC v. Higashi*, 359 F.2d 550 (9th Cir. 1966).

     ○  by or for another party or by or for that party's representative, including attorney, consultant, surety, indemnitor, insurer, or agent

     ○  for which there is substantial need for the information and the information cannot be obtained elsewhere without undue hardship

Considerations:

- Voluntary disclosure of work product to the SEC generally constitutes a waiver.

- When a party asserts an advice-of-counsel defense, it must waive attorney work product protection to the extent necessary to enable the staff to evaluate the defense.

### 4.1.3   The Fifth Amendment Privilege Against Self-Incrimination

Basics:

- A witness testifying before the SEC may assert his or her Fifth Amendment privilege against self-incrimination.

- If a previous grant of immunity, or the expiration of the time limits for criminal prosecution prescribed by the statute of limitations, eliminates the danger of self-incrimination, the witness may not invoke the privilege.

Considerations:

- Staff typically will require testimony by or a declaration from the witness to assert the witness's Fifth Amendment privilege.  Staff typically will not accept a letter from counsel as an alternative to testimony or a declaration.

    - Reasons for requiring a witness to appear in person to assert the Fifth Amendment privilege include, but are not limited to, obtaining a clear and specific privilege assertion on the record, allowing the staff to probe the scope of the privilege assertion, and allowing the staff to determine whether there are grounds to challenge the assertion.

    - A witness may not make a blanket assertion of the Fifth Amendment privilege.

    - In some cases, allowing assertion of the privilege by declaration may be more appropriate, for example, when time is of the essence.

- The Fifth Amendment privilege against self-incrimination protects individuals and sole proprietorships, but does not protect a collective entity, such as a corporation, or papers held by an individual in a representative capacity for a collective entity.

privilege by [Client] or its counsel shall be promptly set aside in a secure place and will not be further reviewed, examined, or used for any purpose by the staff until such time as, consistent with Commission document retention practices, the documents can be returned to counsel for [Client] or destroyed;

9)   Neither [Client] nor its counsel will argue that the Commission's investigation has been tainted by the Commission's receipt, review, examination, or use of any documents subsequently determined in accordance with the provisions of this letter to have been subject to the attorney-client or work-product privilege.

I understand from our meeting and our subsequent discussions that these terms are acceptable to you. If that is not the case, please let me know immediately, so that we may begin to produce documents pursuant to this agreement. I have informed [Client] of the terms of this agreement, including but not limited to the provision that "neither [Client] nor its counsel will argue that the Commission's investigation has been tainted by the Commission's receipt, review, examination, or use of any documents subsequently determined in accordance with the provisions of this letter to have been subject to the attorney-client or work-product privilege."

Please do not hesitate to contact me if you have any questions.

Sincerely,

_____
Counsel for [Client]

### 4.3. Waiver of Privilege

Basics:

The staff must respect legitimate assertions of the attorney-client privilege and attorney work product protection. As a matter of public policy, the SEC wants to encourage individuals, corporate officers and employees to consult counsel about potential violations of the securities laws. Likewise, non-factual or core attorney work product -- for example, an attorney's mental impressions or legal theories – lies at the core of the attorney work product doctrine.

A key objective in the staff's investigations is to obtain relevant information, and parties are, in fact, required to provide all relevant, non-privileged information and documents in response to SEC subpoenas. ***The staff should not ask a party to waive the attorney-client privilege or work product protection without prior approval of the Director or Deputy Director.*** A proposed request for a privilege waiver should be reviewed initially with the Assistant supervising the matter and that review should

95

involve more senior members of management as appropriate before being presented to the Director or Deputy Director.

Both entities and individuals may provide significant cooperation in investigations by *voluntarily* disclosing relevant information. Voluntary disclosure of information need not include a waiver of privilege to be an effective form of cooperation and a party's decision to assert a legitimate claim of privilege will not negatively affect their claim to credit for cooperation. However, as discussed below, if a party seeks cooperation credit for timely disclosure of relevant facts, the party must disclose all such facts within the party's knowledge.

