# GOODWIN | PROCTER

Richard M. Strassberg
212.813.8859
rstrassberg@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
The New York Times Building
620 Eighth Avenue
New York, NY 10018
T: 212.813.8800
F: 212.355.3333

September 11, 2013



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/24/13

Docket + File

**VIA FACSIMILE TO (212) 805-7986**

Honorable Paul G. Gardephe
United States District Court for the
   Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

**Re:** *United States v. Martoma*, No. 12 Cr. 973 (PGG)

Dear Judge Gardephe:

We write on behalf of Mathew Martoma in response to the letter that Dr. Sidney Gilman sent on September 4, 2013, "to supplement [his] previous submission and inform the Court of additional facts relevant to Dr. Gilman's Motion for a Protective Order" (the "September 4 Letter"). In an attempt to save his arguments that he (1) had a reasonable expectation of privacy when he turned over his Electronic Media[1] both to the Government and to the University of Michigan in the summer and fall of 2012, respectively, and (2) did not waive any privileges by doing so, Dr. Gilman presents additional "facts" to this Court for the very first time. Those facts, however, are entirely irrelevant to the Motion to Compel. This Court should reject Dr. Gilman's last-ditch attempt to save his privilege claims for the following separate and independent reasons:

***First***, the September 4 Letter is untimely. The September 4 Letter contains a slew of unsworn, unsubstantiated additional "new facts" that could have been raised months earlier. Every "new fact" was available to Dr. Gilman ***before*** (1) the issue of waiver was raised with this Court for the first time on March 4, 2013, (2) Dr. Gilman filed his Motion for a Protective Order on July 17, 2013, and (3) Dr. Gilman argued his motion to the Court on August 23, 2013. Dr. Gilman's attempt to sandbag Mr. Martoma and introduce these "new facts" at this late date is improper. This Court should reject it.

---

[1] "Electronic Media" has the meaning set forth in Mr. Martoma's Motion to Compel (Dkt. No. 35).

# GOODWIN | PROCTER

Hon. Paul G. Gardephe
September 11, 2013
Page 2

***Second***, as Mr. Martoma has repeatedly explained, the undisputed and indisputable facts establish that Dr. Gilman waived all privileges over information disclosed to the Government – notwithstanding what Dr. Gilman intended after the fact or what the Government supposedly requested. The September 4 Letter asserts that, "[i]n the ongoing course of Dr. Gilman's cooperation with the USAO and SEC, including proffers, interviews, communications with counsel and Dr. Gilman's production of materials and information, Dr. Gilman, through his counsel, made clear his intention not to waive any privileged or protected work product communication and confirmed the understanding that no such information was being requested or sought." (September 4 Letter at 1.) These are arguments that have already been briefed and argued to this Court. (Opening Mem. (Dkt. No. 36), at 13-14; Gov't Br. (Dkt. No. 44), at 13-16; Gilman Br. (Dkt. No. 47), at 17-20; Reply Mem. (Dkt. No. 56), at 22-28; Aug. 23, 2013 Hr'g Tr. 11:6-16, 14:9-16:10. But no matter how many times Dr. Gilman repeats the argument, the law remains the same: Dr. Gilman's "intention" and/or the Government's request, without more, are irrelevant as a matter of law. *Clarke v. J.P. Morgan Chase & Co.*, No. 08 Civ. 02400(CM)(DF), 2009 WL 970940, at *4-7 (S.D.N.Y. Apr. 10, 2009) ("In general, voluntary dissemination of a privileged document to an opposing party or a third party constitutes a waiver of privilege.").

In addition, the September 4 Letter asserts that Dr. Gilman did not waive any privileges because the Government "makes clear its expectation that such materials and protected attorney work product will be withheld and adequately identified." (September 4 Letter at 2.) Whatever the Government's "expectation," the fact remains that Dr. Gilman did not withhold or otherwise protect any privileged material. **Indeed, the USAO Manual and SEC Enforcement Manual cited by Dr. Gilman themselves establish that Dr. Gilman waived any privileges by voluntarily disclosing privileged documents to the Government.** *See* SEC Enforcement Manual 4.1.1 (the defendant "waives the privilege by knowingly sharing the substance of a privileged communication between the client and the attorney with parties outside the privileged relationship") (attached as Exhibit B to the September 4 Letter); *id.* at 4.1.2 ("Voluntary disclosure of work product to the SEC generally constitutes a waiver."); USAO Manual at 9-28.710 ("Everyone agrees that a corporation may freely waive its own privileges if it chooses to do so...").

