GOODWIN | PROCTER

Richard M. Strassberg
212.813.8859
rstrassberg@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
The New York Times Building
620 Eighth Avenue
New York, NY 10018
T: 212.813.8800
F: 212.355.3333

October 30, 2013

**BY ECF AND HAND DELIVERY**

Honorable Paul G. Gardephe
United States District Court for the
  Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *United States v. Martoma*, No. 12 Cr. 973 (PGG)

Dear Judge Gardephe:

We write on behalf of Mathew Martoma regarding his Motion to Compel (Dkt. No. 35) and Sidney Gilman's Motion for a Protective Order (Dkt. No. 46). Following briefing and argument on those motions, this Court ordered the University of Michigan (the "University") to produce both University policies and notices to Dr. Gilman about those policies (as well as his acknowledgment of the policies) in order to aid the Court in determining "whether Dr. Gilman had a 'reasonable expectation of privacy' over communications he sent over the University's email system or stored on University-issued electronic devices." (Order at 2-4 (Sept. 24, 2013) ("September 24 Order").) On October 24, 2013, the University produced the documents requested by this Court. (Declaration of Kara Morgenstern, ("Morgenstern Decl."), Exhibits A-KK (Oct. 24, 2013).) The University's recent production confirms that the documents on Dr. Gilman's Electronic Media[1] were never privileged because Dr. Gilman could not have held a reasonable expectation of privacy with respect to such documents.

As this Court has held, "[c]ourts consider the following factors in determining whether an employee has a 'reasonable expectation of privacy' in communications stored on or sent over an employer's systems":

---

[1] "Electronic Media" refer to the laptop computer, desktop computer, iPhone, iPad, and five external flash drives that the University provided to Dr. Gilman in connection with his employment. (September 24 Order at 1.)

GOODWIN | PROCTER

Hon. Paul G. Gardephe
October 30, 2013
Page 2

(1) "does the employer maintain a policy banning personal or other objectionable use of its computers and email system";

(2) "does the employer monitor the employee's use of the employer's computers or email system";

(3) "do third parties have a right of access to the employer's computers or email system"; and

(4) "does the employer notify employees, or was the relevant employee aware, of the employer's policies governing the use and monitoring of the employer's computers and email system?"

(September 24 Order at 2-3.)

Mr. Martoma has previously explained that the relevant University policies are those in effect on the date of Dr. Gilman's production of the Electronic Media to the U.S. Attorney (August 16, 2012) and the date of Dr. Gilman's production to the University (November 27, 2012). (*See* Letter from Mr. Strassberg to Hon. Paul G. Gardephe at 1, fn.2 (Aug. 27, 2013) (Dkt. No. 71).) If this Court were instead to consider the policies in effect at the time the relevant communications were created or exchanged, the earliest applicable date would be May 30, 2012. *See id.* at 2. **Regardless, the policies at issue generally were in effect for many years before the documents at issue were created or produced.** Therefore, the University's recent production reaffirms that Dr. Gilman was on notice that the documents on his Electronic Media could be reviewed or otherwise monitored by the University and that he could not have held a reasonable expectation of privacy with respect to any of those documents.

*First*, the University's recent production confirms that the University does not guarantee the privacy of employees' personal records and limits the personal use of its property.[2]

- The University policy on *Privacy and the Need to Monitor and Access Records* – which has been in effect from September 7, 2004, to the present – expressly warns that "the University of Michigan cannot guarantee the privacy of any records, including the

---

[2] (Defendant Mathew Martoma's Memorandum of Law in Support of his Motion to Compel at 8-10 (Jun. 21, 2013) (Dkt. No. 36) ("Opening Mem."); *see also* Defendant's Reply Memorandum at 10-12 (July 31, 2013) (Dkt. No. 56) ("Reply Mem.").)

GOODWIN | PROCTER

Hon. Paul G. Gardephe
October 30, 2013
Page 3

> personal records, of any University employee."[3] In fact, a substantially similar warning appeared in a prior version of the policy at least as early as 1993.[4]
>
> - The University policy on *Acquisition, Use and Disposition of Property (Exclusive of Real Property)* – which has been in effect from June 7, 2005, to the present – states that University property is "purchased to support the mission of the University and is not intended to support the personal use by faculty, staff, students or visitors" and that "University-owned property is not to be used in any personal, for-profit activity by faculty or staff."[5] In fact, identical statements appeared in prior versions of the policy dating back to February 2003.[6]
>
> - The University policy on *Tech Tools: Cell Phones and Portable Electronic Resources* – which has been in effect from May 31, 2012, to the present – makes clear that laptops, iPads, and cell phones "remain the property of the University and should be returned . . . when no longer needed by employees or when employees leave. . . ."[7]

Under these policies, Dr. Gilman could have no reasonable expectation of privacy in the documents on his Electronic Media, which were the University's exclusive property and subject

---

[3] (University of Michigan Standard Practice Guide ("SPG") § 601.11, issued September 7, 2004 (Strassberg Decl., Ex. B; Morgenstern Decl., Ex. O-3 at UM-MM-000325).)

