UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

MATHEW MARTOMA,

Defendant.

---

12 Cr. 973 (PGG)

DECLARATION OF
ROBERT S. FRENCHMAN

---

I declare under penalty of perjury that:

1. I am a partner at Bracewell & Giuliani LLP ("Bracewell"), and I am a member of the Bracewell team that has been representing Sidney Gilman, M.D., in connection with investigations conducted by the United States Attorney's Office for the Southern District of New York ("USAO") and the Securities and Exchange Commission ("SEC"). I submit this declaration in opposition to defendant's motion to compel and in further support of Dr. Gilman's motion for a protective order.

2. In June of 2012, while Dr. Gilman was cooperating with the USAO and SEC in those investigations, the SEC served the University of Michigan (the "University") with a subpoena for documents. The subpoena included a request for, among other things, electronic communications to or from Dr. Gilman from June 1, 2008 through July 31, 2008.

3. On behalf of Dr. Gilman, members of the Bracewell team advised the University that Dr. Gilman intended to assert, to the fullest extent, all of the privileges and protections that applied to the materials sought by the SEC. The University cooperated fully with our assertion, agreeing to protocols that were designed to ensure that all applicable

privileges and protections would be preserved.

4. The protocols began in mid-June 2012, when the University provided the Bracewell team with a list of search terms (agreed to by the SEC and the University) that were designed to identify e-mails to or from Dr. Gilman that were responsive to the SEC subpoena. The search terms sought documents from a period well before Dr. Gilman had retained Bracewell, and none referenced the Bracewell law firm or any Bracewell lawyer. Still, the University provided the search terms to Bracewell for review, and we reviewed the search terms. Based upon our review, the search terms did not appear by design or effect as if they would generate documents that were protected by the attorney-client privilege, the work product doctrine, the doctor-patient privilege, or any other applicable privilege.

5. Apart from and in addition to this initial review of search terms, the University deferred to counsel for Dr. Gilman to conduct a privilege review of potentially responsive materials. On or about June 25, 2012, Dr. Gilman provided the University with various electronic devices that the University had issued to him, including a laptop and thumb/flash drives. We were advised by the University that its IT Department ran the agreed-upon search terms. Before reviewing or producing the documents that were yielded by the search, the University provided them to Bracewell so that the Bracewell team could conduct its own independent privilege review. We received the documents on or about July 12, 2012. Members of the Bracewell team reviewed the documents for privilege. We found no privileged documents.

6. In August of 2012, and in connection with Dr. Gilman's cooperation with the USAO and SEC, I and other members of the Bracewell team were informed by Assistant United States Attorney Arlo Devlin-Brown that the Federal Bureau of Investigation ("FBI")

would seek to preserve all of the data on Dr. Gilman's laptop computer (which had been issued to Dr. Gilman by the University) by seizing the laptop computer and imaging its contents.

7. FBI Special Agent Matthew Callahan arrived at Bracewell's offices in New York, on August 16, 2012.

8. Before turning over the laptop computer to Mr. Callahan, I and other members of the Bracewell team participated in telephone conversations with Mr. Devlin-Brown. During the telephone conversations, the Bracewell team made clear to Mr. Devlin-Brown that—consistent with Dr. Gilman's position on this issue throughout the investigation—Dr. Gilman did not intend to waive the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection by turning over the laptop computer to the government for preservation. Mr. Devlin-Brown acknowledged Dr. Gilman's intent to preserve all applicable privileges and protections, and confirmed to me and other members of the Bracewell team that a protocol was in place to preserve all applicable privileges and protections.

9. Following the discussions with Mr. Devlin-Brown, Dr. Gilman signed the consent form presented to him by Mr. Callahan, and then turned over his encrypted laptop computer to Mr. Callahan. Mr. Callahan and I signed the consent form as witnesses.

10. Efforts to decrypt the laptop computer continued into the spring of 2013. Counsel for Dr. Gilman was assured, on at least one occasion, that efforts by the USAO to decrypt the laptop computer would not constitute a waiver of privilege. Specifically, during a telephone call on March 15, 2013, Mr. Devlin-Brown informed me and other members of the Bracewell team that then-counsel for Mat Martoma had agreed that efforts by the USAO to decrypt the laptop computer would not be deemed to effect a waiver of any privilege.

11. After Bracewell became aware that the University would begin its efforts to decrypt the laptop, Bracewell advised the University that it intended to assert, to the fullest extent, all applicable privileges and protections that applied to the materials sought by the USAO and defense counsel. To ensure that privileged or protected materials would not be produced, Bracewell provided the University with search terms that were designed to capture documents that were privileged or otherwise protected from disclosure. In e-mails from me to counsel for the University in June of 2013, the Bracewell team requested that the University run the search terms, segregate and exclude any documents yielded by the search terms (without opening or reviewing the contents thereof), and provide them to us for a privilege review.

12. Counsel for the University accepted the pre-production protocols that Bracewell proposed in June of 2013, again deferring without objection to Dr. Gilman's assertions of privilege. These specific protocols were not implemented because the parties replaced them with other similar protocols that were memorialized in a July 3, 2013 letter to the Court from counsel for Mr. Martoma (on behalf of all parties). Those other similar protocols were prepared and submitted with the advice and consent of the Bracewell team, and were designed to preserve all of the privileges and protections that had been asserted by Dr. Gilman. At no time did counsel for the University express to me that Dr. Gilman did not have an expectation of privacy with respect to privileged materials.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
November 7, 2013

ROBERT S. FRENCHMAN