UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
UNITED STATES OF AMERICA           :
:
      -v.-                           :
:      S1 12 Cr. 973 (PGG)
MATHEW MARTOMA,                    :
:
      Defendant.                     :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S IN LIMINE MOTIONS SEEKING A RULING THAT CERTAIN EVIDENCE IS ADMISSIBLE AT TRIAL AND THAT THE DEFENSE SHOULD DISCLOSE ANY ALIBI DEFENSE PRIOR TO TRIAL

                                            PREET BHARARA
                                            United States Attorney
                                            Southern District of New York
                                            Attorney for the United States
                                                  of America

ARLO DEVLIN-BROWN
EUGENE INGOGLIA
Assistant United States Attorneys

    - Of Counsel

The Government respectfully submits this motion to request rulings from the Court in advance of the January 6, 2014 trial that (1) certain evidence of other acts by the defendant, Mathew Martoma, as outlined below, may be admitted as direct evidence of the charged crimes, or, in the alternative, pursuant to Federal Rule of Evidence 404(b); and (2) that the defense be required to give notice to the Government of any intended alibi defense.[1]

Background – The Charged Crimes

The defendant is charged with the crime of insider trading. The superseding indictment charges Martoma with one count of conspiracy, in violation of 18 U.S.C. § 371, and two counts of securities fraud , in violation of  15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5. The Government expects that the proof at trial will show that, beginning in late 2006 or early 2007, and continuing through July 2008, the defendant obtained material non-public information ("MNPI") about the Phase II clinical trial of the Alzheimer's Disease drug bapineuzumab (the "Drug Trial"); and that, in July 2008, Martoma sold and caused to be sold securities of Elan and Wyeth securities following the defendant's receipt of additional MNPI. The evidence at trial will show that Martoma worked to cultivate relationships with doctors involved in the Drug Trial; and two of the doctors will testify that they provided MNPI to Martoma, including the final results of the Drug Trial, before such results were disclosed to the public.

---

[1] The Government has submitted to the Court, separately, an additional motion. Because the defense has indicated that it will be seeking to have the substance of that motion and any response filed under seal, the Government has not yet publicly filed its motion. The Government is not seeking the sealing of the motion, but has agreed to defer public filing until such time as Your Honor has ruled on the defense application for sealing.

1

I.  **THE ADMISSION OF EVIDENCE OF MARTOMA'S RECEIPT OF OTHER CONFIDENTIAL INFORMATION FROM THE DOCTORS IS APPROPRIATE**

The Evidence the Government Seeks to Offer at Trial

In addition to evidence that the defendant received MNPI from the two doctors -- Dr. Sidney Gilman and Dr. Joel Ross -- about the Drug Trial, the Government seeks to offer at trial evidence that, during the time period of the charged conspiracy, each of the doctors also provided Martoma with other confidential information, and that Martoma himself discussed providing information that he knew to be confidential to Dr. Ross. The Government expects that the evidence in this regard would be offered in the form of testimony and documents, such as emails.

For example, in or about August 2006, Gilman shared with Martoma confidential raw data from a different drug study related to Alzheimer's Disease (the results of which had been made public), notwithstanding a request from the company (which Gilman relayed to Martoma) that Gilman not distribute a document containing a summary of the results. Another example occurred in April 2008, when Gilman shared with Martoma placebo group data from an unpublished study related to Alzheimer's Disease. In sending the latter data by email, Gilman expressly told Martoma that the data was not yet published, and that Martoma should "keep it under your hat." A third example occurred in early July 2008, when Gilman communicated to Martoma his views about possible action by the Federal Drug Administration (not concerning Elan, Wyeth or bapineuzumab), based on information Gilman learned from his serving on an

2

FDA advisory committee. During the same communication with Martoma, Gilman also provided Martoma with details about bapineuzumab safety data.

Examples involving Ross that the Government seeks to offer at trial include Ross sharing with Martoma confidential investigator's brochures about drugs other than bapineuzumab, and specifically in April 2008 an investigator's brochure and part of the protocol about a drug that was the subject of a trial by Epix Pharmaceuticals, Inc. ("Epix"). As to the latter, each page of the protocol that was sent, as well as each page (other than the first) of the investigator's brochure was marked "CONFIDENTIAL," and the investigator's brochure stated on the first page:

> The confidential information contained in this document is provided to you as an investigator or consultant for review by you, your staff, and the applicable institutional Review Board/Independent Ethics Committee. Your acceptance of this document constitutes agreement that you will not disclose the information contained herein to others without written authorization from Epix Pharmaceuticals, Inc.

