UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

MATHEW MARTOMA,

                     Defendant.

No. 12-cr-00973 (PGG)
ECF Case

**DEFENDANT MATHEW MARTOMA'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO EXCLUDE EVIDENCE OF SAC'S SALES OF WYETH SECURITIES OR, ALTERNATIVELY, TO ADMIT SELECTED PORTIONS OF STEVEN COHEN'S SEC TESTIMONY
(MR. MARTOMA'S MOTION *IN LIMINE* NO. 2)**

GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
John O. Farley (JF4402)
Daniel Roeser (DR2380)
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Roberto M. Braceras (RB2470)
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Defendant Mathew Martoma*

December 6, 2013

## TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ..................................................................................................1

**FACTUAL BACKGROUND** ......................................................................................................4

**ARGUMENT** ................................................................................................................................6

**I.   EVIDENCE OF SAC'S SALES OF WYETH SECURITIES SHOULD BE EXCLUDED BECAUSE IT IS NOT RELEVANT TO THE CHARGED OFFENSES.** ..................................................................................................................6

**II.  EVIDENCE OF SAC'S SALES OF WYETH SECURITIES SHOULD BE EXCLUDED BECAUSE IT WOULD BE UNFAIRLY PREJUDICIAL AND CONFUSING** ..................................................................................................................8

**III. ALTERNATIVELY, MR. MARTOMA SHOULD BE ALLOWED TO INTRODUCE SELECTED PORTIONS OF MR. COHEN'S SEC TESTIMONY..** ..................................................................................................................10

**CONCLUSION** ..........................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Lopez v. Miller*,
    915 F. Supp. 2d 373 (E.D.N.Y. 2013) .................................................................................13

*In re Mendez*,
    No. 05-62634-A-7, 2008 WL 597280 (Bankr. E.D. Cal. Feb. 29, 2008) ...............................13

*Mendez v. Artuz*,
    No. 98 Civ. 2652, 2000 WL 722613 (S.D.N.Y. June 6, 2000).................................................13

*Patsy's Italian Rest., Inc. v. Banas*,
    Nos. 06-CV-0729 (RER), 06-CV-5857 (RER), 2008 WL 850151 (E.D.N.Y. Mar. 26, 2008) ......................................................................................................................................12

*SEC v. Badian*,
    822 F. Supp. 2d 352 (S.D.N.Y. 2011)...................................................................................10

*SEC v. Curshen*,
    372 F. App'x 872 (10th Cir. 2010) .......................................................................................12

*Stryker Corp. v. XL Ins. Am.*,
    No. 4:01-CV-157, 2007 WL 172401 (W.D. Mich. Jan. 18, 2007)...................................12, 13

*Taylor v. Fairfield Resorts, Inc./Wyndham*,
    No. 2:07-cr-01602-RCJ-GWF, 2009 WL 5195973 (D. Nev. Dec. 23, 2009) ........................12

*United States v. Contorinis*,
    692 F.3d 136 (2d Cir. 2012)....................................................................................................9

*United States v. Detrich*,
    865 F.2d 17 (2d Cir. 1988)....................................................................................................13

*United States v. Dolah*,
    245 F.3d 98 (2d Cir. 2001)....................................................................................................10

*United States v. Fitzgerald*,
    279 F. App'x 444 (9th Cir. 2008) ...........................................................................................8

*United States v. Graziano*,
    558 F. Supp. 2d 304 (E.D.N.Y. 2008) ..................................................................................10

*United States v. Harris*,
    No. S1 92 Cr. 455 (CSH), 1992 WL 373473 (S.D.N.Y. Dec. 2, 1992).....................................7

*United States v. Harvey*,
    991 F.2d 981 (2d Cir. 1993)..................................................................................................7

*United States v. Hatfield*,
    No. 06-CR-0550 (JS), 2010 WL 2545828 (E.D.N.Y. June 21, 2010)....................................11

*United States v. Heron*,
    No. 06-674, 2007 WL 2916196 (E.D. Pa. Oct. 5, 2007) ........................................................7

*United States v. Kaplan*,
    490 F.3d 110 (2d Cir. 2007)...............................................................................................6, 9

*United States v. Kimoto*,
    No. 07-CR-300089-MJR, 2008 WL 4545342 (S.D. Ill. Oct. 10, 2008) .................................12

*United States v. Lopez-Medina*,
    461 F.3d 724 (6th Cir. 2006) .................................................................................................8

*United States v. Marcus Schloss & Co.*,
    710 F. Supp. 944 (S.D.N.Y. 1989)..........................................................................................8

*United States v. Miller*,
    626 F.3d 682 (2d Cir. 2010)...................................................................................................7

*United States v. Polasek*,
    162 F.3d 878 (5th Cir. 1998) .................................................................................................8

