# EXHIBIT B

**RIDGEBACK CAPITAL MANAGEMENT LLC**
430 Park Avenue, 12th floor
New York, NY 10022

November 9, 2007

S.A.C. Capital Advisors, LLC
72 Cummings Point Road
Stamford, CT 06902

Gentlemen:

      S.A.C. Capital Advisors, LLC, a Delaware limited liability company ("SAC Advisors"), and the undersigned, Ridgeback Capital Management LLC ("Ridgeback"), are entering into this letter agreement in connection with the potential investment by S.A.C. Capital Associates, LLC, an Anguilla limited liability company ("SAC Associates"), in up to 20 million shares of the common stock of Wyeth [NYSE: WYE] (the "Issuer").

      1.    Investment Advice. Ridgeback shall provide SAC Advisors with investment advice regarding the Issuer, as and when requested by SAC Advisors.

      2.    Investment Discretion. SAC Advisors shall maintain complete investment discretion over the purchase and sale of, and full voting discretion over, all securities of the Issuer by SAC Associates and other funds managed by SAC Advisors. Ridgeback shall have no authority to direct the purchase or sale of, or the voting of, any securities of the Issuer held by SAC Associates or any other fund managed by SAC Advisors or by any other affiliate of SAC Advisors (an "Affiliate Fund"). For the avoidance of doubt, SAC Advisors shall not be required to follow the investment advice provided by Ridgeback hereunder and disregarding Ridgeback's investment advice shall not result in a violation or termination of this letter agreement. Ridgeback shall not pursuant to the terms of this letter agreement, have or be deemed to have "beneficial ownership" within the meaning of Rule 13d-3 ("Beneficial Ownership") promulgated under the Securities Exchange Act of 1934, as amended, over any securities held by SAC Associates or an Affiliate Fund.

      3.    Account. SAC Associates shall establish a memorandum account on its books (the "Account") and Steven A. Cohen ("Cohen") shall conduct (i) all his direct purchases of the securities of the Issuer through the Account during the Applicable Period and (ii) as and if determined by SAC Advisors, any hedging of such purchases utilizing individual stock positions of Issuers whose individual market capitalization is equal to $10 billion or more ("Hedging Positions") through the Account. "Applicable Period" means the period from the date hereof through April 30, 2008.

      4.    Compensation. Within 60 days after the Determination Date (as defined below), Ridgeback shall be paid by SAC Advisors a fee equal to (i) 20% of the cumulative Net Profit (as defined below) as of the Determination Date attributable to the investment in the

common stock of the Issuer by the Account during the Applicable Period if the Rate of Return (as defined below) is less than 30% or (ii) 30% of the cumulative Net Profit as of the Determination Date attributable to the investment in the common stock of the Issuer by the Account during the Applicable Period if the Rate of Return is equal to or greater than 30%.

    (a) "Determination Date" means the final day of the Term (as defined below).

    (b) "Net Profit" means the realized net profit of the Account attributable to the common stock of the Issuer purchased by SAC Associates for the Account pursuant to this letter agreement during the Applicable Period as contemplated hereby; provided, that if the Account contains common stock of the Issuer upon the expiration of the Term, the Net Profit shall be calculated based upon the unrealized Net Profit of the common stock of the Issuer in the Account, valuing such securities in accordance with SAC Advisors' customary accounting practices; provided further, that the Net Profit shall be calculated in accordance with SAC Advisors' customary accounting practices and including dividends, brokerage charges and/or commissions, ticket charges and other costs incidental to trading activities and include deductions for expenses (such as legal, consulting or other professional fees) associated with the common stock of the Issuer in the Account and SAC Advisors will charge interest on long balances in the Account and SAC Advisors shall credit short rebates in accordance with its customary practices. In either case, "Net Profit" will include any profit, loss or cost of any Hedging Positions, as determined by SAC.

    (c) "Rate of Return" means the quotient obtained by dividing (A) the Net Profit of the Account during the Term by (B) 50% of the average gross market value of the Account during the Term, determined in accordance with SAC Advisors' customary accounting practices.

    5. Investment Restriction. Ridgeback, Wayne Holman ("Holman") and any entity managed by Ridgeback or by any other entity controlled by Holman shall not, in the aggregate, obtain Beneficial Ownership of more than 10 million shares of common stock of the Issuer.

