UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

MATHEW MARTOMA,

                    Defendant.

No. 12-cr-00973 (PGG)
ECF Case

**DEFENDANT MATHEW MARTOMA'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO EXCLUDE EVIDENCE OF THE MANNER IN WHICH SAC SOLD ELAN AND WYETH SECURITIES OR, ALTERNATIVELY, TO ADMIT SELECTED PORTIONS OF STEVEN COHEN'S SEC TESTIMONY**

**(MR. MARTOMA'S MOTION *IN LIMINE* NO. 3)**

GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
John O. Farley (JF4402)
Daniel Roeser (DR2380)
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Roberto M. Braceras (RB2470)
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Defendant Mathew Martoma*

December 6, 2013

TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................................1

FACTUAL BACKGROUND...........................................................................................5

ARGUMENT....................................................................................................................7

I.      EVIDENCE OF SAC'S DECISIONS THAT DID NOT INVOLVE
        MR. MARTOMA SHOULD BE EXCLUDED BECAUSE IT IS NOT
        RELEVANT TO THE CHARGED OFFENSES. ............................................7

II.     EVIDENCE OF SAC'S DECISIONS THAT DID NOT INVOLVE
        MR. MARTOMA SHOULD BE EXCLUDED BECAUSE IT WOULD BE
        UNFAIRLY PREJUDICIAL AND CONFUSING. ......................................10

III.    ALTERNATIVELY, MR. MARTOMA SHOULD BE ALLOWED TO
        INTRODUCE SELECTED PORTIONS OF MR. COHEN'S SEC
        TESTIMONY. .................................................................................................13

CONCLUSION ..............................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Lopez v. Miller*,
   915 F. Supp. 2d 373 (E.D.N.Y. 2013) ..................................................................15

*In re Mendez*,
   No. 05-62634-A-7, 2008 WL 597280 (Bankr. E.D. Cal. Feb. 29, 2008) ...............16

*Mendez v. Artuz*,
   No. 98 Civ. 2652, 2000 WL 722613 (S.D.N.Y. June 6, 2000)...............................16

*Patsy's Italian Rest., Inc. v. Banas*,
   Nos. 06-CV-0729 (RER), 06-CV-5857 (RER), 2008 WL 850151 (E.D.N.Y. Mar. 26,
   2008) ........................................................................................................................15

*SEC v. Badian*,
   822 F. Supp. 2d 352 (S.D.N.Y. 2011)....................................................................11

*SEC v. Curshen*,
   372 F. App'x 872 (10th Cir. 2010) .........................................................................15

*Stryker Corp. v. XL Ins. Am.*,
   No. 4:01-CV-157, 2007 WL 172401 (W.D. Mich. Jan. 18, 2007)....................15, 16

*Taylor v. Fairfield Resorts, Inc./Wyndham*,
   No. 2:07-cr-01602-RCJ-GWF, 2009 WL 5195973 (D. Nev. Dec. 23, 2009) .........15

*United States v. Aleynikov*,
   737 F. Supp. 2d 173 (S.D.N.Y. 2010).....................................................................12

*United States v. Contorinis*,
   692 F.3d 136 (2d Cir. 2012).....................................................................................10

*United States v. Detrich*,
   865 F.2d 17 (2d Cir. 1988).......................................................................................16

*United States v. Dolah*,
   245 F.3d 98 (2d Cir. 2001).......................................................................................13

*United States v. Fitzgerald*,
   279 F. App'x 444 (9th Cir. 2008) ..............................................................................8

*United States v. Graziano*,
   558 F. Supp. 2d 304 (E.D.N.Y. 2008) .....................................................................11

*United States v. Harris,*
No. S1 92 Cr. 455 (CSH), 1992 WL 373473 (S.D.N.Y. Dec. 2, 1992)...............................8, 9

*United States v. Harvey,*
991 F.2d 981 (2d Cir. 1993)............................................................................................8, 9

*United States v. Hatfield,*
No. 06-CR-0550 (JS), 2010 WL 2545828 (E.D.N.Y. June 21, 2010)....................................14

*United States v. Heron,*
No. 06-674, 2007 WL 2916196 (E.D. Pa. Oct. 5, 2007) ......................................................8, 9

*United States v. Kaplan,*
490 F.3d 110 (2d Cir. 2007).............................................................................................7, 10

*United States v. Kimoto,*
No. 07-CR-300089-MJR, 2008 WL 4545342 (S.D. Ill. Oct. 10, 2008) ...............................15

*United States v. Lopez-Medina,*
461 F.3d 724 (6th Cir. 2006) ..............................................................................................8

*United States v. Marcus Schloss & Co.,*
710 F. Supp. 944 (S.D.N.Y. 1989)........................................................................................8

*United States v. McDermott,*
245 F.3d 133 (2d Cir. 2001)................................................................................................11

*United States v. Miller,*
626 F.3d 682 (2d Cir. 2010)..............................................................................................7, 9

*United States v. Old Chief,*
519 U.S. 172 (1997)...........................................................................................................12

*United States v. Polasek,*
162 F.3d 878 (5th Cir. 1998) ...............................................................................................8

*United States v. Skilling,*
No. H-04-025, 2006 WL 1155566 (S.D. Tex. Apr. 27, 2006)....................................14, 15, 16

*United States v. Sklena,*
692 F.3d 725 (7th Cir. 2012) ....................................................................................4, 13, 15

