UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

MATHEW MARTOMA,

               Defendant.

No. 12-cr-00973 (PGG)
ECF Case

**DEFENDANT MATHEW MARTOMA'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO EXCLUDE EVIDENCE OF OTHER SAC ACTIONS,
SETTLEMENTS, AND PLEA AGREEMENTS**

**(MR. MARTOMA'S MOTION *IN LIMINE* NO. 4)**

GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
John O. Farley (JF4402)
Daniel P. Roeser (DR2380)

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Roberto M. Braceras (RB2470)
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Defendant Mathew Martoma*

December 6, 2013

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND .....................................................................................2

ARGUMENT ...........................................................................................................7

    I.     EVIDENCE OF SAC ACTIONS, SAC SETTLEMENTS, AND SAC
           PLEA AGREEMENTS IS INADMISSIBLE...........................................8

    II.    EVIDENCE OF SAC ACTIONS, SAC SETTLEMENTS, AND SAC
           PLEA AGREEMENTS IS UNFAIRLY PREJUDICIAL AND
           CONFUSING.....................................................................................12

CONCLUSION........................................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
  No. 08 Civ. 7508, 2013 WL 1155420 (S.D.N.Y Mar. 20, 2013) ...........................................13

*Arlio v. Lively*,
  474 F.3d 46 (2d Cir. 2007)...............................................................................................9, 15

*CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Assocs.*,
  411 B.R. 591 (Bankr. N.D. Ill. 2009) ...................................................................................15

*Highland Capital Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) ...................................................................................16

*In re Blech Securities Litigation*,
  No. 94 Civ. 7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ................................9-10, 11

*In re LIBOR–Based Fin. Instruments Antitrust Litig.*,
  No. 11 MD 2262, 2013 WL 4504769 (S.D.N.Y. Aug. 23, 2013) ...........................................10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  218 F.R.D. 76 (S.D.N.Y. 2003) ............................................................................................11

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976)..................................................................................................10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  No. 12 Civ. 3723, 2013 WL 1294668 (S.D.N.Y. Mar. 28, 2013) ..........................................11

*Manko v. United States*,
  Nos. 95 Civ. 1611, 96 Civ. 3667, 1998 WL 391129 (S.D.N.Y. July 13, 1998) ...............10, 13

*McGhee v. Joutras*,
  No. 94 C 7052, 1996 WL 706919 (N.D. Ill. Dec. 5, 1996) ...................................................10

*Park W. Radiology v. CareCore Nat'l LLC*,
  675 F. Supp. 2d 314 (S.D.N.Y. 2009) ...................................................................................13

*Sabratek Liquidating LLC v. KPMG LLP*,
  No. 01 C 9582, 2003 WL 22715820 (N.D. Ill. Nov. 18, 2003) .............................................15

*SEC v. Citigroup Global Markets Inc.*,
  827 F. Supp. 2d 328 (S.D.N.Y. 2011) ...................................................................................10

ii

*Shahzad v. H.J. Meyers & Co., Inc.*,
   No. 95 Civ. 6196, 1997 WL 47817 (S.D.N.Y. Feb. 6, 1997) .................................10

*Stevenson v. Hearst Consol. Publ'ns, Inc.*,
   214 F.2d 902 (2d Cir. 1954) ..........................................................................8, 12

*United States v. Cook*,
   557 F.2d 1149 (5th Cir. 1977) ................................................................................15

*United States v. Corr*,
   543 F.2d 1042 (2d Cir. 1976) ................................................................................12

*United States  v. Davis*,
   No. 09-343, 2009 WL 3646459 (E.D. Pa. Nov. 4, 2009) ................................15, 16

*United States v. DeCicco*,
   435 F.2d 478 (2d Cir. 1970) ....................................................................................9

*United States v. Ferguson*,
   246 F.R.D. 107 (D. Conn. 2007) ............................................................................15

*United States v. Fitzgerald*,
   279 Fed. App'x 444 (9th Cir. 2008) .........................................................................9

*United States v. Gomez*,
   617 F.3d 88 (2d Cir. 2010) ....................................................................................12

*United States v. Kaplan*,
   490 F.3d 110 (2d Cir. 2007) ..............................................................................8, 12

*United States v. Marcus Schloss & Co., Inc.*,
   710 F. Supp. 944 (S.D.N.Y. 1989) ........................................................................11

*United States v. Mercado*,
   573 F.3d 138 (2d Cir. 2009) ..................................................................................14

*United States v. Nekritin*,
   No. 10-CR-491, 2011 WL 2462744 (E.D.N.Y. June 17, 2011) .............................13

*United States v. Polasek*,
   162 F.3d 878 (5th Cir. 1998) ..............................................................................9, 15

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006) ..................................................................................13

*United States v. Rubin/Chambers, Dunhill Ins. Servs.*,
   831 F. Supp. 2d 779 (S.D.N.Y. 2011) ...................................................................10

*United States v. Wassner*,
141 F.R.D. 399 (S.D.N.Y. 1992) .......................................................................................15

**OTHER AUTHORITIES**

FED. R. EVID. 401 ..............................................................................................................1

FED. R. EVID. 402 ..............................................................................................................1

FED. R. EVID. 403 ...................................................................................................... passim

FED. R. EVID. 801 .........................................................................................................1, 12

FED. R. EVID. 802 .........................................................................................................1, 12

2 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Federal Evidence*,
§ 410.08[1] (Joseph M. McLaughlin ed., 2d ed. 2013)........................................... 12, 16

