UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

MATHEW MARTOMA,

                    Defendant.

No. 12-cr-00973 (PGG)
ECF Case

**DEFENDANT MATHEW MARTOMA'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO EXCLUDE EVIDENCE OF HIS
FAINTING WHEN APPROACHED BY GOVERNMENT AGENTS**

**(MR. MARTOMA'S MOTION *IN LIMINE* NO. 5)**

GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
John O. Farley (JF4402)
Daniel Roeser (DR2380)

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Roberto M. Braceras (RB2470)
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Defendant Mathew Martoma*

December 6, 2013

Pursuant to Federal Rules of Evidence 401, 402, and 403, Defendant Mathew Martoma respectfully submits this memorandum of law in support of his motion to exclude any evidence that he fainted when approached by two agents from the Federal Bureau of Investigation (the "FBI") on November 8, 2011.

## PRELIMINARY STATEMENT

Evidence that Mr. Martoma fainted when approached by two FBI agents on November 8, 2011, has *no* bearing on his guilt or innocence. It is neither direct evidence of Mr. Martoma's charged conduct from mid-2006 to mid-2008 nor evidence of any consciousness of guilt. At most, it is evidence of the stress that people – innocent and guilty alike – feel when confronted without warning by law enforcement officials. Any evidence of Mr. Martoma's fainting should be excluded both because it is not relevant to the charged offenses and because it is unfairly prejudicial to Mr. Martoma and confusing to the jury.

*Evidence of Mr. Martoma's fainting is not relevant to the charged offenses.* That Mr. Martoma fainted on November 8, 2011, is not direct evidence that he engaged in insider trading years earlier. To the extent that the Government seeks to introduce Mr. Martoma's fainting to show consciousness of guilt, such evidence is not relevant. The Government's probe into SAC was already well-known when the FBI approached Mr. Martoma, and it is reasonable to infer that he was naturally distressed when the FBI began talking to him. Time and again, courts have recognized that "'most citizens, whether innocent or guilty, are likely to exhibit some signs of nervousness when confronted by the police.'" *Farag v. United States*, 587 F. Supp. 2d 436, 459-60 (E.D.N.Y. 2008) (quoting *United States v. Crump*, 62 F. Supp. 2d 560, 565 (D. Conn. 1999)). Moreover, the Government cannot establish the necessary links between Mr. Martoma's fainting and his guilt. Therefore, evidence of Mr. Martoma's fainting is not

probative of his guilt or innocence with respect to alleged insider trading of Elan or Wyeth securities.

***Evidence of Mr. Martoma's fainting is unfairly prejudicial and confusing.*** Evidence that Mr. Martoma fainted is unfairly prejudicial because it would lead the jury wrongly to *assume* his consciousness of guilt. Such evidence should be excluded because it would be virtually impossible for the jury not to be colored by Mr. Martoma's fainting. Such evidence would appeal to the prurient interests of the jury, without proving any relevant element of the crime charged.[1] This Court should exclude the evidence to avoid the resulting sideshow, which would only confuse and distract the jury.

For all of these reasons, this Court should exclude any evidence that Mr. Martoma fainted when approached by two FBI agents on November 8, 2011.[2]

## FACTUAL BACKGROUND

On November 8, 2011, at approximately 9:10 p.m., Mr. Martoma was approached by two FBI agents at his Boca Raton, Florida home.[3] According to the limited notes provided by the Government, the FBI agents introduced themselves, and Mr. Martoma informed them that he

