UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/17/13

UNITED STATES OF AMERICA,

- v.-

MATHEW MARTOMA,

Defendant.

**MEMORANDUM**
**OPINION & ORDER**

S1 12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Mathew Martoma is charged in Count One of the Indictment with

conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and in Counts Two and

Three with securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5

and 240.10b5-2, and 18 U.S.C. § 2.  (Superseding Indictment (Dkt. No. 61))

Martoma has moved to dismiss Count Two and related allegations in Count One

on the ground that transactions in the American Depository Receipts ("ADRs") of Elan

Corporation, plc ("Elan") that are the subject of these charges are extraterritorial transactions not

covered by Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act").  (Dkt.

Nos. 38, 39)  For the reasons stated below, Defendant's motion to dismiss will be denied.

## BACKGROUND

Count One charges that between 2006 and July 2008, Martoma formed corrupt

relationships with two doctors ("Doctor-1" and "Doctor-2") conducting a clinical trial of a drug

for use in treating Alzheimer's disease.  (Superseding Indictment (Dkt. No. 61) ¶¶ 8-11)  The

clinical trial was being conducted on behalf of two pharmaceutical companies – Elan and Wyeth

– that controlled the development of the drug.[1]  (Id. ¶ 4)  Doctor-1 "served as the chair of the

Safety Monitoring Committee ('SMC')" for the clinical trial, while Doctor-2 was "a clinical

investigator" for the trial, which involved treating patients with the drug and providing Elan with

the patients' medical data.  (Id. ¶¶ 5-6)

            Between 2006 and 2008, Martoma allegedly "arranged for approximately 42

consultations with Doctor-1 through [an] Expert Networking Firm."  (Id. ¶ 10)  The networking

firm was in the business of "arrang[ing] paid consultations between financial industry clients and

experts in various fields."  (Id. ¶ 7)  However, the networking firm expressly advised

participating clients and experts that they could not discuss information "'not yet in the public

domain.'"  (Id.)  Martoma also allegedly "arranged for several paid consultations with Doctor-2

through a financial services firm."  (Id. ¶ 11)

            The Indictment alleges that, notwithstanding the instructions given regarding

confidentiality, "Doctor-1 provided Martoma with confidential [drug] safety data that had been

disclosed to members of the SMC by Elan."  (Id. ¶ 10)  "Doctor-2 [likewise] provided

confidential information about the Drug Trial and other Alzheimer's disease drug trials to

Martoma."  (Id. ¶ 11)

            "Based in part on th[e] Inside Information [obtained from Doctor-1], Martoma

bought shares of Elan and Wyeth stock for his own portfolio and recommended that [his hedge

fund employer do the same], which [it] did."  (Id. ¶ 10)  The Indictment further alleges that on or

about July 17, 2008, Doctor-1 provided Defendant with the confidential final results of the

clinical trial, which indicated that the drug was not efficacious for treating Alzheimer's disease.

---

[1]  The Indictment alleges that Elan is based in Dublin, Ireland, and that its stock is "traded on the
New York Stock Exchange ('NYSE') through the issuance of American Depository Receipts (or
'ADRs') under the ticker symbol 'ELN.'"  (Superseding Indictment (Dkt. No. 61) ¶ 2)

(Id. ¶¶ 12-13)  Doctor-1 allegedly conveyed this information to Martoma during a lengthy telephone conversation on July 17, 2008, by sending him a confidential 24-slide PowerPoint presentation that Doctor-1 had received from Elan, and by meeting with Martoma on July 19, 2008, in Ann Arbor, Michigan.  (Id. ¶ 13)

Based on the new and negative information supplied by Doctor-1, Martoma allegedly caused his hedge fund employer to (1) sell "virtually all of its approximately $700 million worth of Elan and Wyeth stock prior to the [p]ublic [a]nnouncement" of the clinical trial's final results; and (2) "engage[] in 'short sales' and various options trades designed to profit if the price of Elan and Wyeth securities were to fall after the [p]ublic [a]nnouncement." (Id. ¶ 14)

After the results of the clinical trial were publicly announced, Elan and Wyeth shares suffered a precipitous drop in value.  (Id. ¶ 15)  As a result of its trading activity, Martoma's hedge fund employer realized profits, and avoided losses, totaling $276 million, and Martoma was paid a $9.3 million bonus.  (Id.)

