UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -against-

MATHEW MARTOMA,

               Defendant.

No. 12-cr-00973 (PGG)
ECF Case

---

**DEFENDANT MATHEW MARTOMA'S MEMORANDUM OF LAW
IN OPPOSITION TO THE GOVERNMENT'S MOTION *IN
LIMINE* TO ADMIT NON-BAPI INFORMATION**


GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
John O. Farley (JF4402)
Daniel Roeser (DR2380)

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Roberto M. Braceras (RB2470)
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Defendant Mathew Martoma*

December 20, 2013

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................ 5

ARGUMENT ........................................................................................................................ 7

I.     EVIDENCE OF NON-BAPI INFORMATION IS NOT DIRECT EVIDENCE. .............. 7

II.    EVIDENCE OF NON-BAPI INFORMATION IS NOT
ADMISSIBLE RULE 404(B) EVIDENCE. .................................................................. 10

III.   EVIDENCE OF NON-BAPI INFORMATION WOULD BE UNFAIRLY
PREJUDICIAL AND CONFUSING TO THE JURY ...................................................... 13

CONCLUSION .................................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bruton v. United States,*
    391 U.S. 123 (1968)..................................................................................4, 16

*Giglio v. United States,*
    405 U.S. 150 (1972)........................................................................................10

*Gray v. Briggs,*
    45 F. Supp. 2d 316 (S.D.N.Y. 1999)..............................................................15

*Highland Capital Mgmt., L.P. v. Schneider,*
    551 F. Supp. 2d 173 (S.D.N.Y. 2008)............................................................14

*Old Chief v. United States,*
    519 U.S. 172 (1997)........................................................................................14

*United States v. Afjehei,*
    869 F.2d 670 (2d Cir. 1989)......................................................................10, 13

*United States v. Baljit,*
    207 F. Supp. 2d 118 (S.D.N.Y. 2002)............................................................12

*United States v. Belk,*
    No. 01 CR 180, 2002 WL 342585 (S.D.N.Y. Mar. 4, 2002)..........................10

*United States v. Cook,*
    557 F.2d 1149 (5th Cir. 1977) ........................................................................16

*United States v. Cruz,*
    343 F. Supp. 2d 226 (S.D.N.Y. 2004)............................................................14

*United States v. Curley,*
    639 F.3d 50 (2d Cir. 2011)..............................................................................14

*United States v. Damti,*
    109 F. App'x 454 (2d Cir. Sept. 13, 2004) ......................................................8

*United States v. Garcia,*
    291 F.3d 127 (2d Cir. 2002)............................................................................10

*United States v. Gordon,*
    987 F.2d 902 (2d Cir. 1993)............................................................................10

*United States v. Graziano*,
　558 F. Supp. 2d 304 (E.D.N.Y. 2008) ...................................................................16

*United States v. Hatfield*,
　685 F. Supp. 2d 320 (E.D.N.Y. 2010) .........................................................9, 12, 13

*United States v. Kahale*,
　789 F. Supp. 2d 359 (E.D.N.Y. 2009) ...................................................................15

*United States v. Levy*,
　No. 11 Cr. 62 (PAC), 2013 WL 655251 (S.D.N.Y. Feb. 22, 2013) .............9, 11, 16

*United States v. McDermott*,
　245 F.3d 133 (2d Cir. 2001)....................................................................................16

*United States v. Nachamie*,
　101 F. Supp. 2d 134 (S.D.N.Y. 2000).....................................................................13

*United States v. Nekritin*,
　No. 10-cr-491 (S-2) (KAM), 2011 WL 2462744 (E.D.N.Y. June 17, 2011) ...........8

*United States v. Newton*,
　No. S101CR.635 (CSH), 2002 WL 230964 (S.D.N.Y. Feb. 14, 2002)............10, 14

*United States v. Stein*,
　521 F. Supp. 2d 266 (S.D.N.Y. 2007).....................................................................10

*United States v. Walker*,
　191 F.3d 326 (2d Cir. 1999)......................................................................................8

*United States v. Williams*,
　585 F.3d 703 (2d Cir. 2009)................................................................................9-10

*Walls v. Shelby*,
　No. 11 Civ. 174 (KGB), 2012 WL 6569775 (E.D. Ark. Dec. 17, 2012).................15

**OTHER AUTHORITIES**

FED R. EVID. 401 .........................................................................................................1

FED. R. EVID. 402 ........................................................................................................1

FED. R. EVID. 403.........................................................................................1, 13, 14, 16

FED. R. EVID. 404............................................................................................... passim

iii

Pursuant to Federal Rules of Evidence 401, 402, 403, and 404, Defendant Mathew Martoma respectfully submits this memorandum of law in opposition to the Government's motion *in limine* to admit non-bapi information.  Specifically, Mr. Martoma seeks an order excluding any evidence concerning allegedly "confidential information" (the "non-bapi information") unrelated to bapineuzumab ("bapi"), Elan Pharmaceuticals, plc ("Elan"), or Wyeth.

