UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | : S1 12 Cr. 973 (PGG) |
| MATHEW MARTOMA, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S OPPOSITION TO DEFENDANT'S SIXTH MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF MARTOMA'S DEPARTURE FROM SAC CAPITAL

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America.

Arlo Devlin-Brown
Eugene Ingoglia
Assistant United States Attorneys

**PRELIMINARY STATEMENT**

The sixth motion *in limine* of defendant Mathew Martoma ("Martoma") to exclude evidence of Martoma's departure from SAC Capital ("SAC") is unpersuasive and should be rejected. The circumstances surrounding Martoma's departure from SAC, insofar as they concern his underperformance in the years following his successful trade involving Elan and Wyeth in 2008, and reflect SAC management's view of his performance, is relevant, non-prejudicial and straightforward.[1]  Therefore, the defendant's motion should be denied.

**RELEVANT FACTS**

The superseding indictment charges the defendant with participation in an insider trading conspiracy during his employment at SAC Capital ("SAC"), between in or about the summer of 2006 through on or about July 29, 2008, and with the substantive crime of insider trading in July 2008 in the stocks of Elan and Wyeth.  As a consequence of this illegal scheme, the superseding indictment alleges that the defendant helped the firm reap more than $200 million in profits and avoided losses, and received personally a bonus of approximately $9.3 million.

Martoma worked for SAC through September 30, 2010.  During the relevant period, pursuant to SAC policy, SAC portfolio managers were compensated based almost completely on the performance of their portfolio and the success of any recommendations they made to the head of the fund that were acted upon.  Moreover, it also was SAC policy that portfolio managers could be terminated if their portfolio performance fell below a certain level.  The Government expects that the evidence at trial would show that while Martoma was very successful at the firm in 2008, principally as result of the Elan and Wyeth insider trading, and was rewarded financially by the firm with a $9.3 million bonus for that year, the defendant was

---

[1] Martoma's motion is vague as to whether there is some specific aspect of his termination that it seeks to preclude.  The Government is not aware of any inflammatory or sensational aspect of Martoma's termination.

2

unsuccessful as a trader at SAC in the following two years, and was not awarded bonuses in those years.  The Government submits that this evidence is relevant to the defendant's motive, and as a piece of circumstantial evidence relevant to the jury's assessment of whether or not his successful trade in 2008, at issue in this case, was occasioned by his acquisition of material non-public information.   Therefore, Martoma's levels of performance after 2008, and the views of SAC's management regarding Martoma's performance, are relevant, and such evidence should be admissible at trial.

## APPLICABLE LAW

Rule 401 of the Federal Rules of Evidence makes clear that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant evidence.  Fed.R.Evid. 401.  Two distinct requirements are implicit in that definition: "(1) [t]he evidence must be probative of the proposition it is offered to prove; and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States* v. *Diaz*, 878 F.2d 608, 614 (2d Cir. 1989).  The United States Supreme Court has observed that this "basic standard of relevance . . . is a liberal one." *Daubert* v. *Merrell Dow Pharms*., 509 U.S. 579, 587 (1993).   Relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice."  Fed.R.Evid. 403.

## ARGUMENT

Here, because the evidence at issue plainly has a tendency to make the existence of consequential facts more probable, and because there is no danger of unfair prejudice, the evidence should be admitted and the defendant's motion seeking its exclusion, denied.

The Evidence is Relevant

First, the evidence of Martoma's underperformance in 2009 and 2010, in the eyes of SAC management, and the way that was dealt with by SAC – by not paying him bonuses, and ultimately by terminating his employment – is evidence that informs Martoma's motive. What happened in 2009 and 2008, this evidence tends to show, demonstrates viscerally what Martoma understood, in 2006 through 2008, would happen if he did not find a way to make money for the firm.

Second, the fact that Martoma was successful at SAC in 2008, principally based on his Elan and Wyeth trading, will not be disputed at trial. The Government charges that he made money on Elan and Wyeth trading by acquiring and trading on material non-public information. Presumably the defense will argue otherwise. The fact that the defendant could not replicate that success in subsequent years, and that SAC management viewed his performance poorly in comparison to 2008 such that it decided to end his employment, is relevant proof of the defendant's motive to cheat in 2008, and circumstantial evidence of the fact that the defendant achieved his 2008 success by cheating.

