UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

                                                       S1 12 Cr. 973 (PGG)

            - v. -                              :

MATHEW MARTOMA,                             :

                Defendant.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S FIFTH MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF MARTOMA'S FAINTING**

 

 

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
       of America.

 

Arlo Devlin-Brown
Eugene Ingoglia
Assistant United States Attorneys

## PRELIMINARY STATEMENT

The fifth motion *in limine* of defendant Mathew Martoma ("Martoma") to exclude

evidence of Martoma's fainting after he was approached by agents of the Federal Bureau of

Investigation (the "FBI") is unpersuasive and should be rejected.  Martoma's fainting is an

admission by conduct, and properly should be admitted (with appropriate limiting instruction) as

evidence of his consciousness of guilt.

## RELEVANT FACTS

On November 8, 2011, two agents of the FBI sat in a car in the street outside Martoma's

residence in Boca Raton, Florida, waiting for Martoma to arrive.   At approximately 9:10 p.m., a

Range Rover approached the residence; Martoma was driving, and his wife was in the passenger

seat.  The agents identified themselves as FBI agents, and initially indicated, as a pretext, that

they wished to speak with Martoma about an individual ("Individual #1"), who recently

completed his prison sentence and had been released from prison.[1]

Martoma agreed to speak with the agents about Individual #1.  Martoma and the agents

walked a relatively short distance from the front door of the residence, in the direction of the

garage, where they stopped to speak further.   At that point, one of the agents told Martoma that

they did not really want to talk to him about Individual #1; rather, they wanted to talk with him

about his insider trading at SAC Capital in Elan and Wyeth.   Martoma then passed out, his fall

to the ground broken by the lawn in front of the residence.  Martoma's wife, who had been

approaching, attended to Martoma.  An agent asked if he should call emergency medical

---

[1]  By way of background, Individual #1 was an associate of Martoma's beginning in 1999.
Martoma and Individual #1 became business partners for a time, but had a falling out that
ultimately resulted in civil litigation between the two.  Individual #1 subsequently was
incarcerated in connection with a crime that was unrelated to Martoma, and which occurred
before the two met.  In 2000, Martoma, with counsel present, voluntarily met and spoke with an
agent of the FBI and a federal prosecutor about Individual #1.

services; Martoma's wife indicated that she was a doctor.  Martoma revived quickly thereafter.

After further discussion, during which Martoma did not speak to the events of 2008, the agents

were told by Martoma's wife that he would obtain a lawyer, and that the lawyer would contact

one of the agents on Martoma's behalf.  The agents left.

More than a year later, on November 20, 2012, Martoma was arrested at his residence.

## APPLICABLE LAW

Evidence of consciousness of guilt is relevant if (1) "reasonable inferences" suggesting

consciousness of guilt can be drawn from the evidence, and (2) the evidence is probative of the

defendant's guilt of the charged offense.  *United States* v. *Perez*, 387 F.3d 201, 209 (2d Cir.

2004) (citing 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, Section

401.08 (2d ed. 1997) ("Evidence of behavior to prove consciousness of guilt is relevant only if

the guilty behavior is related to the crime at issue.")

A wide range of conduct by defendants has been admitted into evidence by courts in

criminal cases as circumstantial evidence of consciousness of guilt, ranging from flight, *United*

*States* v. *Ayala*, 307 F.2d 574, 576 (2d Cir. 1962) (allowing evidence of flight even though the

evidence "may be subject to varying interpretations"), to hiding in a closet from police, *United*

*States* v. *Martinez*, 190 F.3d 673, 678 (5th Cir.  1999), to procuring a false witness account of a

law enforcement search that recovered evidence, *Perez*, 387 F.3d at 208-9, and even to

threatened suicide attempts.  *Sloan* v. *State*, 2013 WL 85449 (Fla.App. 4 Dist. 2013).

