UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

      - v. -                                    :          S1 12 Cr. 973 (PGG)

MATHEW MARTOMA,                     :

      Defendant.                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S OPPOSITION TO DEFENDANT'S FIRST MOTION *IN LIMINE*
SEEKING A WRITTEN JUROR QUESTIONAIRE**


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America.

Arlo Devlin-Brown
Eugene Ingoglia
Assistant United States Attorneys

The Government respectfully submits this Memorandum of Law in opposition to defendant Matthew Martoma's Motion *In Limine* No. 1 seeking a written juror questionnaire in advance of *voir dire*.

## PRELIMINARY STATEMENT

The defendant is seeking to have prospective jurors in this case fill out an 11 page detailed written juror questionnaire in advance of *voir dire*. Def. Mot, App'x 1. Such a questionnaire would: (1) unnecessarily delay the *voir dire* process as it would take jurors hours to complete and necessitate significant follow-up questions; (2) delve into personal matters of jurors that have nothing to do with discovering personal bias (but that nonetheless could prove fodder for a jury consultant); and (3) not be any more effective at identifying juror bias than the Court's normal *voir dire* process. For these reasons, and as discussed more fully below, the Government opposes the defendant's request for a written questionnaire in advance of *voir dire*. However, should the court decide to use a written juror questionnaire, the Government believes that the one proposed by the defendant is far too probing and requests an opportunity to submit a proposed questionnaire for the court's consideration.[1]

## ARGUMENT

**The Defendant Has Not Demonstrated Why a Written Juror Questionnaire in Advance of *voir dire* is Necessary**

A. <u>Applicable Law</u>

Rule 24(e) of the Federal Rules of Criminal Procedure provides for the examination of a juror as follows:

> (1) **In general**. The court may examine prospective jurors or may permit the attorneys for the parties to do so.

---

[1] The Government is aware that the Court stated today that it intended to use a written jury questionnaire. The Government respectfully requests that the Court consider the Government's Opposition before reaching a final determination.

1

> (2) **Court Examination**. If the Court examines the jurors, it must permit the attorneys for the parties to:
>
>> (A) ask further questions that the court considers proper; or
>> (B) submit further questions that the court may ask if it considers them proper.

It has long been the rule that "judges have been accorded ample discretion in determining how best to conduct the *voir dire*.'" *United States* v. *Quinones*, 511 F.3d 289, 299 (2d Cir. 2007) (citing *Rosales-Lopez* v. *United States*, 451 U.S. 182, 189 (1981)). So long as a court's questioning survey[s] the likely sources of bias and prompt[s] the jurors . . . to consider for themselves what other sources of potential bias there might be," *United States* v. *Zane*, 495 F.2d 683, 693 (2d Cir. 1974), the district court is granted considerable deference in how to conduct the *voir dire* process. *See also United States* v. *Tutino*, 883 F.2d 1125, 1133 (2d Cir. 1989) ("As long as a defendant's substantial rights are protected by *voir dire* designed to uncover bias as to issues in the cases and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal.") (quoting *United States* v. *Barnes*, 604 F.2d 121, 140 (2d Cir. 1979)).

B. Discussion

The defendant's request for a written juror questionnaire in advance of *voir dire* is premised on the notion that the United States Attorney's Office for the Southern District of New York – fueled by the media and a public that allegedly despises Wall Street – has poisoned the prospective jury pool through statements made at press conferences and "widely reported" by the media. As a preliminary matter, the facts as outlined by the defendant are misleading. The Defendant's submission opens by saying that a statement by the U.S. Attorney that the Office "bring[s] cases when we have proof beyond a reasonable doubt that we can convince a jury unanimously of someone's criminal guilt, and when we get to that point with respect to anyone...

2

we bring the case at that time"[2] was "the U.S. Attorney effectively t[elling] the public that Mr. Martoma – like SAC and other SAC employees – is already guilty," is disingenuous. The opposite is true. This statement was made as part of a press conference to announce the guilty pleas of the SEC entities, in which Mr. Martoma was never mentioned, and in which the U.S. Attorney stated:

---

[2]  Def. Sub. at 1; United States Attorney's Officer for the Southern District of New York, Guilty Plea Agreement with SAC Capital Management Companies Announced, Nov. 5, 2013, available at http://www.justice.gov/usao/nys/pressconference.

3

> The plea agreement announced today, moreover, is solely between this Office and the SAC companies, and involves no individuals. It does not include pleas of guilty by any individuals, nor does it provide any criminal protection or immunity for any individuals going forward. Let me also stress that individual defendants who have been charged and are awaiting trial are presumed to be innocent, and the plea agreement announced today does not affect that presumption in any way.[3]

The defendant also cites to a series of news articles relating to the Government's law enforcement efforts but presents no empirical evidence that those efforts have so tainted jury pools in this District as to require a heightened level of jury examination in high profile cases. Judges in this district dealing with equally high profile cases have long declined to use such a questionnaire, finding traditional *voir dire* sufficient. *See, e.g., United States* v. *Gupta*, 11 Cr. 907 (JSR) (no questionnaire or defense counsel examination); *United States* v. *Salameh*, No. S5 Cr. 0180 (KTD), 1993 WL 364486, at *2 (S.D.N.Y. Sept. 15, 1993) (Duffy, J.) (declining to use a jury questionnaire despite high level of publicity in case charging defendants with bombing World Trade Center, because searching *voir dire* would suffice); cf. *United States* v. *Rajaratnman*, 09 Cr. 1185 (RJH) (court used a very limited jury questionnaire aimed at juror hardship rather than juror bias).

