573

```
 5        THE COURT:  So as the jury was entering this morning,
 6   my courtroom deputy received a note from juror number ten that
 7   I have already read to counsel at side bar, but I will give
 8   counsel copies of it right now and read it again.
 9        MR. SULLIVAN:  Excuse me, your Honor, sorry to
10   interrupt, could we do this at side bar?
11        THE COURT:  No, absolutely not.
12        MR. SULLIVAN:  Very well.  I didn't want to embarrass
13   the juror.
14        THE COURT:  We're not going to embarrass the juror,
15   but we may have to embarrass counsel.
16        MR. SULLIVAN:  I doubt it, your Honor.
17        THE COURT:  Well, I'm glad to hear that.
18        So the jury note says:  Your Honor, there was a man in
19   the courtroom yesterday who I later saw at lunch break with a
20   professional large camera.  At the end of the day, he followed
21   juror number two and I as we left the building after giving us
22   a slight grin as we came through the door.  I turned to look at
23   him and stopped, then he stopped following us.
24        In addition, I saw that defense was checking on me on
25   social media.  I feel intimidated and don't feel I can be
```

```
                                                                    574
 1    objective.
 2           Signed, juror number ten.
```





575

2013.09.27 (Day 4)

576

[redacted lines 1-15]

16   THE COURT:  Now the next question I have is were
17 counsel who were checking, with the Court's permission, on
18 Google while the jury -- but the permission was to check while
19 the jury was being selected, was there any checking done
20 thereafter?
21   MR. SULLIVAN:  Your Honor, I'm the last person to know
22 anything about computers.
23   THE COURT:  I'm asking not just you, Mr. Sullivan, I'm
24 asking your colleagues who have already demonstrated
25 considerably greater technical skills.

1        MR. SULLIVAN:  If any of my colleagues can answer that
2   question, they certainly are able to do so.
3        THE COURT:  All right.
4        MR. HEFTER:  Your Honor, we can represent that we did
5   not do any online searching after the jury selection.
6        MS. MAINIGI:  I believe -- your Honor, I'm not aware
7   of exactly what it was, but I believe that there was some
8   online searching.  I don't know specifically.
9        THE COURT:  Who did that?
10       MS. MAINIGI:  I would have to get that information.
11       THE COURT:  Is it someone here in the courtroom?
12       MS. MAINIGI:  I'm not exactly sure.
13       MR. CADY:  Judge, I do know.  I think we may have done
14  additional online research later that day after the jury was
15  seated.  I don't know if we stopped right when it was seated.
16       THE COURT:  Did you do any yesterday?
17       MR. CADY:  I don't believe so.
18       THE COURT:  Where were you seated when you were doing
19  this?
20       MR. CADY:  I think -- it wasn't actually me, it was a
21  colleague of mine.
22       THE COURT:  Who was that?
23       MR. CADY:  I don't think he's here today.
24       THE COURT:  Who was that?
25       MR. CADY:  I'm not sure which of our colleagues.

                                                                    578

1            THE COURT:  Who are the possibilities?
2            MR. CADY:  I think it could have been Stewart Ackerly
3    or Matthew Monihan.
4            THE COURT:  Where are they today?
5            MR. CADY:  I believe they are in a hotel today.
6            Sorry, Judge, Matthew is here.
7            THE COURT:  Did you do any checking of jurors after
8    the jury selection.
9            MR. MONIHAN:  We had research compiled from
10   individuals at the firm.  I'm not sure when it was done.  I
11   reviewed it yesterday.
12           THE COURT:  Did you do any of that checking here in
13   court?
14           MR. MONIHAN:  No, sir.
15           THE COURT:  And how about the other gentleman?  He's
16   back at your hotel, you say?
17           MR. CADY:  I think that's right.
18           THE COURT:  So you'll get him here by lunch.
19           MS. MAINIGI:  Yes, your Honor.
20           MR. SULLIVAN:  And your Honor, I can represent to the
21   Court that at the end of the day I will make a full inquiry if
22   the Court needs to know the facts about when and what, if
23   anything, was done.  This is the first case I've heard of where
24   there actually was computer research done, and, as you know, we
25   asked permission to do it.  I had no sense whatsoever there was

                         2013.09.27 (Day 4)

579

1   a time limitation on that.  I assumed one could go on the
2   computer and find out about jurors like anybody.  We'll find
3   out for the Court.
4           THE COURT:  As you know, my prior policy and the
5   policy of many judges was not to allow that precisely because
6   of the fear that it would invade -- that it would intimidate
7   jurors, in the sense that it's hard enough for people to agree
8   to be jurors, which is a substantial inconvenience lasting over
9   many -- in this case, many weeks.  To feel that they're also
10  putting their own persons on the line, albeit with matters that
11  are in some sense public because they're on the social media,
12  is a further impediment to the jury system that one needs to be
13  mindful of.
14          But beginning in a previous trial, and now again in
15  this trial, I permitted, at request of defense counsel, Google
16  searches to be done during the jury selection process so that
17  if there was something that wasn't picked up by the Court's
18  questions but nevertheless might disqualify someone from being
19  a juror, we would find it out sooner rather than later.  And
20  the helpfulness of that was borne out in this very case,
21  because there was a prospective juror, not one who wound up on
22  the jury finally, but a prospective juror who, according to
23  what was on the Web, might have had a prior criminal problem.
24  And we were able, therefore, to put questions to the panel and
25  establish that that was not a problem and did not require his

2013.09.27 (Day 4)

1   removal from the panel.
2           But the balance is still a close one, and if I did not
3   make this clear -- and I frankly thought I had, but if I had
4   not made this clear, the only permission I was granting to
5   search into juror -- information about jurors relating to their
6   personalities, their social relations or whatever, matters
7   available on the Web, was for the limited purpose of making
8   sure that the jury selection process was advanced, not to allow
9   a more sweeping invasion of their -- it may not be technically
10  privacy, it's probably not technically privacy, but it's
11  certainly their personal space in some sense.  So any further
12  such research will stop forthwith.
13          But let's now bring in juror number ten.  This we will
14  do at the side bar.
15          MR. CORDARO:  Your Honor, may the government be heard
16  briefly on this note?  And it may color the Court's questions.
17          THE COURT:  Yes.
18          MR. CORDARO:  The juror makes a representation to
19  social media, and I may be a little bit behind on Googling and
20  Google's capabilities, but my understanding is if you Google
21  someone on the internet that person is not going to know that
22  you are looking for them.  I read social media as more
23  Facebook, Linked In, that sort of thing where --
24          THE COURT:  Good point.  So you're saying that
25  someone, you think, may have misused their access to obtain

581

1  information that would not be generally available?
2          MR. CORDARO:  It's possible, your Honor.  Again, I do
3  not profess to be an expert, but I do know if you're using
4  Linked In and you're a member and you access somebody's page --
5  I know when I do it I could be leaving a footprint on that page
6  for the person to see.  And I also know the recipient might
7  know I'm leaving a footprint and might know when I'm leaving
8  that footprint.
9          THE COURT:  Let me ask counsel, was anything like that
10  done?
11          MR. CADY:  Judge, this is something that we were aware
12  of, and when we were designing what type of internet search we
13  were going to do, our directive was make sure we don't leave
14  any footprints.  It's Google, maybe Linked In, but we would
15  have it switched off so it wouldn't leave footprints.  And
16  there's a way to do it.  I have my account switched off.
17          THE COURT:  I guess, if nothing else, you have all
18  successfully convinced me never to allow this again.

[lines 19-25 redacted]

2013.09.27 (Day 4)