# In The Matter Of:

*UNITED STATES OF AMERICA v*

*DOUG WHITMAN*

*August 14, 2012*

*SOUTHERN DISTRICT REPORTERS*

*500 PEARL STREET*

*NEW YORK, NY 10007*

*212 805-0330*

Original File C8EeWHIF.txt

**Min-U-Script® with Word Index**

| C8EEWHI6 | Whitman - direct | Page 2302 |
|---|---|---|

1  you, dude.  All three never called you back.  He's caught you.
2       Are you referring to being caught by law enforcement
3  or some other thing?
4  A.  No, Jeff Palmer.
5  Q.  Jeff Palmer, okay.  Now, let's go to the next page.
6       THE COURT: Counsel, bear in mind we have to stop in
7  two minutes.
8       MR. ANDERSON: Okay, your Honor.  I have -- your
9  Honor, this call is complete.  I believe one more call is
10 complete.  Just a little bit of clean-up, then I'll be done.
11      THE COURT: We never ask the jury to sit beyond 5:00.
12      MR. ANDERSON: Understood.  I just wanted the Court to
13 know what I had remaining of my direct examination.
14      THE COURT: All right.  Very good.
15      All right.  Then why don't we excuse the jury now.
16 So, ladies and gentlemen, tomorrow we're only going to sit
17 until 4:00.  So you'll be here at 9:00, and I may even be here
18 at 9:00.
19      So we'll try to start at 9:00 tomorrow.  See you then.
20      (Continued on next page)

| C8EEWHI6 | Whitman - direct | Page 2303 |
|---|---|---|

1       (In open court; jury not present)
2       THE COURT: Mr. Whitman, you may step down.
3       Please be seated.
4       So, Mr. Anderson, give me what will now be a binding
5  estimate of how long it will take for those few items you just
6  mentioned.
7       MR. ANDERSON: Yes, your Honor.  I would estimate a
8  half hour, your Honor.
9       THE COURT: All right.  You'll be held to a half hour.
10      Now, clearly the government's cross will go a
11 substantial amount of time.  And I'm not going to require at
12 this point a binding representation from the government any
13 more than I did from the defense at a comparable point.
14      But do you want to give me a ballpark?
15      MR. LAVIGNE: I don't want to go more than three
16 hours, Judge, and I hope I'll be less than that.
17      THE COURT: Okay.  So then we have Mr. Ader.  There is
18 going to be some redirect probably, then we have Mr. Ader, is
19 that right?  That's the next witness?
20      MR. ANDERSON: Yes, your Honor.
21      THE COURT: All right.
22      MR. ANDERSON: Sorry, your Honor.  If I can confer
23 just one moment.
24      (Continued on next page)

| C8E8WHI7 | | Page 2304 |
|---|---|---|

1       MR. ANDERSON: Thank you, your Honor.
2       Our best estimate, Leo Chocron, Jason Ader, Mike
3  Mayer, and then we have the continuing discussion with
4  government about the agent and guidance stipulations.  And then
5  the Sunil Bhalla deposition transcript.
6       THE COURT: I am going to rule on that right now.
7       So it's Mr. Chocron after Mr. Whitman, and then
8  Mr. Ader, and then Mr. Mayer.
9       MR. ANDERSON: Yes, your Honor.
10      THE COURT: And then whatever falls into that present
11 uncertain category of agent testimony, and there may be some
12 rebuttal of the same sort, if I recall correctly.
13      MR. LAVIGNE: Yes.  I think I will confer with my
14 colleagues tonight, and we can let the Court know tomorrow
15 morning.
16      THE COURT: We need to get that either agreed to on
17 both sides or disagreed to so that I can rule because we are
18 running out of time.
19      MR. BERENSON: Your Honor, in that regard, I think
20 there is one ripe issue for the Court's decision.  I have asked
21 my colleague, Mr. Mann, to come in and address your Honor on
22 that if you want to hear it.
23      THE COURT: Maybe but not till I finish my laundry
24 list.
25      With respect to Mr. Mayer, I have further considered,

| C8E8WHI7 | | Page 2305 |
|---|---|---|

1  and I adhere to my preliminary view that he cannot testify on
2  Google other than the chart summary chart that was agreed to by
3  both sides, as reflected on the transcript.  With respect to
4  Polycom, I think his testimony is going to be somewhat
5  restricted, but I will give you the details of that tomorrow.
6  I do not, therefore, anticipate that his direct will take more
7  than about a half hour.
8       With respect to the deposition excerpts from
9  Mr. Bhalla, I have received memoranda from both sides, which I
10 have read and carefully considered.  The defense seeks to put
11 in some testimony from Mr. Bhalla that he gave at an SEC
12 deposition in 2011 in which he denied passing information.  The
13 parties are agreed that in order for this to come in under Rule
14 804(b)(1) as exceptions to the hearsay rule, the defense must
15 show by a preponderance of the evidence that:  (1) the witness
16 is unavailable; (2) that the party against whom the testimony
17 is offered is the same as in the prior proceeding; and (3) that
18 the party had the same motive and opportunity to examine the
19 witness in the prior proceeding.
20      The defense has satisfied the first of those
21 requirements that the witness is unavailable since it has been
22 represented that he will take the Fifth.  But the Court
23 concludes that the defense has not satisfied the second
24 requirement that the party against whom the testimony is
25 offered is the same as in the prior proceeding.

