UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                           :

UNITED STATES OF AMERICA      :

                                                           :

        -v.-                                   :
                                                           :      12 Cr. 973 (PGG)

MATHEW MARTOMA,               :

                                                           :

                Defendant.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S FIRST IN LIMINE MOTION TO ADMIT "NON-BAPI" INFORMATION

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States
    of America

ARLO DEVLIN-BROWN
EUGENE INGOGLIA
Assistant United States Attorneys

   - Of Counsel

The Government respectfully submits this memorandum of law in further support of the Government's motion in limine (and in reply to the defendant's opposition) seeking a ruling that certain evidence of other acts by the defendant, Mathew Martoma, may be admitted as direct evidence of the charged crimes, or, in the alternative, pursuant to Federal Rule of Evidence 404(b).  The evidence at issue concerns certain information about drugs other than bapineuzumab that was confidential in nature, and was sent between the defendant, on the one hand, and the doctors from whom it is charged he received material non-public information about bapineuzumab, on the other.  This evidence is inextricably intertwined with the charged offense, and is directly relevant to the defendant's corrupt relationship with the doctors who (correctly) viewed the information they were providing to the defendant as confidential and, in some cases, to the defendant's ability to make use of other information the doctors were providing about the bapineuzumab trial results.

I. **EVIDENCE OF MARTOMA'S RECEIPT AND SUBSEQUENT TRANSMISSION OF OTHER "NON-BAPI" CONFIDENTIAL INFORMATION IS APPROPRIATELY ADMITTED AS DIRECT EVIDENCE OF THE CHARGED CONSPIRACY**

The defense seeks to exclude any evidence concerning confidential information that is unrelated to bapineuzumab (which it refers to as "non-bapi information").  Def. Opp. at 1.  The defense claims that the Government, by seeking to introduce such evidence, is "attempting to conflate confidential with criminal," even while it acknowledges and criticizes the Government for not seeking to prove that the transmission of such "non-bapi" confidential information itself constituted insider trading.  Def. Opp. at 2.  The defense, in its opposition, expresses confusion about the meaning of the term "confidential" – a confusion Martoma did not seem to share at the time, since he himself expressly described the information as confidential repeatedly in emails --

1

before inaccurately asserting, without basis, that the information at issue was public and legally obtained. Def. Opp. at 2.

The Evidence Is Probative of the Relationship Between Co-Conspirators

    None of the arguments offered by the defense justify the exclusion of evidence that the two doctors each transmitted information to Martoma that he (the doctor) believed to be confidential. Evidence that a doctor transmitted information to Martoma, even though the doctor believed he was doing so contrary to a confidentiality agreement and to his obligation to the company at issue, is direct evidence of the conspiracy charged in the indictment, showing both the doctor's willingness to breach his confidentiality obligations in order to help Martoma, and, more generally, the corrupt relationship between the co-conspirators. It illustrates how the relationship between Martoma and each of the doctors evolved, from initially communicating about things clearly in the public domain, to the sharing of confidential data about a drug trial whose results had been made public (even though the raw data had not), and finally to sharing material non-public information about bapineuzumab's safety and, ultimately, its efficacy. The Second Circuit has repeatedly held that such evidence is admissible to (1) explain the development of the illegal relationship between participants in the conspiracy; (2) explain the mutual trust that existed between conspirators; or (3) complete the story of the crime charged. *See, e.g., United States* v. *Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (evidence of prior conduct involving co-conspirators is admissible "to show the existence of the illegal relationship . . . and how it developed."). The evidence at issue is properly admitted in the instant case because it helps explain the relationship between Martoma and the doctors, and how the crime developed.

<u>The Evidence Is Necessary to Complete the Story of the Charged Crime
And Is Inextricably Intertwined With the Evidence of the Charged Offense</u>

Moreover, the Second Circuit has long held that "[e]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *See, e.g., United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense").

In the instant case, the evidence concerning the sharing of the "non-Bapi" confidential information is inextricably intertwined with the evidence regarding the charged offense. For example, the evidence at trial would show that Martoma engaged a statistician to conduct a statistical analysis attempting to project the likelihood that the phase 2 trial of bapineuzumab would reach statistical significance with respect to certain end-points. The evidence will show that Martoma sent, by email, various pieces of information to the statistician, to be reviewed and used in connection with such analysis. Martoma sent, in the very same email, confidential information that was specific to bapineuzumab, as well as confidential information that was not specific to bapineuzumab, but was relevant for the purpose of doing the bapineuzumab statistical analysis.

For example, Martoma sent to the statistician data about placebo groups related to Alzheimer's disease studies that did not involve bapineuzumab; Martoma described this information in the text of the email he sent as "some confidential data on these topics from

3

unpublished trial."  In fact, Martoma had obtained this information from Dr. Gilman, who had in turn obtained it from a colleague, promising the colleague that he would "guard it carefully" because "it remains unpublished."[1]  Dr. Gilman then promptly forwarded the data to Martoma.  This "non-bapi" data was included in the same email with other bapineuzumab-specific data, for the purpose of being used by the statistician in conducting an analysis about bapineuzumab.  Similarly, in the very same email, Martoma sent raw data from the drug trial of the drug AN-1792 (described by Martoma as "the parent compound from which AAB-001 [bapineuzumab] was derived") to the statistician.  The results of that study had been published by the time of the email; the far more detailed raw data, in the understanding of Dr. Gilman, who sent it to Martoma, had not.

