UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/2/14

UNITED STATES OF AMERICA,

-against-

MATHEW MARTOMA,

Defendant.

**ORDER**

12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

    Defendant Mathew Martoma is charged with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and with two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5 and 240.10b5-2, and 18 U.S.C. § 2. (Superseding Indictment (Dkt. No. 61)) The gravamen of the Indictment is that from about 2006 through July 2008, the Defendant directed trading activity for his hedge fund employer on the basis of material non-public information. The non-public information was allegedly supplied by doctors participating in a clinical trial of a drug for possible use in treating Alzheimer's disease. One of these doctors – Sidney Gilman – has entered into a cooperation agreement with the Government and is expected to be a critical witness at trial. (See July 17, 2013 Gilman Br. (Dkt. No. 47) at 1) Dr. Gilman was employed by the University of Michigan (the "University") at the time of the charged conspiracy. (Id.)

## BACKGROUND

    On June 21, 2013, Defendant moved to compel the production of certain communications and documents stored on electronic media used by Dr. Gilman. (Dkt. No. 35) On July 17, 2013, Dr. Gilman moved for a protective order concerning allegedly privileged

materials stored on these devices. (Dkt. No. 46) The communications and documents at issue are stored on

> (1) an image of a laptop computer issued by the University of Michigan that Dr. Gilman used and provided to the Government (the "Laptop Image"), (2) the laptop computer issued by the University of Michigan to Dr. Gilman and later returned to the University of Michigan, (3) a desktop computer issued by the University of Michigan to Dr. Gilman and later returned to the University of Michigan, and (4) five flash or "thumb" drives issued by the University of Michigan to Dr. Gilman and later returned to the University of Michigan.

(June 21, 2013 Def. Br. (Dkt. No. 36) at 1-2)

On December 20, 2013, this Court ruled that Dr. Gilman had waived the attorney-client, marital communications, and work product privileges as to documents and communications contained on a forensic copy of his laptop's hard drive. (Dec. 20, 2013 Tr. 32) This forensic copy was made by the Government, with Dr. Gilman's permission, in August 2012. (See July 17, 2013 Mukasey Decl. (Dkt No. 49), Ex. A) The Court also found that Dr. Gilman had waived the attorney-client and marital communications privileges as to documents stored on the electronic devices he returned to the University after his resignation in November 2012. (Dec. 20, 2013 Tr. at 32-33)

The Court reserved decision, however, as to whether Dr. Gilman had waived work product protection with respect to communications and documents stored on the devices he had returned to the University. (Id. at 33-36) The Court ordered Dr. Gilman to produce for in camera review any materials from these devices that he claims are protected by the work product doctrine. (Id. at 36)

On December 23, 2013, Dr. Gilman's counsel submitted for in camera review eleven documents that Dr. Gilman claims are protected by the work product doctrine.

2

## DISCUSSION

"Unlike the attorney-client privilege . . . work product protection is not necessarily waived by disclosures to third persons." Medinol, Ltd. v. Boston Scientific Corp., 214 F.R.D. 113, 114 (S.D.N.Y. 2002). This difference reflects the fact that the attorney-client privilege and the work product doctrine serve different purposes:

> [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.
>
> A disclosure to a third party waives the attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance. Because the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine. Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information.

Westinghouse Elec. Corp. v. Republic of Phil., 951 F.2d 1414, 1428 (3rd Cir. 1991) (citing Hickman v. Taylor, 329 U.S. 495, 510-11 (1947); United States v. AT&T, 642 F.2d 1285, 1299 (D.C. Cir. 1980)); see also Fullerton v. Prudential Ins. Co., 194 F.R.D. 100, 103 (S.D.N.Y. 2000) (quoting Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 125 F.R.D. 578, 587 (S.D.N.Y. 1989)) ("'The work-product doctrine is waived when documents are voluntarily shared with an adversary . . . .'"); Bowne of N.Y.C., Inc. v. AmBase Corp., 150 F.R.D. 465, 479 (S.D.N.Y. 1993) ("As articulated by most courts, . . . a waiver [of work product protection] will be found only if the party has voluntarily disclosed the work-product in such a manner that it is likely to be revealed to his adversary.").

