UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| - v. - : | S1 12 Cr. 973 (PGG) |
| MATHEW MARTOMA, : | |
| Defendant. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL THE
PRODUCTION OF *BRADY* AND *GIGLIO* MATERIAL

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

Arlo Devlin-Brown
Eugene Ingoglia
Assistant United States Attorneys

Mathew Martoma (the "defendant") moved on December 26, 2013 to compel the production of "outstanding *Brady* and *Giglio* material relating to communications between the Government and/or the U.S. Securities and Exchange Commission ("SEC") and counsel for either Dr. Gilman or Dr. Ross." (Defendant Mathew Martoma's Memorandum of Law in Support of His Motion to Compel the Production of *Brady* and *Giglio* Material ("Def. Mem.") at 1). For the reasons detailed below, this motion should be denied.

The Material Sought By the Defense

As an initial matter, the Government takes seriously its disclosure obligations under *Brady* and *Giglio* and has complied with them with respect to Dr. Gilman and Dr. Ross. Pursuant to Title 18, United States Code, Section 3500, the Government has produced all FBI 302s and corresponding notes reflecting statements by the doctors to the Government, whether made to agents of the Federal Bureau of Investigation (the "FBI") when the doctors were initially approached, or to the Government at subsequent proffers. The Government has likewise previously disclosed the non-prosecution agreements entered into with each of the doctors. The Government also has produced various other potential impeachment and § 3500 material with respect to both witnesses, including material reflecting statements Dr. Gilman made to other investors and a submission by his counsel with respect to Dr. Gilman's medical conditions in connection with a request for leniency. The Government has as warranted searched for potentially responsive material, including prior to providing this response to the defendant's instant motion, to ensure that we have complied with these obligations. To date, the Government is unaware of any undisclosed *Brady* or *Giglio* material. Should the Government become aware of any such material at any point, the Government will promptly produce it to the defense.

In connection with the letters giving rise to the instant motion, the Government has repeatedly represented that it has complied with its *Brady* and *Giglio* obligations and is committed to do so going forward. (*See, e.g.*, Def. Ex. B at 1, Def. Ex. D at 1). Moreover, even while objecting to the premise of the defendant's position that broad categories of substantive communications between the Government and counsel for Drs. Gilman and Ross are *de facto Brady* or *Giglio*, the Government, has, taking a broad view of disclosure, provided information relating to the communications between the Government and counsel for Dr. Gilman in response to inquiry from the defense, affirming that that the Government did express to attorneys for Dr. Gilman that it did not believe Dr. Gilman's denials and discussed documents and other reocrds with these attorneys demonstrating the denials were false. (*See* Def. Ex. D at 2.).

Nonetheless, the defendant now brings this motion to compel the disclosure of broad categories of communications between the Government and counsel for Drs. Gilman and Ross. The defendant identifies three categories of communications between the Government and counsel for Drs. Gilman and Ross in which "[a]ll such communications are material, exculpatory information" (Def. Mem. at 4): (i) discussions with counsel "concerning their clients' and/or Mr. Martoma's innocence," (ii) communications "that are inconsistent with their clients' current statements," and (iii) discussions with counsel "concerning potential criminal charges." (Def. Mem. at 5).

*Triumph Capital* Does Not Support the Defense Request For Statements By Attorneys For The Doctors

In support of the defense request for statements made by the attorneys for the doctors, the defendant relies almost exclusively on *United States* v. *Triumph Capital*, 544 F.3d 149 (2d Cir. 2008). In so doing, the defendant ignores both (i) the important factual differences between the attorney proffer in *Triumph Capital* and the Government's communications with witness counsel

2

here and (ii) the actual holding of *Triumph Capital* which, rather than creating a vast and unworkable requirement to document and report on broad categories of communications between Government and witness counsel, simply applies well established agency principles to statements by a witness that a witness chooses to communicate to the Government through counsel rather than personally.

