UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

               - v. -                    :

MATHEW MARTOMA,                              :

            Defendant.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

S1 12 Cr. 973 (PGG)

# GOVERNMENT'S MOTION *IN LIMINE* FOR ADDITIONAL EXPERT DISCLOSURES AND TO PRECLUDE CERTAIN EXPERT TESTIMONY

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America.

Arlo Devlin-Brown
Eugene Ingoglia
Megan Gaffney
Assistant United States Attorneys

## PRELIMINARY STATEMENT

The Government submits this motion *in limine* regarding the expert notices provided by defendant Mathew Martoma.  First, the Government moves to compel the defendant to provide forthwith additional expert disclosures pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure.  The expert notices provided by the defendant do not identify all the opinions to be offered by the experts, nor the bases, methodologies, and reasons for the opinions that are presented.  Indeed, the notices do not even identify which of the defendant's four proposed experts will testify as to which facts and opinions contained in the disclosures. Disclosures regarding the expert opinions, and the bases, methodologies, and reasons for those opinions are necessary to evaluate whether any opinions offered by the proposed experts are matters requiring specialized knowledge, are based upon facts or data of a type reasonable relied upon by experts, are the product of reliable principles and methods, or would be relevant and helpful to the jury.

Second, the Government moves to preclude the defendant from offering expert opinions that go to matters that are not relevant, that do not require specialized knowledge, that speculate about the defendant's intent in making trading decisions, that incorrectly assume, speculate, and draw misleading conclusions about certain facts, and that are conclusions regarding elements of the charged offenses that should be left solely for the trier of fact.

## BACKGROUND

In a letter dated December 27, 2013, Martoma notified the Government that the defendant may call Thomas Wisniewski, M.D., L.J. Wei, Ph.D., Paul Gompers, Ph.D., and Richard Roll, Ph.D., to testify as expert witnesses at trial.  *See* Exhibit 1, attached. The three-and-a-half page letter provided a summary list of topics the experts would testify to without

specifying which experts would testify to which topics, and without identifying any of the opinions the experts would offer on these topics.  Pursuant to a disclosure schedule previously agreed to between the parties, the defendant was to produce on December 30, 2013 statements for the nine lay and expert witnesses it had identified.  However, in an e-mail to Government counsel at 10:12 p.m. on December 30th, defense counsel informed the Government that producing such statements "will take a little more time" because as the Government "can appreciate, we have a number of ongoing projects, including [certain matters], that have diverted some attention from compiling the witness statements."  The e-mail offered defense counsel's view that "there is no great urgency here" because defense witnesses would not testify, if at all, for several weeks.  As of this writing, the Government has still not received the statements for the defense witnesses.[1]

On December 31, 2013, the Government advised defense counsel that the existing disclosures were inadequate and that the Government intended to file a motion to compel such disclosures.  The defendant requested an opportunity to provide a revised disclosure.  On January 2, 2014, the defendant sent a revised disclosure that continued to group experts together (rather than identifying the proposed testimony of each expert) and continued to provide only a summary description of the topics of testimony, but that was supplemented in places by a statement as to the opinion the experts would offer.  *See* Exhibit 2, attached.

---

[1] Defense counsel stated in an e-mail today that the defendant would produce statements of the expert (but not lay) witnesses on the afternoon of Sunday, January 5, 2013.  The Government does not know whether or to what extent those statements may compensate for the disclosure shortcomings to date.

## ARGUMENT

**I.      Applicable Law**

**A.      Rule 16**

Under the circumstances applicable in this case,[2] a defendant must "give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial."  Fed. R. Crim. P. 16(b)(1)(C).  "This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  *Id.*

**B.      Rule 702**

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case.

The party that proffers expert testimony bears the burden of showing that it is admissible.  *See Bourjaily* v. *United States*, 483 U.S. 171, 175-76 (1987).  The District Court's exclusion of expert testimony will be affirmed unless it constitutes an abuse of discretion.  *See General Elec. Co.* v. *Joiner*, 522 U.S. 136, 142 (1997).

