GOODWIN | PROCTER

Richard M. Strassberg
212.813.8859
rstrassberg@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
The New York Times Building
620 Eighth Avenue
New York, NY 10018
T: 212.813.8800
F: 212.355.3333

January 2, 2014

**BY E-MAIL**

Assistant United States Attorneys
Arlo Devlin-Brown and Eugene Ingoglia
United States Attorney's Office
One St. Andrews Plaza
New York City, NY 10007

Re:   *United States v. Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y.)

Dear Arlo and Gene:

On December 27, 2013, pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C), Mr. Martoma provided notice of expert testimony that he intends to offer from one or more of the following witnesses at trial: Thomas Wisniewski, M.D.; L.J. Wei, Ph.D.; Paul Gompers, Ph.D.; and Richard Roll, Ph.D. On December 31, 2013, you requested additional information concerning the expert opinions that are expected to be offered. In response to your request, Mr. Martoma hereby provides the following disclosure:

**Thomas Wisniewski, M.D. and L.J. Wei, Ph.D.**

Thomas Wisniewski is the Aging and Dementia Division Chief and Professor of Neurology, Pathology and Psychiatry at the New York University School of Medicine. His *curriculum vitae* is attached as Exhibit A. L.J. Wei is Professor of Biostatistics at Harvard University. His *curriculum vitae* is attached as Exhibit B. Dr. Wisniewski and Professor Wei are expected to testify about information and opinions concerning:

1.   the science behind the causes of Alzheimer's Disease, including the amyloid beta hypothesis;

2.   the science behind bapineuzumab ("bapi") as a treatment for Alzheimer's Disease;

3.   the drug testing approval process, including the purpose of Phase I, Phase II, and Phase III clinical trials;

4.   the purpose of "double blind" clinical trials;

GOODWIN | PROCTER

Assistant United States Attorneys
Arlo Devlin-Brown and Eugene Ingoglia
January 2, 2014
Page 2

5. the responsibility of doctors participating in clinical trials to maintain the confidentiality of clinical trial results;

6. the drug testing approval process for bapi, including the Phase I, Phase II, and Phase III clinical trials;

7. the results of the Phase II clinical trial of bapi disclosed on June 17, 2008,[1] as compared to the results disclosed in the July 17, 2008, draft presentation for the International Conference for Alzheimer's Disease ("ICAD"),[2] including the opinion that there was no meaningful difference between the results disclosed on June 17, 2008, and the results disclosed in the July 17, 2008, draft presentation;

8. the results of the Phase II clinical trial of bapi disclosed on June 17, 2008, as compared to the results disclosed in the July 29, 2008, final presentation for ICAD,[3] including the opinion that there was no meaningful difference between the results disclosed on June 17, 2008, and the results disclosed in the July 29, 2008, final presentation.

9. the medical community's response to the results of the Phase II clinical trial of bapi presented at ICAD on July 29, 2008, including the opinion that there was a wide divergence of opinion in the medical community in response to the results with some viewing the results as positive, some viewing the results as negative, and some viewing the results as mixed;

10. the role of the Safety Monitoring Committee ("SMC") in the drug testing approval process and clinical trials;

11. the role of the SMC in the drug testing approval process for bapi, including the Phase I, Phase II, and Phase III clinical trials; and

12. the information disclosed in meetings of the SMC for the Phase II clinical trial of bapi, including the opinion that there was no meaningful information about the efficacy of bapi disclosed in those meetings.

Such expert testimony will be based on the experts' education and professional experience; academic research and literature; and a review of documents relating to this matter. Those documents include (among others): the criminal complaint; the original Indictment; the Superseding Indictment; the minutes and materials of the SMC for the Phase II clinical trial of

---

[1] (SAC_ELAN0202747 – SAC_ELAN0202753; ELAN 004514 – ELAN 004520.)
[2] (ELAN 050280 – ELAN 050303.)
[3] (ELAN 154797 – ELAN 154819; ELAN 134922 – ELAN 134944.)

GOODWIN | PROCTER

Assistant United States Attorneys
Arlo Devlin-Brown and Eugene Ingoglia
January 2, 2014
Page 3

bapi;[4] the June 17, 2008, press release issued by Elan Pharmaceuticals, plc ("Elan") and Wyeth;[5] the July 17, 2008, draft presentation for ICAD;[6] the July 29, 2008, final presentation for ICAD;[7] and public commentary concerning the results of the Phase II clinical trial of bapi presented at ICAD on July 29, 2008.

