GOODWIN | PROCTER

Richard M. Strassberg
212.813.8859
rstrassberg@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
The New York Times Building
620 Eighth Avenue
New York, NY 10018
T: 212.813.8800
F: 212.355.3333

January 5, 2014

**VIA ECF AND FACSIMILE**

Honorable Paul G. Gardephe
United States District Court for the
   Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

Re:    ***United States v. Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y.)**

Dear Judge Gardephe:

     We write on behalf of Mathew Martoma in order to raise in advance of trial two issues prompted by public statements made by the Government, the Government's final exhibit list provided to Mr. Martoma on Friday, January 3, 2014, and the 3500 material that the Government has produced, namely:  (1) inflammatory language concerning the allegations and charges; and (2) Government exhibits and related speculative opinion testimony concerning Mr. Martoma's supposed possession of material, non-public information.  With respect to the Government's use of inflammatory language, Mr. Martoma does not know whether the Government plans to use such language during the trial and, therefore, raises the issue now so that it may be discussed with the Court in advance of opening statements.  With respect to the Government exhibits described below and related opinion testimony, Mr. Martoma respectfully requests an order precluding the Government from putting into evidence such misleading exhibits and/or speculative opinion testimony.

I.     **Inflammatory Language Concerning the Allegations and Charges**

     Mr, Martoma does not know whether the Government intends to use inflammatory language during the trial.  But since the Government has previously used such language in its public statements about this case and its investigation of S.A.C. Capital Advisors LLC and its affiliates (collectively, "SAC"), Mr. Martoma raises the issue now so that it may be discussed with the Court in advance of opening statements.

GOODWIN | PROCTER

Hon. Paul G. Gardephe
January 5, 2014
Page 2

*First*, in announcing the criminal complaint against Mr. Martoma, the Government loudly announced that Mr. Martoma had perpetrated the "***most lucrative*** insider trading scheme ever charged."[1]  The Government did not explain what it meant by "most lucrative," much less provide any support for its naked assertion.  Moreover, whether the Government's charges are in fact the "most lucrative" (whatever that means) has absolutely no bearing on Mr. Martoma's guilt or innocence.  This is precisely the sort of inflammatory term that courts exclude because it is irrelevant to the crime charged, as well as inflammatory and prejudicial.  *See United States v. Mulder,* 273 F.3d 91, 99 (2d Cir. 2001); *United States v. Hernandez,* 85 F.3d 1023, 1030 (2d Cir. 1996).  Mr. Martoma respectfully submits that the Government should not be allowed to use the term "most lucrative insider trading scheme ever charged" at any time during trial.

*Second*, in announcing criminal charges against Mr. Martoma, the Government and the FBI have described Mr. Martoma as "***cheating coming and going***" and part of an "***unholy alliance***" with Dr. Gilman.[2]  Such language would be unfairly prejudicial, and the Government should not be allowed to use it to color the jury's view of Mr. Martoma.  *See Hall v. United States*, 419 F.2d 582, 587 (5th  Cir. 1969) (condemning the Government's reference to the defendant as a "hoodlum" as a "type of shorthand characterization of an accused, not based on evidence, [that] is especially likely to stick in the minds of the jury and influence its deliberations"); *Getchell v. United States*, 282 F.2d 681, 690-91 (5th Cir. 1960) (reversing a conviction where the Government repeatedly referred to the defendant as a con man). Mr. Martoma respectfully submits that the Government should not be permitted to use the terms "cheating coming and going," "unholy alliance" or similar language at any time during trial.

*Third*, in connection with its investigation of SAC, the Government has made numerous public statements that use emotionally and politically charged language to paint SAC as the picture of greedy, wealthy, privileged Wall Street investors who will stop at nothing to line their pockets.  For example, the Government has said that "***S.A.C. seeded itself with corrupt traders***" and was a "***den of corruption***."[3]  These statements can obviously taint jurors.  *See Hall*, 419 F.2d at 587; *Getchell*, 282 F.2d at 690-91.  Mr. Martoma respectfully submits that the Government should not be allowed to state at any time during trial that "S.A.C. seeded itself with corrupt traders," was a "den of corruption," or other similar language.

