UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/6/2014

UNITED STATES OF AMERICA,

-against-

MATHEW MARTOMA,

                Defendant.

**ORDER**

12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      Defendant Mathew Martoma is charged with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and with two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5 and 240.10b5-2, and 18 U.S.C. § 2. (Superseding Indictment (Dkt. No. 61)) The Government alleges, inter alia, that between 2006 and July 2008, Martoma caused his hedge fund employer to trade on the basis of material non-public information. The non-public information was allegedly supplied by doctors participating in a clinical trial of a drug for possible use in treating Alzheimer's disease. One of these doctors – Sidney Gilman – has entered into a cooperation agreement with the Government and is expected to be a critical witness at trial. (See July 17, 2013 Gilman Br. (Dkt. No. 47) at 1)

      Jury selection will begin on January 7, 2014. This order resolves several pending motions in limine.

## I. DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OF HIS FAINTING WHEN APPROACHED BY FBI AGENTS

      Martoma has moved to exclude evidence that he fainted when approached by FBI agents outside his home on November 8, 2011, approximately a year before his arrest. (See Dkt. No. 115) Martoma fainted after agents told him that they wanted to talk with him about his insider trading in Elan and Wyeth stock while at SAC Capital. Martoma was quickly revived,

and suffered no lasting effects. The Government argues that evidence of Martoma's fainting should be admitted as evidence of consciousness of guilt.

"Evidence of a party's consciousness of guilt may be relevant if reasonable inferences can be drawn from it and if the evidence is probative of guilt." United States v. Perez, 387 F.3d 201, 209 (2d Cir. 2004). "Such evidence is admissible if the court (1) determines that the evidence is offered for a purpose other than to prove the defendant's bad character or criminal propensity, (2) decides that the evidence is relevant and satisfies Rule 403, and (3) provides an appropriate instruction to the jury as to the limited purposes for which the evidence is introduced, if a limiting instruction is requested." Id.

Courts have admitted – as consciousness of guilt evidence – proof that a defendant had made arrangements to flee the country the day after a crime was committed, United States v. Salameh, 152 F.3d 88, 157 (2d Cir. 1998), bribed a witness to provide a false statement to investigators, Perez, 387 F.3d at 208-09, made false exculpatory statements to the police, United States v. Glenn, 312 F.3d 58, 68-69 (2d Cir. 2002), or attempted to intimidate a prosecution witness, United States v. Mickens, 926 F.2d 1323, 1328-29 (2d Cir. 1991). Such evidence is admitted on the theory that it is probative of the defendant's state of mind. See, e.g., Perez, 387 F.3d at 210; Mickens, 926 F.2d at 1329.

The difficulty with the Government's argument here is that Martoma's fainting is inherently ambiguous as to his state of mind. In each of the cited cases, the jury could reasonably infer that the defendant had engaged in the conduct at issue because the defendant knew that he was guilty. No such inference can reasonably be drawn here.

Unlike the conduct discussed in Salameh, Perez, Glenn, and Mickens – all of which was voluntary and directly related to the crime at issue – fainting is an involuntary

2

physiological event that has myriad causes, almost none of which relate to consciousness of guilt.

Courts have recognized that it is not unusual for any citizen – whether guilty or innocent – to feel some level of stress or nervousness when approached by a law enforcement officer. See, e.g., United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994) (quoting United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir. 1992)) ("'It is common knowledge that most citizens . . . whether innocent or guilty, when confronted by a law enforcement officer who asks them potentially incriminating questions are likely to exhibit some signs of nervousness."); United States v. Crump, 62 F. Supp. 2d 560, 565 (D. Conn. 1999) ("[M]ost citizens, whether innocent or guilty, are likely to exhibit some signs of nervousness when confronted by the police.").

When an individual who works in the hedge fund industry is approached by the FBI and is accused of having engaged in insider trading in specific stocks and while employed at a specific company, it is likely to be a shocking and highly disturbing event, whether the person is innocent or guilty. Indeed, the mere accusation could well have an enormous impact on that person's professional and personal life, and reputation. In the life of such a person – someone with no criminal record and no prior involvement with the criminal justice system – such an encounter is a watershed event.

