USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/6/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MATHEW MARTOMA,

                Defendant.

**ORDER**

12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      In this insider trading case, Defendant Mathew Martoma is charged with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and with two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5 and 240.10b5-2, and 18 U.S.C. § 2. (Superseding Indictment (Dkt. No. 61)) The Government alleges, inter alia, that between 2006 and July 2008, Martoma traded on the basis of material, non-public information, and caused his hedge fund employer to trade on the basis of material non-public information. The material non-public information was allegedly supplied by two doctors – Dr. Sidney Gilman and Dr. Joel Ross – who were participants in a clinical trial of a drug for possible use in treating Alzheimer's disease. Both doctors have entered into cooperation agreements with the Government and are expected testify at trial. Moreover, Dr. Gilman and Dr. Ross are Martoma's only alleged co-conspirators. (See Strassberg Decl. (Dkt. No. 151), Ex. B at 2)

      This Order addresses the Defendant's motion to compel the production of any Brady and Giglio material that might be contained in communications between the United States Attorney's Office ("USAO") or the Securities and Exchange Commission ("SEC") and counsel for Dr. Gilman or counsel for Dr. Ross. (Dkt. No. 149)

## **BACKGROUND**

Both Dr. Gilman and Dr. Ross are expected to testify that they provided Martoma with confidential information about the clinical trial of a drug called bapineuzumab, which was being studied for possible use in treating Alzheimer's disease. The Government alleges that Martoma and his hedge fund employer traded upon the material, non-public information about the clinical trial provided by the doctors. (Superseding Indictment (Dkt. No. 61) ¶ 10)

In satisfying its disclosure obligations under Brady, Giglio, and 18 U.S.C. § 3500, the Government has provided extensive information to the defense about both doctors' prior statements. That disclosure includes FBI 302 reports and notes reflecting the substance of statements made by Dr. Gilman and Dr. Ross at initial interviews, as well as at subsequent proffer sessions with the USAO. (Strassberg Decl. (Dkt. No. 151), Ex. B; Govt. Br. (Dkt. No. 174) at 1) The materials provided also include FBI 302 reports "reflecting relevant prior statements from Dr. Gilman in their entirety, regardless of impeachment value"; copies of Dr. Gilman's and Dr. Ross's non-prosecution agreements; and a submission from Dr. Gilman concerning his medical condition, submitted to the Government in connection with a request for leniency. (Strassberg Decl. (Dkt. No. 151), Exs. B, D; Gov't Br. (Dkt. No. 174) at 1-2; 3501-21)

The parties agree that the documents produced by the Government disclose that, when first approached by law enforcement authorities, both Dr. Gilman and Dr. Ross denied having provided material, non-public information to Martoma about the clinical trial, and likewise denied any involvement in an insider trading scheme. (See Strassberg Decl. (Dkt. No. 151), Ex. D)

The materials disclosed by the Government indicate that, at a February 2, 2012 proffer session, Dr. Gilman told the Government that he had not discussed bapineuzumab or any

aspect of the drug's clinical trial with Martoma. (3501-11) He further denied seeing or speaking with Martoma in the two weeks leading up to the public disclosure of the negative results. (Id.)

At a proffer session six months later, however – on August 17, 2012 – Dr. Gilman acknowledged that he had provided confidential information concerning the clinical trial to Martoma prior to public release of the trial's negative results. (3501-16) Dr. Gilman admitted periodically disclosing safety data to Martoma, and to disclosing the full results of the clinical trial before those results were publicly available. (Id.) Dr. Gilman entered into a non-prosecution agreement with the Government on November 16, 2012. (3501-24)

The materials disclosed by the Government reveal that Dr. Ross was first interviewed by the FBI on June 28, 2012. (3502-2) At that time, Dr. Ross admitted to speaking with Martoma, but denied discussing any non-public information with him. (Id.) Dr. Ross further denied having had access to the results of the clinical trial before they were publicly released. (Id.)

