```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/6/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MATHEW MARTOMA,

               Defendant.

**ORDER**

12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       In this insider trading case, Defendant Mathew Martoma is charged with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and with two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5 and 240.10b5-2, and 18 U.S.C. § 2. (Superseding Indictment (Dkt. No. 61)) The Government alleges, inter alia, that between 2006 and July 2008, Martoma caused his hedge fund employer to trade on the basis of material non-public information. The non-public information was allegedly supplied to Martoma by two doctors – Sidney Gilman and Joel Ross – who were participants in a clinical trial of bapineuzumab, a drug that was thought to be of possible use in treating Alzheimer's disease. Both doctors have entered into cooperation agreements with the Government and are expected to be critical witnesses at trial.

       Jury selection will begin on January 7, 2014. This order resolves the Government's motion in limine to introduce evidence that the Defendant obtained from Dr. Gilman and Dr. Ross confidential information pertaining to drugs other than bapineuzumab. (See Dkt. No. 100)

## BACKGROUND

In the Indictment, the Government alleges that Dr. Gilman and Dr. Ross provided Martoma with material, non-public information from a clinical trial of bapineuzumab. However, the Government has moved in limine (Dkt. No. 100) to introduce evidence that Dr. Gilman and Dr. Ross also provided Martoma with confidential information regarding the clinical trials of other drugs.

The material at issue (see Def. Br. (Dkt. No. 136) at 5-6; Govt. Br. (Dkt. No. 100) at 2-4) includes the following:

1. raw data from a drug study of a different Alzheimer's drug, the results of which had been publicly released and discussed at a July 2006 medical conference;

2. placebo data from an unpublished study related to Alzheimer's disease, the results of which had been presented at a medical conference by the time the data was disclosed to Martoma;

3. information that the FDA might require a black box warning for a certain anti-epilepsy drug, a possibility that had already been publicly reported; and

4. certain confidential investigator's brochures[1] that Dr. Ross allegedly shared with Martoma, including a brochure for, and part of the study protocol for, a clinical trial conducted on behalf of Epix Pharmaceuticals, the results of which had been publicly released.

Finally, the Government wishes to introduce evidence that Dr. Ross asked Martoma whether he could obtain an investigator's brochure for another Alzheimer's drug called Flurizan. Dr. Ross

---

[1] An "investigator's brochure" is a compilation of clinical and non-clinical data concerning the drug that is the subject of a clinical study. The purpose of the investigator's brochure is to provide to those conducting the study the information they need to understand the rationale for key features of the protocol – including dose, dose frequency, methods of administration, and safety monitoring procedures. The investigator's brochure is also designed to support the clinical management of study subjects during the clinical trial. See CTR. FOR DRUG EVALUATION & RESEARCH & CTR. FOR BIOLOGICS EVALUATION & RESEARCH, FDA, GUIDANCE FOR INDUSTRY, E6 GOOD CLINICAL PRACTICE: CONSOLIDATED GUIDANCE 42-43 (1996), available at http://www.fda.gov/downloads/Drugs/Guidances/ucm073122.pdf.

ultimately obtained the brochure from someone else. (Def. Br. (Dkt. No. 136) at 6; Govt. Br. (Dkt. No. 100) at 3-4)

The Government does not contend that any of this information constitutes material, non-public information, nor does the Government contend that this information was ever traded on or that it was ever contemplated that any of this information would be traded on. Moreover, this information is unrelated to bapineuzumab or the clinical trial concerning bapineuzumab. Given that the results of these various studies had already been publicly released before the information at issue was shared with Martoma, the significance of the confidentiality of the underlying data and investigator's brochures is not readily apparent.

The Government nonetheless contends that this evidence demonstrates the doctors' willingness to share confidential information regarding clinical trials with Martoma and Martoma's desire for such information. The Government contends that this evidence constitutes both direct evidence of the charged crimes as well as admissible evidence under Fed. R. Evid. 404(b). I conclude that it is neither.

