UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/6/2014

UNITED STATES OF AMERICA,

-against-

MATHEW MARTOMA,

                 Defendant.

**ORDER**

12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      In this insider trading case, Defendant Mathew Martoma is charged with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and with two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5 and 240.10b5-2, and 18 U.S.C. § 2. (Superseding Indictment (Dkt. No. 61)) The Government alleges, inter alia, that between 2006 and July 2008, Martoma caused his hedge fund employer to trade on the basis of material non-public information. The material, non-public information was allegedly supplied to Martoma by two doctors – Sidney Gilman and Joel Ross – who were participants in a clinical trial of bapineuzumab, a drug that was thought to be of possible use in treating Alzheimer's disease.

      Jury selection will begin on January 7, 2014. This order resolves the Government's motion in limine to introduce evidence that – after the time period of the charged conspiracy – the Defendant instructed a research analyst to meet with a doctor to obtain information about a recent drug trial. (See Dkt. No. 125)

## BACKGROUND

      The Government has moved in limine to introduce evidence that – at some point after the time period of the alleged conspiracy – the Defendant directed a research analyst to

meet with a doctor to discuss a drug trial. (Govt. Br. (Dkt. No. 125)) Martoma allegedly directed the analyst to elicit information about the drug trial just before the doctor was scheduled to make a public presentation about it. (Id. at 3) Martoma further directed the analyst to tell the doctor that she "happened to be in town due to unrelated matters." (Id.) The analyst followed Martoma's instructions, and met with the doctor before the doctor's presentation. (Id.) The analyst reported to Martoma what she had learned from the doctor. (Id.) The Government does not contend that the analyst obtained material information from the doctor. (Id.)

The Government argues that testimony about this incident is admissible under Fed. R. Evid. 404(b) to demonstrate the Defendant's intent to engage in corrupt acts, his common scheme or plan, his modus operandi, and his lack of mistake or accident in allegedly obtaining material, non-public information from Dr. Gilman and Dr. Ross during the period between 2006 and July 2008. (Id. at 4)

In particular, the Government argues that this incident "parallels in significant respects Martoma's own visit to Dr. Gilman in July 2008." (Id. at 6) The Government notes that Dr. Gilman "had recently come into possession of the efficacy data concerning the drug bapineuzumab," and Martoma met with Dr. Gilman shortly before he "was to present that detailed data at a public conference, making it public for the first time." (Id.) The Government further notes that Martoma told Dr. Gilman that he was going to be in Ann Arbor for unrelated reasons, and suggested that they meet in person. (Id. at 6-7)

## DISCUSSION

### I. TIMELINESS

Defendant argues that the Government did not give timely notice of its intent to introduce this evidence, and did not file a timely motion in limine concerning the proposed

2

evidence. (Def. Br. (Dkt. No. 142) at 3-11) The Government's motion was filed on December 13, 2013, a week after motions in limine were due. (See Dkt. No. 76) The Government asserts that the motion should nonetheless be deemed timely, because the Government only learned of this evidence after the deadline for motions in limine had passed. (Govt. Br. (Dkt. No. 125) at 9) The Government further contends that it gave notice to the defense of its intent to offer this evidence under Rule 404(b) as soon as practicable. (Id.) The defense complains that the Government waited four days before giving notice. (Def. Br. (Dkt. No. 142) at 6)

Rule 404(b) requires the Government – at the Defendant's request – to "(A) provide reasonable notice of the general nature of any [Rule 404(b)] evidence that the prosecutor intends to offer at trial; and (B) [to] do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid. 404(b)(2). Defense counsel has represented that he requested notice of the Government's intent to offer Rule 404(b) evidence on November 12, 2013. (Strassberg Decl. (Dkt. No. 143) ¶ 2)

"There is no set timetable for Rule 404(b) notice because,' . . . the evidence the Government may seek to offer at trial often changes as the proof crystallizes.'" United States v. Chan, No. S1197 Cr. 1053 (PKL), 2002 WL 46994, at *2 (S.D.N.Y. Jan. 14, 2002) (quoting United States v. Roberts, No. 01 Cr. 410 (RWS), 2001 WL 1602123, at *14 (S.D.N.Y. Dec. 14, 2001)) (alteration in original). "Thus, courts generally require only reasonable notice, 'with reasonableness determined by the circumstances of the case.'" Id. (quoting United States v. Kevin, No. 97 Cr. 763 (JGK), 1999 WL 194749, at *13 (S.D.N.Y. Apr. 7, 1999)). As a general matter, "[c]ourts in this Circuit have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b)." United States v. Ojeikere, 299 F. Supp. 2d

3

254, 257 (S.D.N.Y. 2004). Courts have approved shorter periods, however, depending on the circumstances.

