USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/6/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MATHEW MARTOMA,

Defendant.

**ORDER**

12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this insider trading case, Defendant Mathew Martoma is charged with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and with two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5 and 240.10b5-2, and 18 U.S.C. § 2. (Superseding Indictment (Dkt. No. 61)) The Government alleges, inter alia, that between 2006 and July 2008, Martoma traded on the basis of material, non-public information, and caused his hedge fund employer – SAC Capital – to trade on the basis of material non-public information. The material non-public information was allegedly supplied by two doctors – Dr. Sidney Gilman and Dr. Joel Ross – who were participants in a clinical trial of a drug for possible use in treating Alzheimer's disease. Both doctors have entered into cooperation agreements with the Government and are expected testify at trial.

This Order resolves the last outstanding issue with respect to the Defendant's motion to compel the production of any Brady and Giglio material that might be contained in communications between the United States Attorney's Office ("USAO") or the Securities and Exchange Commission ("SEC") and counsel for Dr. Gilman or counsel for Dr. Ross (Dkt. No. 149) – namely, whether the USAO's Brady and Giglio obligations extend to communications

between the SEC and Dr. Gilman's counsel, or the SEC and Dr. Ross's counsel, that are in the sole possession of the SEC.

## BACKGROUND[1]

On December 26, 2013, the Defendant – alleging that the USAO's "Brady and Giglio disclosures remain incomplete" – moved to compel the USAO to produce any such material that might be contained in communications between the USAO or the SEC and counsel for Dr. Gilman or counsel for Dr. Ross. (Dkt. No. 149; Def. Br. (Dkt. No. 150) at 3) The Defendant contended that he is entitled to "statements reflecting discussions [between the USAO or the SEC and] counsel for Drs. Gilman or Ross (i) concerning their clients' and/or Mr. Martoma's innocence, (ii) that are inconsistent with [the doctors'] current statements, or (iii) concerning potential criminal charges." (Def. Br. (Dkt. No. 150) at 2)

In opposing this motion, the USAO argued, inter alia, that it does not have "an obligation to produce [any communications] in the SEC's custody that are not in the possession of the USAO." (Govt. Br. (Dkt. No. 174) at 6)

In a January 4, 2014 Order, this Court found that the Defendant had not demonstrated that the Government had withheld Brady or Giglio material contained in communications from the doctors' counsel to the USAO:

> Here, the Defendant is already aware that Dr. Gilman and Dr. Ross previously provided exculpatory statements that are inconsistent with their anticipated testimony at trial. The USAO has disclosed FBI 302 reports and notes reflecting these prior statements, as well as its own statements to Dr. Gilman's counsel that it did not believe Dr. Gilman's denials. The USAO has represented that it is "not aware of any statements made by the attorneys for Dr. Gilman and Dr. Ross that are materially different than the statements reflecting initial denials already produced to the defense." (Govt. Br. (Dkt. No. 174) at 5) The fact that Dr. Gilman's or Dr. Ross's attorneys may have reiterated their clients' denials at the time that they were made does not add anything meaningful to the cross-examination material already available to the defense on this point. Accordingly, the Defendant has

---

[1] Familiarity with this Court's prior orders is presumed.

not demonstrated that the Government has withheld Brady or Giglio material contained in communications from the doctors' counsel to the USAO, and the Defendant's motion to compel will be denied to the extent that it is addressed to such material.

(January 4, 2014 Order at 6) The Court made no finding as to communications between the SEC and counsel for the doctors.

In the January 4, 2014 Order, the Court also ruled that the Defendant was entitled to disclosure of any statements by the USAO to the doctors or their counsel that either (1) threatened criminal prosecution of the doctors if they did not implicate Martoma; or (2) promised a non-prosecution agreement to the doctors if they implicated Martoma, and ordered such statements – to the extent they exist – to be produced forthwith. (Id. at 7)

This Court's January 4, 2014 Order does not resolve the issue of whether the USAO's Brady and Giglio obligations extend to communications between the SEC and the doctors' counsel that are in the sole possession of the SEC. Finding that resolution of this issue turns on whether the USAO and the SEC were engaged in a joint investigation of Martoma, see United States v. Gupta, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012), and that the Court lacked sufficient information to determine whether the two agencies had conducted a joint investigation, this Court directed the parties to submit affidavits addressing this issue by 5:00 p.m. on January 5, 2014.

The Court has reviewed both parties' submissions, and concludes for the reasons stated below that the USAO and the SEC conducted a joint investigation of the Defendant.

## DISCUSSION

"Brady and its progeny require the Government to disclose material information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching.'"

3

United States v. Rodriguez, 496 F.3d 221, 225 (2d Cir. 2007) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

The USAO's obligation to produce Brady and Giglio material that is in the sole possession of the SEC turns on whether the USAO and the SEC were engaged in a joint investigation of Martoma. See Gupta, 848 F. Supp. 2d at 493 ("[A]ny argument that the Government's duty [under Brady and its progeny] does not extend [to certain materials] . . . merely because another agency, not the USAO, is in actual possession of the documents created or obtained as part of the joint investigation is both 'hypertechnical and unrealistic.'") (quoting United States v. Shakur, 543 F. Supp. 1059, 1060 (S.D.N.Y. 1982)). "The inquiry is not whether the United States Attorney's Office physically possesses the discovery material; the inquiry is the extent to which there was a 'joint investigation' with another agency." United States v. Upton, 856 F. Supp. 727, 750 (E.D.N.Y. 1994); see Gupta, 848 F. Supp. 2d at 493 ("Where the USAO conducts a 'joint investigation' with another state or federal agency, courts in this Circuit have held that the prosecutor's duty extends to reviewing the materials in the possession of that other agency for Brady evidence.") (citing Upton, 856 F. Supp. at 749-50).

Courts in this District apply this "joint investigation" analysis in assessing the USAO's obligations with respect to Brady and Giglio material held by the SEC. See Gupta, 848 F. Supp. 2d at 493-95 (finding that the Government had an obligation to review SEC interview notes and memoranda for Brady material, where the SEC and USAO conducted a "joint investigation" by jointly conducting 44 witness interviews); United States v. Rigas, No. 02-CR-1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008), aff'd, 583 F.3d 108 (2d Cir. 2009) (finding that the USAO was not obligated to produce interview notes held by the SEC

4

where there was no joint investigation between the USAO and the SEC).[2] In particular, courts look to whether "the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions." Gupta, 848 F. Supp. 2d at 494. "Assessing whether a joint investigation occurred is a fact-specific inquiry that is best approached on a case-by-case basis," United States v. Ferguson, 478 F. Supp. 2d 220, 238 (D. Conn. 2007), and involves consideration of the "degree of cooperation between agencies," id., such as their coordination in conducting witness interviews and otherwise investigating the facts of the case. See Gupta, 848 F. Supp. 2d at 495.

The record now before the Court demonstrates that the USAO and the SEC did, in fact, conduct a joint investigation of the Defendant. "At various times in connection [with] the criminal investigation into SAC Capital transactions in Elan and Wyeth securities, representatives of the U.S. Attorney's Office conferred with the SEC about the SEC's parallel investigation." (Jan. 3, 2014 Devlin-Brown Decl. (Dkt. No. 177) ¶ 4) These communications began shortly after the USAO commenced its investigation of potential insider trading in Elan and Wyeth securities at SAC Capital in July 2011. (Jan. 5, 2014 Devlin-Brown Decl. (Dkt. No. 179) ¶ 2)  At that time, the USAO and SEC were both conducting "parallel investigations" of "Martoma's potential involvement in insider trading in Elan and Wyeth." (Id. ¶ 3) During the investigation of Martoma's conduct, the SEC and the USAO jointly conducted twenty interviews

---

[2] Relying on United States v. Rigas, 583 F.3d 108, 126 (2d Cir. 2009), the USAO asserts that "the Second Circuit has rejected the contention that the USAO has an obligation to produce documents in the SEC's custody that are not in the possession of the USAO." (Govt. Br. (Dkt. No. 174) at 6) This argument mischaracterizes the holding of Rigas. In Rigas, the Second Circuit affirmed the district court's finding that "the United States Attorney's Office was not in possession of notes from SEC interviews . . . and did not have an obligation to disclose what they did not possess." Rigas, 583 F.3d at 126. That ruling was premised, however, on the district court's finding that the notes were not in the USAO's "possession, custody, or control" because "there was no joint investigation with the SEC." United States v. Rigas, No. 02-CR-1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008).

5

of twelve witnesses. (See Strassberg Decl. (Dkt. No. 180) ¶ 12; see also 3501-11; 3501-16; 3501-19; 3501-25; 3501-27; 3501-29; 3502-3; 3502-5; 3502-8; 3503-9; 3503-1; 3504-1; 3505-2; 3510-5; 3512-1; 3514-3; 3510-10) Six of these interviews were of Dr. Gilman, and three were of Dr. Ross. (See Strassberg Decl. (Dkt. No. 180) ¶¶ 13, 16; see also 3501-11; 3501-16; 3501-19; 3501-25; 3501-27; 3501-29; 3502-3; 3502-5; 3502-8) The SEC also provided the USAO with documents it obtained during its investigation (Jan. 5, 2014 Devlin-Brown Decl. (Dkt. No. 179) ¶ 3), including all documents that it received from SAC. (Strassberg Decl. (Dkt. No. 180) ¶ 34)

The SEC and the USAO also coordinated their efforts in conducting depositions of SAC Capital and its employees. In particular, the SEC informed the USAO in advance that it would be deposing Steven A. Cohen – the founder and principal of SAC Capital – on May 3, 2012. (Jan. 3, 2014 Devlin-Brown Decl. (Dkt. No. 177) ¶ 3) Four days prior to the Cohen deposition – on April 30, 2012 – the Assistant U.S. Attorney ("AUSA") handling the Martoma investigation met with SEC representatives "to discuss evidence obtained through [their] parallel investigations, including evidence relating to Steve Cohen and others." (Id. ¶ 4) Although no employee of the USAO was present for Cohen's deposition, the AUSA received a phone call during a break in the deposition with an "update as to the testimony thus far," and "received a further update after the deposition concluded and prior to an interview that the U.S. Attorney's Office conducted the following day (without SEC participation) of a former SAC Capital employee for which knowledge of Mr. Cohen's testimony was relevant." (Id. ¶ 6)

Clearly, "the agencies [were] engaged in joint fact-gathering, even if they [were] making separate investigatory or charging decisions." Gupta, 848 F. Supp. 2d at 494. Indeed, the criminal complaint against Martoma expressly acknowledges the SEC's participation in this fact-gathering, stating that it is based, in part, on "information received from the Securities &

6

Exchange Commission." (Cmplt. (12 Mag. 2985) ¶¶ 7, 36) Accordingly, the Court finds that the USAO and the SEC conducted a joint investigation of the Defendant, and therefore the USAO's obligation to produce communications in accordance with this Court's January 4, 2014 order extends to documents in the sole possession of the SEC.

## **CONCLUSION**

The USAO will produce to Defendant any communication between the SEC and counsel for Dr. Gilman or counsel for Dr. Ross in which a doctor's counsel makes statements that are materially different from the denials of culpability already produced to Defendant. The USAO's obligation to produce such communications is extended to communications that are in the sole possession of the SEC.

The USAO will also produce to Defendant communications from the SEC to the doctors' counsel, or to Dr. Gilman or Dr. Ross directly, that (1) threaten criminal prosecution of either doctor if he does not implicate Martoma; or (2) promise a non-prosecution agreement to either doctor if he implicates Martoma. The USAO's obligation to produce such communications is extended to communications that are in the sole possession of the SEC.

Dated: New York, New York
      January 5, 2014

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge