UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

MATHEW MARTOMA,

                  Defendant.

No. 12-cr-00973 (PGG)
ECF Case

**DEFENDANT MATHEW MARTOMA'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* FOR ADDITIONAL EXPERT DISCLOSURES AND TO PRECLUDE CERTAIN EXPERT TESTIMONY**

GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
John O. Farley (JF4402)
Daniel Roeser (DR2380)

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Roberto M. Braceras (RB2470)
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Defendant Mathew Martoma*

January 6, 2014

Defendant Mathew Martoma respectfully submits this memorandum of law in opposition to the Government's motion *in limine* for additional expert disclosures and to preclude certain expert testimony (the "Motion").

## PRELIMINARY STATEMENT

As a housekeeping matter, and as discussed briefly at the pretrial conference earlier today, the issues have been narrowed considerably since the Government filed its Motion.

- Mr. Martoma has withdrawn two of the expert witnesses that he previously disclosed to the Government:  Professor L.J. Wei, and Professor Richard Roll.  This leaves only one expert for each category of expert testimony, thereby mooting the Government's concerns about which expert would testify as to which topics.  *See* Mot. at 8.

- Mr. Martoma has withdrawn one of the previously disclosed opinions of Dr. Thomas Wisniewski (regarding the "medical community's response to the results of the Phase II clinical trial of bapi").  Arguments concerning this opinion are likewise moot.  *See* Mot. at 13-14.

- Mr. Martoma yesterday produced two draft reports from Dr. Wisniewski.

- Finally, Mr. Martoma has identified more than 200 exhibits (previously produced on December 30, 2013) pertaining to Dr. Wisniewski's and Professor Paul Gompers's anticipated testimony.  Mr. Martoma had already identified 35 documents pertaining to Dr. Wisniewski's anticipated testimony in his expert disclosure.  Expert Disclosure Letter from Mr. Martoma's Counsel  ("Disclosure Letter") at 2-3, Jan. 2, 2014, ECF No. 178-2.

\*          \*          \*

The rest of the Government's Motion should be denied.   Mr. Martoma's expert disclosure easily satisfies the requirements of Federal Rule of Criminal Procedure 16(b)(1)(C).  It

adequately describes the witnesses' qualifications by attaching their detailed *curricula vitae*. Disclosure Letter, Ex. A, C.  It adequately describes the witnesses' opinions by plainly stating what the expert opinions are (or making clear that the experts will be providing only background information on particular issues).  *Id.* at 1-2, 3.  It adequately describes the bases for the witnesses' opinions, pointing to the witnesses' education, training, and experience, as well as specific documents and data listed in the expert disclosure, produced to the Government as Mr. Martoma's exhibits, and/or otherwise known or available to the Government. *Id.* at 2-3, 4.  In sum, Mr. Martoma's expert disclosures are adequate in all respects and in many ways exceed the level of disclosure typically seen in criminal cases.

The Government's Motion to preclude Mr. Martoma's experts from offering certain opinions also should be denied.  There is only one remaining area of Dr. Wisniewski's anticipated testimony challenged by the Government: the responsibility of doctors participating in clinical trial to maintain the confidentiality of clinical trial results.  The Government alleges that Mr. Martoma obtained and traded on material, non-public information about the Phase II bapi trial from doctors involved in that trial.  It is appropriate to offer testimony explaining clinical trials and the responsibilities of doctors involved in them because it provides background information to assist the jury in considering the Government's charges.  The Government challenges two subjects of Professor Gompers's testimony: (1) Mr. Martoma's and SAC's trading in Elan and Wyeth securities from 2007 through 2008, and (2) the investment strategies of Mr. Martoma, SAC, and institutional investors.  The trading activity of hedge fund portfolio managers is not within the experience of the average juror (and, indeed, the Securities and Exchange Commission repeatedly offers expert testimony that analyzes trading records and behavior).  The average juror likewise is not familiar with the investment and trading strategies

used by institutional investors.  Rather, the Second Circuit and courts in this District have

repeatedly held that such topics are properly the subject of *precisely* the sort of expert testimony

that the Government seeks to exclude.

For these reasons, what remains of the Government's Motion should be denied.

## ARGUMENT

## I.    MR. MARTOMA'S EXPERT DISCLOSURES ARE ADEQUATE.

### A.    Since the Government Filed Its Motion, the Issues Have Been Narrowed.

In its Motion, the Government raises three principal issues:  1) which experts will provide

which opinions; 2) the nature and scope of each expert's opinion; and 3) the bases for each

expert's opinions.  Since the Government filed its Motion, these issues have been narrowed

considerably.

First, as discussed at the pretrial conference earlier today, Mr. Martoma has withdrawn

two of the four expert witnesses that he disclosed on December 27, 2013 and on January 2, 2014:

Professor L.J. Wei and Professor Richard Roll.  As a result, there is no uncertainty as to which

expert will offer which opinions.  *See* Mot. at 8.  Thomas Wisniewski, M.D. will offer:

1)    the science behind the causes of Alzheimer's Disease, including the amyloid beta
hypothesis;[1]

2)    the science behind bapineuzumab ("bapi") as a treatment for Alzheimer's Disease;

3)    the drug testing approval process, including the purpose of Phase I, Phase II, and
Phase III clinical trials;

4)    the purpose of "double blind" clinical trials;

5)    the responsibility of doctors participating in clinical trials to maintain the
confidentiality of clinical trial results;

6)    the drug testing approval process for bapi, including the Phase I, Phase II, and
Phase III clinical trials;

---

[1] As discussed at the hearing today, we anticipate that this testimony will be high-level, background material.  We
do not intend to cover complicated science in great detail.

7) the results of the Phase II clinical trial of bapi disclosed on June 17, 2008, as compared to the results disclosed in the July 17, 2008, draft presentation for the International Conference for Alzheimer's Disease ("ICAD"), including the opinion that there was no meaningful difference between the results disclosed on June 17, 2008, and the results disclosed in the July 17, 2008, draft presentation;

8) the results of the Phase II clinical trial of bapi disclosed on June 17, 2008, as compared to the results disclosed in the July 29, 2008, final presentation for ICAD, including the opinion that there was no meaningful difference between the results disclosed on June 17, 2008, and the results disclosed in the July 29, 2008, final presentation;

9) the role of the Safety Monitoring Committee ("SMC") in the drug testing approval process and clinical trials;

10) the role of the SMC in the drug testing approval process for bapi, including the Phase I, Phase II, and Phase III clinical trials; and

11) the information disclosed in meetings of the SMC for the Phase II clinical trial of bapi, including the opinion that there was no meaningful information about the efficacy of bapi disclosed in those meetings.

Disclosure Letter at 1-2. Paul Gompers, Ph.D. will offer:

1) the efficient market hypothesis and its application to securities of pharmaceutical companies such as Elan and Wyeth;

2) the drug development process and its role in the valuation of drugs and pharmaceutical companies;

3) the likelihood of success of drugs at various stages in the drug development process – including drugs in Phase II and/or entering Phase III clinical trials – and the impact on the prices of pharmaceutical companies' securities;

4) the many reasons that drugs entering Phase III clinical trials fail – including (i) failure in Phase III clinical trials for safety or efficacy reasons, (ii) failure to obtain approval from the Food and Drug Administration, (iii) unsuccessful launches, (iv) emergence of post-launch safety issues, (v) development of competitive pressure from other drugs, and (vi) changes in the regulatory environment – and the impact on the prices of pharmaceutical companies' securities;

5) the market price of Elan securities, analyst reports concerning Elan, and market expectations for the results of the Phase II clinical trial of bapi to be presented at ICAD and the likelihood of success of bapi, including the opinion that, following June 17, 2008, the market price of Elan securities and analyst reports concerning Elan indicated that the market had overly optimistic expectations for the results of the Phase II clinical trial of bapi and the likelihood of success of bapi, which were reflected in the price of Elan securities;

6)      trading by Mr. Martoma and S.A.C. Capital Advisors, LLC and its affiliates
        (collectively, "SAC") in Elan and Wyeth securities from 2007 through 2008,
        including the opinion that there was no correlation in the trading of Elan and Wyeth
        securities around SMC meetings by Mr. Martoma or SAC from 2007 through 2008;

7)      investment strategies used by institutional investors, such as the investment
        strategies used by Mr. Martoma and SAC to buy and sell Elan and Wyeth securities,
        including the opinion that the investment strategies used by Mr. Martoma and SAC
        to buy and sell Elan and Wyeth securities between June 17, 2008, and July 29,
        2008, are consistent with investment strategies used by hedge funds (including
        SAC) to buy and sell securities; and

8)      trading strategies used by institutional investors, such as the trading strategies used
        by SAC to reduce its long positions in Elan and Wyeth securities, including the
        opinion that (i) the manner in which SAC sold Elan and Wyeth securities between
        July 21, 2008, and July 29, 2008, is consistent with trading strategies routinely used
        by hedge funds (including SAC) to sell securities and (ii) SAC had a net long
        position in Wyeth securities immediately prior to the presentation of the results of
        the Phase II clinical trial of bapi at ICAD and SAC's short sales of Elan and Wyeth
        securities in July 2008 are consistent with a strategy of hedging SAC's long
        position in Wyeth securities.

Disclosure Letter at 3-4.

        Nor can the Government argue that there is any purported uncertainty as to which expert

reviewed the documents and data listed in the Disclosure Letter. *See* Mot. at 10.  Dr. Wisniewski

has relied upon:  the criminal complaint; the original Indictment; the Superseding Indictment; the

minutes and materials of the SMC for the Phase II clinical trial of bapi; the June 17, 2008, press

release issued by Elan Pharmaceuticals, plc ("Elan") and Wyeth; the July 17, 2008, draft

presentation for ICAD; and the July 29, 2008, final presentation for ICAD.  Disclosure Letter at

2-3.  Professor Gompers has relied upon:  the criminal complaint; the original Indictment; the

Superseding Indictment; SAC trading records; stock price data for Elan, Wyeth, and industry

competitors; analyst reports concerning Elan; compilations of data from analyst reports

concerning Wyeth and industry competitors; Elan and Wyeth earnings call transcripts and

presentations; public press; and deposition testimony before the Securities and Exchange

Commission in connection with the related proceeding against Mr. Martoma. Disclosure Letter at 3-4.

Second, Mr. Martoma has produced additional materials to the Government, since the filing of the Government's Motion, that provide additional disclosure as to the nature and scope of his experts' opinions. Specifically, as reverse 3500 materials, Mr. Martoma has provided two draft reports authored by Dr. Wisniewski, which further expand on Dr. Wisniewski's opinions and the bases and reasons therefor. Those expert reports state, *inter alia*:

- The press release clearly states that the primary efficacy endpoints in the overall study population were not reached. Hence the study failed to show therapeutic efficacy overall.

- The Press release of 6/17/08 was an accurate reflection of what was presented at ICAD. Less detail was provided but the message was the same.

- The two versions of the ICAD presentation are slightly different; however, these differences are not in any way major. They did not change the message regarding the efficacy and safety of Bapi as a treatment for AD.

- Overall the message presented is positive. On the other hand, a discerning reviewer will note that vasogenic edema, a serious complication, was common and adverse events were a problem in the apoE4 carriers. Furthermore there was no clinical efficacy shown overall in the patient population.

- The SMC meeting information is largely neutral in terms of giving information on the efficacy of Bapineuzumab.

- AE were limited but some were significant, particular VE and associated microhemorrhages. This AE lead to a limitation of the dosage of bapineuzumab to 0.5mg/kg in the apoE4 carriers in the phase 3 trials. However, for the most part the infusions were well tolerated.

- Data was presented that implied that patients' cognitive status was continuing to deteriorate despite treatment; hence, it was at least clear that the treatment was not curative.

Production of these draft reports goes above and beyond the disclosure requirements of Rule 16 and Rule 26.2. *See United States v. Nacchio*, 519 F.3d 1140, 1152 (10th Cir. 2008), *vacated in part on other grounds reh'g en banc*, 555 F.3d 1234 (10th Cir. 2009) ("Unlike under the civil

rules, an expert in a criminal case is **not** required to present and disclose an expert report in advance of testimony." (emphasis in original))

Third, Mr. Martoma has identified for the Government approximately 35 exhibits (Exhibits DX 123, 125-137, 143-162, and 238) pertaining to Dr. Wisniewski's analysis, and approximately 169 exhibits (Exhibits DX 1-122, 124, 138-141, 165, 196-208, 210-226, 236, 244-245, 247, 251-252, 254, 261-262, and 273-274) pertaining to Professor Gompers's analysis.  As to Professor Gompers, those materials consist of:  1) analyst reports, 2) Elan and Wyeth earnings calls, and 3) public press reports, all of which were listed as bases for Professor Gompers's opinions.  The other documents and data that form the basis of Professor Gompers's opinions – SAC trading records, stock price data, and SEC deposition testimony – are either in the Government's possession and/or publicly available.  As to Dr. Wisniewski, the 35 exhibits identified by Mr. Martoma consist of:  1) the minutes and materials of the Safety Monitoring Committee ("SMC") for the Phase II clinical trial of bapineuzumab, 2) the June 17, 2008 press release issued by Elan and Wyeth, 3) the July 17, 2008 draft presentation for ICAD, and 4) the July 29, 2008 final presentation for ICAD, all of which were also identified by Bates Number in the Disclosure Letter.  Together with each expert's education and professional experience (disclosed in Dr. Wisniewski's and Professor Gompers's *curriculum vitae*), and the pleadings in this matter, these documents comprise the full materials relied upon by Mr. Martoma's experts.

### B.      Mr. Martoma's Expert Disclosures Comply With All Requirements of Federal Rule of Criminal Procedure 16(b)(1)(C).

Rule 16 provides that the defendant must "give to the government a written summary of any [expert] testimony that the defendant intends to use . . . as evidence at trial."  FED. R. CRIM. P. 16(b)(1)(C).  The disclosure must "describe the witness's opinions, the bases and reasons for

those opinions, and the witness's qualifications." *Id.* Mr. Martoma's expert disclosure complies with each of these requirements.

### 1. The Disclosure Adequately Describes the Witnesses' Qualifications.

Mr. Martoma has adequately disclosed Dr. Wisniewski's and Professor Gompers's qualifications. Mr. Martoma's Disclosure Letter provides the expert's current title and expressly incorporates and attaches each expert's *curriculum vitae*. Disclosure Letter at 1, 3. Indeed, Mr. Martoma attached 58 pages of exhibits pertaining to Dr. Wisniewski and Professor Gompers, detailing their qualifications. This satisfies Rule 16. *See United States v. Duvall*, 272 F.3d 825, 828 n.1 (7th Cir. 2001) (concluding that one sentence in a Rule 16 disclosure stating that the expert's testimony would be "based on his education, training and experience" and attaching a copy of his resume "conforms to the minimum that we have found adequate"); *United States v. Rogers*, CRIM.A. No. 05-292(RWR), 2006 WL 5249745, at *3 (D.D.C. July 17, 2006) ("A party sufficiently states an expert's basis for his testimony by noting the experts' education, training and experience and attaching a resume.") The *curriculum vitae* of Dr. Wisniewski is attached hereto as Exhibit A. The *curriculum vitae* of Professor Gompers is attached hereto as Exhibit B.[2]

### 2. The Disclosure Adequately Describes the Witnesses' Opinions.

Mr. Martoma has adequately disclosed Dr. Wisniewski's and Professor Gompers's opinions. Rule 16 confirms that expert testimony may consist of <u>both</u> background information on particular issues outside of the average juror's experience <u>and</u> opinions specific to the case. Indeed, the Rule is expressly designed to "inform the requesting party whether the expert will be providing only background information on a particular issue or whether the witness will actually

---

[2] The Government did not attach these exhibits when it attached Mr. Martoma's Disclosure Letter to its Motion, and likewise did not reference the information contained therein in its Motion. Instead, in discussing the sufficiency of the disclosure with respect to Dr. Wisniewski, the Government asserts that Mr. Martoma "offers no explanation how [Dr. Wisniewski] can testify to" various matters relating to the SMC and the clinical trial process. Mot. at 9, 5-6. Not so. Dr. Wisniewski's *curriculum vitae* details his clinical trial experience, including an example of his experience as a safety monitor. Dr. Wisniewski *curriculum vitae*, Ex. A at 8-9.

offer an opinion." FED. R. CRIM. P. 16, advisory committee's note (1993 amendment); *accord.*
*United States v. Rogers*, CRIM.A. 05-292(RWR), 2006 WL 5249745, at *3 (D.D.C. July 17,
2006) (same).

   With respect to certain categories of testimony challenged by the Government (Mot. at
8-9), there is no "opinion" to disclose because the witness is providing background information.
Specifically, Dr. Wisniewski provides background information on:  1) the responsibility of
doctors participating in clinical trials to maintain the confidentiality of clinical trial results, and
2) the role of the SMC in the drug testing approval process for bapi, including the Phase I, Phase
II, and Phase II clinical trials.  Professor Gompers provides background information on:  1) the
likelihood of success of drugs at various stages in the drug development process, and 2) the
impact on the prices of pharmaceutical companies' securities.  As such, Mr. Maroma's disclosure
is adequate as to these topics.  *See United States v. Lamonda*, No. 6:05CR-131ORL19KRS, 2006
WL 843823, at *3 (M.D. Fla. Mar. 29, 2006) (finding that the Government had complied with its
Rule 16 obligations as to an expert who "would not offer an expert opinion, but would provide
expert background information" on various insurance concepts by disclosing the expert's
"qualifications and indicat[ing] that the bases and reasons supporting his testimony come from
his firsthand knowledge" in regulating the insurance industry).

   With respect to the remaining categories of testimony challenged by the Government, Mr.
Martoma's Disclosure Letter goes beyond listing general topics and states the actual opinions of
each expert.[3]  The Government does not dispute that the **opinions** themselves are adequately
disclosed – indeed, it (wrongly) challenges their admissibility – but rather challenges only the
**bases** for these opinions.  *See* Mot. at 8-10.  As such, Mr. Martoma's disclosure of his experts'

---

[3] As discussed in Section I.A, *supra*, Mr. Martoma has since also provided Dr. Wisniewski's draft reports, which
further elaborate on Dr. Wisniewski's opinions, in his own words.

opinions is adequate

### 3. The Disclosure Adequately Describes the Bases for the Witnesses' Opinions.

Notwithstanding the Government's claims to the contrary (Mot. at 8-10), the bases for

Dr. Wisniewski's and Professor Gompers's opinions are adequately disclosed in the Disclosure

Letter and in the exhibits that Mr. Martoma has produced.

First, the Government asserts that the documents listed in the Disclosure Letter are, "by

Martoma's admission, incomplete" because they are listed as "(among others)." Mot. at 10.

That is  unpersuasive.  This phrase serves only to provide notice that the disclosure may not

specify every detail of the testimony.  *See United States v. Cerna*, CR 08-0730 WHA, 2010 WL

2347406, at *2 n.1 (N.D. Cal. June 8, 2010) (rejecting argument that disclosures are inadequate

where they "describe the subject of each expert's testimony as 'among other things' about which

the expert will testify").  In addition, the category of documents comprising "public commentary

concerning the results of the Phase II clinical trial of bapi presented at ICAD" was not identified

by Bates range, but that category of documents is no longer at issue because those documents

served as the basis for opinions that have since been withdrawn.  *See infra*, § II.

Second, to the extent that the experts are relying on their education and professional

experience, Mr. Martoma has provided each experts' *curriculum vitae*, which details his

education, training, and experience.  *See supra* § I.B.1.  That is an acceptable basis for expert

testimony.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999) ("Rules 702 and

703 grant expert witnesses testimonial latitude unavailable to other witnesses on the 'assumption

that the expert's opinion will have a reliable basis in the knowledge and experience of his

discipline.'" (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993))); *United

States v. Jackson*, 51 F.3d 646, 650–51 (7th Cir. 1995) (finding Rule 16 disclosures to be

sufficient where they stated that opinions would be based "on [the experts'] years of training and

experience" in the field); *Rogers*, 2006 WL 5249745 at *3 ("A party sufficiently states an expert's basis for his testimony by noting the expert's education, training and experience and attaching a resume.").

Third, the Government's assertion that the lists of documents and data provided by Mr. Martoma are "generalized" is unfounded.  *See* Mot. at 10.  Mr. Martoma has expressly identified by Bates number documents on which Dr. Wisniewski bases his opinions – documents that the Government already had in its possession – and, in any event, Mr. Martoma has since provided copies of each and every document in his exhibit list, including those documents.  Moreover, Mr. Martoma has identified 169 exhibits (Exhibits DX 1-122, 124, 138-141, 165, 196-208, 210-226, 236, 244-245, 247, 251-252, 254, 261-262, and 273-274) that serve as bases for Professor Gompers's opinion.  In addition, Mr. Martoma has disclosed as bases:  1) SAC trading records, 2) the stock price data, and 3) SEC deposition testimony – all of which are in the Government's possession and/or publicly available.[4]  There can be no serious dispute that the documents and data that serve as the bases for Dr. Wisniewski's and Professor Gompers's testimony have been adequately disclosed.[5]

Finally, to the extent that the Government maintains that Mr. Martoma should expressly

---

[4] Databases with "compilations of data from analyst reports concerning Wyeth and industry competitors" are also publicly available, and the Government may obtain them should it so choose.

[5] In fact, physically producing exhibits goes above and beyond the requirements of Fed. R. Crim. P. 16.  *See United States v. Nacchio*, 519 F.3d 1140, 1152 (10th Cir. 2008) *vacated in part on other grounds on reh'g en banc*, 555 F.3d 1234 (10th Cir. 2009) (noting that the expert disclosure requirements of Fed. R. Crim. P. 16 are lenient compared to the more extensive disclosure required by Fed. R. Civ. P. 26, which, unlike Rule 16, requires disclosure of "all summary or supporting exhibits" on which the expert will rely.).  Moreover, the exhibits that Mr. Martoma produced to the Government include the SMC materials (exhibits 125-126, 128-137, 143-146, 148, 150-162), which are also expressly identified by Bates Numbers in the Disclosure Letter.  Dr. Wisniewski bases his opinion that there was no meaningful information about the efficacy of bapi disclosed in the SMC meetings on these SMC materials.  Disclosure Letter at 2-3  Contrary to the Government's assertion (Mot. at 9), the SMC materials are a sufficient basis for Dr. Wisniewski's opinion.  He is not required to have been "in attendance at such meetings."  Mot. at 9.  In fact, Federal Rule of Evidence 703 expressly states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of" even if he does not have independent, personal knowledge of those facts or data.  *Id.*; *accord LaShip, LLC v. Hayward Baker, Inc.*, No. CIV.A. 11-0546, 2013 WL 6017956, at *4 (E.D. La. Nov. 13, 2013) (same).

associate particular documents or bases with particular opinions, there is nothing in Rule 16 that requires such disclosure. Indeed, "Rule 16 . . . requires only a summary of an expert's testimony, bases and reasons, and not every detail." *United States v. Cerna*, CR 08-0730 WHA, 2010 WL 2347406, at \*2 n.1 (N.D. Cal. June 8, 2010); *accord United States v. Mehta*, 236 F. Supp. 2d 150, 157 (D. Mass. 2002) ("To require [Defendant's] expert to disclose why he challenges each purported item of 'income'—essentially going line by line—would be to require not an expert summary, but effectively an expert deposition.").

## II.     THE GOVERNMENT'S MOTION TO PRECLUDE MR. MARTOMA'S EXPERTS FROM OFFERING CERTAIN OPINIONS SHOULD BE DENIED.

In its Motion, "the Government moves to preclude Martoma from offering expert opinions that do not require specialized knowledge, that opine and speculate about Martoma's intent in making trading decisions, that incorrectly assume, speculate, and draw misleading conclusions about certain facts, or that are conclusions regarding elements of the charged offenses that should be left solely for the trier of fact." Mot. at 10-11. The Government is not describing any of the opinions offered by Mr. Martoma.[6]

### A.      Dr. Wisniewski's Anticipated Testimony Is Admissible.

There is only one remaining area of Dr. Wisniewski's anticipated testimony challenged by the Government: the responsibility of doctors participating in clinical trials to maintain the confidentiality of clinical trial results. Mot. at 13.[7] The Government argues that "[t]he general responsibilities of doctors" are not the issue but rather "[t]he only relevant duties of confidentiality are those owed by the Dr. Ross and Dr. Gilman to Elan and Wyeth," which present "(i) questions of

---

[6] The Government also states: "Provided the defendant does provide the proper Rule 16 disclosures, the Government may also seek to supplement this application to preclude improper areas of expert testimony that may revealed once those disclosures are made." (Mot. at 7.) If the Government supplements its motion to preclude areas of Mr. Martoma's anticipated expert testimony, Mr. Martoma will supplement his Opposition at that time. Further, given the limited time available to Mr. Martoma to prepare this Opposition, he requests an additional opportunity to address the Court should there be any outstanding questions.

fact, (ii) going to an ultimate issue that (iii) are properly evaluated through witness testimony and related documentary evidence."  Id.  Not so.

Dr. Wisniewski's anticipated testimony on this subject does not concern "questions of fact" that "are properly evaluated through witness testimony and related documentary evidence."  Id. The Government alleges that Mr. Martoma obtained and traded on material, non-public information about the Phase II bapi trial from doctors involved in that trial.  It is appropriate to offer testimony explaining clinical trials and the responsibilities of doctors involved in them because it provides background information to assist the jury in considering the charges against Mr. Martoma.  *See United States v. Mulder* 273 F.3d 91, 101-02 (2d Cir. 2001) (allowing an expert to render factual, background testimony to explain the history and tactics of labor coalitions, which "are not well known or commonly understood"); *United States v. Kassir*, No. S2-04-CR-356(JFK), 2009 WL 910767, at *4-5 (S.D.N.Y. Apr. 2, 2009) (allowing as both helpful and relevant expert testimony that would "place th[e] evidence into context and help the jury understand its relevance to the charges").[8]

Moreover, the Government's assertion that Dr. Wisniewski's anticipated testimony goes to an ultimate issue is not only incorrect, but also confuses the applicable rules.  Federal Rule of Evidence 704 states unequivocally that "[a]n opinion is not objectionable just because it

---

[7] The Government also challenged any expert opinions regarding the medical community's response to the results of the Phase II clinical trial of bapi.  Mot. at 13-14.  In response to the Government's objection, Mr. Martoma hereby withdraws his notice of testimony by Dr. Wisniewski about information and opinions concerning the medical community's response to the results of the Phase II clinical trial of bapi presented at ICAD on July 29, 2008. Accordingly, the Government's arguments concerning this subject are moot.

[8] *Accord In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *41 (N.D. Ohio June 4, 2010) (allowing an expert to testify to the content of "documents and articles" because such testimony involved an "application of [the expert's] expertise," which was necessary to allow the trier of fact to better understand what the documents meant and consequently what the defendants might have known.); *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 964 (D. Ariz. 2007) ("[An expert's] testimony will help the jury understand the business risks the UOP faced and why the DOE report may have added to those risks, issues that are directly relevant to the materiality of the report, which is an element of Lead Plaintiff's claim.  Based on the foregoing, the Court is satisfied that [the expert's] expert opinions are both reliable and relevant, and denies Defendants' motion *in limine* to exclude this testimony.").

embraces an ultimate issue" of the case.  *Worldwide Home Prods., Inc. v. Time Inc.*, No. 11-cv3633(LTS)(MHD), 2013 WL 5477480, at *5 (S.D.N.Y. Sept. 30, 2013) (quoting FED. R. EVID. 704(a)).  To the extent that the Government is attempting to refer to the prohibition against expert testimony in a criminal case regarding "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," that is nonsense.  Testimony concerning the confidentiality obligations of doctors in clinical trials does not constitute an opinion on Mr. Martoma's mental state.

Dr. Wisniewski's anticipated testimony on the responsibility of doctors participating in clinical trial to maintain the confidentiality of clinical trial results is admissible.

### B.    Professor Gompers' Anticipated Testimony Is Admissible.

The Government challenges two subjects of Professor Gompers' testimony: (1) Mr. Martoma's and SAC's trading in Elan and Wyeth securities from 2007 through 2008 and (2) the investment strategies of Mr. Martoma, SAC, and institutional investors.  Mot. at 11-13. The Government's arguments are fatally flawed.

### 1.    Mr. Martoma's and SAC's Trading in Elan and Wyeth Securities from 2007 through 2008

The Government takes issue with Professor Gompers' anticipated testimony that there was no observable association between SMC meetings and the trading of Elan and Wyeth securities by Martoma or SAC from 2007 through 2008.  Id.  The Government's criticism is baseless.[9]

---

[9] The Government has conceded that it has a "nuanced" view of the role of the SMC meetings,  Mr. Martoma believes that it is less "nuanced" and more confused, with the possible result of misleading the jury.  Given the Government's admission that there was **no** trading linked to the SMCs, Mr. Martoma believes all SMC-related evidence should be excluded .  If this were to be the case, then Prof. Gompers would need not testify about the SMCs and the lack of relationship to any trading.  But as long as the Government continues its efforts to use the SMCs to suggest (improperly) that there was some misconduct surrounding such meetings, Professor Gompers will be necessary to set the record straight.

According to the Government, "[t]his is a lay matter that the jury is capable of understanding and deciding without an expert's help."  Id.  Not so.  Analyses of the trading activity of hedge fund portfolio managers are not within experience of the average juror.  Indeed, the *Securities and Exchange Commission* itself has repeatedly offered expert testimony that analyzed trading records and behavior.  *See S.E.C. v. U.S. Envtl., Inc.,* No. 94-CV-6608(PKL)(AJP), 2002 WL 31323832, at *4 (S.D.N.Y. Oct. 16, 2002) ("[C]ontrary to the defendants' argument, the conclusions [the expert] arrives at from analyzing the trading records, depositions and other documents are not ones upon which a lay person could readily hypothesize."); *S.E.C. v. Lorin*, 877 F. Supp. 192, 196 (S.D.N.Y. 1995) (allowing expert testimony on the defendant's trading behavior), *vacated in part on other grounds*, 76 F.3d 458 (2d Cir. 1996) (per curiam).

Professor Gompers' anticipated testimony on Mr. Martoma's and SAC's trading in Elan and Wyeth securities from 2007 through 2008 is admissible.

### 2.    The Investment Strategies of Mr. Martoma, SAC, and Institutional Investors

The Government attacks Professor Gompers's anticipated testimony concerning (1) investment strategies used by institutional investors, such as investment strategies used by Mr. Martoma and SAC to buy and sell Elan and Wyeth securities, and (2) institutional investors' trading strategies, such as SAC's strategy to reduce long positions in Elan and Wyeth securities. Mot. at 11.  Those attacks are meritless.

*First*, the Government argues that Professor Gompers's anticipated testimony constitutes "factual evidence coming from witnesses with no firsthand knowledge" and does not involve "areas of expertise" but instead "questions for fact witnesses with knowledge of Martoma's investment strategies as supplemented by contemporaneous documents relating to Martoma's considerations at the relevant time."  Id.  That is wrong.  As the Second Circuit has explained, "we have noted that

'[p]articularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts.'" *United States v. Russo*, 74 F.3d 1383, 1395 (2d Cir. 1996) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1996)).  Not surprisingly, courts in this District have repeatedly admitted ***precisely*** the sort of expert testimony that the Government seeks to exclude.  *See, e.g.,* Trial Transcript at 1958-1959, *United States v. Whitman*, No. 12 Cr. 125 (S.D.N.Y. Aug. 13, 2012) ("Whitman Trial Tr.") (permitting defense to offer the testimony of an industry expert, to explain what an analyst does to assess the condition and financial performance of public companies."); Trial Transcript at 4710-4760, *United States v. Rajaratnam*, 802 F. Supp. 2d 491 (S.D.N.Y. April 14, 2011) (No. 09 Cr. 1184) (permitting expert to testify about the background and context of the securities industry; to explain unfamiliar terms; to describe the defendant's trades, to summarize relevant news and other public information similar to purported tips that were in the public domain, and to give his opinion that it would have been reasonable for a sophisticated investor to trade in the direction indicated by the public information he described); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008) ("[An expert's] proposed testimony regarding industry customs and practices for private placement transactions is relevant and reliable."); *In re Blech Sec. Litig.*, No. 94-CV-7696(RWS), 2003 WL 1610775, at *21 (S.D.N.Y. Mar. 26, 2003) ("[An expert] can testify as to what ordinary broker activity entails and as to the customs and practices of the industry.").

    ***Second***, the Government argues that it would be "completely improper" for Professor Gompers to testify that (1) the investment strategies behind the trades at issue were consistent with investment strategies used by hedge funds (including SAC) to buy and sell securities, (2) the manner in which SAC sold Elan and Wyeth securities is consistent with trading strategies

routinely used by hedge funds (including SAC) to sell securities, (3) SAC had a net long position in Wyeth securities immediately prior to the presentation of the results of the Phase II clinical trial, and (4) SAC's short sales of Elan and Wyeth securities in July 2008 are consistent with a strategy of hedging SAC's long position in Wyeth securities.  (Mot. at 12.)  Once again, the Government is wrong.

The Government asserts that such testimony should be precluded because Professor Gompers has "no specialized knowledge about SAC."  (Mot. at 12.)  Under Federal Rule of Evidence 702, however, the correct inquiry is whether the expert possesses "scientific, technical or other specialized knowledge" about a particular topic or field, such that his testimony is helpful to the jury.  Rule 702 does ***not*** require special, personal knowledge of the facts of the case, as the decisions cited by the ***Government*** make clear.  *See Kumho*, 526 U.S. at 148-49 (expert testimony includes "specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case") (cited by the Government in its Motion at 4-5); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004) (evaluating whether an expert possessed "specialized knowledge" by examining her training and experience in a given field, not by inquiring into whether she had special knowledge of the particular drug company at issue in the case) (cited by the Government in its Motion at 12); *S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 762 (N.D. Ill. 1998) (holding that a certified public accountant, by virtue of his profession and nothing more, "generally possesses the 'specialized knowledge' to qualify as an expert witness under the proper circumstances.") (cited by the Government in its Motion at 5).  To the extent that Professor Gompers may mention facts about SAC (*e.g.*, the investment and trading strategies employed by SAC in 2007 and 2008), such testimony is permissible to supply relevant background that will

provide context for his opinions and to assist the jury. *United States v. Daly,* 842 F.2d 1380, 1388 (2d Cir. 1988) ("Background evidence may be admitted to show, for example, the circumstances surrounding the events.").

The Government also claims that such testimony would "assume counsels' responsibility to make arguments or . . . assume the jury's function by drawing inferences from the evidence." (Mot. at 12.) To the contrary, as the Second Circuit has explained: "Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry." *Marx & Co. v. Diners' Club, Inc.*, 550 F. 2d 505, 508 (2d Cir. 1977) (citing 7 *Wigmore on Evidence* § 1949, at 66 (3d ed. 1940)). In fact, courts in this District have allowed expert testimony specifically on a hedge fund's characteristics, including its "investment strategy, objectives, risk factors, etc." *Pension Comm. of Univ. of Montreal Pension Plan et al. v. Banc of Am. Sec., LLC et al.*, 691 F. Supp. 2d 448, 461 (S.D.N.Y. 2010).[10]

Professor Gompers's anticipated testimony on the investment strategies of Mr. Martoma, SAC, and institutional investors is admissible.

## CONCLUSION

For the foregoing reasons, Mr. Martoma respectfully requests that this Court deny the Government's motion *in limine* for additional expert disclosure and preclude certain expert testimony.

---

[10] The Government cites *Rezulin* for the uncontroversial proposition that "experts should not be permitted to supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence." (Mot. at 12 (alteration and internal quotation marks omitted).) In *Rezulin*, the court excluded the expert's testimony as "nothing more than a repetition of the factual allegations in plaintiffs' complaint" because, in "[the expert's] own words, the purpose of this testimony [wa]s simply to 'provid[e] an historical commentary of what happened.'" 309 F. Supp. 2d at 551. Such testimony stands in stark contrast to the substantive analyses and opinions of Professor Gompers' anticipated testimony.

Dated:   New York, New York
         January 6, 2014

Respectfully submitted,

GOODWIN PROCTER LLP

By: /s/ Richard M. Strassberg
Richard M. Strassberg (RS5141)
 (rstrassberg@goodwinprocter.com)
John O. Farley (JF4402)
 (jfarley@goodwinprocter.com)
Daniel Roeser (DR2380)
 (droeser@goodwinprocter.com)

The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
Facsimile: (212) 355-3333

Roberto M. Braceras (RB2470)
 (rbraceras@goodwinprocter.com)
53 State Street
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

*Attorneys for Defendant Mathew Martoma*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2014, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.   I also certify that I have caused copies of the aforementioned document to be served via first class mail, postage prepaid, upon all non-CM/ECF participants.

/s/ Richard M. Strassberg
Richard M. Strassberg (RS5141)