USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/9/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

MATHEW MARTOMA,

            Defendant.

No. 12-cr-00973 (PGG)
ECF Case

**ORAL ARGUMENT REQUESTED**

## FILED UNDER SEAL

**DEFENDANT MATHEW MARTOMA'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO EXCLUDE EVIDENCE CONCERNING EVENTS
UNRELATED TO THE CHARGED OFFENSES AND PRECEDING
MR. MARTOMA'S EMPLOYMENT AT SAC**

GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
John O. Farley (JF4402)
Daniel Roeser (DR2380)
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Roberto M. Braceras (RB2470)
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Defendant Mathew Martoma*

December 6, 2013

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .............................................................................1

FACTUAL BACKGROUND.................................................................................4

ARGUMENT ........................................................................................................6

I.   THE PRE-SAC MATERIAL MAY NOT BE USED BY THE GOVERNMENT
     AFFIRMATIVELY IN ITS CASE-IN-CHIEF BECAUSE THE PRE-SAC
     MATERIAL IS IRRELEVANT. ...................................................................7

II.  THE PRE-SAC MATERIAL IS INADMISSIBLE UNDER FEDERAL RULE
     OF EVIDENCE 404(B). ..............................................................................7

III. THE PRE-SAC MATERIAL WOULD BE UNFAIRLY PREJUDICIAL TO
     MR. MARTOMA AND CONFUSING TO THE JURY.................................11

CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Duggan v. Village of New Albany,*
   No. 08 Civ. 814, 2009 WL 650461 (S.D. Ohio Mar. 11, 2009) ...............................11

*Gray v. Briggs,*
   45 F. Supp. 2d 316 (S.D.N.Y. 1999)..................................................................15

*Huddleston v. United States,*
   485 U.S. 681 (1988)........................................................................................8

*Old Chief v. United States,*
   519 U.S. 172 (1997).......................................................................................12

*United States v. Affehei,*
   869 F.2d 670 (2d Cir. 1989)........................................................................8, 11

*United States v. Baljit,*
   207 F. Supp. 2d 118 (S.D.N.Y. 2002).................................................................10

*United States v. Curley,*
   639 F.3d 50 (2d Cir. 2011)........................................................................12, 13

*United States v. Cushing,*
   No. 00 Cr. 1098 (WHP), 2002 WL 1339101 (S.D.N.Y. June 18, 2002)................. 9-10

*United States v. Garcia,*
   291 F.3d 127 (2d Cir. 2002).....................................................................7, 8, 11

*United States v. Gonzalez,*
   No. 08 Cr. 363 (BSJ), 2009 WL 1834317 (S.D.N.Y. June 24, 2009) ..................8, 11

*United States v. Gordon,*
   987 F.2d 902 (2d Cir. 1993).......................................................................8, 11

*United States v. Graziano,*
   558 F. Supp. 2d 304 (E.D.N.Y. 2008) ..............................................................15

*United States v. Hatfield,*
   685 F. Supp. 2d (E.D.N.Y. 2010) ...............................................3, 10, 11, 13, 15

*United States v. Kahale,*
   789 F. Supp. 2d 359 (E.D.N.Y. 2009) .............................................................14

*United States v. Levy,*
   No. 11 Cr. 62 (PAC), 2013 WL 655251 (S.D.N.Y. Feb. 22, 2013) ..................10, 15

*United States v. Nachamie*,
    101 F. Supp. 2d 134 (S.D.N.Y. 2000).................... ................................. 11-12, 13

*United States v. Nekritin*,
    No. 10 Cr. 491(S-2) (KAM), 2011 WL 2462744 (E.D.N.Y. June 17, 2011) ..........................14

*United States v. Newton*,
    No. 01 Cr. 635 (CSH), 2002 WL 230964 (S.D.N.Y. Feb. 14, 2002) .....................................13

*United States v. Stein*,
    521 F. Supp. 2d 266 (S.D.N.Y. 2007)...........................................................................................8

*United States v. Williams*,
    585 F.3d 703 (2d Cir. 2009) ........................................................................................... 13-14

*Walls v. Shelby*,
    No. 11 Civ. 174 (KGB), 2012 WL 6569775 (E.D. Ark. Dec. 17, 2012).......................... 14-15

## OTHER AUTHORITIES

Fed. R. Evid. 404(b)............................................................................................................ passim

Fed. R. Evid. 403 ................................................................................................................ passim

Defendant Mathew Martoma respectfully submits this memorandum of law in support of his motion to exclude evidence concerning events unrelated to the charged offenses and preceding Mr. Martoma's employment at S.A.C. Capital Advisors, LLC and its affiliates (collectively, "SAC"). Specifically, this Court should exclude all evidence concerning (1) proceedings by the Harvard Law School Administrative Board against Mr. Martoma in 1999 and (2) business dealings between Mr. Martoma and Stephen Chan in 1999 (collectively, the "pre-SAC Material"). This is a crucial pre-trial issue. Allowing the Government to introduce such remote, yet powerfully prejudicial, "evidence" would effectively foreclose any opportunity for Mr. Martoma to receive a fair trial. We respectfully submit that, if the Government were to introduce such evidence, it would inject reversible error into the trial; the Government should not be allowed to do so.[1]

## PRELIMINARY STATEMENT

According to the Government, this is a "straightforward" insider trading case "involving trades in two securities, both relating to the outcome of a single event: the public announcement of the Drug Trial [*i.e.*, bapineuzumab ("bapi")] results on July 29, 2008."[2] The Government should not be permitted to present to the jury irrelevant and improper character evidence concerning alleged misconduct by Mr. Martoma almost 15 years ago that has nothing to do with this "straightforward" case, insider trading, or even the purchase or sale of securities. The pre-SAC Material is not relevant to the Government's case, would constitute improper character or

---

[1]   Due to the extremely sensitive nature of this motion and the potential prejudice it would have if repeated in the media to prospective jurors, we have filed an application to have all briefing on the topic filed under seal.

[2]   Government's Opp'n to Defendant Mathew Martoma's Motion for a Bill of Particulars at 7, *United States v. Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y. May 13, 2013), ECF No. 26 ("Gov't Bill of Particulars Br."); *see also* Transcript of Court Conference at 10:18-25, *United States v. Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y. Mar. 5, 2013).

"propensity" evidence, and in any event should be excluded for its grossly prejudicial impact on Mr. Martoma.

In 1999, many years before Mr. Martoma entered the world of finance, met Dr. Sidney Gilman, or worked for SAC, he was the subject of proceedings by the Harvard Law School Administrative Board. As part of those proceedings, Mr. Martoma was accused of altering the date of an e-mail in order to avoid dismissal from Harvard Law School. Mr. Martoma contested the allegations against him via testimonial and documentary evidence, including taking and passing two polygraph tests. The Harvard Law School proceedings led to business dealings with a computer forensic company involving Mr. Chan, Computer Data Forensics, which submitted a letter in support of Mr. Martoma.

The pre-SAC Material is unrelated to the issues here. At the threshold, the Government should be prohibited from introducing any of the pre-SAC Material affirmatively in its case-in-chief because that material is irrelevant and inadmissible. Fifteen-year-old findings and unproven allegations by an academic board against a then-law student have nothing to do with this case. They are not even remotely probative of Mr. Martoma's guilt and would serve only as improper and highly prejudicial character evidence with no purpose but to smear Mr. Martoma in the eyes of the jury.

Nor should the Government be allowed to use the threat of the pre-SAC Material to hamstring Mr. Martoma's ability to argue that the Government's failure to present to the jury an e-mail supposedly sent by cooperating witness Dr. Gilman to Mr. Martoma on July 17, 2008, attaching the then-confidential Phase II bapi trial results, undermines the Government's case and exculpates Mr. Martoma. In other words, the Government should be precluded from introducing the pre-SAC Material (including allegations that in 1999 Mr. Martoma modified the date of a

2

personal e-mail) and arguing that the pre-SAC Material *proves* that almost ten years later Mr. Martoma disposed of an e-mail from Dr. Gilman in a way that made it impossible for the Government (including the FBI) to find it.

In the first instance, there was no finding as part of the Harvard Law School proceeding that Mr. Martoma ever altered any e-mail. And the unproven and hotly contested *allegation* that a 24-year old Mr. Martoma modified an e-mail to avoid dismissal from law school is not remotely probative of whether he committed the charged offenses. Nor is it probative of whether he somehow removed from the face of the earth an e-mail attaching the Phase II bapi results, an act with which he is *not charged* and of which the Government has literally *zero* evidence. Courts routinely refuse to admit evidence of past misconduct absent a strong connection to the charged offense, even excluding evidence of prior allegations of insider trading in pending securities fraud cases. *See, e.g., United States v. Hatfield,* 685 F. Supp. 2d, 320, 325 (E.D.N.Y. 2010). The *complete* lack of a connection between the pre-SAC Material and the charged offenses, combined with the absence of *any* evidence of e-mail manipulation by Mr. Martoma in connection with the July 2008 interactions with Dr. Gilman, mandates that the pre-SAC Material be excluded. It would be a rich irony if the Government were permitted to bootstrap toxic character evidence into the record as a consequence of its own failure to produce a piece of direct evidence that it touted as key in its original complaint charging Mr. Martoma.

Moreover, the pre-SAC Material is grossly prejudicial and confusing to the jury. Its true purpose would be even more improper than forging some tenuous link between (allegedly) changing the date on a personal e-mail in 1999 and the uncharged and unsubstantiated act of making a different e-mail disappear years later. That is, its true purpose would be to paint Mr. Martoma as a liar in the eyes of the jury. Indeed, the unfair prejudice is undeniable here, as

a jury may wrongly find the pre-SAC Material by its very nature more impactful and suggestive of wrongdoing than the Government's circumstantial allegations of corporate securities fraud. In addition, the pre-SAC Material would necessitate complex and lengthy "mini-trials" on events that occurred in 1998 and 1999 including, for example, polygraph evidence and expert testimony about computer forensic issues. Such "mini-trials" would divert the time and resources of this Court and the jury, distract from the evidence of the charged offenses, and pose the danger of confusing the jury with unrelated and distinct conduct.[3] In short, the pre-SAC Material threatens to overwhelm any evidence relating to the actual charges and would create a substantial risk that Mr. Martoma would be convicted based on uncharged conduct and allegations.

For all of these reasons, this Court should exclude all evidence concerning the pre-SAC Material.

## FACTUAL BACKGROUND

To this day, the circumstances of his dismissal from Harvard Law School cause Mr. Martoma great embarrassment. After he left Harvard Law School, he spent a year doing volunteer work as a form of personal rehabilitation. But the circumstances of his departure from Harvard Law School, when he was a young man and still a student, should not now be the driving force used by the Government to convince a jury to convict him.

The Government has charged Mr. Martoma with securities fraud and conspiracy to commit securities fraud based on alleged insider trading as an analyst and later a portfolio manager for an affiliate of SAC.[4] Most importantly, the Government alleges that Mr. Martoma received inside information about the Phase II bapi trial from Dr. Gilman between mid-2006 and

---

[3]   They also would unfairly force Mr. Martoma to divert valuable time and resources from his defense and instead marshal an enormous body of evidence to rebut the allegations in the pre-SAC Material concerning singularly irrelevant events in the distant past.

[4]   (Superseding Indictment ¶¶ 16-23.)

4

July 29, 2008, and that Mr. Martoma caused SAC to trade on such information over the course of

seven trading days between July 17, 2008, and July 29, 2008.[5]

Years before he worked for SAC (and, indeed, before he did any work in the financial

services industry), Mr. Martoma attended Harvard Law School. He enrolled as a first-year law

student in the fall of 1997. Midway through his second year – in February 1999 – the Harvard

Law School Administrative Board notified him that it had received information that he "forged

transcripts of the Law School and submitted them to a number of judges" in connection with

certain clerkship applications.

In April and May 1999, the Administrative Board held four days of hearings, during

which Mr. Martoma presented testimony and documentary evidence from himself, members of

his family, certain of his Harvard Law School professors, and various expert and technical

witnesses.[6] On May 13, 1999, the Administrative Board recommended that Mr. Martoma be

dismissed based on its findings that Mr. Martoma "falsified his transcript, interviewed with

judges under false pretenses, and gave untruthful answers to questions of administrators at the

Law School." Those findings included Administrative Board members' inflammatory personal

views on matters about which the Administrative Board made "no finding" due to "insufficient

evidence." Among the matters about which the Administrative Board made "no finding" was

whether Mr. Martoma altered the date of an e-mail asking Harvard Law School not to send his

letters of recommendation.

Mr. Martoma appealed the "no finding" conclusions and challenged his punishment. In

connection with the Harvard Law School proceeding, Mr. Martoma's then-counsel introduced

---

[5]   (Superseding Indictment ¶¶ 10, 12-14; Gov't Bill of Particulars Br. at 7-9.)

[6]   There are more than 550 pages of transcripts, as well as one day of testimony that exists only on video tape.
Portions of that testimony and accompanying evidence include highly sensitive information about
Mr. Martoma's personal and family circumstances, including medical and mental health matters.

him to Mr. Chan as someone who could provide assistance with technical issues. Mr. Chan proposed that he and Mr. Martoma build a company that could provide forensic computer assistance during Mr. Martoma's appeal. In May 1999 (or thereabouts), Mr. Chan and Mr. Martoma founded Computer Data Forensics. (In August 1999, they formed another company, Instant Corporate Infrastructure, which was intended to assume the work of Computer Data Forensics and also to provide other services, including incorporation, website development, and public relations.)

In July and August 1999, Mr. Martoma presented additional testimony and documentary evidence to the Harvard Law School Administrative Board Appeal Officer, including polygraph results and documentation from additional expert and technical witnesses. That documentation included a letter from Computer Data Forensics attesting that Mr. Martoma's e-mail asking Harvard Law School not to send his letters of recommendation to the judges had not been altered. (It appears that Mr. Martoma did not disclose that he had an interest in Computer Data Forensics.) In a decision dated August 11, 1999, the Appeal Officer concurred with the Administrative Board's "no finding" conclusions and further held that he lacked jurisdiction to review Mr. Martoma's punishment. The decision of the Appeal Officer included his own inflammatory personal views on matters about which he also made "no finding."

On September 17, 1999, the Harvard Law School faculty followed the recommendation of the Administrative Board and voted to dismiss Mr. Martoma.

## ARGUMENT

The pre-SAC Material is wholly irrelevant to this case and must be excluded. Allowing the Government to offer such evidence would transform the nature of this case and invite the jury to reach a judgment based on inflammatory, embarrassing information that has nothing to do

6

with SAC or insider trading.  The events at issue there – which occurred more than almost 15 years ago – are in no way related, connected, or even similar to the conduct alleged in the Superseding Indictment.  Courts may admit such extrinsic evidence under Federal Rules of Evidence 403 and 404(b) *only* if the Government establishes that "the evidence is relevant to an issue at trial other than the defendant's character *and* if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice." *United States v. Garcia*, 291 F.3d 127, 136-38 (2d Cir. 2002) (emphasis added; internal quotation marks omitted).  The Government cannot meet either requirement here.

Mr. Martoma respectfully requests that this Court exclude the pre-SAC Material and prevent the Government from unfairly and inappropriately expanding the scope of what it has described as a "straightforward" insider trading case.

## I.   THE PRE-SAC MATERIAL MAY NOT BE USED BY THE GOVERNMENT AFFIRMATIVELY IN ITS CASE-IN-CHIEF BECAUSE THE PRE-SAC MATERIAL IS IRRELEVANT.

Mr. Martoma understands that the Government does not intend to offer the pre-SAC Material affirmatively in its case-in-chief.  Nor could it.  The pre-SAC Material is not direct evidence relevant to the charges against Mr. Martoma.  Rather, the pre-SAC Material concerns almost 15-year-old events unrelated to the charged offenses.  It should be excluded from the Government's affirmative case because it is irrelevant, would constitute improper character evidence, and would be unfairly prejudicial.

## II.   THE PRE-SAC MATERIAL IS INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 404(B).

The Government also should be precluded from offering the pre-SAC Material to rebut Mr. Martoma's *critical* defense that Dr. Gilman *never* sent him an e-mail attaching the then-confidential Phase II bapi trial results.  The pre-SAC Material is inadmissible as extrinsic

7

evidence of the charged offenses.  Under Federal Rule of Evidence 404(b), "[e]vidence of a

crime, wrong, or other act is not admissible to prove a person's character in order to show that on

a particular occasion the person acted in accordance with the character." Fed. R. Evid.

404(b)(1).  Such extrinsic evidence may be admissible *only* "for another purpose, such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake,

or lack of accident." Fed. R. Evid. 404(b)(2).  As the Supreme Court has made clear, "Rule

404(b) . . . protects against the introduction of extrinsic act evidence when that evidence is

offered solely to prove character." *Huddleston v. United States*, 485 U.S. 681, 687 (1988).

"To carry its burden of establishing admissibility, the government must explain the

uncharged transactions, identify similarities between the charged and uncharged transactions,

and articulate how the similarities identified support" a purpose other than proving character.

*United States v. Stein*, 521 F. Supp. 2d 266, 270 (S.D.N.Y. 2007).[7]  In this case, there are

substantial *differences* between the events at issue in the pre-SAC Material and the offenses

charged.  *See supra* at 4-7.  Those differences defeat any possible probative value of the pre-SAC

Material and its relevance to any non-character purpose.  *See, e.g., United States v. Gonzalez*,

No. 08 Cr. 363 (BSJ), 2009 WL 1834317, at *3 (S.D.N.Y. June 24, 2009) ("In view of the

dissimilarity and length of time between Gonzalez's prior and charged acts, the Court denies the

Government's application to introduce evidence relating to Gonzalez's prior convictions and

arrests.").

---

[7]   *Accord United States v. Gordon*, 987 F.2d 902, 908-09 (2d Cir. 1993) ("[T]he probative value of the proffered
evidence depends largely on whether or not there is a close parallel between the crime charged and the acts
shown," and "it is an abuse of discretion for the trial court to admit other-act evidence if the other act or acts
are not sufficiently similar to the conduct at issue." (internal quotation marks omitted)); *United States v.
Afjehei*, 869 F.2d 670, 674 (2d Cir. 1989) ("There is no necessity for synonymity but there must be *substantial
relevancy*." (emphasis in original; internal quotation marks omitted)); *Garcia*, 291 F.3d at 137 ("The
government must identify a similarity or connection between the two acts that makes the prior act relevant.").

8

*First*, the Superseding Indictment charges Mr. Martoma with obtaining (and conspiring to obtain) confidential information from Dr. Gilman and then causing SAC to trade on that information for a profit.  The pre-SAC Material has nothing to do with confidential information, trading securities, Dr. Gilman, or SAC.  The pre-SAC Material also has nothing to do with the Government's failure to find and produce a supposed e-mail from Dr. Gilman to Mr. Martoma attaching the Phase II bapi results – a failure that tends to exculpate Mr. Martoma.[8]  Although the pre-SAC Materials include an *allegation* that in 1999 Mr. Martoma tried to manipulate the date on a personal e-mail and was involved with Mr. Chan's computer forensics firm, that in no way suggests that the missing Gilman e-mail *actually existed* at one time or that Mr. Martoma somehow destroyed all evidence of the Gilman e-mail being sent or received such that even the FBI was unable to recover it.

To be clear, there is no evidence – *none* – suggesting that Mr. Martoma manipulated any e-mail here.  The Government may not bootstrap the pre-SAC Material into this case by arguing that Mr. Martoma's prior experience with a computer forensics company and the allegation (never confirmed by the Harvard Law School proceeding) that the date on a personal e-mail in 1999 might have been changed, shows that he destroyed every trace of a different e-mail in 2008.  That argument is not a stretch, it is a fantasy.  Indeed, whether Mr. Martoma engaged in any of the alleged conduct in the pre-SAC Material "makes it no more likely" that he engaged in the conduct charged in the Superseding Indictment but, at the very worst, only tends to reflect negatively on his character; and that is *exactly* the type of evidence that Rule 404(b) seeks to preclude.  *United States v. Cushing*, No. 00 Cr. 1098 (WHP), 2002 WL 1339101, at *1-3

---

[8]  In its complaint and original Indictment, the Government alleged that Dr. Gilman sent an e-mail to Mr. Martoma attaching confidential Phase II bapi results on or about July 17, 2008; the Superseding Indictment omits any mention of this e-mail, which Mr. Martoma understands has never been located.

9

(S.D.N.Y. June 18, 2002) ("Whether [the defendant] lied previously makes it no more likely that he knew he made an untruthful statement to the SEC.").[9]

United States v. Hatfield is particularly instructive. There, the court rejected (inter alia) the Government's attempt to admit evidence of prior alleged insider trading violations in a case involving unrelated securities fraud. As the court explained:

> Whether Mr. Brooks engaged in insider trading-type conduct in 1989 says nothing about Mr. Brooks' knowledge or absence of mistake in 2004, because it provides no useful information concerning whether Mr. Brooks possessed material non-public information when he made the DHB stock trades at issue. Similarly, Mr. Brooks' 1980's conduct says nothing about his "modus operandi" with respect to the Indictment's charges because, as discussed above, the alleged 1989 acts were manifestly different than the charged conduct. And, although Mr. Brooks' prior alleged willingness to tolerate and benefit from a subordinate's insider trading might, arguably, have some probative value concerning Mr. Brooks' intent, this probative value is substantially outweighed by: (1) its prejudice to Mr. Brooks as invalid propensity evidence; (2) the danger that it would confuse the jury; and (3) the undue delay that a "mini-trial" concerning this evidence would require.

685 F. Supp. 2d at 325. The same is even more true where, as here, the prior conduct is wholly unrelated to any aspect of the Government's charges.[10]

Second, the substantial length of time between Mr. Martoma's prior conduct and the charged offenses further undermines any relevance or probative value of the pre-SAC Material. See, e.g., Gordon, 987 F.2d at 908-09 (excluding evidence of a prior act because (inter alia) it

---

[9]   Accord United States v. Levy, No. 11 Cr. 62 (PAC), 2013 WL 655251, at *1 (S.D.N.Y. Feb. 22, 2013) (finding inadmissible under Rule 404(b) evidence of the defendants' prior fraudulent mass marketing scheme as proof of their knowledge, intent, and absence of mistake in making misrepresentations regarding investments because the prior fraud "does not closely parallel the conduct charged here, nor is it sufficiently similar to permit the jury reasonably to draw the knowledge or intent inference advocated by the Government" (citations omitted)); United States v. Baljit, 207 F. Supp. 2d 118, 122 (S.D.N.Y. 2002) (finding conduct that "caused no financial loss to the Postal Service and was qualitatively different from the crimes charged in the Indictment, has little or no bearing on the nature of the alleged conspiracy to defraud the Postal Service" and, therefore, is inadmissible under Rule 404(b)).

[10]   Indeed, the Hatfield court's justification for allowing the government to admit certain other evidence under Rule 404(b) underscores the point that only similar prior acts are admissible for non-character purposes. See 685 F. Supp. 2d at 327 (admitting prior allegations of insurance fraud to show the defendant's intent and/or absence of mistake because "[b]oth the Indictment and the purported insurance fraud concern allegations that Mr. Brooks altered corporate records and/or instructed subordinates to do so").

occurred 16 months before the conduct at issue); *Garcia*, 291 F.3d at 138 (holding that "the length of time between the events . . . detract[s] from any potential probative value" of the prior acts, which occurred 12 years before the charged conduct); *Gonzalez*, 2009 WL 1834317, at *2 (holding that the "temporal gap" of 13 to 18 years between the prior and charged acts "weakens the relevance of [the defendant's] prior acts"); *Duggan v. Village of New Albany*, No. 08 Civ. 814, 2009 WL 650461, at *4 (S.D. Ohio Mar. 11, 2009) (precluding discovery of school disciplinary proceedings against the plaintiff more than three years before the conduct alleged in the case because "records of school discipline which predate the incident in question by more than three years are irrelevant and inadmissible"). The Government should not be permitted to use stale, uncorroborated "evidence" of alleged conduct from almost 15 years ago.

In sum, the pre-SAC Material is irrelevant and inadmissible character evidence. It should be excluded.

## III. THE PRE-SAC MATERIAL WOULD BE UNFAIRLY PREJUDICIAL TO MR. MARTOMA AND CONFUSING TO THE JURY.

The pre-SAC Material also should be excluded under Federal Rule of Evidence 403 because it would be unfairly prejudicial to Mr. Martoma and would create the danger of confusing the jury with complex and lengthy "mini-trials" on unrelated conduct that occurred almost 15 years ago. "[O]nce the trial court has concluded that other-act evidence is sufficiently similar to be relevant, it must still perform the balancing analysis envisioned by Rule 403" and "weigh that probative value against the likelihood of unfair prejudice." *Afjehei*, 869 F.2d at 674.[11] With respect to Rule 404(b) evidence, there is an inherent danger that "the jury still

---

[11]  *Accord Hatfield*, 685 F. Supp. 2d at 324 (even if extrinsic evidence is admissible under Rule 404(b), the Court must still consider whether the concerns articulated in Rule 403 "tip against its admissibility").

might use it as evidence of the defendant's bad character." *United States v. Nachamie*, 101 F. Supp. 2d 134, 140 (S.D.N.Y. 2000).

In this case, the balancing analysis is straightforward. There is no probative value, but the unfair prejudice to Mr. Martoma would be extreme. The pre-SAC Material includes statements that (*inter alia*) Mr. Martoma was dismissed from Harvard Law School based on findings that he "falsified his transcript, interviewed with judges under false pretenses, and gave untruthful answers to questions of administrators at the Law School." It is difficult to overstate the risk that the pre-SAC Material, if admitted, would be viewed by the jury as overriding evidence of Mr. Martoma's character. Moreover, the pre-SAC Material contains no findings regarding the allegation that any e-mail was altered. As a result, introducing this material to address the issue of the absence, ten years later, of a 2008 e-mail from Dr. Gilman would necessitate complex and lengthy "mini-trials" on events that occurred in 1998 and 1999, thereby diverting the time and resources of this Court and the jury and distracting from the evidence of the charged offenses. For both of these reasons, the pre-SAC Material is inadmissible under Rule 403.

*First*, the pre-SAC Material is unfairly prejudicial to Mr. Martoma. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). When evidence "tend[s] to prove a fact not in issue or to excite emotions against the defendant, [it] create[s] a prejudicial effect." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (internal quotation marks omitted). Here, the unfair prejudice to Mr. Martoma from the pre-SAC Material is manifest.

12

That material would unfairly color the jury's view of Mr. Martoma's character.[12]  The findings of the Harvard Law School Administrative Board in dismissing Mr. Martoma would plainly prejudice him because the jury would have "great difficulty isolating the evidence's minor probative value [if any] from its inflammatory nature." *Curley*, 639 F.3d at 62.  The inflammatory personal views of Administrative Board members (and the Administrative Appeal Officer) would only compound that prejudice (and embarrassment).  Moreover, Mr. Martoma could not adequately defend against the many inflammatory statements given the substantial amount of time that has passed since they were made and the likely unavailability of evidence – including witnesses – necessary to rebut them.  In other words, Mr. Martoma would be forced to contend with an avalanche of non-probative evidence suggesting that he is deceitful without the tools to rebut it.

Indeed, the unfair prejudice to Mr. Martoma is exacerbated in this case because a jury may find the pre-SAC Material "more sensational or disturbing than the crimes alleged." *Nachamie*, 101 F. Supp. 2d at 145-46 (internal quotation marks omitted).  Dismissal from Harvard Law School for the reasons found by the Harvard Law School Administrative Board may be perceived as substantially more dramatic than allegations of corporate securities fraud. *See id.* ("Attempted arson is certainly more sensational and more disturbing than Medicare fraud" and, "[a]s a result, the probative value of Nachamie's attempted arson conviction is substantially outweighed by the danger of unfair prejudice.").  Jurors could easily substitute their judgment about Mr. Martoma's character based on the pre-SAC Material for the harder work of evaluating the Government's much more tenuous evidence of securities fraud.  It is for this

---

[12]   *See, e.g., Hatfield*, 685 F. Supp. 2d at 324 (finding evidence of fraudulent conduct unfairly prejudicial under Rule 403 because, *inter alia*, "it suggests Defendants' propensity to lie to investigative authorities"); *United States v. Newton*, No. 01 Cr. 635 (CSH), 2002 WL 230964, at *5 (S.D.N.Y. Feb. 14, 2002) (finding evidence of a prior act inadmissible where "its potential for unfairly prejudicing the jury by portraying [the defendant] as an immoral rule-breaker greatly outweighs th[e] slight probative value").

reason that statements alleging that Mr. Martoma intended – almost 15 years ago – to deceive both judges and Harvard Law School administrators are precisely the sort of "sensational or disturbing" statements that Rule 403 is designed to exclude. *See, e.g., United States v. Williams,* 585 F.3d 703, 708 (2d Cir. 2009) (excluding evidence of contraband based on the "common sense precaution" that the Government should not be permitted to introduce "unsavory details which go beyond what is necessary to make the point" (internal quotation marks omitted)).

*Second,* the pre-SAC Material creates the danger of confusing the jury through complex and lengthy "mini-trials" concerning conduct almost 15 years ago. The pre-SAC Material consists not of undisputed facts, but largely of ***disputed allegations*** of wrongdoing by Mr. Martoma. Accordingly, were it admitted, it would lead directly to complex and lengthy "mini-trials" on conduct that occurred in 1998 and 1999, which "will necessarily result in delay, confusion of the issues, and may mislead the jury to make a determination of guilt based on propensity." *United States v. Kahale,* 789 F. Supp. 2d 359, 385-86 (E.D.N.Y. 2009). Those "mini-trials" would involve reams of evidence, including the testimony of numerous fact and expert witnesses on matters such as computer forensics and polygraph results.

That the pre-SAC Material concerns unrelated and distinct conduct in and of itself raises the immediate danger that it will confuse the jury. *See, e.g., United States v. Nekritin,* No. 10 Cr. 491(S-2) (KAM), 2011 WL 2462744, at *4 (E.D.N.Y. June 17, 2011) ("[A]ny probative value of evidence concerning Dr. Nekritin's participation in an unrelated administrative proceeding would be substantially outweighed by the danger of confusing the issues and misleading the jury about the specific criminal conduct at issue in the instant case."). Moreover, "the Court necessarily would be required to permit [Mr. Martoma] to introduce evidence to put into context, explain, or rebut" claims, *Walls v. Shelby,* No. 11 Civ. 174 (KGB), 2012 WL 6569775, at *3

14

(E.D. Ark. Dec. 17, 2012), resulting in complex and time-consuming mini-trials on issues not remotely related to the charged offenses, including the forensic and related issues presented to the Harvard Law School Administrative Board. This would "require considerable effort, yet would provide little of use to the Court in resolving the material issues," such that any probative value would be "substantially outweighed by the undue delay and wastefulness that the admission of such evidence would present." *Gray v. Briggs*, 45 F. Supp. 2d 316, 330 (S.D.N.Y. 1999) (finding inadmissible under Rules 403 and 404(b) evidence of two $10,000 transfers that were unrelated to the alleged ERISA violations).

In other words, "conducting a 'mini-trial' as to whether the Defendants lied [previously] will necessarily result in 'undue delay,' while adducing no evidence concerning whether the Defendants committed the charged crimes." *Hatfield*, 685 F. Supp. 2d at 324.[13] That is precisely the case here, where admission of the pre-SAC Material would require the Court to hear days' worth of evidence regarding whether Mr. Martoma modified an e-mail in 1999 – during the course of a trial concerned with whether Mr. Martoma committed unrelated securities fraud in 2008. This effort would plainly "adduc[e] no evidence concerning whether the Defendant[] committed the charged crimes," *id.*, but would expose the jury to hours of sensational testimony tending only to prejudice Mr. Martoma unfairly. There can be no doubt that admitting the pre-SAC Material would inevitably waste the time and resources of this Court and the jury.

---

[13]   *Accord Levy*, 2013 WL 655251, at *1 (finding inadmissible under Rule 403 evidence of the defendants' prior fraudulent mass marketing scheme because (*inter alia*) "[t]he introduction of this evidence would lead to a confusing 'mini-trial'" that presents "a significant risk of . . . confusing the issues actually alleged in the Indictment, and misleading a jury that will already be tasked with determining the charged conduct"); *United States v. Graziano*, 558 F. Supp. 2d 304, 324 (E.D.N.Y. 2008) (finding inadmissible under Rule 403 evidence of gambling activity because (*inter alia*) its introduction "would lead to a 'mini-trial' concerning the nature and scope of any gambling activity at Copperfield's and the defendant's knowledge and/or involvement with respect to any such activities").

In sum, this Court should exclude the pre-SAC Material because it would unfairly prejudice Mr. Martoma and confuse the jury.

## CONCLUSION

For the foregoing reasons, Mr. Martoma respectfully requests that this Court exclude all evidence concerning the pre-SAC Material.

Dated: December 6, 2013
     New York, NY

Respectfully submitted,

GOODWIN PROCTER LLP

By:

Richard M. Strassberg (RS5141)
(rstrassberg@goodwinprocter.com)
John O. Farley (JF4402)
(jfarley@goodwinprocter.com)
Daniel Roeser (DR2380)
(droeser@goodwinprocter.com)

The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800


Roberto M. Braceras (RB2470)
(rbraceras@goodwinprocter.com)
53 State Street
Boston, Massachusetts 02109
Telephone: (617) 570-1000

*Attorneys for Defendant Mathew Martoma*

16

## CERTIFICATE OF SERVICE

I hereby certify that, on December 6, 2013, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.   I also certify that I have caused copies of the aforementioned document to be served via first class mail, postage prepaid, upon all non-CM/ECF participants.

Richard M. Strassberg (RS5141)

LIBA/2454126.3