USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-9-14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

MATHEW MARTOMA,

                Defendant.

No. 12-cr-00973 (PGG)
ECF Case

**FILED UNDER SEAL**

**DECLARATION OF RICHARD M. STRASSBERG IN SUPPORT OF
DEFENDANT MATHEW MARTOMA'S OPPOSITION TO THE
GOVERNMENT'S MOTION TO ADMIT EVIDENCE CONCERNING
EVENTS UNRELATED TO THE CHARGED OFFENSES AND
PRECEDING MR. MARTOMA'S EMPLOYMENT AT SAC**

I, Richard M. Strassberg, declare under penalty of perjury as follows:

1.    I am a member of the law firm of Goodwin Procter LLP, attorneys for Defendant Mathew Martoma in this action. I have personal knowledge of and am familiar with the facts and circumstances set forth herein by virtue of my representation of Mr. Martoma in this action. I submit this declaration in support of Mr. Martoma's Opposition to the Government's Motion to Admit Evidence Concerning Events Unrelated to the Charged Offenses and Preceding Mr. Martoma's Employment at SAC in *United States v. Martoma*, 12 Cr. 973 (PGG).

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Decision on Appeal by the Harvard Law School Administrative Board in proceedings concerning Mr. Martoma, dated August 11, 1999, bearings Bates numbers USAO_0008629 – USAO_0008635.

3.    Attached hereto as Exhibit 2 is a true and correct copy of a letter from Jane Sulkin (Acting Director of Harvard Law School's Information Technology Services) to Professor Randall Kennedy (Harvard Law School Administrative Board Appeal Officer), dated July 27, 1999, bearings Bates number USAO_0008492.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on December 20, 2013
New York, NY

Richard M. Strassberg (RS5141)

## CERTIFICATE OF SERVICE

I hereby certify that, on December 20, 2013, I caused a true and correct copy of the foregoing to be served by electronic mail and hand delivery on all counsel of record.

Richard M. Strassberg (RS5141)

# EXHIBIT 1

# <u>FILED UNDER SEAL</u>



# HARVARD   LAW   SCHOOL
### CAMBRIDGE · MASSACHUSETTS · 02138

August 11, 1999

From: Randall Kennedy

To: The Administrative Board

Re: Ajai Mathew Thomas

I am writing to you in my capacity as a hearing officer pursuant to Rule 14 of the Administrative Board Procedures for Disciplinary Cases.[1] On July 28, 1999, I convened a hearing to consider challenged factual findings determined by the Board in disciplinary proceedings brought against Mr. Ajai Mathew Thomas. At the hearing I heard testimony from Professor Charles Ogletree, Mr. Thomas, and his mother, Mrs. Thomas. I also heard arguments from Mr. Thomas' counsel, David L. Kelston, and a representative for the Board, Ms. Janet

---

[1] Rule 14 of the Procedures for Disciplinary Cases states:

In all cases in which the sanction voted by the Administrative Board is dismission or expulsion, the student shall be afforded the right to a supplementary hearing on the facts before a hearing officer appointed from the Faculty by the Dean. The student shall submit to the hearing officer in writing a statement indicating which of the factual findings of the Board the student disputes, and why. At the hearing, the student may call and examine witnesses and be represented in the same manner as before the Board. The position of the Administrative Board shall b presented to the hearing officer by a person chosen by the Chairperson of the Administrative Board in consultation with the Dean. The hearing officer shall make a written statement of findings of fact which shall be returned to the Administrative Board. The Board may modify its findings of fact in light of the findings of the hearing officer, and may modify the sanction previously voted.

1

USAO_0008629

Katz.

The Board found as facts that (1) Mr. Thomas falsified his transcript, (2) interviewed with judges under false pretenses, and (3) gave untruthful answers to questions of administrators at the Law School. Mr. Thomas does not challenge any of these factual determinations. He does challenge, however, two "no findings" made by the Board. One is a no finding regarding whether Mr. Thomas caused his altered transcript to be sent to judges mistakenly or intentionally. The other is a no finding regarding the date on which Mr. Thomas sent certain communications to employees at the Law School.

The Administrative Board's Procedures for Disciplinary Cases do not define precisely the relationship of the hearing officer to the Board. I am assuming that the hearing officer is something akin to an appellate judge who is expected to grant some degree of deference to the Board's findings.

A considerable amount of time at the hearing was devoted to challenging the Board's judgment regarding punishment. For example, Mr. Thomas introduced into evidence a video-taped statement by Professor Charles Ogletree in which he argued that the punishment recommended by the Board is much too harsh. According to my reading of Rule 14, punishment is a matter outside of the hearing officer's jurisdiction. Rule 14 entitles a student to "a supplementary hearing on the facts" and directs the hearing officer to "make a written statement of findings." Fact-finding alone is the task I have pursued.

As the hearing officer I concur with the Board's "no finding" conclusions.

The case stems from Mr. Thomas' alteration of his law school transcript in December

2

USAO_0008630

1998. A month later, Mr. Thomas applied to twenty-three federal judges. The altered transcript was part of his application. Mr. Thomas asserts that he did not purposefully send the judges the altered transcript. He contends that they received it by accident. According to Mr. Thomas, he altered his transcript only for the purpose of deceiving his parents. Although he had achieved good grades as a first year student, Mr. Thomas wanted his parents to believe that he had achieved superior grades. Mr. Thomas says that he soon corrected his parents' mis-impression of his law school record but that his brother erroneously copied the doctored transcript and included it among the documents sent to the judges. Mr. Thomas claims that his brother copied the transcripts and stuffed them into the clerkship application packages because he had to leave home rather suddenly to attend an interview for a summer job. The Board expressly declined to determine as a matter of fact the truth or falsity of Mr. Thomas' account of how the altered transcripts came to be sent to the judges. It adopted neither a mitigating finding that he sent the transcript accidentally nor an aggravating finding that he did so on purpose with the intention of deceiving the judges.

Mr. Thomas acknowledges that soon after the applications were sent he became aware that the judges had received the altered transcript. With that knowledge, he engaged in interviews with three judges. He said nothing to them at that time about any problem with his application.

On February 2, 1999, Registrar Stephen Kane informed Mr. Thomas that the altered transcript had come to his attention. On that same day, Mr. Thomas had occasion to speak with the Dean of Students, Ms. Suzanne Richardson. Confronted by her, he said that he "had already sent withdrawal letters to the judges." Letters of withdrawal dated January 31 but postmarked February 3 were received by the judges to whom Mr. Thomas had applied. Mr. Thomas admitted

3

to the Board that he had not in fact already mailed the letters in contrast to what he had told Dean Richardson. He insisted, however, that he had already written the letters and prepared them for mailing before he spoke with Dean Richardson. Mr. Thomas also insisted that he had sent communications to at least one member of the faculty which indicated that, on his own and prior to being confronted by Mr. Kane and Ms. Richardson, he was in the process of withdrawing his application to the judges. Whether in fact he sent this communication when he claimed to was the subject of considerable contestation within the Board. In the end, it decided expressly to forgo making a factual determination with regard to this matter. The Board adopted neither a mitigating finding that he sent the communication prior to being confronted by members of the Law School administration nor an aggravating finding that he lied about this communication.

The Board found that Mr. Thomas "falsified his transcript, interviewed the judges under false pretenses, and gave untruthful answers to questions of administrators at the Law School."[2] These facts are and remain uncontested. The Board also concluded that "Mr. Thomas' manner . . . . . did not lend credence to his account" and observed that "the cumulation of improbable occurrences in his account . . . made it more difficult to accept his explanation of individual events."[3]

For punishment the Board recommends dismission.

---

[2] Although the Board states that Mr. Thomas gave untruthful "answers" to administrators, its account mentions only one untruthful answer: his claim that he had mailed withdrawal letters when, according to Mr. Thomas' own testimony, he had only actually prepared to mail these letters.

[3] See Disciplinary Hearing on Charges Against Ajai Mathew Thomas at 6.

4

Disputed Facts

A.  The Withdrawal of the Application

Mr. Thomas challenges the Board's decision to make no finding on the issue of whether, through his brother, he sent the altered transcript to the judges mistakenly or purposefully.  He attacks this "no finding" on the grounds that he has now passed two polygraph examinations.

There is considerable disagreement within state and federal judiciaries over the admissibility of polygraph tests, controversy that largely stems from the fact that "there is simply no consensus that polygraph evidence is reliable." [4]  Even if polygraph test results are reliable under certain circumstances,  the reliability here is questionable given the context in which these results are offered.  The examiners were chosen by Mr. Thomas and the examinations were conducted under circumstances that were ultimately under his control.  His domination of the process substantially erodes the persuasiveness of the examination results.

Mr. Thomas also attacks the Board's "no finding" on the grounds that additional new evidence, mainly consisting of  tests performed by computer forensics experts, substantiates Mr. Thomas' claim, as declared in his statement of exceptions,[5] that he "began withdrawing his clerkship applications before it was known that altered transcripts had been sent to the judges."[6]

_____

[4]  United States v. Scheffer, 523 U.S. 303, 309 (1998).

[5]  See Statement of Exceptions at 4.

[6]  According to the Board, the law school Registrar, Stephen Kane, became aware of the altered transcript "during the first week of January."  See Disciplinary Hearing on Charges Against Ajai Mathew Thomas at 2.  That fact is unchallenged.  Mr. Thomas is not really arguing therefore that he attempted to withdraw his applications before it was known that altered transcripts had been sent to the judges.  He is actually arguing that he attempted to withdraw his

5

With respect to the issue at hand, however, this new evidence is of very limited significance. Mr. Thomas argues that his initiation of withdrawal before being confronted indicates that he never intended to send an altered transcript to the judges. But his withdrawal might also indicate feelings of guilt over having intentionally sent an altered transcript or panic at the prospect of eventually being caught. There is no reason, as I see it, to make the inference that Mr. Thomas urges.

I concur with the Board in making no finding regarding whether Mr. Thomas purposefully sent altered transcripts to the judges. My determination is based in large part on the considerations mentioned above. It is also based on my sense of the implausibility of Mr. Thomas' account. That sense of implausibility remains unshaken by Mr. Thomas' statement at the hearing before me or by his responses to my questions. There would be reason to conclude that Mr. Thomas did purposefully cause altered transcripts to be sent to the judges. A determination of "no finding" is an effort to give Mr. Thomas every reasonable benefit of the doubt.

B. The Timing of the E-Mail Message

The second factual finding by the Board that Mr. Thomas challenges is its "no finding" determination regarding the timing of a certain E-mail that he sent in an effort to begin the process of withdrawing his applications to the judges. Although Mr. Thomas asserts that he sent the message in question on February 1, 1999, some evidence suggests that he sent the E-Mail message on February 2.

Mr. Thomas has presented new documentation prepared by expert witnesses who contend that their analyzes lead them to believe the essentials of his account of the sending of the

---

applications before he was confronted by law school officials.

6

message.[7]  On the other hand, Jane Sulkin, Acting Director of the Harvard Law School Information Technology Services writes that these new documents add "nothing of substance to the evidence Mr. Thomas submitted for the original hearing."[8]

On this point, the case is exceedingly close.  In the end, however, I concur with the Board's "no finding" conclusion.  The new evidence does increase the likelihood that events unfolded as Mr. Thomas has testified.  On the other hand, the persuasiveness of the new evidence is somewhat blunted by Ms. Surkin's letter.

It bears noting that the Board states that in determining a recommended punishment the Board did not rely upon any finding that Mr. Thomas had lied regarding the timing of the disputed E-mail.  If doubts regarding the timing seeped into the Board's calculations with respect to punishment, the Board may want to revisit this part of the case since, as I have indicated, the new expert testimony does strengthen to some extent Mr. Thomas' account.

---

[7]  See Statement of Exceptions, Exhibits 4-7.

[8]  See letter to Randall Kennedy from Jane Sulkin, July 27, 1999.

7

USAO_0008635

# EXHIBIT 2

# **FILED UNDER SEAL**



# HARVARD   LAW   SCHOOL

### CAMBRIDGE · MASSACHUSETTS · 02138

July 27, 1999

Prof. Randall Kennedy
Hearing Officer for the Administrative Board
Harvard Law School

Re: Ajai Mathew Thomas

Dear Prof. Kennedy:

    I testified before the Administrative Board this spring during the hearing concerning Ajai Mathew Thomas. I recently examined Mr. Thomas's July 12, 1999, Statement of Exceptions to the Administrative Board findings of fact and the following exhibits appended to it: report of Computer Data Forensics (Exhibit 4); report of Electronic Evidence Recovery, Inc. (Exhibit 5); statement of Theodore Ts'o, Sr. I/T Architect at M.I.T. (Exhibit 6); and letter from Peter F. Carr II to Lloyd Weinreb, Chair of the Administrative Board, with attachments concerning the RDM Autoresponder system for Eudora (Exhibit 7).

    This new computer evidence adds nothing of substance to the evidence Mr. Thomas submitted for the original hearing. There is still no conclusive proof that Mr. Thomas could not have changed the time and date on his computer in order to back-date e-mail messages, specifically those he sent to Ms. Mays and Ms. Tidd requesting them not to send out letters of recommendation on his behalf.

Sincerely,

Jane Sulkin
Acting Director
Information Technology Services

USAO_0008492