USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1·9-14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

MATHEW MARTOMA,

                        Defendant.

No. 12-cr-00973 (PGG)
ECF Case

**FILED UNDER SEAL**

**DEFENDANT MATHEW MARTOMA'S MEMORANDUM OF LAW IN OPPOSITION
TO THE GOVERNMENT'S MOTION TO ADMIT EVIDENCE CONCERNING
EVENTS UNRELATED TO THE CHARGED OFFENSES AND
PRECEDING MR. MARTOMA'S EMPLOYMENT AT SAC**

GOODWIN PROCTER LLP

Richard M. Strassberg (RS5141)
John O. Farley (JF4402)
Daniel Roeser (DR2380)

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

Roberto M. Braceras (RB2470)
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Defendant Mathew Martoma*

December 20, 2013

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................. 5

    A.    The Harvard Law School Administrative Board Proceeding ...................5

    B.    Computer Data Forensics............................. .......................................7

ARGUMENT ................................................................... ............................... 8

I.    THE GOVERNMENT CONCEDES THAT THE PRE-SAC MATERIAL IS NOT RELEVANT AS DIRECT EVIDENCE IN ITS CASE-IN-CHIEF. .................................. 9

II.    THE PRE-SAC MATERIAL IS INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 404(B). ......................................................................... 9

    A.    The Pre-SAC Material Is Not Relevant to the Government's Failure to Offer Any Computer Forensic Evidence That Mr. Martoma Received Inside Information...........................................................................10

    B.    The Pre-SAC Material Is Not Relevant to Other Computer Evidence Proving That Mr. Martoma Did Not Receive Inside Information. .........................14

III.    THE PRE-SAC MATERIAL WOULD BE UNFAIRLY PREJUDICIAL TO MR. MARTOMA AND CONFUSING TO THE JURY. ....................................................... 17

CONCLUSION.................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bruton v. United States,*
    391 U.S. 123 (1968)................................................................................5, 21

*Duggan v. Village of New Albany,*
    No. 08 Civ. 814 (TPK), 2009 WL 650461 (S.D. Ohio Mar. 11, 2009)..................14

*Gray v. Briggs,*
    45 F. Supp. 2d 316 (S.D.N.Y. 1999).........................................................20

*Huddleston v. United States,*
    485 U.S. 681 (1988)................................................................10, 12, 16, 17

*In re Wright,*
    220 B.R. 543 (S.D.N.Y. 1998)................................................................15

*Kuriakose v. Fed. Home Loan Mortg. Co.,*
    674 F.Supp.2d 483 (S.D.N.Y. 2009)..........................................................16

*Mancini v. CSX Transp., Inc.,*
    No. 08-cv-933 (TJM), 2010 WL 2985964 (N.D.N.Y. July 27, 2010)....................16

*United States v. Bailey,*
    133 Fed. App'x. 534 (10th Cir. 2005)........................................................12

*United States v. Cook,*
    557 F.2d 1149 (5th Cir. 1977)................................................................21

*United States v. Curley,*
    639 F.3d 50 (2d Cir. 2011).....................................................................18

*United States v. Cushing,*
    No. 00 Cr. 1098 (WHP), 2002 WL 1339101 (S.D.N.Y. June 18, 2002)..................14

*United States v. Garcia,*
    291 F.3d 127 (2d Cir. 2002)..................................................................9, 14

*United States v. Gilan,*
    967 F.2d 776 (2d Cir. 1992)................................................................12, 16, 17

*United States v. Gonzalez,*
    No. 08 Cr. 363 (BSJ), 2009 WL 1834317 (S.D.N.Y. June 24, 2009)....................14

*United States v. Gordon,*
    987 F.2d 902 (2d Cir. 1993)..................................................................14

*United States v. Graziano,*
    558 F. Supp. 2d 304 (E.D.N.Y. 2008) ..................................................20

*United States v. Green,*
    648 F.2d 587 (9th Cir. 1981) .........................................................12

*United States v. Hatfield,*
    685 F. Supp. 2d 320 (E.D.N.Y. 2010) .....................................14, 18, 20

*United States v. Jobson,*
    102 F.3d 214 (6th Cir. 1996) .........................................................12

*United States v. Kahale,*
    789 F. Supp. 2d 359 (E.D.N.Y. 2009) ...............................................21

*United States v. Levy,*
    No. 11 Cr. 62 (PAC), 2013 WL 655251 (S.D.N.Y. Feb. 22, 2013) .............14, 20

*United States v. Maravilla,*
    907 F.2d 216 (1st Cir. 1990) .........................................................12

*United States v. McDermott,*
    245 F.3d 133 (2d Cir. 2001) .........................................................21

*United States v. Murray,*
    618 F.2d 892 (2d Cir. 1980) .........................................................12

*United States v. Nachamie,*
    101 F. Supp. 2d 134 (S.D.N.Y. 2000) ...........................................17, 19

*United States v. Nekritin,*
    No. 10 Cr. 491(S-2) (KAM), 2011 WL 2462744 (E.D.N.Y. June 17, 2011) ............20

*United States v. Newton,*
    No. 01 Cr. 635 (CSH), 2002 WL 230964 (S.D.N.Y. Feb. 14, 2002) ..................18

*United States v. Williams,*
    585 F.3d 703 (2d Cir. 2009) .........................................................19

*United States v. Zedner,*
    401 F.3d 36 (2d Cir. 2005), *rev'd on other grounds,* 126 S. Ct. 1976 (2006) ..........12

*Walls v. Shelby,*
    No. 11 Civ. 174 (KGB), 2012 WL 6569775 (E.D. Ark. Dec. 17, 2012) ...............20

## OTHER AUTHORITIES

1 *McCormick on Evidence* § 190 (Kenneth S. Broun ed., 7th ed. 2013) .......................12

Fed. R. Evid. 404(b)...............................................................................................passim

Fed. R. Evid. 403 ...................................................................................................passim

Pursuant to Federal Rules of Evidence 401, 402, 403, and 404, Defendant Mathew Martoma respectfully submits this memorandum of law under seal in opposition to the Government's motion to admit evidence concerning events unrelated to the charged offenses and preceding Mr. Martoma's employment at S.A.C. Capital Advisors, LLC and its affiliates (collectively, "SAC").[1]  Specifically, this Court should exclude any evidence concerning proceedings by the Harvard Law School Administrative Board against Mr. Martoma in 1999 and business dealings between Mr. Martoma and Stephen Chan in 1999 (collectively, the "pre-SAC Material"), including but not limited to allegations that Mr. Martoma: (1) altered his Harvard Law School transcript in connection with clerkship applications; (2) altered e-mail evidence submitted to the Administrative Board in connection with the proceedings; and (3) submitted a false report from a computer forensic firm owned by Mr. Chan and Mr. Martoma to the Administrative Board Appeal Officer in connection with the proceedings.  Mr. Martoma respectfully submits that, if the Government were to introduce such evidence, it would create reversible error.[2]

## PRELIMINARY STATEMENT

According to the Government, "Dr. Gilman will testify that . . . he recalls sending the PowerPoint presentation [containing the results of the Phase II clinical trial of bapineuzumab

---

[1]   Due to the extremely sensitive nature of this motion and the potential prejudice that it would have if reported in the media to prospective jurors, Mr. Martoma has filed an application to seal all briefing on the topic.

[2]   The Government states in its brief that, following his dismissal from Harvard Law School, Mr. Martoma changed his name from Ajay Mathew Thomas to Mathew Martoma.  (Government's Mot. to Admit Evidence Concerning the Def.'s Expulsion from Harvard Law School in Response to Potential Defenses (hereinafter "Mot."), *United States v. Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y. Dec. 6, 2013), at 3 n.2.).  Mr. Martoma respectfully requests that this Court preclude the Government from making any reference to his name change at any time during trial (including in its opening statement and closing argument).  Mr. Martoma's entire family – *i.e.*, his father, mother, and two brothers – all changed their surnames to Martoma over a series of years from 1994 to 2001.  That process was unrelated to the Harvard Law School proceeding; it began long before the Harvard Law School conduct and ended after it.  Mr. Martoma's name change had nothing to do with the Harvard Law School proceeding, much less the charged conduct.  It is irrelevant and unfairly prejudicial.

("bapi")] to Martoma via e-mail."[3] *As the Government admits, "[t]here is no computer forensic evidence, however, establishing that Martoma had an electronic copy of the PowerPoint presentation before the public announcement, whether obtained via e-mail or other means."*[4] In this motion, the Government is attempting to fill the gaping hole in its case by turning the pre-SAC Material into a Sword of Damocles that precludes Mr. Martoma from offering straightforward defenses to the charges against him. This Court should not tolerate such gamesmanship and should exclude any evidence of the pre-SAC Material.

In its own words, the Government seeks to prevent Mr. Martoma from making the obvious points that (1) "the Government's inability to find an electronic copy of the PowerPoint presentation on Martoma's SAC Capital e-mail account or in his electronic files tends to prove that Martoma never had early access to the drug trial results at all" and (2) "other computer forensic evidence (including, potentially, new evidence to be offered by the defense) provides affirmative proof that the defendant did not receive an electronic copy of the PowerPoint presentation, or received it only after the presentation had been made public."[5] The Government's efforts to prevent Mr. Martoma from discussing "the Government's inability to find an electronic copy of the PowerPoint presentation" are especially striking. They reflect a blatant attempt to deprive Mr. Martoma of his Fifth Amendment due process right to defend himself by explaining to the jury that the Government has failed to meet its burden of proving his guilt beyond a reasonable doubt. The *only* ground for the Government's remarkable motion is the baseless assertion that the pre-SAC Material "demonstrates both Martoma's knowledge of the importance of minimizing the existence of incriminating electronic traces and of his ability to

---

[3]   (Mot. at 2.)

[4]   (*Id.*)

[5]   (*Id.* at 2-3.)

create sophisticated forgeries and alterations of such evidence."[6] The pre-SAC Material shows no such thing.

The Government is wrong on the facts. The Government claims that the pre-SAC Material establishes – "in substantial part through uncontested and readily established facts" – that Mr. Martoma submitted to the Harvard Law School Administrative Board (1) "phony e-mail evidence . . . to bolster a false defense" and (2) "a phony report from a supposed computer forensics firm . . . to provide additional forensic evidence supporting Martoma's claims."[7] None of those "facts," however, is uncontested or readily established. Rather, the pre-SAC Material demonstrates:

- Mr. Martoma *contested* throughout the proceedings that he altered any e-mail.

- There is *no direct evidence* that Mr. Martoma knew how to alter an e-mail.

- Computer forensic experts *could not determine* whether Mr. Martoma altered any e-mail.

- The Administrative Board made "*no finding*" as to whether Mr. Martoma altered any e-mail because "*there was insufficient evidence*."

- The Acting Director of Harvard Law School's Information Technology Services analyzed the computer forensics report submitted by Mr. Martoma and did *not* conclude that it was "phony."

- The Appeal Officer concluded that the "disputed facts" concerning whether Mr. Martoma altered any e-mail presented an "*exceedingly close*" case.

The Government is also wrong on the law. The pre-SAC Material should be excluded for the following separate and independent reasons:

1. *The Government concedes that the pre-SAC Material is not relevant as direct evidence in its case-in-chief.* The Government does not even attempt to offer the pre-SAC Material affirmatively in its case-in-chief. It is irrelevant as direct

---

[6]   (*Id.* at 1.)

[7]   (*Id.*)

evidence, inadmissible as character evidence, and both unfairly prejudicial and confusing to the jury.

2. ***The pre-SAC Material is inadmissible under Federal Rule of Evidence 404(b).*** The pre-SAC Material is not relevant either to the Government's failure to offer any computer forensic evidence that Mr. Martoma received inside information or Mr. Martoma's ability to offer other computer forensic evidence proving that he did not receive inside information.

   a.   The Government assumes (without any basis) what is to be proven – *i.e.*, that Dr. Gilman actually e-mailed Mr. Martoma the Phase II bapi trial results and that any computer forensic evidence to the contrary is unreliable. Of course, if Dr. Gilman sent Mr. Martoma an e-mail, there should be a record of it in ***Dr. Gilman's account***; there is none.

   b.   The pre-SAC Material is not probative of any special capacity, ability, knowledge, or modus operandi. Contrary to the Government's claims, the pre-SAC Material consists of ***disputed allegations*** against Mr. Martoma; the "facts" presented by the Government are unproven and contested. In any event, the pre-SAC Material simply does not show that Mr. Martoma had any special capacity, much less the computer expertise that the Government makes him out to have.

   c.   Whether Mr. Martoma engaged in any of the conduct alleged in the pre-SAC Material makes it no more likely that he engaged in any of the conduct charged in the Superseding Indictment. At the very worst, the pre-SAC Material tends only to reflect negatively on Mr. Martoma's character, which is ***exactly*** the type of evidence that Rule 404(b) is intended to preclude.

   d.   The Government ignores the fact that any evidence introduced by Mr. Martoma in this case necessarily would be subject to independent testing and verification by the Government's experts and/or cross-examination by the Government. It is ludicrous for the Government to suggest that challenged ***allegations*** that Mr. Martoma altered the date of a personal e-mail almost 15 years ago are somehow "highly relevant" to the reliability of any computer forensic evidence presented at trial.

3. ***The pre-SAC Material would be unfairly prejudicial to Mr. Martoma and confusing to the jury.*** The jury would have great difficulty isolating any probative value of such evidence (and there is none) from its inflammatory nature, and the unfair prejudice would be exacerbated because a jury might find the pre-SAC Material more sensational than the crimes alleged.[8] Since the pre-SAC Material consists of ***disputed and unproven allegations***, it also would require

---

[8]   In other motions *in limine*, the Government argues that certain evidence should be admitted because it is *not* "sensational." The Government cannot dispute the volcanic nature of the issues presented here.

complex and lengthy "mini-trials" on issues from the Harvard Law School proceedings in 1999 that have absolutely no bearing on whether Mr. Martoma committed securities fraud in 2008. Mr. Martoma could not adequately defend against the many sensational statements in the pre-SAC Material, given the substantial amount of time that has passed since they were made and the unavailability of evidence (including witnesses) necessary to rebut them. And then there is the danger that the pre-SAC Material will confuse the jury because it concerns unrelated conduct. Despite the Government's assertions, a limiting instruction would not cure the unfair prejudice and jury confusion but would instead, as the Supreme Court recognized long ago, ask the jury to perform "a mental gymnastic which is beyond, not only its powers, but anybody's else." *Bruton v. United States*, 391 U.S. 123, 132 n.8 (1968) (internal quotation marks omitted).

For all of these reasons, this Court should exclude any evidence concerning the pre-SAC Material.

## FACTUAL BACKGROUND

In the opening memorandum in support of his motion to exclude the pre-SAC Material, Mr. Martoma described at length the facts surrounding the Harvard Law School proceedings.[9] The Government offers its own account,[10] which makes many factual errors. Mr. Martoma corrects the Government's errors below.

### A.   The Harvard Law School Administrative Board Proceeding

The Government claims that Mr. Martoma sent a personal e-mail to the assistant of a Harvard Law School professor on February 2, 1999, but altered the date to make it appear as though the e-mail had been sent on February 1, 1999.[11] The Harvard Law School's findings, however, show that this claim was anything but "uncontested and readily established" at the time, much less 15 years later.

---

[9]   (*See* Defendant Mathew Martoma's Memorandum of Law in Support of His Motion to Exclude Evidence Concerning Events Unrelated to the Charged Offenses and Preceding Mr. Martoma's Employment at SAC, filed Dec. 6, 2013, *United States v. Martoma*, 12 Cr. 973 (PGG) (S.D.N.Y. Dec. 6, 2013).)

[10]  (*See* Mot. at 3-6.)

[11]  (*Id.* at 4-5.)

5

- The Administrative Board's findings demonstrate that Mr. Martoma *contested* throughout the proceedings that he altered any e-mail: "Mr. [Martoma] has stated that he composed the message on February 1 at around that time [10:20 p.m.] and, so far as he knew, sent it at that time."[12]

- The Administrative Board's findings make clear that "[t]here is *no direct evidence* that Mr. [Martoma] knew how to change the date on his computer on February 2."[13] Moreover, *computer forensic experts could not determine* whether Mr. Martoma altered any e-mail: "Mr. [Martoma]'s computer was sent by his counsel to several computer experts for analysis. One expert who was expected to testify . . . did not testify because 'he did not feel that he was in a position to authenticate . . . Matthew's [sic] version of the events.' . . . All the persons who testified as computer experts agreed, however, that computers break down in strange ways, and none testified that, however unlikely it was, it was impossible for the occurrence to have happened as Mr. [Martoma] suggests."[14]

- The Administrative Board *made no finding* as to whether Mr. Martoma altered the e-mail: "Some members of the Board are convinced that [Mr. Martoma] altered the date on his computer and back-dated the email message . . . in an effort to deceive the Board. Other members believe that although it is more probable that [Mr. Martoma] altered the date than that it happened because of some unknown computer operation or failure, *there is insufficient evidence so to conclude with certainty.* The Board makes no finding on this issue."[15]

- On appeal, Mr. Martoma continued to assert "that he sent the message in question on February 1, 1999."[16] In deciding what it characterized as one of the "disputed facts," the Administrative Board Appeal Officer found that, "[o]n this point, *the case is exceedingly close.*"[17]

In sum, the Administrative Board did *not* find that Mr. Martoma altered any e-mails. Try as it might, the Government cannot distort the plain language of the Administrative Board into "uncontested and readily established" facts to the contrary. The Government might be confident

---

[12]   (Mot., Ex. A, at 4.)

[13]   (*Id.* at 4 (emphasis added).)

[14]   (*Id.* at 5 (citations omitted; second ellipsis in original).)

[15]   (*Id.* at 4-5 (emphasis added).)

[16]   (Decision on Appeal dated August 11, 1999 (USAO_0008629-35), Decl. of Richard M. Strassberg in Opp'n to the Government's Mot. to Admit Evidence Concerning Events Unrelated to the Charged Offenses and Preceding Mr. Martoma's Employment at SAC ("Strassberg Decl."), Ex. 1, at 6.)

[17]   (*Id.* at 7 (emphasis added).)

now about what the evidence showed 15 years ago (where no legal finding could be made).

Regardless, such allegations would certainly be hotly contested today.

### B.   Computer Data Forensics

According to the Government, the pre-SAC Material also establishes – "in substantial

part through uncontested and readily established facts" – that Mr. Martoma "in an effort to

appeal the Ad Board's decision to expel him, submitted to Harvard Law School a phony report

from a supposed computer forensics firm [Consumer Data Forensics] the defendant had in fact

created himself purporting to provide additional forensic evidence supporting Martoma's

claims."[18]  The Government contends that the Computer Data Forensics report "fooled" the

Administrative Board Appeal Officer.[19]  Once again, none of those facts was "uncontested and

readily established" at the time, 15 years ago.  Nor would they be readily established at trial

today.

- In support of his appeal, Mr. Martoma "presented new documentation prepared by expert witnesses who contend that their analyzes [sic] lead them to believe the essentials of his account of the sending of the message."[20]  That documentation consisted of: (1) a "report of Computer Data Forensics"; (2) a "report of Electronic Evidence Recovery, Inc."; (3) a "statement of Theodore Ts'o, Sr. I/T Architect at M.I.T."; and (4) "attachments concerning the RDM Autoresponder system for Eudora."[21]  The Appeal Officer concluded that "[t]he new evidence *does increase the likelihood* that events unfolded as Mr. [Martoma] has testified" and "*does strengthen* to some extent Mr. [Martoma's] account."[22]

- The Decision on Appeal makes clear that the Appeal Officer was not "fooled" by a "phony" report from Computer Data Forensics.  He considered not only the Computer Data Forensics report, but all of the expert documentation presented by

---

[18]   (Mot. at 1.)

[19]   (*Id.* at 6.)

[20]   (Decision on Appeal, Strassberg Decl., Ex. 1, at 6-7.)

[21]   (Letter from Jane Sulkin (Acting Director of Harvard Law School's Information Technology Services) to Randall Kennedy (Harvard Law School Administrative Board Appeal Officer) dated July 27, 1999 (USAO_0008492), Strassberg Decl., Ex. 2.)

[22]   (Decision on Appeal, Strassberg Decl., Ex. 1, at 6-7.; Letter from Jane Sulkin, Strassberg Decl., Ex. 2.)

Mr. Martoma.[23]  Further, he considered the expert conclusions of Jane Sulkin, Acting Director of Harvard Law School's Information Technology Services, who herself analyzed all of the expert documentation submitted by Mr. Martoma.[24] Notably, Ms. Sulkin did not find that the Computer Data Forensics report was "phony" or otherwise failed to reflect a computer forensic examination.[25]  Rather, she concluded only that the expert analyses added "nothing of substance to the evidence Mr. [Martoma] submitted for the original hearing."[26]

- The Government contends that it "could prove much of the evidence involving the Computer Data Forensics fraud through Martoma's own prior statements" to the Federal Bureau of Investigation ("FBI") in connection with an investigation into Mr. Chan.[27]  But the FBI notes do not reflect that Mr. Martoma said *anything* about the Computer Data Forensics report, let alone that it was "phony" or authored by employees who did not have computer forensics training and experience and had not conducted a forensic examination of the e-mail at issue. Instead, the notes reflect that Mr. Martoma said that he and Mr. Chan decided to start their own computer forensics company and use it to win the appeal; but he explained that, as far as he knew, Computer Data Forensics was going to be a viable business; employees would be hired and trained to perform all of the forensic testing.  Indeed, his family invested more than a million *real* – not sham – dollars in the enterprise, all of which was ultimately lost.

In short, there is *no* evidence that the Computer Data Forensics report was "phony" and/or written by "three temp agency employees with no training or experience in computer forensics" who "had not conducted any forensic examination."[28]  The Government's version of the facts is anything but "uncontested and readily established."[29]

## ARGUMENT

This Court may admit the pre-SAC Material under Federal Rules of Evidence 403 and 404(b) *only* if the Government establishes that "the evidence is relevant to an issue at trial other

---

[23]   (*Id.* at 6-7.)

[24]   (*Id.*; Letter from Jane Sulkin, Strassberg Decl., Ex. 2.)

[25]   (Letter from Jane Sulkin, Strassberg Decl., Ex. 2.)

[26]   (*Id.*)

[27]   (Mot. at 6 n.4.)

[28]   (*Id.* at 5.)

[29]   The Government also makes passing references to a "forged Harvard Law School transcript, which was submitted to federal judges in connection with Martoma's clerkship applications."  (*See, e.g.*, Mot. at 1.)  The Government, however, provides no explanation as to how such "evidence" concerns the e-mail at issue here.

than the defendant's character *and* if the probative value of the evidence is not substantially

outweighed by the risk of unfair prejudice." *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir.

2002) (emphasis added; internal quotation marks omitted). The Government cannot meet either

requirement here. The pre-SAC Material – which concerns events that occurred almost 15 years

ago – is not remotely similar to the charged conduct. Allowing the Government to introduce any

of the pre-SAC Material would invite the jury to reach a judgment based on inflammatory,

confusing, contested "evidence" that has nothing to do with SAC or insider trading. This Court

should exclude the pre-SAC Material.

## I.      THE GOVERNMENT CONCEDES THAT THE PRE-SAC MATERIAL IS NOT RELEVANT AS DIRECT EVIDENCE IN ITS CASE-IN-CHIEF.

The Government does not even attempt to offer the pre-SAC Material affirmatively in its

case-in-chief. (*See* Mot. at 1-2.) That is not surprising. The pre-SAC Material, let alone the

***unproven and hotly contested allegations*** on which the Government seeks to rely, is not

evidence of the charges against Mr. Martoma. It is irrelevant as direct evidence, inadmissible as

character evidence, and both unfairly prejudicial and confusing to the jury.

## II.     THE PRE-SAC MATERIAL IS INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 404(B).

Under Federal Rule of Evidence 404(b), "[e]vidence of a crime, wrong, or other act is not

admissible to prove a person's character in order to show that on a particular occasion the person

acted in accordance with the character." Fed. R. Evid. 404(b)(1). As the Supreme Court has

made clear, "Rule 404(b) . . . protects against the introduction of extrinsic act evidence when that

evidence is offered solely to prove character." *Huddleston v. United States*, 485 U.S. 681, 687

(1988). The Government concedes that extrinsic evidence is admissible under Rule 404(b) ***if***

***and only if*** "the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for

which the defendant is on trial; and (3) has probative value that is not substantially outweighed

by any unfair prejudicial effect." (Mot. at 6 (citing *United States* v. *Guang*, 511 F.3d 110, 121 (2d. Cir. 2007).) None is true here.

> ### A.  The Pre-SAC Material Is Not
> ### Relevant to the Government's Failure to Offer Any Computer
> ### Forensic Evidence That Mr. Martoma Received Inside Information.

The Government *admits* that "[t]here is no computer forensic evidence . . . establishing that Martoma had an electronic copy of the PowerPoint presentation before the public announcement, whether obtained via e-mail or other means." (Mot. at 2.) Yet the Government tries to use the pre-SAC Material to prevent Mr. Martoma from making the straightforward point that "the Government's inability to find an electronic copy of the PowerPoint presentation on Martoma's SAC Capital e-mail account or in his electronic files tends to prove that Martoma never had early access to the drug trial results at all." (*Id.* at 2-3.) It is hard to imagine a more broad and aggressive attempt to limit a defendant's Fifth Amendment right to defend himself than the threat to preclude him from even mentioning the lack of evidence presented by the prosecution. This Court should not sanction the Government's attempt to deprive Mr. Martoma of his due process right to offer a meaningful defense under threat of admission of the pre-SAC Material, especially since the Government has not satisfied Rule 404(b)'s requirements.

*First*, the Government asserts that the pre-SAC Material is probative of the "special capacity, ability or knowledge" to understand that "being caught in possession of the PowerPoint presentation [with the Phase II bapi trial results] would be powerful evidence of insider trading" and to "limit[] the risks of detection through electronic evidence." (Mot. at 9.) Despite the conceded absence of any computer forensic evidence, the Government *assumes* what is to be proven – *i.e.*, that Dr. Gilman actually e-mailed Mr. Martoma the Phase II bapi trial results. Without that assumption, the pre-SAC Material would not be probative of anything because Mr. Martoma was never in possession of the Phase II bapi trial results and did not need to limit

any risk of detection. The Government presumably bases its assumption on Dr. Gilman's testimony that "he recalls sending the PowerPoint presentation to Martoma via e-mail." (*Id.* at 2.) Yet the Government ignores the unavoidable point that any e-mail was necessarily *sent from Dr. Gilman's account.* There is no indication, much less evidence, that (1) Mr. Martoma asked Dr. Gilman to delete the e-mail, (2) Dr. Gilman deleted the e-mail on his own, or (3) Dr. Gilman sent the e-mail to Mr. Martoma using a different account. In other words, if Dr. Gilman had e-mailed Mr. Martoma the Phase II bapi trial results, Dr. Gilman's account would have a record of the e-mail regardless of whether Mr. Martoma asked that the e-mail be sent to his personal account and/or deleted it. Because that record does not exist, it exposes the faulty assumption upon which the Government's argument is based.

Moreover, the pre-SAC Material is not probative of any "special capacity, ability or knowledge." Contrary to the Government's claims, the pre-SAC Material is not evidence. It consists of *allegations* against Mr. Martoma; the "facts" presented by the Government are unproven and contested. (*See supra* at 5-7.) As the Supreme Court has made clear, the Government cannot "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo. . . . In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston*, 485 U.S. at 689.[30] And there is another problem. Under Rule 404(b), extrinsic evidence is admissible only where it shows knowledge, skills, or capacities that are outside of the realm of ordinary human experience and closely tailored to the charged conduct. "[T]he skill or knowledge must be rare if it is to possess

---

[30] *See also United States v. Gilan*, 967 F.2d 776, 780, 782 (2d Cir. 1992) (holding that district court erred in admitting evidence of a prior uncharged crime where the Government failed to sustain its burden to prove that the defendant in fact committed the act).

enough probative value to offer a meaningful alternative to propensity reasoning." 1 *McCormick on Evidence* § 190, at 1029 (Kenneth S. Broun ed., 7th ed. 2013).[31]  The Government has identified nothing about the pre-SAC Material that gives Mr. Martoma any "special capacity," much less makes him the computer expert that the Government describes:

- The Government contends that the pre-SAC Material gave Mr. Martoma "special capacity" to recognize "the pronounced danger of obtaining the PowerPoint presentation . . . through his work e-mail before it was presented publicly" because he "would be deeply incriminated" if he received an e-mail with inside information about bapi prior to selling Elan and Wyeth. (Mot. at 9.)  That argument is laughable.  No "special capacity" is necessary to figure out that being caught in possession of inside information is powerful evidence of insider trading.

- The Government then suggests that Mr. Martoma "knew in the deeply personal way that life-altering personal experiences teach that electronic communications such as e-mails leave electronic footprints that are hard to alter or remove." (Mot. at 9.)  That suggestion is no better.  No "special capacity" is required to understand that it is very difficult (if not impossible) to erase an e-mail, and that a "bad" email can have serious, negative consequences.

- The Government next speculates that, "given the experience at Harvard with email evidence and his ultimate expulsion, it is very unlikely that Martoma would have requested that such a sensitive document be e-mailed to him at work." (Mot. at 9 n.5; *see also id.* at 9.)  That, too, is a makeweight.  No "special capacity" is needed to recognize that material, non-public information should not be e-mailed

---

[31] *Accord United States v. Jobson*, 102 F.3d 214, 221 (6th Cir. 1996) ("Evidence used to establish opportunity is evidence that shows access to or presence at the scene of the crime or the possession of distinctive or unusual skills or abilities employed in the commission of the crime charged." (citation and internal quotation marks omitted)).  Indeed, all of the cases cited by the Government (*see* Mot. at 7-8) also involve prior acts that evidence the same sort of knowledge, skills, or capacities.  *See United States v. Bailey*, 133 Fed. App'x. 534, 538 (10th Cir. 2005) (in a drug conspiracy case, affirming the admissibility of drug paraphernalia because it was probative of intent and preparation in the alleged drug conspiracy); *United States v. Zedner*, 401 F.3d 36, 49-50 (2d Cir. 2005), *rev'd on other grounds*, 126 S. Ct. 1976 (2006) (in a financial fraud case, affirming the admissibility of testimony of prior fraudulent acts because it was probative of the defendant's "ability to form intent to defraud" where the defendant claimed that he "was delusional and lacked criminal intent because he did not know the bonds were counterfeit"); *United States v. Maravilla*, 907 F.2d 216, 223 (1st Cir. 1990) (in a robbery case, affirming the admissibility of evidence that the defendant smuggled items out of the airport because it was probative of the defendant's "ability" to navigate the same airport based on his position as a customs officer); *United States v. Green*, 648 F.2d 587, 591 (9th Cir. 1981) (in an obstruction case, affirming the admissibility of evidence of the defendants' involvement in tableting and marketing drugs and their past contacts with their co-defendants because it was probative of the defendants' unique "combination of talents and associations [and] a working knowledge of illicit drug operations" necessary to frame their co-defendants by planting illegal drugs); *United States v. Murray*, 618 F.2d 892, 894-95, 900 (2d Cir. 1980) (in a drug conspiracy case, affirming the admissibility of evidence that the defendant showed a co-conspirator marijuana within the charged conspiracy period because it was probative of the defendant's opportunity and intent to distribute drugs).

to a work account that "could create such an obvious forensic record [that is] readily traceable." (*Id.* at 9.) And the allegations regarding the alteration of an email date were expressly *not* the reason Mr. Martoma was asked to leave Harvard Law School. [32]

- The Government finally hypothesizes that, "no matter how Martoma obtained access to the document, he would have . . . used his knowledge of computer forensics to do everything possible to destroy or alter any electronic evidence that could incriminate him." (Mot. at 9-10.) Again, there is no evidence to show that Mr. Martoma is some sort of computer expert. (He is not.) The Government's conjecture merely underscores that it does not know – and certainly cannot prove – whether Dr. Gilman e-mailed Mr. Martoma the Phase II bapi trial results.

In short, the pre-SAC Material does not show that Mr. Martoma had any "special capacity."

*Second*, the Government asserts that the pre-SAC Material is relevant because "[i]t would establish that Martoma had knowledge of just how damaging such electronic evidence could be and support and [sic] argument that Martoma would have therefore taken pains to obtain access to the document in a way that left a limited forensic record and/or would have long ago destroyed or altered whatever forensic evidence did exist." (Mot. at 10.) But the pre-SAC Material supports *none* of the inferences that the Government would draw. (*See supra* at 5-7.) The idea that a person who receives inside information might want to hide that fact is in no way a controversial proposition that needs to be established through Rule 404(b) evidence. Put another way, whether Mr. Martoma engaged in any of the conduct alleged in the pre-SAC Material makes it no more likely that he engaged in the conduct charged in the Superseding Indictment. *See United States v. Hatfield*, 685 F. Supp. 2d 320, 325 (E.D.N.Y. 2010) ("Whether Mr. Brooks engaged in insider trading-type conduct in 1989 says nothing about Mr. Brooks' knowledge or absence of mistake in 2004, because it provides no useful information concerning whether Mr. Brooks possessed material non-public information when he made the DHB stock trades at issue."). The substantial length of time between Mr. Martoma's prior conduct and the

---

[32]   (Mot., Ex. A, at 6.)

charged offenses further undermines any relevance of the pre-SAC Material. *See, e.g., United States v. Gordon*, 987 F.2d 902, 908-09 (2d Cir. 1993) (excluding evidence of a prior act because (*inter alia*) it occurred 16 months before the conduct at issue).[33]

At the very worst, the pre-SAC Material tends only to reflect negatively on Mr. Martoma's character. That is ***exactly*** the type of evidence that Rule 404(b) seeks to preclude. *United States v. Cushing*, No. 00 Cr. 1098 (WHP), 2002 WL 1339101, at *1-3 (S.D.N.Y. June 18, 2002) ("Whether [the defendant] lied previously makes it no more likely that he knew he made an untruthful statement to the SEC.").[34] The pre-SAC Material is irrelevant to the Government's failure to offer any computer forensic evidence that Mr. Martoma received inside information. The Government should not be permitted to use the threat of introducing the it to keep Mr. Martoma from pointing out to the jury the lack of evidence presented against him and the prosecution's failure to carry its burden of proving his guilt beyond a reasonable doubt. The pre-SAC Material is simply inadmissible character evidence and should be excluded.

**B.    The Pre-SAC Material Is Not Relevant to Other Computer Evidence Proving That Mr. Martoma Did Not Receive Inside Information.**

The Government also attempts to use the pre-SAC Material to prevent Mr. Martoma from arguing that "other computer forensic evidence (including, potentially, new evidence to be offered by the defense) provides affirmative proof that the defendant did not receive an

---

[33]  *Accord Garcia*, 291 F.3d at 138 (holding that "the length of time between the events . . . detract[s] from any potential probative value" of the prior acts, which occurred 12 years before the charged conduct); *United States v. Gonzalez*, No. 08 Cr. 363 (BSJ), 2009 WL 1834317, at *2 (S.D.N.Y. June 24, 2009) (holding that the "temporal gap" of 13 to 18 years between the prior and charged acts "weakens the relevance of [the defendant's] prior acts"); *Duggan v. Village of New Albany*, No. 08 Civ. 814 (TPK), 2009 WL 650461, at *4 (S.D. Ohio Mar. 11, 2009) (precluding discovery of school disciplinary proceedings against the plaintiff more than three years before the conduct alleged in the case because "records of school discipline which predate the incident in question by more than three years are irrelevant and inadmissible").

[34]  *Accord United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 655251, at *1 (S.D.N.Y. Feb. 22, 2013) (finding inadmissible under Rule 404(b) evidence of the defendants' prior fraudulent mass marketing scheme as proof of their knowledge and intent in making misrepresentations regarding investments because the prior fraud "does not closely parallel the conduct charged here, nor is it sufficiently similar to permit the jury reasonably to draw the knowledge or intent inference advocated by the Government" (citations omitted)).

electronic copy of the PowerPoint presentation, or received it only after the presentation had been made public." (Mot. at 3.) The Government identifies no such evidence and even admits that its argument is "more speculative." (*Id.*) This Court should not permit the Government to keep Mr. Martoma from introducing evidence that contradicts Dr. Gilman's memory of "sending the PowerPoint presentation to Martoma via e-mail" (*id.* at 2), particularly where the Government has not satisfied Rule 404(b)'s requirements for admission.

*First*, the Government asserts that the pre-SAC Material is probative of the "special capacity" to "create elaborate electronic forgeries – which included expertise with respect to altering the dates of electronic records – [that] could have been employed by Martoma to generate phony evidence purporting to show that Martoma had received the document only once it had become public." (Mot. at 10.) In so doing, the Government assumes that such evidence exists, that it is a "forgery," and that Mr. Martoma had the computer expertise to create it. Those assumptions are admittedly speculation (and would be wrong) (*see id.* at 3) and, unless and until Mr. Martoma seeks to introduce computer forensic evidence, the Government's motion amounts to an improper request for an advisory opinion. *In re Wright,* 220 B.R. 543, 543 (S.D.N.Y. 1998) ("Federal courts are barred from rendering opinions with respect to abstract, hypothetical, or contingent questions." (citing *Alabama State Fed. Of Labor v. McAdory,* 325 U.S. 450, 461 (1945))).[35]

Further, the Government contends that, "were such evidence to be presented, it would be sufficiently consistent with the same approach Martoma had attempted in the Ad Board

---

[35] *Accord Mancini v. CSX Transp., Inc.,* No. 08-cv-933 (TJM), 2010 WL 2985964, at *2 (N.D.N.Y. July 27, 2010) ("A federal court may only resolve actual cases or controversies and lacks the power to render advisory opinions on hypothetical or academic disputes." (citing *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.,* 508 U.S. 439 (1993))); *Kuriakose v. Fed. Home Loan Mortg. Co.,* 674 F.Supp.2d 483, 492 (S.D.N.Y. 2009) ("The Court will not risk issuing an advisory opinion on a hypothetical set of facts." (citing *North Carolina v. Rice,* 404 U.S. 244, 246 (1971))).

proceedings by altering an e-mail date to make it appear inculpatory as to be admissible to
establish Martoma's modus operandi." (Mot. at 10.) That is conjecture on top of speculation.
Not only is it impossible for the Government to know whether any hypothetical computer
forensic evidence to be offered by Mr. Martoma is consistent with his supposed "modus
operandi" before Mr. Martoma introduces that evidence, the pre-SAC Material does not establish
any "modus operandi" to begin with.  There is no evidence proving that the February 1, 1999, e-
mail and Computer Data Forensics report were "forgeries" or "phony," but only unproven and
contested *allegations*. (*See supra* at 7-8.) Such "unsubstantiated innuendo" is not relevant
evidence under Rule 404(b). *Huddleston*, 485 U.S. at 689; *accord Gilan*, 967 F.2d at 780, 782.

 *Second*, the Government asserts that, "[t]o the extent that there are legitimate questions
as to the forensic reliability of such evidence and/or whether it was intentionally created for the
purpose of protecting Martoma should his numerous consultations with Dr. Gilman come to
light, it would be highly relevant to the jury's weighing of such evidence to know that Martoma
had a demonstrated capacity to forge documents and create a phony forensic record." (Mot.
at 11.)  Setting aside once again that the pre-SAC Material supports *none* of the inferences that
the Government would draw (*see supra* at 5-8), the Government once again misses the point that
whether Mr. Martoma engaged in any of the conduct alleged in the pre-SAC Material makes it
no more likely that he engaged in the conduct charged in the Superseding Indictment. (*See supra*
at 13-14.)

 In addition, the Government ignores the fact that any evidence introduced by
Mr. Martoma in this case will be subject to examination by the Government.  For example, if
Mr. Martoma presents evidence affirmatively showing that he did not receive the Phase II bapi
trial results from Dr. Gilman, that evidence necessarily will be subject to independent testing and

verification by the Government's experts and cross-examination by the Government at trial. The Government half-heartedly argues that it "might be difficult or impossible to disprove" any evidence presented by Mr. Martoma "given that the events happened over five years ago." (Mot. at 11.) If that is an answer, then it is a reason to exclude all of the Government's affirmative evidence in this case, which also "might be difficult" to disprove "given that the events [at issue in this case] happened over five years ago." In sum, the unproven and contested *allegations* that Mr. Martoma altered the date of a personal e-mail almost 15 years ago are not "highly relevant" to the reliability of any computer forensic evidence that he presents at trial. The Government's argument to the contrary is ridiculous. *See Huddleston*, 485 U.S. at 689; *accord Gilan*, 967 F.2d at 780, 782.

## III. THE PRE-SAC MATERIAL WOULD BE UNFAIRLY PREJUDICIAL TO MR. MARTOMA AND CONFUSING TO THE JURY.

The pre-SAC Material also should be excluded under Federal Rule of Evidence 403 because it would be unfairly prejudicial to Mr. Martoma and would create the danger of confusing the jury with complex and lengthy "mini-trials" on unrelated conduct that occurred almost 15 years ago. With respect to Rule 404(b) evidence in particular, there is an inherent danger that "the jury still might use it as evidence of the defendant's bad character." *United States v. Nachamie*, 101 F. Supp. 2d 134, 140 (S.D.N.Y. 2000). Here, this Court must balance the pre-SAC Material's lack of any probative value against "(1) its prejudice to [Mr. Martoma] as invalid propensity evidence; (2) the danger that it would confuse the jury; and (3) the undue delay that a 'mini-trial' concerning this evidence would require." *Hatfield*, 685 F. Supp. 2d at 325. The result is clear. The pre-SAC Material should be excluded.

*First*, the Government argues that the "unfair prejudice would be to the Government" if the pre-SAC Material were excluded because Mr. Martoma could "offer purportedly exculpatory

electronic evidence of dubious province or validity without the jury's knowledge of Martoma's

ability to manufacture such material." (Mot. at 11.) Even overlooking the obvious points that

the pre-SAC Material does not and cannot establish "Martoma's ability to manufacture such

material" and that the Government has no basis to assume that the evidence offered by

Mr. Martoma in this case would be "of dubious province or validity" (*see supra* at 7-8), the

Government's argument ignores the facts of this case. The pre-SAC Material's "potential for

unfairly prejudicing the jury by portraying [the defendant] as an immoral rule-breaker greatly

outweighs th[e] slight probative value." *United States v. Newton*, No. 01 Cr. 635 (CSH), 2002

WL 230964, at *5 (S.D.N.Y. Feb. 14, 2002).[36] The jury would have "great difficulty isolating

the evidence's minor probative value [if any] from its inflammatory nature." *United States v.

Curley*, 639 F.3d 50, 62 (2d Cir. 2011). Mr. Martoma could not adequately defend against the

many inflammatory statements made by Harvard Law School Administrative Board members

and the Administrative Board Appeal Officer, given the substantial amount of time that has

passed since those statements were made and the unavailability of evidence (including witnesses)

necessary to rebut them.

Moreover, the unfair prejudice to Mr. Martoma would be exacerbated in this case

because a jury might find the pre-SAC Material "more sensational or disturbing than the crimes

alleged." *Nachamie*, 101 F. Supp. 2d at 145-46 (internal quotation marks omitted). Jurors might

substitute their judgment about Mr. Martoma's character based on the pre-SAC Material for their

judgment about whether Mr. Martoma committed insider trading based on the Government's

evidence in this case. Indeed, statements *alleging* that Mr. Martoma intended – almost 15 years

ago – to deceive both judges and Harvard Law School administrators are precisely the sort of

---

[36] *Accord Hatfield*, 685 F. Supp. 2d at 324 (finding evidence of fraudulent conduct unfairly prejudicial under
Rule 403 because, *inter alia*, "it suggests Defendants' propensity to lie to investigative authorities").

"sensational or disturbing" statements that Rule 403 is designed to exclude. *See, e.g., United States v. Williams*, 585 F.3d 703, 708 (2d Cir. 2009) (excluding evidence of access to contraband based on the "common sense precaution" that the Government should not be permitted to introduce "unsavory details which go beyond what is necessary to make the point" (internal quotation marks omitted)).

*Second,* the Government argues that "offering the [pre-SAC Material] or portions thereof need not lengthen the trial or otherwise distract from the core issues because the [pre-SAC Material] could be admitted largely through statements made and evidence conceded by Martoma in the Ad Board proceedings." (Mot. at 12.) That is demonstratively false. Mr. Martoma did not concede that he altered any e-mail but rather *contested* such allegations throughout the Administrative Board proceedings and appeal. (*See supra* at 5-7.) Nor could the Government "prove much of the evidence" about the Computer Data Forensics report through Mr. Martoma's prior statements to the FBI because Mr. Martoma made no statements about that report (or the Administrative Board proceedings). (*See supra* at 7-8.) And the Administrative Board never found that Mr. Martoma "fabricated phony e-mail evidence" or submitted "a phony report from a supposed computer forensics firm." (Mot. at 1.) Contrary to the Government's claims, the pre-SAC Material does not consist of "uncontested and readily established facts" (*id.* at 1) but rather *disputed and unproven allegations.* (*See supra* at 5-8.)

Given these factual disputes, "the Court necessarily would be required to permit [Mr. Martoma] to introduce evidence to put into context, explain, or rebut" the Government's claims. *Walls v. Shelby*, No. 11 Civ. 174 (KGB), 2012 WL 6569775, at *3 (E.D. Ark. Dec. 17, 2012). That necessarily would result in complex and lengthy "mini-trials" on issues including, but not limited to, whether Mr. Martoma in fact altered a personal e-mail in February 1999

and/or submitted a "phony" computer forensics report a few months later. Conducting such mini-trials "as to whether the Defendants lied will necessarily result in 'undue delay,' while adducing no evidence concerning whether the Defendants committed the charged crimes." *Hatfield*, 685 F. Supp. 2d at 324.[37]  Indeed, such proceedings would "require considerable effort, yet would provide little of use to the Court in resolving the material issues" – especially in this case where the Administrative Board was unable to make findings on the same issues at the time that the events occurred almost 15 years ago – with the result that any probative value would be "substantially outweighed by the undue delay and wastefulness that the admission of such evidence would present." *Gray v. Briggs*, 45 F. Supp. 2d 316, 330 (S.D.N.Y. 1999).

That is to say nothing of the jury confusion. The fact that the pre-SAC Material concerns unrelated and distinct conduct in and of itself raises the immediate danger that it will confuse the jury. *See, e.g.*, *United States v. Nekritin*, No. 10 Cr. 491(S-2) (KAM), 2011 WL 2462744, at *4 (E.D.N.Y. June 17, 2011) ("[A]ny probative value of evidence concerning [the defendant's] participation in an unrelated administrative proceeding would be substantially outweighed by the danger of confusing the issues and misleading the jury about the specific criminal conduct at issue in the instant case."). Were the pre-SAC Material admitted, it would expose the jury to hours of sensational testimony on matters from 1999 that have absolutely no bearing on whether Mr. Martoma committed securities fraud in 2008, which "will necessarily result in delay,

---

[37]  *Accord Levy*, 2013 WL 655251, at *1 (finding inadmissible under Rule 403 evidence of the defendants' prior fraudulent mass marketing scheme because (*inter alia*) "[t]he introduction of this evidence would lead to a confusing 'mini-trial'" that presents "a significant risk of . . . confusing the issues actually alleged in the Indictment, and misleading a jury that will already be tasked with determining the charged conduct"); *United States v. Graziano*, 558 F. Supp. 2d 304, 324 (E.D.N.Y. 2008) (finding inadmissible under Rule 403 evidence of gambling activity because (*inter alia*) its introduction "would lead to a 'mini-trial' concerning the nature and scope of any gambling activity at Copperfield's and the defendant's knowledge and/or involvement with respect to any such activities").

confusion of the issues, and may mislead the jury to make a determination of guilt based on propensity." *United States v. Kahale*, 789 F. Supp. 2d 359, 385-86 (E.D.N.Y. 2009).

*Third*, the Government argues that "[t]he Court could also give a limiting instruction to the jury explaining the proper purpose for the Harvard Evidence, which the Second Circuit has repeatedly held to be a sufficient remedy to cure residual prejudice." (Mot. at 12). To the contrary, the Second Circuit has specifically observed that, "where the prejudicial spillover [is] so overwhelming," limiting instructions "cannot be presumed to be effective." *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001). In this case, a limiting instruction could not possibly cure the unfair prejudice and jury confusion. Jurors could not put out of their mind the inflammatory allegations in the Administrative Board proceeding (repeated and exaggerated by the Government), and they also would struggle to understand the significance of *disputed allegations* about an altered personal e-mail from 1999 to the charges of securities fraud from 2008 that those allegations were offered to prove. As the Supreme Court recognized long ago, "[t]he limiting instruction, [Judge Hand] said, is a recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else." *Bruton*, 391 U.S. at 132 n.8 (internal quotation marks omitted); *accord United States v. Cook*, 557 F.2d 1149, 1154 (5th Cir. 1977) ("[E]ven the best instruction may be insufficient . . . [The] assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction." (citations omitted)).[38]

---

[38]   The Government also asserts that "the admissibility of the Harvard evidence would not of course have to be an all-or-nothing determination, and certain facts relating to Martoma's forging of documents with lesser relevance to the particular defense that could cause unfair prejudice could be omitted, including, for example, through the redaction of documents offered into evidence." (Mot. at 11-12.) That is no answer. The facts that the Government considers to be relevant to Mr. Martoma's defenses are *precisely* the facts that would cause unfair prejudice. Once they are introduced, the damage has been done.

This Court should exclude the pre-SAC Material because it would unfairly prejudice Mr. Martoma and confuse the jury.

## CONCLUSION

For the foregoing reasons, Mr. Martoma respectfully requests that this Court exclude any evidence concerning the pre-SAC Material.

Dated: December 20, 2013
      New York, NY

Respectfully submitted,

GOODWIN PROCTER LLP

By:
    Richard M. Strassberg (RS5141)
     (rstrassberg@goodwinprocter.com)
    John O. Farley (JF4402)
     (jfarley@goodwinprocter.com)
    Daniel Roeser (DR2380)
     (droeser@goodwinprocter.com)

The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800

Roberto M. Braceras (RB2470)
 (rbraceras@goodwinprocter.com)
53 State Street
Boston, Massachusetts 02109
Telephone: (617) 570-1000

*Attorneys for Defendant Mathew Martoma*

22

## CERTIFICATE OF SERVICE

I hereby certify that, on December 20, 2013, I caused a true and correct copy of the foregoing to be served by electronic mail and hand delivery on all counsel of record.

Richard M. Strassberg (RS5141)