GOODWIN | PROCTER

Richard M. Strassberg
212.813.8859
rstrassberg@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
The New York Times Building
620 Eighth Avenue
New York, NY 10018
T: 212.813.8800
F: 212.355.3333

January 15, 2014

**BY ECF AND FACSIMILE**

Honorable Paul G. Gardephe
United States District Court for the
 Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *United States v. Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y.)

Dear Judge Gardephe:

  We write on behalf of Mathew Martoma, who respectfully moves to exclude certain compliance and training materials as irrelevant and unfairly prejudicial. Specifically, the Government intends to introduce legal/compliance policies and procedures (GX 572, GX 585-595) and related testimony (the "Compliance Material") of S.A.C. Capital Advisors, LLC and its affiliates (collectively, "SAC"). Should this Court admit such evidence from the Government, Mr. Martoma should be permitted to offer evidence that SAC's compliance department did not identify any irregularities in the trading at issue without opening the door to evidence of other SAC indictments, settlement agreements, or plea agreements. Mr. Martoma has conferred with the Government, which does not agree to Mr. Martoma's request.

**I.     The Compliance Material Should Be Excluded Because It Is Irrelevant and Unfairly Prejudicial.**

  The Compliance Material should be excluded because it is irrelevant and unfairly prejudicial. The Government presumably seeks to offer the Compliance Material in order to suggest inferences about Mr. Martoma's intent – *i.e.*, whether he acted "willfully and knowingly" (Superseding Indictment ¶¶ 17, 21, 23) – with respect to the charged conduct. The Compliance Material, however, is not relevant to that question and would create a substantial danger of confusing the jury.

GOODWIN | PROCTER

Hon. Paul G. Gardephe
January 15, 2014
Page 2

*First*, as a matter of law, the Compliance Material has no bearing on whether Mr. Martoma acted "willfully and knowingly." "An act is done knowingly if it is done voluntarily and purposefully and not because of mistake, accident, mere negligence or some other innocent reason. An act is done willfully if it is done knowingly and deliberately." *United States v. Gregg*, 612 F.2d 43, 50 (2d Cir. 1979). The Compliance Material does not go to either inference. As an initial matter, a violation of SAC's compliance policies and procedures is expressly *not* the same as a violation of law. Rather, "SAC's Policies *exceed* legal requirements." (GX 591, at 3 (emphasis added).) Moreover, the Compliance Material at most shows that Mr. Martoma should have been aware of the relevant insider trading laws; but Mr. Martoma's knowledge of the insider trading laws must already be presumed. *See Atkins v. Parker*, 472 U.S. 115, 130 (1985) ("All citizens are presumptively charged with knowledge of the law.").[1] Ignorance of those laws is no defense. *See Gregg*, 612 F.2d at 50-51 ("[I]gnorance of the law is no defense to purposeful and intentional action."); *United States v. Berardelli*, 565 F.2d 24, 30 (2d Cir. 1977) (same). In other words, the absence of compliance training would not exculpate Mr. Martoma, and the presence of the Compliance Material does not inculpate him. The Compliance Material is legally irrelevant to the charges against Mr. Martoma.

*Second*, the Government cannot establish that Mr. Martoma received and reviewed the bulk of the Compliance Material as a matter of fact. There is no evidence that Mr. Martoma actually attended most of the training sessions at issue or read the documents that the Government would seek to introduce.[2] Absent such affirmative evidence, those training sessions and documents provide no basis for any inference about Mr. Martoma's state of mind. *See United States v. Hernandez*, 829 F.2d 988, 995 (10th Cir. 1987) (holding that a report did not show the defendant's state of mind and was properly excluded where the offering party failed to lay a "foundation that this defendant even knew about any of the information that is contained in the report at any of the times that are relevant to this case"). Unless the Government establishes that Mr. Martoma received and reviewed the Compliance Material at issue, that material is inadmissible.

*Third*, the Compliance Material poses the substantial risk of confusing the jury with respect to the applicable law in this case. Mr. Martoma is charged with insider trading and conspiracy to commit insider trading. This Court will ultimately instruct the jury on the

---

[1] *Accord Lin v. Chinese Staff & Workers' Ass'n*, No. 11-cv-3944 (RJS), 2012 WL 5457493, at *7 (S.D.N.Y. Nov. 8, 2012) ("In general, courts presume knowledge of the law.").

[2] In fact, there is affirmative evidence that Mr. Martoma *did not* receive and review all of the Compliance Material before the conduct at issue. For example, Mr. Martoma was on a medical expert conference call for the bulk of the May 7, 2007, training session and, therefore, could not have attended most of that session. (*Compare* GX 506 *with* GX 1001 at 71.) As another example, SAC's Compliance Policies and Procedures Manual and Code of Ethics (GX 592) was distributed in January 2009 – months after the charged conduct – and has no bearing on Mr. Martoma's state of mind with respect to the charged offenses. (Mr. Martoma has raised this issue with the Government, which is considering whether it will seek to introduce the exhibit).

Hon. Paul G. Gardephe
January 15, 2014
Page 3

applicable legal standards with respect to those charges. The Compliance Material, however, includes its own descriptions of the legal standards for insider trading. Not only are those descriptions different from the descriptions in the proposed jury instructions offered by the Government and Mr. Martoma, they are legally incorrect. (*See, e.g.*, GX 589, at 24 (incorrectly defining the term "public" with regard to non-public information); GX 591, at 3 (omitting the requirement of a breach of a duty of trust or confidence from the "standard definition of insider trading").) The differences between the applicable legal standards as described in the Compliance Material and the applicable legal standards as ultimately instructed by this Court create a substantial danger of confusing and misleading the jury. *See United States v. North*, No. 3:06-cr-323 (CFD), 2007 WL 1630366, at *1 (D. Conn. June 5, 2007) (excluding portions of a compliance policy that "present[ed] legal conclusions as to the scope and meaning of the Sherman Act that would undermine the Court's role as the jury's sole source of law applicable to this case" because they "create[d] a substantial risk of unfair prejudice to [the defendant] and present[ed] a significant risk that the jury will be misled"); *accord MM Steel, LP v. Reliance Steel & Aluminum Co.*, No. 4:12-cv-1227, 2013 WL 6588836, at *3 (S.D. Tex. Dec. 16, 2013) (precluding all references to a compliance policy for the same reasons). For this reason as well, the Compliance Material should be excluded. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (holding that evidence "embodying legal conclusions that encroach upon the court's duty to instruct on the law" is inadmissible).

## II.      Alternatively, Mr. Martoma Should Be Allowed to Introduce Evidence That SAC's Compliance Department Did Not Identify Any Irregularities in the Trading at Issue.

If this Court permits the Government to offer the Compliance Material, Mr. Martoma should be allowed to introduce evidence that SAC's compliance department did not identify any irregularities in the trading at issue without opening the door to evidence of other SAC indictments, settlement agreements, or plea agreements. The Government now seeks to offer evidence that SAC's compliance department trained SAC employees on policies and procedures to comply with insider trading laws. Yet the Government has previously taken the position that, if Mr. Martoma introduced evidence or made arguments that the manner in which the trades were executed complied with those same policies and procedures, "it might be relevant rebuttal evidence that SAC Capital had itself been convicted of insider trading and that its compliance policies had not identified the insider trading of other convicted employees at SAC Capital either."[3] The Government cannot have it both ways.

If the Government introduces evidence concerning the training that Mr. Martoma allegedly received from SAC's compliance department, Mr. Martoma should be able to offer evidence that the manner in which the trades were executed was in accordance with SAC's

---

[3]   (Government's Memorandum in Opposition to the Defendant's Fourth Motion *in Limine* to Exclude Evidence of Other SAC Actions, Settlements and Plea Agreements (ECF No. 141) at 2.)

GOODWIN | PROCTER

Hon. Paul G. Gardephe
January 15, 2014
Page 4

compliance policies and procedures. Such evidence from Mr. Martoma would not open the door to the Government introducing evidence of other SAC indictments, settlement agreements, or plea agreements:[4] "If the Government presents arguments or evidence that tend to show that . . . [Defendant's] trading was illegal - then it will open the door to defense evidence that the conduct was not illegal." *United States v. Stewart*, No. 03-cr-717 (MGC), 2004 WL 113506, at *2 (S.D.N.Y. Jan. 26, 2004).

In sum, this Court should exclude the Compliance Material or, alternatively, permit Mr. Martoma to offer evidence that SAC's compliance department did not identify any irregularities in the trading at issue without opening the door to evidence of other SAC indictments, settlement agreements, or plea agreements.

Respectfully submitted,

Richard M. Strassberg

cc:   Arlo Devlin-Brown (by e-mail)
      Eugene Ingoglia (by e-mail)
      Roberto Braceras (by e-mail)

---

[4] All of that evidence is irrelevant, is inadmissible hearsay, and is unfairly prejudicial and confusing to the jury. (*See* Defendant Mathew Martoma's Memorandum of Law in Support of His Motion to Exclude Evidence of Other SAC Actions, Settlements, and Plea Agreements (ECF No. 113) at 8-17.)