

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 13, 2014

**By Facsimile and by Hand**
Hon. Paul G. Gardephe
United States District Judge
United States District Court
40 Centre Street
New York, NY 10007
facsimile (212) 805-7986

    Re:    <u>United States v. Martoma, 12 Cr. 973 (PGG)</u>

Dear Judge Gardephe:

    The Government writes with respect to summary charts of trading by SAC Capital ("SAC") portfolio managers other than Mathew Martoma, in stocks other than Elan or Wyeth (the "Non-Martoma Other SAC Trading"), which the defense has indicated it intends to offer into evidence through cross-examination of Dan Berkowitz, SAC's Chief Financial Officer, who is anticipated to be a Government witness beginning on Monday afternoon (although cross-examination very likely will not begin before Tuesday). For the reasons set forth below, the summary charts at issue (1) concern matters beyond the scope of the direct of Mr. Berkowitz, and are more appropriately offered, if ever, during the defense case; (2) are irrelevant, as they concern neither trading by Mr. Martoma, nor stocks that are in any way the subject of the charges in this case; and (3) should they be admitted into evidence, open the door to inquiry and the offering of evidence by the Government concerning insider trading at SAC. The Government and the defense have spoken with each other about the concerns raised by the Government, and the parties disagree on all three points.

<u>Background</u>

    On the night of January 7, 2014, after jury selection commenced earlier that day, the defense produced to the Government proposed Defense Exhibit ("DX") 276. DX 276 was an electronic file containing SAC trading records concerning trading in stocks other than Elan or Wyeth.[1] A little after 11:00 p.m. on January 8, 2014, the defense produced four summary charts to the Government, marked DX 279, DX 280, DX 281, and DX 282, indicating that they were

---

[1] SAC itself never has produced this electronic file to us, although they have confirmed through counsel that the data within it came from SAC.

summaries of data in DX 276, and that they intended to offer these charts through Dan Berkowitz "or others."[2]

DX 279 is a summary chart that shows trading at SAC by a portfolio manager other than the defendant, in stock of Yahoo!.   DX 280 is a summary chart that shows trading at SAC by a portfolio manager other than the defendant, in stock of Anheuser Busch.   DX 281 is a summary chart that shows trading at SAC by a portfolio manager other than the defendant, in stock of General Electric.  DX 282 is a summary chart that shows trading at SAC by a portfolio manager other than the defendant, in stock of Altria.

On Thursday night, January 9, 2014, the night before opening statements were to take place, the defense provided the Government with a copy of some of its demonstratives for opening, which included the summary charts concerning the Non-Martoma Other SAC Trading. On January 10, 2014, the Government raised its concerns about the admissibility of the charts, and their potential to open the door, if the charts were admitted, to the Government offering evidence of other trading at SAC that did not involve Martoma, but did involve insider trading.

In setting forth the defendant's position to the Court, defense counsel stated that the point the defendant wished to establish with the charts was not that the four selected examples of Non-Martoma Other SAC Trading were proper. *See* Trial Tr. Jan 10, 2014, at 10 ("we're not talking about how proper everything is");  at 11 ("We're not going to be commenting, frankly, on the propriety of what SAC Capital does or doesn't do.");  at 12 ("If the concern is we're going to be saying and SAC Capital vetted it fully and that it was properly done, we're not going to be suggesting any of those things.  We're not going to say any of that.")   Rather, counsel suggested that his limited point was that "one of the things that happens at SAC Capital is that they have large positions and that they quickly in short time periods reverse those large positions." *Id*. at 10.  It was "something that was part of the business that they did." *Id*. at 12.

Your Honor ruled that the charts could be shown during opening, but that it is possible that the evidence might not be admitted at trial, or, if the charts were admitted into evidence, the Court might "allow the government leeway in introducing other evidence as a result." *Id.* at 13.

In the defense opening, counsel argued that the sell-off of the "entire position before the ICAD conference" was "what hedge funds do.  They take big positions to sell big positions, often around events." *Id*. at 81.  Counsel repeated and elaborated on this theme a number of times: "[t]hat's their business model"  (*id*. at 82); "that's what a hedge fund does" (*id.*); and "SAC's business model was to take and sell large positions" (*id.*)  Further, the defense argued that the sell-off before the announcement was "exactly the kind of prudent investment decision that a super-sophisticated and experienced investor like Steven Cohen was paid to make." *Id.* at 104.

---

[2]  The defense subsequently has specified that they intend to offer these summary charts through cross-examination of Mr. Berkowitz, and that they have provided the charts to Mr. Berkowitz so that he could confirm the accuracy of the data reflected in the charts.

Case 1:12-cr-00973-PGG   Document 214   Filed 01/16/14   Page 3 of 6

Page 3

The Non-Martoma Other SAC Trading is Beyond the Scope of the Direct of Berkowitiz

   Mr. Berkowitz is SAC's Chief Financial Officer, who does not and did not make strategic investment decisions at SAC. He is testifying for the Government principally in three respects. First, he is testifying as a document custodian concerning the authenticity of certain SAC records. Second, he is providing broad background about how SAC was organized. And third, he is testifying about Mr. Martoma's compensation[3] from July 2006 through 2008 (relating to the period of the charged conspiracy).[4]

   "Federal Rule of Evidence 611(b) is clear that the scope of cross-examination "should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b); *accord United States* v. *Koskerides*, 877 F.2d 1129, 1136 (2d Cir. 1989)." Should the defendant wish to broach topics with the witness that were not covered on direct examination, the defendant can call the witness during his case, but he cannot do it on cross-examination. *See United States* v. *McLaughlin*, 957 F.2d 12, 18 (1st Cir. 1992) ("[A] party has no right, unless the court in the exercise of its discretion allows, to cross-examine a witness beyond the subject matter of his direct examination and beyond matters affecting credibility. If [the defendant] wished to adduce new evidence from the agents in support of his defense, he could have called the agents as defense witnesses." (citation omitted)); *see also Koskerides*, 877 F.2d at 1136 (no abuse of discretion where district court foreclosed line of cross it determined to be beyond the scope of direct, but indicated that the Government would be required to make witness available if defense chose to call him during the defense case); *United States* v. *Adeniyi*, 03 Cr. 86, 2004 WL 1077963, at *3 & n. 2 (S.D.N.Y. May 12, 2004) (district court found no Confrontation Clause violation when the court limited cross-examination of witness to the scope of direct and "not[ed]" that the witness "was present throughout the trial and the defense made no attempt to call him as a witness to explore matters outside of the Government's direct case").

   The other SAC trading is beyond the scope of the anticipated direct of Mr. Berkowitz. Certainly, the Government will not ask Mr. Berkowitz about those non-Martoma stocks; or about any kind of detailed analysis of SAC's trading practices. Nor does it expect that Mr. Berkowitz knows anything about the reasons behind the trades, or the sources of information relied upon by the portfolio managers, in the four stocks that make up the Non-Martoma Other SAC Trading. Rather, it appears that the defense, seeing that Mr. Berkowitz would be testifying as a custodian for the Government, has prevailed upon SAC to make him available as a custodian for the defense, on unrelated topics. This is perfectly appropriate for the defense if it wishes to call Mr. Berkowitz as part of its defense case. But it is not an appropriate subject of cross-examination of Mr. Berkowitz.

---

[3]  Martoma's compensation was, of course, tied to his trading and his recommendations to Steve Cohen about trading; to that extent, trading will be referenced.

[4]  We will not be introducing testimony or documentary evidence concerning Martoma's compensation 2009 or 2010, consistent with the Court's opinion concerning evidence surrounding Mr. Martoma's termination from SAC.

The Government is aware that the defense may urge the Court to take a very broad view of the scope of the Government's direct, and allow the defense to cross Mr. Berkowitz, because he is already here and it would be expedient to do so. This is unwarranted for three principal reasons. First, the Government would be entitled to 3500 material concerning the subject of Mr. Berkowitz's testimony, if it were offered in the defense case; allowing testimony concerning the Non-Martoma Other SAC Trading on cross-examination would deprive the Government of such material. Second, the defense should not be permitted to use custodial witnesses for the purposes of making argument to the jury in the form of questions that the witness has no capacity to answer, or to offer exhibits that more appropriately should be offered as part of the defense case. Finally, Mr. Berkowtiz's circumstances, as a present employee of SAC, do not present the kind of extraordinary logistical challenges to returning to Court on another day that might weigh differently if the witness at issue was, for example, flying in from abroad. Indeed, the Government's understanding is that the SAC Capital has cooperated extensively with the Martoma defense team, including by making witnesses available to the defense, producing documents to the defense (and expressly declining to provide the Government with copies of productions to the defense), and otherwise providing assistance. Accordingly, there is no hardship whatsoever in requiring the defendant to put on any permitted defense with respect to other trades at SAC Capital in its own case, and through its own SAC Capital witnesses.

The Non-Martoma Other SAC Trading Is Not Relevant

The Non-Martoma Other SAC Trading should also be excluded as irrelevant. Other trading by portfolio managers other than Mr. Martoma, in stocks other than Elan or Wyeth, is completely irrelevant to the case, has the potential to confuse and mislead the jury, and could result in mini-trials within the trial concerning the sources of information relied upon in making the trades, the reasons for the various trading decisions, and what was public and not public in connection with such trading. The evidence should not be admitted.

First, the examples of SAC trading in these four stocks that are unrelated to the case in any way, are clearly being offered by the defense with the implicit suggestion that the four trades are proper. Their argument only makes any sense, if understood on these terms. The defense is asserting that the Government rushed to judgment when it saw the dumping of the Elan and Wyeth positions right before the announcement and supporting this argument with reference to four other trades in which SAC Capital acquired a large position, and then sold it near an announcement. Such trading is normal at SAC; it is not suspicious; it is, as the defense described it in opening, "SAC's business model." Trial Tr. at 82. If the Government was wrong in its judgment that the Elan and Wyeth trading was improper, then the defense's redirection of the jury to a more appropriate comparison – the Non-Martoma Other SAC Trading – plainly comes with the implicit argument that such other trading was proper. And there will be no evidence on the record, if the defendant is permitted to offer these charts, as to whether this was proper, was not proper, or what the basis for the trades was.

The defense responds that they are offering the Non-Martoma Other SAC Trading as evidence of "one of the things that happens at SAC Capital". *Id.* at 10. But surely that something sometimes happens at SAC Capital, is not enough to make it relevant for this trial. It proves too little, if anything. Many things sometimes happen at SAC. SAC had roughly 100

portfolio managers in 2008. The defense has cherry-picked four positions, from the multitude of positions that were put on during the relevant period.

Moreover, the defense worked hard in its pretrial motions to ensure, for example, that the fact that insider trading sometimes happened at SAC was not admissible at this trial. It is hard to see how, in the context of case involving charges of insider trading at SAC, the facts surrounding SAC's involvement in and condoning of insider trading, are not relevant, but four carefully selected transactions, with no apparent ties to any of the players in the instant case, somehow are. The defense is trying to have it both ways – preclude the Government for offering any evidence concerning the bad conduct that occurred at SAC, while at the same time making "SAC's business model" and Mr. Cohen's alleged "savviness" as an investor a central part of its defense.

Furthermore, introducing four new positions, in stocks unrelated to the charges, unrelated to any of the other evidence in the case, brings with it risks of confusing trials within the trial, as the sources of information, portfolio managers involved, particular announcements related to each trade, are presented and argued about – all completely unrelated to the charges at issue. As the defense repeatedly reminded the Court in its motions *in limine*, the Court may limit subjects for cross-examination in order to avoid mini-trials that could confuse jurors and complicate the trial. *See United States* v. *Stewart*, 433 F.3d 273, 312-13 (2d Cir. 2006) (upholding preclusion of cross-examination necessitating "mini-trial" that would have been "a confusing distraction in an already lengthy and complex trial"). There could hardly be a batter example, than what the defense seeks here.

<u>If The Non-Martoma Other SAC Trading Is Admitted Into Evidence,</u>
<u>the Government Should be Able to Introduce Evidence Concerning Insider Trading at SAC</u>

There would be no fair way for the jury to evaluate the strength (or lack of strength) of the defendant's argument about "SAC's business model" without also considering that insider trading around announcements played a significant role in SAC's business over the years. If the Non-Martoma Other SAC Trading evidence is admitted, the Government should be permitted to introduce, in some form, evidence that goes to this less legitimate aspect of SAC's business model, including by questioning SAC Capital witnesses as to whether it is true that certain other trading at SAC Capital has been found to be illegal insider trading.

Indeed, the defense has centrally featured SAC's presumably legitimate trading in its defense in a variety of ways. In opening, the defense insisted that the only characterization of the term "edge" was "trying to work harder and do your job better than the next guy" and "[t]rying to understand the investment as best as you possibly can … Nothing wrong with it. Nothing sinister about it. Nothing criminal about it." Trial Tr. at 79. Mr. Cohen, as depicted in the defense opening, is a "super-sophisticated and experienced investor" (*id.* at 104) who "surrounded himself with smart analysts and portfolio managers". (*id.* at 74.)

The defense arguments embracing the SAC business model open the door to a fair rebuttal that SAC's business model included some unsavory aspects as well. In the Government's view, allowing the Non-Martoma Other SAC Trading materials into evidence would unfairly allow the defense to falsely portray the "SAC business model" as an unvarnished

positive, give the jury an unfair comparison point, and deprive the Government of putting facts relevant to that question before the jury for the jury to decide. The Government has not chosen the defense that the defendant is offering. But if the defense wants to argue that what the defendant did was no more and no less than the kind of thing that "happens at SAC Capital", and was simply consistent with "SAC's business model," then the Government should be entitled to rebut that argument.

          Respectfully Submitted,

          PREET BHARARA
          United States Attorney

By: _____\\s\_____
     Arlo Devlin-Brown / Eugene Ingoglia
     Assistant United States Attorneys
     (212) 637-2506 / 1113

cc: Richard Strassberg, Esq.
    Roberto Braceras, Esq.
    (via electronic mail)