**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 20, 2014

**By Hand**
Hon. Paul G. Gardephe
United States District Judge
United States District Court
40 Centre Street
New York, NY 10007

    Re:    <u>United States v. Martoma, S1 12 Cr. 973 (PGG)</u>

Dear Judge Gardephe:

       The Government writes with respect to the defendant's expert disclosures. For the reasons detailed below, the Government moves to preclude the testimony of Professor Paul Gompers, and certain aspects of the anticipated testimony of Dr. Thomas Wisniewski, and believes the defense disclosures with respect to Professor Gompers have been inadequate. The Government and the defense have conferred with each other on these issues, and are in broad disagreement.

## I.    <u>Background</u>

       In a letter dated December 27, 2013, the defendant provided notice that he intended to call one or more of four potential expert witnesses, including Professor Paul Gompers (hereafter, "Prof. Gompers") and Dr. Thomas Wisniewski. The notice provided by the defendant was insufficient under Federal Rule of Criminal Procedure 16(b)(1)(C), as it failed to specify which experts would testify as to which topics, and did not identify any of the opinions the experts would offer on the proposed topics. The defendant was to produce on December 30, 2013, pursuant to a schedule agreed upon between the parties, statements for the nine lay and expert witnesses it had identified. On December 30, 2013, at 10:12 p.m., defense counsel sent an email to the Government explaining that production of the statements would "take a little more time."

       On December 31, 2013, the Government informed defense counsel that the disclosures were inadequate and the Government intended to file a motion to compel appropriate disclosures. The defendant requested an opportunity to provide a revised disclosure. On January 2, 2014, the defendant sent a revised disclosure that continued to provide information based on groups of experts, as opposed to identifying the proposed testimony of each expert, and continued to provide only a summary description of the topics of testimony, but was supplemented in places by a statement as to the opinion the experts would offer.

On January 4, 2014, the Government filed a Motion *In Limine* for Additional Expert Disclosures and to Preclude Certain Expert Testimony (the "Motion," attached hereto as Exhibit A and incorporated by reference) . On January 5, 2014, the defendant sent the Government a letter explaining that "in an abundance of caution" the defendant was providing two draft reports prepared by Dr. Wisniewski, as well as notes for the other three experts. The notes provided for Prof. Gompers were heavily redacted. The defendant then filed an opposition to the Government's motion on January 6, 2014. In its opposition, the defendant disclosed that he was withdrawing two of his expert witnesses -- leaving only Prof. Gompers and Dr. Wisniewski. In the opposition, defense counsel indicated that Prof. Gompers would be relying not only on the exhibits they had identified but also on "SAC trading records, stock price data, and SEC deposition testimony" that were "either in the Government's possession and/or publicly available." Def. Opp. at 7.

After some discussion between the parties, on January 12, 2014, the Government e-mailed defense counsel to ask whether or not they would be willing to provide any further detail about the opinions Prof. Gompers would offer beyond the redacted notes. The Government also asked for any authority for the proposition that an expert in a criminal case can rely on deposition testimony of people who will not be witnesses at trial, or that deposition testimony is an appropriate basis for an expert opinion in a criminal trial. Defense counsel responded that "our disclosures are fairly straightforward as to the type of opinions you can expect" from Prof. Gompers and noted that because there were "no draft (or even final) expert reports to produce", the Government already had received all the statements of Prof. Gompers that the defense was able to produce.

Defense counsel went on to explain:

> As our notice indicated, [Prof. Gompers] will testify that: (1) there was no correlation in the trading of Elan and Wyeth and the SMC meetings; (2) the "efficient market theory" does not preclude a stock from becoming "overheated" or over-valued; (3) the analyst reports, stock price information, anticipated sales, etc., from spring/summer 2008 suggest that Elan was approaching its target price and had captured all the "upside" of bapi, even if the July 29 announcement were to be "positive"; (4) the drug approval process is challenging at best – true "blockbusters" are few and far between, even after a drug has been approved for phase 3; (5) the trading strategy of SAC in July 2008 was consistent with that of SAC and other hedge funds' practices, namely, to sell going into an event to minimize risk and lock in profits; and (6) trading strategies – i.e., hedging Wyeth and using dark pools/algos – was routine in the industry.[1]

---

[1]  We understand this email to reflect the scope of the anticipated testimony of Prof. Gompers. To the extent that the defense additionally seeks to offer testimony of Prof. Gompers for things not mentioned by the defense above, but disclosed previously, such as "trading strategies" or "investment strategies" of SAC, we object for the reasons stated herein, principally at page 8; or of similar strategies used by "institutional investors" generally, on relevance and lack of

Defense counsel also asked if the Government had "any reason or law to say that an expert opinion cannot rely on SEC testimony." After further communication, the Government sent defense counsel legal authority that the Government believed was germane, and reiterated its request for identification of exactly which SEC testimony Prof. Gompers relied upon in preparing his opinions.

After additional discussion between the parties, in which the defense made clear its intention to provide additional clarity on the specific question concerning SEC deposition testimony, on January 18, 2014, defense counsel sent the Government an e-mail regarding Prof. Gompers, attempting to "make clear that Professor Gompers does not *rely on* the SEC deposition testimony of Mr. [Steve] Cohen (or anyone else) but rather *refers to* such testimony simply to confirm his opinions, which have the independent bases described in [the] expert disclosures." (emphasis added).

According to defense counsel, "Professor Gompers refers to Mr. Cohen's SEC deposition testimony that the Elan and Wyeth short sales were meant to hedge the Wyeth swap to confirm his opinion that SAC's short sales of Elan and Wyeth securities in July 2008 are consistent with a strategy of hedging SAC's long position in Wyeth securities," but that "Professor Gompers has the same opinion even without Mr. Cohen's confirmatory testimony." The Government asked whether the SEC testimony at issue was limited to that of Mr. Cohen, or included the testimony of others. Defense counsel replied that "[t]o date, [Prof. Gompers] has only looked at Cohen's testimony" and suggested it was very unlikely that Prof. Gompers would look at SEC testimony given by others.

## II.   The Defendant's Disclosures Concerning The Proposed Testimony Of Prof. Gompers Remain Insufficient

The defendant's expert disclosures with respect to Professor Gompers are still insufficient. As Federal Rule of Criminal Procedure 16(b)(1)(C) makes clear, the defendant must disclose not only the witness's opinions and qualifications but the "*bases* and *reasons* for those opinions." (emphasis added).[2] The defendant does not sufficiently disclose either. The

---

disclosure of methodology grounds. To the extent the defense seeks to offer expert testimony concerning the price of Elan stock, or about analyst reports, the Government believes those are simply facts that require no expert elucidation.

[2] In *Daubert* v. *Merrell Dow Pharm., Inc.*, the Supreme Court held that the trial court must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). As a practical matter, in order for the Government -- and ultimately the Court -- to evaluate whether the proposed expert testimony is "the product of reliable principles and methods" pursuant to *Daubert* and its progeny, the defendants should be required to provide the Government with more than a list of the topics of testimony and a passing reference to the types of information that the experts reviewed in the court of preparing to testify. *See, e.g.*, *Nimely* v. *City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005) (district courts have a screening function to evaluate qualifications of an expert, the reliability of the expert's opinions,

defendant provides a list of exhibits that "pertain[]" to Prof. Gompers's analysis.  Def. Opp. at 7.
In addition to a list of exhibits, the defendant claims that the other bases for Prof. Gompers's
opinions are "SAC trading records, stock price data, and SEC deposition testimony," which are
"in the Government's possession and/or publicly available."  *Id.*  The defendant offers no
explanation how this information was used, nor does he describe Prof. Gompers's methodology.
This is not sufficient under Rule 16.  *See United States* v. *Sturman*, 96 Cr. 318, 1998 WL
126066, at *1 (S.D.N.Y. Mar. 20, 1998) (A "general description of possible bases does not meet
the requirements of Rule 16(b)(1)(C)"); *see also United States* v. *Jasper*, 00 Cr. 825, 2003 WL
223212, at *2-3 (S.D.N.Y. Jan. 31, 2003) (describing defendant's disclosure obligations and
noting that the Advisory Committee Notes to the amendment to Rule 16 "make[] clear that the
requirement to produce a summary of the expected testimony and the bases of the expert's
opinion applies regardless of whether any formal written reports have been prepared").

   The heavily redacted notes provided by the defense do nothing to supplement their
disclosures.  The notes contain largely irrelevant information (*e.g.*, "Gompers – on stand in
Deutchebank for ~ 1 hr") and what relevant information can be discerned is unexplained and
undeveloped (*e.g.*, "Promising results – to develop argument that Elan was <u>over</u> valued").  The
Government attaches the notes provided to the Government by the defense as Exhibit B to this
letter.

## III. The Bases For Prof. Gompers's Testimony That Have Been Disclosed Are Improper

   The limited information the defendant did provide reveals bases to preclude
additional testimony.  The disclosure that Prof. Gompers' opinion will be based in some way
SEC deposition testimony is particularly troubling.  Deposition testimony is not a proper basis
for an expert opinion.  *See In re Blech Securities Litigation*, 96 Civ. 7696, 2003 WL 1610775, at
*21 (S.D.N.Y. March 26, 2003) ("[T]he fact that the expert witness had read someone else's
deposition would not give him personal knowledge of the underlying facts." (internal quotation
marks omitted)); *Pretter* v. *Metro North Commuter R. Co.*, 00 Civ. 4366, 2002 WL 31163876, at
*2 (S.D.N.Y. Sept. 30, 2002) ("Self-evidently, the fact that [the expert] had read someone else's
deposition would not give him personal knowledge of the underlying facts; he could therefore
only testify about the underlying facts if he was actually bringing to bear his scientific expertise,
which . . . he was not."); *Primavera Familienstifung* v. *Askin*, 130 F. Supp. 2d 450, 529
(S.D.N.Y. 2001), *amended on reconsideration on other grounds*, 137 F. Supp. 2d 438, 440 n.1
(S.D.N.Y. 2001) ("As support for these opinions, [the expert] relies almost exclusively on his
interpretation of deposition testimony by witnesses in this case.  In so doing, he does not serve as
an expert but, rather, seeks to supplant the role of counsel in making arguments at trial, and the
role of the jury interpreting the evidence.").

   This issue is all the more pressing here because this Court already has ruled on the
admissibility of Mr. Cohen's deposition testimony.  On January 7, 2014, this Court denied the

---

and the relevance of the proposed expert testimony); *S.E.C.* v. *Johnson*, 525 F. Supp. 2d 70, 74
(D.D.C. 2007) ("The first prong of the *Daubert* analysis requires the trial court to assess the
methodology employed by the expert as a means of ensuring evidentiary reliability.").

defendant's motion to admit portions of Steve Cohen's SEC deposition testimony.  January 7, 2013 Order (the "Order").  This Court found that Cohen's deposition was not admissible under Rule 804(b)(1), nor under Rule 807.  In so concluding, this Court noted that "Cohen's testimony does not bear circumstantial guarantees of trustworthiness."  Order at 11.  Characterizing Cohen's testimony, in part, as "self-serving," this Court wrote that "Cohen had a strong motive to offer an exculpatory version of events at SAC."  *Id.*

By having Prof. Gompers's opinion testimony rest in part on Cohen's deposition testimony, the defendant appears to be seeking to circumvent, or at a minimum artfully dancing around the text while violating the spirit of the Court's clear order precluding the admission of Cohen's deposition testimony.  This is so even in light of the defendant's later e-mail disclosures that Prof. Gompers apparently does not "rely" on SEC testimony of Cohen but instead "refer[s]" to Cohen's testimony, and that Prof. Gompers's opinion would be the "same . . . even without Mr. Cohen's confirmatory testimony."  It is difficult to see the value added by the "confirmatory testimony" unless the defense intends to elicit its conformity with Prof. Gompers's opinion on direct.

It is true that under Federal Rule of Evidence 703, an expert may rely on inadmissible facts or data in forming an opinion, provided that "experts in the particular field would reasonably rely on those kinds of facts or data."  Fed. R. Evid. 703.  But if the facts or data are inadmissible, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  *Id.*

Here, as an initial matter, the defendant cannot establish that experts in Prof. Gompers's field "reasonably rely" on the deposition testimony of an interested party when forming opinions about the practices of the entity about which they are testifying.  In fact, the case law suggests that such reliance is improper. *Cf. Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("Although the Rules permit experts some leeway with respect to hearsay evidence, Fed. R. Evid. 703, a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis for his testimony." (internal quotation marks omitted)); *United States* v. *Dukagjini*, 326 F.3d 45, 59 (2d Cir. 2003) (where expert witness "rel[ied] on his conversations with non-testifying witnesses and co-defendants in order to prove the truth of the matter asserted," expert's testimony was "neither within the permissible bounds of expertise . . . nor within recognized exceptions to the hearsay rule").

Moreover, even if the defendant could establish this necessary condition -- and he cannot -- the supposed "facts" of the deposition may not be disclosed to the jury because their minimal probative value is vastly outweighed by their prejudicial effect.  *See* Fed. R. Evid. 703; *see also Malletier* v. *Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007) ("Under the 2000 Amendment to Rule 703, an expert is not precluded from relying on hearsay, but he is precluded from disclosing the hearsay to the jury unless its probative value in illustrating the basis of the expert's opinion substantially outweighs the prejudicial effect of having the jury hear about otherwise inadmissible hearsay.")  This Court essentially concluded as much in its Order.  But even disclosing something as simple as the conformity of Cohen's deposition testimony with

Prof. Gompers's opinion reveals the contents of the testimony by revealing its essence. Indeed, eliciting such general conformity with Cohen's SEC testimony may give rise to a host of confusing questions and assumptions among the jurors as to what exactly Cohen's testimony was, without offering any means of clarity without further disclosure of additional details of the testimony. Thus, any proffered testimony that is based on Cohen's deposition testimony -- whether it relies, refers, or otherwise -- should be precluded.

## IV.   Prof. Gompers Should Be Precluded From Offering Certain Opinions

If the Court decides to permit Prof. Gompers to testify, the Government requests that he be precluded from offering certain of the opinions the defendant has identified.

### Opinion That There Was No Correlation Between
### the SMC Meetings and Trading in Elan and Wyeth

As to the first proffered opinion, that "there was no correlation in the trading of Elan and Wyeth and the SMC meetings," this is not appropriate expert testimony. Testimony regarding facts unconnected to any specialized knowledge is not the proper subject of expert testimony. *See Andrews* v. *Metro North Commuter Railroad, Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (vacating jury verdict where district court allowed expert to testify "about matters that were neither scientific nor in any way beyond the jury's ken"). There is no specialized knowledge required to determine associations between the timing of meetings and trades. Mr. Strassberg made this argument, complete with summary chart, during his opening, in which he stated:

> And you're going to see that the positions in Elan fluctuated dramatically. They went up and they went down. And the Elan positions had no relationship to the SMC meetings.
>
> So we're going to put up [the defense summary chart] – these are the dates of the SMC meetings. The prosecutor said he [Martoma] was getting positive safety information, the kind of information you would think would make you buy more of the stock. But you'll see there is no pattern of buying more of the stock. And you see the prosecutor said, well, Gilman was giving him an early preview so you would think he would accumulate and buy more and more. And he mentioned perhaps a little tweaking here and there. But we are not going to see tweaking here and there when we look at the actual trading runs; you are going to see millions of shares of position.
>
> Let's take a look, if we can, Mr. McLeod in the October '07 time period. You're going to see -- now it is hard to tell by the chart there, but that's the sale of more than 5 million shares of Elan stock in October '07, when it's supposed to be getting positive information to buy more. And then even more of the same happens in the spring of

'08. Take a look over here.

And, again, if you kind of look a little bit on our chart, but the drop of
millions and millions and millions of shares of stock -- inconsistent with
what the prosecutors' story was to you in their opening remarks.
Trial Transcript at 99-100 (January 10, 2014)..

Such an argument simply does not require any specialized or expert knowledge.
It is a simple comparison of the dates of the SMC meetings, and the subsequent trading activity
in Elan and/or Wyeth. The dates of the SMC meetings are in evidence, and the parties expect
that the trading data also will be in evidence. The relationship between the dates of SMC
meetings and SAC's trades in Elan and Wyeth can be argued by defense in closing, and/or
offered through a summary chart, without being parroted through the mouth of an expert.

### Opinions That A Stock Can be 'Overvalued' and That Elan Stock
### Had Captured All of Its 'Upside' Before The July 29, 2008 Announcement

Prof. Gompers's proffered second and third opinions -- "the 'efficient market
theory' does not preclude a stock from becoming 'overheated' or over-valued; [and] the analyst
reports, stock price information, anticipated sales, etc., from spring/summer 2008 suggest that
Elan was approaching its target price and had captured all the 'upside' of bapi, even if the July
29 announcement were to be 'positive'" -- are irrelevant and expert testimony on them should
not be permitted. *See United States* v. *Khan*, 787 F.2d 28, 34 (2d Cir. 1986) ("Expert evidence is
not immune from the relevance requirement and must be excluded if irrelevant." (alterations
omitted)). Introducing expert testimony concerning efficient market theory -- a concept that has
not emerged in the testimony or evidence to date – in order to then offer an opinion that such
theory does not preclude the possibility of a stock being over-valued, would be a confusing side-
show of no relevance to the central questions of the case. Similarly, whether or not Elan stock
had captured all the "upside" of bapineuzumab is a question of fact that itself only is relevant to
the extent it goes to the defendant's state of mind at the time. Whether Prof. Gompers now
thinks it had captured all of the upside prior to the announcement date, or that people at the time
may have thought that it did, is irrelevant.

The issue at trial is what Martoma thought of the Elan and Wyeth stocks, and
what information that he had, informed that opinion. Whether some un-named third-party might
or might not have thought that the Elan and Wyeth stocks were overheated, overvalued, or had
little upside, is not relevant.[3]

---

[3] Certainly, if the defense wants to offer evidence that Martoma thought the stock was
overheated, or discussed such an issue with someone at SAC at the time, such evidence would be
relevant because it would go to the defendant's state of mind at the time. But Prof. Gompers'
after-the-fact opinion as to whether or not the stock was in fact over-heated, has no bearing on
the defendant's state of mind and should not be permitted as a proxy for any such evidence.

## Opinion That The Drug Approval Process
## Is Challenging And That Blockbuster Drugs Are Rare

Similarly, Prof. Gompers's fourth proffered opinion – that "the drug approval process is challenging at best – true 'blockbusters' are few and far between, even after a drug has been approved for phase 3" -- is irrelevant. This generalization provides no insight into the drug at issue in this case, much less what Martoma thought about bapineuzumab at the time he made his trades. Moreover, Prof. Gompers does not seem, from the face of the defense disclosures, to be qualified to give expert testimony on the subject of drug trials and their success rates[4]. Finally, there is nothing in the trading records of SAC that provides a basis upon which Prof. Gompers might rely to offer this testimony, and the Government is not aware of a defense exhibit that would provide such a basis. To the extent Prof. Gompers would rely, for this opinion, on analyst reports of Elan stock, the Government submits such would not be sufficient basis for expert opinion on the drug approval process. For each of these reasons, Prof. Gompers should not be permitted to give expert testimony on this subject.

## Opinion That The "Trading Strategy of SAC in July 2008"
## Was Consistent With the "Practices" of "SAC and Other Hedge Funds"

Prof. Gompers's fifth proffered opinion – that "the trading strategy of SAC in July 2008 was consistent with that of SAC and other hedge funds' practices, namely, to sell going into an event to minimize risk and lock in profits" -- would be improper for expert testimony at trial. Not only does Prof. Gompers have no specialized knowledge about SAC, but it is not the role of an expert to assume counsels' responsibility to make arguments or assume the jury's function by drawing inferences from the evidence. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) ("[E]xperts should not be permitted to supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence." (internal quotation marks omitted)).

Nor would it be appropriate for an expert witness to testify about and offer opinion as to what were the *facts* of SAC's trading strategy in Elan – those facts are in dispute, and are the very subject of this trial. Similarly, it would not be appropriate for an expert to testify as to the *facts* of SAC's "practices" when those facts are in dispute, of dubious relevance, and subject to the objections that the Government raised in its January 13, 2014 letter to the Court (questioning the relevance of certain other trades at SAC not involving Martoma, and arguing that the defense should not be able to characterize SAC's business model without an opportunity for the Government to offer other evidence concerning inappropriate trading that happened at SAC) (the Government's January 13, 2014 letter to the court is attached hereto as Exhibit C). Finally, there has been no disclosure from the defense that goes to what

---

[4]   The defense has indicated, in response to the Government's inquiry on this discrete subject, that Prof. Gompers has some experience with drug trials, that is not set forth with specificity in the disclosures concerning the experience of Prof. Gompers. The Government asked to be pointed to, or provided with, information concerning any such experience, on January 19, 2014. To date none has been provided.

methodology was supposedly employed, and what materials were relied upon, for the expert to draw conclusions and offer opinions about SAC's trading practices generally.

While the Government does not dispute that a summary witness could potentially synthesize SAC trading data to show SAC's positions in securities at particular times, it is for counsel to argue the significance of such data and for the jury to determine its weight.

### Opinion That Trading Strategies Such As "Hedging" Wyeth And Using Dark Pools And Algorithmic Trading Were Routine In the Industry

Prof. Gompers's sixth proffered opinion -- "trading strategies – i.e., hedging Wyeth and using dark pools/algos – was routine in the industry" -- is acceptable to the extent that Prof. Gompers testifies about the meaning of things such as hedging, dark pools and algorithmic trading. However, the Government objects to the extent that Prof. Gompers intends to testify in any way that SAC's hedging of Wyeth stock in 2008, in particular, "was routine in the industry." The facts surrounding the trading at SAC, and the reasons for such trading, are factual issues in the case. Prof. Gompers should not be permitted to provide expert testimony that goes to the reasons behind the Wyeth trades at issue in the case. To the extent Prof. Gompers is expected to testify that hedging, or use of dark pools and algorithmic trading, were "routine in the industry" in 2008, it is not clear from the disclosed materials what methodology he has used to come to that conclusion or what the bases are for that opinion.

### V.    Dr. Wisniewski Should Be Precluded From Offering Certain Opinions

According to the defendant's January 2, 2014 letter, Dr. Wisniewski is also intending to offer certain opinions at trial that the Government considers to be improper.

### Three Categories of Testimony To Which The Government Objects

First, the defense intends to elicit from Dr. Wisniewski that it is "[t]he responsibility of doctors participating in clinical trials to maintain the confidentiality of clinical trial results." As the Government made clear in its Motion and reiterates now, the responsibilities of doctors writ large are not relevant to this trial. The only relevant duties of confidentiality are those owed by Dr. Ross and Dr. Gilman to Elan and Wyeth. Those duties are questions of fact going to an ultimate issue that are properly evaluated through witness testimony and related documentary evidence (including multiple confidentiality agreements) of those who were parties to the agreements.

Second, the defense proffers that Dr. Wisniewski will testify about "the role of the Safety Monitoring Committee ('SMC') in the drug testing approval process and clinical trials" and "the role of SMC in the drug testing approval process for bapi, including the Phase I, Phase II, and Phase III clinical trials." Such testimony is merely factual evidence coming from a witness with no firsthand knowledge. Experts cannot be used as a substitute to calling witnesses to the events or facts at issue. Dr. Wisniewksi should not be permitted to testify on such factual matters that do not call for an expert's opinion.

Third, according to defense counsel, Dr. Wisniewski will offer three opinions about the "meaningful[ness]" of information and differences between disclosed results.[5] Dr. Wisniewski's opinion on whether information was "meaningful" is irrelevant -- the real question is whether the information was meaningful to investors. Dr. Wisniewski is not qualified to testify on this subject, and should not be permitted to do so.

### Other Subjects of Possible Testimony

The defendant's January 2, 2014 letter (attached to the Government's Motion, at Exhibit A to this letter) lists numerous other possible topics of Dr. Wisniewski's testimony, including the science behind Alzheimer's Disease and bapineuzumab, the drug-testing approval process, and the purpose of "double-blind" studies. As to these subjects, insofar as such testimony did not extend so far as to opine on the "meaningfulness" of certain information (see above), and does not provide an expert veneer on issues of fact, and subject to objection if the testimony extended beyond what is apparent from the face of the description, the Government does not oppose expert testimony on those subjects. In particular, the relevant issue is Mr. Martoma's understanding of the science and the views of those who communicated with him about the science. To the extent the defendant intends to use an expert to opine on the likelihood of success of bapineuzumab based on "objective" analysis prior to the drug trial announcement, the Government would oppose absent a showing that such analysis was provided to Martoma.

### VI.   Conclusion

For all the aforementioned reasons, the Government respectfully requests that the Court preclude the defense from calling Prof. Gompers as an expert witness. In the alternative, the Government requests that the Court compel more fulsome disclosures and preclude Dr. Wisniewski and Prof. Gompers from testifying about improper subjects.

Respectfully Submitted,

PREET BHARARA
United States Attorney

By:   _____/s/_____
Arlo Devlin-Brown/ Eugene Ingoglia
Assistant United States Attorneys
(212) 637-2506/1113

cc:   Richard Strassberg, Esq. (via electronic mail)

---

[5] Specifically, the defense intends to offer Dr. Wisniewski's opinions that "there was no meaningful difference between" the results disclosed on June 17, 2008, and the results disclosed in the July 17, 2008, draft presentation, and between "the results disclosed on June 17, 2008, and the results disclosed in the July 29, 2008, final presentation," and "there was no meaningful information about the efficacy of bapi disclosed in th[e] meetings [of the SMC for the Phase II clinical trial of bapi]."