USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/28/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MATHEW MARTOMA,

Defendant.

**ORDER**

12 Cr. 973 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this insider trading case, Defendant Mathew Martoma is charged with
conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and with two counts of
securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5 and
240.10b5-2, and 18 U.S.C. § 2. (Superseding Indictment (Dkt. No. 61)) Trial began on January
7, 2014.

The Government alleges, inter alia, that between 2006 and July 2008, Martoma
caused his employer, S.A.C. Capital Advisors, L.P. ("SAC"), to trade on the basis of material
non-public information. The non-public information was allegedly supplied to Martoma by two
doctors – Sidney Gilman and Joel Ross – who were participants in a clinical trial of
bapineuzumab, a drug that was thought to be of possible use in treating Alzheimer's disease.
Bapineuzumab was being developed by Wyeth and Elan Corporation, plc ("Elan"), and the
alleged insider trading involves the shares of these companies. (Id.) Martoma allegedly
received and traded upon information regarding the final results of the clinical trial before these
results were announced at the International Conference on Alzheimer's Disease (the "ICAD
conference") on July 29, 2008. (Id.)

Shortly before trial – on December 27, 2013 – Martoma notified the Government that he intended to offer expert testimony from, inter alia, Paul A. Gompers – a professor at the Harvard Business School – and Dr. Thomas Wisniewski, a professor of neurology at New York University School of Medicine.  (Jan. 4, 2014 Govt. Br. (Dkt. No. 178) at Ex. 1; see also Jan. 6, 2014 Def. Br. (Dkt. No. 189), Exs. A, B)

The Government moved in limine to exclude portions of each expert's testimony. (Jan. 4, 2014 Govt. Br. (Dkt. No. 178))  Since the motion was filed, the areas of dispute have narrowed significantly, (see Jan. 20, 2014 Govt. Ltr. (Dkt. Nos. 215, 216); Jan. 23, 2014 Def. Ltr. (Dkt. No. 222); Jan. 26, 2014 Govt. Ltr (Dkt. No. 223); Jan. 26, 2014 Def. Ltr. (Dkt. No. 224)), and only two issues now remain.

Martoma argues that he is entitled to offer "alternative explanations for sales of Elan and Wyeth [stock] and to put SAC's sales into context by proffering evidence concerning the then-current state of the market for the relevant securities."  (Jan. 23, 2014 Def. Ltr. (Dkt. No. 222) at 9)  In this regard, Martoma seeks to offer Professor Gompers's opinion that the "market for Elan securities was 'overheated' in June and July 2008."  (Jan. 26, 2014 Def. Ltr. (Dkt. No. 224) at 1)   The defense expects Professor Gompers to testify that "most of the potential value of bapi[neuzumab] as a blockbuster drug was already incorporated into the price of Elan securities[,] [and] [a]s a result, there was little additional upside for Elan securities and considerable downside risk if the market's blockbuster expectations were not met."[1]  (Jan. 23, 2014 Def. Ltr. (Dkt. No. 222) at 5)

---

[1]  The precise contours of Professor Gompers's proposed testimony are not entirely clear. Defendant has not provided the Court with a report from Professor Gompers or a summary of his proposed testimony.

The Government argues that Professor Gompers's proposed testimony regarding the "overheated" nature of Elan securities and the lack of a significant "upside" for the stock in June and July 2008 is irrelevant:

> [W]hether or not Elan stock had captured all of the "upside" of bapineuzumab is a question of fact that itself only is relevant to the extent it goes to the defendant's state of mind at the time. Whether Prof. Gompers now thinks it had captured all of the upside prior to the announcement [of the final results of the Phase II bapineuzumab clinical trial on July 29, 2008], or that people at the time may have thought that it did, is irrelevant.
>
> The issue at trial is what Martoma thought of the Elan and Wyeth stocks, and what information . . . he had [that] informed that opinion. Whether some un-named third-party might or might not have thought that the Elan and Wyeth stocks were overheated, overvalued, or had little upside, is not relevant.

(Jan. 20, 2014 Govt. Ltr. (Dkt. No. 216) at 7)

The second remaining issue concerns the scope of Dr. Wisniewski's testimony. Martoma intends to elicit from Dr. Wisniewski that there is no "meaningful difference" between the description of the bapineuzumab clinical trial results set forth in a June 17, 2008 Elan press release and the final results presented at the ICAD conference. (Jan. 26, 2014 Govt. Ltr. (Dkt. No. 223) at 1, Ex. A) The Government asserts that Dr. Wisniewski's opinion concerning this issue is irrelevant and "beyond the purview of a medical expert." (Id. at 2)

## DISCUSSION

## I.   PROFESSOR GOMPERS'S OPINION THAT ELAN STOCK WAS OVERHEATED IN JUNE AND JULY 2008

Martoma argues that Professor Gompers's opinion that the market for Elan stock was "overheated" is relevant (1) as "circumstantial evidence of Mr. Martoma's state of mind in June and July 2008," and (2) "[to] support[ ] Mr. Martoma's defense that there was no material, non-public information about the Phase II bapi trial results disclosed at ICAD." (Jan. 26, 2014 Def. Ltr. (Dkt. No. 224) at 1) Both arguments are without merit.

A.    **State of Mind**

The Court ruled during trial that the Defendant would be permitted to introduce materials that he reviewed in 2008 that shed light on his state of mind concerning the Elan and Wyeth positions that were sold at the end of July 2008. (Trial Tr. 1989-94)  During the Government's direct case, the Defendant – in cross-examining a Government witness – introduced into evidence numerous analyst reports – reviewed by Martoma and/or his research analyst in July 2008 – discussing the merits of Elan stock.  Many of these reports assert that Elan stock is overpriced and recommend that it be sold.  (See Trial Tr. 2147-51, 2155-59; DX 9 (July 11, 2008 Brean Murray analyst report predicting drop in price of Elan stock, finding the stock overvalued, and containing "sell" recommendation); DX 1114 (July 17, 2008 Canaccord Adams analyst report asserting that market had overvalued Elan stock); DX 1117 (July 8, 2008 Cowen analyst report stating that Elan stock had "limited near-term upside potential"); DX 1127A (July 11, 2008 Piper Jaffray analyst report asserting that Elan stock is inflated and recommending "sell"); DX-1144A (July 21, 2008 Cowen analyst report stating that Elan stock had "little near-term upside potential"; see also DX 1143A (May 15, 2008 Caris & Company analyst report stating that any "major success [in bapineuzumab] is priced in [Elan stock]").  In sum, the record already contains numerous analyst reports – purportedly reviewed by Martoma and/or his analyst in July 2008 – addressing the proper valuation of Elan stock in July 2008.  Undoubtedly, more evidence of this sort as to both Elan and Wyeth stock will be admitted during the defense case.

The question remains, however, whether Professor Gompers's opinion – in January 2014 – that Elan and Wyeth stock was "overheated" or inflated in July 2008 is probative of Martoma's state of mind.  I conclude that it is not.  Professor Gompers's post hoc conclusion that the market for Elan and Wyeth stock was in fact "overheated" in July 2008 is not probative

of Martoma's state of mind because it would not assist the jury in understanding what Martoma was thinking at that time.  Professor Gompers would tell the jury why investors should have regarded Elan and Wyeth stock as overheated in July 2008, but that testimony would not assist the jury in determining whether Martoma himself believed that the stock was overheated at that time.

Evidence that Martoma conducted an analysis in July 2008 similar to what Professor Gompers has done in 2014, or that Martoma was reading analyses in 2008 similar to what Professor Gompers has done in 2014, would be probative of Martoma's state of mind.  But Gompers's opinion in 2014 standing alone tells us nothing about Martoma's state of mind in July 2008.[2]  In addition to not being probative of Martoma's state of mind, Professor Gompers's

---

[2]  None of the cases cited by Defendant (Jan. 26, 2014 Def. Ltr. (Dkt. No. 224) at 2) are to the contrary.  In S.E.C. v. Snyder, Civ. Action No. H-03-04658, 2006 WL 1806164, at *3-7 (S.D. Tex. June 29, 2006) – the only insider trading case cited by Defendant – the court permitted the Government to offer expert testimony from a certified accountant and fraud examiner that – based upon generally accepted accounting principles and "specific information that Defendant had" – it would have been obvious to the defendant that his filings with the Securities and Exchange Commission were materially misleading.  Such testimony went directly to the defendant's state of mind because it was based upon the same materials that the defendant had before him (many of which he had created) in preparing the SEC filings.  Id.  Here, Professor Gompers proposes to rely on materials that in large part were never seen by Martoma.  (See Jan. 23, 2014 Def. Ltr. (Dkt. No. 222) at 5, 9)

Serricchio v. Wachovia Sec. LLC, 658 F.3d 169, 173, 185 (2d Cir. 2011), involves the question of whether a member of the armed forces was "constructively discharged" after returning from active duty, in violation of the Uniformed Services Employment and Reemployment Rights Act.  In affirming the denial of defendant's motion for judgment as a matter of law, the court held that there was ample circumstantial evidence of the employer's wrongful intent to deny opportunities to the plaintiff, including testimony from the employer's "expert on its [employee] leave policy" that the employer maintained a generous leave policy.  Id. at 186-87.  It is unclear whether this witness actually offered "expert" testimony at trial.  In any event, the employer in Serricchio was aware of its own leave policies.  This case does not support Defendant's argument that a post hoc analysis conducted in 2014 – based in large part on material Martoma never saw – can shed light on Martoma's state of mind in July 2008.

In Gill v. Arab Bank, PLC, 893 F. Supp. 2d 523, 537-58 (E.D.N.Y. 2012), the court held that

proposed testimony on this point presents a significant risk of confusing the jury. Were

Gompers's testimony on this point to be admitted, the jury might well conclude that what matters

here is whether – in January 2014 – it can be determined that the price of Elan and Wyeth stock

was inflated in July 2008. The issue as to state of mind, however, is whether Martoma caused

Elan and Wyeth stock to be sold based on the information he allegedly obtained from Dr. Gilman

or Dr. Ross, or whether he sold it based on his own research, on others' analyses that the stock

was overpriced, or for some other reason.

Because Gompers's opinion that Elan stock was overheated in July 2008 is not

probative of Martoma's state of mind and, in any event, is more prejudicial than probative under

Fed. R. Evid. 403, he will not be permitted to offer this opinion at trial.

### B.    Materiality

Defendant contends that Professor Gompers's testimony is also relevant to the

issue of materiality. (Jan. 26, 2014 Def. Ltr. (Dkt. No. 224) at 2-3)

---

expert testimony concerning Palestinian money-laundering regulations was admissible on the
issue of whether the Bank "recklessly, knowingly, or intentionally provided material support to
[the terrorist group] Hamas." The court found that the Bank was aware of the regulations –
because they were "the regulations under which the Bank operated" – and accordingly the
regulations were relevant to show the Bank's state of mind. Id. at 538. This case provides no
support for Martoma's position.

United States v. Duncan, 42 F.3d 97, 101-03 (2d Cir. 1994), stands for the proposition that an
expert witness may not offer a legal conclusion. This principle is not in dispute here.

The remaining cases cited by Defendant stand merely for the general proposition that
circumstantial evidence provided by an expert can, in certain circumstances, bear on a
defendant's state of mind. For example, in United States v. Thao Bee Yang, No. 07-CR-324,
2008 WL 4560633, at *1 (E.D. Wis. Oct. 8, 2008), an odometer-tampering case, the Government
was permitted to introduce expert evidence that odometer failure rates are low to rebut the
defendant's explanation that he re-set odometers because they frequently malfunction. Similarly,
in Lewis v. Booz-Allen & Hamilton, Inc., 150 F. Supp. 2d 81, 95 (D.D.C. 2001), an employment
discrimination case, the court held that an expert's statistical evidence of the employer's hiring
practices constituted circumstantial evidence of the employer's discriminatory intent. Neither
case has any bearing on the issues presented here.

Expert testimony concerning materiality is often introduced in cases involving allegations that a company misrepresented or wrongfully withheld information from investors. See United States v. Schiff, 602 F.3d 152, 156, 171-72 (3d Cir. 2010); Unger v. Amedisys Inc., 401 F.3d 316, 319, 324-25 (5th Cir. 2005); United States v. Bilzerian, 926 F.2d 1285, 1296-98 (2d Cir. 1991) (noting that stock movements could be relevant in determining whether a company's misrepresentations were material). In this context, "[m]ateriality centers about the significance of the misstatement or omission of the fact under consideration to a reasonable investor's judgment in deciding to buy or sell. . . . The determination of materiality is to be made upon all the facts as of the time of the transaction and not upon a 20-20 hindsight view long after the event." Spielman v. Gen. Host Corp., 402 F. Supp. 190, 192-94 (S.D.N.Y. 1975), aff'd, 538 F.2d 39 (2d Cir. 1976).

Expert testimony concerning materiality often takes the form of an "event study," which "'refers to a regression analysis that examines the effect of an event on some dependent variable, such as a corporation's stock price.'" In re Xerox Corp. Sec. Litig., Civ. Action No. 3:99CV02374 (AWT), 2009 WL 8556135, at *4 (D. Conn. Apr. 22, 2009) (quoting RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94 Civ. 5587 PKL RLE, 2000 WL 310352, at *6 (S.D.N.Y. Mar. 24, 2000), aff'd, No. 94 Civ. 5587 PKL RLE, 2000 WL 420548 (S.D.N.Y. Apr. 18, 2000)).

The theory behind the admission of such expert testimony is "that in an open and developed securities market like the New York Stock Exchange, the price of a company's stock is determined by all available material information regarding the company and its business. In such an efficient market, 'information important to reasonable investors . . . is immediately incorporated into the stock price.'" Oran v. Stafford, 226 F.3d 275, 282 (3d Cir. 2000) (quoting

7

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1425 (3d Cir. 1997)) (alteration in

original).

> As a result, when a stock is traded in an efficient market, the materiality of
> disclosed information may be measured post hoc by looking to the movement, in
> the period immediately following disclosure, of the price of the firm's stock.
> Because in an efficient market "the concept of materiality translates into
> information that alters the price of the firm's stock," if a company's disclosure of
> information has no effect on stock prices, "it follows that the information
> disclosed . . . was immaterial. . . ."

Id. (quoting Burlington, 114 F.3d at 1425).  Similarly, in the context of an insider trading

case, "indication[s] of the [materiality or] lack of materiality may be found in the reaction

of those who were exposed to the inside information."  Elkind v. Liggett & Myers, Inc.,

635 F.2d 156, 166 (2d Cir. 1980).

           Event studies are used to determine whether "the price changes at issue in [a] case

were [related or] unrelated to the representations in dispute" by eliminating other factors, such as

"the effects on stock price of market and industry information."  In re N. Telecom Ltd. Sec.

Litig., 116 F. Supp. 2d 446, 460 (S.D.N.Y. 2000); see also United States v. Ferguson, 676 F.3d

260, 275 n.11 (2d Cir. 2011) (noting that expert testimony regarding the allegedly fraudulent

transaction's effect on stock price would "reinforce[ ] [the probative value of the materiality

evidence] because confounding factors could be excluded").  In other words, event studies seek

to "disentangle[ ] . . . the stock price movement (if any) attributable to the release of new,

allegation-related information from the movement attributable to the release of other, non-

allegation-related news."  In re Xerox Corp. Sec. Litig., 2009 WL 8556135, at *4; cf. In re

Vivendi Universal, S.A. Sec. Litig., 634 F. Supp. 2d 352, 356-57 (S.D.N.Y. 2009) (noting that

event study methodology was used "'to disentangle the effects of company-specific information

from market and industry information' by associating 'day-to-day information releases from the

company with the daily residual returns on company stock'") (internal citation omitted).  Event studies, therefore, focus on individual events and analyze whether those events can be linked in a statistically significant way to variations in stock price.  See In re Xerox Corp. Sec. Litig., 2009 WL 8556135, at * 4.

Here, the materiality issue turns on whether the information Martoma allegedly received from Dr. Gilman and Dr. Ross in July 2008 would have been important to a reasonable investor.  To show that it would have been, the Government is entitled to offer evidence of the significant decline in the price of Elan and Wyeth stock when the information allegedly provided by Dr. Gilman and Dr. Ross to Martoma was publicly disclosed at the ICAD conference. Defendant, in turn, is entitled to attempt to refute that argument by demonstrating that there is no correlation between the decline in share price and the public disclosure at the ICAD conference.

Professor Gompers's proposed testimony that Elan stock was "overheated" in June and July 2008 does not address this issue, however.  While Professor Gompers may be of the opinion that Elan "stock had only one way to go [in June and July 2008]" (Jan. 26, 2014 Def. Ltr. (Dkt. No. 224) at 2), the materiality issue here is more narrow than that.  The focus of the materiality inquiry is on the effect of an event – the public disclosure of the Phase II bapineuzumab clinical trial results at the ICAD conference – on Elan stock.  Testimony that Elan stock was generally overheated in the two months prior to the public disclosure of the clinical trial results does not make it any more or less likely that the announcement of those results at the ICAD conference triggered the sudden decline in the stock price.  Nor does Professor Gompers's testimony – as proffered by Defendant – attempt to connect the sudden decline in stock price to any other particular event.  Cf. Liberty Media Corp. v. Vivendi Universal, S.A., 923 F. Supp. 2d

511, 518-19 (S.D.N.Y. 2013) (discussing expert's event study that sought to determine whether specific events were linked in statistically significant ways to movements in stock prices).

In sum, Professor Gompers's proposed testimony that Elan stock was overheated in June and July 2008 is not probative on the central question of materiality – whether the alleged inside information provided to Martoma would have been important to a reasonable investor at the time. See Bilzerian, 926 F.2d at 1298. Accordingly, Professor Gompers will not be permitted to offer this opinion at trial. [3]

---

[3] The cases Defendant cites in support of his materiality argument, (Jan. 26, 2014 Def. Ltr. (Dkt. No. 224) at 3), are not persuasive. United States v. Levis, 488 F. App'x 481, 483-84 (2d Cir. 2012) is an unpublished decision that carries no precedential value. In any event, the nature of the expert testimony at issue in that case is not comparable to that at issue here. In Levis, the defendant – the senior executive vice president and treasurer of a financial institution – had represented to investors that certain investment risks were capped. Id. at 483. However, rather than using contractual caps – which would have offered the greatest protection against risk – the company used hedges. Id. The defendant sought to introduce evidence that transactions involving hedging afforded the same assurance for investment as contractual caps, or at least he reasonably thought so. Id. The Second Circuit held that the district court abused its discretion in precluding the defendant from raising this defense, because evidence that the hedges functioned as a cap was relevant to the issue of the materiality of the defendant's misrepresentations. Id. at 484-84. The court found that the defendant should have been permitted to present evidence "including lay and expert testimony involving the existence of hedges and their effectiveness." Id. at 484. Unlike Levis – where the proposed expert testimony went directly to the materiality of the defendant's alleged misrepresentations – Professor Gompers's proposed testimony does not address the materiality of the alleged inside information, but instead addresses the proper valuation of a specific stock over a two-month period more than five years ago.

United States v. Nacchio, 519 F.3d 1140, 1155 (10th Cir. 2008), vacated in part on reh'g en banc, 555 F.3d 1234 (10th Cir. 2009) (en banc), likewise does not support Defendant's materiality argument. Defendant cites this case for the undisputed proposition that, in certain circumstances, expert testimony has been admitted on the issue of materiality. In any event, the panel's holding concerning expert testimony was vacated on rehearing, because the en banc panel found that the Daubert requirements of reliability were not satisfied. Nacchio, 555 F.3d at 1257-59 (10th Cir. 2009) (en banc).

II.    **DR. WISNIEWSKI'S OPINION THAT THERE IS NO MEANINGFUL
       DIFFERENCE BETWEEN THE JUNE 17, 2008 ELAN PRESS RELEASE AND
       THE CLINICAL TRIAL DATA PRESENTED AT THE ICAD CONFERENCE**

        Martoma seeks to introduce testimony from Dr. Thomas Wisniewski that there is

no "meaningful difference" between the information disclosed in the June 17, 2008 Elan press

release and the clinical trial data disclosed at the July 29, 2008 ICAD presentation. (Jan. 26,

2014 Govt. Ltr. (Dkt. No. 223); Jan. 23, 2014 Def. Ltr. (Dkt. No. 222) at 17-18) The

Government argues that Dr. Wisniewski's testimony on this point is irrelevant because "the real

question is whether the information [disclosed] was meaningful to investors." (Jan. 20, 2014

Govt. Ltr. (Dkt. No. 216) at 10; see Jan. 26, 2014 Govt. Ltr. (Dkt. No. 223) at 2) The

Government further asserts that this type of analysis is "beyond the purview of a medical

expert." (Jan. 26, 2014 Govt. Ltr. (Dkt. No. 223) at 2)

        It is true that the issues in this case do not turn on whether the medical community

viewed the data disclosed at the ICAD conference as "meaningfully different" from the

information disclosed in the June 17, 2008 Elan press release. There is ample evidence before

the jury, however, that numerous members of the investor community – including Martoma –

were consulting members of the medical community about aspects of the bapineuzumab Phase II

clinical trial. Accordingly, the views of the medical community about this clinical trial are not

irrelevant in this case.

        Moreover, during their direct examinations, Dr. Gilman and Dr. Ross each

identified differences between the June 17, 2008 Elan press release and the final results disclosed

at the ICAD conference. (See Trial Tr. 680-82, 706-707, 1415-18) The clear inference from

their testimony is that the press release did not disclose important data that was disclosed at the

ICAD conference. While the Government argues that it did not elicit testimony from Dr. Gilman

11

and Dr. Ross as to the significance of the differences (Jan. 26, 2014 Govt. Ltr. (Dkt. No. 223) at

2), it did not have to do so in order to make the point.  The entire import of the Government's

line of questioning in this regard is that the differences between the information disclosed in the

press release and at the ICAD conference are significant.  In this context, it is only fair for the

defense to have an opportunity to demonstrate – through its own medical expert – that the

differences the Government suggests are significant are actually not significant at all.[4]

Accordingly, the Government's motion to exclude Dr. Wisniewski's testimony on this point will

be denied.

## CONCLUSION

The Government's motion in limine to exclude Professor Gompers's testimony

that Elan stock was overheated in June and July 2008 is granted.  The Government's motion to

exclude Dr. Wisniewski's opinion that there is no meaningful difference between the information

disclosed in the June 17, 2008 Elan press release and the final ICAD presentation is denied.

All issues with respect to the Government's motion in limine having now been

resolved, the Clerk of the Court is directed to terminate the motion and related motions (Dkt.

Nos. 178, 215, 216, 219, 224).

Dated: New York, New York
      January 28, 2014

                         SO ORDERED.

                         Paul G. Gardephe
                         United States District Judge

---

[4] To the extent that the Government believes that the jury may become confused as to whether it should look to the medical community or the investor community in determining materiality, it may seek a limiting instruction or submit an appropriate request to charge.