USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 31, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MATHEW MARTOMA,

Defendant.

12 Cr. 973 (PGG)

**JURY CHARGE**

February 4, 2014

## TABLE OF CONTENTS

A.  **GENERAL INSTRUCTIONS** ................................................................................. 1

    1.  Introduction ............................................................................................... 1

    2.  Role of the Court ....................................................................................... 1

    3.  Role of the Jury ......................................................................................... 2

    4.  Role of Counsel ......................................................................................... 2

    5.  Sympathy or Bias ...................................................................................... 2

    6.  All Persons Equal Before the Law ............................................................ 3

    7.  Presumption of Innocence; The Government's Burden of Proof; and the Reasonable Doubt Standard ..................................................................... 4

    8.  What Is and Is Not Evidence ..................................................................... 5

    9.  Direct and Circumstantial Evidence .......................................................... 7

    10. Rulings on Evidence and Objections ......................................................... 8

    11. Specific Investigative Techniques ............................................................. 9

    12. Witness Credibility .................................................................................... 9

    13. Prior Inconsistent Statements .................................................................. 10

    14. Bias of Witnesses .................................................................................... 11

    15. Cooperating Witnesses ............................................................................ 12

    16. Law Enforcement Witnesses ................................................................... 14

    17. Opinion Testimony .................................................................................. 14

    18. Improper Considerations:  Race, Religion, National Origin, Sex, or Age ............... 15

    19. Persons Not on Trial ................................................................................ 15

    20. Uncalled Witnesses ................................................................................. 15

21. Defendant's Right Not to Testify ................................................................. 16

22. Preparation of Witnesses ........................................................................... 16

23. Variance in Dates ...................................................................................... 17

24. Stipulations .................................................................................................. 17

B.   INSTRUCTIONS AS TO SPECIFIC CHARGES ........................................ 17

1.   Meaning of the Indictment ......................................................................... 17

2.   The Indictment ............................................................................................. 18

3.   Counts Two & Three:  Securities Fraud .................................................... 22

   a.   Securities Fraud – General Instructions ............................................. 22

   b.   Securities Fraud – Elements of Securities Fraud ............................... 24

   c.   First Element – Existence of a Fraudulent Scheme ........................... 24

      i.   First Element – Introduction ......................................................... 25

      ii.   First Element – Part One:  Existence of a Fiduciary Relationship ............. 28

      iii.   First Element – Part Two:  Breach of Fiduciary Relationship/Non-Public
             Information/Materiality ................................................................. 29

      iv.   First Element – Part Three: Benefit to the Tipper ....................... 31

      v.   First Element – Part Four:  Knowledge of Breach ....................... 32

      vi.   First Element – Part Five:  Use of Inside Information ................. 32

   d.   Second Element – Knowledge, Intent, & Willfulness ........................ 33

   e.   Third Element – Use of Instrumentality of Interstate Commerce ...................... 37

   f.   Venue ................................................................................................... 38

   g.   Willfully Causing a Crime .................................................................. 39

4.   Count One: Conspiracy to Commit Securities Fraud ............................... 40

a.   Introduction ................................................................................... 40

b.   Conspiracy to Commit Securities Fraud – Elements of Conspiracy ................ 40

c.   First Element – Existence of a Conspiracy ........................................ 41

    i.   First Element – Part One:  The Agreement ................................. 41

    ii.  First Element – Part Two:  Object of the Conspiracy ................. 43

d.   Second Element – Membership in the Conspiracy .......................... 43

e.   Conspiracy to Commit Securities Fraud: Third Element – Overt Act .............. 46

f.   Time of Conspiracy ...................................................................... 47

5.  Proof of Profit Not Necessary ................................................................ 47

6.  Venue ........................................................................................................ 47

7.  Internal Compliance Policies ................................................................. 48

**C.   FINAL INSTRUCTIONS CONCERNING PROCEDURE** .......................... 48

1.  Right to See Exhibits and Hear Testimony; Communications with the Court .......... 48

2.  Duty to Deliberate/Unanimous Verdict ................................................ 49

3.  Juror Notes ............................................................................................. 50

4.  Verdict .................................................................................................... 51

5.  Duties of Foreperson ............................................................................. 51

6.  Return of Verdict ................................................................................... 51

8.  Conclusion .............................................................................................. 52

A.    **GENERAL INSTRUCTIONS**

1.    Introduction

I will now instruct you as to the law that governs this case. You have been handed a copy of the instructions I will read. You should feel free to read along with me or to just listen to me. You will be able to take your copy of the instructions into the jury room, and you will be able to consult these instructions during your deliberations.

There are three parts to these instructions. First, I'll give you general instructions about your role, and about how you are to decide the facts of the case, i.e., what happened. Second, I'll give you instructions as to the specific charges in this case. Third, I'll give you some final instructions about procedure.

It is important that you listen carefully. I am reading these instructions from a prepared text because the law is made up of words that are very carefully chosen. This is not a time to ad lib. When I tell you what the law is, it's critical that I use exactly the right words.

2.    Role of the Court

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them. With respect to legal matters, you must take the law as I give it to you. If any lawyer has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction. You must not substitute your own notions or opinions of what the law is or what it ought to be.

3.     Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You decide what happened.  It is your sworn duty to determine the facts based solely on the evidence received in this trial.  Any opinion I might have regarding the facts is of absolutely no consequence.

4.     Role of Counsel

The personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed an opinion of any kind as to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, that should not enter into your deliberations.

The lawyers and I have had sidebar conferences and other conferences out of your hearing.  These conferences involved procedural and evidentiary matters, and should not enter into your deliberations at all.

A lawyer has a duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible.  It is my job to rule on those objections.  Why an objection was made or how I ruled on it is not your concern.  You should not draw any inference simply from the fact that a lawyer objects to a question, or that I sustained or overruled an objection.

5.     Sympathy or Bias

You must evaluate the evidence calmly and objectively, without prejudice or sympathy.  You must be completely fair and impartial.  Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence.  Our system of justice cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.  Under your oath as jurors you are not to be swayed by sympathy or prejudice.  You are to be guided solely by the

2

evidence in this case, and the crucial, bottom-line question that you must ask yourselves as you sift through the evidence is:  has the Government proven each element of the charges against Mr. Martoma beyond a reasonable doubt?

It is for you alone to decide whether the Government has proven that Mr. Martoma is guilty of the crimes charged, and you are to do so solely on the basis of the evidence, and subject to the law as I explain it to you.  If you let fear or prejudice, or bias or sympathy, interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to Mr. Martoma's guilt, you should not hesitate for any reason to reach a verdict of not guilty.  But on the other hand, if you should find that the Government has met its burden of proving beyond a reasonable doubt that Mr. Martoma is guilty, you should not hesitate because of sympathy or any other reason to reach a verdict of guilty.

The question of possible punishment of Mr. Martoma must not enter into or influence your deliberations in any way.  The duty of imposing a sentence rests exclusively upon me.  Your function is to weigh the evidence in the case and to determine whether or not Mr. Martoma has been proven guilty beyond a reasonable doubt, solely on the basis of such evidence or lack of evidence.  Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed on Mr. Martoma, if he is convicted, to influence your verdict in any way, or, in any sense, to enter into your deliberations.  Similarly, you cannot permit any feelings you might have about the nature of the crimes charged to interfere with your decision-making process.  Your verdict must be based exclusively upon the evidence or the lack of evidence in this case.

6.    All Persons Equal Before the Law

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. The fact that the Government is a party and that the prosecution is

brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party. By the same token, you must give it no less consideration.

In reaching your decision as to whether the Government sustained its burden of proof, you may not consider any personal feelings you may have about Mr. Martoma's race, religion, ethnicity, national origin, sex or age. All persons are entitled to the same presumption of innocence.

7.    Presumption of Innocence; The Government's Burden
of Proof; and the Reasonable Doubt Standard

Mr. Martoma has pleaded not guilty. In doing so, he has denied the charges in the Indictment. As a result, the Government has the burden of proving the charges against him beyond a reasonable doubt. This burden of proof never shifts to a defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of testifying, of calling any witness, or of locating or producing any evidence.

A defendant does not have to prove his innocence. To the contrary, Mr. Martoma is presumed innocent until such time, if ever, that you as a jury are satisfied that the Government has proven him guilty beyond a reasonable doubt.

Mr. Martoma began the trial here with a clean slate. This presumption of innocence alone is sufficient to acquit a defendant unless you as jurors are unanimously convinced beyond a reasonable doubt of his guilt, after a careful and impartial consideration of all of the evidence. If the Government fails to sustain its burden, you must find Mr. Martoma not guilty.

I will now address reasonable doubt. What is reasonable doubt? It is a doubt founded in reason, as opposed to a doubt based on speculation, emotion, sympathy, or prejudice. It is a doubt that arises out of the evidence in the case, or the lack of evidence. It is doubt that a

4

reasonable person has after carefully weighing all the evidence. Reasonable doubt is a doubt that arises from your own judgment, life experience, and common sense when applied to the evidence.

If, after a fair and impartial consideration of all the evidence, you are not satisfied of the guilt of Mr. Martoma – that is, if you do not have an abiding conviction of his guilt – you must find him not guilty. In other words, if you have such a doubt as would cause you, as a prudent person, to hesitate before acting in matters of importance to yourself, then you have a reasonable doubt, and it is your duty to find Mr. Martoma not guilty.

On the other hand, if after a fair and impartial consideration of all the evidence you do have an abiding conviction of Mr. Martoma's guilt – in other words, a conviction you would be willing to act upon without hesitation in important matters in your own life – then you have no reasonable doubt, and it is your duty to find Mr. Martoma guilty.

Reasonable doubt is not whim or speculation. It is not an excuse to avoid the performance of an unpleasant duty. Reasonable doubt also does not mean beyond all possible doubt. It is practically impossible for a person to be absolutely and completely convinced of any disputed fact that by its nature is not susceptible to mathematical certainty. As a result, the law in a criminal case is that it is sufficient for the Government to establish the guilt of a defendant beyond a reasonable doubt, not beyond all possible doubt.

8.    <u>What Is and Is Not Evidence</u>

In determining the facts, you must rely on your own recollection of the evidence. The evidence in this case is the testimony of the witnesses, the exhibits received in evidence, and the stipulations or agreements as to certain facts entered into by the parties. When I sustained an objection to a question, the answer that the witness may have given in response to that question is not part of the evidence in this case and may not be considered by you. You are likewise not to

consider a lawyer's questions as evidence.  It is the witnesses' answers that are evidence, not the questions.

When I ordered that testimony be stricken from the record, you may not consider that testimony during your deliberations.

Also, if any testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the purpose I indicated.

The only exhibits that are evidence in this case are those that were received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

Witnesses sometimes have a failure of recollection when testifying.  In such circumstances, it is proper for the lawyer questioning the witness to attempt to refresh his or her recollection.  As I told you during the trial, anything can be used to refresh a witness's recollection. Where a document is used, that document does not have to have been prepared by the witness, made contemporaneously with the events described in it, or be admissible.  Where a witness states that a writing has refreshed the witness's memory, then the witness may proceed to testify as to the matters on which his or her memory was refreshed.  That testimony is evidence.  However, where a witness states that his recollection is not refreshed, any statements a lawyer may have made about the document used in the attempt to refresh the witness's recollection are not evidence.

As I told you at the start of this case, arguments by lawyers are likewise not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their closing arguments is intended to help you understand the evidence to reach your verdict.  However, where your recollection of the evidence differs from what a lawyer has argued, it is your recollection of the evidence that controls.  You must determine the facts based

solely on the evidence received in this trial. In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers said in opening statements, in closing arguments, in objections, or in questions is not evidence.

I remind you also that nothing I have said during the trial or will say during these instructions is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

9.    Direct and Circumstantial Evidence

Generally, there are two types of evidence that you may consider in reaching your verdict: direct evidence and circumstantial evidence.

Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses – something seen, felt, touched, or heard. For example, if a witness testified that when he left his house this morning, it was raining, that would be direct evidence about the weather. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person entered with a wet raincoat. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of facts that I have asked you to assume, you could conclude that it had been raining.

7

That is all there is to circumstantial evidence. On the basis of reason, life experience, and common sense, you infer from one established fact the existence or non-existence of some other fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven. Many material facts – such as what a person was thinking or intending – are rarely easily proven by direct evidence. Often such facts are established by circumstantial evidence.

Circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all the evidence in the case, circumstantial and direct.

There are times when different inferences may be drawn from the evidence. The Government may ask you to draw one set of inferences, while the Defendant asks you to draw another. It is for you, and for you alone, to decide what inferences you will draw.

What is important here is the quality and persuasiveness of the evidence relied on by a party, and not the number of witnesses, the number or variety of the exhibits that party introduced, or the length of time that party spent on a particular subject.

10.     Rulings on Evidence and Objections

You should draw no inference or conclusion for or against either side based on a lawyer's objection or my ruling on the objection. A lawyer has an obligation to object when he or she believes that evidence is not properly admitted under the rules of evidence.

You should likewise draw no inference or conclusion of any kind, whether favorable or unfavorable, with respect to any witness or party in the case, by reason of any question I posed to a witness.

11.    Specific Investigative Techniques

There is no legal requirement that the Government prove its case through any particular means. You are not to speculate as to why the Government used the techniques it did, or why it did not use other techniques. Law enforcement techniques are not your concern. Your concern is to determine whether or not, based on the evidence or lack of evidence, Mr. Martoma's guilt has been proven beyond a reasonable doubt.

12.    Witness Credibility

You should evaluate the credibility, believability, and reliability of the witnesses by using your common sense. Common sense is your greatest asset as a juror. Ask yourself whether the witness appeared honest, open, candid, and reliable. Did the witness appear evasive or as though he or she was trying to hide something? How responsive was the witness to the questions asked on direct examination in comparison to the questions posed on cross-examination? You should also consider the witness's ability to recollect past events.

If you find that any witness has lied under oath at this trial, you should view the testimony of that witness cautiously and weigh it with great care. It is, however, for you to decide how much of the witness's testimony, if any, you wish to believe. Few people recall every detail of every event precisely the same way. A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects. It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all, or to accept some and reject the balance of, that witness's testimony.

9

In sum, it is up to you to decide whether the testimony of a witness is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, to give to that witness's testimony.

In evaluating the testimony of any witness, you may consider, among other things:

- the witness's intelligence;

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case.

The Government is not required to prove the essential elements of the offense by any particular number of witnesses.  The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of the essential elements of the offense you are considering if you believe that the witness has truthfully and accurately related what he or she has told you.

13.     Prior Inconsistent Statements

You have heard argument that, at some earlier time, witnesses said or did something that is inconsistent with their trial testimony.

Evidence of prior inconsistent statements was introduced for the purpose of helping you decide whether to believe a witness's testimony.  If you find that a witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

10

In making this determination, you may consider whether the witness intentionally made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with an insignificant detail; whether the witness had an explanation for the inconsistency; and whether that explanation accords with your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all, part of, or none of the witness's testimony.

14.    Bias of Witnesses

In deciding whether to believe a witness, you should consider whether there is any evidence that the witness is biased in favor or against one side or the other. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party. You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case. It is your duty to consider whether any witness has permitted bias or interest to color his or her testimony. If you find that a witness is biased, you should view his or her testimony with caution, weigh it with great care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in the outcome of this case does not mean he or she has not told the truth. It is for you to decide from your observations, and applying your common sense, life experience, and all the other considerations I have mentioned, whether the possible interest of a witness has – intentionally or otherwise – colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much

11

of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

15.    <u>Cooperating Witnesses</u>

Dr. Sidney Gilman and Dr. Joel Ross were witnesses in this case.  Both testified that they entered into non-prosecution agreements with the Government.  In exchange for the Government's agreement not to prosecute them, Dr. Gilman and Dr. Ross agreed to cooperate with the Government, including by testifying at this trial.

You are not to draw any conclusions or inferences of any kind about the guilt of Mr. Martoma merely from the fact that Dr. Gilman and Dr. Ross entered into non-prosecution agreements with the Government.  Dr. Gilman and Dr. Ross made a personal decision to cooperate with the Government based on their own evaluation of the facts and circumstances.  Their decision to cooperate with the Government is not evidence that Mr. Martoma committed a crime.  A defendant may not be found guilty simply based on his association with individuals who decided to enter into non-prosecution agreements with the Government.

It is not unusual for the Government to rely on the testimony of witnesses who admit to participating in criminal activity.  The Government must take its witnesses as it finds them, and frequently must use such testimony in criminal prosecutions because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.  For this reason, the law allows the use of cooperating witness testimony, and you may consider the testimony of Dr. Gilman and Dr. Ross in determining whether the Government has met its burden of proving Mr. Martoma's guilt beyond a reasonable doubt.

However, the testimony of cooperating witnesses such as Dr. Gilman and Dr. Ross must be scrutinized with special care and caution.  The fact that a witness states that he has

participated in criminal conduct, and has entered into a non-prosecution agreement with the

Government, may be considered by you as bearing on his credibility. It does not follow, of course,

that simply because a person has admitted participating in a crime, and has entered into a non-

prosecution agreement with the Government, that he is incapable of giving a truthful account of

what happened. Moreover, it is no concern of yours why the Government made an agreement with

a witness. Your sole concern is whether a witness has given truthful testimony.

The testimony of cooperating witnesses should be given such weight as it deserves in

light of all the facts and circumstances before you, taking into account the witness's candor, the

strength and accuracy of his recollection, his background, his demeanor, and the extent to which his

testimony is or is not corroborated by other evidence in the case. As with other witnesses, you may

consider whether the cooperating witnesses have an interest in the outcome of this case and, if so,

whether that interest has affected their testimony.

In this regard, you should bear in mind that a witness who has avoided prosecution

by entering into a cooperation agreement with the Government has an interest and motives different

from those of any other witness in this case. In evaluating the testimony of such a witness, you

should ask yourself whether the witness would benefit more by lying, or by telling the truth. Was

the witness's testimony influenced in any way by a belief or hope that he would receive favorable

treatment by testifying falsely, or did he believe that his interests would be best served by testifying

truthfully? If you believe that the witness was motivated by hopes of avoiding prosecution, was the

motivation one that would cause him to lie, or was it one that would cause him to tell the truth?

In sum, you should consider all of the evidence in deciding what weight, if any, to

give to the testimony of a cooperating witness. If you find that the testimony of a cooperating

witness was false, you should reject it. However, if – after a cautious and careful examination of

13

the cooperating witness's testimony in light of all the evidence – you conclude that the cooperating witness told the truth, you should accept the testimony as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided on an all-or-nothing basis. Even if you find that a witness testified falsely in one part, you may still accept his testimony in other parts, or you may disregard all of that witness's testimony. That is a determination entirely for you, the jury, to make.[1]

16.    Law Enforcement Witnesses

You have heard testimony from witnesses employed by a law enforcement agency. The fact that a witness is employed by a law enforcement agency does not mean that his or her testimony deserves more or less consideration, or greater or lesser weight, than that of any other witness.

It is up to you to decide, after reviewing all the evidence, what weight to give the testimony of law enforcement witnesses.

17.    Opinion Testimony

I permitted Professor Paul Gompers and Dr. Thomas Wisniewski to express opinions about certain matters that are at issue in this case. These witnesses were permitted to give opinion testimony because they possess specialized knowledge as a result of their education, training, and work experience. In weighing the testimony of these witnesses, you may consider their qualifications, the reasons they gave for their opinions, and the reliability of the information

---

[1] Based on 1 Sand et al., Modern Federal Jury Instructions – Criminal, Instruction No. 7-5 (2008); charge in United States v. Ballesteros Gutierrez, No. 01 Cr. 258 (LAK) (S.D.N.Y. Feb. 27, 2002); and charge in United States v. Projansky, 465 F.2d 123, 136-37 n.25 (2d Cir. 1972). See United States v. Vaughn, 430 F.3d 518, 521-23 (2d Cir. 2005); United States v. Gleason, 616 F.2d 2, 15-16 (2d Cir. 1979); United States v. Cheung Kin Ping, 555 F.2d 1069, 1073-74 (2d Cir. 1977); see also United States v. Swiderski, 539 F.2d 854, 859-60 (2d Cir. 1976).

supporting those opinions, as well as all the factors I have previously mentioned for evaluating witness testimony. You may also consider the compensation they received in connection with this case. To the extent you find the opinion testimony of these witnesses credible and reliable, you may rely on it. To the extent you do not, you need not rely on their testimony. Opinion testimony should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

18.     Improper Considerations:  Race, Religion, National Origin, Sex, or Age

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence. It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the Defendant's race, religion, national origin, sex, or age. Similarly, it would be improper for you to consider any personal feelings you may have about the race, religion, national origin, sex, or age of any witness or anyone else involved in this case. Both sides are entitled to a trial fee of prejudice, and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

19.     Persons Not on Trial

You may not draw any inference, whether favorable or unfavorable, as to either side from the fact that no person other than Mr. Martoma is on trial here. You may not speculate as to the reasons why other persons are not on trial. Those matters are wholly outside your concern and have no bearing on your function as jurors.

20.     Uncalled Witnesses

There are persons whose names you heard during the trial but who did not appear to testify. You should not draw any inference or reach any conclusions as to what they would have

15

testified to had they been called.  Their absence should not affect your judgment in any way.  You should keep in mind my instruction, however, that the law does not impose on a defendant the burden or duty of calling any witnesses or producing any evidence.  It is the Government's burden to prove beyond a reasonable doubt each element of the crimes charged in the Indictment.

21.    Defendant's Right Not to Testify

Mr. Martoma did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove the defendant's guilt beyond a reasonable doubt.  That burden remains with the Government throughout the trial and never shifts to Mr. Martoma.  A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that Mr. Martoma did not testify.  You may not draw any inference against him because he did not take the witness stand.  You may not speculate as to why he did not testify, and you may not consider this against him in any way in your deliberations.

22.    Preparation of Witnesses

You heard evidence that certain witnesses discussed the facts of the case and their testimony with lawyers before the witness appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, you should be aware that there is nothing unusual or improper about a witness meeting with lawyers before testifying.  Indeed, it would be unusual for a lawyer to call a witness to testify without such preparation.

The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

23. Variance in Dates

The Indictment in this case refers to various dates. It does not matter if the Indictment states that specific conduct is alleged to have occurred on or about a certain date and the evidence indicates that, in fact, it was on another date. The law only requires a substantial similarity between the dates alleged in the Indictment and the dates established through evidence at trial.

24. Stipulations

You have heard evidence in the form of stipulations, or agreements, as to certain facts. Where the parties have entered into an agreement as to certain facts, you must regard the agreed-upon facts as true.

B. **INSTRUCTIONS AS TO SPECIFIC CHARGES**

I will now turn to the law applicable to the specific charges in this case.

1. Meaning of the Indictment

As you know, the charges against Mr. Martoma are contained in an Indictment. An indictment is not evidence of the guilt of a defendant. It is merely an accusation, a statement of charges made against a defendant. It gives the defendant notice of the charges against him, and informs the court and the public of the nature of the accusation.

Given that the indictment is proof of nothing, a defendant begins trial with an absolutely clean slate and without any evidence against him.

17

2.    The Indictment

The Indictment in this case contains three charges or counts.

Count One – the conspiracy charge – in relevant part, states:

The Grand Jury charges:

Statutory Allegations

16.  From in or about the summer of 2006 through on or about July 29, 2008, in the

Southern District of New York and elsewhere, MATHEW MARTOMA, the defendant, and others

known and unknown, willfully and knowingly did combine, conspire, confederate and agree

together and with each other to commit an offense against the United States, to wit, securities fraud,

in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal

Regulations, Sections 240.10b-5 and 240.10b5-2.

17.  It was a part and object of the conspiracy that MATHEW MARTOMA, the

defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the

use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of

national securities exchanges, would and did use and employ, in connection with the purchase and

sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17,

Code of Federal Regulations, Section 240.10b-5 by:  (a) employing devices, schemes and artifices

to defraud; (b) making untrue statements of material fact and omitting to state material facts

necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading; and (c) engaging in acts, practices and courses of business which

operated and would operate as a fraud and deceit upon the purchaser and seller, all in violation of

Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations,

Sections 240.10b-5 and 240.10b5-2.

Means and Methods Of The Conspiracy

18.  Among the means and methods by which the conspirators, including MATHEW MARTOMA, the defendant, would and did carry out the conspiracy were the following:

a.  Doctor-1 and Doctor-2 misappropriated and disclosed Inside Information about the Drug Trial in violation of (a) fiduciary and other duties of trust and confidence owed by Doctor-1 and Doctor-2 to Elan, (b) expectations of confidentiality regarding Elan information, and (c) policies of Elan regarding the use and safekeeping of Inside Information.

b.  MARTOMA obtained the Inside Information about the Drug Trial from Doctor-1 and Doctor-2 through an exploitation of his personal and financial relationships with Doctor-1 and Doctor-2.

c.  MARTOMA used the Inside Information about the Drug Trial to engage in securities transactions, and thereby profited and caused the SAC Hedge Fund to profit from the Inside Information.

Overt Acts

19.  In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed by MATHEW MARTOMA, the defendant, among others, in the Southern District of New York and elsewhere:

a.  On or about August 30, 2006, MARTOMA emailed the Manhattan-based Expert Networking Firm to request consultations with over 20 Drug Trial clinical investigators.

b.  On or about October 9, 2007, MARTOMA spoke with Doctor-l through a consultation arranged by the Expert Networking Firm and obtained confidential safety data about the Drug Trial.

19

c. On or about May 29, 2008, MARTOMA arranged a future meeting to occur with Doctor-2 on the evening of July 28, 2008, immediately after Doctor-2 was scheduled to be briefed about the final Drug Trial results and one day in advance of the Public Announcement.

d. On or about July 17, 2008, MARTOMA obtained confidential final results of the Drug Trial from Doctor-1.

e. On or about July 20, 2008, MARTOMA spoke by telephone with the SAC Hedge Fund Owner and recommended selling Elan and Wyeth securities before the Public Announcement.

f. On or about July 21, 2008, MARTOMA and the SAC Hedge Fund Owner instructed a SAC Hedge Fund trader to begin selling the SAC Hedge Fund's entire position in Elan securities, which are traded on the NYSE in Manhattan, New York.

(Title 18, United States Code, Section 371.)

Count Two states, in relevant part:

The Grand Jury further charges:

21. In or about July 2008, in the Southern District of New York and elsewhere, MATHEW MARTOMA, the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, before Elan and Wyeth publicly disclosed the

final results of an Alzheimer's disease drug trial on July 29, 2008, MARTOMA obtained material,

nonpublic information about the results and, based in whole or in part on that information, caused

the SAC Hedge Fund to sell common stock of Elan, short Elan stock, and enter into options

transactions relating to Elan.

> (Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations,
> Sections 240.10b-5 and 240.10b5-2 and Title 18, United States Code, Section 2.)

Count Three states, in relevant part:

The Grand Jury further charges:

23.  In or about July 2008, in the Southern District of New York and elsewhere,

MATHEW MARTOMA, the defendant, willfully and knowingly, directly and indirectly, by the use

of means and instrumentalities of interstate commerce, the mails and the facilities of national

securities exchanges, in connection with the purchase and sale of securities, did use and employ

manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal

Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b)

making untrue statements of material facts and omitting to state material facts necessary in order to

make the statements made, in light of the circumstances under which they were made, not

misleading; and (c) engaging in acts, practices and courses of business which operated and would

operate as a fraud and deceit upon persons, to wit, before Elan and Wyeth publicly disclosed the

final results of an Alzheimer's disease drug trial on July 29, 2008, MARTOMA obtained material,

nonpublic information about the results, and based in whole or in part on that information, caused

the SAC Hedge Fund to sell common stock of Wyeth and short Wyeth stock.

> (Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations,
> Sections 240.10b-5 & 240.10b5-2; and Title 18, United States Code, Section 2.)

Mr. Martoma denies each and every one of the charges in the Indictment and contends that the Government has failed to prove these charges beyond a reasonable doubt. As I have said, the Indictment itself does not constitute evidence that he committed any of these crimes.

In a moment, I will instruct you on each of these charges in detail. You must consider each charge separately and determine as to each charge whether the Government has met its burden of proving Mr. Martoma's guilt beyond a reasonable doubt.

3.    Counts Two & Three:  Securities Fraud

Count One of the Indictment charges a conspiracy – an agreement to commit an offense. Counts Two and Three of the Indictment are referred to as "substantive counts," and allege that Mr. Martoma actually committed securities fraud. I will now instruct you on the substantive violations – Counts Two and Three – and return to the conspiracy charge – Count One – later. Counts One, Two, and Three each allege that Mr. Martoma unlawfully caused securities transactions to be executed on the basis of certain "inside information" that he had received from Dr. Gilman and Dr. Ross.

a.    Securities Fraud – General Instructions

Counts Two and Three each charge that Mr. Martoma violated certain federal statutes and regulations prohibiting fraud in connection with the purchase and sale of securities.

Section 10(b) of the Securities Exchange Act of 1934 – referenced in the Indictment as Title 15, United States Code, Section 78j(b) – provides, in pertinent part, that

> [i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . .
> (b)       To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

22

Rule 10b-5, which has been adopted by the SEC, provides that

[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a)     To employ any device, scheme, or artifice to defraud,

. . . or

(c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Counts Two and Three each charge that Mr. Martoma violated these provisions by engaging in purchases or sales of securities on the basis of material non-public information that had been allegedly supplied by Dr. Gilman and Dr. Ross.

More specifically, Count Two charges that in or about July 2008, Mr. Martoma obtained material non-public information about the final results of an Alzheimer's disease drug trial and, based in whole or in part on that information, caused SAC Capital to sell the common stock of Elan, short Elan stock, and enter into options transactions relating to Elan stock.

Count Three charges that in or about July 2008, Mr. Martoma obtained material non-public information about the final results of an Alzheimer's disease drug trial and, based in whole or in part on that information, caused SAC Capital to sell the common stock of Wyeth and short Wyeth stock.

b.    Securities Fraud – Elements of Securities Fraud

In order to meet its burden of proof with respect to Counts Two and Three, the Government must establish beyond a reasonable doubt – with respect to each count – the following elements of the crime of securities fraud:

First, that in connection with the purchase or sale of the security specified in the count you are considering, Mr. Martoma employed a device, scheme or artifice to defraud, or engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of the specified security.

Second, that Mr. Martoma acted willfully, knowingly and with the intent to defraud.

And third, that the Defendant knowingly used, or caused to be used, any means or instrument of transportation or communication in interstate commerce or the mails, or any facility of any national securities exchange, in furtherance of the fraudulent conduct.[2]

I will now instruct you on each of these elements in detail.

c.    First Element – Existence of a Fraudulent Scheme

The first element that the Government must prove beyond a reasonable doubt is that, in connection with the purchase or sale of Elan securities in Count Two, and in connection with the purchase or sale of Wyeth securities in Count Three, Mr. Martoma employed a device, scheme or artifice to defraud, or engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a seller of the specified stock.

---

[2]  Based on 3 Sand et al., Modern Federal Jury Instructions – Criminal, Instruction No. 57-20 (2006); and charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3695-96).

A "device, scheme or artifice to defraud" is merely a plan for the accomplishment of any fraudulent objective.

"Fraud" is a general term that embraces all efforts and means that individuals devise to take unfair advantage of others.

The specific "device, scheme or artifice to defraud," or "act, practice, or course of business" that the Government alleges Mr. Martoma employed in connection with Counts Two and Three, is known as "insider trading."[3]

i.    First Element – Introduction

An "insider" is one who comes into possession of material, non-public information about a security or stock by virtue of a relationship that involves trust and confidence. If a person has such "inside information," and his position of trust or confidence prohibits him from disclosing that information, the law prohibits him from (1) buying or selling the securities in question on the basis of that information, or (2) giving that information to others so that they can trade in such securities on the basis of that information.

The law also prohibits a person who is not actually an insider from trading in securities based on material non-public information, if the person knows that the material, non-public information was intended to be kept confidential and knows that the information was disclosed in breach of a duty of trust or confidence and in exchange for a personal benefit to the insider.[4]

---

[3]  Based on 3 Sand et al., Modern Federal Jury Instructions – Criminal, Instructions Nos. 57-21, 57-23 (2006); and charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3696-97).

[4]  Based on 3 Sand et al., Modern Federal Jury Instructions – Criminal, Instruction No. 57-23 (2006). See United States v. Whitman, 904 F. Supp. 2d 363, 370-71 (S.D.N.Y. 2012) (holding that a tippee's knowledge that the tipper received a benefit is an element of tippee liability in "classical" insider trading).

Counts Two and Three charge that Mr. Martoma engaged in insider trading as a "tippee" – that is, that he obtained material, non-public information and wrongfully used it for his own benefit when he knew that the information had been disclosed in violation of a duty of trust and confidence.  A person who receives material non-public information engages in an act of fraud or deceit under the federal securities laws if he buys or sells securities based on material, non-public information that he knows was disclosed by another person in breach of a duty of trust and confidence and in exchange for a personal benefit to the insider.  I caution you, however, that trading on information that does not originate from an insider is not illegal.[5]

The law permits analysts and portfolio managers to meet and speak with corporate officers and other insiders, as well as experts affiliated with such companies, in order to ferret out and analyze information useful in making investment decisions.  I want to emphasize that the receipt and use of material, non-public information does not violate the law unless (1) the inside information was improperly provided to the defendant by an insider or tipper in violation of the duties and obligations that person owed to the company that owned the information, and (2) the defendant knew that the insider or tipper had violated that duty in disclosing the inside information to the defendant, and had done so in exchange for a personal benefit.  The insider's or tipper's breach of a duty, and the defendant's knowledge of that breach, must be established before a defendant can be found to have unlawfully, engaged in a device, scheme, or artifice to defraud by trading on material non-public information.[6]

---

[5]  Based on 3 Sand et al., <u>Modern Federal Jury Instructions – Criminal</u>, Instruction No. 57-23 (2006); and charge in <u>United States v. Steinberg</u>, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3697-98).
[6]  Based on 3 Sand et al., <u>Modern Federal Jury Instructions – Criminal</u>, Instructions No. 57-23 (2006).

The Government alleges that Dr. Sidney Gilman – referred to as "Doctor-1" in the Indictment – and Dr. Joel Ross – referred to as "Doctor-2" in the Indictment – were "insiders" involved in the clinical trial of bapineuzumab who "tipped" Mr. Martoma, or disclosed inside information to him, in breach of a duty of trust and confidence they owed to Elan and Wyeth.

Mr. Martoma is not charged with being an "insider," but rather is charged with being a "tippee."  A tippee is someone who receives inside information and uses it for his own benefit even though he did not personally owe any duty of trust or confidence which prevented him from buying and selling the securities in question.

To summarize, in order to find that the Government has established the first element of the crime of insider trading – namely, that, in connection with the purchase or sale of a security, Mr. Martoma employed a device, scheme or artifice to defraud, or engaged in a course of conduct that operated, or would operate, as a fraud or deceit upon a purchaser or seller of the specified security – the Government must prove the following beyond a reasonable doubt:

(1)  that Dr. Gilman or Dr. Ross – the alleged "insiders" or "tippers" – had a fiduciary or other relationship of trust and confidence with Elan (as to Count Two) or Wyeth (as to Count Three);

(2)  that Dr. Gilman or Dr. Ross breached that duty of trust and confidence by disclosing material, non-public information about the bapineuzumab Phase II clinical trial to Mr. Martoma;

(3)  that Dr. Gilman or Dr. Ross personally benefited in some way, directly or indirectly, from the disclosure of the allegedly inside information to Mr. Martoma;

27

(4)  that Mr. Martoma knew that the information he obtained had been disclosed in breach of a duty owed by Dr. Gilman or Dr. Ross to Elan or Wyeth and in exchange for a personal benefit to Dr. Gilman or Dr. Ross; and

(5)  That Mr. Martoma used the material, non-public information he received in connection with the purchase or sale of Elan securities (Count Two) or Wyeth securities (Count Three).[7]

I will now define for you several of the terms relevant to determining the first element of insider trading securities fraud.

      ii.      First Element – Part One:  Existence of a Fiduciary Relationship

The Government must prove beyond a reasonable doubt that Dr. Gilman and Dr. Ross had a fiduciary or other relationship of trust and confidence with Elan (as to Count Two) and with Wyeth (as to Count Three) and, as a result of that relationship, were entrusted with material, non-public information with the reasonable expectation that they would keep it confidential and would not use it for personal benefit.

It is the nature of the relationship which determines whether a person is an insider, and not merely the title he or she holds.  A mere working relationship is not sufficient to satisfy this element.  For a person to be an insider, the nature of the relationship must be one of trust and confidence.

Whether such a fiduciary or other relationship of trust or confidence existed between the alleged insiders in this case – Dr. Gilman and Dr. Ross – and Elan or Wyeth is a question of fact for you to determine.  The duties and obligations of insiders may be expressed explicitly in writing

---

[7]  Based on 3 Sand et al., Modern Federal Jury Instructions – Criminal, Instruction No. 57-23; and charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3699-700).

or may be inferred from the nature and circumstances of the parties' relationship.  However, the alleged insiders must have recognized the existence of a relationship of trust and confidence, although the understanding or mutual recognition may be either express or implied.[8]

    iii.       First Element – Part Two:  Breach of Fiduciary Relationship/Non-Public Information/Materiality

If you find that Dr. Gilman and Dr. Ross had a fiduciary or other relationship of trust and confidence with Elan or Wyeth, then you must next consider whether the Government has proven beyond a reasonable doubt that they intentionally breached that duty of trust and confidence by disclosing material, non-public information for their own personal benefit.

I will now define the terms "non-public" and "material."

Information is non-public if it is not available to the public through sources such as press releases, Securities and Exchange Commission filings, scientific journals, trade publications, analysts' reports, newspapers, magazines, television, radio, rumors, word of mouth, websites, internet chat rooms, or online message boards.  In assessing whether information is non-public, the key word is "available."  If information is available, for example, in the public media, analysts' reports, scientific journals, or S.E.C. filings, it is public.

However, the fact that information has not appeared in the newspaper or other widely available public media does not alone determine whether the information is non-public.  Sometimes a corporation authorizes the release of information, or is otherwise willing to make information available to securities analysts, prospective investors, or members of the press who ask for it even though it may never have appeared in any newspaper or other publication.  Such information would be considered public.  For example, if Elan or Wyeth policy was to give out

---

[8]  Based on charge in <u>United States v. Steinberg</u>, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3700-01).

certain information to people who ask for it, that information is public information. Accordingly, information is not necessarily non-public simply because there has been no formal announcement or because only a few people have been made aware of it.

On the other hand, the confirmation by an insider of unconfirmed facts or rumors – even if reported in a newspaper or analyst report – may itself be inside information. A tip from an insider that is more reliable and specific than unconfirmed facts or public rumors is non-public information despite the existence of such rumors in the media or investment community.[9]

The Government must also prove, beyond a reasonable doubt, that the information Dr. Gilman or Dr. Ross disclosed was "material" at the time it was disclosed.

"Material" information is information that a reasonable investor would have considered significant in deciding whether to buy, sell, or hold securities, and at what price to buy or sell securities. Put another way, there must be a substantial likelihood that the information at issue would have been viewed by the reasonable investor as having significantly altered the total mix of information then available. In determining whether the information Dr. Gilman and Dr. Ross allegedly provided to Mr. Martoma prior to the July 29, 2008 ICAD conference was material, you may consider – among other things – evidence of movement in the price of Elan or Wyeth stock after the presentation of data concerning the Phase II bapineuzumab clinical trial was made at the ICAD conference,[10] and other evidence as to whether this information was known to market participants or was substantially the same as information previously announced.

---

[9]  Based on charge in <u>United States v. Steinberg</u>, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3701-03).

[10]  <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1298 (2d Cir. 1991) ("[S]tock [price] movement is a factor the jury may consider relevant [in assessing materiality].").

You have heard testimony in this case about how certain medical professionals – including Dr. Gilman, Dr. Ross, and Dr. Wisniewski – viewed the data and results of the Phase II clinical trial of bapineuzumab that were presented at the ICAD conference.  I want to caution you that in determining whether the information Dr. Ross or Dr. Gilman allegedly disclosed to Mr. Martoma was "material," you must consider this issue from the perspective of a reasonable <u>investor</u> – not from the perspective of members of the medical community.

Your consideration of the element of materiality must be based on the facts existing at the time the trades alleged by the Government were made.  Materiality cannot be judged by hindsight.

You should also be aware that confidential information is not necessarily the same as material, non-public information.  Information may be confidential that is neither material nor non-public.  Evidence that Dr. Gilman and Dr. Ross violated confidentiality agreements does not alone establish that they disclosed material, non-public information.  The Government must prove beyond a reasonable doubt that Dr. Gilman and Dr. Ross disclosed material, non-public information – not simply confidential information.

iv.    <u>First Element – Part Three: Benefit to the Tipper</u>

If you find that Dr. Gilman or Dr. Ross disclosed material, non-public information to Mr. Martoma, you must then determine whether the Government proved beyond a reasonable doubt that Dr. Gilman or Dr. Ross received or anticipated receiving some personal benefit, direct or indirect, from disclosing the material, non-public information at issue.

The benefit may, but need not be, financial or tangible in nature; it could include obtaining some future advantage, developing or maintaining a business contact or a friendship, or enhancing the tipper's reputation.

31

A finding as to benefit should be based on all the objective facts and inferences presented in this case.  You may find that Dr. Gilman or Dr. Ross received a direct or indirect personal benefit from providing inside information to Mr. Martoma if you find that Dr. Gilman or Dr. Ross gave the information to Mr. Martoma with the intention of benefitting themselves in some manner, or with the intention of conferring a benefit on Mr. Martoma, or as a gift with the goal of maintaining or developing a personal friendship or a useful networking contact.[11]

### v.    First Element – Part Four:  Knowledge of Breach

The Government must also prove beyond a reasonable doubt that Mr. Martoma knew that the material non-public information that was disclosed by Dr. Gilman and Dr. Ross was disclosed in breach of a duty of trust and confidence and in exchange for a personal benefit.  The mere receipt of material, non-public information by Mr. Martoma, and even trading on that information, is not sufficient; Mr. Martoma must have known that Dr. Gilman or Dr. Ross disclosed the information in violation of a duty of confidentiality and that it was disclosed in exchange for a personal benefit.[12]

### vi.    First Element – Part Five:  Use of Inside Information

In order to find that Mr. Martoma engaged in insider trading, you must also find that he purchased or sold stock, or caused the purchase or sale of stock, using material, non-public information that had been disclosed by Dr. Gilman or Dr. Ross.  A person uses material, non-public

---

[11]  Based on charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3704).

[12] Based on charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3703-04).

information in connection with a sale or purchase of a stock where that information is a factor, however small, in his decision to purchase or sell the stock, or cause the purchase or sale of stock.[13]

If you find that Mr. Martoma used material, non-public information that he knew was disclosed by Dr. Gilman or Dr. Ross in breach of a duty of trust and confidence, and in exchange for a personal benefit, you must then determine whether the device, scheme or artifice to defraud was "in connection with" the purchase or sale of the security specified in the count you are considering. The "in connection with" element is satisfied if you find there was some nexus or relation between the allegedly fraudulent conduct and the purchase or sale of the security in the count you are considering.

Fraudulent conduct may be "in connection with" the purchase or sale of a security if you find that the alleged fraudulent conduct "touched upon" a securities transaction on a national securities exchange. In this regard, the "in connection with" a purchase or sale aspect is satisfied if you find that Mr. Martoma used material, non-public information for the purpose of securities trading, even though there is no evidence that other purchasers or sellers were harmed.[14]

d.    Second Element – Knowledge, Intent, & Willfulness

The second element of the securities fraud offense charged in Counts Two and Three that the Government must prove beyond a reasonable doubt is that Mr. Martoma participated in a scheme to defraud – that is, the insider trading scheme alleged in the Indictment – knowingly, willfully, and with intent to defraud.

---

[13]   See United States v. Rajaratnam, 719 F.3d 139, 158-60 (2d Cir. 2013) ("The District Court's jury instructions on the use of inside information – which instructed the jury that it could convict [the defendant] if the 'material non-public information given to the defendant was a factor, however small, in the defendant's decision to purchase or sell stock' – satisfied the . . . standard that is the law of this Circuit.").

[14]   Based on charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3705-06).

To "participate" in a scheme to defraud means to associate oneself with such a scheme with a view and intent to make it succeed.

A person acts "knowingly" if he acts intentionally, deliberately, and voluntarily, and not because of ignorance, mistake, accident or carelessness.

A person acts "willfully" if he acts deliberately and with the intent to do something that the law forbids, that is, with a bad purpose to disobey or disregard the law.

"Intent to defraud," in the context of securities laws, means to act knowingly with the intent to deceive. For Mr. Martoma to have acted with the specific intent to defraud means that he must have known of the fraudulent nature of the scheme and acted with the intent that it succeed. "Intent to defraud" here means the intent to deprive Elan or Wyeth of the confidentiality of its information.[15]

The Government need not show that Mr. Martoma, in addition to knowing what he was doing and deliberately doing it, also knew that he was violating a particular federal statute. But Mr. Martoma must have acted with the intent to help carry out some essential step in the execution of the scheme to defraud that is alleged in the Indictment.

It is not a willful deceptive device in contravention of the federal securities law for a person to use his or others' superior financial or expert analysis, or his or others' educated guesses or predictions, or his or others' past practice or experience, to determine which securities to buy or sell. Nor is it a deceptive device in contravention of the federal securities laws for a person to buy

---

[15]  Based on 3 Sand et al., Modern Federal Jury Instructions – Criminal, Instruction No. 57-24 (2006); and charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3706-07).  See United States v. Whitman, 904 F. Supp. 2d 363, 374 (S.D.N.Y. 2012) ("[T]he heart of the fraud is the breach of the duty of confidentiality owed to both the company and its shareholders, and accordingly the specific intent to defraud must mean, in this context, an intent to deprive the company and its shareholders of the confidentiality of its material nonpublic information.").

or sell securities based on public information, or on tips where he does not know that the information has been disclosed in violation of a duty or confidence and in exchange for a benefit to the tipper, or where the information is obtained from public sources.

The Government may prove that Mr. Martoma acted "knowingly" in either of two ways. First, this element may be satisfied by evidence that satisfies you beyond a reasonable doubt that Mr. Martoma actually was aware of a particular fact.

Alternatively, Mr. Martoma's knowledge may be established by proof that he deliberately closed his eyes to what otherwise would have been obvious to him. If you find beyond a reasonable doubt that Mr. Martoma's ignorance was solely and entirely the result of a conscious purpose to avoid learning the truth, then this element may be satisfied. However, guilty knowledge may not be established by demonstrating that Mr. Martoma was merely negligent, foolish or mistaken. If you find beyond a reasonable doubt that Mr. Martoma was aware that there was a high probability that he obtained information that had been disclosed in violation of a duty of trust and confidence, but deliberately and consciously avoided confirming this fact, then you may find that he acted knowingly. However, if you find that Mr. Martoma actually believed that the information he obtained was not disclosed in violation of a duty of trust and confidence, he may not be convicted.

The question of whether a person acted knowingly, willfully, and with the intent to defraud is a question of fact for you to determine, like any other fact question. Intent to defraud involves a person's state of mind and the purpose with which he acted at the time the act or acts in question occurred. Direct proof of knowledge and fraudulent intent is almost never available. It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent. Such direct proof is not required.

Knowledge and criminal intent, although subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom. As I have instructed you, circumstantial evidence is of no less value than direct evidence.

Since an essential element of the crimes charged is intent to defraud, it follows that good faith on the part of the Defendant is a complete defense. A person who acts on a belief or opinion honestly held is not punishable under these statutes merely because his opinion or belief turns out to be wrong.

It is for you to decide whether Mr. Martoma acted in good faith or not. If you decide that, at all relevant times, he acted in good faith, it is your duty to acquit him. The law is not violated where a defendant acted in good faith and held an honest belief that his actions were proper and not in furtherance of any illegal venture. I want to caution you in this regard that Mr. Martoma has no burden to establish the defense of good faith. The burden is on the Government to prove criminal intent and consequent lack of good faith beyond a reasonable doubt. If you find that Mr. Martoma was not a knowing participant in the scheme and lacked intent to defraud, you must acquit him.

To summarize, if you find that Mr. Martoma was not a knowing participant in the scheme and lacked intent to defraud, you should acquit him. On the other hand, if you find that the Government has established beyond a reasonable doubt not only the first element – namely, the existence of a scheme to defraud – but also this second element – that Mr. Martoma was a knowing participant and acted with intent to defraud – you should go on to consider whether the Government

has established the third element – use of an instrumentality of interstate commerce – beyond a reasonable doubt.[16]

      e.  <u>Third Element – Use of Instrumentality of Interstate Commerce</u>

The third and final element that the Government must prove beyond a reasonable doubt is that Mr. Martoma knowingly used, or caused to be used, an instrumentality of interstate commerce, or used or caused to be used a facility of a national securities exchange in furtherance of the scheme to defraud.[17]

The term "instrumentalities of interstate commerce" means instruments, devices, and means of conducting trade, commerce, transportation, or communication among any two states. Instrumentalities of interstate commerce include the use purely within one state of a telephone or any other instrument used to conduct interstate communication.

I instruct you that the New York Stock Exchange is a national securities exchange. The phrase "facility of a national securities exchange" includes any property or services maintained by the New York Stock Exchange.

---

[16]  Based on 3 Sand et al., <u>Modern Federal Jury Instructions – Criminal</u>, Instruction No. 57-24 (2006); charge in <u>United States v. Steinberg</u>, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3707-11); and charge in <u>United States v. Newman</u>, No. 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 12, 2012) (Trial Tr. at 4036-39).

[17]  Based on 3 Sand et al., <u>Modern Federal Jury Instructions – Criminal</u>, Instruction No. 57-25 (2006); charge in <u>United States v. Steinberg</u>, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3711); and charge in <u>United States v. Newman</u>, No. 12 Cr. 121 (RJS) (Dec. 12, 2012) (Trial Tr. at 4040). <u>See</u> <u>United States v. Curtis</u>, No. 08 CR. 183 (LAP), 2010 WL 2106168, at *6 (S.D.N.Y. May 19, 2010) ("The elements of securities fraud [require] . . . that the defendant knowingly used, or caused to be used, any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct."); <u>United States v. Regensberg</u>, 604 F. Supp. 2d 625, 633 (S.D.N.Y. 2009) (same); <u>United States v. Teyibo</u>, 877 F. Supp. 846, 861 (S.D.N.Y. 1995), <u>aff'd</u>, 101 F.3d 681 (2d Cir. 1996) ("To establish securities fraud, the Government must prove that the defendant . . .  knowingly used, or caused to be used, instrumentalities of interstate commerce in furtherance of the scheme to defraud or fraudulent conduct.").

The Government need not prove that Mr. Martoma directly or personally was involved in any use of an instrumentality of interstate commerce, or use of any facility of a national securities exchange. It is enough if you find that Mr. Martoma, by his acts, directly or indirectly initiated the steps, or aided, abetted, counseled, or induced others to initiate steps that resulted in a chain of cause and effect resulting in the use of an instrumentality of interstate commerce, or use of a facility of a national securities exchange. This includes placing an interstate telephone call or placing an order with a brokerage firm to buy or sell a security.

It is not necessary that communications over an instrumentality of interstate commerce contain any fraudulent material, or anything criminal or objectionable. The matter communicated may be entirely innocent so long as it is in furtherance of the scheme to defraud or fraudulent conduct.

The use of any instrumentality of interstate commerce need not be central to the execution of the scheme. All that is required is that the use of any instrumentality of interstate commerce bears some relation to the object of the scheme or fraudulent conduct.[18]

f.    Venue

In addition to the foregoing elements of securities fraud, you must consider the issue of venue, namely whether any act in furtherance of the unlawful activity occurred within the Southern District of New York, which includes Manhattan.

In this regard, the Government need not prove that the crime charged was committed in the Southern District of New York or that Mr. Martoma was present here. It is sufficient to satisfy the venue requirement if any act in furtherance of the crimes charged occurred within the

---

[18]  Based on 3 Sand et al., Modern Federal Jury Instructions – Criminal, Instruction No. 57-24 (2006); and charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3711-12).

Southern District of New York.  Such an act would include, for example, the placing of a telephone call to or from the Southern District of New York or the execution or settlement of a securities trade within this district.

As to venue, and as to venue alone, the Government's burden is not proof beyond a reasonable doubt.  Instead, venue may be established by a preponderance of the evidence.  A preponderance of the evidence means more likely than not.  If you find that the Government has not proven venue by a preponderance of the evidence, then you must find Mr. Martoma not guilty.[19]

g.  Willfully Causing a Crime

A defendant may be convicted of a substantive offense if he willfully caused an act to be done which, if directly performed by him, would constitute a crime.  Section 2(b) of Title 18 of the United States Code reads as follows:  "Whoever willfully causes an act to be done which, if directly performed by him, would be an offense against the United States, is punishable as a principal."

What does the term "willfully caused" mean?  It does not mean that the defendant himself physically committed the crime or supervised or participated in the actual criminal conduct charged in the Indictment.

For the offenses charged in Counts Two and Three, the meaning of the term "willfully caused" can be found in the answers to the following questions:

- Did Mr. Martoma possess material, non-public information that he knew had been provided by an insider in violation of a duty of trust or confidence and in exchange for a benefit?

- Did Mr. Martoma intentionally cause another person to execute the securities transaction charged in that count based on that material, non-public information?

---

[19]  Based on charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3713-14).

If you are persuaded beyond a reasonable doubt that the answer to both of these questions is "yes," then Mr. Martoma is guilty of the crime charged in that count just as if he himself had actually committed it.[20]

4.   Count One: Conspiracy to Commit Securities Fraud

a.   Introduction

I will now turn to Count One of the Indictment, which charges that Mr. Martoma conspired with Dr. Gilman and Dr. Ross to violate federal statutes and regulations that make it unlawful to commit fraud in connection with the purchase or sale of securities.

Title 18, United States Code, Section 371, states:

If two or more persons conspire . . . to commit any offense against the United States . . . , and one or more of such persons do any act to effect the object of the conspiracy, each [is guilty of an offense against the United States].

A conspiracy is a kind of criminal partnership – an agreement between two or more people to join together to accomplish some unlawful purpose.

The crime of conspiracy to commit securities fraud is an independent offense, separate and distinct from the substantive crime of securities fraud that I have instructed you on. Indeed, a defendant may be found guilty of this crime even if the charged conspiracy was not successful and no securities fraud was ever actually committed.  That is because conspiracy to commit securities fraud is a stand-alone, separate crime.

b.   Conspiracy to Commit Securities Fraud – Elements of Conspiracy

To meet its burden of proving the securities fraud conspiracy charged in Count One of the Indictment, the Government must prove the following elements beyond a reasonable doubt:

---

[20]  Based on charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3714-15).

   <u>First</u>, that the conspiracy charged in Count One existed – that is, that between the summer of 2006 and July 29, 2008, an agreement or understanding between two or more people existed to commit securities fraud.

   <u>Second</u>, that Mr. Martoma intentionally and knowingly joined and participated in that conspiracy during the applicable time period.

   <u>Third</u>, that during the life of the conspiracy, one of the conspirators, not necessarily Mr. Martoma, knowingly committed at least one overt act in furtherance of the conspiracy in the Southern District of New York.[21]

   c. <u>First Element – Existence of a Conspiracy</u>

   A conspiracy is a combination, agreement, or understanding between two or more people to accomplish, by concerted action, a criminal or unlawful purpose.  For Count One, the unlawful purpose alleged to be the object of the conspiracy is the commission of securities fraud.

   The gist, or essence, of the crime of conspiracy is an unlawful agreement between two or more people to violate the law.  The first element of the crime of conspiracy thus has two parts:  (i) the unlawful agreement; and (ii) the object of the conspiracy.

   i.  <u>First Element – Part One:  The Agreement</u>

   To establish a conspiracy, the Government is not required to show that two or more people sat down around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out all the details of the plans and the means by which the unlawful project is to be carried out, or the part that each of the persons who is a party to the conspiracy is going to play.

---

[21]  Based on 1 Sand et al., <u>Modern Federal Jury Instructions – Criminal</u>, Instruction No. 19-3 (2008).

When people undertake to enter into a criminal conspiracy, much is often left to the unexpressed understanding. Conspirators do not usually reduce their agreements to a formal writing. They don't typically publicly broadcast their plans. From its very nature, a conspiracy is almost always secret in its origin and execution.

It is enough if two or more people, in some way or manner, impliedly or tacitly, come to an understanding to violate the law. Express language or specific words are not required to indicate assent or agreement to the conspiracy. You need only find that two or more people entered into the unlawful agreement alleged in Count One to find that a conspiracy existed. What the Government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to violate the law and to accomplish an unlawful act.

In determining whether the Government has proven the unlawful agreement alleged in Count One, you should consider the proven acts and conduct of the alleged co-conspirators undertaken to carry out the apparent criminal purpose. The adage "actions speak louder than words" is applicable here. Often, the only evidence that is available is that of disconnected acts that, when considered in connection with one another, show a conspiracy or an agreement to secure a particular result just as satisfactorily and conclusively as more direct proof. As I have said, it is not necessary that the conspiracy actually succeed for you to conclude that it existed.

In deciding whether the conspiracy charged in Count One existed, you may consider all the evidence of the acts, conduct, and statements of those you determine the Government has proven were co-conspirators of Mr. Martoma and the reasonable inferences to be drawn from that evidence. When people enter into a conspiracy to accomplish an unlawful end, they become agents or partners of one another in carrying out the conspiracy. In determining the factual issues before

42

you, you may take into account against Mr. Martoma any acts or statements made by any of the alleged co-conspirators during the course of the conspiracy, even though such acts or statements were not made in Mr. Martoma's presence or were made without his knowledge.

It is sufficient to establish the existence of the conspiracy that you find, beyond a reasonable doubt, that the minds of at least two alleged conspirators met in an understanding way, and that they agreed, as I have explained, to work together to accomplish the objective of the conspiracy charged in Count One.

ii.     First Element – Part Two:  Object of the Conspiracy

The second part of the first element relates to the object, or objective, of the conspiracy.  According to the Indictment, the object of the conspiracy charged in Count One was to commit securities fraud – in particular, insider trading by Mr. Martoma on the basis of material non-public information obtained from Dr. Sidney Gilman and Dr. Joel Ross.  I have already explained to you the elements of securities fraud through insider trading.  If you find that Mr. Martoma agreed with Dr. Gilman or Dr. Ross to accomplish the illegal object charged in the conspiracy count – namely, insider trading – the illegal purpose element will be satisfied.  Whether or not the alleged conspiracy existed is a fact issue for you to decide.

d.     Second Element – Membership in the Conspiracy

If you conclude that the Government has proven beyond a reasonable doubt that the charged conspiracy existed, and that the conspiracy had as its object the illegal purpose charged in the Indictment, then you must next determine whether Mr. Martoma participated in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful objective.

The Government must prove beyond a reasonable doubt that Mr. Martoma willfully and knowingly entered into the conspiracy with criminal intent – that is, with a purpose to violate

43

the law – and that he agreed to take part in the conspiracy to promote and cooperate in its unlawful objective.

"Knowingly" and "willfully" have the same meaning that I provided to you in connection with Counts Two and Three. The terms "knowingly" and "willfully" are intended to ensure that if you find that Mr. Martoma joined the conspiracy, you also conclude beyond a reasonable doubt that, in doing so, he knew what he was doing; in other words, that he took the actions in question deliberately and voluntarily.

The key question is whether Mr. Martoma entered into the agreement with an awareness of at least some of the basic aims and purposes of the unlawful agreement. Mr. Martoma's participation in the conspiracy may be established by evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences which may be drawn from the acts and statements.

It is not necessary for the Government to show that Mr. Martoma was fully informed as to all the details of the conspiracy in order for you to infer knowledge on his part. To have guilty knowledge, a defendant need not know the full extent of the conspiracy, or all of the activities of all of its participants. It is not even necessary for a defendant to know every other member of the conspiracy. In fact, a defendant may know only one other member of the conspiracy and still be a co-conspirator. Nor is it necessary for a defendant to receive any monetary benefit from his participation in the conspiracy, or that he have a financial stake in the outcome. It is enough if he participated in the conspiracy willfully and knowingly, as I have defined those terms.

The duration and extent of a defendant's participation has no bearing on his guilt. A defendant need not have joined the conspiracy at the outset. If a defendant joined the conspiracy at any time in its progress, he will be held responsible for all that was done before he joined and all

44

that was done during the conspiracy's existence while he was a member.  Moreover, each member of a conspiracy may perform separate and distinct acts.  Some conspirators play major roles, while others play minor roles in the scheme.  An equal role is not what the law requires.  In fact, even a single act may be sufficient to draw a defendant within the scope of the conspiracy.

I want to caution you, however, that a person's mere association with a member of a conspiracy does not make that person a member of the conspiracy, even when that association is coupled with knowledge that a conspiracy is taking place.  In other words, knowledge without agreement and participation is not sufficient.  You may not find that Mr. Martoma is a member of a conspiracy merely because of friendship or a business association with alleged co-conspirators.  Similarly, mere discussion of common aims and interests does not necessarily establish membership in a conspiracy.  What is necessary is that Mr. Martoma joined in the charged conspiracy with knowledge of its unlawful purpose, and with an intent to aid in the accomplishment of its unlawful objective.

In sum, a defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering an illegal undertaking.  A defendant thereby becomes a knowing and willing participant in the unlawful agreement – that is to say, a conspirator.

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members.  So, too, once a person is found to be a member of a conspiracy, he is presumed to continue his membership in the venture

until its termination, unless it is shown by some affirmative proof that he withdrew and disassociated himself from it.[22]

       e.  Conspiracy to Commit Securities Fraud: Third Element – Overt Act

The third element is the requirement of an overt act.  To sustain its burden of proof, the Government must show beyond a reasonable doubt that at least one overt act was committed in furtherance of the conspiracy by at least one of the co-conspirators – but not necessarily the Defendant – in the Southern District of New York.

The effect of the overt act requirement is clear.  There must have been something more than mere agreement; some overt step or action must have been taken by at least one of the conspirators in furtherance of the conspiracy.  The Government must prove beyond a reasonable doubt that one of the members of the conspiracy – again, either Mr. Martoma or any other individual you find to have been a co-conspirator – took some step or action in furtherance of the conspiracy in the Southern District of New York during the life of the conspiracy.

In order for the Government to satisfy the overt act requirement it is not necessary for it to prove any particular overt act, or even that Mr. Martoma committed an overt act.  It is sufficient for the Government to show that Mr. Martoma or one of his alleged co-conspirators knowingly committed an overt act in furtherance of the conspiracy.

Although a number of overt acts are alleged in the Indictment, in order to satisfy the overt act requirement, the Government is not required to prove any of these alleged overt acts.  Any overt act is sufficient, whether alleged in the Indictment or not, if you are convinced beyond a

---

[22]  Based on 1 Sand et al., Modern Federal Jury Instructions – Criminal, Instruction No. 19-6 (2009); and charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3719-23).

reasonable doubt that it was committed by a co-conspirator in furtherance of the conspiracy, while the conspiracy was in existence, and within the Southern District of New York.

You should also bear in mind that the overt act may be a lawful act. What matters is whether the overt act is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme.[23]

### f.   Time of Conspiracy

The Indictment alleges that the charged conspiracy took place between the summer of 2006 and July 29, 2008. The Government is not required to prove that the alleged conspiracy started and ended on any specific date. It is sufficient if you find that the conspiracy was formed and that it existed for some time within or around the dates set forth in the Indictment.

### 5.   Proof of Profit Not Necessary

It does not matter, as to any charge in the Indictment, whether the alleged unlawful conduct was successful or not, or whether Mr. Martoma profited or received any financial benefits as a result of the alleged insider trading scheme. Success is not an element of any of the crimes charged.[24]

### 6.   Venue

In addition to the elements of conspiracy that I have discussed, you must also consider the issue of venue, namely, whether any act in furtherance of the conspiracy occurred

---

[23]  Based on charge in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3723-25). See United States v. Milstein, 401 F.3d 53, 70 (2d Cir. 2005) (quoting United States v. Frank, 156 F.3d 332, 337 (2d Cir. 1998)) ("It is a 'well-established rule of this and other circuits that the overt act element of a conspiracy charge may be satisfied by an overt act that is not specified in the indictment, at least so long [as] there is no prejudice to the defendant.'") (alteration in original).

[24]  Based on charges in United States v. Steinberg, No. S4 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 17, 2013) (Trial Tr. 3712-13); and United States v. Newman, No. 12 Cr. 121 (RJS) (S.D.N.Y. Dec. 12, 2012) (Tr. at 4041-42).

within the Southern District of New York.  As I previously stated, the Southern District of New York includes Manhattan.  It is sufficient to find venue in the Southern District of New York if you find that Mr. Martoma or any co-conspirator committed any act in furtherance of the conspiracy in this District during the existence of the conspiracy.

As I told you a few minutes ago, as to venue, and as to venue alone, the Government's burden is not proof beyond a reasonable doubt.  Instead, venue may be established by a preponderance of the evidence.  A preponderance of the evidence means more likely than not.  If you find that the Government has not proven venue by a preponderance of the evidence, then you must find Mr. Martoma not guilty.

7.  <u>Internal Compliance Policies</u>

During the trial, evidence was introduced concerning the internal compliance policies of SAC Capital.  This evidence may be considered by you to the extent that you conclude that it sheds light on Mr. Martoma's state of mind.  Evidence concerning SAC Capital's internal compliance policies was not admitted for purposes of stating what the law is on any issue, however, and you may not rely on this evidence for that purpose.  These compliance policies are not to be taken by you as accurate statements of the law.  Only my instructions to you may be taken as accurate statements of the law.  You must follow my instructions on the law and the definitions that I have provided to you.

That concludes my instructions concerning the specific charges at issue in this case.

**C.    <u>FINAL INSTRUCTIONS CONCERNING PROCEDURE</u>**

1.    <u>Right to See Exhibits and Hear Testimony; Communications with the Court</u>

If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that portions of the trial transcript be sent back to you in the jury room.  If

you want any testimony, please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of the testimony.

All of the documentary exhibits that have been received in evidence will be sent into the jury room. If you want to see or listen to exhibits contained on electronic media, you can request that, and we will play those exhibits for you in the courtroom. There will be a sheet given to you reflecting those exhibits.

If you want any further explanation of the law as I have explained it to you, you may also request that. As I noted earlier, however, you may all take into the jury room your copy of these instructions.

Any communication to me should be made in writing, signed by your foreperson, include the date and time, and be given to one of the marshals. Please make any notes as clear and precise as possible. Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

2.    Duty to Deliberate/Unanimous Verdict

Your function is to weigh the evidence in this case and to decide whether the Government has proven beyond a reasonable doubt each of the essential elements of the crimes with which the Defendant is charged. If the Government has succeeded in meeting its burden, your verdict should be guilty; if it has failed to do so, it should be not guilty. You must base your verdict solely on the evidence and these instructions as to the law, and you are obligated under your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. As you deliberate, please listen to the opinions of your fellow jurors, and

49

ask for an opportunity to express your own views.  Every juror should be heard.  No one juror should hold center stage in the jury room and no one juror should control or monopolize the deliberations.

Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy or to prejudice or favor for either side, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Your verdict must be unanimous as to each charge in the Indictment.  However, you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans.  You are judges — judges of the facts. Your sole interest is to determine whether the Government has proven the Defendant's guilt beyond a reasonable doubt.

If you are divided, do <u>not</u> report how the vote stands, and if you have reached a verdict do not report what it is until you are asked in open court.

3.    Juror Notes

A number of you have taken notes during the trial.  Your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case.  Any notes that you may take are not evidence.  The fact that a particular juror has taken notes entitles that

50

juror's views to no greater weight than those of any other juror and your notes are not to be shown to any other juror during your deliberations.

4.    Verdict

I have prepared a verdict form for you to use in recording your decision.  Please use that form to report your verdict.

5.    Duties of Foreperson

I referred a moment ago to a foreperson.  It is customary for Juror Number 1 to serve as the foreperson, and that is what we will do here.  The foreperson doesn't have any more power or authority than any other juror, and her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  She will send out any notes, and when the jury has reached a verdict, she will notify the marshal that the jury has reached a verdict, and you will come into open court and deliver your verdict.

6.    Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

Each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

7.    Rules of Conduct

During you deliberations, all the rules of conduct concerning outside influences remain in effect.  As I have instructed you many times, your verdict must be based solely on the evidence presented in this courtroom.  Accordingly, you are still not permitted to discuss this case

51

with anyone but your fellow jurors, and you may not read anything in the newspapers, over the Internet, or elsewhere about this case.  Also do not listen or watch any reporting about this case if it should be broadcast on TV or over the radio.

        8.      <u>Conclusion</u>

Members of the jury, that concludes my instructions to you.  I ask you to remain seated while I confer with the lawyers to see whether there are any additional instructions that they wish me to give.

                                    \* \* \* \*

Before you retire into the jury room I must excuse Alternate Jurors 2, 3, and 4.  You have been very attentive and very patient, and I want you to understand how much we all appreciate your service.  I'm sorry that you will miss the experience of deliberating with the jury, but the law provides for a jury of twelve persons in this case.

I have one final instruction for the Alternate Jurors 2, 3, and 4.  I must ask you to abide by the rules of conduct until the jury reaches a verdict.  That is because, in the event that someone on the jury cannot continue during deliberations, it may be necessary for you to rejoin the jury.  Accordingly, until the jury reaches a verdict, you may not discuss this case with anyone, you may not read anything in the newspapers, over the Internet, or elsewhere about this case, and you may not listen to or watch any reporting about this case on TV or over the radio.  If you would like to be advised of the outcome of the trial, please let us know, and we will contact you as soon as there is a verdict.

Before the rest of the jury retires into the jury room, I must ask the alternate jurors to retrieve any belongings they might have left in the jury room.

**[Alternates excused]**

The Marshal will now be sworn.  Members of the jury, you may now retire.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

         -against-

MATHEW MARTOMA,

               Defendant.

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #:  _____       │
│ DATE FILED: _____        │
└──────────────────────────────────┘
```

12 Cr. 973 (PGG)

**VERDICT FORM**

**COUNT ONE**

1.  Conspiracy to commit securities fraud.

       \_\_\_\_\_ Guilty

       \_\_\_\_\_ Not Guilty

**COUNT TWO**

2.  Securities fraud – causing SAC Capital to sell common stock of Elan, short Elan stock, and enter into options transactions relating to Elan stock based on material, non-public information.

       \_\_\_\_\_ Guilty

       \_\_\_\_\_ Not Guilty

**COUNT THREE**

3.  Securities fraud – causing SAC Capital to sell common stock of Wyeth and short Wyeth stock based on material, non-public information.

       \_\_\_\_\_ Guilty

       \_\_\_\_\_ Not Guilty

**Please sign and date the form and tell the Marshal that the jury has reached a verdict.**

Dated: February \_\_\_, 2014

                               _____
                                Signature of Foreperson