**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 8, 2014

**By ECF & Hand**
Hon. Paul G. Gardephe
United States District Judge
United States District Court
40 Centre Street
New York, NY 10007

    Re:    <u>United States v. Martoma, 12 Cr. 973 (PGG)</u>

Dear Judge Gardephe:

    The Government makes this submission in response to the Court's Order of September 5, 2014, directing the Government to address the arguments raised by the defendant that only the amount of compensation the defendant received *after income taxes were withheld* should be subject to forfeiture.

    In insider trading cases, the Government may seek the forfeiture of the defendant's net proceeds, after subtracting certain allowable direct costs if they are proved by the defendant. *United States v. Contorinis*, 692 F.3d 136, 145 n.3 (2d Cir. 2012) (applying Section 981(a)(2)(B)). However, as the defendant admits in his September 5, 2014 sentencing submission, he is explicitly prohibited from deducting "any part of the income taxes paid by the entity" as a direct cost, pursuant to Section 981(a)(2)(B). Here, the defendant's employer, SAC Capital, withheld income taxes owed by the defendant on his ill-gotten gains. Under the plain wording of the statute, the $2.9 million that was withheld from the defendant's $9.38 million bonus does not qualify as a direct cost that may be deducted from the defendant's forfeiture amount. Any other interpretation would render this provision meaningless. Indeed, the defendant does not even attempt to give an alternative statutory construction to this very clear prohibition.

    Grasping at straws, the defendant then argues that he never "acquired" or "controlled" the $2.9 million that was withheld by his employer and paid to the tax authorities on his behalf, and therefore should not be liable for the forfeiture of that portion of his bonus. The defendant cites not a single case in which a court has agreed with this position, and indeed, the Government is not aware of any such precedent. The only case cited by the defendant to support his argument is *Contorinis*, but such reliance is misguided. In *Contorinis,* which involved a defendant convicted of securities fraud, the Second Circuit vacated the district court's order requiring the defendant to forfeit $12.65 million in profits that his fraudulent trading earned for his employer, an investment fund that was not implicated in the fraud. 692 F.3d at 148. As further explained in a later

opinion, "those funds … were insufficiently subject to Contorinis's dominion and control to be forfeitable by Contorinis." *United States v. Torres*, 703 F.3d 194, 201 (2d Cir. 2012).[1]  The facts of *Contorinis*, in which an *innocent third party* was the beneficiary of the defendant's fraud, are entirely distinguishable from the facts here, where *the defendant himself* was the beneficiary of his $9.38 million bonus, a bonus paid to him by his employer as compensation for the profits he made for the firm as a result of his criminal conduct.  Indeed, cognizant of *Contorinis*, the Government has *not* sought to forfeit from Martoma the entire $275 million constituting SAC Capital's proceeds from the scheme and has instead focused exclusively on the bonus credited to the defendant himself and constituting the defendant's personal profits from the crime.

The fact that a portion of that bonus was withheld by the firm and applied toward Martoma's tax liability for that year does not in any way diminish Martoma's acquisition or control of those funds.  The firm's withholding was based on an estimate of likely taxes, but whether Martoma ultimately received some or all of the initially withheld $2.9 million back from the U.S. Treasury depended on Martoma's other income and deductions for the tax year.  Indeed, it is easy to imagine a scenario in which Martoma's bonus could have been offset by other losses in the same tax year, and he could have received a refund of some or all of the $2.9 million that was initially withheld by his employer.  For example, Martoma's decision to donate $1 million in tax year 2010 to a foundation he and his wife opened almost certainly reduced his tax liability with respect to the more than $2 million of his 2008 bonus collected that year.

For the reasons explained above, the Government respectfully requests that this Court enter the Government's proposed Order of Forfeiture, including a money judgment in the amount of $9,380,322.

Respectfully Submitted,

PREET BHARARA
United States Attorney

By:      /s/
Christine Magdo
Arlo Devlin-Brown
Eugene Ingoglia
Assistant United States Attorneys

cc: Richard Strassberg, Esq.
    Roberto Braceras, Esq.

---

[1] Indeed, the Second Circuit remanded the case to the district court to determine "[t]o what extent appellant's interest in salaries, bonuses, dividends, or enhanced value of equity in the Fund can be said to be money 'acquired' by the defendant 'through the illegal transactions resulting in the forfeiture.'"  *Contorini*s, 692 F.3d at 148 n.3 (quoting 18 U.S.C. § 981(a)(2)(B)).