UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
UNITED STATES OF AMERICA                :
:
-v.-                   :           S1 12 Cr. 973 (PGG)
:
MATHEW MARTOMA,                         :
:
Defendant.             :
------------------------------------------------------------x
:
ROSEMARY A. MARTOMA,                    :
:
Petitioner.            :
------------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO DISMISS THE THIRD-PARTY PETITION OF ROSEMARY A. MATOMA

PREET BHARARA
United States Attorney for the
Southern District of New York

Christine I. Magdo
Assistant United States Attorneys
- Of Counsel -

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

BACKGROUND ...............................................................................................................1

    1.   Procedural Posture and The Court's Prior Forfeiture Ruling .............................1

    2.   The Current Petition……………………………………………………………….3

ARGUMENT.......................................................................................................................3

    1.   Introduction..........................................................................................................3

    2.   Applicable Procedural Law..................................................................................4

    3.   Valid Bases for Third-Party Claims to Criminal Proceeds...................................6

    4.   The Government's Interest in the Specific Properties, Which the District Court Previously Determined Are Proceeds or Traceable to Proceeds of the Defendant's Illegal Insider Trading, are Superior to Petitioner's, Defeating her Ownership Interest and Constructive Trust Claims…………………………………………………………...7

        a.   The Government's Interest in the Specific Properties is Superior to Petitioner's Alleged Ownership Interests.…………………….……………7

        b.   The Government's Interest in the Specific Properties is Superior to Petitioner's Alleged Possession of a Constructive Trust……………….………11

    5.   Petitioner is Not a "Bona Fide Purchaser for Value"………………………………12

CONCLUSION…………………………………………………………………………...14

## TABLE OF AUTHORITIES

CASES

*Ashcroft* v. *Iqbal*,
 556 U.S. 662 (2009) ............................................................................................. 5, 6

*Bell Atl. Corp.* v. *Twombly*,
 550 U.S. 544 (2007) .......................................................................................... 5, 6, 9

*In re U.S. Med., Inc.*,
 531 F.3d 1272 (10th Cir. 2008) ................................................................................ 13

*Pacheco* v. *Serendensky*,
 393 F.3d 348 (2d Cir. 2004) ............................................................................... passim

*Papasan* v. *Allain*,
 478 U.S. 265 (1986) ................................................................................................ 6

*Samuels* v. *Air Trans. Local,*
 992 F.2d 12 (2d Cir. 1993) ...................................................................................... 6

*United States* v. *Benitez*,
 779 F.2d 135 (2d Cir. 1985) .................................................................................... 11

*United States* v. *Contorinis*,
 692 F.3d 136 (2d Cir. 2012) .................................................................................... 3

*United States* v. *Davenport*,
 668 F.3d 1316 (11th Cir. 2012) ............................................................................. 5, 9

*United States* v. *Dreier*,
 No. 09 Cr. 085 (JSR), 2010 WL 1223087 (S.D.N.Y. Mar. 24, 2010) ...................... 5

*United States* v. *Egan*,
 No. 10 Cr. 191 (JFK), 2011 WL 798852 (S.D.N.Y. March 7, 2011) ...................... 6

*United States* v. *Emor*,
 Cr. No. 10-0298 (PLF), 2013 WL 3005366 (D.D.C. June 18, 2013) ...................... 6

*United States* v. *Hooper*,
 229 F.3d 818 (9th Cir. 2000) ........................................................................... 7, 8, 10

*United States* v. *Kennedy*,
    201 F.3d 1324 (11th Cir. 2000) .................................................................................... 13

*United States* v. *King*,
    No. 10 Cr. 122 (JGK), 2012 WL 2261117 (S.D.N.Y. June 18, 2012) ........................ 7, 8, 10

*United States* v. *Lesak*,
    No. 07 Cr. 0396 (GEL), 2009 WL 1788411 (S.D.N.Y. June 23, 2009) ........................ 11, 12

*United States* v. *Madoff*,
    No. 09 Cr. 213 (DC), 2012 WL 1142292 (S.D.N.Y. Apr. 3, 2012) ...................................... 7

*United States* v. *Martinez*,
    228 F.3d 587 (5th Cir. 2000) ............................................................................................ 8

*United States* v. *Mendez*,
    No. 07-CR-107 (ARR), 2008 WL 3874318 (E.D.N.Y. Aug. 19, 2008) .............................. 13

*United States* v. *Nektalov*,
    440 F. Supp. 2d 287 (S.D.N.Y. 2006) ............................................................................... 5

*United States* v. *Peterson*,
    820 F. Supp. 2d 576 (S.D.N.Y. 2011) ....................................................................... 5, 9, 10

*United States* v. *Porchay*,
    533 F.3d 704 (8th Cir. 2008) .................................................................................. 5, 9, 10

*United States* v. *Reckmeyer*,
    836 F.2d 200 (4th Cir. 1987) ........................................................................................... 13

*United States* v. *Salti*,
    579 F.3d 656 (6th Cir. 2009) ............................................................................................ 6

*United States* v. *Schwimmer*,
    968 F.2d 1570 (2d Cir. 1992) ......................................................................................... 11

*United States* v. *Soreide*,
    461 F.3d 1351 (11th Cir. 2006) ................................................................................. 12, 13

*United States* v. *White*,
    306 Fed. Appx. 838 (5th Cir. 2007) ................................................................................ 12

*United States* v. *White*,
    675 F.3d 1073 (8th Cir. 2012) .......................................................................................... 6

*Willis Management (Vermont), Ltd.* v. *United States*,
   652 F.3d 236 (2d Cir. 2011).................................................................................... 12, 13

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 78j(b) .................................................................................................................. 1

15 U.S.C. § 78ff ..................................................................................................................... 1

17 C.F.R. § 240.10b-5 ............................................................................................................ 1

18 U.S.C. § 2 .......................................................................................................................... 1

18 U.S.C. § 371 ...................................................................................................................... 1

18 U.S.C. § 981(a)(1)(C) ........................................................................................................ 3

21 U.S.C. § 853 ...................................................................................................................... 3

21 U.S.C. § 853(a)(1) ............................................................................................................. 7

21 U.S.C. § 853(c) ................................................................................................................. 7

21 U.S.C. § 853(n) .............................................................................................................. 4, 5

21 U.S.C. § 853(n)(2) ............................................................................................................ 4

21 U.S.C. § 853(n)(6) ............................................................................................................ 5

21 U.S.C. § 853(n)(6)(A) ................................................................................................ passim

21 U.S.C. § 853(n)(6)(B) ................................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 5, 14

Fed. R. Crim. P. 32.2(c)(1) .................................................................................................... 5

The United States of America (the "Government"), by and through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to dismiss the third-party petition (the "Petition") of Rosemary A. Martoma ("Petitioner").

**BACKGROUND**

**1. Procedural Posture and The Court's Prior Forfeiture Ruling**

On or about August 22, 2013, a Grand Jury sitting in this District charged Mathew Martoma (the "defendant") in a three-count superseding indictment, S1 12 Cr. 973 (PGG) (the "Indictment"), with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371 (Count One), and two substantive counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2 (Counts Two and Three). More specifically, the Indictment charged that between Summer 2006 and July 29, 2008 the defendant, while employed at the "SAC Hedge Fund," orchestrated and profited from an insider trading scheme where confidential, clinical trial-phase data relating to the efficacy of a drug designed to treat Alzheimer's disease was obtained and traded on prior to the information being made public. *See* Indictment (Dkt. #61).

On February 6, 2014, after a month-long jury trial, the defendant was convicted on each of the three counts. On September 9, 2014, the defendant was sentenced; on that date the Court included in its judgment of conviction a preliminary order of forfeiture ordering the defendant to forfeit all property, real and personal, that constituted, or was derived from, proceeds traceable to the commission of the offenses alleged in Counts One through Three of the Indictment. *See* Preliminary Order of Forfeiture as to Specific Properties/Money Judgment ("September 9 POF"), filed September 9, 2014 (Dkt. #316). Specifically, the Court ordered the defendant to forfeit to

the Government 1) $9,380,322 in United States currency (the "money judgment"); 2) the real property and appurtenances, with all improvements and attachments thereon, located at 2464 W. Maya Palm Drive, Boca Raton, Florida, more particularly described as Parcel ID 06-43-47-29-10-005-0020 (the "Florida property"); 3) up to $3,246,320.62 in funds on deposit in account number 1512369446 at American Express Bank, held in the name of Mathew C. Martoma (the "Amex account"); 4) up to $245,000 in funds on deposit in account number 146674626 at ING Direct, held in the name of Rosemary Martoma (the "ING account"); and 5) up to $934,897.77 in funds or other assets in account number 88047594915 at Vanguard, held in the name of the Mathew and Rosemary Martoma Foundation (the "Vanguard account"); (properties 2 through 5 collectively, the "Specific Properties"; properties 3 through 5 collectively the "bank accounts" ).

In support of its Application for the Preliminary Order of Forfeiture/Money Judgment, the Government submitted a memorandum of law (the "August 11 Memorandum") and an accompanying declaration of F.B.I. Special Agent Gregory Coleman ("Coleman Declaration") (Dkt. # 297). Special Agent Coleman asserted that the defendant received a bonus of $9,380,322 from the SAC Hedge Fund based entirely on profits attributed to the insider trading scheme (the "2008 bonus"); this sum was the basis for the money judgment requested by the Government, and subsequently ordered by the Court. *See* Coleman Declaration ¶¶ 7-13. Special Agent Coleman also stated that the purchase of the Florida property was funded entirely by the defendant with a portion of the 2008 bonus. *Id.* ¶¶ 14-19. Special Agent Coleman further stated that the specified portions sought to be forfeited from the bank accounts were also directly and entirely traceable to the 2008 bonus. *Id.* ¶¶ 7-13, 20-30. In the August 11 Memorandum the Government explained that because the defendant's 2008 bonus consisted entirely of the net proceeds of illegal insider trading and because the Specific Properties were all funded by or

2

traceable to the defendant's 2008 bonus, the amount of the bonus as well as the Specific Properties were subject to criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and *United States* v. *Contorinis*, 692 F.3d 136, 145 n.3 (2d Cir. 2012) . *See* August 11 Memorandum 5-8.

On September 18, 2014, the defendant filed a Notice of Appeal of his conviction and sentence (Dkt. # 320).

### 2. The Current Petition

Rosemary Martoma, the wife of the defendant, has filed the current petition asserting an interest in the Specific Properties, which are subject to the September 9 POF (Dkt. # 316). Specifically, Petitioner alleges 1) that she possesses either sole legal right, title and interest in the Specific Properties or a vested spousal interest via a tenancy by the entirety; 2) that she is a bona fide purchaser for value of each of the Specific Properties; and 3) that she holds a constructive trust in each of the Specific Properties.[1]  *See* Third-Party Petition of Rosemary Martoma for Hearing on Forfeiture Proceedings Pursuant to 21 U.S.C. § 853 (the "Petition" or "Pet.") ¶¶ 3, 23-26.

## ARGUMENT

### 1. Introduction

Petitioner alleges an ownership interest in the Specific Properties claiming she holds legal right, title and interest in them either solely or through a tenancy by the entirety, that she was a bona fide purchaser for value, and that she holds a constructive trust.  All of Petitioner's claims fail for essentially the same reason: a spouse can assert no valid ownership interest in her husband's criminally-derived earnings because the Government's interest in those earnings vests

---

[1] Petitioner mentions other properties (a "Boston Apartment" and a "Boston Rental Property," Pet., ¶¶ 5-6) which were not subject to the September 9 POF.  Thus, Petitioner's ownership interest in these properties is not in issue.

3

at the time that the crime occurs. This well-established principal, as elaborated upon in greater detail below, derives from the controlling statute, 21 U.S.C. § 853(n)(6)(A). Here, as Special Agent Coleman's declaration and the September 9 POF establish, the Specific Properties were either purchased with or funded by proceeds of the defendant's crime. Thus the Government's interest in the Specific Properties is superior to Petitioner's and unquestionably trumps it. In this ancillary proceeding, Petitioner is not entitled to relitigate this Court's finding that the Specific Properties were proceeds, or traceable to proceeds, of the defendant's crime. Her backdoor attempts to do so—by, for example, claiming that she used her own funds to purchase the Florida property—are procedurally barred and factually unsubstantiated by the record.

Thus, pursuant to 21 U.S.C. § 853(n)(6)(A) and (B), the only possible avenue left for Petitioner to claim a valid ownership interest in the Specific Properties would be if she could show that she is bona fide purchaser for value. Any such claim fails as well, because in order to be a bona fide purchaser for value Petitioner had to have purchased the Specific Properties from *the defendant*, a fact that Petitioner not only never asserts, but one which is also belied by her pleadings. Moreover, to qualify as a bona fide purchaser for value, Petitioner had to have acquired the Specific Properties through an arm's length transaction, which could not have occurred between her and her husband. The Specific Properties are properly forfeited to the United States and the Petition should be denied.

    **2. Applicable Procedural Law**

After a court enters a preliminary order determining that property is subject to criminal forfeiture, Title 21, United States Code, Section 853(n) allows for an ancillary proceeding in which a third-party may "petition the court for a hearing to adjudicate the validity of [her] alleged interest in [criminally forfeited] property." 21 U.S.C. § 853(n)(2); *Pacheco* v.

*Serendensky*, 393 F.3d 348, 351 (2d Cir. 2004). The burden is on the petitioner to establish an interest in the property, superior to the interest of the Government, by a preponderance of the evidence. *See* 21 U.S.C. § 853(n)(6); *see also United States* v. *Nektalov*, 440 F. Supp. 2d 287, 295 (S.D.N.Y. 2006). Once the government has established that property is subject to forfeiture in the underlying criminal case, however, that determination may not be relitigated in the ancillary proceeding. *United States* v. *Davenport*, 668 F.3d 1316, 1321 (11th Cir. 2012) ("third parties . . . may not relitigate the merits of a forfeitability determination"); *United States* v. *Porchay*, 533 F.3d 704, 710 (8th Cir. 2008) ("there is no provision in § 853(n) to relitigate the outcome of [the forfeiture] proceedings"); *United States* v. *Peterson*, 820 F. Supp. 2d 576, 582 (S.D.N.Y. 2011) (same).

Federal Rule of Criminal Procedure 32.2(c)(1) authorizes the Government to move to dismiss a petition for failure to state a claim, and such motions are governed by the same standards applicable to motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b). *Pacheco*, 393 F.3d at 352. Under Rule 12(b)(6), a petition should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The facts set forth in a petition to adjudicate a third party's interest in property subject to forfeiture are assumed to be true. *United States* v. *Dreier*, No. 09 Cr. 085 (JSR), 2010 WL 1223087, at *2 (S.D.N.Y. Mar. 24, 2010). However, motions to dismiss pursuant to Rule 12(b)(6) must be granted if the complaint does not "contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). Thus, in order for the petition to survive dismissal a petitioner must "nudge[ ] their claims across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. The Court should consider not only the facts alleged in the

5

petition, but also "documents attached as exhibits or incorporated by reference in the [petition] and matters of which judicial notice may be taken." *Samuels* v. *Air Trans. Local,* 992 F.2d 12, 15 (2d Cir. 1993). The Court need not accept as true a legal conclusion or a legal conclusion couched as a factual allegation. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 (quoting *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986)).

The court adjudicating a petition claiming a third-party interest in criminal proceeds subject to a forfeiture order may dismiss the petition without holding a hearing if the petition fails to allege all elements necessary for recovery (*United States* v. *White*, 675 F.3d 1073, 1077 (8th Cir. 2012); *United States* v. *Egan*, No. 10 Cr. 191(JFK), 2011 WL 798852, *2 (S.D.N.Y. March 7, 2011) (finding persuasive the Sixth Circuit's holding, in *United States* v. *Salti*, 579 F.3d 656, 664 (6th Cir. 2009), that "discovery and a hearing are not required prior to a ruling on a motion to dismiss" a third-party claimant's petition ); *United States* v. *Emor*, Cr. No. 10-0298 (PLF), 2013 WL 3005366, at *4 (D.D.C. June 18, 2013)) or if the petitioner could not prevail even if a hearing were held (*White*, 675 F.3d at 1081).

### 3. Valid Bases for Third-Party Claims to Criminal Proceeds

There are only two ways that a third party can show a valid interest in crime proceeds subject to forfeiture: The petitioner "must either (a) have an interest in the property that is superior to the criminal defendant's because it arose *prior to* 'the time of the commission of the acts [that] gave rise to the forfeiture,' 21 U.S.C. § 853(n)(6)(A), or (B) be a 'bona fide purchaser for value' of the property who was 'reasonably without cause to believe that the property was subject to forfeiture' at the time of purchase, *id.* § 853(n)(6)(B)." *Pacheco*, 393 F.3d at 353 (emphasis added).

4. **The Government's Interest in the Specific Properties, Which the District Court Previously Determined Are Proceeds or Traceable to Proceeds of the Defendant's Illegal Insider Trading, are Superior to Petitioner's, Defeating her Ownership Interest and Constructive Trust Claims.**

   a. **The Government's Interest in the Specific Properties is Superior to Petitioner's Alleged Ownership Interests.**

Under 21 U.S.C. § 853(n)(6)(A) "a petitioner can establish, by a preponderance of the evidence, that he has a legal interest in the property that 'renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in [him] rather than the defendant or was superior to any right, title, or interest of the defendant *at the time of the commission of the acts*' giving rise to the forfeiture.'" [2] *United States* v. *Madoff*, No. 09 Cr. 213(DC), 2012 WL 1142292, at *3 (S.D.N.Y. Apr. 3, 2012) (quoting 21 U.S.C. § 853(n)(6)(A)) (emphasis added). Accordingly, Section 853(n)(6)(A)'s requirement that petitioner's property rights existed prior to the commission of the crime gives rise to the "relation back doctrine," whereby "the government's interest vests for offense property—'any property constituting, or derived from, any proceeds the person obtained directly or indirectly' as the result of the crime—at the time of the commission of the acts giving rise to the forfeiture." *Madoff*, 2012 WL 1142292, at *4 (quoting 21 U.S.C. § 853(a)(1) and citing § 853(c)). The purpose of this doctrine is to prevent defendants from doing an end-run around the forfeiture laws by transferring criminally-derived property prior to conviction. *United States* v. *Hooper*, 229 F.3d 818, 821 (9th Cir. 2000); *Madoff*, 2012 WL 1142292, at *4.

---

[2] The clauses "the right title or interest was vested in petitioner rather than the defendant" and "or was superior to any right, title or interest of the defendant" are both modified by "at the time of the commission of the acts giving rise to the forfeiture." *United States* v. *Hooper*, 229 F.3d 818, 821 (9th Cir. 2000); *United States* v. *King*, No 10 Cr. 122(JGK), 2012 WL 2261117, at *6 (S.D.N.Y. June 18, 2012).

7

The "relation back doctrine" closes one of only two possible avenues (the second—a petitioner's status as a bona fide purchaser for value of disputed property—is discussed *supra*) available to third-party petitioners, such as this one, who acquired their interest in forfeitable property *after* the commission of the crime. *Pacheco*, 393 F.3d at 353; *Hooper*, 229 F.3d at 821. To satisfy the temporal requirement of § 853(n)(6)(A), a petitioner must have had an interest in forfeitable property prior to the commission of the offense. *Id.* This "leads inevitably to the conclusion that § 853(n)(6)(A) is likely never to apply to proceeds of the crime." *Id.* at 821-22 (noting that this section of the statute is really tailored to apply to instrumentalities of the crime, rather than proceeds); *United States* v. *King*, No 10 Cr. 122(JGK), 2012 WL 2261117, at *6 (S.D.N.Y. June 18, 2012) ("where a petitioner claims an interest in property purchased with crime proceeds, § 853(n)(6)(A) will likely never apply, because crime proceeds, by definition, do not precede the commission of criminal activity but instead result from that criminal activity"). The "relation back doctrine" applies with no less force when a wife attempts to assert a spousal interest in property subject to forfeiture because it was acquired with crime proceeds. *United States* v. *Martinez*, 228 F.3d 587, 590 (5th Cir. 2000).

Here, Petitioner claims to hold legal right, title, and interest in the Specific Properties, putting forth various allegations in support of her claim. For example, Petitioner claims that her name has appeared on the title to the Florida property since it was recorded on December 30, 2010 (Pet. ¶ 9); that she has a joint ownership interest in the Amex account held in the defendant's name because she agreed to transfer her funds into it (Pet. ¶ 10); that the ING account was opened in her name (Pet. ¶ 11); and that the Vanguard account, held in the name of the Mathew and Rosemary Martoma Foundation, names her as President (Pet. ¶ 12). Even

8

assuming, arguendo, the truth of these allegations,[3] the Government's interest in the Specific Properties is superior to Petitioners because it has already been determined by this Court when it ordered the forfeiture of the Specific Properties through the September 9 POF that the Specific Properties were all acquired with, or are themselves, the proceeds of the defendant's crime. *See* September 9 POF. Special Agent Coleman's declaration in support of the Government's application for the Preliminary Order of Forfeiture substantiates the Court's determination by showing that the Florida property and specified portions of the bank accounts were all acquired with or were themselves funds from the defendant's 2008 bonus, which constituted proceeds of the defendant's crime. *See* Coleman Declaration ¶¶ 4-30. By and large, Petitioner does not dispute this finding and, in any event, she may not relitigate it in this ancillary proceeding. *See Davenport*, 668 F.3d at 1321; *Porchay*, 533 F.3d at 710; *Peterson*, 820 F. Supp. 2d at 582. Therefore, under the "relation back doctrine" the government's interest vested in the proceeds of the defendant's crime—*i.e.* the Specific Properties, or the funds to which they are traceable—at the time of the commission of the crime and trump Petitioner's allegations of an ownership interest.

Petitioner's conclusory claims, offered without any factual support, that "[t]he legal right, title, and interest in the Specific Properties were vested in [her] *at the time of the commission of the acts* that gave rise to the forfeiture of the Specific Properties" (Pet. ¶ 24) (emphasis added) does not pass the *Twombly* smell test. *Twombly*, 550 U.S. at 555, 570 (requiring that a "claim to relief . . . [must be] plausible on its face," and that even at the pleading stage "legal conclusion[s] couched as factual allegations" must be rejected). Nor does her claim that she "agreed to use her

---

[3] For the purposes of this motion the Government accepts, without conceding, that these allegations are true. Were litigation regarding these claims to proceed, Petitioner's ownership claims would be the subject of discovery.

9

funds to purchase the Florida Home" (Pet. ¶ 9). This is because, as stated above, this Court already determined that the Specific Properties constituted or were derived from the proceeds of the defendant's crime. Thus the defendant's ownership of the Specific Properties and Petitioner's alleged interest in them—namely, bank accounts and a house all funded with proceeds of the defendant's crime—could not logically have existed at the time the defendant committed his crime.[4] Indeed, the defendant's illegal insider trading occurred between Summer 2006 and July 29, 2008 (*see* Indictment ¶ 8) and Special Agent Coleman's Declaration asserts that that the defendant received the first installment of his bonus on or about December 30, 2008, and the second, final installment on or about November 12, 2010, after the commission of his crimes, that the bank accounts came into existence either on or after these dates, and that the Florida property was purchased after these dates. *See* Coleman Declaration ¶¶ 4-30.

Moreover, Special Agent Coleman traced every dollar ordered forfeited by the Sept 9 POF from the bank accounts, as well as every dollar used to purchase the Florida property, to the defendant's 2008 bonus. *Id.* These facts "lead[] inevitably to the conclusion" that under the "relation back doctrine" § 853(n)(6)(A) does not apply to the Specific Properties, the proceeds of the defendant's crime (*see Hooper*, 229 F.3d at 821-22) "because crime proceeds, by definition, do not precede the commission of criminal activity" (*see King* 2012 WL 226117, at *6). Petitioner's back door attempt at relitigating the September 9 POF finding, especially in the form of unsupported and/or conclusory statements, should not be countenanced by this court. *See Porchay*, 533 F.3d at 710; *Peterson*, 820 F. Supp. 2d at 582. Thus Petitioner's statement that she

---

[4] Notably, the September 9 POF only orders forfeiture of the *proceeds* of the defendant's crime, and any property traceable thereto, not the instrumentalities of his crime.

10

held a legal interest in the specific properties at the time of the commission of the defendant's crime is both legally barred and factually impossible.[5]

Petitioner's final claims—that she placed her own funds into the Amex account (Pet. ¶ 10) and that she contributed to all the bank accounts through her efforts as a wife and mother (Pet. ¶ 12) do not entitle her to the relief she seeks. Indeed, these alleged factual claims are not necessarily inconsistent with Special Agent Coleman's declaration. The September 9 POF only orders forfeiture of the proceeds of the defendant's crime from the bank accounts and does not seek anything additional, including contributions to the accounts Petitioner claims to have made.

### b. The Government's Interest in the Specific Properties is Superior to Petitioner's Alleged Possession of a Constructive Trust.

Petitioner claims a possessory interest in the Specific Properties because, she alleges, she holds a constructive trust in each of them.[6] *See* Pet. ¶¶ 3, 26. It is, however, "hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *United States* v. *Lesak*, No. 07 Cr. 0396 (GEL), 2009 WL 1788411, at *5 (S.D.N.Y. June 23, 2009) (quoting *United States* v. *Benitez*, 779 F.2d 135, 140 (2d Cir. 1985). Thus an order subjecting property to forfeiture in which a petitioner claims a constructive trust interest must be amended "*only* if the District Court finds the property ordered forfeited is traceable to property held in constructive trust." *United States* v. *Schwimmer*, 968 F.2d 1570, 1574 (2d Cir. 1992) (emphasis added); *accord Lesak*,

---

[5] It is worth noting that when the defendant, Petitioner's husband, had an opportunity to challenge the Government's asserted facts in support of its application for a forfeiture order, he never disputed Special Agent Coleman's tracing analysis. *See* Defendant's September 5, 2014 Letter in Response to the Government's Application for an Order of Forfeiture (Dkt. # 304).

[6] For the purposes of this motion the Government accepts, without conceding, that Petitioner's factual claims in support of the existence of a constructive trust are true. Were litigation regarding this claim to proceed, Petitioner's claim of holding a constructive trust in the Specific Properties would be the subject of discovery.

11

1788411, at *5.  Although state law would determine whether a petitioner has established prima facie entitlement to a constructive trust (*Willis Management (Vermont), Ltd.* v. *United States*, 652 F.3d 236, 242 (2d Cir. 2011); *Lesak*, 2009 WL 1788411, at *5) there is no need to turn to state law when the property subject to a forfeiture order is not traceable to a petitioner's interest in a constructive trust.  *See Lesak*, 1788411, at *5.

Here, as has already been explained, the Specific Properties are proceeds, or traceable to proceeds, of the defendant's crime.  Therefore, under the same reasoning applied above demonstrating that the Government's interest in the Specific Properties is superior to, and defeats, Petitioner's alleged ownership interests, the Government's interest in the Specific Properties is correspondingly superior to Petitioner's alleged constructive trust interests.  This is because, as stated above, the government's interest vested in the defendant's crime proceeds when he committed his crime.  Therefore, the Government's interest in the Specific Properties had to exist prior to Petitioner's alleged constructive trust interest and, accordingly, is superior.

### 5. Petitioner is Not a "Bona Fide Purchaser for Value."

Because, as demonstrated above, Petitioner's interest in the Specific Properties arose only after the time of the events giving rise to their forfeiture, her only remaining basis for her petition would be as a bona fide purchaser for value.  *See* 21 U.S.C. § 853(n)(6)(B); *Pacheco*, 393 F.3d at 353.[7]  That subsection of the criminal forfeiture statute is only of benefit, however, to petitioners who are subsequent purchasers *from the defendant* of the defendant's interest in property later held subject to forfeiture.  *United States* v. *White*, 306 Fed. Appx. 838, 841 n.12 (5th Cir. 2007); *United States* v. *Soreide*, 461 F.3d 1351, 1356 (11th Cir. 2006) (because the

---

[7] For purposes of this motion to dismiss, the Government assumes, without conceding, that Petitioner was reasonably without cause to believe that the property was subject to forfeiture at the time her interest arose.  Were litigation regarding this claim to proceed, Petitioner's knowledge as to the forfeitability of the Specific Properties would be a subject of discovery.

12

defendant's wife did not contend that she purchased an interest in properties subject to an order of forfeiture from the defendant, she could not be "the type of bona fide purchaser that 21 U.S.C. § 853(n)(6)(B) protects"); *United States* v. *Reckmeyer*, 836 F.2d 200, 208 (4th Cir. 1987) (defining "bona fide purchaser for value" in a Section 853(n)(6)(B) context as a person who gives value "*to the defendant* in an arm's-length transaction") (emphasis added).

Moreover, a wife may not claim the protections offered by Section 853(n)(6)(B) when her husband gives away his interest in criminal proceeds to her as a gift. *United States* v. *Kennedy*, 201 F.3d 1324, 1334-35 (11th Cir. 2000). While the question of whether a petitioner fits within the definition of a bona fide purchaser for value is determined by state law (*Pacheco*, 393 F.3d at 353), it is not necessary to specifically define the term when there is no indication that even under the "broadest definition" of the term a petitioner could qualify. *United States* v. *Mendez*, No. 07-CR-107 (ARR), 2008 WL 3874318, *6 (E.D.N.Y. Aug. 19, 2008) (noting that this principle applied to both *Soreide* and *Kennedy*). At a bare minimum, a bona purchase for value would require an "arms' length transaction" because the forfeiture statute was designed to protect only arms' length transfers of property.[8] *See Willis Management*, 652 F.3d at 244-45.

Here, Petitioner's description of how she purportedly came to be a bona fide purchaser for value of the Specific Properties is comprised of a conclusory statement ("Mrs. Martoma is a bona fide purchaser for value" Pet. ¶ 25) and vague allusions ("[a]t the time that Mrs. Martoma and the defendant received the income used to [acquire the Specific Properties] . . . ." (Pet. ¶ 25); "Mrs. Martoma agreed to use her funds to purchase the Florida home based on the promise that she would have equal ownership interest, possession, and control over the Florida Home." (Pet. ¶

---

[8] An arms' length transaction is one that occurs in the ordinary course of business between parties, acting in good faith, with independent interests. *In re U.S. Med., Inc.*, 531 F.3d 1272, 1277 (10th Cir. 2008).

13

9)). The one thing Petitioner does make clear, however, is that she is *not* claiming to be a bona fide purchaser for value *from the defendant*. This is made apparent when she states, in the paragraph of her Petition devoted to her bona fide purchaser claim, that she "*and the defendant* received the income used to purchase [the Specific Properties]" (Pet. ¶ 25) (emphasis added). She also implies, when explaining that "she agreed to use her funds to purchase the Florida home" in order to share an interest in its ownership with the defendant (Pet. ¶ 9) that they would purchase the home together from some unnamed third party. Therefore, petitioner does not meet a threshold requirement for being a bona fide purchaser for a value under Section 853(n)(6)(B) because she does not claim to have obtained the Specific Properties from the defendant. On this basis alone her claim should be rejected.

Moreover, even assuming, arguendo, that Petitioner is somehow claiming she acquired the Specific Properties from the defendant, such a transaction with her husband could not, by definition, have occurred at arms' length and therefore could not constitute a bona fide purchase for value, as contemplated by Section 853(n)(6)(B). Similarly, assuming, arguendo, that Petitioner is alleging that the defendant gave her the Specific Properties as a gift, such factual circumstances would also defeat any claim to being a bona fide purchaser for value. As to the bank accounts, Petitioner fails to offer any support whatsoever for her claim to be a bona fide purchaser for value of these accounts. Thus Petitioner has "failed to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). Accordingly her Petition should be dismissed without a hearing.

## CONCLUSION

This Court determined that the Specific Properties were traceable to, or were themselves, proceeds of the defendant's crime and properly ordered their forfeiture. Petitioner's interest in

14

the Specific Properties arose only after the commission of the defendant's crimes and therefore the Government's interest in them is superior to hers. Petitioner could not be a bona fide purchaser for value because she did not acquire the Specific Properties from the defendant or through an arms' length transaction. For these reasons, the Petition fails to state a valid basis for amending the Court's Preliminary Order of Forfeiture. Therefore, the Petition should be dismissed without a hearing.

Dated: January 9, 2014
       New York, New York

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By:     /s/
Christine I. Magdo
Assistant United States Attorney
(212) 637-2297