```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA      :
                              : DECLARATION OF STEVEN YAGODA IN
        -v.-                    SUPPORT OF THE GOVERNMENT'S MOTION
                              : TO DISMISS THE PETITION OF
MATHEW MARTOMA,                 ROSEMARY MARTOMA
                              :
            Defendant.          S1 12 Cr. 973 (PGG)
                              :
- - - - - - - - - - - - - - - x

STATE OF NEW YORK           )
COUNTY OF NEW YORK          ) ss.:
SOUTHERN DISTRICT OF NEW YORK )
```

I, Steven Yagoda, pursuant to Title 28, United States Code, Section 1746, declares under penalty of perjury:

1. I am a Financial Analyst in the Asset Forfeiture Unit of the United States Attorney's Office for the Southern District of New York ("USAO-SDNY"), and have been so employed for approximately seven year. Prior to joining the USAO-SDNY, I worked as a Supervisory Special Agent with the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, for approximately five years, and prior to that, I was a special agent with the U.S. Customs Service for approximately twenty-three years. During my more than thirty-five years in federal law enforcement, I have gained experience in the areas of asset forfeiture, asset tracing, and the investigation of money laundering, terrorist financing, and U.S. Customs fraud.

1

2. The information contained in this Declaration is based upon my review of documents gathered during the course of the investigation of this matter, as well as information obtained from other sources, including conversations with other law enforcement officers. Because this Declaration is being submitted for a limited purpose, it does not include every fact that I have learned during the course of the investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. This Declaration is submitted in support of the Government's motion to dismiss the petition of third party Rosemary Martoma ("Petitioner") in the proceeding ancillary to the criminal case in which her husband, Mathew Martoma ("defendant") was convicted after trial. At sentencing, this Court entered a Preliminary Order of Forfeiture / Money Judgment in which the defendant was held liable for a personal money judgment in the amount of $9,380,322, and forfeited all of his right, title, and interest in the following specific properties:

    a. The real property and appurtenances, with all improvements and attachments thereon, located at 2464 W. Maya Palm Drive, Boca Raton, Florida, more particularly described as: Parcel ID 06-43-47-29-10-005-0020 (the "Florida Property");

    b.    Up to $3,246,320.62 in funds on deposit in account number 1512369446 at American Express Bank, held in the name of Mathew C. Martoma (the "AmEx Account");

    c.    Up to $249,648.10 in funds on deposit in account number 146674626 at ING Direct, held in the name of Rosemary Martoma (the "ING -4626 Account"); and

    d.    Up to $934,897.77 in funds or other assets in account number 88047594915 at Vanguard, held in the name of the Mathew and Rosemary Martoma Foundation (the "Vanguard Account").

(collectively, the "Specific Properties").

    4.    In connection with its Application for a Preliminary Order of Forfeiture / Money Judgment, the Government submitted the Declaration of Special Agent Gregory Coleman, dated August 11, 2014 (the "Coleman Declaration"), which included a tracing analysis showing that the Specific Properties were purchased with funds traceable to the defendant's crime proceeds. The Coleman Declaration is incorporated herein by reference.[1]

    5.    In light of questions regarding the tracing analysis raised by counsel for Ms. Martoma in her Opposition to the Government's Motion to Dismiss the Petition, this Declaration explains the tracing analysis in a more detailed manner.[2] With one trivial exception, I reach the same conclusion that Special Agent

---

[1] Special Agent Coleman retired from the FBI in January 2015.
[2] As neither Petitioner nor defendant has claimed that the transfers described in the Coleman Declaration were incorrect, I did not review the underlying bank records, and am assuming that the transfers described in the Coleman Declaration are accurate.

Coleman did, namely, that the Specific Properties are subject to forfeiture because they are traceable to crime proceeds. The purpose of this Declaration is, for the sake of clarity among the parties and the Court, explain each step of the tracing analysis with more specificity and to show the flow of crime proceeds to each of the Specific Properties.

### The Defendant's Bonus Payments were Deposited into the USAA -2552 Account

6. The defendant's 2008 bonus, which he received as a result of the illegal insider trading for which he was convicted after trial, was paid in two installments. The first installment of $4,373,024.96 was paid on or about December 30, 2008 (the "First Bonus Payment"). The second installment of $2,132,156.54 was paid on or about November 12, 2010 (the "Second Bonus Payment", together the "Bonus Payments"). The total amount of these payments, which were made after tax withholdings and were subject to other adjustments, was $6,505,181.50. The Bonus Payments were made into account number 22972552 at USAA Bank, held in the name of the defendant and his wife, Rosemary Martoma (the "USAA -2552 Account").

### The Defendant Transfers Crime Proceeds Back and Forth between Two USAA Accounts

7. As stated above, the defendant received the First Bonus Payment of approximately $4,373,024.96 into the USAA -2552 Account on or about December 30, 2008. From December 30, 2008

through February 23, 2009, the balance in the USAA -2552 Account did not drop below $4,354,086.73.

8.  On or about February 23, 2009, the defendant transferred approximately $4,354,086.73 from the USAA -2552 Account to an account number ending in -7649 at USAA Bank, held in the name of Matthew C. Martoma and Rosemary Martoma JTWROS (the "USAA -7649 Account"). The entire amount transferred ($4,354,086.73) is traceable to the defendant's First Bonus Payment. From February 23, 2009 through October 28, 2010, the balance in the USAA -7649 Account did not drop below $6,664,664.19.

9.  On or about October 28, 2010, the defendant transferred approximately $6,664,711.66 from the USAA -7649 Account to the USAA -2552 Account, of which $4,354,086.73 can be traced to the First Bonus Payment. From October 28, 2010 through November 12, 2010, the balance in the USAA -2552 account did not drop below $4,354,086.73.

10. As stated above, the defendant received the Second Bonus Payment of $2,132,156.54 into the USAA -2552 Account on or about November 12, 2010. That deposit brought the total amount of criminally-derived funds in the USAA -2552 Account to approximately $6,486,243.27. From November 12, 2010 through December 16, 2010, the balance in the USAA -2552 Account did not drop below $6,486,243.27. It is this $6,486,243.27 in crime proceeds that will

be traced to the Specific Properties in the remainder of this Declaration.

### The Defendant Moves More than $5 Million in Crime Proceeds to the AmEx Account

11. On or about December 16, 2010, the defendant transferred approximately $7,300,000 from the USAA -2552 Account into the AmEx Account. Of this amount transferred, the sum of $5,156,529.27 is traceable to the Bonus Payments. The amount remaining in the USAA -2552 Account after the $7,300,000 transfer was $1,554,389.71, of which $1,196,000 is traceable to the Bonus Payments ($6,486,243.27 minus $5,156,529.27 equals $1,196,000). From December 16, 2010 through December 21, 2010, the balance in the USAA -2552 did not drop below $1,196,000. The tracing of the remaining $1,196,000 in criminal proceeds out of the USAA -2552 Accounts continues in paragraphs 13 and 18.

12. From December 16, 2010 through July 11, 2013, the balance in the AmEx Account did not drop below the $3,246,320.62 that is traceable to the Bonus Payments and therefore subject to forfeiture. The AmEx account contained approximately $3,246,320.62 when it was restrained with the consent of the defendant. The entire amount is traceable to the Bonus Payments and therefore subject to forfeiture. The tracing of the $1,910,208.65 in crime proceeds that

6

left the AmEx Account before it was restrained continues in paragraphs 14 and 24.

### The Purchase of the Florida Property in Two Installments of Crime Proceeds

13.  On or about December 21, 2010, the defendant made a down payment of approximately $196,000 on the Florida Property from the USAA -2552 Account. The entire down payment amount can be traced to the Bonus Payments. The tracing of the $1,714,208.65 in crime proceeds remaining in the USAA -2552 Account after the down payment was made continues in paragraph 18.

14.  Also on or about December 21, 2010, the defendant transferred approximately $2,000,000 from the AmEx Account into a checking account at Bank of America (the "BoA Checking Account"). Of the amount transferred, $1,766,208.65 is traceable to the Bonus Payments. The tracing of the $144,000 in crime proceeds remaining in the AmEx Account after the December 21, 2010 transfer continues in paragraph 24.

15.  Later that day, the defendant transferred $2,000,000 from the BoA Checking Account into a money market account at Bank of America (the "BoA Money Market Account"). Again, of the amount transferred, $1,766,208.65 is traceable to the Bonus Payments. From December 21, 2010 through December 29, 2010, the balance in the BoA Money Market Account did not fall below approximately $1,766,208.65.

16. On or about December 29, 2010, Martoma made a payment from the BoA Money Market Account of approximately $1,766,208.65 to pay for the remainder of the approximately $1,960,000 purchase price of the Florida Property. The entire payment of $1,766,208.65 is traceable to the Bonus Payments.

17. The analysis summarized above in paragraphs 13-16 demonstrates that the defendant purchased the Florida Property with two payments, both of which consisted entirely of funds traceable to the Bonus Payments. As a result, the Florida Property is subject to forfeiture.

### The Vanguard Account

18. On or about December 27, 2010, the defendant transferred approximately $1,000,000 from the USAA -2552 Account to an account at Fidelity in the name of the Mathew and Rosemary Martoma Foundation (the "Fidelity Account"). Of the one million dollars transferred, $934,897.77 is traceable to the Bonus Payments. From December 27, 2010 through February 2, 2011, there was no activity in the Fidelity Account.

19. On or about February 2, 2011, the defendant transferred approximately $1,000,068 from the Fidelity Account to the Vanguard Account. Of the amount transferred, again, $934,897.77 is traceable to the Bonus Payments.

8

20. From February 2, 2011 through June 20, 2013 the value of the Vanguard Account did not drop below $934,897.77. The defendant consented to the restraint of $934,897.77 in the Vanguard Account.

21. The analysis summarized above demonstrates that $934,897.77 of the Bonus Payments can be traced into the Vanguard Account, and that therefore $934,897.77 from the Vanguard Account is subject to forfeiture.

### The ING -4626 Account

22. On or about January 5, 2011, Martoma transferred approximately $58,000 from the USAA -2552 Account into an account ending in -2321 at ING Direct (the "ING -2321 Account"). From January 5, 2011 through January 10, 2011 the balance in the ING -2321 Account did not drop below $58,000. On or about January 10, 2011, Martoma transferred approximately $300,390 from the USAA -2552 Account into the ING -2321 Account. Of the total amount transferred into the ING -2321 account on January 5 and January 10, 2011, $101,000 is traceable to the defendant's bonus payments. From January 10, 2011 through June 17, 2011, the balance in the ING -2321 Account did not drop below $101,000.

23. On or about June 17, 2011, Martoma transferred approximately $101,000 from the ING -2321 Account into the ING -4626 Account. The entire transfer of $101,000 is traceable to the Bonus

9

Payments. Those funds remained in the ING -4626 Account, and constitute a portion of the money that was restrained in the ING -4626 Account.

24. From December 16, 2010 through June 22, 2011, the balance in the AmEx Account did not drop below $340,000. On June 21, 2011, Martoma transferred approximately $250,000 from the AmEx Account into the ING -2321 Account. On or about June 22, 2011, Martoma transferred approximately $90,000 from the AmEx Account into the ING -2321 Account. Of that total transfer of $340,000 from the AmEx Account to the ING -2321, $144,000 is traceable to the defendant's bonus payments. From June 21, 2011 through June 26, 2011, the balance in the ING -2321 Account did not fall below approximately $144,000.

25. On June 26, 2011, the defendant transferred approximately $144,000 from the ING -2321 Account into the ING -4626 Account. The entire amount of this transfer is traceable to the Bonus Payments. The $144,000 transfer, combined with the transfer of $101,000 described in paragraph 23, brought the balance of criminal proceeds in the ING -4626 Account to $245,000. From June 26, 2011 through July 10, 2013, the balance of the ING -4626 Account did not fall below $245,000.

26. The analysis summarized above demonstrates that approximately $245,000 of the Bonus Payments can be traced into the

ING -4626 Account.  The balance in the ING -4626 Account was $249,948.10 as of July 10, 2013 and the defendant consented to the restraint of those funds.  Since only $245,000 of the funds restrained in the ING -4626 can be traced to Martoma's bonus payments, approximately $4,948 is not traceable to the Bonus Payments.  The $4,948 that cannot be traced to the Bonus Payments represents less than 0.08% of the $6,505,181.50 in criminal proceeds received by the defendant.

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed this 13th day of March 2015:

STEVEN YAGODA
Financial Analyst
United States Attorney's Office
Southern District of New York