

Richard M. Strassberg
+1 212 813 8859
rstrassberg@goodwinlaw.com

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, New York  10018

goodwinlaw.com
+1 212 813 8800

February 20, 2026

**VIA ECF**
Honorable Paul G. Gardephe
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   **United States v. Martoma**, No. 12 Cr. 973 (PGG)

Dear Judge Gardephe:

Pursuant to the Court's Orders dated December 23, 2025 ("12/23/2025 Order," Dkt. #353), and January 12, 2026 (Dkt. #355), Rosemary A. Martoma respectfully submits this response to the Government's Letter dated February 2, 2026 (the "Government's Letter" or "Gov't Ltr.").[1]

## PRELIMINARY STATEMENT

The Government asks this Court to grant its motion to dismiss and deny Mrs. Martoma's Petition because, "[a]s a matter of law, a wife who receives gifts and transfers of forfeitable crime proceeds from her husband is not entitled to keep them." (Gov't Ltr. at 12.)[2] But that strawman argument demonstrates why this Court should deny the Government's motion to dismiss. The Government relies on the factually disputed assumptions that the Specific Properties were (1) "gifts" from her husband and (2) "directly traceable proceeds of a crime." (See, e.g., Gov't Ltr. at 1, 12.) Those two assumptions – which reject Mrs. Martoma's allegations and depend on extrinsic evidence that actually contradicts the Government's assumptions and thereby supports Mrs. Martoma's allegations – are not a proper basis for the Government's motion to dismiss.

---

[1] Mrs. Martoma incorporates by reference her Opposition (Dkt. #339) and Sur-Reply (Dkt. #342-1) and addresses here only the issues on which this Court requested supplemental briefing. All capitalized terms have the same meanings as in the Opposition and Sur-Reply unless otherwise noted.

[2] All alterations, citations, emphasis, and internal quotation marks are omitted unless otherwise noted.



Honorable Paul G. Gardephe
February 20, 2026
Page 2

**First**, Mrs. Martoma has never alleged that any of the Specific Properties were "gifts" from her husband. Rather, Mrs. Martoma has adequately alleged that she paid value for the Specific Properties because (1) she possessed untainted funds from multiple sources with which the Specific Properties were purchased at least in part (see Petition ¶¶ 9-12, 26; Opp. at 3, 19-24; Sur-Reply at 2-3, 10-12) and (2) she gave up her career to take on a larger role in caring for the couple's children and managing household affairs based on her husband's promise of equal ownership interest, possession, and control over all of her husband's income (see Petition ¶¶ 4, 26; Opp. at 2-4, 12, 17, 25, 28; Sur-Reply at 13). The Government's arguments, which simply reject Mrs. Martoma's well pleaded allegations, are not appropriate on a motion to dismiss.

**Second**, Mrs. Martoma has never alleged that any of the Specific Properties were "directly traceable proceeds of a crime" by her husband. Instead, Mrs. Martoma has adequately alleged that the Specific Properties were purchased with commingled or untainted funds. (See Petition ¶¶ 9-12, 26; Opp. at 3, 19-24; Sur-Reply at 2-3, 10-12.) Again, the Government's arguments contradict Mrs. Martoma's well pleaded allegations and should not be considered on a motion to dismiss. Moreover, the Government admits that it "has submitted multiple declarations tracing the proceeds of Martoma's crime to each piece of Specific Property that the Government seeks to forfeit." (Gov't Ltr. at 5.) But, as Mrs. Martoma pointed out in detail in her prior submissions, the Government's extrinsic evidence is rife with contradictions and, if anything, supports Mrs. Martoma's allegations that the Specific Properties were purchased with commingled or untainted funds. (See Petition ¶¶ 9-12, 26; Opp. at 3, 19-24; Sur-Reply at 2-3, 10-12.)

In short, the Government's Letter confirms that the Government's motion to dismiss should be denied because it requires assumptions that reject Mrs. Martoma's well pleaded allegations and introduces factual disputes that cannot be decided at this stage. Discovery is necessary to allow Mrs. Martoma the opportunity to substantiate her claims and, given the time that has passed since Mrs. Martoma filed her Petition, there is no harm to the Government in permitting Mrs. Martoma to develop the record. As the Second Circuit has made clear, Mrs. Martoma is entitled to "take evidence – either through a course of discovery or in a hearing – so that she may attempt to prove the validity of her interest in the [Specific Properties]." Pacheco v. Serendensky, 393 F.3d 348, 356 (2d Cir. 2004).

This Court should deny the Government's motion to dismiss Mrs. Martoma's Petition.

**LEGAL STANDARD**

The Government does not and cannot dispute that the pleading standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) applies here. Pacheco, 393 F.3d at 352. (See also Gov't Mem. at 4-6; Opp. at 6-7.) As the Second Circuit has explained, under Federal Rule of Criminal Procedure 32.2, which governs proceedings relating to criminal forfeiture including third-party petitions, "when a third party files a petition asserting an interest in property to be forfeited, the court must conduct an



Honorable Paul G. Gardephe
February 20, 2026
Page 3

ancillary proceeding." Pacheco, 393 F.3d at 352. "[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). Only after some discovery has taken place may a party move for summary judgment; at that point the petitioner would be required to produce evidence supporting a prima facie case of entitlement, but not before." Id.; see also Willis Mgmt. (Vt.), Ltd. v. United States, 652 F.3d 236, 241 (2d Cir. 2011). Accordingly, in reviewing Mrs. Martoma's Petition, this Court (and the Government) must "assume that the facts set forth in the petition are true." Willis, 652 F.3d at 242; see also Pacheco, 393 F.3d at 352. "[A] petition should not be dismissed if the petitioner has stated enough facts to state a claim to relief that is plausible on its face." Willis, 652 F.3d at 241-42.

The Government utterly ignores the pleading standard in its motion to dismiss Mrs. Martoma's Petition. As discussed, the Government rejects the factual allegations in Mrs. Martoma's Petition and introduces (contradictory) extrinsic evidence in order to present (factually disputed) arguments that Mrs. Martoma supposedly has not made a prima facie showing to defeat the Government's motion to dismiss. The Government cannot bypass the requirements of Federal Rule of Criminal Procedure 32.2 and Second Circuit law and make what amounts to a premature motion for summary judgment – in the guise of a motion to dismiss – before Mrs. Martoma has the benefit of discovery. To accept the Government's arguments and dismiss the Petition on the pleadings would be reversible error under blackletter Second Circuit law. Pacheco, 393 F.3d at 352 ("The district court therefore erred by requiring [the petitioner] to make a prima facie showing to defeat the government's motion to dismiss.").

## ARGUMENT

### I.     The Government Disregards Second Circuit Precedent.

This Court first asks "[w]hether federal or state law – or some combination of the two – governs Petitioner's claim that she is a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B) with respect to the Specific Properties. In this regard, the Government will address Second Circuit precedent applying state law to the question of whether a petitioner was a bona fide purchaser for value." (12/23/2025 Order at 2.) Initially, the Government did not dispute that "the question of whether a petitioner fits within the definition of a bona fide purchaser for value is determined by state law." (Gov't Mem. at 13.) The Government now changes course, arguing that "this Court looks to both state and federal law to evaluate the Petitioner's claim that she is a bona fide purchaser for value." (Gov't Ltr. at 1.) Specifically, "state law may determine the threshold question of whether a petitioner has articulated a sufficient legal interest in the property at issue, but federal law will determine whether that interest defeats the Government's claim to forfeitable property." (Gov't Ltr. at 2.) The Government had it right the first time.

As the Second Circuit has made clear – repeatedly – "whether a petitioner is a bona fide purchaser is a question appropriately determined by reference to state law." Pacheco, 393 F.3d at 353-56; see also Willis, 652 F.3d at 242 ("State law determines a petitioner's legal interest in the property at issue."). The



Honorable Paul G. Gardephe
February 20, 2026
Page 4

Government admits as much, but then proceeds to twist itself in knots trying to distinguish that binding precedent. (Gov't Ltr. at 3-4.) The Government asserts that, "once a petitioner has established a legally cognizable property interest under state law," then "courts must look to federal law to determine whether that property interest is forfeitable pursuant to the applicable statutes." (Gov't Ltr. at 4.) The Government does not cite any Second Circuit precedent for its position, however, because there is none.

Decisions by the Second Circuit and District Courts within it overwhelmingly have understood Pacheco and Willis to hold that state law determines a petitioner's legal interest in the property at issue, including whether the petitioner is a bona fide purchaser for value. See, e.g., United States v. Watts, 786 F.3d 152, 161 (2d Cir. 2015) ("The extent of a petitioner's interest in the forfeited property is determined in accordance with state law."); United States v. Kurland, 771 F. Supp. 3d 142, 150 (E.D.N.Y. 2025) ("State law determines a third party petitioner's legal interest in the property at issue."); United States v. Meiri, 754 F. Supp. 3d 432, 443 (S.D.N.Y. 2024) ("[T]he question whether a petitioner is a bona fide purchaser is determined by reference to state law."); United States v. Jimenez, 2023 WL 6882408, at *2 (S.D.N.Y. Oct. 18, 2023) ("The question of whether a petitioner is a bona fide purchaser is a question of state law."); United States v. Wolf, 375 F. Supp. 3d 428, 436 (S.D.N.Y. 2019) ("[T]he extent of the petitioner's interest in the property to be forfeited is determined in accordance with state law."); United States v. Calle Serna, 2017 WL 3738413, at *3 (E.D.N.Y. Aug. 29, 2017) ("The determination of the relevant property interests, including the definition of a bona fide purchaser for value, are governed by state law.").[3] In this case, the state law is Florida law, as the Government recognizes.

## II. The Government Disregards Florida Law.

This Court next asks "[w]hether Petitioner Martoma has adequately alleged that she is a bona fide purchaser for value with respect to the Specific Properties" and "[w]hether a spouse who gives up her career to take on a larger role in caring for the couple's children and managing household affairs may – based on the spouse's promise of equal ownership interest, possession, and control over all of the spouse's

---

[3] The Government cites four cases within the Second Circuit as "support" for its position: United States v. Peters, 732 F.3d 93 (2d Cir. 2013), United States v. Madoff, 2012 WL 1142292 (S.D.N.Y. Apr. 3, 2012), United States v. Davis, No. 00 Civ. 8296 (SHS), 2001 WL 47003 (S.D.N.Y. Jan. 17, 2001), and United States v. Nektalov, 440 F. Supp. 2d 287 (S.D.N.Y. 2006), aff'd sub nom. E.J.D. Diamond Mfr. v. United States, 273 F. App'x 65 (2d Cir. 2008). (See Gov't Ltr. at 2-4.) Peters, Davis, and Nektalov nowhere address whether federal or state law governs a petitioner's claim that she is a bona fide purchaser for value. Madoff holds that state law governs: "Under 21 U.S.C. § 853(n)(6)(B), a third-party petitioner may prevail if he establishes that: (1) he acquired the interest in question as a bona fide purchaser for value as defined by state law; (2) he possesses a legal right, title, or interest in the forfeited property; and (3) he was reasonably without cause to believe that the property was subject to forfeiture at the time the interest was acquired." 2012 WL 1142292, at *5. None of those cases supports the Government's position.



Honorable Paul G. Gardephe
February 20, 2026
Page 5

income – qualify as a bona fide purchaser for value of the spouse's future income under applicable law." (12/23/2025 Order at 3.) The Government's answers are that "the Petitioner has not adequately alleged that she is a bona fide purchaser for value" and "there is no case law to support the view that a spouse who abdicates her own professional career for her spouse's benefit may qualify as a bona fide purchaser for value – to the contrary, courts to have considered the question have rejected this theory." (Gov't Ltr. at 1.) The Government ignores Mrs. Martoma's well pleaded allegations, relies on extrinsic evidence beyond Mrs. Martoma's Petition, and misconstrues (or fails to cite altogether) cases applying Florida law – all of which demonstrate that the Government's motion to dismiss should be denied.

### A. Mrs. Martoma Has Adequately Alleged That She Is A Bona Fide Purchaser For Value With Respect To The Specific Properties.

Mrs. Martoma has adequately alleged that she possessed untainted funds from multiple sources with which the Specific Properties were purchased at least in part and, therefore, she is a bona fide purchaser for value with respect to the Specific Properties.

Mrs. Martoma has adequately alleged that she possessed untainted funds. Specifically:

- "Mrs. Martoma was a practicing pediatrician when she married the Defendant in 2003 and contributed her salary to the family income by depositing it into bank accounts that she held jointly with the Defendant." (Petition ¶ 4.)

- "Mrs. Martoma and the Defendant purchased their home at 234 Causeway Street, #1102, Boston, Massachusetts ('Boston Apartment'), and title to the property was duly recorded on or about March 29, 2004, both of their names appearing on the title and mortgage at the time of conveyance. Mrs. Martoma and the Defendant intended to have equal ownership interest, possession, and control over the Boston Apartment. The family moved to Connecticut in 2006, when the Defendant was hired to work at SAC Capital Advisors, L.P. ('SAC Capital'). After they moved out of their Boston Apartment, Mrs. Martoma and the Defendant managed, and continue to manage, the renting and maintenance of the property. Rental income from the Boston Apartment was part of the family income and contributed to the family accounts." (Petition ¶ 5.)

- "Mrs. Martoma and the Defendant purchased another property at 500 Atlantic Avenue, Unit 15G, Boston, Massachusetts ('Boston Rental Property'), and title to the property was duly recorded on or about November 17, 2006, both of their names appearing on the title and mortgage at the time of conveyance. Mrs. Martoma and the Defendant intended to have equal ownership interest, possession, and control over the Boston Rental Property. Mrs. Martoma and the Defendant managed the renting and maintenance of the property. Rental income from the Boston Rental Property was part of the family income and



Honorable Paul G. Gardephe
February 20, 2026
Page 6

- contributed to the family accounts.  In 2012, Mrs. Martoma and the Defendant arranged the subsequent sale of the Boston Rental Property.  The proceeds of the sale were part of the family income and contributed to the family accounts." (Petition ¶ 6.)

- "[W]hen their first child was born in 2005, Mrs. Martoma and the Defendant jointly agreed that she would give up her career in medicine so that Mrs. Martoma could take on a larger role in caring for their children and managing household affairs.  Mrs. Martoma gave up her career based on the promise of equal ownership interest, possession, and control over all of the Defendant's income – including the family income derived from the Defendant's work outside of the household – regardless of the bank account or asset into which it was deposited or invested over the duration of their marriage." (Petition ¶ 4.)

Other than the bonus that Mr. Martoma received from SAC Capital in 2008, the Government does not challenge any of those funds – including the other funds that Mr. Martoma received from SAC Capital – as crime proceeds.

Mrs. Martoma also has adequately alleged that the Specific Properties were purchased at least in part with commingled or untainted funds.  Specifically:

- "Mrs. Martoma has a joint ownership interest in the family home located at 2464 W. Maya Palm Drive, Boca Raton, Florida ('Florida Home').  Mrs. Martoma is on the title to the Florida Home and has appeared on the title to the Florida Home since that title was duly recorded on or about December 30, 2010, at the time of conveyance.  Mrs. Martoma agreed to use her funds to purchase the Florida Home based on the promise that she would have equal ownership interest, possession, and control over the Florida Home." (Petition ¶ 9.)

- "Mrs. Martoma has a joint ownership interest in the account at American Express Bank with account number 1512369446 ('Amex Account'), which was opened on or about December 14, 2010, and held in the name of the Defendant.  Mrs. Martoma agreed to transfer her funds into the Amex Account based on the promise that she would continue to have equal ownership interest, possession, and control over those funds." (Petition ¶ 10.)

- "Mrs. Martoma has the sole ownership interest in the account at ING Direct with account number 146674626 ('ING Account'), which was opened on or about June 17, 2011, and held in the name of Mrs. Martoma." (Petition ¶ 11.)

- "Mrs. Martoma has a joint ownership interest in the account at Vanguard with account number 88047594915 ('Vanguard Account'), which was opened on or about February 2, 2011, and held in the name of the Mathew and Rosemary Martoma Foundation, by reason of Mrs. Martoma being President of the Vanguard Account." (Petition ¶ 12.)



The Government submitted two declarations by Gregory Coleman and Steven Yagoda, respectively, purporting to trace the proceeds of Mr. Martoma's crime to the Specific Properties. (Gov't Ltr. at 5.) Those declarations present factual issues – not to mention inconsistencies that the Government fails to acknowledge – that this Court should not resolve on a motion to dismiss before Mrs. Martoma has an opportunity to develop the factual record. See Green v. Covidien LP, 2021 WL 1198833, at *8 (S.D.N.Y. Mar. 30, 2021) (Gardephe, J.) ("Before considering such a document on a motion to dismiss, however, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."). (See also Opp. at 13-15, 17-18, 21-23 & nn.10-12; Sur-Reply at 1-6.) Moreover, if those declarations show anything, they demonstrate that the Specific Properties were purchased with commingled or untainted funds. (See Opp. at 13-15, 21-23 & nn.10-12; Sur-Reply at 1-6.)

Based on Mrs. Martoma's well pleaded allegations (and the Government's declarations), Mrs. Martoma has adequately alleged that she is a bona fide purchaser for value with respect to the Specific Properties and her interest in the Specific Properties cannot be forfeited. The Seventh Circuit's decision in United States v. Lee, 232 F.3d 556 (7th Cir. 2000), is instructive. There, the Government moved to substitute the family home in Florida in an attempt to recover money forfeited by Mr. Jack Lee. Id. at 560. Mrs. Margaret Lee, who still was married to Mr. Lee, argued that her husband had no forfeitable property interest in the family home because it was owned by the couple as tenants by the entirety. Id. The Seventh Circuit agreed. Id. The Seventh Circuit explained that, like the Second Circuit, "[w]e look to state property law to determine whether Jack's interest in the Lee home was a property interest subject to forfeiture." Id. The Seventh Circuit continued that, like Mr. and Mrs. Martoma, "Margaret and Jack Lee held their Florida home in a tenancy by the entirety, a form of title under which a husband and wife may jointly own an estate in Florida." Id. The Seventh Circuit concluded: "Florida law clearly prohibits the forfeiture of Jack's interest in the family home without Margaret's consent. Margaret's security as against her husband's creditors, such as the federal government here, is exactly what the law of tenancy by the entirety protects." Id. at 560-61. This Court should reach the same conclusion on the analogous facts of this case.[4]

The Seventh Circuit also explained the practical considerations that supported its decision. If Mr. Lee's tenancy by the entirety property interest were forfeited to the Government, then that would substantially diminish Mrs. Lee's rights:

> Margaret would, as a practical matter, lose her right to control and manage the estate. The government would be Margaret Lee's co-tenant in a form of property ownership which requires both parties to participate in nearly every decision concerning the property. No

---

[4] The Seventh Circuit noted, "should it become relevant in the future, that if the tenancy by the entirety is ever split in accordance with Florida law, Jack and Margaret's interests would then become distinct and separable so that a later forfeiture of Jack's interest in the property would not affect Margaret's rights." Id. at 562.



Honorable Paul G. Gardephe
February 20, 2026
Page 8

mortgage would be possible without the signature of both tenants (since otherwise creditors would risk losing their entire investment at the death of one of the Lees). Margaret would need the government's approval to sell the property or to transfer the estate into a tenancy in common. Though she would be fully liable for taxes and other costs of homeownership in any tenancy by the entirety, in a normal tenancy by the entirety there would be a chance that her husband, also fully liable for the property, would contribute to those expenses. Because the government (as it admitted at oral argument) would not be there with its checkbook, she could do little more than sit by and hope that the estate would not fall into disrepair. We therefore conclude that the attributes of tenancy by the entirety recognized by Florida law here should not have been overridden by the district court, and the house should have been considered unavailable for a substitute asset order.

Id. at 561-62. The same is true here.

At the very least, Mrs. Martoma has adequately alleged that she is a bona fide purchaser for value as to her interest in the Specific Properties. Indeed, in Lee, the District Court – which the Seventh Circuit reversed – ruled that the Government would, in effect, be substituted for Mr. Lee in the ownership of the home and become Mrs. Lee's co-tenant by the entirety. Id. at 560. Mrs. Lee would retain the use of the property during her lifetime, as well as her right of survivorship. Id. If Mrs. Lee survived her husband, then she would own the property in fee simple; if she died before her husband, then the Government would own the property in fee simple. Id. That is what even the Government requested from the Seventh Circuit: "forfeiture of the husband's interest in the tenancy by the entirety and recognition of the wife's right to full and exclusive use of the property during her lifetime, protection against any alienation without her consent, and the right to obtain title in fee simple if the husband predeceased her." Id. at 561. The Government in this case goes much further, seeking forfeiture of not only Mr. Martoma's property interests, but also Mrs. Martoma's property interests.

To support its extreme position, the Government relies heavily on two Eleventh Circuit cases that apply Florida law in the context of a criminal forfeiture proceeding: United States v. Soreide, 461 F.3d 1351 (11th Cir. 2006), and United States v. Fleet, 498 F.3d 1225 (11th Cir. 2007). (See Gov't Ltr. at 5, 8-11 & n.4.) Both demonstrate that the Government's motion to dismiss should be denied.

In Soreide, a divorced spouse, Mrs. Soreide, filed a petition challenging the forfeiture of several properties. 461 F.3d at 1352. "[A]ll of the properties were purchased with the proceeds of [her ex-husband's] fraudulent business or loans secured by mortgages on properties that were purchased with those proceeds." Id. at 1353. Mrs. Soreide never alleged any "interests in the properties created under Florida law" separate and apart from her husband's interest and, therefore, did not assert a claim based on any such interests. Id. at 1355. Even so, the court did not dismiss Mrs. Soreide's petition on the pleadings, but rather decided her petition at summary judgment on a complete record after discovery. Id. at 1352-54. In contrast to Mrs. Soreide, Mrs. Martoma adequately alleges that the Specific Properties were



Honorable Paul G. Gardephe
February 20, 2026
Page 9

purchased with commingled or untainted funds, not only crime proceeds. (See Petition ¶¶ 9-12, 26; Opp. at 3, 19-24; Sur-Reply at 2-3, 10-12.) Mrs. Martoma, who is not divorced, also adequately alleges that she continues to hold a tenancy by the entirety interest (and other interests) in the Specific Properties and asserts a claim to the Specific Properties on that basis. A fortiori, this Court should not dismiss Mrs. Martoma's Petition on the pleadings, but rather allow discovery in order to decide Mrs. Martoma's Petition on a complete record.

In Fleet, Mr. Fleet – the criminal defendant – challenged the forfeiture of his own property interests, including his tenancy by the entirety interest in the family home that he owned jointly with his wife. 498 F.3d at 1226. Mrs. Fleet did not file a petition challenging the forfeiture of her property interests because it was undisputed that her interests were not forfeited. See id. at 1227, 1232. "[T]he court ordered that the defendant's indivisible one-half interest in the marital property is subject to forfeiture as a substitute asset under § 853(p)." Id. at 1227. "The order did not purport to forfeit the interest of Fleet's wife in any of that property, only his own interest." Id. Although the Eleventh Circuit held that Mr. Fleet's interest in the family home may be forfeited, it did not hold that Mrs. Fleet's interest may be forfeited. Id. at 1227-32. Rather, the Eleventh Circuit held that "criminal forfeiture acts in personam as a punishment against the party who committed the criminal acts" such that "the only property being forfeited is the interest that belongs to the defendant." Id. at 1231-32. An innocent spouse "retains her property interest." Id. at 1232. The same is true here. The order of forfeiture did not forfeit the interest of Mrs. Martoma in the Specific Properties, but only the interest of Mr. Martoma as the defendant. Mrs. Martoma retains her interest in the Specific Properties.

Tellingly, the Government does not discuss a third decision by the Eleventh Circuit – and the only other decision by any Circuit Court of Appeals – that applies Florida law to determine whether a current or former spouse is a bona fide purchaser for value in the context of a criminal forfeiture proceeding, United States v. Kennedy, 201 F.3d 1324 (11th Cir. 2000). Kennedy demonstrates that the Government's position in this case is drastic, even by its own standards, and that the Government's motion to dismiss should be denied.

In Kennedy, a divorced spouse, Mrs. Kennedy, filed a petition challenging the forfeiture of the family home. 201 F.3d at 1324. "All parties" – including the Government – "agree[d] that the government's interest, if any, is limited to [Mr.] Kennedy's one-half interest in the property. Mrs. Kennedy's one-half interest was never subject to forfeiture, and it remains unaffected by our decision today." Id. at 1329. The Eleventh Circuit recognized: "Of course Mrs. Kennedy became a bona fide purchaser for value of some part of the [family home] on September 1, 1989, because along with her then-husband she assumed a $356,000 mortgage on the property. Specifically, she purchased a spousal interest in a tenancy by the entireties under Florida law, an indivisible right to own and occupy the entire property." Id. at 1329-30. The Eleventh Circuit then discussed the impact of a tenancy by the entirety interest under Florida law:



Honorable Paul G. Gardephe
February 20, 2026
Page 10

> Under the Florida law, as long as all the unities remain intact[,] each spouse's interest comprises the whole or entirety of the property and not a divisible part; the estate is inseverable. Neither spouse can sell, forfeit or encumber any part of the estate without the consent of the other, nor can one spouse alone lease it or contract for its disposition. Creditors cannot levy on entireties property to satisfy the debt of an individual spouse. The state cannot deem entireties property forfeit because of the unlawful conduct of one spouse acting alone.

Id. at 1330. In Mrs. Kennedy's case, that tenancy by the entirety interest terminated with her divorce from Mr. Kennedy. Id. at 1333-34. The Eleventh Circuit concluded that "the portion of the property represented by [Mr.] Kennedy's former interest in the entireties estate" – not Mrs. Kennedy's interest – "has been forfeited." Id. at 1334. The Eleventh Circuit reached that decision not on the pleadings, but rather on a complete record after a hearing and findings of fact. Id. at 1326-27.

Like Mrs. Kennedy, Mrs. Martoma is a bona fide purchaser for value of an interest in the Specific Properties. Mrs. Martoma has adequately alleged that she purchased (among other things) a tenancy by the entirety interest in the family home under Florida law. Unlike Mrs. Kennedy, however, that tenancy by the entirety interest continues because Mrs. Martoma is not divorced. The Government's interest, if any, is limited to Mr. Martoma's interest in the Specific Properties – not Mrs. Martoma's interest. This Court should determine the extent of Mr. Martoma's forfeitable interest in the Specific Properties on a complete record after discovery just as the court in Kennedy (and the courts in Soreide and Fleet) did.

The Second Circuit's decision in Pacheco supports this result. There, the Second Circuit was "required to determine whether the criminal forfeiture statute permits partial forfeitures of real property." Pacheco, 393 F.3d at 354. The Second Circuit reasoned that "reading the criminal forfeiture statute to prohibit partial forfeitures raises serious constitutional concerns. If partial forfeitures are forbidden, then a criminal's activity may result in the forfeiture of an innocent third party's interest in property. The government's acquisition of an entire tract of real property in forfeiture proceedings may thus constitute an unconstitutional taking of a third party's interest or a deprivation of that party's property without due process, in violation of the Fifth Amendment." Id. The Second Circuit continued that "courts have consistently construed the civil forfeiture statute, 21 U.S.C. § 881, to permit partial takings" and, although "the criminal and civil forfeiture provisions are not identical," the Second Circuit has "join[ed] those circuits that have recognized Congress' intention to vest in the government the same substantive rights under the two statutes, notwithstanding their technical differences." Id. at 355. For those reasons, the Second Circuit not only "agree[d] with those courts that have suggested that the criminal forfeiture statute, 21 U.S.C. § 853, permits partial forfeitures of real property," but also went further: "Although none of those courts explicitly held that the criminal forfeiture statute permits partial forfeitures, we do so now." Id. (citing Kennedy, 201 F.3d at 1329). The Second Circuit explained:



>     No other result seems reasonable. Although partial forfeitures may occasionally make for strange bedfellows – such as making the government co-owners of real property with the spouse of a criminal defendant – the alternative could give the government an undeserved windfall and deny an innocent third party her valid property interest. The purposes of the forfeiture penalty are to punish, deter and disempower criminals, aims which are not furthered by taking an innocent owner's share. Indeed, we fail to see either how **any** legitimate interest could be furthered by reading the statute to forbid partial forfeitures or how Congress could have intended to forbid them.

Id. (emphasis in original). Therefore, the Second Circuit concluded that the criminal defendant "could only have forfeited his interest in the [family home]" – not his wife's interest. Id. Recognizing that it could not determine the merits of the petition without discovery and a hearing, the Second Circuit remanded the case to the District Court for further proceedings: "As is the case with any motion to dismiss, however, we emphasize that we have in no way passed on the merits of [the petitioner's] claim. We hold today only that [the petitioner] is entitled to take evidence – either through a course of discovery or in a hearing – so that she may attempt to prove the validity of her interest in the [family home]." Id. at 356. This Court should follow the Circuit Courts of Appeals applying Florida law, as well as the Second Circuit's directive to District Courts in this procedural posture, and allow Mrs. Martoma to do the same with respect to the Specific Properties.

      **B.**    <u>**Mrs. Martoma Qualifies As A Bona Fide Purchaser For Value Because She Gave Up Her Career To Take On A Larger Role In Caring For The Couple's Children And Managing Household Affairs Based On Mr. Martoma's Promise Of Equal Ownership Interest, Possession, And Control Over All Of His Income.**</u>

Not only does Mrs. Martoma adequately allege that she is a bona fide purchaser for value with respect to the Specific Properties because of her undisputed possession of untainted funds from multiple sources with which the Specific Properties were purchased at least in part (see supra at 4-11), but also because Mr. and Mrs. Martoma jointly agreed that Mrs. Martoma would give up her career in medicine so that she could take on a larger role in caring for their children and managing household affairs based on the promise of equal ownership interest, possession, and control over all of Mr. Martoma's income. We are aware of no decision by a court in Florida or in the Second Circuit that addresses the precise question posed by this Court, much less holds that such sacrifices and work do not qualify Mrs. Martoma as a bona fide purchaser for value, and this question of first impression should not be decided on the Government's motion to dismiss without the benefit of a complete record after discovery. If this Court were to decide the issue now, however, Florida's body of contract, marital, and bankruptcy law all support the conclusion that Mrs. Martoma is a bona fide purchaser for value with respect to the Specific Properties.

     **Contract Law.** Florida law equates value with consideration. See Burleson v. Brogdon, 364 So.2d 491, 494 (Fla. Dist. Ct. App. 1978) (a purchaser must be considered a bona fide purchaser for value



Honorable Paul G. Gardephe
February 20, 2026
Page 12

where the conveyance of land was for consideration). "Promises," such as Mr. Martoma's promise of equal ownership interest, possession, and control over all of his income, "have long been recognized as valid consideration in forming a contract. A promise, no matter how slight, can constitute sufficient consideration so long as a party agrees to do something that they are not bound to do." DiMauro v. Martin, 359 So. 3d 3, 7-8 (Fla. Dist. Ct. App. 2023); see also Tampa N. R. Co. v. City of Tampa, 140 So. 311, 312-13 (Fla. 1932) ("A contract may be supported by any act of the plaintiff from which the defendant derives a benefit, or it may be supported by any labor, detriment, or inconvenience, however small, sustained by the plaintiff, if such act as performed or inconvenience suffered is by the consent express or implied of defendant."). Services, including household services such as Mrs. Martoma caring for the couple's children and managing household affairs, also suffice as valid consideration. See Regero v. Daugherty, 69 So. 2d 178, 181 (Fla. 1953) (a daughter's performance of valuable household services for her mother over a continuous 10-year period constituted valuable consideration for the conveyance of property). As does giving up legal rights, such as Mrs. Martoma giving up her career. See Ferguson v. Carnes, 125 So. 3d 841, 842-43 (Fla. Dist. Ct. App. 2013) (an oral agreement "did not lack consideration" where siblings "each gave up the possibility of inheriting more than the other in return for insuring that neither would be disinherited").

**Marital Law.** Florida law considers a spouse giving up her career to take care of the family and home to be a valuable marital contribution. By statute, courts should consider both "interruption of personal careers or educational opportunities" and "contribution to the marriage by each spouse, including contributions to the care and education of the children and services as homemaker," when distributing marital assets upon divorce. See Fla. Stat. § 61.075(1)(a), (d). Florida courts have done exactly that. For example, in Weininger v. Weininger, 290 So. 3d 928 (Fla. Dist. Ct. App. 2019), the court considered the fact that, "[f]ollowing the birth of their first child, the parties agreed that [the wife] would be the homemaker" to be a valuable marital contribution when holding that contributions to the husband's retirement account "were marital assets because the contributions were attributable to [the wife's] efforts to advance [her husband's] career." Id. at 931, 934; see also, e.g., Durand v. Durand, 16 So. 3d 982, 984-85 (Fla. Dist. Ct. App. 2009) (considering the wife's contributions as a homemaker to be a valuable marital contribution when awarding her the marital home); Alpha v. Alpha, 885 So. 2d 1023, 1025-26, 1030 n.8 (Fla. Dist. Ct. App. 2004) (considering the wife's contributions to the marriage – including working in her husband's office for five years with little or no pay and subsequently caring for the couple's child and home – to be a valuable marital contribution when distributing marital assets).

**Bankruptcy Law.** Florida law considers a spouse giving up her career to take care of the family and home to create a claim to marital assets in a bankruptcy estate. Courts have held that such bankruptcy claims are nondischargeable support obligations rather than dischargeable property settlements. See Matter of Burch, 100 B.R. 585, 590 (Bankr. M.D. Fla. 1989) (holding that debts created by a divorce court were "in the nature of support, and therefore, nondischargeable" where the wife "was the primary homemaker"). And when parties have an agreement that one spouse will forego employment to care for the children and home, courts enforce the economic consequences of that agreement by ensuring that the



Honorable Paul G. Gardephe
February 20, 2026
Page 13

homemaking spouse receives adequate financial protection.  See In re Froman, 43 B.R. 609, 612 (Bankr. S.D. Fla. 1984) (restructuring a financial award to align with a homemaking arrangement that the wife would not work upon the birth of the couple's child).

For all of these reasons, Mrs. Martoma's agreement to give up her career in medicine so that she could take on a larger role in caring for their children and managing household affairs constitutes value paid in exchange for Mr. Martoma's promise of equal ownership interest, possession, and control over all of his income and makes Mrs. Martoma a bona fide purchaser for value.  The Government asks this Court to ignore Florida law and instead conclude that Mrs. Martoma's sacrifice, as well as her work for the family and home, is worthless as a matter of law.  The Government's reactionary position is not the law in Florida or the Second Circuit.  Mrs. Martoma agreed to give up her career as a pediatrician.  That was valuable.  Mrs. Martoma agreed to take on a larger role in caring for the couple's children and managing household affairs.  That was valuable.  Mrs. Martoma did all of that based on Mr. Martoma's promise of equal ownership interest, possession, and control over all of his income.  This Court should reject the Government's request to tell Mrs. Martoma that her sacrifice and work are worth nothing in the eyes of the law.

## CONCLUSION

For the foregoing reasons and those in her Opposition and Sur-Reply, Mrs. Martoma respectfully requests that this Court deny the Government's motion to dismiss and allow her the opportunity to substantiate her claims through discovery.  If this Court grants the Government's motion to dismiss, however, then Mrs. Martoma respectfully requests leave to amend her Petition.  See United States v. Daugerdas, 892 F.3d 545, 553 (2d Cir. 2018) (permitting the petitioner to amend her petition to plead additional facts because "denying [the petitioner] the opportunity to present a viable petition would raise significant due process concerns").

Respectfully submitted,

GOODWIN PROCTER LLP

By:   /s/ Richard M. Strassberg

Richard M. Strassberg
Daniel Roeser
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Telephone:  +1 212 813 8800
Facsimile:  +1 212 355 3333



Honorable Paul G. Gardephe
February 20, 2026
Page 14


rstrassberg@goodwinlaw.com
droeser@goodwinlaw.com

*Attorneys for Rosemary A. Martoma*