Corporations often gather facts through internal investigations regarding the conduct at issue in the staff's investigation. In corporate internal investigations, employees and other witnesses associated with a corporation are often interviewed by attorneys. Certain notes and memoranda generated from attorney interviews may be subject, at least in part, to the protections of attorney-client privilege and/or attorney work product protection. To receive cooperation credit for providing factual information obtained from the interviews, the corporation need not necessarily produce, and the staff may not request without approval, protected notes or memoranda generated by the attorneys' interviews. To earn such credit, however, the corporation does need to produce, and the staff always may request, relevant factual information—including relevant factual information acquired through those interviews.

A party may choose to voluntarily disclose privileged communications or documents. In this regard, the SEC does not view a party's waiver of privilege as an end in itself, but only as a means (where necessary) to provide relevant and sometimes critical information to the staff. *See* Seaboard 21(a) Report, Sec. Rel. No. 44969 n.3 (Oct. 23, 2001). In the event a party voluntarily waives the attorney-client privilege or work product protection, the staff cannot assure the party that, as a legal matter, the information provided to the staff during the course of the staff's investigation will not be subject to disclosure pursuant to subpoena, other legal process, or the routine uses set forth in the Commission's Forms 1661 and 1662.

Considerations:

- The SEC encourages and rewards cooperation by parties in connection with staff's investigations. One important measure of cooperation is whether the party has timely disclosed facts relevant to the investigation. Other measures of cooperation include, for example, voluntary production of relevant factual information the staff did not directly request and otherwise might not have uncovered; and requesting that corporate employees cooperate with the staff and making all reasonable efforts to secure such cooperation. The SEC's policies with respect to cooperation are set forth in the Seaboard 21(a) Report, Sec. Rel. No. 44969 (Oct. 23, 2001), and the Policy Statement concerning cooperation, 17 C.F.R. Section 202.12 (see Section 6.1 of the Manual), which outline other factors that may be considered in assessing whether to award credit for cooperation.

- A party's decision to assert a legitimate claim of attorney-client privilege or work product protection will not negatively affect their claim to credit for cooperation. The appropriate inquiry in this regard is whether, notwithstanding a legitimate claim of attorney-client privilege or work product protection, the party has disclosed all relevant underlying facts within its knowledge.

- By timely disclosing the relevant underlying facts, a party may demonstrate cooperation for which the staff may give credit, while simultaneously asserting privilege. The timely disclosure of relevant facts is considered along with all other cooperative efforts and circumstances in determining whether and the extent to which the party should be awarded credit for cooperation. *See id.*

Exceptions re: Assertion of Privileges:

- In order to rely on advice-of-counsel as a defense, a party must waive the attorney-client privilege and work product protection to the extent necessary to enable the staff to evaluate the defense. Staff at the Assistant Director level or higher should attempt to explore the possibility of an advice-of-counsel defense with a party's counsel at an early stage in the investigation. It is important to obtain all relevant documents and testimony at the earliest possible date.

- Staff should consider whether there may be other circumstances that negate assertions of privilege, such as the crime-fraud exception and prior non-privileged disclosure. These and other such circumstances should be considered in analyzing the legitimacy of a party's assertion of privilege.

Further Information:

- For more information on the attorney-client privilege and work product doctrine, and exceptions thereto, consult Sections 4.1.1 (Attorney-Client Privilege) and 4.1.2 (Attorney Work Product Doctrine) of the Manual.
- For information on the inadvertent production of privileged materials, consult Section 4.2 of the Manual.
- For information on the production of privileged materials pursuant to a Confidentiality Agreement, consult Section 4.3.1 of the Manual.
- For more information on the factors considered by the Commission when crediting cooperation, please consult the Seaboard 21(a) Report, Sec. Rel. No. 44969 n.3 (Oct. 23, 2001) with respect to corporations or Section 6.1 of the Manual with respect to individuals.

### 4.3.1   Confidentiality Agreements

Basics:

# EXHIBIT C



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
3 WORLD FINACIAL CENTER
NEW YORK, N.Y. 10281

WRITER'S DIRECT DIAL
(212) 336-0535

June 1, 2012

**Via UPS**

Custodian of Records
University of Michigan
c/o Donica Thomas Varner
Central Campus Legal Office
5010 Fleming Bldg.
503 Thompson Street
Ann Arbor, MI 48109-1340
(734) 764-0304

RECEIVED

JUN 0 4 2012

UNIVERSITY OF MICHIGAN
GENERAL COUNSEL

Re:    **In the Matter of Elan Corporation, plc (NY-08152)**

Dear Ms. Varner:

        The staff of the Securities and Exchange Commission is conducting an
investigation in the matter identified above. The enclosed subpoena has been issued as a
part of this investigation. The subpoena requires you to produce documents and provide
testimony. Testimony will not be required at the time stated in the subpoena if the
materials are produced at or before that time. I will inform you at a later date if
testimony is required.

**Producing Documents**

*What materials do I have to produce?*

        The subpoena requires you to give us the documents described in the attachment
to the subpoena. You must provide these documents by **June 22, 2012.** The attachment
to the subpoena defines some terms (such as "document") before listing what you must
provide.

        Please note that if copies of a document differ in any way, they are considered
separate documents and you must send each one. For example, if you have two copies of
the same letter, but only one of them has handwritten notes on it, you must send both the
clean copy and the one with notes.

        If you prefer, you may send us photocopies of the originals. The Commission
cannot reimburse you for the copying costs. The copies must be identical to the originals,
including even faint marks or print. If you choose to send copies, you must keep the
originals in a safe place. The staff will accept the copies for now, but may require you to
produce the originals later.

If you <u>do</u> send us photocopies, please put an identifying notation on each page of each document to indicate that it was produced by you, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. If you send us originals, please <u>do not</u> add any identifying notations.

### Do I need to send anything else?

You should enclose a list briefly describing each item you send. The list should state which paragraph(s) in the subpoena attachment each item responds to.

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

### What if I do not send everything described in the attachment to the subpoena?

The subpoena requires you to send <u>all</u> the materials described in it. If, for any reason -- including a claim of attorney-client privilege -- you do not produce something called for by the subpoena, you should submit a list of what you are not producing. The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and
- the reason you did not produce the item.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should also identify the attorney and client involved.

### Where should I send the materials?

Please send the materials, via overnight courier, to:

Charles D. Riely
U.S. Securities and Exchange Commission
3 World Financial Center, Room 400
New York, NY 10281
Phone: (212) 336-0535

### Other Important Information

### May I have a lawyer help me respond to the subpoena?

Yes. You have the right to consult with and be represented by your own lawyer in this matter. We cannot give you legal advice.

### What will the Commission do with the materials I send?

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission. This form has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at (212) 336-0535. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Charles D. Riely
Senior Counsel

Enclosures:
        Attachment
        SEC Form 1662
        SEC Data Delivery Standards



### SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Elan Corporation, plc (NY-08152)

To:    Custodian of Records
       University of Michigan
       Central Campus Legal Office
       5010 Fleming Bldg.
       503 Thompson Street
       Ann Arbor, MI 48109-1340

**YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the
Securities and Exchange Commission, at the place, date and time specified below:

Securities and Exchange Commission, 3 World Financial Center, Room 4300, New York, NY 10281
on June 22, 2012 at 9:30 a.m.

**YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place,
date and time specified below: **June 22, 2012 at 9:30 a.m.**

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
  Failure to comply may subject you to a fine and/or imprisonment.

By:    _____          Date:   June 1, 2012
       Charles D. Riely
       Division of Enforcement
       U.S. Securities & Exchange Commission
       3 World Financial Center, Suite 400
       New York, NY 10281
       (212) 336-0535

I am an officer of the Securities and Exchange Commission authorized to issue
subpoenas in this matter. The Securities and Exchange Commission has issued a formal
order authorizing this investigation under Section 21(a) of the Securities Exchange Act of
1934.

<u>Attachment to Subpoena to the University of Michigan</u>
<u>Dated June 1, 2012</u>

### I.    Definitions Used in This Attachment

1. "Document" means all materials from which information can be obtained that are or have been in your possession, custody, or control at any time up to the present, whether drafts or finished versions, originals or non-conforming copies, however and by whomever created, produced or stored (manually, mechanically, electronically or otherwise), including, without limitation, contracts, agreements, papers, correspondence, memoranda, notes, articles, reports, lists, logs, files, records, books, message slips, wires, electronic mail, instant messages, or text messages (including Blackberry Messenger), Tweets (or any information communicated through Twitter.com), computer discs, computer print-outs, tape recordings, videotapes, telegrams, facsimile copies, telephone logs, calendars, date books, bank records, worksheets, summaries, invoices, paid or unpaid bills, records of billings, purchase orders, checks, drafts for money, records of payments, cash receipts, cash disbursements ledgers, magnetic tape, disks, diskettes, optical disks, disk packs and other electronic media, microfilm, microfiche, and storage devices.

2. "Concerning" means relating to, referring to, describing, mentioning, memorializing, reflecting, evidencing, pertaining to, involving, embodying, or constituting.

3. "Communication" means the transmission of information in the form of facts, ideas, inquiries, or otherwise.

### II.    Instructions

1. All documents are to be organized according to the order and subjects listed in this attachment; and should be accompanied by a list briefly identifying each document and the paragraph(s) or sub-paragraph(s) to which it corresponds on the list of documents requested in Section III of this attachment.

2. The staff requests that, if possible, you comply with this subpoena by voluntarily producing the documents requested as digital images on dvd-rom or cd-rom. The enclosed SEC Delivery Standards describes the technical requirements for electronic productions.

3. Where electronic mail or instant messages are requested, produce all electronic mail in accordance with the SEC Data Delivery Standards. Each electronic mail and instant message is to be restored and produced in its entirety, including, but not limited to, all attachments.

4. Each document requested is to be produced in its entirety, including all non-identical copies and drafts, without abbreviation, expurgation, or redaction.

5. All documents required to be produced should be marked as having been provided by you. Also, please serially number the pages of all documents that you submit (i.e. bates stamped).

6. If any document called for is withheld for any reason, please submit a list stating: (a) the identity of the document; (b) the author(s) of the document; (c) the date of creation of the document; (d) the identity of the present, or last known, custodian; (e) all persons or entities known to have been furnished the document or copies of the document, or informed of its substance; and (f) the reason(s) the document is not being produced.

7. If any document called for is not produced and is withheld because of a claim of attorney-client privilege, or other privilege, please, in addition to the information in Section II.5 above, also state: (a) the basis for the claim of privilege; (b) the identity of the attorney(s) involved and the client; (c) the date when the attorney was retained; and (d) the duration of the retention.

8. If any document called for once was, but no longer is, in your possession, custody or control, please submit a list stating: (a) the identity of the document; (b) the reason why the document is not being produced; (c) the identity of the present, or last known, custodian; and (d) the date of the loss, destruction, discarding, theft or other disposal of the document.

9. For purposes of this request, an electronic mail is considered "to" a person if that person's electronic mail address appears on the to:, cc:, or bcc: lines of the electronic mail.

10. The following rules of construction apply to these subpoena requests: (a) the terms "all" and "each" shall be construed as all and each; (b) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the attachment all responses that might otherwise be construed outside of its scope; and (c) the use of the singular form of any word includes the plural and vice-versa.

11. The terms "concerning" and "evidencing" mean relating to, referring to, describing, demonstrative, or constituting.

12. Any term used to identify a non-natural person legal entity means such entity and all subsidiaries, parents, affiliates, predecessors, successors, officers, directors, employees, agents, contractors, principals, partnerships, limited and general partners thereof, and any aliases, code names, or trade or business names used by any of the foregoing.

13. **Please provide a declaration from the Custodian of Records or other qualified person certifying that the records produced in connection with this request are true copies of records that were: made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters; kept in the course of regularly conducted business activity; and made by the regularly conducted business activity as a regular practice.**

## III. Documents To Be Produced

Produce the all of the following documents in your possession, custody, or subject to your control:

1. All Documents or Communications sent to, from, or copied to Dr. Sidney Gilman ("Gilman") from June 1, 2008 through July 31, 2008.

2. All information stored in the Outlook Contact files of Gilman, or any other electronic information relating to contacts maintained by Gilman.

3. All information stored in the Outlook Calendar of Gilman, or any other electronic information relating to appointments maintained by Gilman.

4. All Documents concerning any swipe cards used by Gilman at any University of Michigan facility between June 1, 2008 and July 31, 2008.

5. For the time period July 1, 2007 to the present, all Documents Concerning: (i) any work performed in connection with the clinical trials for Bapineuzumab for Elan Corporation, plc and Wyeth; or (ii) the events leading up to the July 29, 2008 announcement at the International Conference on Alzheimer's Disease concerning the Phase 2 trial data on an Alzheimer's drug jointly under development by Elan and Wyeth.

6. All telephone records for any phone (office or cellular) used by Gilman on a regular basis from July 1, 2007 to December 31, 2008. This includes, but is not limited to, all telephone phone bills and call details, and any other correspondence received from telephone phone service providers.

7. All written policies, agreements, or correspondence relating to confidentiality or trading policies governing Gilman from July 1, 2007 to the present.

8. All documents provided by the University of Michigan in response to any information request or subpoena from any federal or state investigative or regulatory body from July 1, 2007 to the present.

# EXHIBIT D



**THE UNIVERSITY OF MICHIGAN**
OFFICE OF THE VICE PRESIDENT
AND GENERAL COUNSEL

July 17, 2012

*-VIA UPS-*

Charles D. Riely, Senior Counsel
U.S. Securities and Exchange Commission
3 World Financial Center, Room 400
New York, NY 10281

RE:    *In the Matter of Elan Corporation, plc (NY-08152)*

Dear Mr. Riely:

This supplement is in response to your Subpoena dated June 1, 2012, that you issued to the Custodian of Records, University of Michigan, Central Campus Legal Office. Please note that the University's response is subject to inadvertent or undiscovered errors, is not completely based upon personal knowledge and is, therefore, based on and limited by the business records and information in existence and in the possession of the University of Michigan. Consequently, the University of Michigan will amend its response if it appears that omissions or errors have been made or more accurate information is available. Subject to the limitations set forth herein, the information provided is accurate and complete to the best of my knowledge, information and belief.

Specifically, the documents being produced are as follows:

As stated in your email of June 15, 2012, in regard to emails responsive to Request Number 1, the parties agreed to produce emails from, to, or copied to Dr. Gilman involving the domain names, email addresses, or search terms below:

**Domain Names:**
- @crintrinsic.com (including Mat.Martoma@CRIntrinsic.com)
- @tokumcapital.com (including rshen@tokumcapital.com)
- @pfmlp.com

**Email addresses:**
- Mat.Martoma@gmail.com
- mcmartoma@yahoo.com
- Allison.Hulme@elan.com
- Michael.Grundman@Elan.com
- BlackR@wyeth.com

**Other Search Term**
- Please also run a search in the emails in this time period for "Mat" (one t) or Martoma.

**CENTRAL CAMPUS**
**LEGAL OFFICE**
The University of Michigan
5010 Fleming Admin. Bldg.
503 Thompson Street
Ann Arbor, MI 48109-1340
Phone:   (734) 764-0304
Facsimile: (734) 763-5648

**DEVELOPMENT**
**LEGAL OFFICE**
The University of Michigan
9000 Wolverine Tower
3003 South State Street
Ann Arbor, MI 48109-1288
Phone:   (734) 647-6095
Facsimile: (734) 647-6100

**HEALTH SYSTEM**
**LEGAL OFFICE**
The University of Michigan
Suite 3B04 NIB
300 North Ingalls, SPC 5476
Ann Arbor, MI 48109-5476
Phone:   (734) 764-2178
Facsimile: (734) 647-2781

**OFFICE OF**
**TECHNOLOGY**
**TRANSFER**
The University of Michigan
1600 Huron Parkway, 2nd Floor
Ann Arbor, MI 48109-2590
Phone:   (734) 763-0614
Facsimile: (734) 998-9630

Charles D. Riely, Senior Counsel
U.S. Securities and Exchange Commission
July 17, 2012
Page Two

        **1.** All Documents or Communications sent to, from, or copied to Dr. Sidney Gilman ("Gilman") from June 1, 2008 through July 31, 2008.

        *RESPONSE:* The responsive documents are contained in three disks labeled "Desktop," "Laptop and Jump Drives" and "Laptop and Jump Drives E-Mails," SEC Prod. No. 1 001-003. In addition, there are two "Incident 1909437 Memos dated June 11, 2012 and June 21, 2012." There is also an email from Chris Bolton to Martha Boonstra regarding "procedure for getting data from ltnu0029." SEC Prod. No. 1 004-10 have been prepared by University IT professionals describing the data collection process.

        **2.** All information stored in the Outlook Contact files of Gilman, or any other electronic information relating to contacts maintained by Gilman.

        *RESPONSE:* See SEC Prod No. 1 001-010.

        **3.** All information stored in the Outlook Calendar of Gilman, or any other electronic information relating to appointments maintained by Gilman.

        *RESPONSE:* See SEC Prod No. 1 001-010.

        **4.** All Documents concerning any swipe cards used by Gilman at any University of Michigan facility between June 1, 2008 and July 31.2008.

        *RESPONSE:* This information was produced to Charles D. Riely on June 29, 2012. The responsive documents were labeled and produced as SEC Prod No. 4 001-002.

        **5.** For the time period of July 1, 2007 to the present, all Documents Concerning: (i) any work performed in connection the clinical trials for Bapineuzumab for Elan Corporation, plc and Wyeth; or (ii) the events leading up the July 29, 2008 announcement at the International Conference on Alzheimer's Disease concerning phase 2 trial data on an Alzheimer's drug jointly under development by Elan and Wyeth.

        *RESPONSE:* No responsive documents are being produced at this time for request 5, pursuant to your email of June 25, 2012, that specifically provided: "With respect to Request Number 5, you may hold off on gathering or producing any responsive documents. As discussed with Martha, after reviewing the initial production, we may circle back to you with more specific requests."

Charles D. Riely, Senior Counsel
U.S. Securities and Exchange Commission
July 17, 2012
Page Three

> **6.** All telephone records for any phone (office or cellular) used by Gilman on a regular basis from July 1, 2007 to December 31, 2008. This includes, but is not limited to, all telephone phone bills and call details, and any other correspondence received from telephone service providers.
>
> ***RESPONSE:*** The responsive documents are labeled SEC Prod. No. 6 001-134. Please note that the University does not have the capability to search Apple devices. Therefore, the University of Michigan has not produced any information stored in any University-issued iPads or iPhones.
>
> **7.** All written policies, agreements, or correspondence relating to confidentiality or trading policies governing Gilman from July 1, 2007 to the present.
>
> ***RESPONSE:*** This information was produced to Charles D. Riely on June 29, 2012. The responsive documents were labeled and produced as SEC Prod No. 7 001-209.
>
> **8.** All documents provided by the University of Michigan in response to any information request or subpoena from any federal or state investigative or regulatory body from July 1, 2007 to the present.
>
> ***RESPONSE:*** Pursuant to your email dated June 25, 2012, please note that we are producing only documents responsive to this request concerning or relating to Dr. Gilman. Responsive documents are labeled SEC Prod. No. 8 001-015.
>
> In addition, a Search and Seizure Warrant was issued to the University by the FBI on August 26, 2011 and is labeled SEC Prod. No. 8 008-012. The University's responsive letter dated September 1, 2011 is attached as SEC Prod. No. 8 013-014. Unfortunately, the University's copy of the disk referenced in the letter cannot be located at this time and has inadvertently been misplaced.

The University of Michigan respectfully requests that the SEC take all reasonable steps to ensure that this letter, and all documents accompanying this letter, as well as the documents and letter produced on June 29, 2012, are maintained in confidence. In addition, by copy of this letter, the University of Michigan respectfully requests confidential treatment for this production and exemption from disclosure under the Freedom of Information Act, 5 U.S.C. § 552. In accordance with 17 C.F.R. § 200.83(c)(2), each page has been marked confidential. This request for confidentiality shall continue indefinitely unless we advise you otherwise. Because such documents constitute investigatory records obtained by the SEC in connection with a potential

Charles D. Riely, Senior Counsel
U.S. Securities and Exchange Commission
July 17, 2012
Page Four

---

law enforcement proceeding, they are subject, at least at the present, to the exemption from mandatory disclosure under Exemption 7(A) of the Freedom of Information Act, 5 U.S.C. § 52(b)(7)(A). *See, e.g., National Labor Relations Board v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978); *Chilivis v. Securities and Exchange Commission*, 673 F.2d 1205 (11th Cir. 1982). In addition, we believe that Exemptions 4, 6, 7(B) and 7(C) of the Freedom of Information Act, 5 U.S.C. §§ 552(b)(4), (b)(6), (b)(7)(C) are also applicable to the documents, as well as the protections available under the Privacy Act of 1974, 5 U.S.C. § 552a.

Accordingly, we request that all documents and copies of documents produced by the University of Michigan in connection with the SEC's investigation, including this letter, be kept confidential and in a non-public file and that access to them by any third-party not a member of the SEC or its staff be denied. Should the SEC receive any request for these documents, either pursuant to the Freedom of Information Act or otherwise, we request that we will be given an opportunity to object to such disclosure. Furthermore, should the Commission be inclined to disclose these documents to any third-party, it is our expectation that, in accordance with normal SEC practice, we will be given ten (10) business days' advance notice of any such decision to pursue any remedies that may be available. *See, e.g., Chrysler Corp. v. Brown*, 441 U.S. 281 (1979).

If you have any questions or need additional assistance, please do not hesitate to contact me.

Sincerely,

Kris Snook
Lead Paralegal
Central Campus
Direct Dial (734) 615-8935

Enc.

✓ßcc: Cheri Hoff

# EXHIBIT E



**THE UNIVERSITY OF MICHIGAN**
OFFICE OF THE VICE PRESIDENT
AND GENERAL COUNSEL

June 29, 2012

Charles D. Riely, Senior Counsel
U.S. Securities and Exchange Commission
3 World Financial Center, Room 400
New York, NY 10281

RE:   *In the Matter of Elan Corporation, plc (NY-08152*

Dear Mr. Riely:

This letter is a partial response to your Subpoena dated June 1, 2012, that you issued to the Custodian of Records, University of Michigan, Central Campus Legal Office. Specifically, the documents being produced at this time are as follows:

> 4. All Documents concerning swipe cards used by Gilman at any University of Michigan facility between June 1, 2008 and July 31, 2008. The responsive documents are labeled "SEC Prod #4 001-002.
>
> 7. All written policies, agreements, or correspondence relating to confidentiality or trading policies governing Gilman from July 1, 207 to the present. The responsive documents are labeled "SEC Prod #7 001-209.

Pursuant to the conference call that occurred on June 15, 2012 you agreed that the University of Michigan could send the documents as we receive them from various departments.

The University's response is subject to inadvertent or undiscovered errors, is not completely based upon personal knowledge and is, therefore, based on and limited by the business records and information in existence and in the possession of the University of Michigan. Consequently, the University of Michigan will amend its response if it appears that omissions or errors have been made or more accurate information is available. Subject to the limitations set forth herein, the information provided is accurate and complete to the best of my knowledge, information and belief.

| **CENTRAL CAMPUS** **LEGAL OFFICE** | **DEVELOPMENT** **LEGAL OFFICE** | **HEALTH SYSTEM** **LEGAL OFFICE** | **OFFICE OF** **TECHNOLOGY** **TRANSFER** |
|---|---|---|---|
| The University of Michigan | The University of Michigan | The University of Michigan | The University of Michigan |
| 5010 Fleming Admin. Bldg. | 9000 Wolverine Tower | Suite 5B04 NIB | 1600 Huron Parkway, 2nd Floor |
| 503 Thompson Street | 3003 South State Street | 300 North Ingalls, SPC 5476 | Ann Arbor, MI 48109-2590 |
| Ann Arbor, MI 48109-1340 | Ann Arbor, MI 48109-1288 | Ann Arbor, MI 48109-5476 | Phone:   (734) 763-0614 |
| Phone:   (734) 764-0304 | Phone:   (734) 647-6095 | Phone:   (734) 764-2178 | Facsimile:   (734) 998-9630 |
| Facsimile: (734) 763-5648 | Facsimile: (734) 647-6100 | Facsimile: (734) 647-2781 | |

Charles D. Riely, Senior Counsel
U.S. Securities and Exchange Commission
June 29, 2012
Page Two

If you have any questions or need additional assistance, please do not hesitate to contact me.

Sincerely,

Kris Snook

Kris Snook
Lead Paralegal, Central Campus
Direct Dial (734) 615-8935

Enclosure

cc w/enc.: Cheri L. Hoff