***Third***, the "new facts" presented by Dr. Gilman with respect to the University of Michigan are wholly irrelevant as to whether Dr. Gilman had an objectively reasonable expectation of privacy in his Electronic Media or whether he waived any privileges when he turned over his Electronic Media to the University in November 2012. Dr. Gilman may claim that the "new facts" in the September 4 Letter "strongly reaffirm[] Dr. Gilman's reasonable expectation of privacy in his electronic communications" (September 4 Letter at 4), but this is demonstrably false. As this Court explained in *In re Reserve Fund*, the question of whether Dr. Gilman had a reasonable expectation of privacy in his Electronic Media is objective, ***not subjective***, and turns on the

# GOODWIN | PROCTER

Hon. Paul G. Gardephe
September 11, 2013
Page 3

policies in effect at the University of Michigan. *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 159-60 (S.D.N.Y. 2011).[2]

Moreover, whether Dr. Gilman waived any privileges when he turned over his Electronic Media to the University of Michigan in *June 2012* in response to an SEC subpoena says nothing about whether he waived any privileges when he turned over his Electronic Media to the University in *November 2012* after he resigned. Dr. Gilman misleads by trying to conflate these events. The September 4 Letter claims that Dr. Gilman had "the understanding that the University was not reviewing Dr. Gilman's electronic communications" in connection with the June 2012 production to the SEC. (September 4 Letter at 3.) Whatever Dr. Gilman's "understanding" in June 2012, the University of Michigan has already stated that – consistent with the express terms of its privacy policies – it did, in fact, review Dr. Gilman's electronic communications after he returned his Electronic Media in November 2012, which is the waiver at issue here. (Opening Mem. (Dkt. No. 36), at 14-16; Gov't Br. (Dkt. No. 44), at 16; Gilman Br. (Dkt. No. 47), at 17-20; Reply Mem. (Dkt. No. 56), at 28-31.) The University of Michigan did not give any "extraordinary deference to Dr. Gilman's privacy and autonomy with respect to his electronic communications and records on its equipment and devices" when Dr. Gilman turned them over in November 2012. (September 4 Letter at 3.) Instead, as it recently told this Court, the University of Michigan "ran search terms against Dr. Gilman's Electronic Devices, without distinguishing between personal and professional files, in response to law enforcement and/or regulatory requests." (Strassberg Reply Decl. (Dkt. No. 57), Ex. A at 1-2.)

Stripping away Dr. Gilman's unsupported assertions, the "new facts" in the September 4 Letter actually show that Dr. Gilman waived his privileges for a *third* time in June 2012 when he turned over his Electronic Media to the University of Michigan. Although Dr. Gilman bears the burden here, he offers no evidence of any action that he took to preserve his privileges. He does not claim that he asserted any privileges affirmatively, or withheld potentially privileged documents. As importantly, Dr. Gilman made no effort whatsoever to claw back any supposedly privileged documents. *Clarke*, 2009 WL 970940, at *4-7 (S.D.N.Y. Apr. 10, 2009); *In re Philip Servs. Corp. Sec. Litig.*, No. 98CIV0835 MBM DF, 2005 WL 2482494, at *2 (S.D.N.Y. Oct. 7, 2005) ("By its failure to take any steps until September 2005 to seek judicial intervention, [the non-party] has waived whatever claim of privilege it may have otherwise had in the opinion letters."). Instead, he bases his assertion of privilege only on his "understanding." (September 4 Letter at 3.) That is not enough to avoid waiver. (Opening Mem. (Dkt. No. 36), at 13-16; Reply Mem. (Dkt. No. 56), at 22-31; Aug. 23, 2013 Hr'g Tr. 12:19-13:19, 25:3-26:9.)

---

[2] By way of example, Dr. Gilman submits two letters from the University of Michigan responding to the SEC, arguing that because the search terms proposed by the University of Michigan did not include explicit searches for privileged communications, "the University demonstrated exceptional deference to Dr. Gilman's privacy." (September 4 Letter, Ex. D, E.) But the University of Michigan's response to an SEC subpoena – that Dr. Gilman obviously never saw – is entirely irrelevant to Dr. Gilman's "reasonable expectation of privacy."

# GOODWIN | PROCTER

Hon. Paul G. Gardephe
September 11, 2013
Page 4

In any event, the "new facts" at most demonstrate that Dr. Gilman knew how to protect his privileges when turning over his Electronic Media, but nevertheless failed to do so when turning over those Media to the University of Michigan in November 2012 (and to the Government in August 2012).

Dr. Gilman's claims of privilege with respect to the Electronic Media should be rejected.

Respectfully submitted,

*Richard M. Strassberg /CAB*

Richard M. Strassberg

cc: Arlo Devlin-Brown (by e-mail)
Jonathan Halpern (by e-mail)
Marc Mukasey (by e-mail)