[4] (SPG § 601.11, issued December 1, 1993 (Morgenstern Decl., Ex. O-1, at UM-MM-000309-14).) Indeed, another University policy in effect from May 20, 1997, through June 8, 2005, also warned employees: "Designating information as . . . 'personal' and creating and/or maintaining such information separately cannot guarantee the confidentiality of that information" (SPG § 601.8-1, *Identification, Maintenance, and Preservation of Electronic Records Created by the University of Michigan*, issued May 20, 1997 (Morgenstern Decl., Ex. N-1, at UM-MM-000285); *see also* SPG § 601.8-1, issued June 9, 2005 (Morgenstern Decl., Ex. N-2, at UM-MM-000295-302).) That University policy further warned: "Q. Are my private electronic communications protected from disclosure? A. Not necessarily." (SPG § 601.8-1, issued May 20, 1997 (Morgenstern Decl., Ex. N-1, at UM-MM-000291).) It continued: "Q. Are there steps I can take to protect my private electronic communications from disclosure? A. Yes, but there is no guarantee they will work." (*Id.* at UM-MM-000292.)

[5] (SPG § 520.01, issued June 7, 2005 (Strassberg Decl., Ex. F; Morgenstern Decl., Ex. I-4, at UM-MM-000234).)

[6] (SPG § 520.01, issued February 13, 2003 (Morgenstern Decl., Ex. I-1, at UM-MM-000197-98); SPG § 520.01, issued October 6, 2004 (Morgenstern Decl., Ex. I-2, at UM-MM-000211).) Indeed, other University policies as far back as February 1987 similarly restricted the personal use of University-owned computers: "University-owned microcomputers and microcomputer peripherals are not to be used in any personal, for profit activity by faculty or staff." (SPG § 601.5, *Microcomputer Acquisition, Usage, and Disposal*, issued February 1, 1987 (Morgenstern Decl., Ex. J-1 at UM-MM-000242); SPG § 601.5, issued February 1, 1987 (Morgenstern Decl., Ex. J-2, at UM-MM-000246).)

[7] (SPG § 514.04 (Strassberg Decl., Ex. G; Morgenstern Decl., Ex. E-2, at UM-MM-000128-29).)

GOODWIN | PROCTER

Hon. Paul G. Gardephe
October 30, 2013
Page 4

to its restrictions. *See, e.g., In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 163 (S.D.N.Y. 2011).[8]

***Second***, the University's recent production confirms that the University reserves the right to access and monitor all records (including personal records) on Dr. Gilman's Electronic Media (and did, in fact, access and review the documents on the Electronic Media).[9]

- The University policy on *Privacy and the Need to Monitor and Access Records* – which has been in effect from September 7, 2004, to the present – alerts employees that "the University must, at times, access *records* or monitor *record systems* that are under the control of its employees" (including personal records).[10]

- In addition, that University policy explicitly warns employees: "There are many laws that govern the maintenance and disclosure of *records*. Federal and state laws, for example, require the University to: . . . disclose *records* . . . and/or monitor *record systems*."[11] In fact, substantially similar warnings appeared in a prior version of the policy at least as early as 1993.[12]

- Indeed, that University policy expressly reserves the University's right to "access or monitor the content of *personal records*" in many circumstances, including "[w]hen there

---

[8] There is some language regarding the University's respect for employee privacy in the University's recent production that Dr. Gilman may argue supports a reasonable expectation of privacy in the Electronic Media. *See, e.g.*, By-Laws of the Board of Regents of the University of Michigan, Privacy and Access to Information, Section 14.07, copyright 2013 (Morgenstern Decl., Ex. A-3, at UM-MM000019); *see also* Memorandum of Law in Support of Third-Party Movant Sidney Gilman, M.D.'s Motion to Intervene and for a Protective Order and in Opposition to Defendant Mathew Martoma's Motion to Compel at 9-12 (Jul. 17, 2013) (Dkt. No. 47).) As Mr. Martoma has explained, however, while University policies respect privacy and allow for limited personal use of Electronic Media, they expressly warn that the use of University property for personal, for-profit activities (*i.e.*, Dr. Gilman's use here) is prohibited, the University cannot guarantee the privacy of personal records and, in fact, the University may be required to disclose personal records under certain circumstances. Reply Mem. at 10-19. These policies make clear that Dr. Gilman had no reasonable expectation of privacy. *See id.*

[9] (Opening Mem. at 10-12; Reply Mem. at 13-16.)

[10] (SPG § 601.11, issued September 7, 2004 (Strassberg Decl., Ex. B; Morgenstern Decl., Ex. O-3, at UM-MM-000325) (italics in original).)

[11] (SPG § 601.11, issued September 7, 2004 (Strassberg Decl., Ex. B; Morgenstern Decl., Ex. O-3, at UM-MM-000325)(italics in original).)

[12] (SPG § 601.11, issued December 1, 1993 (Morgenstern Decl., Ex. O-1, at UM-MM-000309-14).)

GOODWIN | PROCTER

Hon. Paul G. Gardephe
October 30, 2013
Page 5

      is reasonable cause to believe that the employee has engaged in misconduct and may have used University resources improperly" (as is the case here).[13]

Where, as here, the University reserved the right to access and review employees' personal records, Dr. Gilman could have no reasonable expectation of privacy (especially since the University subsequently acted on that right and reviewed Dr. Gilman's Electronic Media). *See In re Reserve Fund*, 275 F.R.D. at 163.

***Third***, the University's recent production confirms that the University grants third-parties the right to access employee documents (including personal records).[14]

- As discussed above, the University policy on *Privacy and the Need to Monitor and Access Records* – which has been in effect from September 7, 2004, to the present – explicitly informs employees that federal and state laws require the University to "disclose records" and/or "monitor record systems."[15] Indeed, that warning appeared in the University policy as far back as 1993.[16]

- In addition, the University's Faculty/Staff Guide to Complying with Michigan's Freedom of Information Act ("FOIA") warned employees that personal communications could be subject to review by a third party for FOIA purposes: "FOIA provides a number of exemptions ranging from matters of privacy to confidential research-related information. However, these exemptions are optional. The decision whether material can be withheld

---

[13] (SPG § 601.11, issued September 7, 2004 (Strassberg Decl., Ex. B; Morgenstern Decl., Ex. O-3, at UM-MM-000326) (italics in original).) The University *Policy Statement on the Integrity of Scholarship and Procedures for Investigating Allegations of Misconduct in the Pursuit of Scholaship [sic] and Research* – which has been in effect since July 1, 1994 – expressly grants the University broad authority to investigate misconduct, including specifically the "abuse of confidentiality." (SPG § 303.03, issued July 1, 1994 (Strassberg Decl., Ex. H; Morgenstern Decl., Ex. B-4 at UM-MM-000073).) Policies going back to 1986 contain the same grant of authority. (SPG § 303.03, issued December 15, 1986 (Morgenstern Decl., Ex. B-1, at UM-MM-000023); SPG § 303.03, issued July 1, 1994 (Morgenstern Decl., Ex. B-2, at UM-MM-000031); SPG § 303.03, issued September 15, 2009 (Morgenstern Decl., Ex. B-3, at UM-MM-000051-52).)

[14] (Opening Mem. at 12; Reply Mem. at 17-19.)

[15] (SPG § 601.11, issued September 7, 2004 (Strassberg Decl., Ex. B; Morgenstern Decl., Ex. O-3, at UM-MM-000325).)

[16] (SPG § 601.11, issued December 1, 1993 (Morgenstern Decl., Ex. O-1, at UM-MM-000309-14).)

GOODWIN | PROCTER

GOODWIN | PROCTER

Hon. Paul G. Gardephe
October 30, 2013
Page 6

      is made by the University's FOIA officer."[17]  University policies dating back to 1997 contained the same warning.[18]

The University policies provided clear notice to employees that their personal records could be disclosed to third parties, thereby destroying any reasonable expectation of privacy by Dr. Gilman. *See In re Reserve Fund*, 275 F.R.D. at 164.

***Fourth***, although Dr. Gilman apparently "do[es] not recall being informed of any University policy regarding personal use of the Electronic Devices or the University's accessing and monitoring of these devices" (Gilman Decl. ¶ 3, Dkt. No. 48 (Jul. 17, 2013)), the recent production by the University shows that he was.

- The University's recent production shows that Dr. Gilman had actual notice of the University's policies. Each year from 2008 through 2012, Dr. Gilman signed an attestation of his "[k]nowledge, understanding and compliance with the policies and procedures that apply to [his] work" in which he agreed to "comply with all policies and procedures that relate to [his] work" at the University, including specifically "the U-M Standard Practice Guide."[19]

- Dr. Gilman's attestations were consistent with University requirements. For example, the University's Medical School Faculty Handbook expressly stated: "All UMHS Employees must read and sign/agree to The Code of Conduct Attestation, every year."[20]  Similarly,

---

[17] (University of Michigan Faculty/Staff Guide to Complying with Michigan's Freedom of Information Act, revised April 2004 (Morgenstern Decl., Ex. KK, at UM-MM-002360)(emphasis omitted).)

[18] The University's policy on *Identification, Maintenance, and Preservation of Electronic Records Created by the University of Michigan* – which was in effect from May 20, 1997, to June 8, 2005 – alerted employees: "Designating information as . . . 'personal' and creating and/or maintaining such information separately cannot guarantee the confidentiality of that information . . . A University representative, such as a [FOIA] Officer, may have to examine such information to verify whether it is . . . 'personal' or subject to disclosure as part of a University record if it is retained." (SPG § 601.8-1, issued May 20, 1997 (Morgenstern Decl., Ex. N-1, at UM-MM-000285); *see also* SPG § 601.8-1, issued June 9, 2005 (Morgenstern Decl., Ex. N-2, at UM-MM-000295-302).)

[19] (*University of Michigan Health System Code of Conduct Statement and Certification*, dated March 10, 2008 (Morgenstern Decl. ¶ 32f, Ex. BB-4) (2008 attestation); *University of Michigan Health System Code of Conduct Attestation*, dated December 7, 2009 (Morgenstern Decl. ¶ 32f, Ex. BB-5) (2009 attestation); *Transcript for Gilman, Sid*, dated September 30, 2013 (Morgenstern Decl. ¶ 32f, Ex. BB-6) (2010, 2011, 2012 attestations identified).) Although the University did not produce Dr. Gilman's signed attestations for 2010, 2011, and 2012, it produced the Code of Conduct currently in use – which has not been revised since 2009 and is identical to that signed by Dr. Gilman in 2009. (*University of Michigan Health System Code of Conduct and Compliance Program* (Morgenstern Decl., Ex. AA-2).)

[20] (University of Michigan Medical School Faculty Handbook, 2011-2012, (Morgenstern Decl., Ex. Z-9).)

GOODWIN | PROCTER

Hon. Paul G. Gardephe
October 30, 2013
Page 7

> the University's *Statement on Stewardship: Stewardship Responsibilities in the Management of Human, Financial, Physical and Information Resources* required Dr. Gilman to "receive training in the standards and policies related to appropriate handling and use of the data" in the University's electronic information resources and "sign an access and compliance form indicating [his] understanding and acceptance of the University's policies."[21]
>
> - The University's recent production also shows that Dr. Gilman had constructive notice of the University's policies. A University memorandum as long ago as January 23, 2004, made clear that employees would be advised of revisions to University policies "via 3D memo, monthly SOA, and the University Press."[22] And, of course, the University posts its polices on the University website.[23]

In sum, the University of Michigan's recent production only strengthens the arguments set forth in Mr. Martoma's motion to compel. These additional materials confirm that Dr. Gilman was indisputably on actual and constructive notice of the University's policies. Thus, he could not have held a reasonable expectation of privacy with respect to documents on his Electronic Media. *See In re Reserve Fund*, 275 F.R.D. at 159.

Accordingly, Mr. Martoma respectfully requests that this Court grant his motion to compel and order the production of all documents on Dr. Gilman's Electronic Media that Dr. Gilman seeks to withhold on the basis of a claim of attorney-client or marital privilege.

Respectfully submitted,

*Richard M. Strassberg* /Jmm

Richard M. Strassberg

cc: Arlo Devlin-Brown (by filing on ECF)
Jonathan Halpern (by e-mail)
Marc Mukasey (by e-mail)
Roberto Braceras (by filing on ECF)

---

[21] (*Statement on Stewardship: Stewardship Responsibilities in the Management of Human, Financial, Physical and Information Resources*, dated February 28, 2002 (Morganstern Decl., Ex. U, at UM-MM-000400).)

[22] (*Memorandum from Timothy P. Slottow, Exec. Vice President for Finance and CFO*, dated January 23, 2004 (Morgenstern Decl., Ex. I-3, at UM-MM-000220).)

[23] http://spg.umich.edu