The investigator's brochure additionally has an entire page devoted to the confidentiality statement, which states:

> This Investigator's Brochure is the proprietary property of Epix Pharmaceuticals, Inc. It must be kept in a confidential manner and may only be used in connection with the clinical study. It will be returned to the sponsor upon request. No part of this brochure may be reproduced or transmitted in any form without written permission from Epix Pharmaceuticals, Inc., except to the extent necessary to obtain Institutional Review Board approval, informed consent, or as required by Federal or State laws.

The Government also seeks to offer evidence, in the form of testimony and email, that Martoma discussed providing Dr. Ross with confidential information not related to

3

bapineuzumab. For example, in April 2008, during the same email exchange in which Ross ultimately provides the Epix investigator's brochure to Martoma, Ross repeatedly requests that Martoma send him an investigator's brochure about a different Alzheimer's drug called Flurizan.

### Argument

**A.   The Evidence Should Be Admitted as Direct Evidence**

The evidence proffered above is admissible as relevant, direct evidence of the background and nature of the relationship between Martoma and Gilman, and Martoma and Ross, the co-conspirators with whom Martoma committed his crimes. The Government expressly is NOT seeking to offer the evidence as proof of fraud in connection with the securities of any companies other than Elan or Wyeth. Further, the Government does not intend to allege that the nature of the information exchanged between Martoma and the doctors concerning matters other than the Drug Trial necessarily was material, non-public information.

**1.   Applicable Law**

"To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States* v. *Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). As the Second Circuit explained in *Gonzalez*:

> Relevant evidence is not confined to that which directly establishes an element of the crime. . . . [T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.

*Id*. (citations omitted).

The Second Circuit has long held that "[e]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *Gonzalez*, 110 F.3d at 942) (internal quotation marks omitted); *see United States* v. *Quinones*, 511 F.3d 289, 309 (2d Cir. 2007), *cert. denied*, 129 S. Ct. 252 (2008) (same); *United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); *Weinstein's Federal Evidence* § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged"). In such circumstances, the uncharged crime evidence is appropriately treated as "part of the very act charged," or, at least, proof of that act, *United States* v. *Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992).

In addition, the Second Circuit has repeatedly held that such evidence is admissible to (1) explain the development of the illegal relationship between participants in the conspiracy; (2) explain the mutual trust that existed between conspirators; or (3) complete the story of the crime charged. *See, e.g.*, *United States* v. *Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (evidence of prior conduct involving co-conspirators is admissible "to show the existence of the illegal relationship . . . and how it developed."); *Inserra*, 34 F.3d at 89; *United States* v. *Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) ("it is within the court's discretion to admit evidence of prior acts to

5

inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators"); *United States* v. *Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992), *abrogated on other grounds*, *Florida* v. *White*, 526 U.S. 559 (1999); *United States* v. *Roldan-Zapata,* 916 F.2d 795, 804 (2d Cir. 1990) (prior act evidence admissible to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed); *United States* v. *Brennan*, 798 F.2d 581, 589 (2d Cir. 1986).

### 2. Discussion

In this case, the proffered evidence about additional confidential information provided by Dr. Gilman and Dr. Ross to Martoma, is admissible as relevant evidence of the background and nature of the relationship between alleged co-conspirators Martoma and Gilman, and Martoma and Ross. [2]  The evidence helps illuminate the development of the illegal relationship between Martoma and each of the doctors, the participants in the charged conspiracy.  *United States v. Roldan-Zapata,* 916 F.2d 795, 804 (2d Cir. 1990) (prior act evidence admissible to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed); *United States v. Brennan,* 798 F.2d 581, 589 (2d Cir. 1986).  Further, it helps explain the development of the mutual trust between the men and their willingness to trust each other with information that was confidential and not meant to be

6

shared with others, *Inserra*, 34 F.3d at 89. Moreover, it provides the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense, especially in those instances in which the provision of more than one type of confidential information is being discussed in the same exchange. Indeed, the fact that somebody is engaged in other similar conduct *with the same person* illustrates the nature of the relationship between the two men. *See, e.g.*, *United States* v. *Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) ("it is within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators").

**B.     Alternatively, The Evidence Should Be Admitted Pursuant to Rule 404(b)**

The Government respectfully submits that in the alternative, the proffered evidence is admissible under Rule 404(b) to show Martoma's intent to engage in a corrupt act, his common scheme or plan, his modus operandi, and his lack of mistake or accident.

**1.     Applicable Law and Discussion**

Federal Rule of Evidence 404(b) provides, in relevant part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .

Fed. R. Evid. 404(b). It is well-settled that "other acts" evidence is admissible under Rule 404(b)

---

[2] In addition to being direct evidence of the corrupt relationships between Martoma and Gilman, and Martoma and Ross, respectively, this evidence also would be offered at trial as bad acts by Gilman and Ross, consistent with *Giglio* v. *United States*, 405 U.S. 150 (1972).

7

as long as the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial; and (3) has probative value that is not substantially outweighed by any unfair prejudicial effect. *See, e.g., United States* v. *Guang*, 511 F.3d 110, 121 (2d. Cir. 2007) (citations omitted).

The Second Circuit takes an "'inclusionary" approach to the admission of prior act evidence, under which "evidence of prior crimes, wrongs, or acts 'is admissible for any purpose other than to show a defendant's criminal propensity'" so long as it is not substantially outweighed by the danger of unfair prejudice. *United States* v. *Paulino*, 445 F.3d 211, 221 (quoting *United States* v. *Pitre*, 960 F.2d 1112, 1118-19 (2d Cir. 1992)); *see also United States* v. *Teague*, 93 F.3d 81, 84 (2d Cir. 1996) (providing that proof of state of mind, such as intent, is a "proper purpose" for admission of other crimes evidence under Rule 404(b) (quoting *Huddleston* v. *United States,* 485 U.S. at 691)); *see also United States* v. *Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity").

Under Rule 404(b), other act evidence can be offered to establish motive, opportunity, intent, knowledge, and the absence of mistake or accident, as well as the nature of the relationship and mutual trust between co-conspirators. *See, e.g., United States* v. *Basciano*, 2012 WL 493401, at *4 (2d Cir. Feb. 16, 2012) (Evidence of defendant's involvement in uncharged murder admitted for purposes of telling the complete story behind charged crimes, the development of criminal relationships, to illustrate the mutual trust between co-conspirators, and to corroborate the testimony of cooperating witnesses.). In a case, as this one, where the defendant expressly is charged with cultivating relationships with doctors with the aim of

8

garnering material non-public information, instances in which the same participants exchanged other confidential information, that may not have been MNPI, is plainly relevant to the establish opportunity, knowledge and intent. *See, e.g.*, *United States* v. *Myerson*, 18 F.3d 153, 166-67 (2d Cir. 1994) (prior instances of defendant's fraudulent diversion of client funds and tax evasion were "clearly admissible" in order to prove at trial defendant's intent to divert client funds and tax evasion); *United States* v. *Birrell*, 447 F.2d 1168, 1172 (2d Cir. 1971) ("[e]vidence of similar acts in fraud cases may be introduced where knowledge or intent is at issue, to give rise to an inference of knowledge or intent"). In addition, the repeated nature of Martoma's receipt of plainly confidential information further illuminates his motive, intent, knowledge and absence of mistake.

The Court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and its ruling will be reviewed only for abuse of discretion. *See, e.g.*, *United States* v. *Guang*, 511 F.3d 110, 121 (2d. Cir. 2007); *United States* v. *Mitchell*, 328 F.3d 77, 82 (2d Cir. 2003). If requested, such evidence must be admitted with limiting instructions to the jury. *See United States* v. *Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States* v. *Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990) (citing *Huddleston* v. *United States*, 485 U.S. 681, 691-92 (1988)).

Thus, Martoma's receipt and discussion of sharing of other confidential information, from and with the doctors, should be admissible under Rule 404(b) to show his intent, motive, knowledge and, lack of mistake or accident. *See, e.g.*, *United States* v. *Guang*, 511 F.3d 110, 121 (2d. Cir. 2007); *United States* v. *Teague*, 93 F.3d 81, 84 (2d Cir. 1996); *United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) (evidence of prior false statements

9

admissible to show defendant's intent and state of mind when defendant claims he lacked intent to make false statement). Accordingly, these other instances are highly probative and relevant to the charged crimes and should be admitted.

C.     **Rule 403 Does Not Bar the Admission of the Other Acts Evidence**

Where evidence is offered for a proper purpose, including under Rule 404(b), the trial court may exclude the evidence only if the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice. *See Zackson*, 12 F.3d at 1182. Moreover, the Second Circuit has repeatedly held under Rule 403 that evidence admissible under Rule 404(b) is not unduly prejudicial to a defendant, so long as the court gives a limiting instruction to the jury explaining the proper purpose for the other crimes evidence. *See United States* v. *Pipola*, 83 F.3d 556, 566 (2d Cir. 1996); *Rosa*, 11 F.3d at 334.

There is no basis to exclude any of the other act evidence under Federal Rule of Evidence 403. First, the proffered evidence is no more sensational than any of the direct evidence concerning the three counts charged in the Indictment. *See United States* v. *Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (in narcotics case, evidence of prior narcotics transactions admitted where other acts evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged'") (quoting *Roldan-Zapata*, 916 F.2d at 804; *United States* v. *Peters*, 791 F.2d 1270, 1294 (7th Cir. 1986) (evidence is unfairly prejudicial under Rule 403 if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence). Indeed, the Government would not be proving that the non-Drug Trial evidence was necessarily MNPI; rather, the evidence would be simply that it was confidential, and disclosed nonetheless.

Furthermore, the proffered evidence will not significantly increase the length of the trial. The proffered evidence will be offered through witnesses who are already expected to testify, as well as documents the Government is already planning to offer. Thus, the admission of the proffered evidence should add very little time to the Government's case-in-chief.

Finally, in light of the significant non-propensity purposes for which the prior acts evidence is being offered, the non-sensational nature of the prior acts, and the Second Circuit's routine reliance, in the Rule 404(b) context, on limiting instructions to cure any possibility of unfair prejudice, there is no basis for contending that any "unfair prejudice" "substantially outweighs" the probative value of the proffered evidence.

\* \* \*

For all these reasons, the Government respectfully submits that the proffered evidence should be admitted either as direct evidence or pursuant to Rule 404(b).

## II. The Defense Should Disclose Before Trial Any Alibi Defense it Intends to Offer at Trial

Background

On Friday, November 29, 2013, the Government sent a letter to defense counsel requesting that they provide notice as to whether they intend to offer an alibi defense at trial. Specifically, the Government requested that the defendant notify the Government of any intended alibi defense to be offered at trial and, in particular, of any alibi defense that the defendant "was not present in Ann Arbor, Michigan, on July 19, 2008, at some point between the hours of approximately noon and approximately 3pm, in the vicinity of the office of Dr. Sidney Gilman." Defense counsel, in response, indicated that it does not consider any evidence of Martoma's whereabouts on that date to constitute an "alibi defense" (though indicated an

11

openness to be otherwise persuaded if presented with compelling authority.)  For the reasons set forth below, the Government requests that the Court direct that the defense give notice to the Government of any plan to offer as a partial defense to the Government's charges that Martoma was somewhere other than in the vicinity of the office of Dr. Gilman in the afternoon of July 19, 2008.

Applicable Law and Discussion

Federal Rule of Criminal Procedure 12.1 provides that upon a written request from the Government requesting notice of any alibi defense, that states  the timing, date and place of the alleged offense,  the defendant must provide written notice "of any intended alibi defense."  More specifically, "[t]he defendant's written notice must state: (A) each specific place where the defendant claims to have been at the time of the alleged offense; and (B) the name, address, and telephone number of each alibi witness on whom the defendant intends to rely."  FRCP 12.1.  The defendant's written notice must be provided within 14 days of the Government's request, or at some other time the court sets.

The question here is whether an alibi demand is appropriate in this kind of case, which charges crimes of an ongoing nature.  Here, the defendant is charged with an offense that took place on a continuing basis over an extended period of time.  It is plain that, even if the defendant were to be able to establish that he was far from Michigan on July 19, 2008, there will be ample proof offered at trial of his criminal conduct on other days such that a jury could convict on all counts even if it credited such a defense.  Nonetheless, the Government has alleged in its indictment that the defendant traveled to Detroit and met with Dr. Gilman on July 19, 2008; in the Government's view, it is appropriate, in the interests of fairness and judicial

economy, and consistent with the rule's purpose, that alibi notice be given with respect to this discrete temporal aspect of the crime charged.

It is necessary that the defendant provide notice of any intended alibi in advance of trial, so that the Government may effectively prepare for trial and avoid any unnecessary delay.  That is the purpose of the alibi notice rules.  *Wardius* v. *Oregon*, 412 U.S. 470, 473 (1973) ("Notice-of-alibi rules . . . are based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial."); *United States* v. *Vela*, 673 F.2d 86, 88-89  (5th Cir 1982) (in the context of a charged offense that took place over a continuing period, holding that "we recognize it to be permissible and consistent with the rule's purpose for the prosecution to seek notice-of-alibi with respect to a discrete temporal aspect of the crime charged" and noting that the purpose of the rule was to "prevent unfair surprise to the prosecution." (internal citations omitted); *United States* v. *Dupuy*, 760 F.2d 1492, 1499 (9th Cir. 1985) (discovery under the rule designed to "avoid unfair surprise and delays at trial" (citing *United States* v. *Bouye*, 688 F.2d 471, 475 (7th Cir.1982) and 8 Moore's Federal Practice para. 12.01.02 (1982)); *see also United States*  v. *Yian*, 1995 WL 368445 (S.D.N.Y. June 21, 1995) (Cote, J.) (directing the defense to provide pre-trial alibi notice where the Government's case charged continuing offenses and the Government's alibi notice relied on the indictment for its particulars).

While the Government could have invoked Rule 12.1 to seek Martoma's alibi, if any, in connection with various events that occurred in connection with the scheme, here it has selected only a particular date and time where the evidence indicates that Martoma might seek to

present such an alibi, and where disclosure of that alibi in advance is important to the Government's ability to investigate the bona fides of this alibi defense without disrupting trial. In particular, the Government has alleged that on July 19, 2008, the defendant traveled round-trip by plane from New York City to Detroit to meet personally with Dr. Gilman in his office. A purpose of the trip, the trial evidence will show, was for Martoma to review, in person, the PowerPoint presentation containing the still-secret drug trial results and to discuss those results with Dr. Gilman. The evidence will further show that Martoma took steps to conceal aspects of the trip, potentially because of the suspicions that would develop should it be known that Martoma had flown to Detroit to meet a doctor he regularly and openly consulted with through an expert network, just a few days after the doctor learned the secret results of a highly anticipated drug trial. The defendant's refusal to identify an alibi defense (or disavow his reliance on such a defense) raises the question that the defense may dispute Martoma's presence at this meeting.

In these circumstances, the defendant should be directed to promptly identify the alibi, if any, for the meeting on July 19. There can be no question that the defendant and his counsel know whether or not Mr. Martoma plans to assert that he has an alibi for his whereabouts on that date. If he does, the ends of justice are best served by pre-trial disclosure, so that the Government can investigate the merits of any such alibi defense in advance, and obviate any possible need for mid-trial, surprise-driven delay in the proceedings that would be required for the Government to determine whether the alibi defense is genuine. Indeed, in the event that the witnesses or records necessary to establish whether the alibi defense is genuine cannot be located on short notice during trial, the defendant's failure to disclose the alibi in

advance would unfairly prejudice the jury's ability to assess the merits of such a defense. Accordingly, the Government is entitled under FRCP 12.1 to notice now if the defendant intends to assert such an alibi.

For the reasons set forth below, the Government respectfully requests that the Court grant its motions concerning the admissibility of certain evidence, and direct the defense to disclose any intended alibi defense.

Dated: December 6, 2013
       New York, New York

                                              Respectfully submitted,

                                              PREET BHARARA
                                              United States Attorney

                              By: _____/s_____
                                    Eugene Ingoglia
                                    Arlo Devlin-Brown
                                    Assistant U.S. Attorneys
                                    212-637-1113/ 2506

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2013, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

Dated:  December 6, 2013
       New York, New York

                                                   PREET BHARARA
                                                   United States Attorney

                            By:  _____/s_____
                                   Eugene Ingoglia
                                   Assistant U.S. Attorney
                                   212-637-1113