*United States v. Skilling*,
    No. H-04-025, 2006 WL 1155566 (S.D. Tex. Apr. 27, 2006).................................11, 12, 13

*United States v. Sklena*,
    692 F.3d 725 (7th Cir. 2012) ....................................................................................3, 11, 12

*United States v. Trupin*,
    No. 97 CR. 97 (LMM), 1999 WL 322656 (S.D.N.Y. May 20, 1999) .....................................7

*United States v. Vasquez*,
    840 F. Supp. 2d 564 (E.D.N.Y. 2011) ...................................................................................9

*Virola v. XO Commc'ns, Inc.*,
    No. 05-CV-5056 (JG) (RER), 2008 WL 1766601 (E.D.N.Y. Apr. 15, 2008)..................12, 13

**OTHER AUTHORITIES**

Fed. R. Evid. 401 ...........................................................................................................................1

Fed. R. Evid. 402 ...........................................................................................................................1

Fed. R. Evid. 403 ......................................................................................................................1, 9

Fed. R. Evid. 804(b)(1) ............................................................................................................3, 10, 11, 12

Fed. R. Evid. 807 ...............................................................................................................................3, 12, 13

*SEC Enforcement Manual* § 5.2.1 (2011) ...................................................................................................11

Pursuant to Federal Rules of Evidence 401, 402, and 403, Defendant Mathew Martoma respectfully submits this memorandum of law in support of his motion to exclude evidence concerning the sales of Wyeth securities by S.A.C. Capital Advisors, LLC and its affiliates (collectively, "SAC") or, alternatively, to admit selected portions of Steven Cohen's testimony before the Securities and Exchange Commission ("SEC").  Specifically, Mr. Martoma seeks an order precluding the Government from introducing any evidence about, or mentioning at any time during trial (including in its opening statement and closing argument), SAC's sales of Wyeth securities.  Alternatively, Mr. Martoma seeks an order admitting selected portions of Mr. Cohen's SEC testimony that Mr. Cohen, in consultation with Wayne Holman (not Mr. Martoma), made the decision to sell Wyeth securities.

## PRELIMINARY STATEMENT

Mr. Martoma indisputably was *not* involved in SAC's decision to sell Wyeth securities.  The unrebutted sworn testimony of Mr. Cohen, SAC's owner, makes clear that Mr. Martoma had *nothing* to do with that decision.  Specifically, Mr. Cohen has testified that he made the decision to sell Wyeth securities in consultation with Mr. Holman (not Mr. Martoma), a former SAC healthcare portfolio manager whom Mr. Cohen described as "a great healthcare investor [whose] recommendations are very important to me."  Accordingly, this Court should preclude the Government from introducing any evidence or mentioning at any time during trial (including in its opening statement and closing argument) any evidence of SAC's sales of Wyeth securities because (1) there is not a reasonable basis to connect such sales to Mr. Martoma and (2) evidence of the sales would be unfairly prejudicial to Mr. Martoma and confusing to the jury.  If this Court chooses not to do so, then Mr. Martoma should be allowed to introduce selected portions of Mr. Cohen's testimony that Mr. Cohen, in consultation with Mr. Holman (not Mr. Martoma),

made the decision to sell Wyeth securities.

***Evidence of SAC's sales of Wyeth securities should be excluded because it is not relevant to the charged offenses.***  Evidence of SAC's sales of Wyeth securities is not relevant to the charged offenses because it is of no consequence to the determination of Mr. Martoma's guilt or innocence.  Mr. Cohen testified that he decided to sell Wyeth securities *not* based on the views of Mr. Martoma but rather (at least in part) on the views of Mr. Holman.  The Government may not seek to attribute either Mr. Cohen's decision or Mr. Holman's views to Mr. Martoma.  That is all the more true where, as here, the Government has not identified either Mr. Cohen or Mr. Holman as a co-conspirator of Mr. Martoma.

***Evidence of SAC's sales of Wyeth securities should be excluded because it would be unfairly prejudicial and confusing.***  Evidence of SAC's sales of Wyeth securities would be unfairly prejudicial and confusing.  The Second Circuit has recognized the risk of substantial prejudice whenever the Government attempts to introduce evidence of the actions of individuals who are not co-conspirators, and that risk is certainly present here.  Mr. Martoma plainly was not involved in Mr. Cohen's and/or Mr. Holman's decisions to sell Wyeth securities.  Admitting evidence of those decisions, however, would improperly invite the jury to impute the decisions to Mr. Martoma.

***Alternatively, Mr. Martoma should be allowed to introduce selected portions of Mr. Cohen's testimony.***  If this Court does not preclude the Government from introducing any evidence about, or mentioning at any time during trial, SAC's sales of Wyeth securities, then Mr. Martoma should be allowed to introduce selected portions of Mr. Cohen's testimony that Mr. Cohen, in consultation with Mr. Holman (not Mr. Martoma), made the decision to sell Wyeth securities.  As the Seventh Circuit recently held under directly analogous circumstances,

deposition testimony taken by an executive branch agency (there, the CFTC) is *admissible* under Rule 804(b)(1) when the witness is unavailable in a federal criminal case brought by the Government because those executive branch agencies are the same party for purposes of Rule 804(b)(1) and share similar motives to develop the testimony at issue. *United States v. Sklena*, 692 F.3d 725, 730-33 (7th Cir. 2012).[1]  Further, Mr. Cohen's selected deposition testimony is admissible under Rule 807 because deposition testimony contains the requisite "circumstantial guarantees of trustworthiness," his selected testimony bears on material facts, his selected testimony is the most probative evidence available, and admitting his selected testimony is consistent with the purposes of the Rules and advances the interests of justice by assisting the jury in ascertaining the truth and protecting the rights of Mr. Martoma.

In short, it would be misleading gamesmanship on the part of the Government to introduce evidence or make arguments concerning SAC's decision to sell Wyeth securities when the Government well knows that Mr. Martoma played *no* role in that decision, and when Mr. Cohen's unavailability will preclude Mr. Martoma from establishing that very fact. The Government cannot have it both ways: it cannot choose to avoid naming Mr. Cohen and Mr. Holman as co-conspirators and nevertheless try to attribute their alleged "acts" to Mr. Martoma. And the Government cannot ignore the sworn, unrebutted testimony that exculpates Mr. Martoma by establishing that he had nothing to do with SAC's decision to sell Wyeth securities.

For all of these reasons, this Court should exclude any evidence with respect to SAC's sales of Wyeth securities and preclude the Government from mentioning those sales at any time during trial; alternatively, this Court should admit selected portions of Mr. Cohen's testimony

---

[1] We are informed by counsel for Mr. Cohen that he intends to assert his Constitutional rights and, therefore, would be unavailable to appear as a witness at trial.

3

that he decided to make those sales in consultation with Mr. Holman (not Mr. Martoma).

## FACTUAL BACKGROUND

The unrebutted testimony of Mr. Cohen – taken almost 18 months before the Superseding Indictment was filed – that he decided to sell SAC's holdings in Wyeth in consultation with Mr. Holman (not Mr. Martoma) requires the exclusion of evidence of SAC's sales of Wyeth securities.  Mr. Cohen testified:

> Q.  At some point prior to July 29, 2008, did you make a decision concerning your investment in Wyeth?
> Mr. Cohen:  Yes.
> Q.  When was that?
> Mr. Cohen:  At some point during that week.
> *Q.  What prompted you to make a decision concerning your investment in Wyeth the week of July 21st?*
> *Mr. Cohen:  I spoke to Wayne [Holman] at some point and he was telling me he was selling his Wyeth.*[2]

As selected portions of Mr. Cohen's testimony makes clear, he decided to sell SAC's position in Wyeth based on the views of Mr. Holman (not Mr. Martoma).

That is not surprising.  Mr. Cohen had a long and "profitable" relationship with Mr. Holman.[3]  Prior to founding Ridgeback Capital Management LLC ("Ridgeback"), Mr. Holman worked for years at SAC.  Long after he left, Mr. Cohen still described him as "a great healthcare investor [whose] recommendations are very important to me."[4]  As Mr. Cohen explained, "I consider Wayne [Holman] one of the great healthcare investors I have ever met and so I have a ton of respect for his work."[5]  Mr. Cohen put his money where his mouth was.  He

---

[2] (Transcript of the deposition testimony of Steven A. Cohen ("Cohen Dep."), dated May 3, 2012, in *In re Elan Corp., plc*, File No. NY-8152, at 185:21-186:4, Declaration of Richard M. Strassberg in Support of Defendant Mathew Martoma's Motion to Exclude Evidence of SAC's Sales of Wyeth Securities or, Alternatively, to Admit Selected Portions of Steven Cohen's SEC Testimony ("Strassberg Decl. No. 2"), Ex. A.)

[3] (Cohen Dep. 23:2-22, Strassberg Decl. No. 2, Ex. A.)

[4] (Cohen Dep. 72:4-6, Strassberg Decl. No. 2, Ex. A.)

[5] (Cohen Dep. 70:20-22, Strassberg Decl. No. 2, Ex. A.)

4

invested over $700 million in Mr. Holman's firm and, at the time of his deposition, had entered into a consulting agreement with Mr. Holman that paid Mr. Holman millions of dollars per year.[6]

In fact, according to Mr. Cohen, Mr. Holman was the primary reason that SAC invested in Wyeth in the first place.[7] As Mr. Cohen explained, "Wayne Holman suggested that SAC buy Wyeth based on his recommendation, and so we set up an agreement for this purchase."[8] Pursuant to that agreement with Mr. Holman's firm, SAC created a separate account for Mr. Cohen to conduct Wyeth trading (*i.e.*, the "Holman Account"). Specifically, the agreement between SAC and Ridgeback provided:

> SAC Associates shall establish a memorandum account on its books . . . and Steven A. Cohen . . . shall conduct (i) all his direct purchases of the securities of [Wyeth] through the Account during the Applicable Period and (ii) as and if determined by SAC Advisors, any hedging of such purchases utilizing individual stock positions of Issuers whose individual market capitalization is equal to $10 billion or more . . . through the Account.[9]

Ridgeback provided "SAC Advisors with investment advice regarding [Wyeth], as and when requested by SAC Advisors," and received an advisory fee based on the net profits from Wyeth trades in return.[10] Mr. Cohen explained that SAC created "a separate account [*i.e.*, the "Holman Account"] in which [he could] make security trades based on the advice [of] Mr. Holman."[11]

---

[6] (Cohen Dep. 227:14-228:16, Strassberg Decl. No. 2, Ex. A.)

[7] Mr. Martoma does not dispute, for the purposes of this motion, that he might have had some involvement in certain *purchases* of Wyeth securities by SAC at earlier points in time, but the issue here is his lack of involvement in the *sale* of Wyeth securities in July 2008.

[8] (Cohen Dep. 32:7-11, Strassberg Decl. No. 2, Ex. A.)

[9] (Agreement between S.A.C. Capital Advisors, LLC and Ridgeback Capital Management LLC ("Holman Agreement"), dated November 9, 2007, ¶ 3, Bates stamped SAC_ELAN0726049, Strassberg Decl. No. 2, Ex. B.) The "Applicable Period" was the period from the date of the agreement through April 30, 2008. (*Id.*) The agreement was to "continue and remain in force and effect until the earlier of (a) September 30, 2008, unless SAC Advisors elects, in its sole discretion, upon written notice to Ridgeback, to extend the term for an additional six months, and (b) such earlier date as of which all equity securities of the Issuer in the Account are sold." (*Id.* ¶ 9.)

[10] (Holman Agreement ¶¶ 1, 4, Strassberg Decl. No. 2, Ex. B.)

[11] (Cohen Dep. 60:13-17, Strassberg Decl. No. 2, Ex. A.)

The Holman Account ultimately accumulated a long position of 12 million shares of Wyeth held through a series of swaps with third-party financial institutions. Most importantly, Mr. Martoma was **not** a party to the agreement between SAC and Ridgeback and had **no** involvement in, much less control over, the Holman Account – which was under the trading authority of Mr. Cohen.

In sum, Mr. Martoma did **not** cause SAC to sell its holdings in Wyeth securities, as the uncontroverted sworn testimony of Mr. Cohen plainly establishes. Moreover, neither Mr. Cohen nor Mr. Holman is an alleged co-conspirator in this case. Therefore, this Court should preclude the Government from introducing any evidence about, or mentioning at any time during trial, SAC's decisions to sell Wyeth securities; alternatively, this Court should admit selected portions of Mr. Cohen's testimony that he, in consultation with Mr. Holman, decided to sell the Wyeth securities.

## ARGUMENT

**I.  EVIDENCE OF SAC'S SALES OF WYETH SECURITIES SHOULD BE EXCLUDED BECAUSE IT IS NOT RELEVANT TO THE CHARGED OFFENSES.**

Evidence of SAC's sales of Wyeth securities is not relevant to the charged offenses, as Mr. Martoma was not involved in Mr. Cohen's decision to sell those securities. To be relevant, evidence must satisfy two distinct requirements: "(1) [t]he evidence must be probative of the proposition it is offered to prove, **and** (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007) (emphasis added; internal quotation marks omitted). Evidence of SAC's sales of Wyeth securities – a decision by Mr. Cohen with input from Mr. Holman – is neither probative of, nor of consequence to, the determination of **Mr. Martoma**'s guilt or innocence.

The uncontroverted testimony of Mr. Cohen establishes that Mr. Martoma had **nothing** to do with SAC's sales of Wyeth. (*See supra* at 4-6.) Rather, those sales were made by Mr. Cohen

6

based (at least in part) on the views of Mr. Holman.  (*See supra* at 4-6.)  Evidence of decisions by Mr. Cohen and/or Mr. Holman "has nothing to do with whether or not [Mr. Martoma] did or did not engage in the conduct alleged in the indictment" and should be excluded.  *United States v. Trupin*, No. 97 CR. 97 (LMM), 1999 WL 322656, at *4 (S.D.N.Y. May 20, 1999); *accord United States v. Miller*, 626 F.3d 682, 687-88 (2d Cir. 2010) (affirming the exclusion of evidence that was "not relevant because it was not of consequence to" the elements of the government's case).[12]  Mr. Cohen's testimony makes clear that no information from Mr. Martoma was used to sell Wyeth securities.  Indeed, the following facts are unrebutted and unrebuttable:

- Mr. Cohen had a long and "profitable" relationship with Mr. Holman.  (*See supra* at 4.)

- Mr. Cohen considers Mr. Holman to be "a great healthcare investor [whose] recommendations are very important to me."  (*See supra* at 4.)

- Mr. Cohen decided to sell Wyeth securities in consultation with Mr. Holman (not Mr. Martoma) – *i.e.*, when Mr. Holman said that he was selling Wyeth securities.  (*See supra* at 4-6.)

- Mr. Martoma was not involved in Mr. Cohen's decision to sell SAC's position in Wyeth.  (*See supra* at 4-6.)

These facts undermine any reasonable basis for the Government's allegation that Mr. Martoma caused Mr. Cohen and/or SAC to sell Wyeth securities.

Tellingly, the Government has ***not*** named either Mr. Cohen or Mr. Holman as a co-conspirator of Mr. Martoma.  It may not now seek to attribute Mr. Cohen's and/or Mr. Holman's decisions to Mr. Martoma.  "It is fair to require the government to prove its . . . substantive

---

[12] *See also United States v. Harvey*, 991 F.2d 981, 995-96 (2d Cir. 1993) (reversing a conviction where evidence was admitted that "did not bear on . . . disputed trial issues, and thus was not relevant"); *United States v. Heron*, No. 06-674, 2007 WL 2916196, at *4 (E.D. Pa. Oct. 5, 2007) (rejecting the government's proffer of evidence in an insider trading case that the defendant traded during a company-imposed "blackout period" because that evidence "does not aid the jury" in determining whether the defendant possessed material, non-public information); *United States v. Harris*, No. S1 92 Cr. 455 (CSH), 1992 WL 373473, at *2 (S.D.N.Y. Dec. 2, 1992) ("Analysis of the facts that are 'of consequence to the determination of the action' begins with the particular charges made by the government in the indictment, and what the government must prove to sustain those charges.").

7

charges against [the defendant] on the basis of [his] own acts, and not the acts of others." *United States v. Marcus Schloss & Co.*, 710 F. Supp. 944, 954 (S.D.N.Y. 1989).  That is all the more true where, as here, those others are not even alleged to be co-conspirators.  *United States v. Lopez-Medina*, 461 F.3d 724, 741-42 (6th Cir. 2006) (holding that the district court erred by admitting evidence about a defendant's associates who were not co-conspirators).

Indeed, introducing evidence of decisions by SAC that did not involve Mr. Martoma invites the jury to find Mr. Martoma guilty by association with SAC.  Such evidence is inadmissible.  *United States v. Fitzgerald*, 279 F. App'x 444, 444-45 (9th Cir. 2008) (upholding a new trial where evidence had been admitted that the defendant's business associate had been convicted of similar fraud even though the jury was cautioned that it "must not infer that the defendant is guilty of participating in criminal conduct merely from the fact that he had a business relationship with another who was guilty of wrongdoing" (internal quotation marks omitted)); *United States v. Polasek*, 162 F.3d 878, 884-85 (5th Cir. 1998) (holding that evidence that the defendant had worked for persons later convicted of fraud was "inadmissible guilt by association evidence").

In short, evidence of SAC's sales of Wyeth securities – based on decisions by Mr. Cohen and/or Mr. Holman without the involvement of Mr. Martoma – is irrelevant to any determination of Mr. Martoma's guilt or innocence.  This Court should preclude the Government from introducing any evidence about, or mentioning at any time during trial, SAC's sales of Wyeth securities.

## II. EVIDENCE OF SAC'S SALES OF WYETH SECURITIES SHOULD BE EXCLUDED BECAUSE IT WOULD BE UNFAIRLY PREJUDICIAL AND CONFUSING.

Evidence of SAC's sales of Wyeth securities also should be excluded because it would create a substantial danger of "unfair prejudice, confusing the issues, [or] misleading the jury."

8

Fed. R. Evid. 403; *see also Kaplan*, 490 F. 3d at 122 (finding that the district court erred in admitting evidence where its "slight probative value" was "outweighed by the risk that the jury would draw improper inferences" from it). As the Second Circuit has explained, there is a danger of substantial prejudice whenever the Government attempts to introduce evidence of the actions of individuals who are not co-conspirators. *United States v. Contorinis*, 692 F.3d 136, 144 (2d Cir. 2012). That is especially true in this case, where the evidence involves decisions by Mr. Cohen and/or Mr. Holman that Mr. Martoma had no role in making.

***First***, the unrebutted testimony of Mr. Cohen clearly shows that Mr. Martoma was ***not*** involved in SAC's decision to sell Wyeth securities. Admitting evidence of those sales, however, invites the jury to draw just the opposite inference and impute the decision to Mr. Martoma. The end result would be to increase greatly the likelihood that the jury would convict Mr. Martoma on an improper basis. *Kaplan*, 490 F.3d at 121-22 (evidence that third parties knew about a fraud should have been excluded because the evidence was only minimally relevant to whether the defendant knew about the fraud and greatly increased the risk of an improper conviction).[13]

***Second***, evidence of SAC's sales of Wyeth securities would necessitate a mini-trial within the trial concerning the reasons behind ***Mr. Cohen's and/or Mr. Holman's*** decisions to sell Wyeth securities. But Mr. Martoma would be unable to rebut the Government's misleading inferences because Mr. Cohen would not be available to testify as a witness – thereby causing unnecessary and unavoidable confusion for the jury and prejudice to Mr. Martoma. *See SEC v.*

---

[13] *Accord United States v. McDermott*, 245 F.3d 133, 142 (2d Cir. 2001) (finding that evidence concerning an alleged tippee in an insider trading case "unfairly prejudiced [the defendant] by casting an illicit light on his relationship with her by suggesting that her occupation was of a 'sleazy' nature" with the result that the "evidence should not have been admitted"); *United States v. Vasquez*, 840 F. Supp. 2d 564, 575-76 (E.D.N.Y. 2011) (excluding evidence where the danger of unfair prejudice exceeded any probative value of the evidence at issue because "the jury would be left to speculate regarding the circumstances surrounding" the evidence, "which could result in a side trial diverting the jury's attention from the relevant issues").

9

*Badian*, 822 F. Supp. 2d 352, 366 (S.D.N.Y. 2011) (excluding evidence of a prior criminal complaint that was dismissed as to the defendant because "it could lead the jury to confuse the allegations in the criminal [c]omplaint with the allegations in the instant case and/or to impute allegations against [a co-defendant] to [the defendant]").[14]  This problem is exacerbated in this case where it is expected that Mr. Cohen will assert his Constitutional rights and be unavailable to testify at trial to correct any misleading impression left by such Government arguments.

Accordingly, evidence of SAC's sales of Wyeth securities would be unfairly prejudicial to Mr. Martoma and confusing to the jury.  This Court should preclude the Government from introducing any evidence about, or mentioning at any time during trial, SAC's sales of Wyeth securities.

### III. ALTERNATIVELY, MR. MARTOMA SHOULD BE ALLOWED TO INTRODUCE SELECTED PORTIONS OF MR. COHEN'S SEC TESTIMONY.

If this Court does not preclude the Government from introducing any evidence about, or mentioning at any time during trial, SAC's sales of Wyeth securities, then Mr. Martoma should be allowed to introduce selected portions of Mr. Cohen's testimony that Mr. Cohen, in consultation with Mr. Holman (not Mr. Martoma), made the decision to sell Wyeth securities. Such testimony is admissible for the following separate and independent reasons.

*First*, because it is anticipated that Mr. Cohen will invoke his Constitutional rights and be unavailable as a witness, selected portions of his testimony will be admissible under Federal Rule of Evidence 804(b)(1).  *See United States v. Dolah*, 245 F.3d 98, 102 (2d Cir. 2001), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 64 (2004).  Although the Second Circuit has yet to address the question of whether an unavailable witness's prior SEC

---

[14] *Accord United States v. Graziano*, 558 F. Supp. 2d 304, 323-24 (E.D.N.Y. 2008) (excluding the government's evidence of conduct unrelated to the charges against the defendant because the introduction of such evidence "would lead to a 'mini-trial' concerning the nature and scope" of the unrelated conduct).

deposition testimony is admissible in a related criminal case, the Seventh Circuit recently held under strikingly similar circumstances that deposition testimony taken by an executive branch agency (there, the CFTC) is ***admissible*** under Rule 804(b)(1) when the witness is unavailable in a federal criminal case brought by the Government because those executive branch agencies are the same party for purposes of Rule 804(b)(1) and share similar motives to develop the testimony at issue.  *Sklena*, 692 F.3d at 730-33 (reversing for abuse of discretion the trial court's decision that "the CFTC and the U.S. Department of Justice may not be considered the same party" and "the CFTC and the Justice Department did not share 'similar motives' to develop [the witness]'s testimony" (alteration omitted)).[15]

The Seventh Circuit's holding is just as applicable here.  The Government and the SEC as executive branch agencies are also the same party.  They play closely coordinated roles on behalf of the United States in the enforcement of insider trading laws.[16]  They have coordinated closely in this case by sharing information with each other, relying on the same witness interviews and deposition testimony (including Mr. Cohen's testimony), and filing substantively identical complaints (one day apart) that brought the same charges for violations of Section 10(b) and Rule 10b-5 based on the same allegations.[17]  The Government also had an opportunity and a

---

[15]  The question of whether an unavailable witness's prior SEC deposition testimony is admissible in a related criminal case is currently pending before the Second Circuit in *United States v. Whitman*, No. 13-491-cr (2d Cir.), where it was fully briefed on August 15, 2013, and argued on November 4, 2013.

[16]  For example, the SEC's Enforcement Manual expressly encourages SEC attorneys to "work cooperatively with criminal authorities, to share information, and to coordinate their investigations with parallel criminal investigations when appropriate." *SEC Enforcement Manual* § 5.2.1 (2011), Strassberg Decl. No. 2, Ex. C. And the Government itself has conceded in other criminal cases that it is the same "party" as the SEC for purposes of determining the admissibility of prior SEC deposition testimony under Rule 804(b)(1). *See United States v. Hatfield*, No. 06-CR-0550 (JS), 2010 WL 2545828, at *2 (E.D.N.Y. June 21, 2010) (admitting a witness's SEC testimony in a criminal case); *United States v. Skilling*, No. H-04-025, 2006 WL 1155566, at *1 (S.D. Tex. Apr. 27, 2006) (the Government in a criminal prosecution did not dispute that it "was a party to the prior criminal trials [and] SEC proceedings at which the declarants gave the former testimony").

[17]  From the beginning, the Government and the SEC have coordinated their investigation of Mr. Martoma.  For example, as early as February 2, 2012, Government attorneys and SEC attorneys jointly interviewed Dr. Sidney Gilman, the Government's key witness, as part of their investigation.  That interview covered many of the

motive similar to the SEC's motive to develop the testimony of Mr. Cohen that Mr. Martoma seeks to admit. Both the Government and the SEC were investigating Mr. Martoma's and Mr. Cohen's trading in Elan and Wyeth securities to take enforcement action; and both made and needed to prove the same allegations to support the same charges. *See Sklena*, 692 F.3d at 732; *accord Skilling*, 2006 WL 1155566, at *8, 15. In short, the Government and the SEC "had essentially the same incentive" to develop Mr. Cohen's factual testimony about the events surrounding SAC's decision to sell Wyeth securities and, therefore, selected portions of his deposition testimony concerning that decision are admissible under Rule 804(b)(1). *Sklena*, 692 F.3d at 732-33.

***Second***, the selected portions of Mr. Cohen's deposition testimony are admissible under Federal Rule of Evidence 807. Deposition testimony contains the requisite "circumstantial guarantees of trustworthiness" for admission under Rule 807, as courts both within and outside of this Circuit have repeatedly held. *See, e.g.*, *SEC v. Curshen*, 372 F. App'x 872, 878 (10th Cir. 2010) ("[A third party's] deposition had circumstantial guarantees of trustworthiness as it was taken under oath subject to penalty of perjury.")[18] Mr. Cohen's selected testimony bears on

---

topics that are the subject of the Government's and the SEC's charges against Mr. Martoma. As another example, the criminal complaint against Mr. Martoma makes abundantly clear that the Government expressly relied on documents and testimony received from the SEC – including the SEC deposition testimony of Mr. Cohen – in charging Mr. Martoma: "The information contained in this affidavit is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources of information and agents, including, but not limited to: (a) witness interviews and ***sworn testimony***; (b) ***information received from the Securities & Exchange Commission ("SEC")***; . . ." (Compl. ¶ 7 (emphasis added).)

[18] *Accord Taylor v. Fairfield Resorts, Inc./Wyndham*, No. 2:07-cr-01602-RCJ-GWF, 2009 WL 5195973, at *6 (D. Nev. Dec. 23, 2009) (holding that deposition testimony is admissible under Rule 807 because "[t]his is not a recollection of offhand comments or a casual conversation, but of a deposition in a federal lawsuit"); *United States v. Kimoto*, No. 07-CR-300089-MJR, 2008 WL 4545342, at *4 (S.D. Ill. Oct. 10, 2008) ("[T]he Court found that [a third party's] deposition was taken under oath and, therefore, had 'equivalent circumstantial guarantees of trustworthiness.'"); *Virola v. XO Commc'ns Inc.*, No. 05-CV-5056 (JG) (RER), 2008 WL 1766601, at *16 (E.D.N.Y. Apr. 15, 2008) (holding that deposition testimony was admissible under Rule 807); *Patsy's Italian Rest., Inc. v. Banas*, Nos. 06-CV-0729 (RER), 06-CV-5857 (RER), 2008 WL 850151, at *2 (E.D.N.Y. Mar. 26, 2008) ("While the portions of the deposition containing purported statements of Mr. Lancieri and [the deponent's] father are hearsay, they are admissible pursuant to Federal Rule of Evidence

12

material facts by rebutting the Government's central allegation that Mr. Martoma was involved in SAC's decision to sell Wyeth securities. (*See supra* at 4-6.) Where witnesses are unavailable, their prior sworn testimony is the most probative evidence available, as courts have found time and again. *See, e.g.*, *Lopez v. Miller*, 915 F. Supp. 2d 373, 424 (E.D.N.Y. 2013) (holding that sworn affidavits were " more probative than other available evidence because both [declarants] are unavailable to testify").[19] Admitting Mr. Cohen's selected testimony on this point is consistent with the purposes of the Federal Rules of Evidence and advances the interests of justice by assisting the jury in ascertaining the truth and protecting the rights of Mr. Martoma. *See United States v. Detrich*, 865 F.2d 17, 21-22 (2d Cir. 1988) (excluding evidence "probative on the trial's central issue, and lend[ing] support to the theory of the defense" was reversible error).[20] Accordingly, the selected portions of Mr. Cohen's deposition testimony satisfy Rule 807's requirements for admission.

Therefore, if this Court does not preclude the Government from introducing evidence, or mentioning at any time during trial, SAC's sales of Wyeth securities, then Mr. Martoma should

---

807."); *Stryker Corp. v. XL Ins. Am.*, No. 4:01-CV-157, 2007 WL 172401, at *4 (W.D. Mich. Jan. 18, 2007) (holding that deposition testimony "offers guarantees of trustworthiness equivalent to hearsay admitted under Rule 804").

[19] *Accord Virola*, 2008 WL 1766601, at *16 (deposition testimony "would be more probative . . . than other reasonably available evidence if the plaintiffs cannot find other evidence"); *Banas*, 2008 WL 850151, at *2 (portions of depositions are admissible because they "are offered to prove material facts, . . . are more probative on the relevant points than other evidence, and the interests of justice will be served by their admission"); *Skilling*, 2006 WL 1155566, at *8 n.42 (excerpts of a witness's prior trial testimony "are admissible under Federal Rule of Evidence 807 because they were given under oath, they concern material facts on which [the witness] had first-hand personal knowledge, they are more probative on the points for which defendants seek their admission than other evidence that defendants could procure through reasonable efforts, and the interests of justice will best be served by their admission into evidence"); *Stryker Corp.*, 2007 WL 172401, at *4 (holding that deposition testimony "provides the best overall representation of [the witness'] testimony, given that she is unavailable to testify at trial"); *In re Mendez*, No. 05-62634-A-7, 2008 WL 597280, at *8 (Bankr. E.D. Cal. Feb. 29, 2008) (holding that prior testimony under oath is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts because the [declarant] did not appear to testify at trial").

[20] *Accord Mendez v. Artuz*, No. 98 Civ. 2652, 2000 WL 722613, at *15 (S.D.N.Y. June 6, 2000) ("Moreover, where the statement forms a critical part of the defense, due process concerns may tip the scales in favor of admission." (internal quotation marks omitted)).

be allowed to introduce selected portions of Mr. Cohen's SEC deposition testimony that Mr. Cohen, in consultation with Mr. Holman (not Mr. Martoma), made the decision to sell those securities.

## CONCLUSION

For the foregoing reasons, Mr. Martoma respectfully requests that this Court grant his motion to exclude evidence of SAC's sales of Wyeth securities and preclude the Government from introducing any evidence about, or mentioning at any time during trial (including in its opening statement and closing argument), SAC's decision to sell Wyeth securities. Alternatively, this Court should admit selected portions of Mr. Cohen's SEC testimony that Mr. Cohen, in consultation with Mr. Holman (not Mr. Martoma), made the decision to sell Wyeth securities.

Dated:  December 6, 2013
         New York, NY

Respectfully submitted,

GOODWIN PROCTER LLP

By: /s/ Richard M. Strassberg
    Richard M. Strassberg (RS5141)
      (rstrassberg@goodwinprocter.com)
    John O. Farley (JF4402)
      (jfarley@goodwinprocter.com)
    Daniel Roeser (DR2380)
      (droeser@goodwinprocter.com)

    The New York Times Building
    620 Eighth Avenue
    New York, New York 10018
    Telephone:  (212) 813-8800

    Roberto M. Braceras (RB2470)
      (rbraceras@goodwinprocter.com)
    53 State Street
    Boston, Massachusetts 02109
    Telephone:  (617) 570-1000

    *Attorneys for Defendant Mathew Martoma*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2013, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices. I also certify that I have caused copies of the aforementioned document to be served via first class mail, postage prepaid, upon all non-CM/ECF participants.

/s/ Richard M. Strassberg
Richard M. Strassberg (RS5141)