    6. Transferability. Ridgeback hereby irrevocably agrees that SAC Advisors may assign its rights and interest under this letter agreement to another entity controlled by Cohen or his heirs or legal representatives.

    7. Affiliates Excluded. For the avoidance of doubt, if any investment fund managed by SAC Advisors or any affiliate invests in the securities of the Issuer (an "Affiliated Fund Investment"), other than the investments in common stock by SAC Associates in the Account managed by Cohen pursuant to the Account during the Applicable Period as contemplated hereby, this letter agreement, including the compensation provisions, shall not apply to any such Affiliated Fund Investment. Furthermore, the provisions of this letter agreement, including the compensation provisions, shall not apply to any investment in the securities of the Issuer by SAC Associates, other than those investments held in the Account and made during the Applicable Period as contemplated hereby.

Confidential Grand Jury Materials Subject to Fed. R. Crim. P. 6(e)    SAC_ELAN0726050

8. *Information Restrictions.* Holman, Ridgeback and SAC Advisors each agree to continue to comply with the restrictions as to sharing of information set forth on Exhibit B to the letter agreement, dated April 3, 2006, among SAC Advisors, Ridgeback, Holman, Ridgeback Management, LLC and Ridgeback Capital Partners LLC.

9. *Term.* This letter agreement shall continue and remain in force and effect until the earlier of (a) September 30, 2008, unless SAC Advisors elects, in its sole discretion, upon written notice to Ridgeback, to extend the term for an additional six months, and (b) such earlier date as of which all equity securities of the Issuer in the Account are sold (the "Term"). In the event of a termination pursuant to clause (b), SAC Advisors shall notify Ridgeback by delivery of written notice not less than 15 days after the date thereof.

10. *Confidentiality.* Each party shall keep the terms of this letter agreement and the actions contemplated herein confidential and neither this letter agreement nor any of its terms shall be copied, reproduced or otherwise disclosed to any person other than an employee, affiliate or professional advisor engaged by either party or their respective affiliates (it being understood that the disclosing party will require such person to keep such information confidential and that such party shall be responsible for any violation of this Section 10 by such person), without the prior written permission of the other party or unless any language in this letter that would reasonably lead to the disclosure of such party's identity is redacted from the letter, or unless the party is required by applicable law or regulation, or by a court of competent jurisdiction, to disclose this letter agreement.

11. *Miscellaneous.*

(a) Each party acknowledges that the other party would be irreparably harmed by any breach of this letter agreement by it and that there may be no adequate remedy at law or in damages to compensate the other party for any such breach. Accordingly, in addition to the remedies available under applicable law, each party agrees that the other party shall be entitled to seek specific performance by such party of its obligations under this letter agreement (including by means of an injunction).

(b) This letter agreement shall be governed by, and construed in accordance with, the law of the State of New York without regard to the laws that might otherwise apply under applicable principles of conflicts of laws.

(c) The parties agree that any dispute or controversy arising out of or relating to this Agreement or the interpretation hereof, or the employment relationship, will be settled by arbitration, to be held in the Borough of Manhattan, City of New York in the State of New York, in accordance with the Commercial Arbitration Rules, then in effect, of the American Arbitration Association. The powers of the Arbitrator shall be limited to interpreting this Agreement as written. The award of the Arbitrator will be final, and judgment upon the award may be confirmed and entered in any court, state or federal, having jurisdiction. Each party agrees that it waives any objection, and specifically consents to, venue in the United States Federal or State Courts located in the Borough of Manhattan, City of New York in the State of New York so that any action at law or in equity may be brought to enforce an arbitration award or in equity to bring an injunctive action or seek other equitable relief under Section 10.

Confidential Grand Jury Materials Subject to Fed. R. Crim. P. 6(e)　　　　　　　　　　　　　　　SAC_ELAN0726051

This letter agreement may be executed in two or more counterparts (including by facsimile), each of which shall be deemed an original and all of which together shall be considered one and the same agreement.

RIDGEBACK CAPITAL MANAGEMENT LLC

By: _____
Name: Wayne Holman
Title   Sole Member

For Purposes of Section 5

WAYNE HOLMAN

_____

Accepted and Agreed:

S.A.C. CAPITAL ADVISORS, LLC

By: _____
Name: Peter Nussbaum
Title:   General Counsel

4