*United States v. Trupin,*
No. 97 CR. 97 (LMM), 1999 WL 322656 (S.D.N.Y. May 20, 1999) ................................7, 9

*United States v. Vasquez,*
840 F. Supp. 2d 564 (E.D.N.Y. 2011) ................................................................................11

*Virola v. XO Commc'ns, Inc.*,
   No. 05-CV-5056 (JG) (RER), 2008 WL 1766601 (E.D.N.Y. Apr. 15, 2008)...................15, 16

**OTHER AUTHORITIES**

Fed. R. Evid. 401 ....................................................................................................................1

Fed. R. Evid. 402 ....................................................................................................................1

Fed. R. Evid. 403 ..............................................................................................................1, 10

Fed. R. Evid. 804(b)(1).................................................................................................13, 14, 15

Fed. R. Evid. 807 ..........................................................................................................4, 15, 16

*Regulation of Non-Public Trading Interest*, Release No. 34-60997,
   SEC Docket 472, 2009 WL 3802537 (proposed Nov. 13, 2009) ...........................................12

*SEC Enforcement Manual* § 5.2.1 (2011) .....................................................................................14

Pursuant to Federal Rules of Evidence 401, 402, and 403, Defendant Mathew Martoma respectfully submits this memorandum of law in support of his motion to exclude evidence of the manner in which S.A.C. Capital Advisors, LLC and its affiliates (collectively, "SAC") sold Elan Pharmaceuticals, plc ("Elan") and Wyeth securities or, alternatively, to admit selected portions of Steven Cohen's testimony before the Securities and Exchange Commission ("SEC"). Specifically, Mr. Martoma seeks an order precluding the Government from introducing any evidence about, or mentioning at any time during trial (including in its opening statement and closing argument), SAC's decisions to (1) short Elan and Wyeth securities or (2) use "algos" or algorithmic trading platforms, "dark pools," and accounts with "limited viewing access" to sell Elan and Wyeth securities. Alternatively, Mr. Martoma seeks an order admitting selected portions of Mr. Cohen's SEC testimony that Mr. Cohen and Phillipp Villhauer (not Mr. Martoma) made those decisions.

## PRELIMINARY STATEMENT

Mr. Martoma indisputably was **not** involved in either SAC's decision to short Elan and Wyeth securities or its decisions about the manner in which Elan and Wyeth securities were sold. The unrebutted sworn testimony of Mr. Cohen (SAC's founder) and Mr. Villhauer (SAC's senior trader) unequivocally establishes that Mr. Martoma had **nothing** to do with deciding which trading strategies to use. Indeed, Mr. Cohen has testified that he (not Mr. Martoma) made the decision to short Elan and Wyeth securities; and Mr. Cohen and Mr. Villhauer have both testified that they (not Mr. Martoma) made the decisions about the process for selling SAC's holdings in Elan and Wyeth. There is **no** evidence to the contrary. Accordingly, this Court should preclude the Government from introducing any evidence or mentioning at any time during trial (including in its opening statement and closing argument) SAC's decisions to (1) short Elan and Wyeth

securities or (2) use "algos" or algorithmic trading platforms, "dark pools," and accounts with "limited viewing access" to sell Elan and Wyeth securities.  If this Court chooses not to do so, then Mr. Martoma should be allowed to introduce selected portions of Mr. Cohen's SEC testimony that Mr. Cohen and Mr. Villhauer (not Mr. Martoma) made those decisions.

***Evidence of SAC's decisions that did not involve Mr. Martoma should be excluded because it is not relevant to the charged offenses.***  Evidence of SAC's decision to short Elan and Wyeth securities and its decisions about how to sell those securities is of no consequence to the determination of ***Mr. Martoma***'s guilt or innocence.  Mr. Cohen and Mr. Villhauer testified that they (not Mr. Martoma) made those decisions.  The Government may not seek to attribute the decisions to Mr. Martoma.  That is all the more true where, as here, the Government has not identified either Mr. Cohen or Mr. Villhauer as a co-conspirator of Mr. Martoma.

Evidence of SAC's decision to short Elan and Wyeth securities and its decisions about the process for selling those securities is inadmissible for the additional reason that those decisions are not probative of whether ***SAC*** traded on inside information.  Mr. Cohen testified that SAC shorted Elan and Wyeth securities only to hedge long exposure to Wyeth.  At the end of the day, SAC was neutral on whether bapineuzumab ("bapi") (an experimental Alzheimer's Disease drug) would succeed or fail; and any reference by the Government at any time during trial (including in its opening statement or closing argument) that SAC shorted securities to bet against bapi would be disingenuous and misleading and should be precluded.  Moreover, as Mr. Cohen and Mr. Villhauer testified, SAC would have sold its Elan and Wyeth positions in the same manner under any circumstances.  Accordingly, evidence of those trading strategies by SAC is irrelevant and inadmissible.

***Evidence of SAC's decisions that did not involve Mr. Martoma should be excluded because it would be unfairly prejudicial and confusing.*** Evidence of SAC's decision to short Elan and Wyeth securities and its decisions about how to sell those securities also should be excluded because it would create a substantial danger of unfair prejudice and confusion. The Second Circuit has recognized the risk of substantial prejudice whenever the Government attempts to introduce evidence of the actions of individuals who are not co-conspirators. That risk is certainly present here. The Government does not and cannot allege that Mr. Martoma was involved in SAC's decision to short Elan and Wyeth securities or its decisions about the process for selling those securities. Admitting evidence of those decisions, however, would invite the jury to impute them to Mr. Martoma. Moreover, such evidence would necessitate mini-trials within the trial concerning ***SAC***'s reasons behind the decisions, thereby causing unnecessary confusion for the jury. Further, evidence of SAC's short sales and sales processes – *i.e.*, "algos," "dark pools," and accounts with "limited viewing access" – may lead jurors to believe that such strategies are nefarious or even illegal when, in fact, both courts and the SEC have sanctioned them. Therefore, evidence of these trading practices would be unfairly prejudicial and confusing.

***Alternatively, Mr. Martoma should be allowed to introduce selected portions of Mr. Cohen's SEC testimony.*** If this Court does not preclude the Government from introducing any evidence about, or mentioning at any time during trial, SAC's decision to short Elan and Wyeth securities and its decisions about the process for selling those securities, then Mr. Martoma should be allowed to introduce selected portions of Mr. Cohen's SEC deposition testimony that Mr. Cohen and Mr. Villhauer (not Mr. Martoma) made those decisions. As the Seventh Circuit recently held under directly analogous circumstances, deposition testimony

taken by an executive branch agency (there, the CFTC) is ***admissible*** under Rule 804(b)(1) when the witness is unavailable in a federal criminal case brought by the Government because those executive branch agencies are the same party for purposes of Rule 804(b)(1) and share similar motives to develop the testimony at issue. *United States v. Sklena*, 692 F.3d 725, 730-33 (7th Cir. 2012).[1]  Further, Mr. Cohen's selected deposition testimony is admissible under Rule 807 because deposition testimony contains the requisite "circumstantial guarantees of trustworthiness," his selected testimony bears on material facts, his selected testimony is the most probative evidence available, and admitting his selected testimony is consistent with the purposes of the Federal Rules of Evidence and advances the interests of justice by assisting the jury in ascertaining the truth and protecting the rights of Mr. Martoma.

In short, it would be misleading gamesmanship on the part of the Government to introduce evidence or make arguments concerning SAC's decisions to (1) short Elan and Wyeth securities or (2) use "algos" or algorithmic trading platforms, "dark pools," and accounts with "limited viewing access" to sell Elan and Wyeth securities when the Government well knows that Mr. Martoma played ***no*** role in those decisions, and when Mr. Cohen's unavailability will preclude Mr. Martoma from establishing that very fact.  The Government cannot have it both ways: it cannot choose to avoid naming Mr. Cohen and Mr. Villhauer as co-conspirators and nevertheless try to attribute their alleged "acts" to Mr. Martoma.  And the Government cannot ignore the sworn, unrebutted testimony that exculpates Mr. Martoma by establishing that he had nothing to do with SAC's decisions to (1) short Elan and Wyeth securities or (2) use "algos" or algorithmic trading platforms, "dark pools," and accounts with "limited viewing access" to sell Elan and Wyeth securities.

---

[1]      We are informed by counsel for Mr. Cohen that he intends to assert his Constitutional rights and, therefore, would be unavailable to appear as a witness at trial.

For all of these reasons, this Court should exclude any evidence of SAC's decision to short Elan and Wyeth securities and its decisions about the process for selling those securities and preclude the Government from mentioning any of those decisions at any time during trial; alternatively, this Court should admit selected portions of Mr. Cohen's testimony that he and Mr. Villhauer (not Mr. Martoma) made those decisions.

## FACTUAL BACKGROUND

The Government has **never** alleged that Mr. Martoma was part of SAC's decision to short Elan and Wyeth securities or its decisions to use "algos and darkpools" or firm accounts with "limited viewing access."  That is not surprising.  The unrebutted sworn testimony of Mr. Cohen and Mr. Villhauer – who were deposed by the SEC on May 3, 2012, and July 17, 2012, respectively – makes clear that ***Mr. Martoma had nothing to do with those decisions.***

Specifically, Mr. Cohen testified that he (***not Mr. Martoma***) made the decision to short Elan and Wyeth securities.  Mr. Cohen described that he did so to hedge long exposure in Wyeth and not to bet against bapi: "Generally, what I remember was selling Wyeth and then deciding to hedge out my exposure in Wyeth by shorting Elan. . . . It was sort of imperfect.  I was estimating the ratio that I would need to sell one against the other, but that's what I did."[2]

Moreover, Mr. Cohen and Mr. Villhauer testified in detail that they (***not Mr. Martoma***) made the decisions about the manner in which SAC sold Elan and Wyeth securities.  Mr. Cohen explained: "I gave the order to him [*i.e.*, Mr. Villhauer] and told him I didn't want anybody to know" because "I was afraid that it would leak out either in the firm or outside the firm or on Wall Street brokerage desks, trading desks, and that people might run in front of our order, they

---

[2]   (Transcript of the deposition testimony of Steven A. Cohen ("Cohen Dep."), dated May 3, 2012, in *In re Elan Corp., plc*, File No. NY-8152, at 203:4-24, Declaration of Richard M. Strassberg in Support of Defendant Mathew Martoma's Motion to Exclude Evidence of the Manner in Which SAC Sold Elan and Wyeth Securities or, Alternatively, to Admit Selected Portions of Steven Cohen's SEC Testimony ("Strassberg Decl. No. 3"), Ex. A.)

might tell other people we're selling and, you know, that might create a dislocation in the stock."[3]  Mr. Villhauer also explained that, with respect to the algorithms and dark pools, "I probably suggested it and he [*i.e.*, Mr. Cohen] probably agreed with it."[4]

Further, Mr. Cohen and Mr. Villhauer testified that it was common for SAC to use "algos and darkpools," as well as firm accounts with "limited viewing access" in certain instances. Mr. Cohen detailed that he might instruct a trader to use such processes "any time there is a large position or . . . if I don't want other people to know what I am doing."[5]  Mr. Villhauer also detailed: "Specifically, there was concern with many stocks.  Elan was probably brought up as one of those, but it wasn't just Elan.  There were . . . sizeable positions on the Intrinsic [*i.e.*, SAC affiliate CR Intrinsic] side that I think concerned him [*i.e.*, Mr. Cohen] when the market liquidity was falling off rather quickly."[6]

The Government does not and cannot allege that Mr. Martoma was involved in any of these trading strategies by Mr. Cohen and Mr. Villhauer.  Moreover, neither Mr. Cohen nor Mr. Villhauer is an alleged co-conspirator in this case.  Therefore, this Court should preclude the Government from introducing any evidence about, or mentioning at any time during trial, SAC's decisions to (1) short Elan and Wyeth securities or (2) use "algos" or algorithmic trading platforms, "dark pools," and accounts with "limited viewing access" to sell Elan and Wyeth securities.

---

[3]   (Cohen Dep. 196:13-25, Strassberg Decl. No. 3, Ex. A.)

[4]   (Transcript of the deposition testimony of Phillipp Villhauer ("Villhauer Dep."), dated July 17, 2012, in *In re Elan Corp., plc*, File No. NY-8152, at 116:9-15, Strassberg Decl. No. 3, Ex. B.)

[5]   (Cohen Dep. 197:5-12, Strassberg Decl. No. 3, Ex. A.)

[6]   (Villhauer Dep. 118:2-10, Strassberg Decl. No. 3, Ex. B.)

<u>**ARGUMENT**</u>

I.     **EVIDENCE OF SAC'S DECISIONS THAT DID
       NOT INVOLVE MR. MARTOMA SHOULD BE EXCLUDED
       <u>BECAUSE IT IS NOT RELEVANT TO THE CHARGED OFFENSES.</u>**

Evidence of SAC's decision to short Elan and Wyeth securities and its decisions about the process for selling those securities is not relevant to the charged offenses because Mr. Martoma indisputably was not involved in making such decisions.  To be relevant, evidence must satisfy two distinct requirements: "(1) [t]he evidence must be probative of the proposition it is offered to prove, ***and*** (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007) (emphasis added; internal quotation marks omitted).  In this case, evidence of SAC's decisions about whether to short Elan and Wyeth securities and how to sell those securities – decisions that had nothing to do with Mr. Martoma – is of no consequence to the determination of the charges against Mr. Martoma and, in fact, is not probative of whether SAC traded on inside information about the Phase II bapi trial results.

***First***, evidence of SAC's decisions about whether to short Elan and Wyeth securities and how to sell those securities is of no consequence to the determination of ***Mr. Martoma's*** guilt or innocence.  Mr. Cohen testified that he (not Mr. Martoma) made the decision to short Elan and Wyeth securities, and Mr. Cohen and Mr. Villhauer both testified in detail that they (not Mr. Martoma) made the decisions about the process for selling the securities.  (*See supra* at 5-6.) As a result, evidence of those decisions "has nothing to do with whether or not [Mr. Martoma] did or did not engage in the conduct alleged in the indictment" and should be excluded.  *United States v. Trupin*, No. 97 CR. 97 (LMM), 1999 WL 322656, at *4 (S.D.N.Y. May 20, 1999); *accord United States v. Miller*, 626 F.3d 682, 687-88 (2d Cir. 2010) (affirming the exclusion of

7

evidence that "was not relevant because it was not of consequence to" the elements of the government's case).[7]

Tellingly, the Government has **not** identified Mr. Cohen or Mr. Villhauer as a co-conspirator of Mr. Martoma.  And the Government **cannot** seek to attribute Mr. Cohen's and/or Mr. Villhauer's decisions to Mr. Martoma.  "It is fair to require the government to prove its . . . substantive charges against [the defendant] on the basis of [his] own acts, and not the acts of others."  *United States v. Marcus Schloss & Co.*, 710 F. Supp. 944, 954 (S.D.N.Y. 1989).  That is all the more true where, as here, those others are not even alleged to be co-conspirators.  *United States v. Lopez-Medina*, 461 F.3d 724, 741-42 (6th Cir. 2006) (holding that the district court erred by admitting evidence about a defendant's associates who were not co-conspirators).

Indeed, introducing evidence of decisions by SAC that did not involve Mr. Martoma invites the jury to find Mr. Martoma guilty by association with SAC.  Such evidence is inadmissible.  *United States v. Fitzgerald*, 279 F. App'x 444, 444-45 (9th Cir. 2008) (upholding a new trial where evidence had been admitted that the defendant's business associate had been convicted of similar fraud even though the jury was cautioned that it "must not infer that the defendant is guilty of participating in criminal conduct merely from the fact that he had a business relationship with another who was guilty of wrongdoing" (internal quotation marks omitted));  *United States v. Polasek*, 162 F.3d 878, 884-85 (5th Cir. 1998) (holding that evidence

---

[7]     *See also United States v. Harvey*, 991 F.2d 981, 995-96 (2d Cir. 1993) (reversing a conviction where evidence was admitted that "did not bear on . . . disputed trial issues, and thus was not relevant"); *United States v. Heron*, No. 06-674, 2007 WL 2916196, at *4 (E.D. Pa. Oct. 5, 2007) (rejecting the government's proffer of evidence in an insider trading case that the defendant traded during a company-imposed "blackout period" because that evidence "does not aid the jury" in determining whether the defendant possessed material, non-public information); *United States v. Harris*, No. S1 92 Cr. 455 (CSH), 1992 WL 373473, at *2 (S.D.N.Y. Dec. 2, 1992) ("Analysis of the facts that are 'of consequence to the determination of the action' begins with the particular charges made by the government in the indictment, and what the government must prove to sustain those charges.").

that the defendant had worked for persons later convicted of fraud was "inadmissible guilt by association evidence").

*Second,* evidence of SAC's decisions about whether to short Elan and Wyeth securities and how to sell those securities is not probative of whether *SAC* traded on inside information about the Phase II bapi trial results.  As Mr. Cohen testified, SAC did not short Elan and Wyeth securities to bet against bapi.  Rather, SAC sought only to hedge its long exposure to Wyeth.  (*See supra* at 5.)  Mr. Cohen's unrebutted testimony makes clear that, contrary to the Government's allegations, SAC's shorting was *not* "designed to profit if the price of Elan and Wyeth securities were to fall after the Public Announcement."[8]  Consequently, SAC's short sales do not make it more or less likely that SAC traded on confidential information, and evidence of such sales is not probative.  *Miller*, 626 F.3d at 687-88; *Harvey*, 991 F.2d at 996; *Heron*, 2007 WL 2916196, at *5; *Trupin*, 1999 WL 322656, at *4; *Harris*, 1992 WL 373473, at *2.

As Mr. Cohen and Mr. Villhauer also testified, it was common for SAC to use "algos and darkpools," as well as firm accounts with "limited viewing access" in certain instances.  (*See supra* at 5-6.)  More to the point, whether SAC sold its Elan and Wyeth holdings using "algos," "darkpools," or "limited viewing access" accounts does not make it more or less likely that those sales were based on confidential information.  Put differently, SAC would have sold its Elan and Wyeth positions in the same manner under any circumstances – whether or not it possessed inside information.  Thus, evidence of SAC's process for selling Elan and Wyeth securities is not probative of anything.  *Miller*, 626 F.3d at 687-88; *Harvey*, 991 F.2d at 996; *Heron*, 2007 WL 2916196, at *5; *Trupin*, 1999 WL 322656, at *4; *Harris*, 1992 WL 373473, at *2.

---

[8]   (Superseding Indictment ¶ 14.)

9

In short, evidence of SAC's decision to short Elan and Wyeth securities and its decisions about how to sell those securities is irrelevant and inadmissible.  This Court should preclude the Government from introducing any evidence about, or mentioning at any time during trial, SAC's decisions to (1) short Elan and Wyeth securities or (2) use "algos" or algorithmic trading platforms, "dark pools," and accounts with "limited viewing access" to sell Elan and Wyeth securities.

## II.   EVIDENCE OF SAC'S DECISIONS THAT DID NOT INVOLVE MR. MARTOMA SHOULD BE EXCLUDED BECAUSE IT WOULD BE UNFAIRLY PREJUDICIAL AND CONFUSING.

Evidence of SAC's decision to short Elan and Wyeth securities and its decisions about the process for selling those securities also should be excluded because it would create a substantial danger of "unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403; *see also Kaplan*, 490 F. 3d at 122 (finding that the district court erred in admitting evidence where its "slight probative value" was "outweighed by the risk that the jury would draw improper inferences" from it).  As the Second Circuit has explained, there is a danger of substantial prejudice whenever the Government attempts to introduce evidence of the actions of individuals who are not co-conspirators.  *United States v. Contorinis*, 692 F.3d 136, 144 (2d Cir. 2012).  That is especially true in this case, where the evidence involves trading decisions by SAC that Mr. Martoma had no role in making.

*First*, the Government does not and cannot allege that ***Mr. Martoma*** was involved in SAC's decision to short Elan and Wyeth securities or its decisions about the process for selling those securities.  Admitting evidence of those decisions, however, would invite the jury to draw just that inference and impute the decisions to Mr. Martoma.  The end result would be to increase greatly the likelihood that the jury would convict Mr. Martoma on an improper basis.  *Kaplan*, 490 F.3d at 121-22 (evidence that third parties knew about a fraud should have been excluded

because the evidence was only minimally relevant to whether the defendant knew about the fraud

and greatly increased the risk of an improper conviction).[9]

     *Second*, evidence of SAC's trading decisions would necessitate mini-trials within the trial

concerning the reasons behind *SAC*'s decision to short Elan and Wyeth securities and its

decisions about the process for selling those securities, thereby causing unnecessary confusion

for the jury.  If the Government were to open this door, a substantial amount of time would need

to be spent addressing the conduct and decisions of *others* who have not been charged and who

are not alleged to be co-conspirators.  It is quite enough for Mr. Martoma to defend against the

charges directed at him.  The jury (and Mr. Martoma) should not be forced to disentangle the

conduct of Mr. Martoma from the conduct of others.  *See SEC v. Badian*, 822 F. Supp. 2d 352,

366 (S.D.N.Y. 2011) (excluding evidence of a prior criminal complaint that was dismissed as to

the defendant because it "could lead the jury to confuse the allegations in the criminal

[c]omplaint with the allegations in the instant case and/or to impute allegations against [a co-

defendant] to [the defendant]").[10]  This problem is exacerbated in this case  where it is expected

that Mr. Cohen will assert his Constitutional rights and be unavailable to testify at trial to correct

any misleading impression left by such Government arguments.

     *Third*, evidence that SAC – again, not Mr. Martoma – used "algos," "dark pools," and/or

"limited viewing access" accounts to execute the Elan and Wyeth trades may lead jurors to

---

[9]    *Accord United States v. McDermott*, 245 F.3d 133, 142 (2d Cir. 2001) (finding that evidence concerning an alleged tippee in an insider trading case "unfairly prejudiced [the defendant] by casting an illicit light on his relationship with her by suggesting that her occupation was of a 'sleazy' nature" with the result that the "evidence should not have been admitted"); *United States v. Vasquez*, 840 F. Supp. 2d 564, 575-76 (E.D.N.Y. 2011) (excluding evidence where the danger of unfair prejudice exceeded any probative value of the evidence at issue because "the jury would be left to speculate regarding the circumstances surrounding" the evidence, "which could result in a side trial diverting the jury's attention from the relevant issues").

[10]    *Accord United States v. Graziano*, 558 F. Supp. 2d 304, 323-24 (E.D.N.Y. 2008) (excluding the government's evidence of conduct unrelated to the charges against the defendant because the introduction of such evidence "would lead to a 'mini-trial' concerning the nature and scope" of the unrelated conduct).

believe that such processes are nefarious or illegal when just the ***opposite*** is true.  These

processes are used by traders to avoid displaying the source, price, and size of trading orders

until the trades actually take place.  They are routinely used by many institutional investors

(including SAC) to prevent other investors, both inside and outside of a firm, from trading ahead

of large changes in position.  (*See supra* at 5-6.)  *Accord United States v. Aleynikov*, 737 F. Supp.

2d 173, 175 (S.D.N.Y. 2010) (noting that various banks and financial institutions use algorithms

to execute trades rapidly).

      Notably, all of these trading practices have been sanctioned by the SEC: "[D]ark liquidity

(that is, trading interest that is not included in the consolidated quotation data) is not a new

phenomenon" – in fact, the manual trading floors of the exchanges have long served as a source

of dark liquidity.  *Regulation of Non-Public Trading Interest*, Release No. 34-60997, SEC

Docket 472, 2009 WL 3802537, at *2 (proposed Nov. 13, 2009) (to be codified at 17 C.F.R. pt.

242).  The SEC has specifically recognized that "[m]arket participants that need to trade in large

size, such as institutional investors, ***always*** have sought ways to minimize their transaction costs

by completing their trades without prematurely revealing the full extent of their trading interest

to the broader market."  *Id.* (emphasis added).  Indeed, the SEC "has ***never*** sought to prohibit

trading venues from offering dark liquidity services to investors."  *Id.* (emphasis added).  That

SAC used such processes to execute its trades has no bearing on why SAC made the trades, but it

could "lure the fact finder into declaring guilt on a ground different from proof specific to the

offense charged."  *United States v. Old Chief*, 519 U.S. 172, 180 (1997).

      Accordingly, evidence of SAC's decisions about whether to short Elan and Wyeth

securities and its process for selling those securities would be unfairly prejudicial to

Mr. Martoma and confusing to the jury.  This Court should preclude the Government from

introducing any evidence about, or mentioning at any time during trial, SAC's decisions to

(1) short Elan and Wyeth securities or (2) use "algos" or algorithmic trading platforms, "dark

pools," or accounts with "limited viewing access" to sell Elan and Wyeth securities.  Indeed, it

would be disingenuous and misleading for the Government to refer to those decisions when the

Government well knows that there is ***no*** evidence linking Mr. Martoma to them.

### III.  ALTERNATIVELY, MR. MARTOMA SHOULD BE ALLOWED TO INTRODUCE SELECTED PORTIONS OF MR. COHEN'S SEC TESTIMONY.

If this Court does not preclude the Government from introducing any evidence about, or

mentioning at any time during trial, SAC's decision to short Elan and Wyeth securities and its

decisions about the process for selling those securities, then Mr. Martoma should be allowed to

introduce selected portions of Mr. Cohen's SEC deposition testimony that Mr. Cohen and

Mr. Villhauer (not Mr. Martoma) made those decisions.  Such testimony is admissible for the

following separate and independent reasons.

***First***, because it is anticipated that Mr. Cohen will invoke his Constitutional rights and be

unavailable as a witness, selected portions of his testimony will be admissible under Federal

Rule of Evidence 804(b)(1).  *See United States v. Dolah*, 245 F.3d 98, 102 (2d Cir. 2001),

*abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 64 (2004).  Although the

Second Circuit has yet to address the question of whether an unavailable witness's prior SEC

deposition testimony is admissible in a related criminal case, the Seventh Circuit recently held

under strikingly similar circumstances that deposition testimony taken by an executive branch

agency (there, the CFTC) is ***admissible*** under Rule 804(b)(1) when the witness is unavailable in

a federal criminal case brought by the Government because those executive branch agencies are

the same party for purposes of Rule 804(b)(1) and share similar motives to develop the testimony

at issue.  *Sklena*, 692 F.3d at 730-33 (reversing for abuse of discretion the trial court's decision

that "the CFTC and the U.S. Department of Justice may not be considered the same party" and

"the CFTC and the Justice Department did not share 'similar motives' to develop [the witness]'s

testimony" (alteration omitted)).[11]

The Seventh Circuit's holding is just as applicable here.  The Government and the SEC as

executive branch agencies are also the same party.  They play closely coordinated roles on behalf

of the United States in the enforcement of insider trading laws.[12]  They have coordinated closely

in this case by sharing information with each other, relying on the same witness interviews and

deposition testimony (including Mr. Cohen's testimony), and filing substantively identical

complaints (one day apart) that brought the same charges for violations of Section 10(b) and

Rule 10b-5 based on the same allegations.[13]  The Government also had an opportunity and a

motive similar to the SEC's motive to develop the testimony of Mr. Cohen that Mr. Martoma

seeks to admit.  Both the Government and the SEC were investigating Mr. Martoma's and

Mr. Cohen's trading in Elan and Wyeth securities to take enforcement action; and both alleged

---

[11]  The question of whether an unavailable witness's prior SEC deposition testimony is admissible in a related criminal case is currently pending before the Second Circuit in *United States v. Whitman*, No. 13-491-cr (2d Cir.), where it was fully briefed on August 15, 2013, and argued on November 4, 2013.

[12]  For example, the SEC's Enforcement Manual expressly encourages SEC attorneys to "work cooperatively with criminal authorities, to share information, and to coordinate their investigations with parallel criminal investigations when appropriate."  *SEC Enforcement Manual* § 5.2.1 (2011), Strassberg Decl. No. 3, Ex. C. And the Government itself has conceded in other criminal cases that it is the same "party" as the SEC for purposes of determining the admissibility of prior SEC deposition testimony under Rule 804(b)(1).  *See United States v. Hatfield*, No. 06-CR-0550 (JS), 2010 WL 2545828, at *2 (E.D.N.Y. June 21, 2010) (admitting a witness's SEC testimony in a criminal case); *United States v. Skilling*, No. H-04-025, 2006 WL 1155566, at *1 (S.D. Tex. Apr. 27, 2006) (the Government in a criminal prosecution did not dispute that it "was a party to the prior criminal trials [and] SEC proceedings at which the declarants gave the former testimony").

[13]  From the beginning, the Government and the SEC have coordinated their investigation of Mr. Martoma.  For example, as early as February 2, 2012, Government attorneys and SEC attorneys jointly interviewed Dr. Sidney Gilman, the Government's key witness, as part of their investigation.   That interview covered many of the topics that are the subject of the Government's and the SEC's charges against Mr. Martoma.   As another example, the criminal complaint against Mr. Martoma makes abundantly clear that the Government expressly relied on documents and testimony received from the SEC – including the SEC deposition testimony of Mr. Cohen  – in charging Mr. Martoma: "The information contained in this affidavit is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources of information and agents, including, but not limited to: (a) witness interviews and ***sworn testimony***; (b) ***information received from the Securities & Exchange Commission ("SEC")***; . . ."  (Compl. ¶ 7 (emphasis added).)

and needed to prove the same allegations to support the same charges. *See Sklena*, 692 F.3d at 732; *accord Skilling*, 2006 WL 1155566, at *8, 15. In short, the Government and the SEC "had essentially the same incentive" to develop Mr. Cohen's factual testimony concerning the events surrounding SAC's decision to short Elan and Wyeth securities and its decisions about the process for selling those securities and, therefore, the selected portions of Mr. Cohen's deposition testimony are admissible under Rule 804(b)(1). *Sklena*, 692 F.3d at 732-33.

   *Second*, the selected portions of Mr. Cohen's deposition testimony are admissible under Federal Rule of Evidence 807. Deposition testimony contains the requisite "circumstantial guarantees of trustworthiness" for admission under Rule 807, as courts both within and outside of this Circuit have repeatedly held. *See, e.g.*, *SEC v. Curshen*, 372 F. App'x 872, 878 (10th Cir. 2010) ("[A third party's] deposition had circumstantial guarantees of trustworthiness as it was taken under oath subject to penalty of perjury.")[14] Mr. Cohen's selected testimony bears on material facts by rebutting any suggestion that Mr. Martoma was involved in SAC's decision to short Elan and Wyeth securities and/or its decisions about the process for selling those securities. (*See supra* at 5-6.) Where witnesses are unavailable, their prior sworn testimony is the most probative evidence available, as courts have found time and again. *See, e.g.*, *Lopez v. Miller*, 915 F. Supp. 2d 373, 424 (E.D.N.Y. 2013) (holding that sworn affidavits were "more probative than

---

[14]   *Accord Taylor v. Fairfield Resorts, Inc./Wyndham*, No. 2:07-cr-01602-RCJ-GWF, 2009 WL 5195973, at *6 (D. Nev. Dec. 23, 2009) (holding that deposition testimony is admissible under Rule 807 because "[t]his is not a recollection of offhand comments or a casual conversation, but of a deposition in a federal lawsuit"); *United States v. Kimoto*, No. 07-CR-300089-MJR, 2008 WL 4545342, at *4 (S.D. Ill. Oct. 10, 2008) ("[T]he Court found that [a third party's] deposition was taken under oath and, therefore, had 'equivalent circumstantial guarantees of trustworthiness.'"); *Virola v. XO Commc'ns, Inc.*, No. 05-CV-5056 (JG) (RER), 2008 WL 1766601, at *16 (E.D.N.Y. Apr. 15, 2008) (holding that deposition testimony was admissible under Rule 807); *Patsy's Italian Rest., Inc. v. Banas*, Nos. 06-CV-0729 (RER), 06-CV-5857 (RER), 2008 WL 850151, at *2 (E.D.N.Y. Mar. 26, 2008) ("While the portions of the deposition containing purported statements of Mr. Lancieri and [the deponent's] father are hearsay, they are admissible pursuant to Federal Rule of Evidence 807."); *Stryker Corp. v. XL Ins. Am.*, No. 4:01-CV-157, 2007 WL 172401, at *4 (W.D. Mich. Jan. 18, 2007) (holding that deposition testimony "offers guarantees of trustworthiness equivalent to hearsay admitted under Rule 804").

other available evidence because both [declarants] are unavailable to testify").[15]  Admitting

Mr. Cohen's selected testimony is consistent with the purposes of the Federal Rules of Evidence

and advances the interests of justice by assisting the jury in ascertaining the truth and protecting

the rights of Mr. Martoma.  *See United States v. Detrich*, 865 F.2d 17, 21-22 (2d Cir. 1988)

(excluding evidence "probative on the trial's central issue, and lend[ing] support to the theory of

the defense" was reversible error).[16]  Accordingly, the selected portions of Mr. Cohen's

deposition testimony satisfy Rule 807's requirements for admission.

Therefore, if this Court does not preclude the Government from introducing evidence, or

mentioning at any time during trial, the manner in which SAC sold Elan and Wyeth securities,

then Mr. Martoma should be allowed to introduce selected portions of Mr. Cohen's SEC

testimony that Mr. Cohen and Mr. Villhauer (not Mr. Martoma) made SAC's decision to short

Elan and Wyeth securities and its decisions about the process for selling those securities.

## CONCLUSION

For the foregoing reasons, Mr. Martoma respectfully requests that this Court grant his

motion to exclude evidence of the manner in which SAC sold Elan and Wyeth securities and

---

[15]  *Accord Virola*, 2008 WL 1766601, at *16 (deposition testimony "would be more probative . . . than other
reasonably available evidence if the plaintiffs cannot find other evidence"); *Banas*, 2008 WL 850151, at *2
(portions of depositions are admissible because they "are offered to prove material facts, . . . are more probative
on the relevant points than other evidence, and the interests of justice will be served by their admission");
*Skilling*, 2006 WL 1155566, at *8 n.42 (excerpts of a witness's prior trial testimony "are admissible under
Federal Rule of Evidence 807 because they were given under oath, they concern material facts on which [the
witness] had first-hand personal knowledge, they are more probative on the points for which defendants seek
their admission than other evidence that defendants could procure through reasonable efforts, and the interests
of justice will best be served by their admission into evidence"); *Stryker Corp.*, 2007 WL 172401, at *4
(holding that deposition testimony "provides the best overall representation of [the witness'] testimony, given
that she is unavailable to testify at trial"); *In re Mendez*, No. 05-62634-A-7, 2008 WL 597280, at *8 (Bankr.
E.D. Cal. Feb. 29, 2008) (holding that prior testimony under oath is "more probative on the point for which it is
offered than any other evidence which the proponent can procure through reasonable efforts because the
[declarant] did not appear to testify at trial").

[16]  *Accord Mendez v. Artuz*, No. 98 Civ. 2652, 2000 WL 722613, at *15 (S.D.N.Y. June 6, 2000) ("Moreover,
where the statement forms a critical part of the defense, due process concerns may tip the scales in favor of
admission." (internal quotation marks omitted)).

preclude the Government from introducing any evidence about, or mentioning at any time during

trial (including in its opening statement and closing argument), SAC's decisions to (1) short Elan

and Wyeth securities or (2) use "algos" or algorithmic trading platforms, "dark pools," and

accounts with "limited viewing access" to sell Elan and Wyeth securities.  Alternatively, this

Court should admit selected portions of Mr. Cohen's SEC testimony that he and Mr. Villhauer

(not Mr. Martoma) made those decisions.

Dated:  December 6, 2013                Respectfully submitted,
      New York, NY

GOODWIN PROCTER LLP

By: /s/ Richard M. Strassberg
     Richard M. Strassberg (RS5141)
      (rstrassberg@goodwinprocter.com)
     John O. Farley (JF4402)
      (jfarley@goodwinprocter.com)
     Daniel Roeser (DR2380)
      (droeser@goodwinprocter.com)

     The New York Times Building
     620 Eighth Avenue
     New York, New York 10018
     Telephone:  (212) 813-8800

     Roberto M. Braceras (RB2470)
      (rbraceras@goodwinprocter.com)
     53 State Street
     Boston, Massachusetts 02109
     Telephone:  (617) 570-1000

     *Attorneys for Defendant Mathew Martoma*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2013, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.  I also certify that I have caused copies of the aforementioned document to be served via first class mail, postage prepaid, upon all non-CM/ECF participants.

/s/ Richard M. Strassberg
Richard M. Strassberg (RS5141)