Pursuant to Federal Rules of Evidence 401, 402, 403, 801, and 802, Defendant Mathew Martoma respectfully submits this memorandum of law in support of his motion to exclude evidence of other SAC actions, settlements, and plea agreements.  Specifically, Mr. Martoma seeks an order excluding from admission at trial:  (1) any evidence concerning the filing of indictments or civil or criminal complaints against SAC entities[1] or other related individuals (collectively, the "SAC Actions");[2] (2) any evidence concerning settlements by any SAC entities or other related individuals (collectively, the "SAC Settlements");[3] and (3) any evidence concerning plea agreements and/or allocutions by any SAC entities or other related individuals (collectively, the "SAC Plea Agreements").[4]

## PRELIMINARY STATEMENT

The Government may not seek to prove its case against Mr. Martoma through other SAC Actions, SAC Settlements, and SAC Plea Agreements.  For seven years, SAC and its founder

---

[1]   For the purpose of this Motion, the SAC entities are: CR Intrinsic Investors, LLC; CR Intrinsic Investments, LLC; S.A.C. Capital Advisors, LLC; S.A.C. Capital Associates, LLC; S.A.C. International Equities, LLC; S.A.C. Select Fund, LLC; Sigma Capital Management, LLC; and Sigma Capital Associates, LLC (collectively, "SAC").

[2]   This Motion seeks to exclude any and all evidence concerning the allegations contained in SAC Actions, including but not limited to: (1) *SEC v. CR Intrinsic Investors, L.L.C., et al.*, No. 1:12-cv-08466 (S.D.N.Y.); (2) *SEC v. Sigma Capital Management, LLC, et al.*, No. 1:13-cv-01740 (S.D.N.Y.); (3) *United States v. Newman, et al.*, No. 1:12-cr-00121 (S.D.N.Y.), and the related consolidated actions; (4) *In the Matter of Steven A. Cohen*, File No. 3-15382 (S.E.C.); (5) *United States v. SAC Capital Advisors, L.P., et al.*, No. 1:13-cr-541 (S.D.N.Y.); and (6) *United States v. SAC Capital Advisors, L.P., et al.*, No. 1:13-cv-5182 (S.D.N.Y.).

[3]   This Motion seeks to exclude any and all evidence concerning SAC Settlements, including but not limited to: (1) the SEC's settlement with SAC entities in *SEC v. Sigma Capital Management, LLC, et al.*, No. 1:13-cv-01740 (S.D.N.Y.), which was approved by Judge Harold Baer, Jr. on March 28, 2013; (2) the SEC's settlement with SAC entities in *SEC v. CR Intrinsic Investors, L.L.C., et al.*, No. 12-cv-8466 (S.D.N.Y.), which was conditionally approved by Judge Victor Marrero on April 16, 2013; and (3) the U.S. Attorney's Office's settlement with SAC entities and other individuals in conjunction with the related actions, *United States v. S.A.C. Capital Advisors, L.P., et al.*, No. 1:13-cr-541 (S.D.N.Y.), and *United States v. SAC Capital Advisors, L.P., et al.*, No. 1:13-cv-5182 (S.D.N.Y.), which was approved by Judge Richard J. Sullivan on November 6, 2013.  Judge Laura Taylor Swain deferred acceptance of this plea on November 8, 2013.

[4]   This Motion seeks to exclude any and all evidence concerning SAC Plea Agreements, including but not limited to: (1) the plea agreements and/or allocutions in *United States v. Newman, et al.*, No. 1:12-cr-00121 (S.D.N.Y.), and the related consolidated actions; (2) the plea agreement and/or allocution in *United States v. SAC Capital Advisors, L.P., et al.*, No. 1:13-cr-541 (S.D.N.Y.); and (3) the plea agreements and/or allocutions in criminal proceedings against individual SAC employees who pleaded guilty, including but not limited to Wes Wang, Richard Choo-Beng Lee, Jon Horvath, Noah Freeman, Donald Longueuil, and Richard Lee.

Steven Cohen have been the subject of intense investigation as part of a probe by the U.S. Attorney's Office and the Securities and Exchange Commission ("SEC"). The investigation has led to several high-profile civil and criminal actions against various SAC entities and related individuals, resulting in several settlements and plea agreements.[5]   None of those actions, however, has any bearing on this case, and the Government  may not use them to influence the jury.  Indeed, such evidence – which consists of allegations against SAC entities and other individuals (not Mr. Martoma), agreements by SAC entities and other individuals (not Mr. Martoma), and admissions from SAC entities and other individuals (not Mr. Martoma) – is plainly irrelevant to the determination of ***Mr. Martoma's*** guilt or innocence.  Moreover, there can be no doubt that such evidence would unfairly prejudice Mr. Martoma and confuse the jury, which would be forced to disentangle the allegations and admissions concerning SAC entities and other individuals from the ***unproven*** charges against Mr. Martoma that are the only proper subject of this trial.  Accordingly, any evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements should be excluded both because it is inadmissible and because it is unfairly prejudicial to Mr. Martoma and confusing to the jury.

## FACTUAL BACKGROUND

In addition to the charges against Mr. Martoma, the government has filed several civil and criminal actions against various SAC entities and other individuals as a result of a multi-year probe by the U.S. Attorney's Office and the SEC into SAC and Mr. Cohen.  None of those actions has any bearing on the proof of the allegations in this case.  For example:

---

[5]   Peter Lattman, *Prominent Doctor Said to be Tied to Insider Trading Case at SAC*, N.Y TIMES DEALBOOK, Sept. 5, 2013, Declaration of Richard M. Strassberg in Support of Defendant Mathew Martoma's Motion in Limine to Exclude Evidence of Other SAC Actions, Settlements, and Plea Agreements ("Strassberg Decl. No. 4"), Ex. A ("Ten former SAC employees have either been charged with or implicated in illegal trading while at the fund; of those, five have admitted guilt.").

### A.   *United States v. Newman, et al.*, No. 1:12-cr-00121 (S.D.N.Y.)

On February 7, 2012, the U.S. Attorney's Office brought criminal charges against four individuals – Todd Newman, Anthony Chiasson, Jon Horvath, and Danny Kuo – alleging that they traded securities of technology companies Dell, Inc. ("Dell") and Nvidia Corporation ("Nvidia") based on material, nonpublic information about the companies' quarterly financial results.[6]  Mr. Kuo pleaded guilty on April 13, 2012.[7]  Mr. Horvath (the only SAC employee charged) pleaded guilty and agreed to cooperate with the U.S. Attorney's Office's ongoing investigation on September 28, 2012.[8]  Mr. Newman and Mr. Chiasson were convicted after trial of securities fraud and conspiracy to commit securities fraud on December 17, 2012.[9]  On March 29, 2013, the U.S. Attorney's Office filed a second superseding indictment against another individual, Michael Steinberg, charging that he also traded Dell and Nvidia securities based on the same material, nonpublic information.[10]  Mr. Steinberg's criminal trial began on November 19, 2013, and is ongoing as of the date of this submission.  The charged conduct in these other cases is completely unrelated to the conduct at issue here.

### B.   *SEC v. CR Intrinsic Investors, L.L.C., et al.*, No. 1:12-cv-08466 (S.D.N.Y.)

On November 20, 2012, the SEC brought a civil action, *SEC v. CR Intrinsic Investors, L.L.C., et al.*, No. 1:12-cv-08466 (S.D.N.Y. Nov. 20, 2012) ("*CR Intrinsic*"), against defendants

---

[6]   *See* Indictment, *United States v. Newman, et al.*, No. 1:12-cr-00121 (S.D.N.Y. Feb. 7, 2012) ("*Newman*"), ECF No. 26.

[7]   *See* Minute Entry Proceedings from Apr. 13, 2012, *Newman*; Press Release, FBI, Former Research Analyst at Investment Firm Pleads Guilty in Manhattan Federal Court to Insider Trading Charges (Apr. 13, 2012), Strassberg Decl. No. 4, Ex. B.

[8]   *See* Minute Entry Proceedings from Sept. 28, 2012, *Newman* ("Government is to notify the Court by letter whether Defendant[']s cooperation is complete and whether he can proceed to sentencing.").

[9]   Peter Lattman & William Alden, *2 Former Hedge Fund Managers Found Guilty in Insider Trading Case*, N.Y. TIMES DEALBOOK, Dec. 17, 2012, Strassberg Decl. No. 4, Ex. C.

[10]   *See* Superseding Indictment ¶¶ 7-8, *United States v. Steinberg*, No. 1:12-cr-00121 (S.D.N.Y. Mar. 29, 2013), ECF No. 230.

CR Intrinsic Investors, LLC ("CR Intrinsic"), Mr. Martoma, and Dr. Gilman.  CR Intrinsic is an affiliate of SAC.  The SEC alleged that CR Intrinsic, Dr. Gilman, and Mr. Martoma participated in an insider trading scheme that caused SAC to generate approximately $276 million in profits or avoided losses.[11]  Dr. Gilman agreed to a consent judgment on November 21, 2012.[12]  SAC agreed to a settlement on March 15, 2013, which Judge Victor Marrero conditionally approved on April 16, 2013.[13]  In so doing, SAC agreed to certain civil penalties "[w]ithout admitting or denying the allegations of the Complaint."[14]  The claims against Mr. Martoma are pending.

 **C.**  ***SEC v. Sigma Capital Management, LLC, et al.*, No. 1:13-cv-01740 (S.D.N.Y.)**

 On March 15, 2013, the SEC brought a civil action, *SEC v. Sigma Capital Management, LLC, et al.*, No. 1:13-cv-01740 (S.D.N.Y. Mar. 15, 2013) ("*Sigma Capital*"), against Sigma Capital (an affiliate of SAC).  The SEC alleged that Sigma Capital traded Dell and Nvidia securities based on material, nonpublic information about both companies' quarterly financial results.[15]  Judge Baer approved a series of settlements by SAC affiliates on March 28, 2013, all of which "consented to entry of [the] Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from th[e] Final Judgment."[16]  The allegations made and settled in the *Sigma Capital* action were wholly unrelated to Mr. Martoma.

---

[11] Complaint ¶¶ 1-4, *SEC v. CR Intrinsic Investors, L.L.C., et al.*, No. 1:12-cv-08466 (S.D.N.Y. Nov. 20, 2012) ("*CR Intrinsic*"), ECF No. 1.

[12] *See* Judgment as to Defendant Dr. Sidney Gilman, *CR Intrinsic* (Nov. 21, 2012), ECF No. 3.

[13] *See* Decision and Order Approving Final Judgment as to CR Intrinsic at 2-3, 33-34, *CR Intrinsic*, (Apr. 16, 2013), ECF No. 33.

[14] *Id.* at 2.

[15] Complaint, *SEC v. Sigma Capital Management, LLC, et al.*, No. 1:13-cv-01740 (S.D.N.Y. Mar. 15, 2013). ECF No. 1 ("*Sigma Capital*").  The Complaint also implicated several individuals – both SAC employees and members of other investment firms – as participating in the insider trading.  *Id.* at 2, 3, 6, 7, 14-21.

[16] *See, e.g.*, Final Judgment as to Defendant Sigma Capital Management, LLC ¶ 1, *Sigma Capital* (Mar. 29, 2013), ECF No. 13.

The *Sigma Capital* action was subsequently consolidated with two related actions, *SEC v. Adondakis, et al.*, No. 2:12-cv-00409 (S.D.N.Y.) ("*Adondakis*"), and *SEC v. Steinberg*, No. 1:13-cv-02082 (S.D.N.Y.) ("*Steinberg*"), both of which made substantially similar allegations concerning SAC employees and other entities and individuals.[17]  The *Adondakis* action named Diamondback Capital Management, LLC and Level Global Investors, L.P., as well as certain individuals including SAC employee Jon Horvath.[18]  Judgment was entered against Mr. Horvath on March 8, 2013.[19]  The *Steinberg* action named SAC employee Michael Steinberg.[20]  That case is ongoing.  The allegations made in the *Adondakis* and *Steinberg* actions were also wholly unrelated to Mr. Martoma.

### D. *In the Matter of Steven A. Cohen,* File No. 3-15382 (S.E.C.)

On July 19, 2013, the SEC began an administrative proceeding against Mr. Cohen, alleging that he ignored "red flags" and allowed Mr. Steinberg and Mr. Martoma to execute trades based on material, nonpublic information without taking "reasonable steps to investigate and prevent such violations."[21]  The SEC further alleged that SAC earned profits and avoided losses of more than $275 million from such trades.[22]  On August 8, 2013, Chief Administrative

---

[17]  *See* Complaint, *SEC v. Adondakis, et al.*, No. 2:12-cv-00409 (S.D.N.Y. Jan. 18, 2012) ("*Adondakis*"), ECF No.1; Complaint, *SEC v. Steinberg*, No. 1:13-cv-02082 (S.D.N.Y. Mar. 29, 2013) ("*Steinberg*"), ECF No. 1.

[18]  *See* Complaint at 1, *Adondakis* (Jan. 18, 2012), ECF No. 1.  Although Diamondback Capital Management, LLC and Level Global Investors, L.P. are not affiliated with SAC, they are often linked to SAC because they were founded by former SAC employees.  *See, e.g.*, Peter Lattman & William Alden, *2 Former Hedge Fund Managers Found Guilty in Insider Trading Case*, N.Y. TIMES DEALBOOK, Dec. 17, 2012, Strassberg Decl. No. 4, Ex. C ("Level Global and Diamondback were founded by former employees of SAC Capital Advisors, the $14 billion hedge fund run by Steven A. Cohen that has become a focus of the government's insider trading inquiry.").

[19]  *See* Judgment as to Defendant Jon Horvath, *Adondakis* (Mar. 8, 2013), ECF No. 80.

[20]  *See* Complaint, *Steinberg* (Mar. 29, 2013), ECF No. 1.

[21]  *See* Corrected Order Instituting Administrative Proceedings Pursuant to Section 203(f) of the Investment Advisers Act of 1940 and Notice of Hearing ¶ 3, *In the Matter of Steven A. Cohen,* File No. 3-15382 (July 19, 2013) (the "*SEC Administrative Proceeding*").

[22]  *Id.* ¶ 4.

5

Law Judge Brenda P. Murray stayed the administrative proceeding pending the resolution of the criminal proceedings against Mr. Steinberg and Mr. Martoma.[23]

### E.    *United States v. SAC Capital Advisors, L.P., et al.,* **No. 1:13-cr-541 (S.D.N.Y.)**

On July 25, 2013, the U.S. Attorney's Office filed an indictment against a group of SAC entities, alleging insider trading "[a]t various times between in or about 1999 through at least in or about 2010" by numerous SAC employees.[24]   The Indictment named seven SAC employees who have been charged with (and, in some instances, pleaded guilty to) insider trading related to technology companies: Wes Wang,[25] Richard Choo-Beng Lee,[26] Jon Horvath,[27] Michael Steinberg,[28] Noah Freeman,[29] Donald Longueuil,[30] and Richard Lee.[31]   In addition, the

---

[23]   *See* Order on U.S. Attorney's Application to Intervene and Motion to Stay Proceeding, *SEC Administrative Proceeding* (Aug. 8, 2013).

[24]   *See* Indictment ¶ 4, *United States v. SAC Capital Advisors, L.P., et al.*, No. 1:13-cr-541 (S.D.N.Y. July 25, 2013).   The SAC entities include S.A.C. Capital Advisors, L.P.; S.A.C. Capital Advisors LLC; CR Intrinsic Investors, LLC; and Sigma Capital Management, LLC.

[25]   Mr. Wang was charged with trading on inside information related to various technology companies, including Taiwan Semiconductor Manufacturing Company, Cisco Systems, Inc., Broadcom Corporation, eBay, Inc., Cypress Semiconductor Corporation, Polycom, Inc., Q Logic Corporation, and Cirrus Logic Inc.   Mr. Wang pleaded guilty to two counts of conspiracy to commit securities fraud on July 13, 2013.   *Id.* ¶ 14(a).

[26]   Mr. Choo-Beng Lee was charged with trading on inside information related to various technology companies, including Intel Corporation, Advance Micro Devices, Inc., and Altera Corporation.   Mr. Choo-Beng Lee pleaded guilty to conspiracy to commit securities fraud and wire fraud on October 13, 2009.   *Id.* ¶ 14(b).

[27]   Mr. Horvath was charged with trading on inside information related to technology companies Dell and Nvidia.   Mr. Horvath pleaded guilty to conspiracy to commit securities fraud and securities fraud on September 28, 2012.   *Id.* ¶ 14(c).

[28]   Mr. Steinberg was charged with trading on inside information related to technology companies Dell and Nvidia.   The charges are still pending.   *Id.* ¶ 14(c).

[29]   Mr. Freeman was charged with trading on inside information related to various technology companies, including Research in Motion, Ltd., Nvidia, Marvell Technology Group, Ltd., Avnet, Inc., Fairchild Semiconductor Communications, Inc., Broadcom, and Dell.   Mr. Freeman pleaded guilty to conspiracy to commit securities fraud and securities fraud on February 7, 2011.   *Id.* ¶ 14(d).

[30]   Mr. Longueuil was charged with trading on inside information related to technology companies Research in Motion, Ltd., Nvidia, Marvell Technology Group, Ltd., Avnet, Inc., Fairchild Semiconductor Communications, Inc., Atheros, Broadcom, and Dell.   Mr. Longueuil pleaded guilty to conspiracy to commit securities fraud and securities fraud on April 28, 2011.   *Id.* ¶ 14(e).

[31]   Mr. Lee was charged with trading on inside information related to various securities, including Yahoo! Inc. and 3Com Corporation.   Mr. Lee pleaded guilty to conspiracy to commit securities fraud and securities fraud on July 23, 2013.   *Id.* ¶ 14(g).

indictment referenced the criminal proceeding pending against Mr. Martoma.[32]   On July 25, 2013, the U.S. Attorney's Office also filed a simultaneous civil action seeking forfeiture of all right, title, and interest in certain property by SAC entities named in the criminal action.[33]

On November 1, 2013, the SAC entities settled with the U.S. Attorney's Office and the SEC in a global agreement that resolved both the criminal and civil actions.  The SAC entities agreed to plead guilty to all counts of the indictment with which they were charged in the criminal action and to pay certain penalties.[34]   On November 6, 2013, Judge Sullivan issued an order approving the terms of the civil settlement.[35]   On November 8, 2013, the SAC entities entered their pleas before Judge Swain pursuant to the terms of the agreement, and Judge Swain deferred acceptance of the pleas.[36]   The allegations against Mr. Martoma were ***not even mentioned*** in the civil settlement agreement, criminal plea agreement, or corresponding pleas.

## ARGUMENT

Evidence of other SAC Actions, Settlements, and SAC Plea Agreements must be excluded from trial.  Introducing such evidence would invite the jury to find Mr. Martoma guilty by association with these other cases.   Accordingly, courts have found such evidence inadmissible.  And this Court should do the same – especially where neither SAC nor any other individual has ***ever*** admitted any of the charged conduct in this case.  Moreover, evidence of SAC Actions, SAC Settlements, and/or SAC Plea Agreements is inadmissible hearsay.  Each

---

[32]   *Id.* ¶ 14(f).

[33]   *See* Complaint, *United States v. SAC Capital Advisors, L.P., et al.*, No. 1:13-cv-5182 (S.D.N.Y. July 25, 2013).

[34]   Stipulation and Order of Settlement at 6-7, *United States v. SAC Capital Advisors, L.P., et al.*, No. 1:13-cv-5182 (S.D.N.Y. Nov. 6, 2013).  Specifically, each SAC entity agreed to plead guilty to one count of wire fraud in violation of 18 U.S.C. §§ 2, 1343 and one count of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5 and 240.10b5-2, and 18 U.S.C. § 2.  *See id.* at 2, 6.

[35]   *See id.* at 12.

[36]   *See* Minute Entry Proceedings before Judge Laura Taylor Swain from Nov. 8, 2013, *United States v. SAC Capital Advisors, L.P., et al.*, No. 1:13-cr-541 (S.D.N.Y. Nov. 8, 2013).

charging document, settlement agreement, plea agreement, or allocution consists of out-of-court statements that cannot be offered at trial for the truth of the matter asserted.  It has long since been settled in the Second Circuit that such statements are inadmissible.  *See, e.g.*, *Stevenson v. Hearst Consol. Publ'ns, Inc.*, 214 F.2d 902, 907 (2d Cir. 1954).

In addition, there can be no doubt that introducing evidence of SAC Actions, SAC Settlements, and/or SAC Plea Agreements would undermine the jury's ability to act as an objective fact-finder.  It would be virtually impossible for a jury to put emotions aside and separate the charges against Mr. Martoma from the allegations, settlements, convictions, and pleas involving his former employer and co-workers.  That is the very definition of unfair prejudice.  Further, such evidence would necessitate mini-trials concerning (among other things) the bases for the U.S. Attorney's Office's and the SEC's allegations and the reasons for SAC entities and other individuals to enter into settlements and/or plea agreements.   The jury confusion would be unavoidable.

I.      **EVIDENCE OF SAC ACTIONS, SAC SETTLEMENTS,
         AND SAC PLEA AGREEMENTS IS INADMISSIBLE.**

Evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements is inadmissible because such evidence is both irrelevant to the charged offenses and inadmissible hearsay.

*First*, evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements is irrelevant to the charged offenses against Mr. Martoma.  The SAC Actions, SAC Settlements, and/or SAC Plea Agreements are neither probative of, nor of consequence to, the determination of Mr. Martoma's guilt or innocence.  They should be excluded.  *See, e.g.*, *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007).

Fundamentally, introducing evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements would invite the jury to find Mr. Martoma guilty by association with these other

cases.  Time and again, courts have found such evidence to be inadmissible.  *United States v. Fitzgerald*, 279 Fed. App'x 444, 444-45 (9th Cir. 2008) (upholding a new trial where evidence had been admitted that the defendant's business associate had been convicted of similar fraud even though the jury was cautioned that it "must not infer that the defendant is guilty of participating in criminal conduct merely from the fact that he had a business relationship with another who was guilty of wrongdoing");  *United States v. Polasek*, 162 F.3d 878, 883-85 (5th Cir. 1998) (holding that evidence that the defendant had worked for persons later convicted of fraud was "inadmissible guilt by association evidence").  This Court should do the same.  More specifically:

- Any and all evidence related to the *Sigma Capital, Newman, Adondakis,* and *Steinberg* actions is inadmissible because those actions have absolutely nothing to do with Mr. Martoma and, therefore, no relevance to the charges against him.  *United States v. DeCicco*, 435 F.2d 478, 483 (2d Cir. 1970) ("Little discussion is needed to demonstrate that prior similar acts cannot be used to infer guilty intent of another person who is not shown to be in any way involved in the prior misconduct…..");  *accord Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) ("To open the doors of relevance so wide as to allow a plaintiff to recite facts concerning claims he is ***not*** making or damages he is ***not*** seeking would violate the spirit of the Federal Rules and hamper rather than advance the search for truth." (emphasis in original; internal quotation marks omitted)).

- Any and all evidence related to the *CR Intrinsic* action is inadmissible.  That the SEC chose to initiate a parallel civil proceeding to this criminal action is irrelevant to the determination of the charges against Mr. Martoma.  *See, e.g.*, *In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2003 WL 1610775, at *11 (S.D.N.Y. Mar. 26, 2003) ("The [civil complaint] is not

evidence of anything other than the existence of an accusation."); *SEC v. Citigroup Global Markets Inc.*, 827 F. Supp. 2d 328, 333 (S.D.N.Y. 2011) ("As a matter of law, an allegation that is neither admitted nor denied is simply that, an allegation.  It has no evidentiary value and no collateral estoppel effect.").   The decisions of SAC and Dr. Gilman to settle with the SEC through consent judgments are also irrelevant.  *See, e.g.*, *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893-94 (2d Cir. 1976) ("[A] consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues. . . . can not [sic] be used as evidence in subsequent litigation . . ."); *Manko v. United States*, Nos. 95 Civ. 1611, 96 Civ. 3667, 1998 WL 391129, at *6, *8 (S.D.N.Y. Jul. 13, 1998) (that the IRS settled with the defendants in a parallel civil case did not make it more or less likely that the similar criminal allegations were true), *aff'd*, 63 Fed. App'x 570 (2d Cir. 2003); *McGhee v. Joutras*, No. 94 C 7052, 1996 WL 706919, at *5 (N.D. Ill. Dec. 5, 1996) (excluding evidence of a co-defendant's entry into a consent decree with the SEC, even against the co-defendant himself, because "the impermissible guilt-by-association premise" would create unfair prejudice).[37]

*Importantly*, SAC settled without admitting or denying the allegations of the Complaint,[38] which makes the settlement *even less probative* of Mr. Martoma's guilt (if that is possible).  *See, e.g.*, *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 831 F. Supp. 2d 779, 784 (S.D.N.Y. 2011) (noting that, "in the absence of an admission of guilt, there are many possible explanations for [a

---

[37]   *In re LIBOR–based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, 2013 WL 4504769, at *5 (S.D.N.Y. Aug. 23, 2013) ("The Second Circuit has clearly held that consent judgments . . . are not the result of actual adjudications on the merits. . . ." (citations omitted)); *Shahzad v. H.J. Meyers & Co., Inc.*, No. 95 Civ. 6196, 1997 WL 47817, at *13-14 (S.D.N.Y. Feb. 6, 1997) (striking references to prior consent orders with securities regulators because "[a] consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues . . . cannot be used as evidence in subsequent litigation between that corporation and another party." (citations omitted)).

[38]   Decision and Order Approving Final Judgment as to CR Intrinsic at 2, *CR Intrinsic* (Apr. 16, 2013) ECF No. 33.

defendant] to enter the settlement agreement.").[39]

• Any and all evidence related to the *SEC Administrative Proceeding* is inadmissible. "Second Circuit case law makes it clear that references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003). That the SEC brought the proceeding is evidence of nothing. *See, e.g.*, *In re Blech Sec. Litig.*, 2003 WL 1610775, at *11 ("As the Second Circuit held, a complaint is not admissible to prove the truth of its contents.").

• Any and all evidence related to the *SAC Capital Advisors* civil and criminal actions, settlement, and plea is inadmissible. Virtually all of the allegations against SAC concern different trades by different employees in different stocks in a different sector of the economy. (*See supra* at 6-7 & nn.24-36.) SAC's decision to settle the civil matter and enter into a plea agreement in the criminal matter is also irrelevant. (*See supra* at 10 & nn.37-39.) That is all the more true because SAC did not admit any of the charges against Mr. Martoma and, in fact, made absolutely *no* mention of Mr. Martoma. (*See supra* at 7.) Evidence from the *SAC Capital Advisors* cases simply cannot be used to prove Mr. Martoma's guilt at trial. Rather, "[i]t is fair to require the government to prove its conspiracy and substantive charges against [Mr. Martoma] on the basis of [his] own acts, and not the acts of others." *United States v. Marcus Schloss & Co., Inc.*, 710 F. Supp. 944, 954 (S.D.N.Y. 1989).

*Second*, evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements is

---

[39]   *Accord Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12 Civ. 3723, 2013 WL 1294668, at *14-15 (S.D.N.Y. Mar. 28, 2013) (dismissing a fraud claim that relied heavily on SEC settlements and consent judgments because "SEC settlements and consent judgments are generally not admissible as evidence" and "Wells Fargo did not admit any liability or wrongdoing as part of the settlement").

inadmissible hearsay.  The hearsay rule generally prohibits out-of-court statements – including oral or written assertions – offered by a party at trial to prove the truth of the matter asserted. *See* Fed. R. Evid. 801 and 802; *see also United States v. Gomez*, 617 F.3d 88, 92 (2d Cir. 2010). Each charging document, settlement agreement, plea agreement, or allocution consists of out-of-court statements that cannot be offered at trial for their truth.  It has long been settled in the Second Circuit that such statements are inadmissible.  *See Stevenson*, 214 F.2d at 907 ("Of course, the complaint was inadmissible as hearsay to prove the truth of its contents."); *United States v. Corr*, 543 F.2d 1042, 1051 (2d Cir. 1976) (affirming the trial court's ruling that an SEC release constituted inadmissible hearsay); 2 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Federal Evidence*, § 410.08[1] (Joseph M. McLaughlin ed., 2d ed. 2013) ("Guilty pleas and pleas of nolo contendere by a co-defendant, or alleged co-offender, clearly cannot be used as substantive evidence against other individuals in the case.  As to them, the plea of, or offer to plead, guilty is an extra-judicial admission, excluded under the hearsay rule.  The defendant has 'a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else.'").

Accordingly, Mr. Martoma respectfully requests that this Court exclude evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements as such evidence is both irrelevant and inadmissible hearsay.

## II.     EVIDENCE OF SAC ACTIONS, SAC SETTLEMENTS, AND SAC PLEA AGREEMENTS IS UNFAIRLY PREJUDICIAL AND CONFUSING.

Evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements also should be excluded because it would create a substantial "danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403; *see also Kaplan*, 490 F. 3d at 122 (finding

that the district court erred in receiving proffered evidence where its "slight probative value" was "outweighed by the risk that the jury would draw improper inferences" from it).  That risk is especially high where, as here, the Government would introduce evidence of allegations and agreements from other cases.  *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508, 2013 WL 1155420, at *7 n.69 (S.D.N.Y. Mar. 20, 2013) ("[A]ny probative value of references to [other litigations] is substantially outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, and waste of time under FRE 403." (quoting *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 330 (S.D.N.Y. 2009))); *Manko,* 1998 WL 391129, at *8-9 (finding that the probative value of evidence of a settlement was substantially outweighed by the danger of confusing the jury).

*First*, evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements is unfairly prejudicial to Mr. Martoma because it would inflame passions, confuse the issues, and/or inappropriately lead the jury to convict Mr. Martoma on the basis of other people's conduct not at issue in the trial.  *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006); *United States v. Nekritin*, No. 10-CR-491, 2011 WL 2462744, at *4 (E.D.N.Y. June 17, 2011).  The media coverage of Mr. Cohen, SAC, and its employees implicated in insider trading cases has been widespread and unrelenting over the past several years.  U.S. Attorney Preet Bharara has cast SAC in particular as a "magnet for market cheaters,"[40] admonishing that "greed, sometimes, is not good."[41]  The press has linked all of the "SAC insider trading deals" together, discussing the charges pending against Mr. Martoma in the same breath as the wholly unrelated charges against

---

[40] Peter Lattman, *Prominent Doctor Said to be Tied to Insider Trading Case at SAC*, N.Y TIMES DEALBOOK, Sept. 5, 2013, Strassberg Decl. No. 4, Ex. A.

[41] *See* Press Release, *U.S. Attorney's Office, Manhattan U.S. Attorney Announces Guilty Plea Agreement with SAC Capital Management Companies* (Nov. 4, 2013), Strassberg Decl. No. 4, Ex. D.

SAC entities and other individuals.[42]   The incessant media attention about insider trading cases in general, coupled with the fervent efforts of the U.S. Attorney's Office to make SAC the poster child of Wall Street greed, has resulted in intense public scrutiny and has impassioned public opinion.  To take just one example, consider public reaction to the plea agreement in the *SAC Capital Advisors* criminal action, as evidenced by an unsolicited letter from the public stating:

> The American people are outraged that DoJ have offered SAC Capital a sweetheart deal with no jail time and paying a penalty of only $1.8 billion.  Hedge fund crook Steve Cohen is laughing all the way to the bank because this is just one year's pay for him, he is guilty as sin and we urge the Court to reject the plea deal . . . . This plea deal is a slap in [sic] the wrist for Cohen and a slap in the face to the [American] people.[43]

There can be no doubt that introducing evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements would undermine the jury's ability to act as an objective fact-finder.  If such evidence were admitted, it would be virtually impossible for the jury to put emotions aside and separate the charges against Mr. Martoma from the allegations, settlements, convictions, and pleas involving his former employer and co-workers.  That is the very definition of unfair prejudice.  *See* Fed. R. Evid. 403, Advisory Committee Notes (evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"); *United States v. Mercado*, 573 F.3d 138, 146 (2d Cir. 2009) ("The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue *or* to unfairly to excite emotions against the defendant.") (emphasis added)); *United States v. Wassner*, 141 F.R.D. 399, 405 (S.D.N.Y. 1992) ("The dangers of

---

[42]   *See, e.g.*, *Update 1-US Judge Oks Smaller of Two SAC Insider Trading Deals*, REUTERS, (Apr. 1, 2013), Strassberg Decl. No. 4, Ex. E (discussing the *Sigma Capital* settlement in the context of the charges pending against both Mr. Steinberg and Mr. Martoma); Peter Lattman, *Former Hedge Fund Trader Sentenced in Insider Case*, N.Y. TIMES DEALBOOK, May 2, 2013, Strassberg Decl. No. 4, Ex. F. (discussing the cases of Mr. Newman, Mr. Steinberg, and Mr. Martoma as examples of the "several insider trading prosecutions that ha[ve] ensnared SAC Capital Advisors").

[43]   Letter at 1, *United States v. SAC Capital Advisors, L.P., et al.*, No. 1:13-cr-541 (S.D.N.Y. Nov. 6, 2013), ECF No. 14, Strassberg Decl. No. 4, Ex. G.

transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one can really say prejudice to a substantial right has not taken place." (citations omitted)).[44]  ***"Guilt by association is just what Fed. R. Evid. 403 was intended to exclude*."  *Wassner*, 141 F.R.D. at 405 (emphasis added); *see also Polasek*, 162 F.3d at 886-87 ("[W]e find that the guilt by association evidence likely had substantial impact on the jury's verdict as a result of the emphasis the government placed upon it. . . . [W]e repeatedly have characterized guilt by association evidence as 'highly prejudicial.'" (citations omitted)).[45]

*Second*, evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements would necessitate mini-trials within the trial concerning (among other things) the bases for the U.S. Attorney's Office's and the SEC's allegations and the reasons for SAC entities and other individuals to enter into settlements and/or plea agreements.  As the Second Circuit has recognized, "[a]dmitting evidence about previous cases inevitably results in trying those cases before the jury, and the merits of the other cases would become inextricably intertwined with the case at bar."  *Arlio*, 474 F.3d at 53 (citations and internal quotation marks omitted).  If such evidence were introduced here, Mr. Martoma would be forced to introduce evidence of the myriad reasons that SAC and the charged individuals resolved pending civil and criminal

---

[44] *Accord CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Assocs.*, 411 B.R. 591, 605-06 (Bankr. N.D. Ill. 2009) (granting a motion *in limine* where "the introduction of evidence of other corporate scandals or infamous suits is not relevant and, even if relevant, highly prejudicial"); *United States v. Ferguson*, 246 F.R.D. 107, 119 (D. Conn. 2007) (excluding evidence of statements related to AIG's efforts to manipulate its financial statements because they were unduly prejudicial to a defendant affiliated with AIG by implying guilt by association); *Sabratek Liquidating LLC v. KPMG LLP*, No. 01 C 9582, 2003 WL 22715820, at *6 (N.D. Ill. Nov. 18, 2003) ("[T]he improper conduct of other firms . . . has little, if any relevance to [the defendant's] conduct at issue . . . [and] [t]he probative value of references to the accounting scandals of the past few years is substantially outweighed by the risk of unfair prejudice that could be given to such evidence by the jury.").

[45] It also is highly unlikely that the prejudicial effect of such evidence can be ameliorated by instructions to the jury.  *See United States v. Davis*, No. 09-343, 2009 WL 3646459, at *5 (E.D. Pa. Nov. 4, 2009) ("Even a carefully crafted limiting instruction might not eliminate the prejudicial effect of the [settlement] agreement."); *United States v. Cook*, 557 F.2d 1149, 1154 (5th Cir. 1977) ("[E]ven the best instruction may be insufficient . . . [The] assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction." (citations omitted)).

matters, including: (1) concerns about the specter of high profile cases against government regulators; (2) the financial costs and distractions associated with litigating such cases; and (3) the desire to put the disputes behind them and move forward for the benefit of, in SAC's case, its employees and investors.

Of course, Mr. Martoma does not have access to much of the evidence as to why SAC entities and other individuals resolved their cases, which is yet further unfair prejudice to him. Even if Mr. Martoma did have such information, it likely would be inadequate to counter the jury's misimpression that the SAC Actions, SAC Settlements, and/or SAC Plea Agreements reflect the validity and strength of the claims against SAC entities and other individuals and, by implication, against Mr. Martoma. *See, e.g.*, *Davis*, 2009 WL 3646459, at *5 (recognizing the risk that "a jury will view the agreement as a confession of liability and guilt, regardless of the purpose for which the evidence is received."); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 199 (S.D.N.Y. 2008) ("[U]under Rule 403, any probative value that the settlement agreement might have is far outweighed by the significant risk of unfair prejudice. There is a significant risk that the jury would infer from the settlement agreement that [other entities] were the wrongdoers and consider that in determining the [defendants'] liability."); 2 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Federal Evidence*, § 410.08[1] (Joseph M. McLaughlin ed., 2d ed. 2013) ("The impact of [] an admission on the jury is usually substantial: the obvious inference is that an alleged co-offender who pleads guilty must have been telling the truth, and if one is guilty, all are guilty.").

In short, if the Government were allowed to introduce evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements, the prejudice and jury confusion would be unavoidable. Therefore, Mr. Martoma respectfully requests that this Court exclude evidence of SAC Actions,

SAC Settlements, and SAC Plea Agreements as unfairly prejudicial and confusing.

## **CONCLUSION**

For the foregoing reasons, Mr. Martoma respectfully requests that this Court grant his motion to exclude any evidence of SAC Actions, SAC Settlements, and SAC Plea Agreements.

Dated: December 6, 2013
New York, NY

Respectfully submitted,

GOODWIN PROCTER LLP

By: /s/ Richard M. Strassberg
    Richard M. Strassberg (RS5141)
      (rstrassberg@goodwinprocter.com)
    John O. Farley (JF4402)
      (jfarley@goodwinprocter.com)
    Daniel Roeser (DR2380)
      (droeser@goodwinprocter.com)
    The New York Times Building
    620 Eighth Avenue
    New York, New York 10018
    Telephone:  (212) 813-8800
    Facsimile:  (212) 355-3333

    Roberto M. Braceras (RB2470)
      (rbraceras@goodwinprocter.com)
    53 State Street
    Boston, Massachusetts 02109
    Telephone:  (617) 570-1000
    Facsimile:  (617) 523-1231

    *Attorneys for Defendant Mathew Martoma*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2013, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.   I also certify that I have caused copies of the aforementioned document to be served via first class mail, postage prepaid upon all non-CM/ECF participants.


/s/ Richard M. Strassberg
Richard M. Strassberg (RS5141)