---

[1] The prurient appeal of "fainting" is shown by the media's apparent fascination with the subject. *See, e.g.,* Bryan Burrough & Bethany McLean, *The Hunt for Steve Cohen*, VANITY FAIR, June 2013, Declaration of Richard M. Strassberg in Support of Defendant Mathew Martoma's Motion to Exclude Evidence of His Fainting When Approached by Government Agents ("Strassberg Decl. No. 5"), Ex. A ("Agent Matthew Callahan pressed him [Mr. Martoma] to become an informant against [Steve] Cohen; when he refused, the agents leaned on him, reminding him of the damning evidence they had against him and of how much time he might spend away from his family if he were sent to prison (as much as 45 years). Martoma then fainted, but, soon on his feet, he remained defiant."); Sheelah Kolhatkar, *Why Hasn't Ex-SAC Capital Manager Mathew Martoma Turned on Steve Cohen?*, BUSINESS WEEK, Dec. 13, 2012, Strassberg Decl. No. 5, Ex. B ("When Mathew Martoma was confronted by an FBI agent on the front lawn of his Boca Raton (Fla.) mansion last year with allegations of insider trading, he was so distressed that he fainted.").

[2] If this Court allows evidence of Mr. Martoma's fainting, Mr. Martoma respectfully requests a limiting instruction that the jury is not required to consider his fainting as evidence of consciousness of guilt. *See United States v. Rahman*, 870 F. Supp. 47, 52 (S.D.N.Y. 1994) ("[J]uries generally are instructed that they need not consider [the defendant's conduct] as reflecting consciousness of guilt.") (citing *United States v. Castro*, 813 F.2d 571, 578 (2d Cir. 1987)).

[3] *See* Federal Bureau of Investigation, Interview of Mathew Martoma, Bates stamped USAO_0003515, Strassberg Decl. No. 5, Ex. C.

was not represented by an attorney but would retain an attorney who would contact Special Agent Kang.[4]  The FBI notes contain the following statement:

> When the interviewing Agents advised Mathew Martoma that the interviewing Agents wanted to talk to Martoma about insider trading when Martoma was at SAC Capital, Martoma fainted for a few seconds.  When SA Kang asked if the interviewing Agents should call EMS, Martoma's wife identified herself as a doctor and attended to her husband.[5]

The media has since sought to sensationalize this event, at times adding its own speculation about the reasons that Mr. Martoma fainted.[6]

That Mr. Martoma "fainted for a few seconds" is evidence of nothing and will invite the jury to speculate about the causes of his fainting spell.  Such evidence should be excluded.

## ARGUMENT

### I. EVIDENCE OF MR. MARTOMA'S FAINTING IS NOT RELEVANT TO THE CHARGED OFFENSES.

Evidence that Mr. Martoma fainted is not relevant to the charged offenses.  Plainly, evidence of Mr. Martoma's fainting on November 8, 2011, is not direct evidence that he engaged in insider trading years earlier.  To the extent that the Government seeks to introduce such evidence to show consciousness of guilt, it is not relevant.  Evidence of consciousness of guilt is relevant *if and only if* (1) "reasonable inferences" suggesting consciousness of guilt can be drawn from the evidence *and* (2) the evidence is probative of the defendant's guilt of the charged offense.  *See United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 401.08 (2d ed. 1997) ("Evidence of behavior to prove consciousness of guilt is relevant only if the guilty behavior is related to the crime at issue.")).  Neither is true here.

---

[4]  *Id.*

[5]  *Id.*

[6]  *See* note 1, *supra.*

3

*First*, consciousness of guilt is not a reasonable inference to draw from Mr. Martoma's fainting when approached by two FBI agents at his home. The government's probe into SAC was already well-known when the FBI approached Mr. Martoma,[7] and it is reasonable to infer that he was naturally distressed when the FBI began talking to him. Time and again, courts have recognized that "most citizens, whether innocent or guilty, are likely to exhibit some signs of nervousness when confronted by the police." *See Farag*, 587 F. Supp. 2d at 459-60; *accord United States v. Massenburg*, 654 F.3d 480, 489 (4th Cir. 2011) ("Given the complex reality of citizen-police relationships in many cities . . . [n]ervousness . . . when confronted by an armed uniformed police officer does not seem so unusual as to indicate guilt or criminal proclivity." (quoting *State v. Scott*, 412 So. 2d 988, 989 (La. 1982))); *United States v. Chavez-Valenzuela*, 268 F.3d 719, 726 (9th Cir. 2001) ("Encounters with police officers are necessarily stressful for law-abiders and criminals alike."); *United States v. Salzano*, 158 F.3d 1107, 1113 (10th Cir. 1998) ("[I]t is common for most people to exhibit signs of nervousness when confronted by a law enforcement officer whether or not the person is currently engaged in criminal activity." (internal quotation marks and citations omitted)); *State v. Lee*, 658 N.W.2d 669, 678-79 (Neb. 2003) ("'[I]t is common knowledge that most citizens . . . whether innocent or guilty, when confronted by a law enforcement officer who asks them potentially incriminating questions are likely to exhibit some signs of nervousness.'" (quoting *United States v. Hall*, 978 F.2d 616, 621 n.4 (10th Cir. 1992))). Evidence that Mr. Martoma fainted does not show consciousness of guilt,

---

[7] *See, e.g.*, Peter Lattman and Andrew Ross Sorkin, *A Titan Under A Microscope*, N.Y. TIMES DEALBOOK, May 6, 2011, Strassberg Decl. No. 5, Ex. D ("Federal prosecutors are examining trades made in an account run by Mr. Cohen at SAC Capital Advisors, his hedge fund in Stamford, Conn., that manages about $12 billion, according to a government filing. The trades were suggested by two SAC portfolio managers who have pleaded guilty to insider trading-related crimes. The charges are part of a vast investigation into insider trading at hedge funds by the United States attorney in Manhattan that has resulted in criminal cases against at least 47 people over the last two years.").

but rather provides the jury with an "opportunity for mere conjecture and speculation." *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005) (internal quotation marks omitted).

Indeed, Mr. Martoma's fainting stands in stark contrast to paradigmatic consciousness of guilt evidence such as flight, concealment, or evasion – in each case closely tied to the commission of the charged crime – all of which have been viewed as admissions by conduct. *See, e.g., Perez*, 387 F.3d at 208-09 (bribery of a witness to lie to investigators); *United States v. Glenn*, 312 F.3d 58, 68-69 (2d Cir. 2002) (false exculpatory statements to the police); *United States v. Salameh*, 152 F.3d 88, 157 (2d Cir. 1998) (flight from the country one day after the charged crime); *United States v. Burrous*, 147 F.3d 111, 117 (2d Cir. 1998) (throwing cash out of a window); *United States v. Mickens*, 926 F.2d 1323, 1328-29 (2d Cir. 1991) (efforts to intimidate a key witness). And, even with respect to paradigmatic evidence, courts have often found it "highly ambiguous" and circumstantial. *See, e.g., Rahman*, 870 F. Supp. at 52 ("To begin with, flight itself may be highly ambiguous, and juries generally are instructed that they need not consider it as reflecting consciousness of guilt. . . . The relevance of this proof, if any, is gossamer."). Mr. Martoma's "few second" fainting spell simply does not "pass[ ] the threshold inquiry of relevance[.]" *United States v. Amuso*, 21 F.3d 1251, 1258 (2d Cir. 1994).

***Second***, the Government cannot establish any link between Mr. Martoma's fainting and his guilt of the charged offense. The probative value of Mr. Martoma's fainting depends on the confidence with which at least the following inferences can be drawn: (1) "from [fainting] to consciousness of guilt"; (2) "from consciousness of guilt to consciousness of guilt concerning the ***crime charged***"; and (3) "from consciousness of guilt concerning the crime charged to ***actual*** guilt of the crime charged." *Al-Sadawi*, 432 F.3d at 424 (emphasis added). To admit such evidence, "each link in the chain of inferences leading to [the] conclusion [must be] sturdily

5

supported. . . . [M]ere conjecture or speculation will not suffice." *Id.* (citations omitted). Notably, "[s]ince [consciousness of guilt] evidence can be powerful, the requirement of a sufficient factual predicate ensures that the evidence is probative in a legal sense and protects the defendant against the possibility of the jury drawing unsupported inferences from otherwise innocuous behavior." *Id.* (citation and internal quotation marks omitted). None of the necessary links can be supported in this case. Any inference from fainting to consciousness of guilt is mere conjecture. (*See supra* at 4-5.) Moreover, any further inference to consciousness of guilt concerning the crime charged, let alone actual guilt of the crime charged, is speculation on top of conjecture.

In short, evidence of Mr. Martoma's fainting is irrelevant and inadmissible. This Court should exclude it.

## II. EVIDENCE OF MR. MARTOMA'S FAINTING IS UNFAIRLY PREJUDICIAL AND CONFUSING.

Evidence that Mr. Martoma fainted also should be excluded because it would create a substantial "danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; *see also United States v. Kaplan*, 490 F.3d 110, 122 (2d Cir. 2007) (finding that the district court erred in receiving proffered evidence where its "slight probative value" was "outweighed by the risk that the jury would draw improper inferences" from it). That is especially true in this case where the evidence that Mr. Martoma fainted invites conjecture and speculation by the jury.

Evidence that Mr. Martoma fainted when approached by FBI agents is unfairly prejudicial because it would lead the jury wrongly to *assume* his consciousness of guilt. Such evidence should be excluded because it would be virtually impossible for the jury not to be colored by Mr. Martoma's fainting, undermining the jury's ability to act as the objective fact-

6

finder with respect to the charged conduct. "The connection – or string of inferences upon inferences – . . . is simply too tenuous and too remote. . . . [G]iven the tenuous nature of the linkage to this case, there is a strong likelihood that the jurors will be misled by the evidence and that [the defendant] will be unfairly prejudiced by its admission." *United States v. Abu-Jihaad*, No. 3:07CR57(MRK), 2008 WL 282368, at *6 (D. Conn. Jan. 31, 2008); *accord* Fed. R. Evid. 403, Advisory Committee Notes (evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"); *United States v. Mercado*, 573 F.3d 138, 146 (2d Cir. 2009) ("The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue *or* to excite emotions against the defendant." (emphasis added)); *United States v. Vasquez*, 840 F. Supp. 2d 564, 575-76 (E.D.N.Y. 2011) (excluding evidence where the danger of unfair prejudice exceeded any probative value of the evidence at issue because "the jury would be left to speculate regarding the circumstances surrounding" the evidence, "which could result in a side trial diverting the jury's attention from the relevant issues").

Therefore, Mr. Martoma respectfully requests that this Court exclude evidence of his fainting when approached by FBI agents as unfairly prejudicial and confusing.

## CONCLUSION

For the foregoing reasons, Mr. Martoma respectfully requests that this Court grant his motion to exclude any evidence that he fainted when approached by two FBI agents on November 8, 2011.

Dated: December 6, 2013                   Respectfully submitted,
       New York, NY

                                                GOODWIN PROCTER LLP

By: /s/ Richard M. Strassberg
   Richard M. Strassberg (RS5141)
    (rstrassberg@goodwinprocter.com)
   John O. Farley (JF4402)
    (jfarley@goodwinprocter.com)
   Daniel Roeser (DR2380)
    (droeser@goodwinprocter.com)
   The New York Times Building
   620 Eighth Avenue
   New York, New York 10018
   Telephone:  (212) 813-8800
   Facsimile:  (212) 355-3333

   Roberto M. Braceras (RB2470)
    (rbraceras@goodwinprocter.com)
   53 State Street
   Boston, Massachusetts 02109
   Telephone:  (617) 570-1000
   Facsimile:  (617) 523-1231

   *Attorneys for Defendant Mathew Martoma*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2013, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices. I also certify that I have caused copies of the aforementioned document to be served via first class mail, postage prepaid upon all non-CM/ECF participants.

/s/ Richard M. Strassberg
Richard M. Strassberg (RS5141)