Martoma has moved to dismiss Count Two – a substantive securities fraud count based on alleged insider trading in Elan ADRs – and related allegations in Count One, the securities fraud conspiracy charge.  (Dkt. Nos. 38, 39)  Martoma contends that Section 10(b) of the Exchange Act does not apply to the transactions in Elan ADRs that are the subject of the Indictment, because these trades constitute extraterritorial transactions under Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010).  (Def. Br. (Dkt. No. 39) at 1)  Defendant argues that "'trade in ADRs is considered to be a predominantly foreign securities transaction' even where the ADRs are purchased on a U.S. exchange," and that "Elan ADRs were derivatives that simply repackaged Elan stock, which is traded abroad."  (Id. (quoting In re Société Générale

Sec. Litig., No. 08 Civ. 2495 (RMB), 2010 WL 3910286, at *6 & n.5 (S.D.N.Y. Sept. 29,

2010).))

## DISCUSSION

### I.   APPLICABLE LAW

Section 10(b) of the Exchange Act makes it unlawful

> [t]o use or employ, in connection with the purchase or sale of any
> security registered on a national securities exchange or any security not so
> registered, or any securities-based swap agreement, any manipulative or deceptive
> device or contrivance in contravention of such rules and regulations as the
> Commission may prescribe as necessary or appropriate in the public interest or for
> the protection of investors.

15 U.S.C. § 78j(b).  Rule 10b-5, promulgated under Section 10(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or
> instrumentality of interstate commerce, or of the mails or of any facility of any national
> securities exchange,
>
> (a) [t]o employ any device, scheme, or artifice to defraud,
>
> (b) [t]o make any untrue statement of a material fact or to omit to state a material
> fact necessary in order to make the statements made, in the light of the
> circumstances under which they were made, not misleading, or
>
> (c) [t]o engage in any act, practice, or course of business which operates or would
> operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

In Morrison, the Supreme Court held that Section 10(b) "reaches the use of a

manipulative or deceptive device or contrivance only in connection with the purchase or sale of a

security listed on an American stock exchange, and the purchase or sale of any other security in

the United States."  Morrison, 130 S.Ct. at 2888.  The Second Circuit has extended Morrison to

criminal cases, holding that "a defendant may be convicted of securities fraud under Section

10(b) and Rule 10b-5 only if he has engaged in fraud in connection with (1) a security listed on an American exchange, or (2) a security purchased or sold in the United States." United States v. Vilar, 729 F.3d 62, 98 (2d Cir. 2013).

Morrison requires courts to apply a two-prong test in determining the applicability of Section 10(b). Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 66-67 (2d Cir. 2012). The first prong is "whether a transaction involves a security listed on a domestic exchange." Absolute Activist, 677 F.3d at 66.

Where the first prong is not satisfied, courts must consider whether there has been a domestic purchase or sale of a security. See id. at 66-67. "[T]ransactions involving securities that are not traded on a domestic exchange are domestic if irrevocable liability is incurred or title passes within the United States." Id. at 67. In determining these issues, the Second Circuit has instructed that courts should consider, inter alia, "facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." Id. at 70.

If either prong of the Morrison test is met, Section 10(b) applies to the transaction. See id. at 66-67.

## II.    SECTION 10(b) APPLIES HERE BECAUSE ELAN ADRS ARE LISTED ON THE NEW YORK STOCK EXCHANGE

Martoma argues that Section 10(b) does not apply to the Elan ADR transactions because they are not "domestic transactions," given that "'trade in ADRs is considered to be a predominantly foreign securities transaction' even where the ADRs are purchased on a U.S. exchange.'" (Def. Br. (Dkt. No. 39) at 1 (quoting Société Générale, 2010 WL 3910286, at *6 & n.5.)). This argument ignores the first prong of Morrison, however, which states that Section 10(b) applies to "transactions in securities listed on domestic exchanges." Morrison, 130 S. Ct. at 2884; see also Absolute Activist, 677 F.3d at 66.

There can be no dispute that the Elan ADRs are "securities." <u>See</u> 15 U.S.C. §
78c(a)(10) ("The term 'security' means any . . . stock, . . . certificate of deposit for a
security, . . . or any . . . receipt for . . . any of the foregoing . . ."); <u>In re Austl. & N.Z. Banking
Grp. Ltd. Sec. Litig.</u>, No. 08 Civ. 11278 (DLC), 2009 WL 4823923, at *2 (S.D.N.Y. Dec. 14,
2009) ("An ADR is a security denominated in U.S. dollars that represents a certain number of
shares, or fraction of shares, of ordinary stock in a foreign corporation.").  There is likewise no
dispute that Elan ADRs are listed on the New York Stock Exchange ("NYSE"). (<u>See</u> Def. Br.
(Dkt. No. 39) at 2 ("'Elan's stock traded on the New York Stock Exchange ("NYSE") through
the issuance of American Depository Receipts (or "ADRs") under the ticker symbol "ELN."'")
(quoting Indictment (Dkt. No. 7) ¶ 2))  Because the Elan ADRs are securities that are listed and
traded on the NYSE, the first prong of <u>Morrison</u> is satisfied.[2]

---

[2]  In apparent recognition of this analysis, numerous securities fraud actions concerning ADRs
traded on domestic exchanges have proceeded post-<u>Morrison</u>.  <u>See</u>, <u>e.g.</u>, <u>In re Sanofi-Aventis
Sec. Litig.</u>, No. 07 Civ. 10279 (GBD) (FM), 2013 WL 1149672, at *2, *7, *9 (S.D.N.Y. Mar. 20,
2013) (rejecting claims based on the purchase of shares "not traded or listed on any domestic
exchange," but allowing claims based on the purchase of ADRs on the NYSE to proceed); <u>In re
Satyam Computer Servs. Ltd. Sec. Litig.</u>, 915 F. Supp. 2d 450, 473 (S.D.N.Y. 2013) ("The
Director Defendants do not seek dismissal under <u>Morrison</u> of the remaining Lead Plaintiffs'
Exchange Act claims because the [complaint] alleges that those plaintiffs purchased Satyam
[American Depository Shares] on the NYSE."); <u>In re Vivendi Universal, S.A. Sec. Litig.</u>, 765 F.
Supp. 2d 512, 527 (S.D.N.Y. 2011) ("The parties agree that <u>Morrison</u> has no impact on the
claims of ADR purchasers since Vivendi's ADRs were listed and traded on the NYSE.");
<u>Cornwell v. Credit Suisse Grp.</u>, 729 F. Supp. 2d 620, 621-22, 627 (S.D.N.Y. 2010) (dismissing
claims related to securities purchased on Swiss stock exchange, while permitting claims related
to ADRs traded on the NYSE to proceed); <u>In re Alstom SA Sec. Litig.</u>, 741 F. Supp. 2d 469, 471,
473 (S.D.N.Y. 2010) (dismissing claims related to securities purchased on a foreign stock
exchange, while permitting claims related to ADRs traded on the NYSE to proceed).  This Court
recognizes that these cases are entitled to little weight here, because it does not appear that the
defendants in these actions argued that the Exchange Act does not extend to claims related to
ADRs listed on a U.S. exchange.

The cases cited by Martoma (see Def. Br. (Dkt. No. 39) at 12-13) are not to the contrary. In In re Société Générale Securities Litigation, 2010 WL 3910286, the court sua sponte dismissed Section 10(b) claims based on ADRs traded on the over-the-counter market. Id. at *6-7. While it is true that the Société Générale court noted that "'[t]rade in ADRs is considered to be a "predominantly foreign securities transaction,"'" Société Générale, 2010 WL 3910286, at *6 (quoting Copeland v. Fortis, 685 F. Supp. 2d 498, 506 (S.D.N.Y. 2010)) (alteration in original), the court emphasized that the ADRs at issue "'were not traded on an official American securities exchange; instead, [the] ADRs were traded in a less formal market with lower exposure to U.S.-resident buyers.'" Id. (citing Copeland, 685 F. Supp. 2d at 506). Here, of course, the Elan ADRs were in fact traded on "an official American securities exchange."[3]

Copeland v. Fortis, 685 F. Supp. 2d 498, likewise involves ADRs traded on the over-the-counter market. Id. at 506. Moreover, Copeland is pre-Morrison and turns on application of the "conduct and effects tests," see id. at 501-06, explicitly rejected by the Supreme Court in Morrison. See Morrison, 130 S. Ct. 2878-81. Elliott Associates v. Porsche Automobil Holding SE, 759 F. Supp. 2d 469 (S.D.N.Y. 2010), also cited by Martoma, involves swap agreements that were not listed on a domestic exchange. Id. at 473-74.

Defendant also points to a comment made by Judge Hellerstein during oral argument in In re Elan Corp. Securities Litigation, Nos. 08 Civ. 8761 (AKH), 10 Civ. 5630 (AKH) (S.D.N.Y. Mar. 17, 2011), which also concerns Elan ADRs. (Def. Br. (Dkt. No. 39) at

---

[3] Société Générale cites Cornwell, 729 F. Supp. 2d 620, for the proposition that "[c]ourts have . . . held that Section 10(b) is inapplicable to transactions in which a plaintiff purchases ADRs on a U.S. exchange." 2010 WL 3910286, at *6 n.5. This is incorrect. The Cornwell court was not asked to dismiss claims based on the purchase of ADRs. See Cornwell, 729 F. Supp. 2d at 621 ("Invoking Morrison, Defendants moved via letter on July 6, 2010 for a partial judgment on the pleadings to dismiss plaintiffs, such as LAMPERS, who had purchased CSG shares on the [Swiss Stock Exchange].").

16-17)  Judge Hellerstein suggested that he might dismiss securities fraud allegations involving
Elan ADRs if he found that the ADRs were "entirely derivative in value" of securities traded on
a foreign exchange.  (Strassberg Decl. (Dkt. No. 40), Ex. A, Tr. 8:21 to 9:7)  Judge Hellerstein
went on to deny a motion to dismiss securities fraud claims related to trading in Elan ADRs,
however.  See In re Elan Corp. Sec. Litig., Nos. 08 Civ. 8761 (AKH), 10 Civ. 5630 (AKH), 2011
WL 1442328, at *1 (S.D.N.Y. Mar. 18, 2011).  In sum, Martoma has cited no case in which a
court has concluded that Section 10(b) does not apply to transactions in ADRs that are listed and
traded on a domestic exchange.

Because this action involves "the use of a manipulative or deceptive device or
contrivance . . . in connection with the purchase or sale of a security listed on an American stock
exchange," Morrison, 130 S. Ct. at 2888, the first prong of Morrison is satisfied, and Defendant's
motion to dismiss must be denied.

## III.   SECTION 10(b) APPLIES TO ADR TRANSACTIONS
   THAT TAKE PLACE IN THE UNITED STATES

The alleged transactions in Elan ADRs also satisfy Morrison's second prong,
because they involve "the purchase or sale of [a] security in the United States."  See id. at 2888;
Absolute Activist, 677 F.3d at 66-67.  Under Absolute Activist, transactions are not
extraterritorial if "irrevocable liability was incurred or [ ] title was transferred within the United
States."  Absolute Activist, 677 F.3d at 62.  Here, the Elan ADRs in question were bought and
sold on the NYSE, and liability was incurred, and title was transferred, within the United States.

Martoma argues, however, that transactions involving the Elan ADRs are "not
domestic transactions in other securities" under the second prong of Morrison, because
"[l]iability was incurred and title passed outside of the United States when Elan deposited [its
ordinary] shares in the Bank of Ireland.  That investors purchased the foreign stock through

8

ADRs issued in the United States is of no consequence under <u>Morrison</u>." (Def. Br. (Dkt. No. 39) at 15) Defendant contends that the Elan ADRs are merely "receipts that may be redeemed for the foreign stock at any time," and that accordingly "[t]he operative transaction for the issuance of Elan's ADRs – <u>i.e.</u>, the deposit of Elan ordinary shares with The Bank of Ireland – was carried out in Ireland." (<u>Id.</u>) Defendant further argues that subsequent transactions in Elan ADRs should be considered foreign as well, because "ADR holders [have] the right to present their ADRs to The Bank of New York at any time in return for Elan ordinary shares." (<u>Id.</u> at 16) According to Defendant, because "ADRs are economically equivalent to, and in fact regarded by investors as a substitute for, a foreign issuer's stock that is traded abroad," this Court should view transactions in ADRs as "foreign transactions." (<u>Id.</u> at 12, 13)

Defendant's arguments are not persuasive. As noted above, the Elan ADRs are securities, despite the fact that – by definition – they represent shares of stock in a foreign corporation. See <u>In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.</u>, 2009 WL 4823923, at *2. Defendant's argument that the Elan ADRs are "receipts" and thus mere proxies for transactions occurring outside the United States does not address where the transactions in the ADRs took place. With respect to the ADR transactions, this Court must determine, under <u>Absolute Activist</u>, 677 F.3d at 62, where irrevocable liability was incurred or title was transferred.

In determining whether a transaction is "domestic," this Court must consider, <u>inter alia</u>, "facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." <u>Id.</u> at 70. Here, it is undisputed that the Elan ADRs at issue were traded on the NYSE, which means that the formation of contracts for those trades, the passing of title to those securities, and the incurring of liability on the part of sellers and

purchasers of those ADRs occurred in the United States. Under these circumstances, the second prong of <u>Morrison</u> is satisfied.[4]

### CONCLUSION

Defendant's motion to dismiss Count Two and the corresponding allegations in Count One is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 38).

Dated: New York, New York
       December 16, 2013

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

[4] This Court rejects Defendant's argument that it must regard the Elan ADR transactions as "foreign transactions" because (1) "ADRs are economically equivalent to . . . a foreign issuer's stock that is traded abroad"; and (2) no ADRs could be issued in the United States until a corresponding number of Elan's ordinary shares were deposited in the Bank of Ireland in Ireland. (Def. Br. (Dkt. No. 39) at 12-16) Arguments about "economic reality" or "functional equivalence" do not permit this Court to ignore the bright line tests set forth in <u>Morrison</u>. "While defendant['s] contention that an investor could not purchase an [ADR] in the United States without a corresponding overseas transaction may be true, it does not change the fact that a purchase in the United States still took place." <u>Phelps v. Stomber</u>, 883 F. Supp. 2d 188, 209 (D.D.C. 2012).