## PRELIMINARY STATEMENT

The Government has repeatedly claimed that this is a "straightforward" insider trading case "involving trades in two securities [*i.e.*, Elan and Wyeth], both relating to the outcome of a single event: the public announcement of the Drug Trial [*i.e.*, bapi] results on July 29, 2008."[1] The Government must prove its charges with evidence related to bapi, Elan, and Wyeth.  Yet "the Government seeks to offer at trial evidence that, during the time period of the charged conspiracy, each of the doctors [*i.e.*, Dr. Sidney Gilman and Dr. Joel Ross] also provided Martoma with ***other*** confidential information, and that Martoma himself discussed providing information that he knew to be confidential to Dr. Ross."[2]  The Government has loudly announced that it only "bring[s] cases when we have proof beyond a reasonable doubt that we can convince a jury unanimously of someone's criminal guilt."[3]  But apparently the Government lacks such proof, as it is now attempting to expand the scope of this case by introducing evidence

---

[1]   (Government's Opp'n to Def.'s Mot. for a Bill of Particulars at 7, ECF No. 26; *see also* Tr. of Ct. Conference at 10:18-25, *United States v. Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y. Mar. 5, 2013) (describing the "fairly straightforward fact pattern" in which Mr. Martoma is "alleged t[o] have corrupted a doctor and gotten inside information about a single drug trial that resulted in trading in two drug companies that sponsored the trial").)

[2]   (Government's In Limine Motions Seeking a Ruling that Certain Evidence is Admissible at Trial and That the Defense Should Disclose any Alibi Defense Prior to Trial at 2, ECF No. 100 (emphasis added) (hereinafter "Mot.").)

[3]   United States Attorney's Office for the Southern District of New York, *Guilty Plea Agreement with SAC Capital Management Companies Announced*, Nov. 5, 2013, *available at* http://www.justice.gov/usao/nys/pressconference.

of non-bapi information that is clearly unrelated to its "straightforward" conspiracy and insider trading allegations.

Tellingly, the Government is attempting to conflate confidential with criminal by equating the *legal* non-bapi "confidential information" that is the subject of its Motion with the allegedly *illegal* bapi confidential information that is the subject of the charges against Mr. Martoma. ***They are not remotely the same.*** The Government does not allege that the non-bapi information was material, non-public information or proof of insider trading while the Government's entire case against Mr. Martoma is premised on allegations that the bapi confidential information was in fact material, non-public information and proof of insider trading. Whether the non-bapi information was "confidential" (whatever that means) does not change the fact that it was *public* and that Mr. Martoma's conduct in obtaining it was *legal*; in contrast, the bapi information was allegedly ***non-public*** and Mr. Martoma's charged conduct was allegedly *illegal*. Try as it might, the Government cannot gloss over this fundamental difference that makes the non-bapi information meaningless but highly prejudicial. It should go without saying that evidence of *legal* information is not relevant to prove *illegal* insider trading and may mislead the jury to make a determination on improper grounds. Evidence of non-bapi information should be excluded because it is neither direct evidence nor admissible Rule 404(b) evidence, and because it would be unfairly prejudicial and confusing to the jury.

***Evidence of non-bapi information is not direct evidence.*** The Government asserts that the non-bapi information "helps illuminate the development of the illegal relationship between Martoma and each of the doctors [*i.e.*, Dr. Gilman and Dr. Ross]" because "the fact that somebody is engaged in other similar conduct with the same person illustrates the nature of the relationship between the two men." (Mot. at 6-7 (emphasis omitted).) The Government

2

*concedes*, however, that the non-bapi information concerns different trials of different drugs conducted by different companies (and, in one case, involving a different medical condition). (*Id.* at 2-4.)   More fundamentally, the Government **admits** that it "expressly" does not seek to allege, let alone prove, that the non-bapi information was material, non-public information or proof of fraud.   (*Id.* at 4.)   Nor could it.   The non-bapi information had been publicly disclosed **before** Mr. Martoma received it from Dr. Gilman or Dr. Ross.   Further, there is nothing about the alleged non-bapi information that is relevant to the development of any relationship between Mr. Martoma and the doctors because this information is not alleged to have been illegal and because the doctors were consultants in the business of providing information to clients like Mr. Martoma.   Simply put, the other conduct is not "similar."   The non-bapi information is not direct evidence of the Government's charges.

   ***Evidence of non-bapi information is not admissible Rule 404(b) evidence.***   The Government asserts that "instances in which the same participants [*i.e.*, Dr. Gilman, Dr. Ross, and Mr. Martoma] exchanged other confidential information, that may not have been MNPI [*i.e.*, material, non-public information], is plainly relevant."   (Mot. at 8-9.)   The Government cannot dispute, however, that there are substantial **differences** between the non-bapi information and the confidential information alleged in the criminal complaint, Indictment, and Superseding Indictment.   The non-bapi information concerns **different** trials of **different** drugs conducted by **different** companies; and the Government does **not** even allege that the non-bapi information reflects material, non-public information or proof of securities fraud.   (*Id.* at 2-4.)   Those fundamental differences defeat any possible probative value of the non-bapi information and its relevance to any non-character purpose.   The Government would have the jury draw the (inaccurate) inference that, because Mr. Martoma allegedly received and discussed sending non-

3

bapi information, he received and traded on material, non-public information about bapi.  That is *precisely* the sort of inference that Federal Rule of Evidence 404(b) precludes.  The non-bapi information is irrelevant and inadmissible character evidence.

     *Evidence of non-bapi information would be unfairly prejudicial and confusing to the jury.*  The Government may not obscure the lack of direct evidence of insider trading based on material, non-public information about bapi with examples where Mr. Martoma allegedly "shared" non-bapi information that the Government concedes was neither material, non-public, nor the subject of any insider trading.  The non-bapi information would be unfairly prejudicial because, if it were admitted, there is a significant risk that it would unfairly color the jury's view of Mr. Martoma's character.  It would also inevitably lead to jury confusion as jurors sought to distinguish between evidence of charged conduct (*i.e.*, the receipt of bapi information that is allegedly material, non-public information and proof of fraud) and evidence of uncharged, legal conduct (*i.e.*, the receipt of non-bapi information that is not allegedly material, non-public information or proof of fraud).  In addition, there is ample evidence that the non-bapi information was *publicly available*, which would result in complex and lengthy "mini-trials" concerning different clinical trials of different drugs by different companies in order to put the communications among Dr. Gilman, Dr. Ross, and Mr. Martoma in context.  Such mini-trials would divert the time and resources of this Court and the jury and distract from evidence of the charged offenses.  Nor would a limiting instruction cure the unfair prejudice and jury confusion but would instead, as the Supreme Court recognized long ago, ask the jury to perform "a mental gymnastic which is beyond, not only its powers, but anybody's else."  *Bruton v. United States*, 391 U.S. 123, 132 n.8 (1968) (internal quotation marks omitted).

For all of these reasons, this Court should exclude any evidence concerning the non-bapi information.

## FACTUAL BACKGROUND

The Government has charged Mr. Martoma with securities fraud and conspiracy to commit securities fraud in connection with trading in Elan and Wyeth securities.[4]  The Government claims that it will prove at trial: (1) from late 2006 through July 2008, Mr. Martoma obtained material, non-public information about the Phase II clinical trial of bapi from Dr. Gilman and Dr. Ross and (2) in July 2008, Mr. Martoma sold Elan and Wyeth securities following his receipt of additional material, non-public information from Dr. Gilman.[5]

In support of its charges, the Government seeks to offer evidence that Mr. Martoma also received non-bapi information from Dr. Gilman and Dr. Ross and discussed providing non-bapi information to Dr. Ross.[6]  Specifically, the Government identifies the following non-bapi information:[7]

1.   "confidential raw data from a different drug study related to Alzheimer's Disease," "the results of which **had been made public**" and **presented at a July 2006 medical conference**;[8]

2.   "placebo group data from an unpublished study related to Alzheimer's Disease,"[9] which did not show the results of any drug and **had been presented publicly at a medical conference months earlier**;

3.   "possible action by the Federal Drug Administration (not concerning Elan, Wyeth or bapineuzumab)," referring to the possibility that the FDA would require black

---

[4]   (Mot. at 1.)

[5]   (*Id.*)

[6]   (*Id.* at 2.)

[7]   (*See id.* at 2-4.)

[8]   (*Id.* at 2 (emphasis added)); *see Madrid: News from the Vaccine Front—Phase 2 Postmortem, Part 1*, ALZHEIMER RESEARCH FORUM, July 31, 2006, *available at* http://www.alzforum.org/new/detail.asp?id=1435.

[9]   (Mot. at 2.)

box warnings for an anti-epilepsy drug, which **had already been publicly reported**;[10]

4.  "confidential investigator's brochures about drugs other than bapineuzumab, and specifically in April 2008 an investigator's brochure and part of the protocol about a drug that was the subject of a trial by Epix Pharmaceuticals, Inc." where the Epix brochure was dated February 2007 and allegedly provided to Mr. Martoma months **after the results of the drug trial had been publicly released**;[11] and

5.  "an investigator's brochure about a different Alzheimer's drug called Flurizan" that Dr. Ross allegedly requested from Mr. Martoma but actually obtained from someone else (and that even the Government does not suggest that Mr. Martoma provided).[12]

None of this non-bapi information constitutes material, non-public information or proof of insider trading. Indeed, the Government admits that it "does **not** intend to allege that the nature of the information exchanged between Martoma and the doctors concerning matters other than the Drug Trial [*i.e.*, bapi] necessarily was material, non-public information."[13] The Government further admits that it "expressly is NOT seeking to offer the evidence as proof of fraud in connection with the securities of any companies other than Elan or Wyeth."[14] In short, "the evidence would be simply that it was confidential, and disclosed nonetheless."[15] There is no

---

[10]  (*Id.* at 2-3); *see* U.S. FOOD & DRUG ADMIN., BRIEFING INFORMATION FDA (July 7, 2008), *available at* http://www.fda.gov/ohrms/dockets/ac/08/briefing/2008-4372b1-00-FDA-index.htm (publishing, on July 7, 2008, Memorandum from Russell Katz to Members of the Peripheral and Central Nervous Systems and Psychiatric Drugs Advisory Committees on the July 10, 2008 Advisory Committee Meeting to Discuss Antiepileptic Drugs and Suicidality (June 12, 2008), at 4 ("[I]t is our intention to ask sponsors to include a description of these findings in a Boxed Warning, as well as in the Warnings and Precautions sections.")); *see also* Alicia Mundy & Avery Johnson, *Warning on Epilepsy Drugs Nears*, WALL ST. J., June 6, 2008, *available at* http://online.wsj.com/news/articles/SB121272233192251273?mod=yahoo_hs&ru=yahoo.

[11]  (Mot. at 3); *see* Bill Berkrot, *Epix Alzheimer's Drug Shows Promise in Small Trial*, REUTERS, Dec. 18, 2007, *available at* http://www.reuters.com/article/2007/12/18/epix-alzheimers-idUKN1848885120071218?rpc=44.

[12]  (Mot. at 4); *see* SAC_ELAN0686656 (April 10, 2008, e-mail from Ross to Martoma stating: "Got what I needed for Fluriza[n]. Thanks anyway.").

[13]  (Mot. at 4 (emphasis added).)

[14]  (*Id.* (emphasis in original).)

[15]  (*Id.* at 10.)

proof that it was improper in any way, much less illegal, to share information that might have been "confidential" but was not material and non-public.

Any evidence of non-bapi information should be excluded because it is irrelevant, unfairly prejudicial, and confusing.

## ARGUMENT

## I.   EVIDENCE OF NON-BAPI INFORMATION IS NOT DIRECT EVIDENCE.

The Government argues that "the proffered evidence about additional confidential information provided by Dr. Gilman and Dr. Ross to Martoma, is admissible as relevant evidence of the background and nature of the relationship between alleged co-conspirators Martoma and Gilman, and Martoma and Ross." (Mot. at 6-7.) Not so. The Government *concedes* that non-bapi information can be relevant only "'if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" (*Id.* at 5 (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).) The Government *admits* that the non-bapi information does not involve material, non-public information or bapi– much less material, non-public information about bapi. (*Id.* at 4, 10.) Therefore, the non-bapi information has no connection to the alleged conduct and is inadmissible as background for the charged offenses.

According to the Government, the non-bapi information "helps illuminate the development of the illegal relationship between Martoma and each of the doctors" because "the fact that somebody is engaged in other similar conduct with the same person illustrates the nature of the relationship between the two men." (Mot. at 6-7 (emphasis omitted).) That is simply false. The Government concedes that the non-bapi information concerns *different* trials of *different* drugs conducted by *different* companies (and, in one case, involving a *different*

medical condition).  (*See supra* at 2-3.)  More fundamentally, the Government admits that it

"expressly" does not seek to allege, let alone prove, that the non-bapi information was material,

non-public information or proof of fraud.  (Mot. at 4.)  Nor could it.  The non-bapi information

had been publicly disclosed ***before*** Mr. Martoma received it from Dr. Gilman or Dr. Ross.  (*See*

*supra* at 5-6.)  Consequently, contrary to the Government's claims, the non-bapi information

does not establish an "illegal relationship between Martoma and each of the doctors" or

constitute "similar conduct" to that charged.  *See United States v. Damti*, 109 F. App'x 454, 456

(2d Cir. Sept. 13, 2004) (evidence of non-fraudulent transactions "would not have been probative

of the key issue during trial," whether ten specific transactions were fraudulent).[16]

The Government's attempt to introduce evidence that "Martoma discussed providing

Dr. Ross with confidential information not related to bapineuzumab" further illustrates the point.

(Mot. at 3-4.)  The ***only*** evidence offered by the Government allegedly shows Dr. Ross asking

Mr. Martoma for an investigator's brochure for Flurizan.  There is ***no*** evidence that Mr. Martoma

sent the brochure to Dr. Ross; and, in fact, the evidence shows that Dr. Ross actually received the

brochure from someone else.  (*See supra* at 6 & n.12.)  Nor is there any evidence that

Mr. Martoma owed any duty to anyone to keep information relating to Flurizan confidential.

Even putting all of that aside, this "evidence" would still show nothing.  Mr. Martoma is charged

with receiving inside information about bapi ***from*** Dr. Gilman and Dr. Ross and then trading

Elan and Wyeth securities based on that information.  Whether he discussed providing

"confidential information" ***to*** Dr. Ross about a different trial of a different Alzheimer's Disease

drug from a different company has nothing to do with the Government's charges.

---

[16]     *Accord United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) ("Whether [the defendant] had prepared other, non-fraudulent applications [is] simply irrelevant to whether the applications charged as false statements were fraudulent."); *United States v. Nekritin*, No. 10-cr-491 (S-2) (KAM), 2011 WL 2462744, at *5 (E.D.N.Y. June 17, 2011) ("Evidence that a defendant charged with fraud engaged in other, non-fraudulent activity is generally irrelevant.").

Despite the Government's conclusory assertion, there is nothing about the alleged non-bapi information that is relevant to the development of any relationship between Mr. Martoma and the doctors because this information is not alleged to have been illegal and because the doctors were consultants in the business of providing information to clients like Mr. Martoma. These allegations are not probative of the development of a relationship to do illicit things, and the Government has wholly failed to connect the alleged other conduct to any such development or the background relevant to their case.  The Government has repeatedly claimed that this is a "straightforward" insider trading case "involving trades in two securities, both relating to the outcome of a single event: the public announcement of the Drug Trial [*i.e.*, bapi] results on July 29, 2008."[17]  The Government should live by its words, and this Court should exclude evidence of "a separate, discrete incident of fraud or deceit that is not inextricably intertwined with the Indictment's charges or necessary to complete the Indictment's story."  *United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 655251, at *1 (S.D.N.Y. Feb. 22, 2013); *accord United States v. Hatfield*, 685 F. Supp. 2d 320, 323 (E.D.N.Y. 2010).  In this instance, where the Government ***does not even allege fraud*** with respect to the non-bapi information, there is all the more reason to exclude evidence of such information.  The Government may not conflate and equate the ***legal*** non-bapi "confidential information" that is the subject of its Motion with the allegedly ***illegal*** bapi confidential information that is the subject of the charges against Mr. Martoma.  Evidence of ***legal*** information is simply irrelevant to prove ***illegal*** insider trading.

In sum, the non-bapi information is wholly unnecessary "to enable the jury to understand the complete story of the crimes charged."  *United States v. Williams*, 585 F.3d 703, 707-08 (2d

---

[17]  (Government's Opp'n to Def.'s Mot. for a Bill of Particulars Br. at 7, ECF No. 26; *see also* Tr. of Ct. Conference at 10:18-25, *United States v. Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y. Mar. 5, 2013) (describing the "fairly straightforward fact pattern" in which Mr. Martoma is "alleged t[o] have corrupted a doctor and gotten inside information about a single drug trial that resulted in trading in two drug companies that sponsored the trial").)

Cir. 2009) (holding that extrinsic evidence was inadmissible as background, and "more likely confused the jury than assisted its understanding of the case," where "[t]he Government's version of the facts was simple and complete").[18]  Since the non-bapi information "does not assist in understanding the charged crimes," it is not relevant as direct evidence.  *United States v. Newton*, No. S101CR.635 (CSH), 2002 WL 230964, at \*3 (S.D.N.Y. Feb. 14, 2002).  It should be excluded.[19]

## II.      EVIDENCE OF NON-BAPI INFORMATION
## IS NOT ADMISSIBLE RULE 404(B) EVIDENCE.

The Government argues alternatively that "the proffered evidence is admissible under Rule 404(b) to show Martoma's intent to engage in a corrupt act, his common scheme or plan, his modus operandi, and his lack of mistake or accident."  (Mot. at 7; *see also id.* at 9-10.)  "To carry its burden of establishing admissibility, the [G]overnment must explain the uncharged transactions, identify similarities between the charged and uncharged transactions, and articulate how the similarities identified support" a purpose other than proving character.  *United States v. Stein*, 521 F. Supp. 2d 266, 270 (S.D.N.Y. 2007).[20]  In this case, there are substantial **differences**

---

[18]   *Accord United States v. Newton*, No. S101CR.635 (CSH), 2002 WL 230964, at \*2 (S.D.N.Y. Feb. 14, 2002) (finding extrinsic evidence inadmissible as background evidence where "[t]he charged crimes are straightforward and may be fully understood without reference to [evidence of other conduct]"); *see United States v. Belk*, No. 01 CR 180, 2002 WL 342585, at \*1-2 (S.D.N.Y. Mar. 4, 2002) (same).

[19]   The Government asserts in passing that the non-bapi information "also would be offered at trial as bad acts by Gilman and Ross, consistent with *Giglio v. United States*, 405 U.S. 150 (1972)."  (Mot. at 6-7 n.2.)  That makes no sense.  In *Giglio*, the Supreme Court held: "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility" is a due process violation. 405 U.S. at 154-55 (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  The Government would ask this Court to turn *Giglio* from a shield to protect Mr. Martoma by requiring the Government to disclose evidence of its witnesses' bad acts into a sword that the Government may use to admit such evidence against him. Predictably, the Government offers no support for its position.

[20]   *Accord United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002) ("The government must identify a similarity or connection between the two acts that makes the prior act relevant . . . ."); *United States v. Gordon*, 987 F.2d 902, 908-09 (2d Cir. 1993) ("[T]he probative value of the proffered evidence depends largely on whether or not there is a close parallel between the crime charged and the acts shown," and "it is an abuse of discretion for the trial court to admit other-act evidence if the other act or acts are not sufficiently similar to the conduct at issue." (internal quotation marks omitted)); *United States v. Afjehei*, 869 F.2d 670, 674 (2d Cir. 1989) ("There

between the non-bapi information and the confidential information alleged in the criminal complaint, Indictment, and Superseding Indictment.  The non-bapi information concerns *different* trials of *different* drugs conducted by *different* companies; and the Government does *not* even allege that the non-bapi information reflects material, non-public information or proof of securities fraud.  (*See supra* at 2-3.)  Those fundamental differences defeat any possible probative value of the non-bapi information and its relevance to any non-character purpose.

According to the Government, "instances in which the same participants [*i.e.*, Dr. Gilman, Dr. Ross, and Mr. Martoma] exchanged other confidential information, that may not have been MNPI [*i.e.*, material, non-public information], is plainly relevant to establish opportunity, knowledge and intent" and "the repeated nature of Martoma's receipt of plainly confidential information further illuminates his motive, intent, knowledge and absence of mistake."  (Mot. at 8-9.)  To the contrary, whether Mr. Martoma received (or discussed sending) non-bapi information makes it no more likely that he is guilty of the charged conduct but, at the very worst, reflects negatively on his character.  The Government would have the jury draw the inference that, because Mr. Martoma allegedly received (and discussed sending) "confidential information" about other trials of other drugs by other companies, he received and traded on material, non-public information about bapi.  That, however, is *precisely* the sort of inference that Rule 404(b) precludes.  *Levy*, 2013 WL 655251, at *1 (finding inadmissible under Rule 404(b) evidence of the defendants' fraudulent mass marketing scheme as proof of their knowledge, intent, and absence of mistake in making misrepresentations regarding investments because the other fraud "does not closely parallel the conduct charged here, nor is it sufficiently

---

is no necessity for synonymity but there must be *substantial* relevancy." (emphasis in original; internal quotation marks omitted)).

similar to permit the jury reasonably to draw the knowledge or intent inference advocated by the Government" (citations and internal quotation marks omitted)).[21]

Put another way, the Government would describe Mr. Martoma's routine, legal business practices – *i.e.*, his efforts to research and collect as much **legal** information as possible – as purported "bad" conduct for which the jury could find him guilty. This Court should not allow it. The Government should be precluded from misrepresenting and distorting as "bad" acts Mr. Martoma's legal conduct in collecting information that is not material and non-public. Evidence of Mr. Martoma's **legal** conduct (but conduct that might be perceived by the jury as improper) is simply irrelevant.

*United States v. Hatfield*, 685 F. Supp. 2d at 325, is particularly instructive. There, the court rejected (*inter alia*) the Government's attempt to admit evidence of other alleged insider trading violations in a case involving unrelated securities fraud. As the court explained:

> Whether Mr. Brooks engaged in insider trading-type conduct in 1989 says nothing about Mr. Brooks' knowledge or absence of mistake in 2004, because it provides no useful information concerning whether Mr. Brooks possessed material non-public information when he made the DHB stock trades at issue. Similarly, Mr. Brooks' 1980's conduct says nothing about his "modus operandi" with respect to the Indictment's charges because, as discussed above, the alleged 1989 acts were manifestly different than the charged conduct. And, although Mr. Brooks' prior alleged willingness to tolerate and benefit from a subordinate's insider trading might, arguably, have some probative value concerning Mr. Brooks' intent, this probative value is substantially outweighed by: (1) its prejudice to Mr. Brooks as invalid propensity evidence; (2) the danger that it would confuse the jury; and (3) the undue delay that a "mini-trial" concerning this evidence would require.

685 F. Supp. 2d at 325.

---

[21]   *Accord United States v. Baljit*, 207 F. Supp. 2d 118, 122 (S.D.N.Y. 2002) (finding conduct that "caused no financial loss to the Postal Service and was qualitatively different from the crimes charged in the Indictment, has little or no bearing on the nature of the alleged conspiracy to defraud the Postal Service" and, therefore, is inadmissible under Rule 404(b)).

Just as the court in *Hatfield* excluded evidence of prior insider trading "because it provides no useful information concerning whether [the defendant] possessed material non-public information when he made the . . . stock trades at issue," *id.*, this Court should exclude evidence of non-bapi information for the same reason.  Indeed, exclusion is even more warranted in this case where the Government does not allege that the uncharged conduct (*i.e.*, receiving and discussing sending non-bapi information) demonstrates insider trading or securities fraud.[22]  The non-bapi information is irrelevant and inadmissible character evidence and, therefore, should be excluded.

## III.   EVIDENCE OF NON-BAPI INFORMATION <br> WOULD BE UNFAIRLY PREJUDICIAL AND CONFUSING TO THE JURY.

Evidence of the non-bapi information also should be excluded under Federal Rule of Evidence 403 because it would be unfairly prejudicial to Mr. Martoma and create the danger of confusing the jury.  "[O]nce the trial court has concluded that other-act evidence is sufficiently similar to be relevant, it must still perform the balancing analysis envisioned by Rule 403" and "weigh that probative value against the likelihood of unfair prejudice."  *Afjehei*, 869 F.2d at 674.[23]  With respect to Rule 404(b) evidence, there is an inherent danger that "the jury still might use it as evidence of the defendant's bad character."  *United States v. Nachamie*, 101 F. Supp. 2d 134, 140 (S.D.N.Y. 2000).  In this case, the balancing analysis is straightforward: there is no probative value, but the unfair prejudice to Mr. Martoma would be substantial.

---

[22]   In fact, the *Hatfield* court's justification for allowing the Government to admit certain other evidence under Rule 404(b) underscores the point that only *similar* acts are admissible for non-character purposes.  *See* 685 F. Supp. 2d at 327 (admitting allegations of insurance fraud to show the defendant's intent and/or absence of mistake because "[b]oth the Indictment and the purported insurance fraud concern allegations that Mr. Brooks altered corporate records and/or instructed subordinates to do so").

[23]   *Accord Hatfield*, 685 F. Supp. 2d at 324 (even if extrinsic evidence is admissible under Rule 404(b), the court must still consider whether the concerns articulated in Rule 403 "tip against its admissibility").

*First*, the Government argues that "the proffered evidence is no more sensational than any of the direct evidence concerning the three counts charged in the Indictment" because "the Government would not be proving that the non-Drug Trial [*i.e.*, non-bapi] evidence was necessarily MNPI [*i.e.*, material, non-public information]" but rather "that it was confidential, and disclosed nonetheless." (Mot. at 10.) That misses the point. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). When evidence "tend[s] to prove a fact not in issue or to excite emotions against the defendant, [it] create[s] a prejudicial effect." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (internal quotation marks omitted).

The non-bapi information would have exactly that effect here. The Government may not obscure the lack of direct evidence of insider trading based on material, non-public information about bapi with examples where Mr. Martoma allegedly "shared" non-bapi information that the Government concedes was neither material, non-public, nor the subject of any insider trading. If the non-bapi information were admitted, there is a significant risk that it would unfairly color the jury's view of Mr. Martoma's character. *See, e.g.*, *Newton*, 2002 WL 230964, at *5 (finding extrinsic evidence inadmissible where "its potential for unfairly prejudicing the jury by portraying [the defendant] as an immoral rule-breaker greatly outweighs th[e] slight probative value").[24] Moreover, it would inevitably lead to jury confusion as jurors sought to distinguish

---

[24]   *Accord Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 193 (S.D.N.Y. 2008) (holding that the "mere use of the term 'inside information' may lead a juror to believe that the [defendants] engaged in illegal or improper conduct," and thus "any probative value of the term is outweighed by its misleading nature"); *United States v. Cruz*, 343 F. Supp. 2d 226, 232 (S.D.N.Y. 2004) (holding that "the prejudicial effect of the admission of the facts underlying the prior arrests" could lead a jury to "unfairly assume" that the defendant was a "habitual" offender, which is "exactly the kind of character assessment Rule 403 is designed to prevent").

between evidence of charged conduct (*i.e.*, the receipt of bapi information that is allegedly material, non-public information and proof of fraud) and evidence of uncharged, legal conduct (*i.e.*, the receipt of non-bapi information that is not allegedly material, non-public information or proof of fraud). There can be no doubt that introducing the non-bapi information "will necessarily result in delay, confusion of the issues, and may mislead the jury to make a determination of guilt based on propensity." *United States v. Kahale*, 789 F. Supp. 2d 359, 385-86 (E.D.N.Y. 2009).

**Second**, the Government argues that "the proffered evidence will not significantly increase the length of the trial" because it "will be offered through witnesses who are already expected to testify, as well as documents the Government is already planning to offer." (Mot. at 11.) That, too, misses the point. There is ample evidence that the non-bapi information was, in fact, ***publicly available*** before Mr. Martoma received it. (*See supra* at 5-6.) "[T]he Court necessarily would be required to permit [Mr. Martoma] to introduce evidence to put into context, explain, or rebut" the Government's claims. *Walls v. Shelby*, No. 11 Civ. 174 (KGB), 2012 WL 6569775, at *3 (E.D. Ark. Dec. 17, 2012). That would result in complex and lengthy "mini-trials" concerning different clinical trials of different drugs by different companies in order to put the communications among Dr. Gilman, Dr. Ross, and Mr. Martoma in context. Such mini-trials would divert the time and resources of this Court and the jury and distract from evidence of the charged offenses. All of this would "require considerable effort, yet would provide little of use to the Court in resolving the material issues," such that any probative value would be "substantially outweighed by the undue delay and wastefulness that the admission of such evidence would present." *Gray v. Briggs*, 45 F. Supp. 2d 316, 330 (S.D.N.Y. 1999) (finding

inadmissible under Rules 403 and 404(b) evidence of two $10,000 transfers that were unrelated to the alleged ERISA violations).[25]

*Third*, the Government argues that "evidence admissible under Rule 404(b) is not unduly prejudicial to a defendant, so long as the court gives a limiting instruction to the jury explaining the proper purpose for the other crimes evidence." (Mot. at 10.) To the contrary, the Second Circuit has observed that, "where the prejudicial spillover [is] so overwhelming," limiting instructions "cannot be presumed to be effective." *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001). In this case, a limiting instruction would not cure the unfair prejudice and jury confusion as jurors attempted to understand the significance of the ***non-bapi*** information to the ***bapi*** fraud that it was offered to prove. As the Supreme Court recognized long ago, "[t]he limiting instruction, [Judge Hand] said, is a recommendation to the jury of a mental gymnastic which is beyond, not only its powers, but anybody's else." *Bruton*, 391 U.S. at 132 n.8 (internal quotation marks omitted); *accord United States v. Cook*, 557 F.2d 1149, 1154 (5th Cir. 1977) ("Even the best instruction may be insufficient . . . . The naïve assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction.").

This Court should exclude the non-bapi information because it would unfairly prejudice Mr. Martoma and confuse the jury.

---

[25] *Accord Levy*, 2013 WL 655251, at *1 (finding inadmissible under Rule 403 evidence of the defendants' fraudulent mass marketing scheme because (*inter alia*) "[t]he introduction of this evidence would lead to a confusing 'mini-trial'" that presents "a significant risk of . . . confusing the issues actually alleged in the Indictment, and misleading a jury that will already be tasked with determining the charged conduct"); *United States v. Graziano*, 558 F. Supp. 2d 304, 324 (E.D.N.Y. 2008) (finding inadmissible under Rule 403 evidence of gambling activity because (*inter alia*) its introduction "would lead to a 'mini-trial' concerning the nature and scope of any gambling activity at Copperfield's and the defendant's knowledge and/or involvement with respect to any such activities").

## **CONCLUSION**

For the foregoing reasons, Mr. Martoma respectfully requests that this Court exclude any evidence concerning the non-bapi information.

Dated:   New York, New York        Respectfully submitted,
         December 20, 2013
                                   GOODWIN PROCTER LLP

                                   By: /s/ Richard M. Strassberg
                                   Richard M. Strassberg (RS5141)
                                    (rstrassberg@goodwinprocter.com)
                                   John O. Farley (JF4402)
                                    (jfarley@goodwinprocter.com)
                                   Daniel Roeser (DR2380)
                                    (droeser@goodwinprocter.com)

                                   The New York Times Building
                                   620 Eighth Avenue
                                   New York, New York 10018
                                   Telephone: (212) 813-8800
                                   Facsimile: (212) 355-3333

                                   Roberto M. Braceras (RB2470)
                                    (rbraceras@goodwinprocter.com)
                                   53 State Street
                                   Boston, Massachusetts 02109
                                   Telephone: (617) 570-1000
                                   Facsimile: (617) 523-1231

                                   *Attorneys for Defendant Mathew Martoma*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2013, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

/s/ Richard M. Strassberg
Richard M. Strassberg (RS5141)