The defense argument – essentially, that the evidence is not relevant because the defendant was not terminated from SAC because of his 2008 trading – in effect imposes a requirement that all relevant evidence must be direct evidence. But that is not the law, and the defense motion offers no support for such a rejection of the liberal standard of relevance that governs evidentiary law. As long as the evidence tends to make the existence of a consequential fact more or less likely than it would be without the evidence, it is relevant, and the evidence at issue clearly satisfies that standard.

Moreover, the defendant mis-states the holding of the case he cites in supposed support for his argument. The defense motion cites *McAleavey* v. *McMahon*, 55 Fed. App'x 594, 594-95 (2d Cir. 2003) to support his argument that employment termination evidence should not be admitted to prove prior conduct during one's employment, asserting that the Second Circuit affirmed "the exclusion of defendant's termination seventeen months after the charged conduct because it 'had no appreciable bearing on the issues before the jury'" (Defense Motion ("Defense MIL #6") at 3.) In fact, the case had nothing whatsoever to do with evidence concerning a defendant's employment or termination from employment. Rather, in *McAleavey*, the Second Circuit affirmed the district court's exclusion of evidence that the defendant in a civil case failed a random drug test seventeen months after he allegedly used excessive force against the plaintiff. *Id*. This case does not, needless to say, support the defense position.

There is No Risk of Prejudice or Confusion

The defense then asserts that evidence concerning the circumstances of the defendant's termination from SAC would somehow create a danger of unfair prejudiced or juror confusion under Rule 403. Defense MIL #6 at 3-4. Counterintuitively, the defense argues that the evidence would be especially prejudicial because it <u>does not involve</u> any illegal conduct. Defense MIL #6 at 4.

To the contrary, the fact that the evidence surrounding Martoma's termination from SAC does not itself involve illegal conduct or any kind of inflammatory conduct makes it much less likely to result in any unfair prejudice. To the extent the Court is concerned that the evidence would somehow confuse the jury, as the defense conclusorily asserts, a limiting instruction could clarify the purposes for which the evidence was being offered. *See, e.g., Zafiro* v. *United States*, 506 U.S. 534, 540-41 (1993) (holding that limiting "instructions suffice to cure any possibility of

prejudice"); *United States* v. *LaFlam,* 369 F.3d 153, 157 (2d Cir.2004) (holding that admission of other act evidence appropriate where Judge "also gave a limiting instruction to the jury that reduced any potential prejudice that introduction of the uncharged other act evidence might have caused"); *United States* v. *Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (holding that "we must presume that juries understand and abide by a district court's limiting instructions.").

Finally, defense claims that delay and "mini-trials" would result from any offering of evidence concerning the reasons for Martoma's termination. Defense MIL #6 at 4. This would be the result, the defense asserts, because Martoma worked at SAC during "a global economic crisis" such that evidence concerning Martoma's termination would require the resolution of "complex, peripheral issues." Defense MIL #6 at 4.

This argument makes no sense. First, the global economic crisis hit toward the end of 2008. Martoma was paid a $9.3 million bonus for his performance that year, most if not all of which was attributable to the Elan and Wyeth trading at issue in the Government's charges. Second, the Government expects the proof it would offer would be both simple and brief. There would be testimony and a few documents, most if not all of it from witnesses that the Government would call regardless of whether such evidence is found to be admissible, concerning the defendant's compensation in the years of the charged conspiracy, as well as the two following years; broadly how that compared with the performance of other portfolio managers at SAC; and how SAC management viewed the subsequent performance as it compared to his performance in 2008, in making its decision to terminate Martoma's employment. None of that calls for or puts at issue complex issues; none of that would bring about the multiple "mini-trials" invoked by the defense. Indeed, the Government expects direct testimony and evidence on such matters would take up less than half an hour of trial time.

6

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court reject the defense motion and permit the Government to offer evidence concerning the circumstances surrounding the defendant's termination from SAC, including how SAC management viewed his subsequent performance.

Dated: December 20, 2013
       New York, New York

                                    Respectfully submitted,

                                    PREET BHARARA
                                  United States Attorney


                          By: _____\s_____
                              Arlo Devlin-Brown
                              Eugene Ingoglia
                              Assistant United States Attorneys
                              Tel. No.: (212) 637-2506/1113