The Government is aware of only one reported case that specifically addresses the

admission of evidence of fainting by a defendant as evidence of consciousness of guilt.   In

*Donald v. Secretary, Dept. of Corrections*, petitioner brought a claim for habeas relief, alleging

that trial counsel was ineffective for failing to object to testimony that he "passed out" upon

being questioned by the police.  *Donald*, 2012 WL 3291731, at *5 (Aug. 13, 2012, M.D.

Florida).  The District Court rejected this argument, observing that it had "not found any case

law to suggest that testimony relating to a criminal defendant's physical reaction to a question

from police during an investigation is inadmissible at trial" and concluding that evidence of the

defendant's "behavior during questioning was directly relevant" to the defendant's knowledge of

his wrongdoing.  *Id.* (citing *Messick v McDaniel,* 2011 WL 4402617, at *9 (D. Nev. Sept. 19,

2011), for the proposition that testimony about a defendant's attitudes and behaviors at the time

of his initial questioning was relevant to show consciousness of guilt and knowledge of the

crime's occurrence).   The Government is aware of no case that has rejected the admission of

evidence of a defendant's fainting, on any grounds and the defense has cited to none.

One of the factors often considered by courts is the proximity in time between the

defendant's conduct that is sought to be offered as consciousness of guilt, and the crime itself or

some other significant event.  *See, e.g., United States* v. *Russell*, 662 F.3d 831, 850-52 (7th Cir.

2011), *cert denied*, 132 S. Ct. 1816 (2012) (allowing evidence of flight as consciousness of guilt

even though defendant left the country two years after he learned he was under investigation,

where defendant fled shortly after he was confronted with incriminating evidence and told

federal charges were being considered.)

As the Second Circuit noted in *Perez*, "[a]s a general matter, all relevant evidence is

admissible under the Federal Rules of Evidence unless specifically excluded."  *Perez*, 387 F.3d

at 209 (citing Fed. R. Evid. 401).   This is true, the Court stated, even though the false statements

at issue in *Perez* were "not themselves sufficient evidence on which to base a conviction"; the

offered evidence is admissible so long as it "may strengthen an inference of guilt supplied by

other evidence" *Id.*   Consciousness of guilt evidence is admissible if the court (1) determines

that the evidence is offered for a purpose other than to prove the defendant's bad character or

criminal propensity, (2) decides that the evidence is relevant and satisfies Rule 403, and (3)

provides an appropriate instruction to the jury as to the limited purpose for which the evidence is

introduced, if such instruction is requested.  *Perez* at 209 (citing *United States* v. *Mickens*, 926

F.2d 1323, 1328-9) (2d Cir 1991).

Evidence of the defendant's fainting, not when initially approached by the agents about a

former associate, but only when directly told that the agents wanted to talk to him about his

involvement in insider trading in 2008, should be admitted because it is (1) relevant to the

defendant's consciousness of guilt, (2) it is not unduly prejudicial nor does it tend to prove the

defendant's bad character or criminal propensity, and (3) any concern of supposed juror

confusion can be addressed through an appropriate limiting instruction.

**ARGUMENT**

A.   It Is Reasonable to Infer Martoma's Consciousness of Guilt of the Charged Crime
     When he Fainted Only After Being Confronted About His Involvement in the Crime

It is reasonable to draw the inference of consciousness of guilt from Martoma's fainting.

First, the mere arrival of the FBI at his home did not cause Martoma to faint.  They approached,

told him a ruse about what they wanted to speak with him about – and he didn't faint, but rather

agreed to go elsewhere on the property and speak with the agents.  And the interaction to that

point, at Martoma's Boca Raton home, did not present the kind of "complex reality of citizen-

police relationships in many cities" that the Fourth Circuit was concerned about in *United States*

v. *Massenburg*, 654 F. 3d 480, 489 (4th Cir. 2011), and to which the defense points in its motion.

(Defense Motion ("hereafter Defense MIL #5") at 4).

Moreover, as the defense points out, the Government's probe into SAC Capital was well-

known at the time that the FBI approached Martoma (Defense MIL #5 at 4).  If just the

4

possibility of being questioned by the FBI about his former employment at SAC Capital was going to cause Martoma to faint, Martoma presumably would have fainted when the agents identified themselves as being with the FBI, aware as he was that the Government was investigating SAC Capital.  Rather, he listened to the agents identify themselves and offer their (ruse) explanation for why they wanted to speak with him, and then moved to a location elsewhere on the property to speak with them further.

Further, the nature of the ruse that the agents offered Martoma – that they wanted to speak with him about a former associate, Individual #1, about whom Martoma had spoken to the FBI previously and with whom he had bad blood, and who, the agents told him, had recently been released from prison – might itself be the kind of thing that would cause someone particularly susceptible to fainting when anxious, to faint upon hearing it.  But Martoma did not. Martoma fainted only after, and immediately after, he was accused by the agents of involvement in the specific crime with which he is now charged.  And it is that sequence of events that ties Martoma's fainting directly to the charged crime, and makes his fainting relevant for the jury to consider, with appropriate limiting instruction.

The Government is not suggesting, needless to say, that the fainting alone establishes Martoma's guilt – only that, consistent with Rule 401, it tends to make a fact, the defendant's consciousness of his guilt, more probable than it would be without the evidence.  Certainly the defense has, and would at trial, make arguments about why such evidence should be given no or little weight.[2]  But that dispute as to the weight of the evidence is appropriately for the jury where there is no undue prejudice nor any suggestion in the offered evidence that the defendant

---

[2]   We note that the defense did not argue in its motion that Martoma was particularly susceptible to fainting in general, or suffered from some health condition that made fainting more likely. Nor is the Government aware of any history that Martoma had of fainting while working at his high-stress trading jobs.

is of bad character or has a propensity to commit the crime charged.  As set forth below, there is nothing unduly prejudicial about the defendant's fainting, and it does not to show criminal propensity or bad character.

   B.   There is Nothing Prejudicial About Evidence of Martoma's Fainting

   The introduction of evidence of Martoma's fainting brings with it no danger of unfair prejudice, confusion of the issues or misleading the jury.  There is nothing about fainting that brings with it an association with a proclivity to commit crimes in general, or insider trading in particular.  Nor is the evidence of fainting of such a character that it inherently is inflammatory, in the way that some other kinds of evidence might be.  The jury would be left with a simple, common sense question as to whether or not they believed that his fainting, under all the circumstances, tended to indicate consciousness of guilt, or not.

   The defense asserts in conclusory fashion that prejudice would come because "it would lead the jury wrongly to *assume* his consciousness of guilt" and that the "it would be virtually impossible for the jury not to be colored by Mr. Martoma's fainting."  (Defense MIL #5 at 6) (emphasis in original).  But the defense does not explain why this purportedly is so.  Nor it is apparent why a limiting instruction from the Court could not effectively address any concern. *See, e.g., Zafiro* v. *United States*, 506 U.S. 534, 540-41 (1993) (holding that limiting "instructions suffice to cure any possibility of prejudice"); *United States* v. *LaFlam,* 369 F.3d 153, 157 (2d Cir.2004) (holding that the admission of other act evidence was appropriate where the Judge "also gave a limiting instruction to the jury that reduced any potential prejudice that introduction of the uncharged other act evidence might have caused"); *United States* v. *Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (holding that "we must presume that juries understand and abide by a district court's limiting instructions.").

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court reject

the defense motion and permit the Government to offer evidence that the defendant fainted when

confronted by agents about his involvement in the charged crime.

Dated:  December 20, 2013
        New York, New York

> Respectfully submitted,
>
> PREET BHARARA
> United States Attorney
>
>
> By:  _____\s_____
>     Arlo Devlin-Brown
>     Eugene Ingoglia
>     Assistant United States Attorneys
>     Tel. No.: (212) 637-2506/1113