Most recently, in the trial of SAC portfolio manager Michael Steinberg, Judge Sullivan denied Mr. Steinberg's request for a written juror questionnaire. While Judge Sullivan agreed that there was significant publicity surrounding the SAC cases,[4] he concluded that court's normal practice of individually questioning any potential jurors who have been exposed to publicity

---

[3] *Id.*

[4] Given that the Steinberg trial came in much closer proximity to the SAC plea – the trial began just weeks after the SAC plea agreement was announced – the concern that negative publicity from the SAC entity pleas would prejudice the juror pool was greater in the Steinberg case than in the present one.

concerning the SAC cases was sufficient.[5] Moreover, defense counsel's implied assertion that Judge Sullivan ultimately switched course and "used a written juror questionnaire containing the *voir dire* questions in an aid in screening the jury and expediting the *voir dire* process," is entirely misleading. While Judge Sullivan provided jurors with a copy of the court's *voir dire* questions, the jurors were explicitly instructed <u>not</u> to fill out or hand in the questionnaires ("I'm not going to ask you to hand up the questionnaire. The questionnaire is an aid to you as I go through these questions.").[6] This is not materially different than the oral *voir dire* the Government has proposed, and the Government has no objection if the Court wishes to hand out the questions in advance for convenience.

In contrast, the expansive questionnaire proposed by the defendant in this case is designed to be given to prospective jurors in advance of *voir dire* and to elicit detailed written responses. In particular, the questionnaire consists of eleven pages of specific questions demanding detailed explanatory answers. *See* Def. Sub at 1, App'x 1 (*See, e.g.* Proposed Questionnaire at 8-9: "Have you ever invested in a Hedge Fund(s)? If yes, what was the name of the Hedge Fund(s). If yes, were you satisfied with your investment? Please explain."). Not only would such a questionnaire take most prospective jurors many hours to complete and inevitably lead to extensive follow-up questions, thus slowing down jury selection significantly, the primary difference between the defendant's proposed juror questionnaire and the one used in the Steinberg case is that the currently proposed questionnaire risks delving into areas of "intensely personal matters that have nothing to do with discovering actual bias." *United States* v. *Serafini*,

---

[5] Order Denying Request for Juror Questionnaire at 6-8, *United States* v. *Steinberg*, No. 12 Cr. 121 (S.D.N.Y. Nov. 12, 2013), ECF 295 (acknowledging the significant publicity generated in the Steinberg case and the importance of *voir dire* in empaneling a fair jury, but stating that a written questionnaire unnecessary).

[6] Tr. of Voir Dire at 13:12-15, *United States* v. *Steinberg*, No. 12 Cr. 121 (Nov. 19, 2013), Strassberg Dec. No. 1, Ex. 2.

57 F.Supp.2d 108, 112 (M.D. Pa.), *aff'd* 167 F.3d 812 (3d Cir. 1999) (disfavoring such inquiries); *see also Barnes*, 604 F.2d at 140 (attorneys are not entitled to a jury selection process that enables them to pursue "more and more information to aid in filling the jury box with persons of a particular type whom they believe to be well disposed toward their clients"). Given the substantial resources available for Martoma's defense, these detailed jury questionnaires could provide grist for intense "jury research" during the selection process that could constitute a similarly unnecessary infringement on privacy. For example, in the recent Countrywide civil fraud trial, the defense team for the individual defendant researched a juror – even after she had been selected – through steps that included accessing the juror's Linked In page, which the juror then learned about, prompting a note to the Court from the juror who stated she "felt intimidated," to which the Court responded: "As you know, my prior policy and the policy of many judges was not to allow precisely that because of the fear that it would invade – that it would intimidate jurors."[7] The Government raises this not to suggest that defense counsel here would use this technique, but simply to note that easy ability to conduct online research and together with detailed questionnaires from jurors can move the *voire dire* process beyond its limited and valid purpose of finding biased jurors.

Finally, there is nothing about the subject matter of this trial that would cause potential jurors to be uncomfortable or unwilling to discuss their views in response to questions by the Court. Even in cases raising substantive concerns about the sensitivities of prospective jury members, requests for jury questionnaires have been rejected. *See United States v. Harding*, 273 F. Supp. 2d 411, 429 (S.D.N.Y. 2003) (Kaplan, J.) (denying motion for use of questionnaire where defendant "failed to demonstrate that use of a written questionnaire is necessary to elicit

---

[7]   Tr. of Colloquy at 573:24-25; 579: 4-7, *United States v. Countrywide*, No. 12 CV. 1422 (Sept. 27, 2013), Exhibit A, attached.

honest and frank responses from prospective jurors concerning their ability to be fair and impartial when evaluation evidence concerning, for example, child pornography and homosexuality."). In sum, the defendant has failed to provide any reason why the traditional voir dire process – with individual follow-up questioning – would be insufficient.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the defendant's motion for a written jury questionnaire be denied.

Dated: December 20, 2013
       New York, New York

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

By: _____
     Arlo Devlin-Brown
     Eugene Ingoglia
     Andrea Griswold
     Assistant United States Attorneys
     Tel. No.: (212) 637-2506/1113