C8E8WHI7                                                    Page 2306

1  Clearly, in a superficial way, the SEC and the U.S.
2  Attorney's Office are different parties, but there are
3  occasions when they are properly treated as the same party or
4  as joint agents of one another, but I do not see that this is
5  such a case. I take the liberty of referring to my own recent
6  decision in United States v. Gupta, the decision I rendered on
7  March 26, 2012, where I held that the two parties were involved
8  in a joint investigation and had mutual obligations, where they
9  were conducting an investigation at which something like 44
10 depositions were jointly conducted.
11     This is not remotely that situation. There is no
12 suggestion that the U.S. Attorney's Office had any role in the
13 conduct of Bhalla's deposition and no one from the U.S.
14 Attorney's Office was present.
15     As I also point out in the Gupta case, this issue has
16 to be evaluated from the standpoint of what relief is being
17 sought. So in the Gupta case, the question was whether the
18 U.S. Attorney's Office had an obligation to obtain from the SEC
19 Brady material arising from the joint investigation that was
20 contained in SEC notes but not in U.S. Attorney's notes, and I
21 held that it did.
22     Here, the question is, in effect, who is taking the
23 deposition and what the parties argued at the proceeding and it
24 wasn't the U.S. Attorney's Office at all.
25     Alternatively, or additionally, I find that the

C8E8WHI7                                                    Page 2307

1  defense has not carried its burden with respect to the third
2  requirement that the party had the same motive and opportunity
3  to examine the witness in the prior proceeding. When someone
4  takes a deposition in a civil case, or for administrative
5  investigatory purposes or the like, one frequently has no
6  motive other than to freeze the witness in whatever his or her
7  story is. The criminal equivalent is the grand jury. Here, in
8  the civil context, it is a discovery device. You want to know
9  what they are going to say. You're not necessarily going to
10 undertake to cross-examine them, or if you do, it may be at a
11 very superficial level because that would not serve your
12 purposes. It is a very different situation from the kind of
13 examination that one would undertake if either it were a trial
14 or if one had reason to believe that it might be used at a
15 trial.
16     Furthermore, the SEC is looking at this from a
17 standpoint of satisfying a preponderance standard and the Court
18 can take judicial notice of the fact that the SEC settles the
19 vast, vast, vast majority of its civil proceedings.
20     So the motivation and the intensity of the examination
21 is wholly different from what would be the case in the U.S.
22 Attorney's Office or if its agent were undertaking the
23 examination.
24     So the Bhalla deposition proffer is denied.
25     MR. ANDERSON: Is the Court inclined to hear any

C8E8WHI7                                                    Page 2308

1  argument on that point?
2     THE COURT: I received a lengthy brief from the
3  defense. I received a brief from the U.S. Attorney's Office.
4  And I am concerned over the last few days, it seems that every
5  time I make a ruling, that's just a prelude to the three or
6  four times one party or another asks to reargue the matter.
7  Nevertheless, go ahead.
8     MR. ANDERSON: I will be very brief, your Honor.
9     I would just point out a couple of facts that are
10 relevant to the government's papers and to which I would like
11 to respond.
12     On page 6 of the government brief, the government
13 argues that the SEC did not have the benefit of the evidence in
14 the criminal investigation. On that point, I would just like
15 to note that the SEC provided Roomy Khan, as the Court will
16 remember, with the 302s from the criminal investigation to
17 prepare her for her deposition.
18     THE COURT: That point, both the government's
19 statement that you referred to and your response, played no
20 role in my ruling a minute ago, but it does remind me that we
21 are supposed to hear from the SEC.
22     Is Mr. McGrath here? There he is. That will teach
23 you to be here in court. Where do we stand, Mr. McGrath, on
24 the undertaking you so kindly undertook
25     MR. McGRATH: Well, your Honor, I think you asked me

C8E8WHI7                                                    Page 2309

1  to follow up on Wednesday evening. Thursday, around lunchtime,
2  I sent an e-mail to counsel for both sides apprising them of
3  our understanding of what was given to Ms. Khan, which was
4  essentially that all of the 302s that were provided to her were
5  marked as Exhibit 19 to her deposition. So counsel for both
6  sides got that e-mail Thursday.
7     THE COURT: Thank you very much. I appreciate that.
8     Go ahead.
9     MR. ANDERSON: I would also point out that during the
10 deposition of Sunil Bhalla, he was cross-examined on a call
11 that was recorded in the course of the criminal investigation.
12     And then just the third and final point I will make
13 and then I will submit, your Honor, is that the SEC staff
14 attorney, who at one point was leading the SEC's investigation,
15 then also led the criminal investigation of Mr. Whitman for, to
16 my understanding, at least two years.
17     THE COURT: I don't understand the relevance of the
18 latter point. Both those points are points that I considered
19 because they were referred to in the papers. It did not appear
20 to me from a review of the transcript that the recording, the
21 use of the recording in the deposition was conducted with
22 anything like the intensity that would have been made it
23 appropriate to meet the third element that we referred to.
24     But, more importantly, with respect to your third
25 point, what does it matter that an SEC person subsequently

C8E8WHI7 Page 2310

became part of the prosecution team? That happens all the time, and the reason it happens all the time is because the SEC person has some learning, some knowledge, that it's useful to what is then a criminal investigation, and also, he is sworn in as a special assistant typically so he can have access to the grand jury, which means he is thereafter barred from talking to the SEC. So he, in effect, changes his role. It's also done, to be perfectly candid, so that the SEC can get some credit.

But what does that matter when it occurred subsequent to the deposition, right?

MR. ANDERSON: Only, to invoke your Honor's formulation, that there are occasions in which the two agencies are properly treated as joint agents of one another.

So those are the factors, as well as those in our papers, that I would point out to the Court, and on that basis submit it, your Honor.

THE COURT: Obviously, you have preserved all your arguments for appeal, and I appreciate your bringing it to my attention.

All right. Now, we are going to have a charging conference, but I have to take another matter that will take about a half hour.

I'm sorry. We will take first the matter that involved Mr. Mann.

MR. BERENSON: While Mr. Mann approaches, I just

C8E8WHI7 Page 2311

wanted to go back to Mr. Mayer for one second with respect to the time estimate. I wanted to remind the Court that he is also serving as our summary witness, and while the true expert portions of his testimony may not last more than about a half hour, I do think he will be on the stand longer than 30 minutes, and I didn't want the Court to harbor a misunderstanding about the overall scope or duration of his testimony.

THE COURT: Let me put it to you this way, and I very much appreciate your bringing that to my attention.

I thought that it would be helpful to counsel, because I can see that we are not going to finish tomorrow, to finish by the close of the morning session on Thursday so that you all could have a full opportunity to prepare your summations, and I would let you go Thursday afternoon, and we would have summations Friday morning and then my charge early Friday afternoon and give it to the jury for deliberations. And I thought that would be in keeping with my well-known reputation of being a nice guy. But if you want to go into Thursday afternoon, you're taking time away from your own preparation for summations. It's really in some ways your choice.

MR. BERENSON: OK. That's fine, your Honor. We appreciate it. We think your estimate of summations on Friday and having it to the jury on that day is realistic. If we are able to reach stipulations with the government on the agent

C8E8WHI7 Page 2312

testimony, I think everything after Mr. Whitman's testimony is unlikely to take more than a day and probably substantially less. Mr. Ader and Mr. Chocron are very short witnesses. So I don't think there is anything wrong with the overall schedule. I will have my foot firmly on the accelerator with Mr. Mayer, and we will wrap him up as quickly as we can.

THE COURT: Let me hear what Mr. Mann is here for.

MR. MANN: Good afternoon, your Honor. Michael Mann for Douglas Whitman.

I have been working with Ms. Berman to try and come to an agreement on the various stipulations to avoid having a long line of FBI agents outside the courtroom coming up for five minutes of testimony one at a time concerning each of the government's cooperators and the many 302s and various notes of interviews that have been taken over the years for each of them. We have been working well together, and we just are looking for some guidance from the Court as to what is permissible in these stipulations. The government has taken the position that if a witness simply does not recall a statement to the FBI, that that would be not necessarily grounds to impeach them upon, and I think that some guidance there would help the parties resolve this issue.

THE COURT: The most I can tell you is you're probably much, much too young to have ever seen any Gilbert and Sullivan operetta, let alone their very best, which is called Trial by

C8E8WHI7 Page 2313

Jury. But in Trial by Jury, every time the judge, who is of course rightly the hero of that operetta, is asked for guidance, he gives them guidance that is of no use whatsoever. So with that prelude, let me give you some guidance.

Normally, an inability to recall would not open the door to the statement of the FBI agent. But there are times where the failure to recall when compared with what the statement was, assuming the FBI agent would say that the statement had been made, would be so glaring that a reasonable juror could infer that that statement that the witness didn't remember was a lie.

So, for example, if a witness said to an FBI agent, Gee, I don't remember the exact information I passed on to Mr. Whitman on such and such occasion, and he is asked here in court, Did you tell the agent that you didn't remember the specific information you passed on, and he said, I don't remember whether I said that to the agent, that would not, in the Court's view, open the door. But if the witness said to the FBI agent, I am sure that I did not pass on any information to Mr. Whitman prior to date X, and he is asked on cross-examination, Didn't you tell the FBI agent that you were quite sure that you didn't pass any information on to Mr. Whitman before date X, and the witness says, I don't remember whether I said that or not, that would be a much more glaring kind of failure of recollection and might open the door.