All of this information, as well as various bapineuzumab-specific information (some of which was provided by Dr. Gilman in breach of his duties to Elan and Wyeth) was included by Martoma in the same email to the statistician.  Near the conclusion of that email,  Martoma reminded the recipient that the email and documents he attached to the email **"reflect a number of confidential materials.  Please do not share with others and use only for purposes of this project."** (Emphasis in the original).  Such a statement by Martoma is itself probative of Martoma's knowledge of and understanding of the concept of confidentiality in general, and that certain information related to drug trials is confidential.

---

[1]  Although the information did not come from a study involving bapineuzumab, it was relevant for an analysis about bapineuzumab because it concerned the placebo group of an Alzheimer's drug trial, and information about Alzheimer's disease patients who received the placebo, and not the drug, in one trial, could reasonably be informative with respect to the placebo group of a different drug trial.

In summary, the email sent by Martoma contains the bapineuzumab information, and the "non-Bapi" information, together in the same email, all sent by Martoma to the statistician to conduct an analysis about bapineuzumab. This is not an example of the Government "conflating" anything – the Government is offering the evidence as it found it, and as the defendant created it. The passing of both the bapi and the non-bapi confidential information is intertwined because that is how the defendant himself received and delivered it during the course of the charged conspiracy.[2]

There Is No Risk of Unfair Prejudice

Finally, there is no risk of unfair prejudice here. The defense argues that the jury will be confused because evidence of what the defense views as innocent, lawful sharing by Martoma, will somehow "unfairly color the jury's view of the defendant's character." Def. Opp. at 4. It is difficult to reconcile the defendant's argument that the non-bapi information was not particularly significant with the argument that it will be deeply prejudicial. The offered evidence is "not especially worse or more shocking than the activity charged in the indictment." *See United States* v. *Fitzgerald*, 2013 WL 5686106 at *2, 3 (2d Cir. 2013) (affirming district court's determination that testimony concerning a prior, unconsummated drug transaction was appropriately admitted as background to a drug conspiracy). Nor is there anything about such evidence that tends to prove anything whatsoever about the defendant's character. To the extent the defense wishes to argue that the defendant was acting appropriately, they will have plenty of

---

[2] Nor is the defendant's complaint that the Government has not established that providing this non-bapi information to the defendant was material non-public information of any moment. The Government does not take the position – and will not argue – that the non-bapi data was itself material non-public information.

5

opportunity to do so at trial, through cross-examination, through argument, through any defense that they choose to present, if they so choose.

Moreover, evidence about an act that is not itself a crime can be appropriately offered at trial in order to prove aspects of the charged conspiracy.  For example, in a drug conspiracy, it would be completely appropriate and typical for evidence to be introduced that, for example, a co-conspirator brought "cut" to the defendant at a particular location.  This would be admissible because it would tend to show the relationship between the co-conspirator and the defendant and, more basically, because it showed how the drug conspiracy operated; it was part of the story of the crime.  This would be true even though, in this example, there are other potential uses for the "cut" substance, and possession of the substance by itself is not a crime.  Similarly, it would not be controversial in a drug conspiracy trial for evidence to be admitted that a defendant arranged with a co-conspirator to have a trap, or secret compartment, put into his vehicle.  This would be appropriately and typically accepted into evidence as part of the story of the crime, showing the relationship between the co-conspirators.  Again, this evidence would be admitted routinely even though it is not an independent crime to have a car with a secret compartment.

In these examples, defense counsel might well at trial argue that the evidence of the cut or the trap was not itself proof the defendant was guilty of the charged crime; he or she might argue that possessing those things is completely legal.  But the evidence still would be relevant, and still would be admitted.  It would not be excluded because of fear that a juror would be confused about whether the defendant was charged with distributing drugs or distributing "cut"; it would not be excluded for fear of a mini-trial concerning all the legal ways one could use "cut" or hidden compartments.

Similarly, in the instant case, what the defense has set forth concerning the non-bapi evidence are perfectly good arguments for him to make at trial, to attempt to persuade the jury that they should give little weight to the non-bapi evidence. But there is no legitimate reason to exclude that evidence, which shows the relationship of trust that developed between the doctors and Martoma, and-or which tells the story of the crime charged and how it happened, and which is entirely without unfair prejudice concerns, from trial.

For all these reasons, the Government respectfully submits that the proffered evidence should be admitted either as direct evidence or pursuant to Rule 404(b).

Dated: December 27, 2013
New York, New York

>Respectfully submitted,
>
>PREET BHARARA
>United States Attorney
>
>By: _____\s\_____
>Eugene Ingoglia
>Arlo Devlin-Brown
>Assistant U.S. Attorneys
>212-637-1113/ 2506