Accordingly, in determining whether a disclosure results in the waiver of work product protection, courts first consider whether the material at issue was disclosed to an adversary. See In re Steinhardt Partners, L.P., 9 F.3d 230, 236 (2d Cir. 1993) (citing Westinghouse, 951 F.2d at 1428; In re Subpoenas Duces Tecum, 738 F.2d 1367, 1372 (D.C. Cir. 1984)) (analyzing whether "the SEC stood in an adversarial position to Steinhardt" when Steinhardt provided the SEC with a memorandum containing opinion work product); In re Subpoenas Duces Tecum, 738 F.2d at 1372 (same).

At a December 20, 2013 hearing, this Court concluded that an adversarial relationship existed between Dr. Gilman and the University on November 28, 2012, when he returned the University's electronic equipment – on which the alleged work product material was stored – following his resignation. (Dec. 20, 2013 Tr. 35; see July 17, 2013 Mukasey Decl. (Dkt. No. 49), Ex. B) On November 21, 2012 – a week before – the University had issued a press release "regarding [the] federal investigation involving Dr. Sid Gilman." (June 21, 2013 Strassberg Decl. (Dkt. No. 37), Ex. I) In the release, the University stated that it

> takes this situation very seriously and is carefully reviewing all of Dr. Gilman's activities while a faculty member at our University. There is an ongoing legal process, and we recognize the importance of letting that process occur. The University of Michigan has comprehensive guidelines in place to govern activity in both clinical trials and for University employees engaged in consulting work, and any actions taken will be in accordance with University policies.

(Id.)

The gist of the press release is that – as a result of the federal securities fraud investigation – the University has embarked on a review of Dr. Gilman's conduct to determine whether he violated University guidelines for employees engaged in clinical trials and consulting work. Given that Dr. Gilman was the subject of an investigation focused on whether he had complied with University policies governing clinical trials and

4

consulting work, he was then in an adversarial posture with respect to the University. Indeed, he resigned shortly after the press release was issued. The conclusion that Dr. Gilman had an adversarial relationship with the University at this time is likewise supported by his assertion that he was "essentially compelled . . . to cough up [the University's electronic] devices under threat of losing 30 years' worth of pension and retirement benefits."[1] (Aug. 23, 2013 Tr. 22) In returning electronic devices to the University that contained alleged work product material, Dr. Gilman waived whatever work product protection might otherwise exist with respect to the materials stored on these devices.

The scope of the waiver extends to both fact work product and opinion work product.[2] Although opinion work product is generally entitled to greater protection, the Second Circuit has held that voluntary disclosure of work product to an adversary

---

[1] Dr. Gilman has previously suggested that he did not act voluntarily in returning the University-owned electronic devices to the University, because he was pressured to return these devices on pain of losing his pension benefits. (Aug. 23, 2013 Tr. 22) Whatever pressure Dr. Gilman may have felt in this regard does not demonstrate that his decision to return the devices was involuntary, however. Undoubtedly, every corporate executive whose company is under SEC or criminal investigation, and who decides to share work product material with the SEC or the Department of Justice, feels pressure to do so, but that pressure is not sufficient to demonstrate that production is involuntary. See, e.g., In re Steinhardt Partners, L.P., 9 F.3d 230, 234 (2d Cir. 1993) (production of memorandum containing opinion work product was voluntary even though "Steinhardt knew that it was the subject of an SEC investigation"); In re Initial Pub. Offering Sec. Litig., 249 F.R.D. 457, 466 (S.D.N.Y. 2008) (noting that even where work product is disclosed after a prosecution has been threatened, "Steinhardt makes clear that such disclosures are considered voluntary for purposes of a waiver analysis"). In determining whether work product material was produced voluntarily, courts have generally looked to whether the material was "obtained through compulsory legal process." See Steinhardt, 9 F.3d at 234; In re Subpoenas Duces Tecum, 738 F.2d 1367, 1373 (D.C. Cir. 1984) (distinguishing "between voluntary disclosure and disclosure by subpoena").

[2] "[F]act work product may encompass factual material, including the result of a factual investigation." In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007). "In contrast, opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product." Id. (quoting United States v. Adlman, 134 F.3d 1194, 1197 (2d Cir. 1998)).

5

waives the protections of the work product doctrine, including as to opinion work product material.  In <u>In re Steinhardt Partners, L.P.</u>, for example, the Second Circuit held that a party had waived work product protection – as to a memorandum containing opinion work product material – by voluntarily disclosing that document to the SEC.  9 F.3d at 234, 236.

Numerous district courts in this Circuit have likewise concluded that the voluntary production of work product to an adversary waives work product protection, both as to fact and opinion work product.  <u>See</u>, <u>e.g.</u>, <u>S.E.C. v. Gupta</u>, 281 F.R.D. 169, 173 (S.D.N.Y. 2012) ("[T]he SEC and the USAO waived any work product protection they had over legal strategy in their questioning when they posed . . . questions to [a non-party witness with whom they did not share a common interest] to prepare him for his deposition."); <u>Ricoh Co., Ltd. v. Aeroflex Inc.</u>, 219 F.R.D. 66, 70 (S.D.N.Y. 2003) (attorney waived any work product protection applicable to his statements "by sharing his views or questions with . . . an employee of a non-party witness"); <u>Fullerton</u>, 194 F.R.D. at 104 ("The produced documents . . . are replete with work product. . . . [They] discuss in some detail the lawyer's plan for investigating the  . . . claims . . . [and] conclusions about those claims. . . . I am constrained to conclude that the work-product privilege has been waived with respect to matters touching on the . . . claims and the handling of the threatened . . . litigation."); <u>In re Leslie Fay Cos., Inc. Sec. Litig.</u>, 152 F.R.D. 42, 44 (S.D.N.Y. 1993) ("After reviewing the Report <u>in camera</u>, we are inclined to find that the Report constitutes attorney work product. . . . However, the Court finds it unnecessary to

reach this decision because we find that the Audit Committee waived any work product immunity it may have had when it voluntarily disclosed the Report to the SEC. . . .").[3]

Dr. Gilman waived all work product protection – as to both fact work product and opinion work product – in his documents and communications stored on the University's electronic media when he voluntarily returned these devices to the University in November 2012.

## CONCLUSION

Dr. Gilman will produce to the Defendant and to the Government all eleven documents that he provided to the Court for in camera review. Defendant's motion to compel is granted as set forth in this Order and in the Court's December 20, 2013 bench ruling. Dr. Gilman's motion for a protective order is denied. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 35, 46).

Dated: New York, New York
       January 1, 2014

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

[3] The law is the same in other circuits. See In re Martin Marietta Corp., 856 F.2d 619, 626 (4th Cir. 1988) ("[C]ertainly actual disclosure of pure mental impressions may be deemed waiver."); In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 294 (6th Cir. 2002) ("[A]bsent waiver, a party may not obtain the 'opinion' work product of his adversary . . ."); E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc., 269 F.R.D. 600, 606 (E.D. Va. 2010) (quoting In re Mut. Funds Inv. Litig., 251 F.R.D. 185, 187 (D. Md. 2008)) ("'[W]aiver of the opinion work-product protection [is] limited to the documents actually disclosed.'") (second alteration in original); Cont'l Cas. Co. v. Under Armour, Inc., 537 F. Supp. 2d 761, 773 (D. Md. 2008) ("[B]y disclosing the content of protected opinion work product to its adversary . . . [Plaintiff] cannot now maintain that the protection continues to exist. As a matter of law the protection has been waived."); Eagle Compressors, Inc. v. HEC Liquidating Corp., 206 F.R.D. 474, 479-80 (N.D. Ill. 2002) (opinion work product protection waived by voluntary disclosure to an adversary during settlement negotiations).

7