In *Triumph Capital*, the cooperating witness's very first communication with the Government came from an attorney, who "approached the government on [the witness's] behalf to relate [the witness's] account of his criminal activity in an attempt to convince the government to offer him a cooperation agreement." *Id.* at 163.  In that attorney proffer, as reflected in an agent's notes and an unsigned affidavit, the cooperating witness had, through the attorney, arguably "inculpated others and exculpated [the defendant]" and made statements that "strongly suggested that [the defendant] had declined to make payments that would amount to a bribe." *Id.* at 162 and 163.  The cooperating witness subsequently testified that the defendant had offered to pay bribes, and the notes from this attorney proffer – which had not been produced – was the *sole* source for the witness's prior statement, through counsel, that the defendant "declined to agree to the substance of [the witness's] request" for a bribe.  *Id.* at 162.   The Second Circuit found that the content of the withheld attorney proffer was "materially different" from both the cooperator's later statements to the Government that were disclosed, and the cooperator's testimony at trial.  *Id*. at 162.  The Second Circuit concluded that the failure to disclose the notes of this "materially different" statement from the witness deprived the defendant of evidence that could both impeach the cooperator's credibility and support the defendant's claim of innocence. *Id*.

The undisputed facts of the instant case could not be more different.  Here, the Government's first encounter with both doctors was not through an attorney, but through FBI agents who approached (with respect to Dr. Gilman) or telephoned (with respect to Dr. Ross) the witness and took a statement from the witness directly.  In these direct witness statements – the relevant portions of which were produced to Martoma in November 2013 – the doctors made statements to the effect that they did not provide, or at least could not recall providing, the defendant with material non-public information about the drug trial.  The defendant thus not only has statements in which the witnesses did not inculpate the defendant, but has the statements from the mouths of the witnesses themselves and can undoubtedly make far more effective use than if the statements, as in *Triumph Capital*, had been conveyed only through an attorney proffer. [1]  Indeed, the defense motion concedes almost as much. (*See* Def. Mem. at 7-8 ("Mr. Martoma can likewise argue that Drs. Gilman and Ross's initial, exculpatory statements were the truth, and that they fabricated new, inculpatory stories about Mr. Martoma to enhance the value of their cooperation.  That both Drs. Gilman and Ross secured non-prosecution agreements in exchange for their cooperation demonstrates the strong incentive they had to inculpate Mr. Martoma.").

The defendant likewise misreads *Triumph Capital* as supporting the proposition that virtually all statements made by counsel for a witness respect to certain issues are discoverable.  That is not the case.  *Triumph Capital* did not purport to set forth a new discovery rule relating to communications between Government and witness counsel.  Rather, citing traditional *Brady* and *Giglio* principles, the Second Circuit simply held on the facts of that case that the notes from the

---

[1]   Dr. Gilman also denied providing material non-public information to Martoma in Dr. Gilman's initial proffer, in February 2012, which was documented in an FBI 302.  Martoma therefore also has these additional statements from Dr. Gilman directly that can be used by the defendant in cross-examination.

4

attorney proffer and unsigned witness affidavit should have been produced as they were "materially inconsistent" with the witness's testimony.  The Government is not aware of any statements made by the attorneys for Dr. Gilman and Dr. Ross that are materially different than the statements reflecting initial denials already produced to the defense.  (*See* Def. Ex. D at 2).  Indeed, because both witnesses had already stated directly in substance that they had done nothing wrong to the FBI, there was no need for a detailed attorney proffer reaffirming such denials, and no such attorney proffers were made.[2]  And while counsel for Dr. Gilman informed Government on August 13, 2012 that, when Dr. Gilman met with the Government on August 17, 2012, he would state that he disclosed confidential drug trial results to Martoma (including in an 1:45 minute call on July 17, 2008), this high-level preview from counsel was not inconsistent with Dr. Gilman's own detailed statements on August 17 and thereafter, which have been provided to Martoma.

There Is No *Brady* Or *Giglio* Material In The Government's Statements To Witness Counsel

In addition to seeking a broad range of statements from witness counsel to the Government, the defense seeks the content of statements by the Government to witness counsel with respect to similar topics.  Although the defendant refers broadly to *Triumph Capital*, that case did not address communications to witness counsel as *Brady* or *Giglio*, and the defendant cites no case for the proposition that broad categories of statements by the Government to witness counsel must be disclosed.  In this case, the Government informed counsel for Dr. Gilman that it did not believe Dr. Gilman's initial denials, and arranged a meeting July 26, 2012 to describe pointed out to Dr. Gilman's counsel that there was now new evidence – such as e-

---

[2]     Indeed, even if attorneys for either doctor had, subsequent to their clients initial denials, provided an attorney proffer of the sort described in *Triumph Capital* in which the prior statements of the witnesses were reiterated in detail – a scenario that did not in fact occur – the significance of a witness's attorney simply repeating a statement a witness had made directly is far afield from the facts of *Triumph Capital*, when the first and only exculpatory statement on what the Second Circuit found to be a vital point was made solely through an attorney.

5

mails between the defendant and Dr. Gilman explicitly discussing confidential information from the drug trial – that demonstrated that such denials were false.  The Government previously has disclosed to Martoma that it conveyed to Dr. Gilman's counsel its skepticism regarding Dr. Gilman's initial account.  Therefore, the defense can attempt to show, if it wishes, that Dr. Gilman departed from his initial false denials only upon his attorneys hearing from the Government that the available evidence indicated that the denials were untrue.[3]

At bottom, to the extent the defense wishes to impeach the doctors by arguing that they have offered different accounts at different times, the defense has ample information with which to attempt to do so, in the form of the statements by the witnesses themselves.  To the extent the defense wishes to attempt to show a connection between changes in the witnesses' recollections and their securing non-prosecution agreements, they have the 302s and the non-prosecution agreements to do so.  Nothing in *Triumph Capital* or the other cases cited by the defense support the requests for additional disclosures of statements by the Government to witness counsel.

Communications Between the Securities and Exchange Commission and Counsel for Gilman and Ross

The defense, in its motion, repeatedly refers to communications involving the U.S. Attorney's Office (the "USAO") and the SEC interchangeably.  But as the Government pointed out in its December 6, 2013 letter to the defense, the Second Circuit has rejected the contention that the USAO has an obligation to produce documents in the SEC's custody that are not in the possession of the USAO.  *See United States v. Rigas*, 583 F.3d 108, 126 (2d Cir. 2009).  In any event, at the request of the USAO, the SEC has confirmed that there are no contemporaneous

---

[3] Such an argument, however, would not be supported by the sequence of events.  Shortly prior to the July 26, 2012 meeting in which the Government described the evidence, counsel for Dr. Gilman contacted the Government and stated, in substance, that Dr. Gilman had in fact provided confidential information to Martoma about the drug trial.  Counsel argued in that conversation that the Government should not prosecute Dr. Gilman because Martoma had manipulated Dr. Gilman, who had lost one child in a tragedy and was estranged from the other, that counsel did not believe Dr. Gilman acted with criminal intent, and that Dr. Gilman's consulting income was insubstantial in comparison to his assets.

6

notes or memoranda from jointly conducted interviews with Dr. Gilman or Dr. Ross, and the USAO previously has so indicated to the defense. Def. Ex. D at 3.  *See, e.g. United States* v. *Gupta*, 11 Cr. 907/*SEC* v. *Gupta*, 11 Civ. 766 (S.D.N.Y. March 26, 2012) (JSR).  The SEC had independent communications with counsel for Dr. Gilman, but the USAO was not party to these communications and has not reviewed them.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court deny the defendant's motion to compel the production of *Brady* and *Giglio* material relating to communications between the Government and counsel for Dr. Gilman or Dr. Ross.

Dated: January 2, 2014
       New York, New York

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney

                        By: _____\s\_____
                            Arlo Devlin-Brown
                            Eugene Ingoglia
                            Assistant United States Attorneys
                            (212) 637-1113 / 2506