Moreover, the party seeking admission of expert testimony must demonstrate that the testimony is based on the witness's specialized knowledge.  *See United States* v. *Mejia*, 545 F.3d 179, 196 (2d Cir. 2008) (district court erred in allowing expert testimony "about matters

---

[2] Specifically, the defendant requested disclosure under Federal Rule of Criminal Procedure 16(a)(1)(G) and the Government complied and the Government informed the defendant that it did not intend to call any expert witnesses in its case in chief. Fed. R. Crim. P. 16(b)(1)(C).

that required no specialized knowledge"). Expert testimony is plainly inadmissible when it merely addresses "lay matters [that] the jury is capable of understanding and deciding without the expert's help." *Andrews* v. *Metro N. Commuter Railroad Co.*, 882 F.2d 705, 708 (2d Cir. 1989).

       The trial court must also find that proposed expert testimony is both relevant and reliable prior to admitting it into evidence. *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *see Kumho Tire Company, Inc.* v. *Carmichael*, 526 U.S. 137, 141 (1999). Specifically, in *Daubert*, the Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. "*Daubert* applies to both defense and government experts." *United States* v. *Yousef*, 327 F.3d 56, 148 (2d Cir. 2003).

       In *Joiner*, the Supreme Court explained that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." 522 U.S. at 146. For example, in *Kumho Tire*, the Court upheld the exclusion of an expert's testimony that a defect caused a tire's tread to separate from the rest of the tire, because the expert's theories could not reliably determine the cause of the separation in the tire at issue. 526 U.S. at 154-58; *see also Amorgianos* v. *National Railroad Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (district court should undertake a rigorous examination of the facts on which the expert relies, the expert's methodology, and the application of that methodology to the facts).

       Applying Rule 702, the Court must determine whether the expert's reasoning and methodology underlying his testimony is valid, and whether that reasoning or methodology was

applied reliably to the facts, so as to be relevant and helpful to the jury. *See Kumho Tire Co.*, 526 U.S. 148-49. The fact that an expert may generally possess "specialized knowledge" does not automatically render his opinions in this case reliable. *See SEC* v. *Lipson*, 46 F. Supp. 2d 758, 762-63 (N.D. Ill. 1998) (fact that witness is a certified public accountant, generally possessing the "specialized knowledge" to qualify as an expert witness, does not automatically render his opinions reliable).

C.      **Rule 703**

Rule 703 of the Federal Rules of Evidence precludes an expert from disclosing to the jury "facts or data [that] would otherwise be inadmissible" unless the court determines that their probative value substantially outweighs their prejudicial effect, and the facts or data must be of a type that "experts in the particular field would reasonably rely . . . in forming an opinion on the subject." Experts cannot be used as a substitute to calling witnesses to the events or facts at issue. For example, in *United States* v. *Zafar*, 291 Fed. Appx. 425, 427 (2d Cir. 2008) (summary order), the Second Circuit affirmed the district court's exclusion of the defendant's proposed expert testimony about the use of stock-selection software found on the defendant's computer in a securities fraud case. There was no evidence that the defendant actually used that software for stock trading at the time of the charged offenses. *Id.* The Court affirmed the district court's decision, because the defense expert was not trying "to show the jury how the software worked but to insinuate what had happened with respect to the relevant stock trades, a subject on which [the expert] was not a competent witness." *Id.*

In *United States* v. *Nersesian*, 824 F.2d 1294, 1308 (2d Cir. 1987), the Second Circuit expressed discomfort with the "uncontrolled" use of expert testimony that might "have the effect of providing . . . an additional summation by having the expert interpret the evidence."

5

The Court stated that the district court must be vigilant to prevent an expert from coming "dangerously close to usurping the jury's function."  *Id.*

> ### D.      Rule 704

Rule 704(b) of the Federal Rules of Evidence states that "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."  Moreover, a district court must exclude expert testimony that "expresses a legal conclusion."  *Hygh* v. *Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).  As the Second Circuit explained, "[e]ven if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury."  *Id*. at 364.  Further, an expert "is not qualified to compete with the judge in the function of instructing the jury."  *Id.*

> ### E.      Rules 401-403

Rules 401 through 403 of the Federal Rules of Evidence provide that relevant evidence is admissible when it tends to make the existence of any fact that is of consequence more or less probable than it would be without the evidence, but it may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, and misleading the jury.  "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."  *Daubert*, 509 U.S. at 595 (quoting authority omitted).

## II.     DISCUSSION

The Government objects to the defendant's expert disclosures on two separate grounds.  First, his disclosures are inadequate.  Martoma consistently fails to detail the bases, methodologies, and reasons for the expert opinions he wishes to proffer.  Second, based on the limited disclosures that the defendant has provided, the Government moves to preclude the defense experts from offering opinions that are irrelevant, that do not require specialized knowledge, that speculate regarding Martoma's intent in making certain trading decisions, that incorrectly assume and then draw conclusions from certain facts, and that are conclusions regarding elements of the charged offenses, which are questions that should be left solely for the trier of fact.  The Government also requests that Martoma specifically identify all of the documents relied upon by each expert and produce copies of all such documents other than what the Government did produce in discovery.

Should the Court grant the Government's motion to compel the defendant to provide more fulsome Rule 16 disclosures, the Government respectfully requests that the Court order that the defendant make adequate disclosures by a date certain or be precluded from calling his experts at trial.  A principal rationale for pre-trial expert disclosure is to allow the opposing party to evaluate the proposed expert testimony, have adequate disclosures through which to cross-examining the expert, and to identify responsive experts where warranted.

Provided the defendant does provide the proper Rule 16 disclosures, the Government may also seek to supplement this application to preclude improper areas of expert testimony that may revealed once those disclosures are made.

7

### A.    The Defendant's Expert Disclosures Are Inadequate

Martoma's expert disclosures are inadequate.  They do not comply with Rule 16. They do not describe all of the proposed expert opinions, and they do not provide the bases and reasons for such opinions.

The following proposed areas of expert testimony require more disclosure:

1.    Most fundamentally, the defense disclosures fail to identify which expert will testify as to which subjects and which will offer which opinions.  The defense disclosures instead divide the defendant's four proposed experts into two groups and suggests that both of the proposed experts in each group will offer the same testimony and opinions.  *See* Exh. 2 at 1-4.  It cannot be the case that each expert in will testify as to precisely the same facts and opinions as the other in the group, and the failure to provide separate disclosures tied to particular experts frustrates the purposes of expert disclosure.

2.    Two of the defendant's experts may testify about "the responsibility of doctors participating in clinical trials to maintain the confidentiality of clinical trial results."  The defendant does not disclose what the experts would actually opine about these responsibilities much less the basis for those opinions.

3.    Two of the defendant's experts may testify about the comparison between the results of the Phase II clinical trial of bapi disclosed by Elan in a press release on June 17, 2008, and the results disclosed in the July 17, 2008 draft presentation "including the opinion that there was no meaningful difference between the results disclosed on June 17, 2008, and the results disclosed in the July 17, 2008, draft presentation."  Exh. 2 at 2.  The defendant does not disclose the bases and reasons for this opinion.

4.      Similarly, two of the defendant's experts may testify about the Phase II results as described in the June 17, 2008 press release as compared to the July 29, 2008, final presentation for ICAD, "including the opinion that there was no meaningful difference between the results disclosed on June 17, 2008, and the results disclosed in the July 29, 2008, final presentation." Exh. 2 at 2. Again, the defendant does not disclose the bases and reasons for this opinion.

5.      Martoma indicates that two of his proposed experts may testify about the "role of the SMC in the drug testing approval process for bapi, including the Phase I, Phase II, and Phase III clinical trials." Exh. 2 at 2. The defendant offers no explanation how these proposed experts can testify to the role of SMC in the approval process for bapi, or the bases for any conclusions the proposed experts may proffer about this subject.

6.      Similarly, Martoma's proposed experts may testify about "the information disclosed in meetings of the SMC for the Phase II clinical trial of bapi, including the opinion that there was no meaningful information about the efficacy of bapi disclosed in those meetings." Exh. 2 at 2. The defendant again offers no explanation how these proposed experts can testify about the meetings of the SMC for Phase II, or the bases for their opinions, particularly given their presumed lack of attendance at such meetings.

7.      Two of the defense experts may testify about "the likelihood of success of drugs at various stages in the drug development process . . . and the impact on the prices of pharmaceutical companies' securities." Exh. 2 at 3. Without further information, it is difficult to evaluate the admissibility, reliability, and relevance of this proposed testimony.

8.      Two of the defense experts may testify about the "market price of Elan securities, analyst reports concerning Elan, and market expectations for the results of the Phase II

clinical trial . . . including the opinion that . . . the market price of Elan securities and analyst reports concerning Elan indicated that the market had overly optimistic expectations for the results of the Phase II clinical trial of bapi and the likelihood of success of bapi, which were reflected in the price of Elan securities." Exh. 2 at 4. Martoma does not detail the bases, methodologies, and reasons for the opinion.

9.      Martoma's letter states that the experts reviewed "documents relating to this matter" as well as "data relating to this matter" when formulating their opinions. Exh. 2 at 2, 4. Martoma provides lists of the documents and data, but the lists are both generalized and, by Martoma's admission, incomplete. *See* Exh. 2 at 2, 4 ("Those documents and data include (among others) . . ."). The documents and data that the defendant does list are not identified with specificity, and copies are not provided. S*ee, e.g.*, Exh. 2 at 4 (noting two of his experts reviewed "compilations of data from analyst reports concerning Wyath and industry competitors"). Nor is it clear which experts reviewed which documents or data, given the defendant's determination to cluster experts by group.

Without further information with respect to the proposed opinions in the areas listed above, the Government cannot sufficiently identify all of the proposed expert opinions and evaluate whether such opinions are matters requiring specialized knowledge, are based upon facts or data of a type reasonably relied upon by experts, are the product of reliable principles and methods, and would be relevant and helpful to the jury.

**B.      The Defendant's Experts Should Be Precluded From Offering Certain Opinions**

Based on the limited disclosures that Martoma provided, the Government moves to preclude Martoma from offering expert opinions that do not require specialized knowledge, that opine and speculate about Martoma's intent in making trading decisions, that incorrectly

assume, speculate, and draw misleading conclusions about certain facts, or that are conclusions regarding elements of the charged offenses that should be left solely for the trier of fact.

The defendant's proposed experts should not be permitted to offer testimony regarding purely lay factual matters. *See Andrews* v. *Metro North Commuter Railroad, Co.*, 882 F.2d at 708 (vacating jury verdict where district court allowed expert to testify "about matters that were neither scientific nor in any way beyond the jury's ken"). Testimony regarding facts unconnected to any specialized knowledge is not the proper subject of expert testimony.

For example, Martoma proposes that two of his experts may testify about Martoma and SAC Capital's trading in Elan and Wyeth securities from 2007 through 2008, "including the opinion that there was no observable association between SMC meetings and the trading of Elan and Wyeth securities by [] Martoma or SAC from 2007 through 2008." Exh. 2 at 4. There is no specialized knowledge required to determine associations between the timing of meetings and trades. This is a lay matter that the jury is capable of understanding and deciding without an expert's help. The dates of the meetings are clear and there are trading records from SAC Capital that either will or will not show whether Martoma increased or decreased his positions following such meetings.[3]

In addition, Martoma proposes that his experts testify about the investment strategies of SAC, Martoma, and institutional investors. *See, e.g.*, Exh. 2 at 4 (offering that the experts may testify to "investment strategies used by institutional investors, such as investment strategies used by [] Martoma and SAC to buy and sell Elan and Wyath securities" and "institutional investors' trading strategies, such as SAC Capital's strategy to reduce long positions in Elan and Wyeth securities"). Such testimony is merely factual evidence coming

---

[3]     The relevance of such testimony is also marginal at best given that the Government has never alleged that Martoma bought or sold Elan and Wyeth securities in response to developments at particular SMC meetings.

from witnesses with no firsthand knowledge.  The investment strategies of SAC, Martoma, and institutional investors are not areas of expertise but are instead questions for fact witnesses with knowledge of Martoma's investment strategies as supplemented by contemporaneous documents relating to Martoma's considerations at the relevant time.  Martoma may not use proposed experts to introduce purely lay assertions.  *See United States* v. *Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) (lay opinion testimony is unhelpful where the jury is in as good a position to assess the facts as the testifying witness).

It also would be completely improper for the proposed experts to opine from the witness stand that the investment strategies behind the trades at issue were "consistent with investment strategies used by hedge funds (including SAC) to buy and sell securities" and "(i) the manner in which SAC sold Elan and Wyeth securities . . . is consistent with trading strategies routinely used by hedge funds (including SAC) to sell securities and (ii) SAC had a net long position in Wyeth securities immediately prior to the presentation of the results of the Phase II clinical trial . . . and SAC's short sales of Elan and Wyeth securities in July 2008 are consistent with a strategy of hedging SAC's long position in Wyeth securities."  Exh. 2 at 4.[4]  Not only do the proposed witnesses have no specialized knowledge about SAC, but it is not the role of an expert to assume counsels' responsibility to make arguments or to assume the jury's function by drawing inferences from the evidence.  *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) ("[E]xperts should not be permitted to supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence." (internal quotation marks omitted)).  Thus while a summary witness could potentially graphically

---

[4] To the extent that the proposed experts' testimony concerns the basis upon which Martoma made trading decisions, this provides another ground for precluding their opinions.  *See United States* v. *Rahman*, 189 F.3d 88, 136 (2d Cir. 1999) (affirming exclusion of expert testimony that "constituted an effort to tell the jury the defendant's intentions through the mouths of witnesses other than himself").

represent SAC trading data to show the facts with respect to SAC's positions in securities at relevant times, it is for counsel to argue the significance of such data and for the jury to determine its weight.

It would also be improper for Martoma to introduce evidence from two proposed experts on "the responsibility of doctors participating in clinical trial to maintain the confidentiality of clinical trial results." Def. Ex. 2 at 2. The general responsibilities of doctors, whatever those are, and even assuming they could be a subject of expert testimony, are not the issue. The only relevant duties of confidentiality are those owed by the Dr. Ross and Dr. Gilman to Elan and Wyeth. Those duties are (i) questions of fact, (ii) going to an ultimate issue that (iii) are properly evaluated through witness testimony and related documentary evidence (including multiple confidentiality agreements) of those who were parties to the agreements.

Nor should Martoma be permitted to offer expert opinions regarding "the medical community's response to the results of the Phase II clinical trial of bapi . . . including the opinion that there was a wide divergence of opinion in the medical community in response to the results with some reviewing the results as positive, some viewing the results as negative, and some viewing the results as mixed." Ex. 2 at 2. It is unclear how these experts are qualified to comment on the "opinions" of the "medical community" to these results, much less how the "medical community" is defined by these experts. This is not an appropriate area of speculation by the proposed experts and should be precluded. Moreover, there is simply no relevance to the views of the "medical community" about the merits of the drug trial. The only relevant views about the drug trial are views that the evidence establishes were considered by Martoma during the relevant time period, and the relevant question is not whether the results were or were not

compelling from a purely scientific viewpoint but from the viewpoint of someone assessing the value of the securities of Elan and Wyeth.[5]

## <u>CONCLUSION</u>

For the reasons set forth above, the Government respectfully requests that the Court order the defendants to disclose more information regarding their proposed expert testimony pursuant to Rule 16(b)(1)(C) by a deadline set by the Court.  If the defendant does not produce the disclosures by that date, the Government requests that the experts be precluded.  The Government also requests that the proposed experts by precluded from offering certain opinions as described above.

Dated: January 4, 2014
New York, New York

Respectfully submitted,

PREET BHARARA
United States Attorney

By:  _____/s/_____

Arlo Devlin-Brown
Eugene Ingoglia
Megan Gaffney
Assistant United States Attorneys

---

[5]      Finally, the relevance and propriety of the views of the putative medical and financial experts on the range of subjects listed in only single sentences, without any description as to what the expert or cluster of experts will say on the subjects, is impossible to determine without the proper disclosures but is in many cases is dubious.