**Paul Gompers, Ph.D. and Richard Roll, Ph.D.**

Paul Gompers is the Eugene Holman Professor of Business Administration at the Harvard Business School. His *curriculum vitae* is attached as Exhibit C. Richard Roll is the Joel Fried Chair in Applied Finance, Anderson School of Management, University of California, Los Angeles. His *curriculum vitae* is attached as Exhibit D. Professor Gompers and Professor Roll are expected to testify about information and opinions concerning:

1. the efficient market hypothesis and its application to securities of pharmaceutical companies such as Elan and Wyeth;

2. the drug development process and its role in the valuation of drugs and pharmaceutical companies;

3. the likelihood of success of drugs at various stages in the drug development process – including drugs in Phase II and/or entering Phase III clinical trials – and the impact on the prices of pharmaceutical companies' securities;

4. the many reasons that drugs entering Phase III clinical trials fail – including (i) failure in Phase III clinical trials for safety or efficacy reasons, (ii) failure to obtain approval from the Food and Drug Administration, (iii) unsuccessful launches, (iv) emergence of post-launch safety issues, (v) development of competitive pressure from other drugs, and

---

[4]   (ELAN 055149 – ELAN 055152; ELAN 054631 – ELAN 054633; ELAN 054634 – ELAN 054635; ELAN 055060 – ELAN 055065; ELAN 055643 – ELAN 055646; ELAN 058517 – ELAN 058518; ELAN 054152 – ELAN 054157; ELAN 058016; ELAN 157902 – ELAN 157904; ELAN 159229 – ELAN 159233; ELAN 155133 – ELAN 155136; ELAN 126886 – ELAN 126889; ELAN 159264 – ELAN 159267; ELAN 155160 – ELAN 155164; ELAN 155229 - ELAN 155232; ELAN 032462 – ELAN 032463; ELAN 159269 – ELAN 159275; ELAN 055691 - ELAN 055717; ELAN 159235 – ELAN 159249; ELAN 157853 - ELAN 157876; ELAN 157799 - ELAN 157817; ELAN 126856 – ELAN 126885; ELAN 144327 - ELAN 144331; ELAN 015228 - ELAN 015264; ELAN 059724 – ELAN 059779; ELAN 155233 - ELAN 155235; ELAN 155165 - ELAN 155228; ELAN 159276 – ELAN 159280; ELAN 130120 – ELAN 130121.)
[5]   (SAC_ELAN0202747 – SAC_ELAN0202753; ELAN 004514 – ELAN 004520.)
[6]   (ELAN 050280 – ELAN 050303.)
[7]   (ELAN 154797 – ELAN 154819; ELAN 134922 – ELAN 134944.)

GOODWIN | PROCTER

Assistant United States Attorneys
Arlo Devlin-Brown and Eugene Ingoglia
January 2, 2014
Page 4

        (vi) changes in the regulatory environment – and the impact on the prices of pharmaceutical companies' securities;

5.    the market price of Elan securities, analyst reports concerning Elan, and market expectations for the results of the Phase II clinical trial of bapi to be presented at ICAD and the likelihood of success of bapi, including the opinion that, following June 17, 2008, the market price of Elan securities and analyst reports concerning Elan indicated that the market had overly optimistic expectations for the results of the Phase II clinical trial of bapi and the likelihood of success of bapi, which were reflected in the price of Elan securities;

6.    trading by Mr. Martoma and S.A.C. Capital Advisors, LLC and its affiliates (collectively, "SAC") in Elan and Wyeth securities from 2007 through 2008, including the opinion that there was no observable association between SMC meetings and the trading of Elan and Wyeth securities by Mr. Martoma or SAC from 2007 through 2008;

7.    investment strategies used by institutional investors, such as the investment strategies used by Mr. Martoma and SAC to buy and sell Elan and Wyeth securities, including the opinion that the investment strategies used by Mr. Martoma and SAC to buy and sell Elan and Wyeth securities between June 17, 2008, and July 29, 2008, are consistent with investment strategies used by hedge funds (including SAC) to buy and sell securities; and

8.    trading strategies used by institutional investors, such as the trading strategies used by SAC to reduce its long positions in Elan and Wyeth securities, including the opinion that (i) the manner in which SAC sold Elan and Wyeth securities between July 21, 2008, and July 29, 2008, is consistent with trading strategies routinely used by hedge funds (including SAC) to sell securities and (ii) SAC had a net long position in Wyeth securities immediately prior to the presentation of the results of the Phase II clinical trial of bapi at ICAD and SAC's short sales of Elan and Wyeth securities in July 2008 are consistent with a strategy of hedging SAC's long position in Wyeth securities.

Such expert testimony will be based on the experts' education and professional experience; academic research and literature; and a review of documents and data relating to this matter. Those documents and data include (among others): the criminal complaint; the original Indictment; the Superseding Indictment; SAC trading records; stock price data for Elan, Wyeth, and industry competitors; analyst reports concerning Elan; compilations of data from analyst reports concerning Wyeth and industry competitors; Elan and Wyeth earnings call transcripts and presentations; public press; and deposition testimony before the Securities and Exchange Commission in connection with the related proceeding against Mr. Martoma.

GOODWIN | PROCTER

Assistant United States Attorneys
Arlo Devlin-Brown and Eugene Ingoglia
January 2, 2014
Page 5

Sincerely,

Richard M. Strassberg

cc:     Roberto Braceras