---

[1]   Press Release, United States Attorney's Office for the Southern District of New York, *Manhattan U.S. Attorney and FBI Special Agent-In-Charge Announce Charges against Former Hedge Fund Portfolio Manager for $276 Million Insider Trading Scheme Involving Alzheimer's Disease Drug Trial*, Nov. 20, 2012 (emphasis added).

[2]   *Id.* (emphasis added).

[3]   Press Release, United States Attorney's Office for the Southern District of New York, *Manhattan U.S. Attorney and FBI Assistant Director-In-Charge Announce Insider Trading Charges against Four SAC Capital Management Companies and SAC Portfolio Manager*, July 25, 2013 (emphasis added).

GOODWIN | PROCTER

Hon. Paul G. Gardephe
January 5, 2014
Page 3


## II.    Misleading Exhibits and Speculative Opinion Testimony

Mr. Martoma respectfully requests that this Court preclude the Government from introducing certain documents into evidence and eliciting opinion testimony that lacks foundation and reflects pure speculation.  The Government's exhibit list and related 3500 material raise concerns that the Government may seek to offer such documents and testimony.

"Testimony based on guesswork, speculation, or conjecture is inadmissible.'" *Sadler v. Moran Towing Corp.*, 204 F. Supp. 2d 695, 698 (S.D.N.Y. 2002) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 701.03 (2013)).[4]  With good reason.  "Lay opinion testimony is not admissible if it will not assist the trier of fact.  Lay opinion  does not assist the trier of fact… [if t]he testimony is mere speculation." *Weinstein's Federal Evidence* § 701.03[3].  As the Second Circuit has observed, "Rule 701(a) reflects, in part, the Rules' more general requirement that '[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'" *United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007) (quoting Fed. R. Evid. 602) (alteration in original).

Certain documents identified as Government exhibits, when read in conjunction with the relevant statements contained in the 3500 material, suggest that the Government intends to introduce these documents and then elicit speculative testimony implying that Mr. Martoma possessed material, non-public information – despite the fact that the authors of those e-mails have stated in interviews and prior testimony that they ***did not know*** what information Mr. Martoma actually had or where he obtained it.

Specifically, Government Exhibits GX 403, GX 409, and GX 410 are e-mails between and among (*inter alia*) Government witnesses Benjamin Slate, David Munno, and Jason Karp where the witnesses use the term "black edge" in reference to Mr. Martoma's investment thesis with respect to Elan and bapineuzumab ("bapi"), seemingly suggesting that Mr. Martoma was in possession of material, non-public information.  For example:

- Government Exhibit GX 403 includes a March 10, 2008, e-mail from Mr. Slate – in response to Mr. Munno's e-mail questioning the use of a primary efficacy endpoint for the bapi trial designed by Elan – that states: "**BLACK EDGE**" (emphasis in original).

---

[4]    *Accord Hester v. BIC Corp.*, 225 F.3d 178, 184-85 (2d Cir. 2000) (finding "naked speculation" inadmissible); *SEC v. Espuelas*, 905 F. Supp. 2d 507, 519 (S.D.N.Y. 2012) (holding that, if a witness is "merely conjecturing or speculating," such testimony is inadmissible).

GOODWIN | PROCTER

Hon. Paul G. Gardephe
January 5, 2014
Page 4

- Government Exhibit GX 409 includes a May 27, 2008, e-mail from Mr. Munno regarding a third-party analysis of Wyeth (which asserted that only $1 of Wyeth's share price was attributable to projected bapi revenue) that states: "Agent Black Edge told me so."

- Government Exhibit GX 410 includes a June 19, 2008, e-mail from Mr. Munno to Mr. Slate stating (*inter alia*): "Martoma telling ppl he has black edge on the p-values [*i.e.*, the statistical significance of the Phase II bapi results], that the other group will be fine at ICAD, etc." After Mr. Slate responded by referencing earlier investments in unrelated pharmaceutical stocks, Mr. Munno replied: "They are in the past and we weren't fighting black edge and kolmat." ("Kolmat" is apparently a derogatory reference to Mr. Martoma.)

Messrs. Slate, Munno, and Karp, however, have unequivocally informed the Government (and, in Mr. Slate's case, testified before the grand jury as well as in an SEC deposition) that they ***did not know*** when they wrote and/or received these e-mails whether Mr. Martoma possessed inside information. For example:

- Mr. Karp informed the Government that "Karp, Slate, and Munno did not have facts to support an accusation of wrong doing" against Mr. Martoma.[5]

- Mr. Slate testified during an SEC deposition that he did not "know or suspect that trades made by SAC or CR Intrinsic in Elan and Wyeth securities were based on material nonpublic information" and that he was not aware "of anybody at SAC or [CR] Intrinsic receiving material nonpublic information about Elan or Wyeth."[6]

- Similarly, Mr. Slate testified before the grand jury that "I don't think [Mr. Martoma] was representing that he had inside information" and that he did not believe, in June 2008, that Mr. Martoma had any inside information about the bapi data.[7]

Because Messrs. Slate, Munno, and Karp have stated and/or testified that they did not know whether Mr. Martoma possessed inside information, their speculative e-mails (and any testimony springing therefrom) on that topic are *per se* incompetent and without foundation, and should be excluded.

---

[5]   (FBI Form FD-302 for Interview of Jason Karp (Oct. 4, 2013) at 3.)

[6]   (SEC Deposition of Benjamin Slate, *In the Matter of Elan Corp., PLC*, File No. NY-8152 (July 18, 2012) at 143:7-14.)

[7]   (Grand Jury Testimony of Benjamin Slate, *United States v. Martoma* (June 18, 2013) at 105:22-106:2, 113:3-6.)

GOODWIN | PROCTER

Hon. Paul G. Gardephe
January 5, 2014
Page 5


Moreover, setting aside the statements and sworn testimony of these Government witnesses, the Government's own charging documents and theory of the case (not to mention Dr. Sidney Gilman's 3500 material) contradict the misleading implication drawn from these e-mails – *i.e.*, that Mr. Martoma possessed material, non-public information concerning the ***results*** of the Phase II bapi trial ***prior*** *to* his alleged July 17, 2008, communication with Dr. Gilman. According to the Government (and Dr. Gilman's 3500 material), not even ***Dr. Gilman*** had the results of the Phase II bapi trial before mid-July 2008.[8]  Yet GX 403, GX 409, and GX 410 imply that Mr. Martoma had inside information on those ***results*** in March, May, and June 2008, respectively.  Thus, on their face, these e-mails constitute nothing more than office gossip that is hopelessly inconsistent with the Government's own case.  The Government should not be allowed to taint the jury with e-mails talking about "black edge on p-values" in June 2008 (for example), when the Government affirmatively alleges that Mr. Martoma ***and his alleged tipper*** obtained such information for the first time a month later.  In short, these e-mails are not remotely probative of Mr. Martoma's guilt or innocence of the charged offenses.

The Government should be prohibited from introducing these e-mails into evidence or eliciting testimony from their authors (or any other witnesses) about their content.  The sole purpose of offering these e-mails would be to place before the jury ***knowingly false*** statements by Government witnesses that (wrongly) imply that Mr. Martoma possessed illegal inside information.  And any testimony springing from these e-mails would be similarly tainted.  The authors of the e-mails have each affirmed that they ***did not know one way or the other*** whether Mr. Martoma possessed inside information; and the Government itself alleges that Mr. Martoma (and Dr. Gilman) received the information long after the e-mails were written.  Those e-mails and any testimony concerning their content should be excluded.

Respectfully submitted,

Richard M. Strassberg

cc:    Arlo Devlin-Brown (by e-mail)
       Eugene Ingoglia (by e-mail)
       Roberto Braceras (by e-mail)

---

[8]    (*See* Superseding Indictment at ¶¶12-13, *United States of America v. Martoma*, 12 Cr. 973 (S.D.N.Y. Aug. 22, 2013) (Doc. No. 61).)