Under these circumstances, it would not be reasonable for a jury to infer that Martoma fainted because he knew that he was guilty of insider trading in Elan and Wyeth stock. It is just as likely that he fainted simply from shock, surprise, or alarm at being accused of such a serious crime, which could have such a damaging effect on his professional and personal life. I conclude that evidence of this fainting episode has very little probative value. I further conclude,

under Fed. R. Evid. 403, that whatever limited probative value this evidence has is "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. In other words, there is a significant risk that the jury will give this evidence more weight than it deserves.

Donald v. Secretary, Department of Corrections, No. 6:11-CV-159-ORL-31DAB, 2012 WL 3291731, at *5 (M.D. Fla. Aug. 13, 2012), cited by the Government, is not persuasive here. Donald is a habeas case. The key issue – for purposes of federal habeas review of a state court's actions – is whether the state court judge issued a decision "'that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" Donald, 2012 WL 3291731, at *1-2 (quoting 28 U.S.C. § 2254(d)). In Donald, the court held that the habeas petitioner had not met this standard, finding that there is no reported case holding that a lawyer is constitutionally ineffective when he fails to object to evidence that his client fainted when confronted by the police. Id. at *5.

That is not the standard that applies here. The standard I must consider is whether it would be reasonable for a jury to infer, from Martoma's fainting, that he knew he was guilty of insider trading. For the reasons I have stated, I conclude that that would not be a reasonable inference, and that admission of this evidence is likely to result in unfair prejudice to the Defendant.

The Defendant's motion in limine to exclude evidence of fainting (Dkt. No. 115) will be granted.

## II. DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OF HIS TERMINATION FROM SAC CAPITAL

Martoma has moved to exclude evidence that his employment at SAC Capital was terminated in September 2010. (Dkt. No. 118) The Government claims that evidence that Martoma was terminated for poor performance in September 2010 explains why he engaged in a

4

conspiracy to commit insider trading between 2006 and July 2008. According to the Government, the Defendant engaged in insider trading in order to avoid being fired. (Govt. Br. (Dkt. No. 137) at 4) The Government also wants to use the termination evidence to argue that the Defendant's success at SAC Capital in 2008 must have been the result of insider trading, because the Defendant was terminated for poor performance two years later, having been unable to replicate his 2008 trading success. (Id.)

There are several flaws in the Government's arguments. As an initial matter, using a September 2010 termination of employment to explain a person's motive for acts committed more than two years earlier – in July 2008 – is inherently suspect. Stated another way, the fact that Martoma lost his job in September 2010 does not demonstrate that he was worried about losing his job in July 2008, and therefore engaged in insider trading.

The argument that Martoma must have engaged in insider trading in 2008 – because he was not able to duplicate his 2008 success in 2009 and 2010 – is equally problematic. The trial here will not involve an examination of Martoma's work performance in 2009 and 2010, a debate about the merits of his job performance in those years, or an analysis of the reasons why he was fired in September 2010. Instead, the jury will be asked to determine whether Martoma engaged in a conspiracy to commit insider trading between 2006 and July 2008, and whether he actually committed insider trading in July 2008. Evidence about what happened over the next two years, including Martoma's eventual termination, presents a serious risk of misleading and distracting the jury.

The probative value of this proof must also be considered in light of other motive evidence. The Government contends that "Martoma was paid a $9.3 million bonus for his performance [in 2008], most if not all of which was attributable to the Elan and Wyeth trading at

5

issue in the Government's charges." (Id. at 6) Accordingly, the Government is not lacking for motive evidence. It need not attempt to explain Martoma's motive for actions in July 2008 by reference to a termination that took place in September 2010.

Finally, evidence that the Defendant was fired from his position at SAC Capital carries with it some level of prejudicial taint, and invites the jury to speculate as to the reasons why. Given that the Defendant's termination and the reasons for it are not at issue here, and given that the termination occurred more than two years after the end of the alleged conspiracy, there is a significant risk that the Defendant will suffer unfair prejudice if this evidence is admitted.

I conclude that the limited probative value of the termination evidence is substantially outweighed by the likelihood of unfair prejudice to the Defendant and jury confusion if this evidence is admitted. It will be excluded under Fed. R. Evid. 403. The Defendant's motion in limine (Dkt. No. 118) will be granted.

## III. GOVERNMENT'S MOTION TO REQUIRE THE DEFENDANT TO GIVE NOTICE OF ALIBI

The Government has moved for an order directing the Defendant to give notice of alibi pursuant to Federal Rule of Criminal Procedure 12.1(a). (See Dkt. No. 100)

Fed. R. Crim. P. 12.1(a) states that

> [a]n attorney for the government may request in writing that the defendant notify . . . [the Government] of any intended alibi defense. The request must state the time, date, and place of the alleged offense.

Here, the Government asked the Defendant in a November 29, 2013 letter to state whether he intends to offer evidence that he was not at Dr. Gilman's office in Ann Arbor, Michigan on July 19, 2008, between noon and 3:00 p.m. Defense counsel refused to respond to the Government's request, stating that evidence concerning Martoma's whereabouts on July 19, 2008 cannot, as a

6

matter of law, constitute an alibi defense, and that accordingly the Defendant is not required to respond to the alibi request. (Govt. Br. (Dkt. No. 100) at 11-12; Def. Br. (Dkt. No. 135) at 2)

The alleged July 19, 2008 meeting in Ann Arbor between the Defendant and Dr. Gilman looms large in the Indictment and in the Government's theory of the case. The Indictment alleges that after speaking with Dr. Gilman by telephone on the afternoon of July 17, 2008, about the results of the bapineuzumab clinical trial, Martoma arranged to meet with Dr. Gilman at his office to discuss the data Dr. Gilman had received from Elan. (Superseding Indictment (Dkt. No. 61) ¶ 13) According to the Indictment, their face-to-face meeting took place on Saturday, July 19, 2008, at Dr. Gilman's office in Ann Arbor. (Id.) The Indictment further alleges that on July 19, 2008, Martoma traveled round-trip from New York City to Detroit so that he could "meet personally with [Dr. Gilman] in his office." (Id.)

After allegedly discussing the negative clinical trial results with Dr. Gilman in his Ann Arbor office on July 19, the next day – Sunday, July 20, 2008 – Martoma is alleged to have recommended to SAC's owner that SAC's holdings in Elan and Wyeth stock be sold before the negative results were publicly disclosed. (Id. at ¶ 14) On Monday, July 21, 2008, SAC sold nearly all of its $700 million worth of stock in Elan and Wyeth, and also engaged in short sales and certain options trades designed to profit if the price of Elan and Wyeth stock fell. (Id.)

The Defendant argues that he is not required to respond to the Government's request for notice of alibi, because the information requested does not constitute "an 'alibi defense' as a matter of law," since the Government is not required to prove Martoma's presence in Ann Arbor on July 19, 2008 as an element of any of the charges. (Def. Br. (Dkt. No. 135) at 1)

Defendant's argument ignores the purpose of Fed. R. Crim. P. 12.1:

> Discovery under Rule 12.1 was designed to be a prosecution-triggered device for the primary benefit of the government. H.R. Rep. No. 94-247, 94th Cong., 1st Sess. 8, reprinted in (1975) U.S. Code Cong. & Admin. News 674, 681. The government, should it so desire, has the ability to obtain advance notice of an alibi defense in order to avoid unfair surprise and delays at trial. United States v. Myers, 550 F.2d 1036, 1042 (5th Cir. 1977); 8 Moore's Federal Practice [¶] 12.1.02 (1982). If the government fails to trigger the procedures, and if the defendant raises an alibi at trial, then the government cannot claim surprise and get a continuance of the trial.

United States v. Bouye, 688 F.2d 471, 475 (7th Cir. 1982).

More generally, "[n]otice-of-alibi rules . . . are based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial." Wardius v. Oregon, 412 U.S. 470, 473 (1973). The Advisory Committee Notes to Rule 12.1 state that the rule's objective is to "provid[e] a mechanism which will enable the parties to have specific information in advance of trial to prepare to meet the issue of alibi during the trial," and to avoid "unnecessary interruption and delay in the trial" caused by the need of "the government to conduct an appropriate investigation" where it did not have "advance notice of the details of the claimed alibi." Fed. R. Crim. P. 12.1 advisory committee's note.

It is apparent that the purpose underlying Rule 12.1 would best be served by requiring the Defendant to respond to the request submitted by the Government regarding alibi evidence related to the July 19, 2008 Ann Arbor meeting. Defendant argues, however, that Rule 12.1 does not compel this result, because proof that Martoma was not in Ann Arbor on July 19, 2008, would not constitute a complete defense to any of the charges, but would simply rebut one aspect of the Government's evidentiary presentation.

The Second Circuit has not addressed this issue, but other circuit courts have "recognize[d] it to be permissible and consistent with [Rule 12.1's] purpose for the prosecution

8

to seek notice-of-alibi with respect to a discrete temporal aspect" of "an entire criminal transaction," even where the crime was "accomplished over a long period of time." United States v. Vela, 673 F.2d 86, 88-89 (5th Cir. 1982); see also United States v. Dupuy, 760 F.2d 1492, 1498-99 (9th Cir. 1985) (acknowledging that the Government could properly seek alibi notice as to an overt act allegedly committed on August 31, 1980, even though the defendant may have committed acts in furtherance of the charged marijuana conspiracy on other days).

In ruling that the Government can demand alibi notice under Rule 12.1 concerning a discrete act that merely constitutes one event in a larger conspiracy, the Fifth Circuit noted that

> [m]any crimes, such as the conspiracy charged here, are accomplished over a long period of time. . . . In such cases, it would render [Rule 12.1] unworkable if the prosecution could not narrow its notice-of-alibi demand to a more limited interval.
>
> Rather than render the rule useless in such situations, we recognize it to be permissible and consistent with the rule's purpose for the prosecution to seek notice-of-alibi with respect to a discrete temporal aspect of the crime charged.

Vela, 673 F.2d at 88-89. The reasoning of Vela and Dupuy appears sound. Moreover, the Defendant has not cited any contrary law, either from this Circuit or elsewhere.

In opposing the Government's motion, Martoma cites several cases in which the Second Circuit rejected claims of error in conspiracy cases where the trial court had refused defendants' request to include an alibi instruction in a jury charge. (See Def. Br. (Dkt. No. 135) at 3-4) In those cases, the court found that such an instruction was not required because "[t]he alibi, if believed by the jury, established no more than that appellants did not participate in one of numerous overt acts of the conspiracy." United States v. Guillette, 547 F.2d 743, 752 (2d Cir. 1976); see also United States v. Thomas, 34 F.3d 44, 50 (2d Cir. 1994) (evidence that defendant was not at scene of killing did not require alibi instruction, where defendant was charged with

9

conspiracy and with aiding and abetting substantive offenses); United States v. Bryser, 954 F.2d 79, 87-88 (2d Cir. 1992) (given conspiracy charge, evidence that defendant was not at scene of theft did not require alibi instruction). These cases do not address, and do not shed light on, the question of whether the Government may obtain – pursuant to Fed. R. Crim. P. 12.1 – notice of an alibi that the Defendant intends to assert with respect to a critical incident that allegedly is part of the conspiracy charged in the Indictment.[1]

Accordingly, the Government's motion in limine (Dkt. No. 100) will be granted. The Defendant is directed to provide the Government forthwith with notice of whether he intends to offer alibi evidence with respect to the alleged meeting between Dr. Gilman and himself in Ann Arbor, Michigan on July 19, 2008, between noon and 3:00 p.m.

## CONCLUSION

The Defendant's motions in limine to exclude evidence of fainting (Dkt. No. 115) and evidence of his termination from SAC Capital (Dkt. No. 118) are granted. The Government's motion in limine to require the Defendant to give notice of alibi (Dkt. No. 100) is likewise granted. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 115, 118, 100).

Dated: New York, New York
January 3, 2014

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge

---

[1] Noble v. Kelly, 246 F.3d 93, 98 n.2 (2d Cir. 2001) and Simmons v. Dalsheim, 543 F. Supp. 729, 737 (S.D.N.Y. 1982), also cited by Martoma (Def. Br. (Dkt. No. 135) at 2) are likewise not on point. These are habeas cases that address alibi testimony under New York state law. They do not address Fed. R. Crim. P. 12.1.