In a January 28, 2013 meeting with the USAO, however, Dr. Ross admitted that he had provided confidential information concerning the clinical trial to Martoma while the trial was ongoing. (3502-3) Dr. Ross also admitted that he had, in fact, been informed of the full results of the clinical trial prior to the public disclosure of the results. (Id.) Dr. Ross stated that he had met with Martoma immediately after a clinical investigators' meeting on July 28, 2009, at which the final results of the trial had been disclosed to Dr. Ross. (Id.) At his meeting with Martoma, Dr. Ross revealed the final results of the clinical trial, before those results had been publicly announced. (3502-5) Dr. Ross entered into a non-prosecution with the Government on December 11, 2013. (3502-11)

3

The USAO has also disclosed to the defense that it communicated to Dr. Gilman's attorney – in advance of the August 17, 2012 proffer session – that the USAO did not believe Dr. Gilman's denials, given other evidence that the USAO had uncovered. (Strassberg Decl. (Dkt. No. 151) Ex. D at 2; Govt. Br. (Dkt. No. 174) at 5)

The Defendant now argues, however, that "[alt]hough the Government has provided Mr. Martoma with material related to Dr. Gilman and Dr. Ross's prior statements . . . its Brady and Giglio disclosures remain incomplete." (See Def. Br. (Dkt. No. 150) at 3) The Defendant contends that he is entitled to "statements reflecting discussions [between the USAO or the SEC and] counsel for Drs. Gilman or Ross (i) concerning their clients' and/or Mr. Martoma's innocence, (ii) that are inconsistent with [the doctors'] current statements, or (iii) concerning potential criminal charges." (Def. Br. (Dkt. No. 150) at 2)

The USAO opposes this motion, stating that it has complied with all of its Brady and Giglio obligations. (Govt. Opp. (Dkt. No. 174) at 1) The USAO argues that its obligation to produce communications from Dr. Gilman's counsel and Dr. Ross's counsel is limited to statements of counsel that are "materially inconsistent" with the statements of their clients, and that it knows of no such statements here. (Id. at 4-5) As to statements made by the USAO to the doctors' counsel, the USAO contends that no further disclosure is required under Brady, Giglio and their progeny. (Id. at 5-6) Finally, the USAO asserts that it does not have "an obligation to produce [any communications] in the SEC's custody that are not in the possession of the USAO." (Id. at 6)

## DISCUSSION

### A. THE GOVERNMENT'S OBLIGATION TO PRODUCE COMMUNICATIONS FROM DR. GILMAN'S COUNSEL AND DR. ROSS'S COUNSEL

"Brady and its progeny require the Government to disclose material information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching.'" United States v. Rodriguez, 496 F.3d 221, 225 (2d Cir. 2007) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). In United States v. Triumph Capital Group., Inc., 544 F.3d 149, 161-63 (2d Cir. 2008), the Second Circuit held that Brady material included an FBI agent's notes "taken at a meeting where [a witness's] attorney approached the government on [the witness's] behalf to relate [his client's] account of his criminal activity in an attempt to convince the government to offer him a cooperation agreement." The Court found that such notes were exculpatory because they supported a version of events that was "entirely at odds with the government's theory of the case." Id. at 162. Had the defendant been aware of this evidence, he could have argued that the witness "initially authorized his attorney to tell the truth, which inculpated others and exculpated [the defendant], but that once [the witness] began to cooperate with the government he fabricated a new, inculpatory version of his dealings with [the defendant] to enhance the value of his cooperation and his expected reward." Id. at 163.

Under the circumstances set forth in Triumph Capital, the USAO's Brady obligations are broad enough to include exculpatory and impeachment information that might be found in communications from a witness's counsel to the USAO. It is, of course, also true that "no Brady violation occurs if the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory [and impeachment] evidence." United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987) (citing United States v. LeRoy, 687 F.2d 610, 618-19 (2d Cir. 1982); United States v. Stewart, 513 F.2d 957, 960 (2d Cir. 1975)). "The

5

rationale underlying Brady is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government." LeRoy, 687 F.2d at 619.

Here, the Defendant is already aware that Dr. Gilman and Dr. Ross previously provided exculpatory statements that are inconsistent with their anticipated testimony at trial. The USAO has disclosed FBI 302 reports and notes reflecting these prior statements, as well as its own statements to Dr. Gilman's counsel that it did not believe Dr. Gilman's denials. The USAO has represented that it is "not aware of any statements made by the attorneys for Dr. Gilman and Dr. Ross that are materially different than the statements reflecting initial denials already produced to the defense." (Govt. Br. (Dkt. No. 174) at 5) The fact that Dr. Gilman's or Dr. Ross's attorneys may have reiterated their clients' denials at the time that they were made does not add anything meaningful to the cross-examination material already available to the defense on this point. Accordingly, the Defendant has not demonstrated that the Government has withheld Brady or Giglio material contained in communications from the doctors' counsel to the USAO, and the Defendant's motion to compel will be denied to the extent that it is addressed to such material.

### B.   THE GOVERNMENT'S OBLIGATION TO PRODUCE ITS OWN COMMUNICATIONS TO DR. GILMAN'S AND DR. ROSS'S COUNSEL

With respect to statements made by the USAO to the doctors' counsel, the USAO argues that its obligations extend no further than disclosing that it told Dr. Gilman's counsel, in July 2012, that it did not believe Dr. Gilman's denials, given incriminating email traffic between Martoma and Dr. Gilman that had come to light. (Govt. Opp. (Dkt. No. 174) at 5-6; see also Strassberg Decl. (Dkt. No. 151), Ex. D)

It is well established, of course, that Government promises of a benefit to a witness must be disclosed to the defense. Giglio itself involved a failure to disclose that an Assistant U.S. Attorney had promised a key government witness that he would not be prosecuted if he testified before a grand jury. Giglio v. United States, 405 U.S. 150, 152 (1972). The Supreme Court found that this information constituted Brady material, because the witness's credibility was "an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." Id. at 154-55.

Here, Dr. Gilman and Dr. Ross are expected to be critical Government witnesses at trial, and their credibility may be outcome-determinative. The Government has already disclosed that they initially denied any improper contact with Martoma. Their denials appear to have persisted for six months or more, but both doctors ultimately disclosed information that implicated Martoma in the insider trading activity detailed in the Indictment. The Defendant is entitled to explore at trial the reasons for the doctors' change of heart. Moreover, under the circumstances of this case, and given that the credibility of the doctors is likely to be a critical issue at trial, the Defendant is entitled – under Brady, Giglio, and their progeny – to disclosure of any statements by the USAO to the doctors or their counsel that either (1) threatened criminal prosecution of the doctors if they did not implicate Martoma; or (2) promised a non-prosecution agreement to the doctors if they implicated Martoma. See Giglio, 405 U.S. at 152-55; United States v. Cody, 722 F.2d 1052, 1061-63 (2d Cir. 1983) (noting that FBI agent's threats to witness should have been disclosed as Giglio material); United States v. Sutton, 542 F.2d 1239, 1241-43 (4th Cir. 1976) (finding a Giglio violation where the government did not disclose FBI agent's threats to witness, because there is "no difference between concealment of a promise of leniency

7

and concealment of a threat to prosecute"). There is no reason to believe on this record that such statements exist, but if do exist, they are to be produced forthwith.

## C. THE USAO'S OBLIGATION TO PRODUCE COMMUNICATIONS IN THE SOLE POSSESSION OF THE SEC

The USAO asserts that its Brady and Giglio obligations extend only to material in its possession or that is the product of jointly conducted activity with the SEC. (See, e.g., Govt. Br. (Dkt. No. 174) at 6-7) ("[A]t the request of the USAO, the SEC has confirmed that there are no contemporaneous notes or memoranda from jointly conducted interviews with Dr. Gilman or Dr. Ross. . . . The SEC had independent communications with counsel for Dr. Gilman, but the USAO was not party to these communications and has not reviewed them."))

In his briefing, the Defendant does not differentiate between communications between the doctors' counsel and the USAO on the one hand, and communications between the doctors' counsel and the SEC on the other, apparently assuming that the USAO and the SEC should be regarded as a single entity. (Def. Br. (Dkt. No. 150) at 1) The Second Circuit has expressly rejected such an assumption, however, in evaluating the USAO's Brady and Giglio obligations. See United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) ("Nonetheless, knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor. . . . [This] would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'") (quoting United States v. Gambino, 835 F. Supp. 74, 95 (E.D.N.Y. 1993), aff'd, 59 F.3d 353 (2d Cir. 1995)).

The USAO's obligation to produce Brady and Giglio material that is in the sole possession of the SEC turns on whether the USAO and the SEC were engaged in a joint investigation of Martoma. See United States v. Gupta, 848 F. Supp. 2d 491, 493 (S.D.N.Y.

8

2012) ("[A]ny argument that the Government's duty [under <u>Brady</u> and its progeny] does not extend [to certain materials] . . . merely because another agency, not the USAO, is in actual possession of the documents created or obtained as part of the joint investigation is both 'hypertechnical and unrealistic.'") (quoting <u>United States v. Shakur</u>, 543 F. Supp. 1059, 1060 (S.D.N.Y. 1982)). "The inquiry is not whether the United States Attorney's Office physically possesses the discovery material; the inquiry is the extent to which there was a 'joint investigation' with another agency." <u>United States v. Upton</u>, 856 F. Supp. 727, 750 (E.D.N.Y. 1994); <u>see</u> <u>Gupta</u>, 848 F. Supp. 2d at 493 ("Where the USAO conducts a 'joint investigation' with another state or federal agency, courts in this Circuit have held that the prosecutor's duty extends to reviewing the materials in the possession of that other agency for <u>Brady</u> evidence.") (citing <u>Upton</u>, 856 F. Supp. at 749-50).

Courts in this District apply this "joint investigation" analysis in assessing the USAO's obligations with respect to <u>Brady</u> and <u>Giglio</u> material held by the SEC. <u>See</u> <u>Gupta</u>, 848 F. Supp. 2d at 493-95 (finding that the Government had an obligation to review SEC interview notes and memoranda for <u>Brady</u> material, where the SEC and USAO conducted a "joint investigation" by jointly conducting 44 witness interviews with both the USAO and SEC present); <u>United States v. Rigas</u>, No. 02-CR-1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008), <u>aff'd</u>, 583 F.3d 108 (2d Cir. 2009) (finding that the USAO was not obligated to produce interview notes held by the SEC where there was no joint investigation between the USAO and the SEC).[1] In particular, courts look to whether "the agencies are engaged in joint

---

[1] Relying on <u>United States v. Rigas</u>, 583 F.3d 108, 126 (2d Cir. 2009), the USAO asserts that "the Second Circuit has rejected the contention that the USAO has an obligation to produce documents in the SEC's custody that are not in the possession of the USAO." (Govt. Br. (Dkt. No. 174) at 6) This argument mischaracterizes the holding of <u>Rigas</u>. In <u>Rigas</u>, the Second Circuit affirmed the district court's finding that "the United States Attorney's Office was not in

9

fact-gathering, even if they are making separate investigatory or charging decisions." Gupta, 848 F. Supp. 2d at 494. "Assessing whether a joint investigation occurred is a fact-specific inquiry that is best approached on a case-by-case basis," United States v. Ferguson, 478 F. Supp. 2d 220, 238 (D. Conn. 2007), and involves consideration of the "degree of cooperation between agencies," id., such as their coordination in conducting witness interviews and otherwise investigating the facts of the case. See Gupta, 848 F. Supp. 2d at 495.[2]

Here, neither side has provided the Court with information concerning this issue. Accordingly, the Government will submit an affidavit by 5:00 p.m. on January 5, 2014, setting forth the nature of the relationship between the USAO and the SEC with respect to the investigation of Mathew Martoma. Defendant may also submit an affidavit addressing this issue by 5:00 p.m. on January 5, 2014.

## CONCLUSION

To the extent that the Defendant has moved to compel the production of Brady and Giglio material in communications in the USAO's possession from Dr. Gilman's counsel or Dr. Ross's counsel, the motion is denied. To the extent that the Defendant has moved to compel the production of such material in communications from the USAO to Dr. Gilman's counsel or Dr. Ross's counsel or to the doctors directly, the motion is granted to the extent of requiring the USAO to disclose any statements by the USAO to the doctors or their counsel that either (1)

---

possession of notes from SEC interviews . . . and did not have an obligation to disclose what they did not possess." Rigas, 583 F.3d at 126. That ruling was premised, however, on the district court's finding that the notes were not in the USAO's "possession, custody, or control" because "there was no joint investigation with the SEC." United States v. Rigas, No. 02-CR-1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008).

[2] The USAO has represented that, "at the request of the USAO, the SEC has confirmed that there are no contemporaneous notes or memoranda from jointly conducted interviews with Dr. Gilman or Dr. Ross." (Govt. Br. (Dkt. No. 174) at 6-7) Therefore, unlike in United States v. Gupta, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012), the notes of jointly conducted witness interviews are not at issue here.

threaten criminal prosecution of the doctors if they do not implicate Martoma; or (2) promise a non-prosecution agreement to the doctors if they implicate Martoma.

To the extent that Defendant's motion to compel implicates material that is in the sole possession of the SEC, the Court reserves decision, pending submission of the affidavits referenced above.

Dated: New York, New York
       January 4, 2014

                                    SO ORDERED.

                                    _____
                                    Paul G. Gardephe
                                    United States District Judge


threaten criminal prosecution of the doctors if they do not implicate Martoma; or (2) promise a non-prosecution agreement to the doctors if they implicate Martoma.

To the extent that Defendant's motion to compel implicates material that is in the sole possession of the SEC, the Court reserves decision, pending submission of the affidavits referenced above.

Dated: New York, New York
       January 4, 2014

                                    SO ORDERED.

                                    _____
                                    Paul G. Gardephe
                                    United States District Judge