## DISCUSSION

### I. ADMISSIBILITY AS DIRECT EVIDENCE

The Government asserts that this evidence (the "non-bapi evidence") is admissible as direct proof of the crimes charged, because the conduct at issue is inextricably intertwined with the alleged conspiracy, and is relevant to the background of the conspiracy and the nature of the relationship between the Defendant and the doctors, Martoma's alleged co-conspirators. Alternatively, the Government argues that the non-bapi evidence is admissible under Fed. R. Evid. 404(b).

3

"It is well established in the Second Circuit that '"evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it [1] arose out of the same transaction or series of transactions as the charged offense, [2] if it is inextricably intertwined with the evidence regarding the charged offense, or [3] if it is necessary to complete the story of the crime on trial."'" United States v. Townsend, No. S1 06 Cr. 34 (JFK), 2007 WL 1288597, at *1 (S.D.N.Y. May 1, 2007), aff'd sub nom., United States v. Mercado, 573 F.3d 138 (2d Cir. 2009) (alterations in original) (quoting United States v. Nektalov, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004) (quoting United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000))). Such evidence is instead "direct evidence" of the charged crime. See Nektalov, 325 F. Supp. 2d at 370. "However, 'where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b).'" Townsend, 2007 WL 1288597, at *1 (quoting Nektalov, 325 F. Supp. 2d at 372).

Most of the cases that the Government relies upon to argue that the non-bapi evidence is admissible as direct evidence address admissibility under Rule 404(b). See United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994); United States v. Rosa, 11 F.3d 315, 333-34 (2d Cir. 1993); United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990); United States v. Brennan, 798 F.2d 581, 589-90 (2d Cir. 1986).

Two cases cited by the Government's consider the admissibility of other act evidence as direct evidence. In United States v. Gonzalez, 110 F.3d 936, 939, 942 (2d Cir. 1997), the Second Circuit found that "evidence pertaining to an attempted burglary that occurred in close physical proximity to and immediately preceding the defendants' apprehension" was properly admitted as evidence of the charged crime of felon in possession. The court found that the burglary evidence "provide[d] crucial background evidence that gave coherence to the basic

4

sequence of events that occurred on [the] night" of the crime. Id. at 942. Specifically, the burglary evidence "tended to show that [the defendants] were functioning as armed look-outs while [a co-conspirator] robbed [the] house." Id.

Similarly, in United States v. Carboni, 204 F.3d at 42-44, the Second Circuit found that evidence that the defendant had added fictional inventory to his company's inventory records was "inextricably intertwined" with charges that the defendant had made false statements to a bank to permit borrowing on a line of credit. The Court observed that the uncharged and charged acts occurred at about the same time, and were both part of the defendant's "continued effort to create an overly optimistic picture of Cableco's financial system and thus keep the money flowing from Fleet to the troubled company." Carboni, 204 F.3d at 44.

The circumstances here are nothing like those in Gonzalez and Carboni. In any event, courts in this District have interpreted these cases narrowly. See, e.g., United States v. Newton, No. S101 Cr. 635 (CSH), 2002 WL 230964, at *2 (S.D.N.Y. Feb. 14, 2002). In deciding whether uncharged conduct is "inextricably intertwined" with charged conduct – and thus admissible as direct evidence – courts have considered whether "[the] details of the uncharged transaction are necessary to understand the charged transaction." United States v. Stein, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007). Courts have not found charged and uncharged conduct inextricably intertwined where "[t]he charged crimes are straightforward and may be fully understood without reference to [the uncharged conduct]." Newton, 2002 WL 230964, at *2.

Evidence that Dr. Gilman and Dr. Ross provided Martoma with confidential information regarding the clinical trials of drugs other than bapineuzumab is not inextricably intertwined with the conduct charged in the Indictment. It is not necessary for the jury to know that the doctors provided the Defendant with confidential information about other drugs in order

5

for the jury to understand the Government's theory that the Defendant obtained material, non-public information from the doctors about bapineuzumab, which the Defendant then traded on.

"Indeed, the Indictment itself refutes the Government's 'inextricably intertwined' claims, as it tells a compelling, complete, and detailed story" with almost no mention of the confidential information concerning the other drug trials.[2] See United States v. Hatfield, 685 F. Supp. 2d 320, 323 (E.D.N.Y. 2010). Even if – as the Government alleges – information about other drug trials was discussed in the same conversations in which the bapineuzumab clinical trial was discussed, temporal proximity alone is not sufficient to establish that charged and uncharged conduct is intertwined. See Stein, 521 F. Supp. 2d at 271 (rejecting argument that uncharged conduct should be admitted because it was discussed "at the same time" as charged conduct; because the Government "has not explained why details of the uncharged transaction are necessary to understand the charged transaction . . . [i]t . . . has failed to show that those details are inextricably intertwined with proof of the charged transaction"). Because it is "not manifestly clear" that the non-bapi evidence is intrinsic proof of the charged offenses, it is not admissible as direct evidence.

## II. ADMISSIBILITY AS RULE 404(b) EVIDENCE

"Rule 404(b) of the Federal Rules of Evidence governs the admissibility of evidence of prior or subsequent 'bad acts' – evidence of 'crimes, wrongs, or acts' other than those charged in the indictment." United States v. Curley, 639 F.3d 50, 56 (2d Cir. 2011) (quoting Fed. R. Evid. 404(b)). "The rule prohibits the admission of such evidence if it 'prove[s]

---

[2] The only reference in the detailed, fifteen-page indictment to information regarding other drug trials is a statement that Dr. Ross provided confidential information to Martoma about the bapineuzumab drug trial "and other Alzheimer's disease drug trials . . . with the expectation that Martoma would assist [Dr. Ross] in obtaining additional clinical trial business." (Superseding Indictment (Dkt. No. 61) ¶ 11)

6

the character of a person' to show his propensity to commit the charged act, but permits its admission for other purposes." Id. (quoting Fed. R. Evid. 404(b)) (alteration in original). Permissible purposes include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

"This Circuit follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402. Even under this approach, however, district courts should not presume that such evidence is relevant or admissible." Curley, 639 F.3d at 56.

To be admissible under Rule 404(b), "evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial. In addition, (4) at the defendant's request, the district court should give the jury an appropriate limiting instruction." United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002).

The Government argues that evidence that Martoma obtained confidential information from Dr. Gilman and Dr. Ross regarding other clinical trials is admissible to show Martoma's knowledge, intent, or lack of mistake or accident. Where the Government asserts that it intends to offer other act evidence for such proper purposes, "this does not end the inquiry. . . . Rather, the court must also determine whether the proffered evidence is relevant to that proper purpose under Federal Rules of Evidence 401 and 402, and if so, whether that probative value is substantially outweighed by any risk of unfair prejudice under Federal Rule of Evidence 403." United States v. Kahale, 789 F. Supp. 2d 359, 385 (E.D.N.Y. 2009). As to relevance, the proponent must demonstrate that the other acts are "'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge [and intent] inference[s]

7

advocated by the proponent of the evidence.'" United States v. Afjehei, 869 F.2d 670, 674 (2d Cir. 1989) (quoting United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987)).

Here, the Court concludes that the Government has not "demonstrate[d] that the other-act evidence 'provide[s] a reasonable basis for inferring knowledge[,] [intent, or lack of mistake].'" See Kahale, 789 F. Supp. 2d at 385 (quoting United States v. Gordon, 987 F.2d 902, 908 (2d Cir. 1993)) (second alteration in original). Given that the non-bapi evidence is concededly not material and not non-public information, and given that the non-bapi evidence was never traded on, the fact that Martoma obtained this information from the doctors does not make it any more or less likely that he intended to obtain and trade on material, non-public information related to the bapineuzumab clinical trial. Since "there is no evidence that the other . . . [t]ransactions were fraudulent or illegal . . . those other transactions cannot 'logically show' [the Defendant's] knowledge [or intent]." See id.

Nor does the non-bapi evidence demonstrate opportunity. The fact that the doctors shared confidential information with the Defendant does not lead to an inference that they possessed, or shared with him, material, non-public information that Martoma could trade on. See United States v. Maravilla, 907 F.2d 216, 222 (1st Cir. 1990) ("To show 'opportunity' is to show that the defendant had some special capacity, ability or knowledge that would enable him to commit the crime."); United States v. Green, 648 F.2d 587, 592 (9th Cir. 1981) (Though the word ["opportunity" under 404(b)] has been little used by the courts it evidently is intended to cover all or a part of a category called "capacity". . .").

The Government asserts – in passing – that that the non-bapi evidence is admissible to show Martoma's modus operandi. (Govt. Br. (Dkt. No. 100) at 7) "Rule 404(b) permits evidence of similar acts to prove a 'signature crime,' i.e., a modus operandi, where the

8

[acts] are 'so nearly identical in method as to ear-mark them as the handiwork of the accused.'" United States v. Mills, 895 F.2d 897, 907 (2d Cir. 1990) (quoting 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 404[16], at 404–127 (1985)). The crime alleged is not a signature crime, and the non-bapi evidence concededly was not used for purposes of insider trading.

Finally, the Government argues that the non-bapi evidence is admissible to show the background of the conspiracy and the relationship of the Defendant and his co-conspirators. The Second Circuit has "held repeatedly that it is within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." Rosa, 11 F.3d at 334.

Here, however, the evidence that the Government seeks to introduce is that the doctors were providing Martoma with other confidential information at the same time that they were providing material, non-public information about bapineuzumab. The non-bapi evidence thus does not constitute background evidence, nor does it help explain how a relationship of trust between the Defendant and the doctors developed. At best, the non-bapi evidence might demonstrate that the Defendant has a propensity to obtain confidential information from doctors, and that Dr. Gilman and Dr. Ross had a propensity to give Martoma confidential information. Evidence that "goes to criminal propensity alone, [is] precisely what Rule 404(b) prohibits, [however]." United States v. Scott, 677 F.3d 72, 80 (2d Cir. 2012). "Even [the Second Circuit's] '"inclusionary approach"' to Rule 404(b) evidence cannot support the admission of such propensity evidence." Id. (quoting United States v. LaFlam, 369 F.3d 153, 156 (2d Cir. 2004)).

9

I also find that "any probative value that could be attached to this evidence is substantially outweighed by the risk of unfair prejudice [and juror confusion] under Federal Rule of Evidence 403." Kahale, 789 F. Supp. 2d at 385. As an initial matter, were the Court to admit proof that the non-bapi evidence was "confidential" in nature, it would be required to permit the Defendant to introduce evidence that the results of the corresponding studies had all been publicly announced when the "confidential" data and investigator brochures were shared with Martoma. As noted above, given that the results of the various studies had already been publicly released before the information at issue was shared with Martoma, the remaining significance of "confidential" designations is not likely to be clear to the jury. In any event, the Defendant's "anticipated efforts to defend the legitimacy of these other . . . [t]ransactions [would] necessarily result in delay, [and] confusion of the issues." See id. at 386.

Moreover, admitting evidence that Martoma obtained "confidential" information regarding non-bapi clinical trials during the same time period alleged in the Indictment presents some risk of juror confusion as to the type of information that can be relied on for purposes of a conviction – i.e., material, non-public information concerning the bapineuzumab clinical trial. Introduction of the non-bapi evidence also leads to a risk that jurors will presume that, if Martoma could obtain "confidential" information from the doctors, he could also obtain material, non-public information from these same doctors, and trade on it. As discussed above, this would not be a fair inference.[3]

---

[3] Evidence that Dr. Ross asked Martoma to obtain the investigator's brochure for Flurizan has no probative value. Martoma did not obtain the brochure for Dr. Ross and, in any event, there is no suggestion that the investigator's brochure contained material, non-public information, or that Dr. Ross or Martoma ever traded on the information contained in the brochure.

10

## **CONCLUSION**

The Government's motion in limine to introduce evidence that the Defendant obtained from Dr. Gilman and Dr. Ross confidential information pertaining to drugs other than bapineuzumab is denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 100).

Dated: New York, New York
January 5, 2014

SO ORDERED.

Paul G. Gardephe
United States District Judge