In <u>United States v. Valenti</u>, 60 F.3d 941, 945 (2d Cir. 1995), for example, the Second Circuit found that the Government had provided the defendant with reasonable notice of its intent to introduce Rule 404(b) evidence, where notice was given just four days before trial. The Government provided the defendant with notice the day it obtained the evidence, and the court noted that it was "not without significance" that the defendant did not seek a postponement to review the evidence provided. <u>Id.</u> at 945.

Here, the Government's supplemental motion <u>in limine</u> was filed more than three weeks before trial. On the day the motion was filed, the Government provided the defense with notes taken during a December 9, 2013 interview of the research analyst, during which the evidence at issue was disclosed. (Strassberg Decl. (Dkt. No. 143) ¶ 7)

In arguing that the Government's notice is untimely, Defendant relies on <u>United States v. Daugerdas</u>, No. S3 09 Cr. 584 (WHP), 2011 WL 573587, at *1-2 (S.D.N.Y. Feb. 16, 2011). That case involved a Government effort – about a month before trial and nearly a year after the defendants had requested notice of Rule 404(b) evidence – to introduce forty-two exhibits as Rule 404(b) evidence. <u>Id.</u> Here, the evidence that the Government seeks to offer is quite limited; notice was given within a few weeks of the Defendant's request for notice; and notice was provided more than three weeks before trial.

Under these circumstances, the Court finds that the Defendant was given reasonable notice of the Government's intent to offer the evidence at issue, and the Government's motion will be deemed timely.

4

## II.     <u>COMPLETENESS OF THE RULE 404(b) NOTICE</u>

Defendant argues that the Government's motion should also be denied because its Rule 404(b) notice is not "complete," and lacks "critical pieces of information, including such basics as the name of the doctor, the name of the drug, the clinical trial, and the date on which the 'confidential information' was supposedly obtained." (Def. Br. (Dkt. No. 142) at 11-12)

As an initial matter, Defendant misstates the standard for notice set forth in Rule 404(b). The rule does not require the Government to provide "complete" information about the Rule 404(b) evidence it wishes to introduce. Instead, the rule states that the Government must "provide reasonable notice of the <u>general nature</u> of any such evidence." Fed. R. Evid. 404(b)(2)(A) (emphasis added). The level of detail the Defendant seeks is not required by the rule.[1]

The materials provided by the Government informed the Defendant of the general nature of the proposed Rule 404(b) evidence: the Defendant instructed a research analyst – identified by name – to fly to "somewhere in the South" to meet with a doctor in advance of a presentation the doctor was giving about an InterMune drug trial, in order to ask the doctor questions about the drug trial beforehand. (Govt. Br. (Dkt. No. 125) at 3; Strassberg Decl. (Dkt. No. 143) ¶ 6; 3503-7) Defendant purportedly directed the analyst to tell the doctor – falsely – that "she happened to be in town" for unrelated matters. (Govt. Br. (Dkt. No. 125) at 3; 3503-7)

---

[1] <u>United States v. Townsend</u>, No. S1 06 Cr. 34(JFK), 2007 WL 1288597, at *6 (S.D.N.Y. May 1, 2007), cited by Defendant (Def. Br. (Dkt. No. 142) at 12), is not on point. That case does not address the adequacy of notice under Rule 404(b). Instead, <u>Townsend</u> addresses the level of detail necessary to support an admissibility determination. There, the court reserved decision as to admissibility, because the Government had not stated "when the alleged other narcotics transactions occurred, where they occurred, who apart from Townsend participated in the transactions, or the roles played by Townsend and the CI during the transactions." <u>Townsend</u>, 2007 WL 1288597, at *6. <u>Townsend</u> does not address the adequacy of the Rule 404(b) notice originally provided by the Government to the defendant.

5

The analyst followed Martoma's instructions, met with the doctor as directed, was shown at least one slide from the doctor's presentation, and reported what she had learned to Martoma. (Govt. Br. (Dkt. No. 125) at 3; 3503-7) The Government represents that this meeting took place "after the time period of the charged conspiracy (which as charged ended in or about July 2008) but not after 2009." (Govt. Br. (Dkt. No. 125) at 3) The Government does not contend that the research analyst obtained any material information from the doctor. (Id.)

This information was sufficient to give the Defendant "reasonable notice of the general nature" of the proposed Rule 404(b) evidence. See, e.g., United States v. Canales, 718 F. Supp. 2d 327, 328 (S.D.N.Y. 2010) (rejecting argument that notice was inadequate because Government had not identified with "specificity . . . dates, location, and time of occurrence [of proffered Rule 404(b) evidence]"; Government had identified the witnesses who were likely to testify, the nature of their testimony, and the approximate time frame for the prior act).

### III.   ADMISSIBILITY UNDER RULE 404(B)

Having concluded that the notice provided by the Government was adequate, the Court turns to the question of whether the proffered evidence is admissible under Fed. R. Evid. 404(b).

"Rule 404(b) of the Federal Rules of Evidence governs the admissibility of evidence of prior or subsequent 'bad acts' – evidence of 'crimes, wrongs, or acts' other than those charged in the indictment." United States v. Curley, 639 F.3d 50, 56 (2d Cir. 2011) (quoting Fed. R. Evid. 404(b)). "The rule prohibits the admission of such evidence if it 'prove[s] the character of a person' to show his propensity to commit the charged act, but permits its admission for other purposes." Id. (quoting Fed. R. Evid. 404(b)) (alteration in original).

6

Permissible purposes include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

"This Circuit follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402. Even under this approach, however, district courts should not presume that such evidence is relevant or admissible." Curley, 639 F.3d at 56.

To be admissible under Rule 404(b), "evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial." United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002). "[T]he probative value of . . . proffered [Rule 404(b)] evidence depends largely on whether or not there is a '"close parallel" between the crime charged and the acts shown.'" United States v. Gordon, 987 F.2d 902, 908 (2d Cir. 1993) (quoting United States v. Corey, 566 F.2d 429, 431 (2d Cir. 1977) (quoting United States v. Chestnut, 533 F.2d 40, 49 (2d Cir. 1976))).

Here, the Government argues that the research analyst evidence is admissible to show (1) the Defendant's intent, knowledge, and lack of mistake when he obtained material, non-public information about the bapineuzumab drug trial from Dr. Gilman and Dr. Ross; and (2) the Defendant's common scheme or plan and modus operandi in cultivating corrupt relationships with doctors in order to position himself to receive material, non-public information. (Govt. Br. (Dkt. No. 125) at 4, 7)

When evidence of uncharged acts is used to establish intent, knowledge, lack of mistake, common scheme or plan, or modus operandi, the proponent must demonstrate the similarity of the charged and uncharged acts. See United States v. Pascarella, 84 F.3d 61, 73 (2d

7

Cir. 1996) (citing United States v. Afjehei, 869 F.2d 670, 674 (2d Cir. 1989) ("[E]vidence of another act should not be admitted to show knowledge unless the other act is 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence.'")). More specifically, "[t]o carry its burden of establishing admissibility, the government must explain the uncharged transactions, identify similarities between the charged and uncharged transactions, and articulate how the similarities identified support an inference of knowledge or intent." United States v. Stein, 521 F. Supp. 2d 266, 270 (S.D.N.Y. 2007). Where evidence is offered to establish a common scheme or plan, such evidence must demonstrate either a "connected or inseparable transaction" or "a continuing scheme or conspiracy." United States v. O'Connor, 580 F.2d 38, 41 (2d Cir. 1978). To be admissible as proof of modus operandi, other act evidence must be "'so nearly identical in method as to ear-mark [the act] as the handiwork of the accused.'" United States v. Mills, 895 F.2d 897, 907 (2d Cir. 1990) (quoting 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 404[16], at 404-127 (1985)).

    Here, there are substantial and important differences between the proffered research analyst evidence and the charged conduct that preclude a finding of similarity. The Government does not allege that Martoma instructed the research analyst to obtain material, non-public information from the doctor, nor does it contend that the analyst obtained such information from the doctor. The Government has likewise not offered evidence that Martoma or the research analyst had a corrupt relationship with the doctor. Finally, the Government does not contend that Martoma or his hedge fund employer traded on any information obtained from the doctor.

The proffered evidence also does not demonstrate a common scheme or plan. The evidence concerning the research analyst's visit does not involve a request for, or receipt of, material, non-public information, nor is there any allegation that the information obtained was traded on. This incident also took place after the time period of the charged conspiracy, and involved a different doctor, a different drug trial, and a different drug.

That the research analyst flew out to meet the doctor prior to a scheduled public presentation, and lied to the doctor about why she "happened to be in town," does not demonstrate such unique conduct so as to constitute proof of modus operandi. Meetings commonly involve plane travel, and it is not unusual for those in business to employ a device, such as that allegedly used here, to obtain a desired meeting.

Because the proffered evidence does not demonstrate – as to the charged offenses – intent, knowledge, lack of mistake, common scheme or plan, or modus operandi, it is not admissible under Fed. R. Evid. 404(b).

## CONCLUSION

The Government's motion in limine to introduce evidence concerning a research analyst's meeting with a doctor about a clinical trial is denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 125).

Dated: New York, New York
January 5, 2014

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge